### BEFORE THE UNITED STATES JUDICIAL PANEL
### ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: Aqueous Film-Forming Foams (AFFF) Products Liability Litigation | MDL Docket No. _____ |

### MEMORANDUM IN SUPPORT OF MOTION FOR TRANSFER OF ACTIONS TO THE DISTRICT OF MASSACHUSETTS PURSUANT TO 28 USC § 1407 FOR COORDINATED PRETRIAL PROCEEDINGS

Pursuant to 28 U.S.C. § 1407 and Judicial Panel on Multi-District Litigation ("JPML") Rule 6.2, Tyco Fire Products LP and Chemguard, Inc. (collectively, "the Tyco/Chemguard Defendants") respectfully move the Panel for an Order transferring the currently-filed cases listed in the attached Schedule of Actions (collectively, "the Actions"), as well as any cases subsequently filed involving similar facts or claims ("tag-along cases"), to the United States District Court for the District of Massachusetts or, in the alternative, to the Southern District of New York.

The Actions are 75 lawsuits pending in eight District Courts, alleging that aqueous film-forming foams ("AFFFs") containing the chemicals perfluorooctane sulfonate ("PFOS") and/or perfluorooctanoic acid ("PFOA") contaminated groundwater at various military bases, airports, and other sites where the foams were used, eventually causing a purported need for medical monitoring or resulting in various personal injuries, property damage, and/or other economic losses.  The AFFF products at issue in the Actions allegedly were manufactured by one or more of the Tyco/Chemguard Defendants and The 3M Company, National Foam, Inc., Buckeye Fire Equipment Co., Kidde Fire Fighting, Inc., Kidde PLC, Inc., Kidde-Fenwal, Inc., UTC Fire & Security America's Corp., Inc., Enterra Corp., and/or Williams Holdings, Inc. (collectively, the "Manufacturing Defendants").  The Actions fall into three broad categories: putative class actions

filed by individuals residing near the sites where AFFFs were used; actions brought by governmental entities such as municipalities or local water authorities; and individual personal injury claims.  In addition to naming some or all of the Manufacturing Defendants, some of the Actions name additional defendants, including local, state, and (in one case) federal government entities.  The Actions thus present a classic case for coordination under 28 U.S.C. § 1407: Centralization would serve the interests of the parties and the District Courts by greatly enhancing efficiency and convenience, and also would prevent parallel litigation in multiple courts concerning similar or related issues and claims, risking inconsistent results.

Each of the Actions involves certain commonly asserted allegations regarding scientific and historical facts.  The judges presiding over them would be called to oversee discovery and motions practice on issues such as, for example: (1) whether AFFF products were defective; (2) whether the Manufacturing Defendants had knowledge regarding the existence of any defect in their respective AFFF products; (3) whether the Manufacturing Defendants breached a duty of care to the plaintiffs; (4) whether the Manufacturing Defendants conducted adequate testing of their respective AFFF products; (5) whether a feasible alternative design for AFFF existed at the time of the sales at issue; (6) the content and adequacy of the warnings the Manufacturing Defendants provided to their customers; (7) whether plaintiffs can show that there is scientifically reliable evidence of a causal connection between AFFF products purportedly discharged into the environment and any alleged human health conditions (*i.e.*, general causation); (8) whether the Manufacturing Defendants can assert a government contractor defense based on their supply of AFFF products to the government per military/federal specifications; (9) the historical knowledge of the plaintiffs, the federal government, and the Manufacturing Defendants about any risks and

benefits associated with AFFFs; and (10) the use, handling, and disposal practices of the military and others over time.

Burdening multiple judges with these and other questions that will arise in nearly every pending lawsuit in one form or another would inevitably lead to inconsistent rulings and duplicative discovery.  Conversely, centralization would allow a single District Court to develop expertise in the scientific and factual details of these cases, leverage that expertise to efficiently and consistently dispose of each of these questions and, where necessary, address any unique issues or possible separate case tracks with the benefit of the broader perspective of the various overlapping issues and disputes.  At the same time, that court could resolve case-specific factual issues through bellwether proceedings for cases located in its District and then, if and when remands to local courts are appropriate, remand the cases for further case-specific factual resolution having provided some guidance on such factual issues through the bellwether process.

The Tyco/Chemguard Defendants believe that the District of Massachusetts is best situated to preside over a multi-district litigation involving AFFFs.  That District has extensive experience handling MDLs, and there are four AFFF actions currently pending in the District, all before Judge Denise J. Casper, that are well into the litigation process.  For example, in a case brought by a local government entity, Judge Casper has already ruled on a fully-briefed motion to dismiss, *see Barnstable Cty. v. 3M Co.*, No. 1:17-40002-DJC, 2017 WL 6452245 (D. Mass. Dec. 18, 2017), and recently heard oral argument on two similar motions (one of which was the motion to dismiss the amended complaint that resulted from her original opinion).  Judge Casper is also presiding over dispositive motions practice in an AFFF case brought by a putative class of residents.  Finally, document production has already commenced in one of the cases pending before her, with Tier 1 discovery, including depositions, set to close on November 21, 2018.  Following the close of that

3

discovery, Judge Casper has set a summary judgment motion schedule to address certain fundamental dispositive issues.  These prior and ongoing proceedings leave Judge Casper well-acquainted with the legal and factual issues involved in the AFFF cases.  Judge Casper also has proven experience managing a multi-district litigation, recently presiding over *In re Solodyn (Minocycline Hydrochloride) Antitrust Litigation*, No. 14-md-02503-DJC, 2015 WL 5458570, at *1 (D. Mass. Sept. 16, 2015)—a complex litigation involving nationwide antitrust class actions.

A logical alternative venue is the Southern District of New York, before Judge Kenneth M. Karas, who likewise has extensive MDL experience.  Judge Karas has before him (or likely soon will) three putative AFFF class actions (which include within them individual personal injury claims), a case brought by a local governmental entity, and, following likely future removals, personal injury actions brought by numerous individual plaintiffs.  The Southern District of New York also is the only current venue in which various federal government entities are named as defendants.  Thus, although the cases in that District are not yet as far along as the Massachusetts cases, it likewise is a center of gravity for AFFF-related litigation and a sensible venue for an MDL.

For the reasons explained further below, the Tyco/Chemguard Defendants respectfully request that the Panel grant their Motion and transfer these cases for coordinated proceedings to the District of Massachusetts or, in the alternative, the Southern District of New York.

## BACKGROUND

The Manufacturing Defendants manufacture (or formerly manufactured) AFFF products, which are (and have been for a half century) the most effective agents available to fight liquid fuel fires in military, industrial, and municipal settings.  In the 1960s, the United States Naval Research Laboratory developed and patented the original AFFF formulation in response to deadly fires

aboard Navy vessels.[1]  Ever since, the United States government has imposed stringent military specifications ("MilSpec") on AFFFs used at military bases, airfields, and on Navy ships—settings where fuel fires are inevitable and often life-threatening—to train its personnel and save lives and property.  *See* MIL-F-24385F (1992) ("Exhibit A").  The Federal Aviation Administration requires AFFF products used by commercial airports to meet the same specifications.  *See, e.g.*, FAA CertAlert 16-05 (Sept. 1, 2016) ("Exhibit B").

AFFF products contained small percentages of chemical compounds known generally as fluorosurfactants, whose spreading and film-formation capabilities enable the foams to quickly blanket, smother, and cool liquid fuel fires.  Even today, the military (and, by extension, the FAA) continues to require MilSpec AFFF products to contain fluorosurfactants because these are the only currently known means to ensure that military personnel and equipment are protected against these deadly fires.  *See* Ex. A at § 3.2; *see also* MIL-F-24385F(SH) w/Amendment 2 § 3.2 (2017) ("Exhibit C").  PFOS and PFOA are fluorosurfactants that repel oil, grease, and water, and were widely used for many years to manufacture numerous products, including food packaging, clothing, stain repellants, furniture fabrics, and cookware.  Historically, some AFFF products have been manufactured using fluorosurfactants that may have contained PFOS and/or PFOA, the two chemicals that the plaintiffs in the Actions allege contaminated groundwater.  The Environmental Protection Agency issued non-binding Lifetime Health Advisories in 2016, providing guidance and recommendations on the amounts of PFOS and PFOA in drinking water, but it has not to date designated PFOS and PFOA (or any other fluorochemicals) as hazardous substances.

---

[1] *See* U.S. Naval Research Laboratory, Navy Researchers Apply Science to Fire Fighting (Oct. 23, 2009), available at https://phys.org/news/2009-10-navy-science.html.

The Tyco/Chemguard Defendants are aware of 75 cases (including putative class actions and individual claims) now pending in federal courts alleging present or latent personal injuries and/or property damage, and/or seeking recovery for remediation costs, that allegedly resulted from fluorosurfactants contained in the AFFFs the Manufacturing Defendants produced.  Given the military- and FAA-mandated use of AFFFs at military bases and airports across the country, the Tyco/Chemguard Defendants expect that numerous substantially identical "tag-along" cases will be filed.

The plaintiffs in the Actions are, at present, represented by at least 17 different law firms. The undersigned represent the Tyco/Chemguard Defendants, and other named defendants are represented by different counsel and local counsel.  The number of different jurisdictions, different judges, different schedules, and different plaintiffs' and defense counsel make informal coordination of these cases highly impracticable and burdensome on the parties, third-parties, and the various courts.

## ARGUMENT

Cases should be centralized pursuant to 28 U.S.C. § 1407 if the movant establishes three elements:  that "common questions of fact" exist, that centralization will "be for the convenience of [the] parties and witnesses," and that centralization "will promote the just and efficient conduct of [the] actions."[2]  *See* 28 U.S.C. § 1407(a).

---

[2] The commonality inquiry under § 1407(a) is distinct from whether a particular case is amenable to class certification, which for numerous reasons these cases are not.  But the common issues of fact that do exist are best addressed in an MDL proceeding, for the reasons discussed herein.  As the Panel has made clear, "centralization under Section 1407 does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer."  *In re Zimmer Nexgen Knee Implant Prods. Liab. Litig.*, 802 F. Supp. 2d 1374, 1376–77 (J.P.M.L. 2011).

Centralization should be granted because the Actions assert similar claims involving common factual allegations and legal theories.  Moreover, the core issues and defenses will involve significant common fact discovery, including discovery regarding the U.S. military,[3] which for decades has specified requirements for the manufacture of AFFFs, purchased AFFFs from the Manufacturing Defendants, conducted extensive research and analysis of its own regarding AFFFs and disposal of AFFFs, and distributed and used the foams on Navy ships and at military bases and airfields across the nation.  In addition, centralization would promote judicial economy by allowing a single judge to develop expertise in the common factual and scientific questions and make consistent rulings that may apply to, and/or inform decisions across, multiple cases.  Due to the large (and increasing) number of actions, jurisdictions, and counsel involved, informal coordination is not a viable alternative to streamline the pretrial litigation process.

## I.      The Panel Should Order Centralization.

### A.      This Case Involves Numerous Commonly Asserted Allegations.

Actions should be centralized when they involve common questions of fact.  *See In re E.I. du Pont de Nemours & Co. C-8 Personal Injury Litig.*, 939 F. Supp. 2d 1374, 1374 (J.P.M.L. 2013).  The burden to show commonality decreases when more constituent actions are involved. *See In re Proton-Pump Inhibitor Prods. Liab. Litig. (No. II)*, 261 F. Supp. 3d 1351, 1354 (J.P.M.L. 2017) (granting centralization of 161 actions because "the number of involved actions, districts, and plaintiffs' counsel" had increased since a prior denial, to the point that informal coordination was no longer practicable).  Section 1407 transfer does not require a complete identity or even a

---

[3] The United States and other federal entities, including the Department of Defense and U.S. Air Force, are currently named defendants in one action—*City of Newburgh v. United States of America et al.*, No. 18-cv-07057 (S.D.N.Y.).

majority of common factual and legal issues. *See, e.g.*, *In re: Satyam Computer Servs., Ltd., Sec. Litig.*, 712 F. Supp. 2d 1381, 1382 (J.P.M.L. 2010).

The Panel has almost always found that centralization is appropriate in purported environmental contamination cases—including cases involving one of the chemicals at issue in this litigation, PFOA. *See In re E.I. du Pont de Nemours & Co. C-8 Personal Injury Litig.*, 939 F. Supp. 2d at 1374 (consolidating litigation regarding alleged personal injuries as a result of PFOA groundwater contamination); *see also In re Camp Lejeune, N.C. Water Contamination Litig.*, 763 F. Supp. 2d 1381, 1382 (J.P.M.L. 2011) (consolidating four actions in four districts alleging personal injuries as a result of drinking contaminated water at Camp Lejeune). In fact, the Panel typically denies centralization of environmental mass tort cases only in situations where there are a small number of underlying actions. *See In re Chilean Nitrate Prods. Liab. Litig.*, 787 F. Supp. 2d 1347, 1348 (J.P.M.L. 2011) (denying centralization of two actions); *In re Monsanto PCB Water Contamination Litig.*, 176 F. Supp. 3d 1379, 1381 (J.P.M.L. 2016) (denying centralization of six actions). Here, there are 75 cases already pending and more undoubtedly to come.

Although as in any MDL proceeding there will be, of course, case specific issues in every AFFF case, the factual allegations in plaintiffs' current complaints are similar in numerous critical respects. The plaintiffs in the 75 Actions allege that the Manufacturing Defendants manufacture or manufactured AFFF products that contained PFOS or PFOA; that these products were used at military bases, airports, or similar facilities near their residences or in their municipalities; that use of these products caused the release of PFOS/PFOA into local groundwater, ultimately contaminating drinking water supplies; that the Manufacturing Defendants knew or should have known that their AFFF products were unreasonably dangerous and/or failed to adequately warn about the products; and that the Manufacturing Defendants therefore caused and are responsible

for present or latent personal injuries, property damage, or contamination of local water sources and associated remediation costs. Accordingly, the discovery and briefing surrounding both the allegations and the defenses in these Actions will substantially overlap and, even as to the multiple individual issues involved, a single judge can better manage and coordinate the litigation as a whole.

For example, all of the Actions will require significant technical and expert discovery regarding whether PFOS and/or PFOA can, as a general matter, cause human illness at some exposure level, and all will require discovery relating to the Manufacturing Defendants' knowledge of any claimed risks of their products, warnings that they provided, the knowledge of customers, government entities, and others, and state of the art over time. Thus, these cases are similar to products liability cases involving multiple defendants and multiple products involving commonly asserted allegations, even when it was unclear which defendant or combination of defendants manufactured the product to which any given plaintiff was exposed. *See In re Proton-Pump Inhibitor Prods. Liab. Litig. (No. II)*, 261 F. Supp. 3d at 1354.

There are also defenses that will be applicable across all or nearly all of the Actions, which further supports centralization. For example, in *In re Yosemite National Park Hantavirus Litigation*, 24 F. Supp. 3d 1370, 1370 (J.P.M.L. 2014), the Panel found that "not only will these actions involve common questions with regard to the alleged negligence of the defendants, but it is anticipated that the United States will assert jurisdictional defenses under the Federal Tort Claims Act (FTCA)." It continued, "[i]n our experience, such defenses . . . often entail complicated and lengthy discovery practice. Such discovery will be common across all the actions." *Id.* Similarly, the Manufacturing Defendants expect to assert, among other things, a government contractor defense, which will require common discovery as to facts surrounding the military's

specification of AFFF products, knowledge concerning the products, and training, use, and disposal practices and procedures.

**B.      Transfer Will Promote Judicial Economy and Provide Convenience for the Parties and Witnesses.**

The Panel also looks to whether transfer will promote judicial economy and convenience. In another case alleging environmental contamination due to PFOA, the Panel noted that, "[c]entralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel and the judiciary."  *In re E.I. du Pont de Nemours & Co. C-8 Personal Injury Litig.*, 939 F. Supp. 2d at 1374; *see also In re Camp Lejeune, N.C. Water Contamination Litig.*, 763 F. Supp. 2d at 1381–82.  This dovetails with the similarity of factual and legal issues in environmental contamination and products liability litigation like this one, as discussed above.  For example, centralization promotes judicial economy by preventing duplicative expert discovery and *Daubert* motions practice.  *See, e.g.*, *In re Proton-Pump Inhibitor Prods. Liab. Litig. (No. II)*, 261 F. Supp. 3d at 1354; *see also In re AndroGel Prods. Liab. Litig.*, 24 F. Supp. 3d 1378, 1379 (J.P.M.L. 2014) ("Centralization of claims involving all testosterone replacement therapies will reduce potentially costly expert discovery, facilitate the establishment of a uniform pretrial approach to these cases, reduce the potential for inconsistent rulings on such matters as *Daubert* rulings, and conserve the resources of the parties, their counsel, and the judiciary").

Centralization likewise conserves the resources and time of the parties and fact and expert witnesses, who need not suffer multiple depositions or overlapping discovery requests arising from similar issues.  *See In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig. (No. II)*, 997 F. Supp. 2d 1354, 1357 (J.P.M.L. 2014) ("Centralization will eliminate duplicative discovery, prevent inconsistent pretrial rulings (in particular with respect to class

certification and *Daubert* issues), and conserve the resources of the parties, their counsel and the judiciary."). Centralization also promotes judicial economy because the transferee judge can order coordinated briefing and other appropriate mechanisms to screen non-meritorious claims and/or issue categorical rulings that apply to multiple cases. *See In re Proton-Pump Inhibitor Prods. Liab. Litig. (No. II)*, 261 F. Supp. 3d at 1354–55 (noting that the transferee judge "can employ any number of techniques, such as establishing separate discovery and motion tracks, to manage pretrial proceedings efficiently" and "has substantial discretion to refine the litigation's parameters").

Given the common issues, allowing all 75 Actions (and counting) to proceed individually would place an enormous and unnecessary burden on the judicial system, the parties, and the witnesses, including the many third-party witnesses typically involved in such cases. Because of the large number of actions, the duplication of discovery and briefing (on discovery and merits issues) would be overwhelming. On the other hand, transfer of the Actions (and tag-along cases) to a single District Court for coordinated proceedings would allow the transferee judge to develop expertise in the scientific and factual details of the cases, and to implement appropriate tools to manage and coordinate briefing of various disputes—eliminating the risk of inconsistent legal rulings. Thus, considerations of judicial efficiency and the convenience of the parties and witnesses clearly favor centralization.

## II. The Panel Should Order Centralization in the District of Massachusetts or, in the Alternative, the Southern District of New York.

### A. The District of Massachusetts Is the Most Appropriate Venue for Centralization.

The District of Massachusetts is the most appropriate venue for centralization of the Actions because: (1) the cases pending in that District are further along procedurally than those in other districts; (2) there are numerous actions pending there (including cases brought by

governmental entities and putative class actions); and (3) Judge Casper, a district judge with experience managing MDLs, has developed substantial familiarity with the underlying issues. In addition, given the multitude of plaintiffs and Manufacturing Defendants spread around the country, there is no single district that has a comparative advantage with regard to the location of documents or witnesses.

Document production has already commenced in one action before Judge Casper, *Town of Barnstable v. The 3M Company et al.*, No. 1:16-cv-12351-DJC (D. Mass. 2016), a case filed by a municipality involving claims of negligence, failure to warn, and defective design arising from alleged contamination at the Barnstable County Fire Training School and Barnstable Municipal Airport, and Phase 1 of this discovery is set to be completed by the end of November 2018. In a separate case before her, *County of Barnstable v. The 3M Company et al.*, No. 1:17-cv-40002-DJC (D. Mass. 2017), filed by a county involving claims of negligence, failure to warn, defective design, indemnification, and contribution, Judge Casper has already issued a reasoned, written opinion on Defendants' motion to the dismiss the original complaint, *see Barnstable Cty. v. 3M Co.*, No. 1:17-40002-DJC, 2017 WL 6452245 (D. Mass. Dec. 18, 2017) (granting in part and denying in part Defendants' motion), and has heard oral argument on Defendants' motion to dismiss the amended complaint. Judge Casper has also heard oral argument on a motion to dismiss a third case, *City of Westfield, MA v. The 3M Company et al.*, No. 3:18-cv-30027-DJC (D. Mass. 2018), which she has taken under advisement. These proceedings are significant because the legal and factual issues involved in the Actions overlap in the manner described above, and Judge Casper has necessarily become familiar with many such issues through her rulings, consideration of the pending (and already argued) motions to dismiss, and management of discovery.

In contrast, motions to dismiss briefing has barely begun in most other courts. There is one exception, a putative class action in the District of Colorado,[4] where motions to dismiss have been briefed and more discovery has occurred than in other cases, but that discovery has focused on class certification issues; documents have been produced, other discovery related to class certification has taken place, and a class certification motion has been briefed. Oral argument on the class certification motion, however, is not scheduled to be heard until November 30, 2018, and as to the discovery that has taken place, the parties could efficiently apply it in an MDL proceeding, wherever located. In addition, although the District of Colorado has numerous individual personal injury cases pending before it, complaints in the vast majority of those cases have not yet been served and no responsive pleadings have been filed in any of them. Finally, the District of Colorado has no municipal actions currently pending before it.

Given the numerous different Manufacturing Defendants and plaintiffs spread across multiple jurisdictions, there is no District that has a comparative advantage regarding the location of relevant documents and witnesses. On the plaintiffs' side, there inherently will be no particular centralized location in which witnesses and documents will be located, and the Manufacturing Defendants are all located in different places. Although this factor therefore does not point to any one District, relevant witnesses and documents are in fact located in Massachusetts. *See In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 780 F. Supp. 2d 1379, 1382 (J.P.M.L. 2011) (centralizing cases in the Eastern District of Kentucky, where "[r]elevant documents and witnesses" were likely located). Defendant Kidde-Fenwal, Inc.'s headquarters are located in Massachusetts, as are three of the alleged AFFF exposure sites—the Westfield-Barnes Regional Airport, the Barnstable County Fire Training School, and the Barnstable Municipal Airport.

---

[4] *See Bell v. The 3M Company*, No. 1:16-cv-02351 (D. Colo. 2016).

Witnesses and documents regarding the alleged contamination surrounding these sites are all located in Massachusetts.

**B.     In the Alternative, the Southern District of New York Is Also an Appropriate Venue.**

The Southern District of New York is also an appropriate venue for coordinated proceedings.  There are currently four active cases pending in this District,[5] all of them before Judge Kenneth M. Karas, who, like Judge Casper, has experience managing MDLs.  *See, e.g.*, *In re Ford Fusion & C-MAX Fuel Econ. Litig.*, No. 13-MD-2450 (KMK), 2017 WL 3142078 (S.D.N.Y. July 24, 2017).  Three are putative class actions (each of which also includes individual personal injury claims) and one of them—*City of Newburgh v. United States of America*, No. 7:18-cv-07057-KMK (S.D.N.Y. 2018)—is the only case currently to name numerous federal defendants, including the United States, the U.S. Department of Defense, the U.S. Air National Guard Bureau, and the U.S. Air Force.  Further, there are three additional cases[6] pending in New York state court that are likely to be removed to the Southern District of New York, and presumably will be assigned to Judge Karas as related cases, which include approximately 120 individual plaintiffs.

Although discovery has not commenced in these matters, as is true in most of the Actions, Judge Karas recently considered and denied plaintiffs' remand motions in the three putative class actions, thereby becoming familiar with the key issues in the AFFF litigation and the parties'

[5] *See Adamo v. The Port Auth. of N.Y. & N.J.*, No. 7:17-cv-07131-KMK (S.D.N.Y. 2017); *Fogarty v. The Port Auth. of N.Y. & N.J.*, No. 7:17-cv-07134-KMK (S.D.N.Y. 2017); *Miller v. The Port Auth. of N.Y. & N.J.*, No. 7:17-cv-07136-KMK (S.D.N.Y. 2017); *City of Newburgh v. United States of America*, No. 7:18-cv-07057-KMK (S.D.N.Y. 2018).

[6] *See Allen v. Port Auth. of N.Y. & N.J*, Index. No. unassigned (N.Y. Sup. Ct. 2018); *Andrews v. Port Auth. of N.Y. & N.J.*, Index. No. EF009224-19 (N.Y. Sup. Ct. 2018); *Bermo v. Port Auth. of N.Y. & N.J.*, Index. No. EF009308-2018 (N.Y. Sup. Ct. 2018).

positions on them.  *See, e.g.*, *Adamo v. The Port Auth. of N.Y. & N.J.*, No. 7:17-cv-07131-KMK (S.D.N.Y. 2017) [ECF No. 55] Order.  There also will likely be numerous witnesses and documents located in the Southern District of New York, given the sites that used AFFFs that are located in the District.  For all of these reasons, this District would be an appropriate choice for the MDL proceedings as well.

## CONCLUSION

For the reasons outlined above, the Tyco/Chemguard Defendants respectfully request that the Panel grant their Motion to centralize these actions and transfer the cases to the District of Massachusetts or, in the alternative, to the Southern District of New York.

Respectfully submitted,

**Tyco Fire Products LP and Chemguard, Inc.**

DATED: September 25, 2018

/s/ Stephen D. Raber
Stephen D. Raber
Joseph G. Petrosinelli
Liam J. Montgomery
J. Liat Rome
Chelsea T. Kelly

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
sraber@wc.com
jpetrosinelli@wc.com
lmontgomery@wc.com
jrome@wc.com
ckelly@wc.com

*Attorneys for Tyco Fire Products LP and Chemguard, Inc.*