**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

|  |  |
|---|---|
| IN RE: Aqueous Film-Forming Foams (AFFF) Products Liability Litigation | MDL No. 2873<br>This Document Relates To:<br><br>*State of Maryland v. 3M Company, et al.,*<br>No. 1:23-cv-01836 (D. Md.) |

**THE STATE OF MARYLAND'S MEMORANDUM IN OPPOSITION TO
DEFENDANT 3M COMPANY'S MOTION TO TRANSFER**

The Judicial Panel on Multidistrict Litigation ("the Panel") previously refused to transfer this case because, among other reasons, "the complaint . . . does not include AFFF claims" and "does not identify a contamination site at issue in the MDL."  Order Denying Transfer at 2, MDL No. 2873 (J.P.M.L. Oct. 4, 2023), ECF No. 2129 ("Order Denying Transfer").  The Panel reached that decision "based upon consideration of the pleadings and record," neither of which has changed.  *Id.* at 4.  3M nevertheless seeks transfer again, arguing that a recent Fourth Circuit decision, addressing the narrow sub-issue of federal officer removal, requires a different result. *Maryland v. 3M Co.*, 130 F.4th 380 (4th Cir. 2025).  But the Fourth Circuit's jurisdictional finding was the result of a wholly separate inquiry that required the court to accept as true 3M's speculation about an overlap between AFFF and non-AFFF cases.  That same deferential standard does not apply here, and 3M's same speculation about potential commingling does not satisfy its "significant burden" now any more than it did when the Panel first rejected 3M's transfer motion. Order Denying Transfer at 1-2.  Because 3M still cannot show a "clear overlap" between the complaint and AFFF sites identified in the AFFF MDL, the Panel should maintain its "line between 'AFFF' and 'non-AFFF' cases" and deny transfer again.  *Id.* at 1-2.

**BACKGROUND**

As the Panel previously recognized, "The parties do not dispute that the complaint in *State of Maryland* does not include AFFF claims on its face." Order Denying Transfer at 2. The complaint seeks recovery for the contamination that Defendants, including 3M, have caused through their design, manufacture, marketing, and sale of "PFAS Products." *See* Compl. ¶ 2 (ECF No. 4204-3). "As used in this Complaint, the term 'PFAS Products' . . . . does not . . . include aqueous film-forming foam ('AFFF') or fluorosurfactants that were designed for and specifically incorporated into AFFF, which are the subject of a separate action." *Id.* at 3 n.2. The complaint contains no allegations regarding the manufacture or sale of AFFF, and expressly states that the State of Maryland ("Maryland" or "the State") "does not . . . seek any remediation, restoration, damages, or any other relief related to any PFAS contamination caused by AFFF or fluorosurfactants when used as ingredients of AFFF." *Id.* ¶ 13.

After the State filed this case in 2023, 3M filed a Notice of Potential Tag-Along to transfer this case to the AFFF MDL (ECF No. 1990), but the Clerk declined to issue a Conditional Transfer Order (ECF No. 1992). 3M then filed a Motion to Transfer (ECF No. 2009), which was denied, *see* Order Denying Transfer (ECF No. 2129).

On March 4, 2026, 3M filed another Notice of Potential Tag-Along (ECF No. 4193), which the Clerk again denied (ECF No. 4196). 3M now moves again to transfer (ECF No. 4204), despite the record remaining the same—no pleadings have been added or amended since the first motion, and no discovery has occurred. The only intervening development—and the only basis for 3M's motion—is the Fourth Circuit's decision on the one prong of federal officer removal, which is a jurisdictional ruling with no bearing on the Panel's transfer analysis.

**LEGAL STANDARD**

Since the inception of the AFFF MDL, the Panel "ha[s] endeavored to maintain th[e] distinction" "between 'AFFF' and 'non-AFFF' cases because of concerns for the manageability of this litigation." Order Denying Transfer at 1. As the Panel stated when it originally centralized this docket:

> While a non-AFFF MDL would allow for common discovery and motion practice with respect to 3M—the main producer of PFOA and PFOS—it also would include far more site-specific issues, different modes of PFAS contamination, and different PFAS chemicals (whereas the AFFF actions are limited to PFOA and PFOS contamination). Such an MDL could quickly become unwieldy.

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.* (*In re AFFF*), 357 F. Supp. 3d 1391, 1396 (J.P.M.L. 2018). To preserve this boundary, the Panel has repeatedly stated that "a party seeking transfer of an action that does not on its face raise AFFF claims bears a significant burden to persuade us that transfer is appropriate and will not undermine the efficient progress of the AFFF MDL." Order Denying Transfer at 2, MDL No. 2873 (J.P.M.L. Dec. 18, 2019), ECF No. 541 ("*Middlesex Water Co.*"); *accord* Order Denying Transfer at 2; Order Vacating Conditional Transfer Order at 2, MDL No. 2873 (J.P.M.L. Aug. 3, 2022), ECF No. 1511 ("*New Hampshire*"); Transfer Order at 1, MDL No. 2873 (J.P.M.L. June 5, 2023), ECF No. 1927 ("*Illinois*"); Transfer Order at 2, MDL No. 2873 (J.P.M.L. Dec. 11, 2025), ECF No. 4061 ("*Oklahoma*").

Where a complaint "does not include AFFF claims on its face," the Panel looks to "the pleadings and the record" before it, *New Hampshire* at 2, to determine "whether there is a clear overlap between the putative non-AFFF complaint and complaints in the MDL with respect to alleged contamination sites." Order Denying Transfer at 2. That overlap must be "substantial and concrete." *Id.* (quoting *New Hampshire* at 2-3).

**ARGUMENT**

**I.     THE PANEL PREVIOUSLY DENIED TRANSFER, AND NOTHING HAS CHANGED
        SINCE THE PANEL'S PRIOR DETERMINATION.**

The Panel already denied transfer because it failed to find a "substantial and concrete" and "clear overlap between the putative non-AFFF complaint and complaints in the MDL with respect to alleged contamination sites."  Order Denying Transfer at 2.  The State's complaint unequivocally does "not include AFFF claims on its face."  *Id.*  The complaint also does "not identify a contamination site at issue in the MDL," and, in fact, does "not discuss any individual contamination site" at all.  *Id.* at 2-3.[1]  The Panel further considered "3M's arguments that there has been commingling of PFAS contamination from AFFF and non-AFFF sources."  *Id.* at 3.  But because 3M's argument rested on "third-party sources" and "not the complaint," it was "too speculative to support transfer."  *Id*. (concluding that "such evidence of the mere *potential* for commingling is insufficient").

The Panel's original reasoning applies as strongly now as it did before.  The complaint, unamended since the previous determination, still does not include AFFF claims on its face, still does not identify a contamination site at issue in the AFFF MDL, and still does not support 3M's commingling theory.  And while the Panel did leave the door open for 3M to renew its motion if "discovery [or] pleading practice" bore out its theory, *id.* at 4, no such developments have occurred since the Panel's original ruling offering that opportunity.  As the Panel has already determined, this case is unlike those where the complaint identifies "the same water sources" that are involved in the MDL.  Order Denying Transfer at 2 (distinguishing *Illinois* because there Illinois' "putative

---

[1] The complaint made "general references to the Chesapeake Bay," but "these references primarily derive from quotations from the Maryland statute establishing the State's right and obligation to protect its natural resources."  *Id.* at 2-3.  Moreover, the Panel "note[d] that the Chesapeake Bay arguably might be considered too broad a body of water to identify as a contamination site."  *Id.* at 3 n.1.

'non-AFFF' complaint . . . identified three community water supplies (CWS) that were the subject of complaints filed by the municipal water providers for those CWS directly in the MDL," whereas here "[t]he complaint, on its face, does not identify a contamination site at issue in the MDL"); *see also Oklahoma* at 3 (transferring because complaint identified a site "directly adjacent to" one in the MDL, and where the "site itself appear[ed] to be at issue in" the MDL); Transfer Order at 3-4, MDL No. 2873 (J.P.M.L. June 7, 2021), ECF No. 1020 ("*Michigan*") (transferring because Michigan "identified in written discovery responses" "at least one . . . location[] . . . already at issue in one of plaintiffs' MDL actions").   Simply put, the Panel already ruled "based upon consideration of the pleadings and the record before" it, and because the pleadings and record have not changed, neither should the Panel's conclusion.  Order Denying Transfer at 4.

**A.    As 3M Previously Acknowledged, the Fourth Circuit Decided a Different Issue on a Much Lower Standard.**

The Fourth Circuit's decision on federal officer removal does not alter the Panel's standard for transfers to the AFFF MDL, nor does it change the record in this case.  The Fourth Circuit ruled on an aspect of federal subject-matter jurisdiction, specifically the nexus prong of federal officer removal:  where "a defendant must show it is being sued for an act or acts that it claims were done under—or related to acts done under—federal authority." *Maryland*, 130 F.4th at 389 (citation omitted); *see also* 28 U.S.C. § 1442(a)(1) (federal officer removal statute).

In its analysis on that jurisdictional issue, the Fourth Circuit found plausible "3M's theory of the case" that "[s]ome of the PFAS contamination charged by the States came from Military AFFF." *Maryland*, 130 F.4th at 390.  But that finding does not, as 3M argues, "confirm" that this case should be transferred.  Mot. at 8.  The Fourth Circuit accepted 3M's speculation because the jurisdictional analysis applicable to federal officer removal required it to "credit a removing defendant's theory of the case as to whether the conduct with which it has been charged [i.e., its

non-AFFF actions] is related to its federal work [involving AFFF]." *Maryland*, 130 F.4th at 389. As a result, the Fourth Circuit gave 3M "the benefit of all reasonable inferences from the facts [it] alleged." *Id.* at 391 (citation omitted). That same deference to the defendant's theory of the case does not apply to the transfer inquiry, which places "a significant burden" on the movant to establish an overlap between the cases that is "clear," "substantial[,]" and "concrete." Order Denying Transfer at 1-2. 3M knows this. In its briefing before the Fourth Circuit, 3M acknowledged that "MDL transfer and federal-officer removal are governed by different legal standards." Opening Br. for Def.-Appellant at 33, *Maryland v. 3M Co.*, Nos. 24-1218, ECF No. 25 (4th Cir. June 7, 2024). In fact, in an effort to distinguish the Panel's earlier denial, 3M told the Fourth Circuit that the Panel's transfer decisions are "immaterial" for purposes of federal officer removal. *Id.*

According to the Fourth Circuit, the deference 3M was afforded in the removal context stems from the fact that the federal officer removal statute "is an exception to the well-pleaded complaint rule." *Maryland*, 130 F.4th at 388 (citation omitted). It "allows suits against federal officers to be removed despite the nonfederal cast of the complaint." *Id.* (citation omitted); *see also id.* at 389 ("credit[ing] *Defendants'* theory of the case" because the court "cannot blindly accept" the complaint allegations) (citation omitted). In sharp contrast, the Panel decides transfer based on the four corners of the complaint (and any discovery, though none has occurred here). *E.g.*, Order Denying Transfer at 2 ("The complaint, on its face, does not identify a contamination site at issue in the MDL."); *id.* at 3 ("Nothing in plaintiff's complaint clearly incorporates the contamination sites identified . . . ."); *id.* ("The basis for [3M's] argument, though, is not the complaint . . . ."). 3M understands this crucial distinction as well; it told the Fourth Circuit to disregard the Panel's past decision denying transfer because "the Judicial Panel was evaluating

just the face of Maryland's complaint." Opening Br. for Def.-Appellant at 33. Having successfully distinguished the transfer process in its argument before the Fourth Circuit, 3M cannot now claim that the Fourth Circuit's conclusion controls here.

That different standard reflects the different policies that underlie the two inquiries. The federal officer removal "statute's purpose is to give effect to the legislative principle that those acting at the federal government's direction should be able to defend themselves in federal—not state—court." *Maryland*, 130 F.4th at 387. That same state-versus-federal jurisdictional question does not arise in the transfer context, where the two courts involved are federal and no statute "promises" a place in the MDL. *See id.* (quoting *BP P.L.C. v. Mayor & City Council of Baltimore*, 593 U.S. 230, 234 (2021)). Instead, it is a pure question of "manageability"—whether it makes sense for the MDL to adjudicate allegations involving the use of AFFF at military facilities and airports alongside allegations involving the use and disposal of consumer products containing PFAS. Order Denying Transfer at 1.

**B.      The State's Supposed "Admission" Does Not Make 3M's Commingling Argument Any Less Speculative.**

As the Panel has made clear, transfer requires more than "specul[ation]" about "commingling of PFAS contamination from AFFF and non-AFFF sources." Order Denying Transfer at 3. 3M makes much of a supposed "binding judicial admission" by the State, Mot. at 7, but this "admission" does not move 3M's commingling argument beyond mere speculation.

The Fourth Circuit asked the State whether it conceded "that [its] recovery would be barred if 'even a morsel of contamination' derived from Military AFFF" such that there would be no need to "apportion the PFAS contamination between sources." *Maryland*, 130 F.4th at 392 (citation omitted). The State "did not so concede." *Id.* The State's reservation of its right to seek partial recovery *if* there is commingling or overlap between AFFF and non-AFFF sites is plainly not an

admission that commingling or overlap in fact will occur, and it does not satisfy 3M's burden to demonstrate "substantial and concrete" overlap.  Order Denying Transfer at 2.  Neither the complaint nor discovery, which has yet to begin, has revealed any such site, so as before, 3M has shown at best "the mere *potential* for commingling," which is "c."  *Id.* at 3.

## II.    3M'S TRANSFER REQUEST ASKS THE PANEL TO EXPAND THE AFFF MDL BEYOND ITS CAREFULLY DRAWN BOUNDARIES.

Granting 3M's motion to transfer would remove the guardrails the Panel has installed around the AFFF MDL.  This Panel has, "since the outset of this litigation, limited the MDL to actions that involve claims relating specifically to AFFFs."  *Illinois* at 1 (citation omitted).  It has done so because "a non-AFFF MDL . . . would include far more site-specific issues, different modes of PFAS contamination, and different PFAS chemicals," and thus would "quickly become unwieldy."  *In re AFFF*, 357 F. Supp. 3d at 1396.  For that reason, the Panel requires more than speculation to add another case to the AFFF MDL's burgeoning caseload.

To meet the nexus prong of the federal officer removal test, 3M made assertions about commingled contamination that lack any basis in the complaint or discovery.  *Maryland*, 130 F.4th at 386.  And because a federal court "cannot accept" the allegations of complaint but must instead "look to a defendants' well-pleaded facts," the Fourth Circuit accepted 3M's assertions in this case.  *Id.* at 389.  But if the Panel were to accept that same showing here, it would effectively abandon its previously articulated "significant burden" standard in favor of a standard that merely requires plausible allegations.  *Compare* Order Denying Transfer at 1-2, *with Maryland*, 130 F.4th at 390 (requiring only a "plausibl[e] alleg[ation]").  Essentially, 3M asks the Panel to grant the transfer based on "evidence of the mere *potential* for commingling," a theory that the Panel has already rejected.  Order Denying Transfer at 3.

Perhaps most importantly, accepting 3M's arguments would mean the Panel would no longer require "a clear overlap between the putative non-AFFF complaint and complaints in the MDL with respect to alleged contamination sites." Order Denying Transfer at 2. Rather, transfer would be warranted whenever 3M's "theory of the case" calls for it, "despite the . . . 'cast of the complaint.'" *Maryland*, 130 F.4th at 388-90 (citation omitted); *see also id.* at 396 (Floyd, J., dissenting) (faulting the majority for concluding that the nexus requirement of federal officer removal is met whenever defendants "identify even the slightest connection between the claims at issue at work they have performed as government contractors"). It would allow 3M, not the Panel, to determine the scope of the AFFF MDL, allowing 3M to do what the Panel has forbade for eight years: "extend the scope of the MDL to encompass not just cases involving AFFFs, but all cases relating to 3M's manufacture, management, disposal, and sale of PFAS." Order Denying Transfer at 1.

Rather than removing its longstanding guardrails, the Panel should require what it always has required: a "substantial and concrete" and "clear overlap" of AFFF and non-AFFF sites. *Id.* at 1-2. Because 3M still cannot demonstrate such an overlap, transfer should be denied.

## CONCLUSION

The pleadings and discovery remain in the same state they were in the last time 3M sought transfer. Because these have not changed, and because federal officer removal rests on a different legal standard than transfer, transfer should again be denied.

Dated: April 8, 2026

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

PATRICIA V. TIPON (28786)
JULIE KUSPA (21432)

MATTHEW ZIMMERMAN (01222)
Assistant Attorneys General
Office of the Attorney General
1800 Washington Boulevard, Suite 6048
Baltimore, Maryland 21230
patricia.tipon@maryland.gov
matthew.zimmerman@maryland.gov
julie.kuspa@maryland.gov
(410) 537-3061

ADAM D. SNYDER (25723)
Assistant Attorney General
Office of the Attorney General
120 E. Baltimore Street
Baltimore, Maryland 21202
adam.snyder1@maryland.gov
(410) 767-1409

*and*

/s/ Ashley B. Campbell
ASHLEY B. CAMPBELL
Sher Edling LLP
100 Montgomery Street, Suite 1410
San Francisco, California  94104
ashley@sheredling.com
(628) 231-2500

*Counsel for Plaintiff, State of Maryland*