**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: Aqueous Film Forming Foams (AFFF) Products Liability Litigation | MDL No. 2873<br>This Document Relates To:<br><br>*State of Maine v. 3M Company, et al.*,<br>Case No. 2:25-cv-00453 (D. Me.)<br><br>*State of Maine v. 3M Company, et al.*,<br>Case No. 2:23-cv-00210 (D. Me.) |

**<u>BRIEF IN SUPPORT OF MOTION TO VACATE
CONDITIONAL TRANSFER ORDER (CTO-293)</u>**

Plaintiff the State of Maine (the "State") submits this brief in support of its motion for an

order vacating the Conditional Transfer Order (CTO-293) in the State's non-AFFF case.

**INTRODUCTION**

3M's request to transfer this case to the AFFF MDL should be denied.  Maine's

complaint does not raise AFFF on its face.  It is expressly limited to PFAS contamination from

consumer and industrial products (i.e., non-AFFF products) made by defendants 3M Company

("3M") and several DuPont-related defendants (collectively "DuPont"), and expressly disclaims

any recovery for AFFF contamination.  3M bases its request for transfer on notices of removal it

filed in 2023 and 2025, but those pleadings merely allege "plausible" or "possible" AFFF

contamination—allegations the Panel has repeatedly held fail to carry a party's "significant

burden" to merit transfer in a case that, as here, does not raise AFFF on its face.

Moreover, out of the approximately 900 non-AFFF sites at issue in this case, Maine has

now, in an abundance of caution, expressly excluded from this case the handful of sites that 3M

alleges have "possible" or "plausible" AFFF contamination as well as a small number of sites

that the State recently discovered are already in the MDL.  Maine has done so by way of amended discovery responses, court filings disclaiming the sites by name and location, and a motion to amend its complaint.  Those steps bring this case well within the Panel's AFFF case law holding that transfer to the MDL is inappropriate where, as here, the complaint does not allege that AFFF caused a plaintiff's injuries and the plaintiff has moved to amend its complaint to eliminate any arguable ambiguity on the point.

Common discovery, moreover, is complete and the parties are now focused on case-specific discovery regarding hundreds of Maine non-AFFF PFAS sites and defendants' sales of consumer and industrial PFAS products into Maine and dealings with Maine customers.  This discovery has continued at an exceptionally rapid pace since 3M's second removal and is being actively managed by a federal district judge and magistrate judge.  Efficiencies in that court abound because there is an overlapping case in Maine federal court with citizen plaintiffs suing 3M for property damages at some of the same sites at issue here; the State is producing extensive documents in that case in response to 3M subpoenas, and the case has been assigned for all purposes to the same magistrate judge that is assigned to manage discovery here.  Yet more efficiencies in Maine federal court stem from the parties in this case having shared defendants' common liability discovery from a parallel case by the State of Vermont, a non-MDL case where fact and expert discovery is complete and many of the same lawyers are involved on both sides.

For these reasons, this case does not involve common questions of fact with cases pending in the MDL and transfer would undermine, not enhance, efficiency and convenience both in this case and in the MDL.  In fact, it would effectively destroy a carefully managed and coordinated discovery process that is delivering meaningful and rapid progress in Maine federal

court and add a massive, complex case with an enormous number of non-AFFF sites to an already over-burdened MDL transferee court.  The Panel should vacate CTO-293.

## BACKGROUND

*This lawsuit.*  Maine, perhaps more than any other state, has a *bona fide* PFAS crisis, one that has made national news.  The State has responded with a multi-pronged approach including, among many other measures, a statutory ban on PFAS consumer products, emergency legislation setting maximum contaminant levels for PFAS in public drinking water, a program to remove PFAS from private drinking water wells at residential homes, a $60 million fund to help farms contaminated by PFAS in biosolid fertilizers, and this lawsuit against PFAS manufacturers for knowingly polluting the State.  The State has a small population and a limited tax base but has spent well over $100 million addressing PFAS contamination of water supplies and numerous farmlands from non-AFFF sources—money the State seeks to recover along with the much greater costs of a full cleanup.

*The State's PFAS Cases.*  Maine filed this case in 2023 against 3M and DuPont seeking recovery for pollution from defendants' consumer and industrial PFAS products, which account for the vast majority of Maine's PFAS problem.  The complaint lists several exemplar non-AFFF sites but leaves identification of nearly all of the specific sites at issue in the case for discovery; in other words, specific sites are not included in the case unless and until expressly identified by the State, rather like an opt-in class.  The complaint expressly disclaims recovery for PFAS contamination at any site that may turn out to also have any AFFF contamination.  ECF No. 4060-3 at pdf p. 50, ¶ 15.[1]  Maine filed a separate case to address PFAS contamination from AFFF manufacturers, which was removed by 3M and transferred to the MDL in 2023 without

---

[1] All of the ECF citations are to the MDL No. 2873 JPML docket unless otherwise indicated.

objection from the State.  Maine's AFFF case, which is focused on contamination at several military bases where AFFF was used, has made no case-specific progress because the MDL court has stayed for years all AFFF cases brought by states and territories.

 *3M's first notice of removal.*  In 2023, 3M removed the State's non-AFFF case, i.e., this case.  3M's theory was that AFFF contamination "may," "[u]pon information and belief," "potentially," "possibly," and "plausibly" be commingled with non-AFFF contamination near the military bases identified in the State's AFFF complaint.  ECF No. 4060-3 at pdf pp. 23–26, ¶¶ 24–30.  3M alleged that those nearby areas would be at issue in the non-AFFF case and argued that it was entitled to a federal forum to try to show such AFFF contamination exists notwithstanding the State's AFFF disclaimer.  *Id.* ¶ 4.  3M filed a Notice of Potential Tag-Along Action with the JPML.  ECF No. 1923.  In June 2023, the Clerk of the Panel declined to transfer the case because it "was not appropriate for inclusion in this MDL."  ECF No. 1926.  3M then moved the JPML for a transfer notwithstanding the Clerk's decision but the Panel denied the motion as moot when the Maine federal court granted the State's motion to remand the case to state court.  *State of Maine v. 3M Co.*, 2023 WL 4758816, at *12 (D. Me. July 26, 2023).  3M then appealed the remand order to the First Circuit but did not seek a stay of the order and thus the case returned to state court.[2]

---

[2] 3M's 2023 motion to transfer contended that the State's non-AFFF case overlapped with two public water systems, i.e., the Kennebec Water District and the Kennebunk, Kennebunkport & Wells ("KK&W) Water District, which had filed their own PFAS cases pending in the MDL. 3M then brought these sites to the Maine federal court's attention as alleged additional bases for removal.  The State responded with a declaration from its environmental agency attesting to the absence of AFFF at these public water systems (as well as at off-site locations near the military bases on which the notice of removal was based), which 3M did not rebut.  On appeal 3M informed the First Circuit that it was dropping the Kennebec and KK&W water systems as bases for federal jurisdiction.  Reply Brief of Appellant 3M Company at 25, *State of Maine v. 3M Co.*, No. 23-1709 (1st Cir. Feb. 21, 2024).

***Discovery advances rapidly in state court after the remand order.*** The state court rapidly moved the case forward. It denied 3M's motion to stay in light of the case's "lengthy procedural history." Order Denying Defendant 3M Company's Motion for Stay of all Proceedings During Pendency of its First Circuit Appeal, *State of Maine v. 3M Co.*, No. BCD-2023-65 (Me. B.C.D. Feb. 7, 2024), Ex. 1. It then resolved motions to dismiss in December 2024 and upheld the State's claims of public nuisance, private nuisance, statutory nuisance, and negligence while dismissing other claims, and ordered discovery to commence "expeditiously."[3] Discovery then moved exceptionally fast. The State produced a list of over 900 "Claimed Sites" that specified the sites at issue in the case as well as a chart drawn up using expert analysis from a chemist that identified, for purposes of causation, which defendant's PFAS chemistries were present at each Claimed Site. Such expert analysis of causation so early in a case such as this is unprecedented and moved the case significantly forward.

***3M's second notice of removal; the First Circuit's decision.*** 3M informed the state court that any sites even partially contaminated by AFFF should be "excluded from this case" because of the State's longstanding disclaimer that it would not seek relief for any sites contaminated by AFFF.[4] But when 3M received the list of 900 Claimed Sites from the State, instead of seeking such an exclusion, 3M removed the case again, in September 2025. This second removal identified seven sites where 3M again relied on allegations of merely "plausible"

---

[3] *State of Maine v. 3M Co.*, 2024 WL 5108255, at \*2–3, 5 (Me. B.C.D. Dec. 12, 2024); *State of Maine v. 3M Co.*, 2024 WL 5108256, at \*2–3, 5 (Me. B.C.D. Dec. 12, 2024); Hearing/Conference Record, *State of Maine v. 3M Co.*, No. BCD-2023-65 (Me. B.C.D. June 13, 2025), Ex. 2.

[4] Defendants' Brief in Support of their Proposed Case Management Scheduling Order and in Opposition to Plaintiff's Proposed Case Management Scheduling Order at 4–5 in *State of Maine v. 3M Co.*, No. BCD-2023-65 (Me. B.C.D. June 2, 2025), Ex. 3.

AFFF commingling.  ECF No. 4060-5 at pdf pp. 17–31, ¶¶ 2, 11, 29, 38 and pdf pp. 279–297, ¶¶ 2, 4, 12, 15, 31, 40–42, 44–47.[5]  The State did not move to remand after the second removal given the First Circuit's impending ruling on the merits of the earlier remand decision.

On November 19, 2025, the First Circuit reversed the 2023 remand order, holding that 3M was entitled to a federal forum.  *State of Maine v. 3M Co.*, 159 F.4th 129 (1st Cir. 2025). The court reasoned that Maine's disclaimer (which generally disclaimed recovery at any site with AFFF but did not name specific sites), would not obviate the need for the trial court to determine whether any particular site had AFFF.  And the court concluded that this factual determination about the presence of AFFF at a particular site was an issue relevant to a federal defense that should be decided by a federal court.  The court then found that 3M's allegations related to one of the sites in its second notice of removal, the Juniper Ridge Landfill (which was listed in the State's complaint as an exemplar site), were plausible enough to create federal officer jurisdiction.  *Id.* at 135 n.14.  With respect to 3M's allegations of AFFF contamination in its 2023 notice of removal, the court found that the State's declaration from its environmental agency had rebutted those allegations.  *Id.*  In addition, the First Circuit reaffirmed a prior decision holding that a different kind of disclaimer than what the State had made, i.e., a disclaimer that identifies defendants' conduct by location or time period, remains valid.  *Id.* at

---

[5] The sites are: the Brunswick & Topsham Water District ("BTWD"), the Hawkridge Compost Facility, the Juniper Ridge Landfill, and specified locations in the Androscoggin, Penobscot, Little Madawaska, and Aroostook Rivers.  BTWD has filed its own case, which is pending in the MDL, but has settled with 3M and the DuPont defendants, as have the two public water systems (Kennebec and KK&W) that 3M identified in its 2023 motion to transfer.  The newly removed case was given a new docket (No. 2:25-cv-00453), which the federal court subsequently consolidated with the 2023 docket (No. 2:23-cv-00210).  Unless otherwise indicated, "D. Me. ECF No." herein refers to No. 2:25-cv-000453.

139.  As allowed by the First Circuit's decision, the State has and will continue to honor its disclaimer as a matter of liability, even if jurisdiction is now in federal court.

*The State expressly excludes its claims to sites allegedly contaminated by AFFF.*  In Maine federal court, the State recently expressly excluded by name and location all sites that are on its Claimed Sites list at which (1) according to 3M, it has made plausible allegations of AFFF contamination (i.e., the Juniper Ridge Landfill and the other six sites 3M had cited as allegedly having plausible AFFF contamination in its second removal petition), *see* n.5, *supra*, or (2) is a site located in Maine in a case pending in the MDL.[6]  It did so by amending its discovery responses to drop these sites from the State's list of "Claimed Sites" in the case, by filing location-specific disclaimers in the district court, and by moving to amend the complaint to add these location-specific disclaimers to that pleading.[7]  And to be clear, Maine, which investigates the source of every PFAS site in the state, did not have reason to believe that any of these sites involved AFFF contamination at the time it disclosed its "Claimed Sites" list in discovery; in fact it only learned of the sites pending in the MDL (other than KK&W, discussed above) last week

---

[6] The sites in the MDL are the KK&W public water system, the Sanford Water District public water system, and six wastewater treatment facilities:  Scarborough Sanitary District, York Sewer District, and four facilities owned by Portland Water District (Cape Elizabeth, East End, Peaks Island, and Westbrook-Gorham).  The Kennebec Water District also has a case in the MDL, as noted above, but the State never included this system in its complaint or list of Claimed Sites in the non-AFFF case; in an abundance of caution the State expressly excluded Kennebec as well.

[7] Pltf.'s Supp. Disclaimer of any Relief for Contamination or Injury related to AFFF at 1–2 (Dec. 5, 2025), D. Me. ECF No. 52, Ex. 4; Pltf.'s Second Supp. Disclaimer of any Relief for Contamination or Injury related to AFFF at 1–2 (Jan. 21, 2026), D. Me. ECF No. 73, Ex. 5; Pltf.'s Second Supp. Resp. and Obj. to Defs. First Set of Interrogatories to Pltf. State of Maine at 5 (Nov. 20, 2025), Ex. 6; Pltf.'s Third Supp. Resp. and Obj. to Defs. First Set of Interrogatories to Pltf. State of Maine at 5–6 (Jan. 21, 2026), Ex. 7; Pltf. State of Maine's Motion to Amend Complaint to add Disclaimer at 3 (Dec. 9, 2025), D. Me. ECF No. 53, Ex. 8; Pltf. State of Maine's updated proposed amended complaint redlined against original complaint at 7–8, ¶ 15, Ex. 9.

when checking the docket in connection with drafting this motion to vacate.  In other words, Maine has never alleged or even had reason to believe that these sites include AFFF contamination and, upon learning of its municipalities' allegations of AFFF contamination, took prompt steps to exclude them from this non-AFFF case.

*Discovery continues to move forward rapidly in Maine federal court.*  The rapid pace of the case has continued after the second removal.  The federal court entered a confidentiality order and an order establishing an ESI protocol and governing the production of privilege logs. Protocol and Order Governing Discovery of Documents and Electronically Stored Information, D. Me. ECF No. 48; Confidentiality Order, D. Me. ECF No. 49.  Discovery in Maine federal court has significantly benefitted from the discovery in a sister state's nearly identical non-AFFF case, i.e., defendants have deemed as produced in Maine the same common liability documents comprising over 10 million pages as well as fact witness deposition transcripts and exhibits they previously produced in Vermont's non-AFFF case; in the Vermont case, which is not in the MDL, all fact and expert discovery is complete, the state is represented by the same outside counsel team, and the defense legal teams also overlap.  Due to an agreement among counsel, the Vermont common liability documents include the common liability documents defendants produced from the MDL.  Common liability discovery in Maine is thus complete.

The remaining discovery is Maine-specific.  At a case management hearing in October 2025, Magistrate Judge Nivison ordered the parties to "use their best efforts to complete the outstanding discovery by December 5, 2025."  D. Me. ECF No. 41, Ex. 10.  The State complied and has now produced over 6.5 million pages of documents, including the site files for approximately 900 sites.  The State's discovery of defendants is similarly focused on Maine-specific issues, including records of PFAS product sales into Maine and communications

regarding PFAS with their customers and others in Maine, which defendants did not object to producing.

*JPML proceedings; 3M's attempts to shut down discovery.*  On December 11, 2025, 3M filed a Notice of Potential Tag-along Action with the JPML based on alleged AFFF commingling at the sites in the original notice of removal (i.e., the ones where the First Circuit found that alleged AFFF commingling had been rebutted by the State's evidence and which have never been on the State's Claimed Sites list in any event), as well as the sites identified in its 2025 notice of removal.  ECF No. 4060 at 1.  3M's notice did not disclose that the State had, by that time, already expressly excluded the sites listed in 3M's 2025 removal notice from the case by way of an amended discovery response and court filing.  The Clerk of the Panel issued a conditional transfer order on December 17.  ECF No. 4066.  The State filed a Notice of Opposition to the CTO on December 23.  ECF No. 4078.

Meanwhile, 3M changed its mind about producing documents and sought to halt all discovery on the basis that it was likely to prevail in transferring the case to the MDL.  *See, e.g.*, Defendant 3M Company's Objections to Magistrate Judge Nivison's December 23, 2025 Order Regarding Discovery at 5 (Jan. 6, 2026) ("If this case is transferred, the State . . . would not be entitled to pursue the case-specific discovery it seeks here"), D. Me. ECF No. 62.  But the Magistrate Judge, after reviewing the First Circuit's decision and JPML Rule 2.1, recently rejected 3M's argument.  *See* Order Regarding Discovery at 2, D. Me. ECF No. 57 (ordering production of documents because "[d]eferring the production of the documents until after a

transfer decision is made would unreasonably delay the proceedings, particularly if the case is not transferred."), Ex. 11.[8]

**_The other PFAS case moving forward in Maine federal court._**   The State's non-AFFF PFAS case is not the only one being actively litigated in Maine federal court.  A separate non-AFFF PFAS case brought by Maine homeowners against 3M has been pending since 2021.  _See Higgins v. Huhtamaki, Inc._, No. 1:21-CV-00369-JCN, 2024 WL 4008257, at *1 (D. Me. Aug. 30, 2024).  3M is represented in _Higgins_ by some of the same counsel who represent 3M in the State's case, and the case is assigned for all purposes to the same magistrate judge who is handling discovery matters in the State's case.  _Higgins_, moreover, involves some of the same PFAS contamination source sites that are at issue in the State's case, including several land application sites in the town of Fairfield located near some of the _Higgins_ plaintiffs' contaminated properties.  _Compare_ Original Complaint in _Higgins_, at ¶¶ 3–10, Ex. 12 (identifying addresses of plaintiffs' contaminated properties) and Fourth Amended Complaint, at ¶¶ 55–58, Ex. 13 (alleging contamination of land application sites near plaintiffs' homes)_, with_ Claimed Site List at 11, Ex. 14 (listing sites adjacent to plaintiffs' properties including "Ohio Hill RD-Fairfield" (EGAD No. 141361) and "Julia 2" (EGAD No. 142099)).  In fact, 3M has served the State with four third-party document subpoenas in _Higgins_ that propound over a hundred document requests.  3M subpoena to Maine Dept. of Env't Prot., Ex. 15 ("3M DEP subpoena"); 3M subpoena to Maine Bureau of Gen. Servs., Ex. 16; 3M subpoena to Maine Ctr. for Disease Control and Prevention, Ex. 17; 3M subpoena to Maine State Archives, Ex. 18.[9]

---

[8] 3M has filed an objection to Magistrate Judge Nivison's order.  D. Me. ECF No. 62.  The State has filed a response to 3M's objection.  D. Me. ECF No. 72.

[9] DuPont also requested copies of documents produced by the State in the _Higgins_ case.  Schutz ltr. to Martin (ME DEP) (Oct. 15, 2024), Ex. 19.

These requests seek information that is relevant to the State's lawsuit against 3M, including site-related documents, communications between the Maine Department of Environmental Protection and a PFAS task force appointed by the Governor, and documents on the State's development of maximum contaminant levels for PFAS in drinking water in Maine.  *See, e.g.,* 3M DEP subpoena at 5–9, Ex. 15.  The State produced hundreds of thousands of pages of documents in response to 3M's subpoenas, which it is now in the process of re-producing in this case.

Meanwhile, the pace of the AFFF MDL has slowed considerably.  It is currently focused primarily on personal injury cases, albeit with no trial deadlines currently in place.  CMO 35 at 1, *In re: AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873-RMG (D.S.C. Aug. 15, 2025), ECF No. 7823 ("The Bellwether trial scheduled for October 20, 2025, and all related dates in CMO 26-I, are vacated until such a time as the Court deems appropriate.").  There have been no status conferences held since June 2025, and none are currently scheduled.

In short, transfer of this case will thus take it from a court where it is moving forward expeditiously on case-specific discovery with active judicial supervision, including by a magistrate judge experienced in PFAS litigation, and where there is overlap with a pending citizens' PFAS suit as well as benefits from coordinated discovery in a parallel case by a sister state, to one with no overlap that is focused on a different set of PFAS products and where case-specific discovery will be delayed for years.

## LEGAL STANDARD

A case can be transferred to an MDL only if it "involve[es] one or more common questions of fact" with cases pending in the MDL, and only if transfer will serve "the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."  28 U.S.C. § 1407(a).  In particular, the Panel has drawn a sharp distinction between

lawsuits that plead AFFF claims and lawsuits that do not, and has said that it is not enough for a

defendant like 3M to allege, or even to attest, that cases targeting non-AFFF contamination in

fact seek relief for sites with "plausible" or "possible" AFFF contamination.[10]  Instead, the Panel

has required a showing that such a case involves "substantial and concrete" AFFF claims,[11] and

has said that making this showing when no such claim appears on the face of the complaint

imposes a "significant" burden of persuasion on the proponent of transfer.[12]  Similarly, the Panel

has been clear that overlap with an existing case pending in the MDL can justify transfer only if

the overlap is "clear" and that "potential overlap" is not enough.[13]  Finally, the transfer applicant

must show that "transfer to the MDL will enhance efficiency and convenience, both in the

individual action and in the MDL overall."  Order Vacating Conditional Transfer Order at 2–3,

MDL No. 2873 (J.P.M.L. Aug. 3, 2022), ECF No. 1511.

**ARGUMENT**

**I.      This case raises no AFFF claims.**

This lawsuit pleads no AFFF claims on its face and thus 3M has a "significant" burden to

show that the case nonetheless involves "substantial and concrete" AFFF contamination.[14]  3M

---

[10] Order Denying Transfer at 2, MDL No. 2873 (J.P.M.L. Feb. 12, 2025), ECF No. 3260; *accord* Order Denying Transfer at 2, MDL No. 2873 (J.P.M.L. June 1, 2025), ECF No. 3535 ("potential for commingling of PFAS from AFFF and non-AFFF sources is not sufficient to warrant transfer"); Transfer Order at 2, MDL No. 2873 (J.P.M.L. June 2, 2025), ECF No. 3536 (3M expert declaration stating that, to a "reasonable degree of scientific certainty," AFFF contamination existed was insufficient to warrant transfer, because it showed "only the possibility of AFFF contamination").

[11] Order Vacating Conditional Transfer Order at 2–3, MDL No. 2873 (J.P.M.L. Aug. 3, 2022), ECF No. 1511; *accord* ECF No. 3260 at 4 (same).

[12] Order Denying Transfer at 3, MDL No. 2873 (J.P.M.L. Dec. 11, 2025), ECF No. 4062.

[13] *Id.* at 2 (denying transfer where there was only "potential overlap"); ECF No. 3260 ("Absent a clear overlap," transfer not warranted).

[14] ECF No. 1511 at 2-3; ECF No. 3260 at 2–3 ("Given our continued concern about the manageability of this litigation, a party seeking transfer of an action that does not on its face raise

12

has not remotely met this burden.

3M's tag-along notice seeks transfer "for the reasons explained in" its 2023 and 2025 notices of removal, ECF No. 4060 at 1, which, as noted above, merely allege that it is "plausible" that there is AFFF contamination at certain sites.  But the only sites in the removal notices that have ever been named in the State's complaint or on its list of Claimed Sites are no longer at issue in this case.  The State has expressly excluded from the case all seven of those sites, including the one site (Juniper Ridge) where the First Circuit found that 3M had made a plausible allegation of AFFF contamination.  The Panel has held that where a plaintiff moves to amend a complaint that did not allege that AFFF caused her injuries so as to exclude the part of her claim arguably implicating AFFF, transfer to the AFFF MDL is not warranted.[15]

Moreover, 3M merely seeks to base transfer on highly qualified allegations in its removal papers—i.e., allegations made "upon information and belief," and that merely describe "possible," "plausible," and "potential" contamination by AFFF.  *See* ECF No. 4060-3 at pdf pp. 23–26, ¶¶ 24–30; ECF No. 4060-5 at pdf pp. 17–31, ¶¶ 2, 11, 29, 38, and pdf pp. 279–297, ¶¶ 2, 4, 12, 15, 31, 40–42, 44–47.  The Panel has repeatedly rejected such allegations as a basis for transfer:

> As we have stated on numerous occasions in this docket, "evidence of the mere potential for commingling [of PFAS contamination from AFFF and non-AFFF sites] is insufficient to warrant transfer of an otherwise non-AFFF complaint."  At most, 3M shows only that it is plausible that PFAS contamination stemming from AFFF

---

AFFF claims bears a significant burden to persuade us that transfer is appropriate and will not undermine the efficient progress of the MDL.") (quotation omitted).

[15] *See, e.g.*, ECF No. 3260 at 3 (transfer is not warranted where a plaintiff "never attributes causation for [its] injuries to AFFF, and plaintiff has moved to amend her complaint to remove any reference to foam and to clarify that her claims pertain exclusively to PFAS-containing TOG"); ECF No. 4062 at 3 (rejecting 3M's renewed attempt to transfer the same case because "plaintiff never attributes causation for decedent's injuries to AFFF and has moved to amend her complaint to remove any references to foam.").

use at these military airfields (which are not identified in the complaints) may have contributed to the plaintiffs' alleged injuries.

ECF No. 3260 at 2 (quoting Order Denying Transfer at 3, MDL No. 2873 (J.P.M.L. Oct. 4, 2023), ECF No. 2129); *accord* ECF No. 3535 at 2 (mere "potential" for AFFF contamination is "not sufficient to warrant transfer."). The Panel has drawn this line because of its concern about the manageability of an already enormous MDL and the inefficiencies that would result from injecting "far more site-specific issues, different modes of PFAS contamination, and different PFAS chemicals" into the MDL. ECF No. 3260 at 2.[16]

The Panel's rulings on transfer in cases brought by other states are consistent with rejecting transfer here. In the decisions granting transfer, the states in question explicitly sought relief for AFFF contamination.[17] In fact, there appears to be only one case where this Panel has considered whether to transfer a case like this one—and the Panel rejected transfer, based on facts that are essentially identical to those here. Just like Maine, New Hampshire filed a complaint that did "not include AFFF claims on its face." ECF No. 1511 at 2. 3M tried to transfer the New Hampshire case based on allegations that showed only "the potential for commingling" by AFFF at certain sites included in the case. *Id.* But the Panel rejected transfer,

---

[16] To the extent 3M seeks to rely on the allegations in its first notice of removal, there are no sites in that pleading that have ever been included in the State's non-AFFF case. The First Circuit, moreover, rejected 3M's allegations of AFFF contamination from this notice of removal in light of the State's unrebutted evidence. *See State of Maine*, 159 F.4th at 135 n.14.

[17] Transfer Order at 2, MDL No. 2873 (J.P.M.L. Dec. 13, 2022), ECF No. 1646 (granting transfer because Wisconsin "expressly allege[d] contamination from AFFF use and even identifie[d] several sites in its complaint that were allegedly contaminated by AFFFs."); *In re AFFF Prods. Liab. Litig.*, MDL No. 2873, 2021 WL 755083, at *4 (J.P.M.L. Feb. 4, 2021) (Michigan case "involve[d] allegations that the groundwater in Michigan was contaminated by PFOS and/or PFOA stemming from use of AFFF products."); Transfer Order at 1, MDL No. 2873 (J.P.M.L. June 2, 2020), ECF No. 650 (New Mexico "allege[d] that groundwater near military bases was contaminated through the use of AFFFs").

because these allegations did not suffice to carry 3M's "significant burden" to show that transfer was warranted.  *Id.*  As the Panel has emphasized in other cases, "[i]f *potential* causation or contribution arguments are sufficient . . . , then a large number of cases that do not assert AFFF claims might be swept into this litigation."  *In re AFFF Prods. Liab. Litig.*, 765 F. Supp. 3d 1379, 1381 (J.P.M.L. 2024).

In short, the State has excluded from the case any site where 3M has alleged commingled AFFF contamination and, in any event, 3M's allegations of plausible and possible commingling of AFFF contamination do not suffice.  3M has failed to carry its "significant burden" to show that this case in fact includes "substantial and concrete" AFFF claims.

## II.    There is no clear overlap nor common question of fact between this case and cases in the AFFF MDL.

3M's other apparent basis for seeking transfer is alleged overlap with cases in the MDL. ECF No. 4060 at 1.  The Panel has required "clear overlap" between the "sites at issue" in the State's case and MDL actions and has held that "potential overlap" is not enough.[18]  Here, there is no overlap at all, much less a clear one.

The State has now expressly excluded from this case three public water systems and six wastewater treatment facilities that are the only Maine sites at issue in the MDL as far as Maine is aware.  It has done so via amended discovery responses, stand-alone express disclaimers identifying the sites by name and location and by the filing of a motion to amend the complaint. In short, all that can be done to eliminate any overlap with the MDL, the State has done.  And here again, the Panel's case law denying transfer where the plaintiff never alleged that AFFF

---

[18] ECF No. 3260 at 3 ("clear overlap" required); ECF No. 4062 at 2 ("potential overlap" not enough).

caused its injuries and has moved to amend the complaint to remove any arguable basis for AFFF is directly on point. *See supra* pp. 12-14 & nn.15–16.

Moreover, the cases where the Panel has ordered transfer due to overlap with MDL cases show that the overlap must be very clear and substantial to support transfer, especially in a multi-site case. For example, the Panel transferred a case brought by Illinois, but only because "multiple [public water system] complaints in the MDL involve the same water sources as the State of Illinois complaint," and the Illinois complaint sought relief for "many" sites that also were the subject of actions in the MDL. Transfer Order at 2, MDL No. 2873 (J.P.M.L. June 5, 2023), ECF No. 1927. Illinois, unlike Maine, did not exclude the overlapping sites from its case but sought to engage the Panel in a "merits review" of the overlapping complaints. *Id.* And even on those facts, the Panel found that transfer was a "close[] question." *Id.* The Panel also transferred a case by Oklahoma but the state's complaint there sought recovery for contamination at a single site that was already at issue in a municipality's case in the MDL, which meant that Oklahoma not only did not exclude the site from its case but could not do so. *See* Transfer Order at 2–3, MDL No. 2873 (J.P.M.L. Dec. 11, 2025), ECF No. 4061.

The transfer orders 3M cites in its tag-along notice are also entirely different from this case. The Wausau case sought relief for contamination in six drinking water wells, even though Wausau itself had brought a case pending in the MDL based exclusively on the same six drinking water wells. Transfer Order at 2-3, MDL No. 2873 (J.P.M.L. June 2, 2025), ECF No. 3536. The Savannah and Opelika transfers were similar, because in both cases the cities sought to recover for contamination of a single drinking water supply that was also at issue in personal injury cases pending in the MDL. *Id.*; Transfer Order at 2, MDL No. 2873 (J.P.M.L. Oct. 9, 2025), ECF No. 3869. In all three cases, the overlap between the sites in the transferred case and

the sites in the MDL case was total and complete.  Here, there is no overlap because of the State's recent actions to expressly exclude any sites at issue in the MDL from the case.  But even had the State not taken such action, any overlap of a few sites would have been truly *de minimis* in comparison to the ~900 sites at issue in this case.  Put in practical terms, where two cases both turn on contamination of a single water supply or set of drinking water wells, it can be said to "promote the just and efficient conduct of the actions" to consolidate them in one court.  28 U.S.C. § 1407(a).  But what 3M is proposing here is to take this case away from a court that has already overseen discovery over approximately *900* sites, all so that the MDL court can coordinate discovery (at some point in the distant future) over just a few of these sites that the State has expressly excluded from the case.

In short, the State is not aware of any overlap between this case and any case in the MDL—but even if there were such an overlap, it would be far too small to make it "efficient" or "just" to take this case away from the federal judges in Maine that are managing it so actively and carefully.

### III.     Far from being efficient or convenient, transfer would bring this case to a screeching halt.

The JPML has held that "it must appear" based upon the pleadings and the record that "transfer to the MDL will enhance efficiency and convenience, both in the individual action and in the MDL overall."  ECF No. 1511 at 2–3.  Here, precisely the opposite would result.  Denying transfer would enhance efficiency and convenience in both this case and the MDL and allow the case to continue to make meaningful and substantial progress toward resolution in Maine federal court.  Transfer would undermine efficiency in both courts.

It is hard to overstate how quickly this large and complex case has made progress in its home jurisdiction.  The Maine state court, after resolving the motions to dismiss, required

17

discovery to proceed at a breathtaking pace, including by requiring the State to causally connect each of 900 sites to specific defendants with the assistance of expert analysis; the State complied and provided defendants with a chart attributing the PFAS chemistries to each defendant at each of the Claimed Sites.  And since September 2025, when 3M re-removed the case, the Maine federal court has closely superintended the case with status conferences and discovery orders, including a confidentiality order, an ESI protocol, an order requiring the parties to complete the production of case-specific discovery within two months, and a follow up order requiring defendants to produce by the end of this month notwithstanding this motion to transfer.  *Supra* pp. 8–10.  The State has made 31 rolling productions of over 6.5 million pages of "site file" documents for non-AFFF PFAS sites in Maine.  *Supra* p. 8.  The parties, represented by many of the same lawyers litigating the nearly identical Vermont non-AFFF case, have agreed to use in Maine the same general liability documents and fact witness deposition transcripts and exhibits from the Vermont case, which itself includes the general liability discovery from the MDL.  The State additionally expects to use many of the same plaintiff-side experts as in the Vermont case (in fact it already has begun doing so by employing the same chemist to assist with the causation chart discussed above).  On top of all this, the State has also produced hundreds of thousands of documents to 3M in response to 3M's four subpoenas in the *Higgins* PFAS case pending in the same Maine federal court, which includes overlapping sites.  The State is now in the process of reproducing the *Higgins* documents in this case as well.  *Supra* p. 11.  This ongoing, remaining discovery is case-specific.

In short, transfer is not warranted because this case is "being managed effectively" in its current district, *In re AFFF Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1396 (J.P.M.L. 2018), and

because there is "ample scope to achieve efficiencies," ECF No. 4062, through an overlapping case pending in Maine, as well as with the parallel Vermont case.

Notably, non-AFFF cases brought by other states have advanced significantly toward resolution in their home jurisdictions, including cases by Illinois, New Hampshire, New Jersey, North Carolina, and Vermont.[19]  For example, the Vermont case has proceeded through expert discovery, as has North Carolina's case.  *State ex rel. Jackson v. E.I. du Pont de Nemours & Co.*, 2025 WL 2254178, at *2 (N.C. Super. Ct. Aug. 7, 2025), *petition for cert. filed*, No. 436A21-2 (N.C. Sept. 26, 2025).  And New Jersey reached a pre-trial settlement with 3M worth up to $450 million and a settlement with DuPont partway through trial valued at over $2 billion.[20]  Allowing this case to proceed in Maine federal court will provide similar opportunities for resolution on a time horizon that would be well out of reach if the case were sent to the MDL.

Transfer would not only cause a lengthy delay in the progress in Maine's case, it also would pointlessly increase Judge Gergel's workload.  This is because of the "immense difficulties the transferee judge has faced in organizing [the MDL] litigation and efficiently moving it forward."[21]  For this reason, the JPML held just last month that it "remain[s]

---

[19] *State of New Hampshire v. 3M Co.*, 132 F.4th 556, 563 (1st Cir. 2025) (remanding case to state court); *Illinois ex rel. Raoul v. 3M Co.*, 2025 WL 3605873, at *5 (C.D. Ill. Nov. 26, 2025) (remanding case to state court for second time, *appeal pending* No. 25-3133 (7th Cir.)); *State of Vermont v. 3M Co.*, 152 F.4th 103, 105 (2d Cir. 2025) (ongoing litigation of 2019 non-AFFF PFAS lawsuit).

[20] https://www.njoag.gov/ag-platkin-and-dep-commissioner-latourette-announce-historic-settlement-of-up-to-450-million-with-3m-for-statewide-pfas-contamination/; https://www.njoag.gov/ag-platkin-dep-commissioner-latourette-landmark-settlement-with-dupont-valued-at-over-2-billion/.

[21] ECF No. 4062 at 2; *accord* Order Denying Transfer at 3, MDL No. 2873 (J.P.M.L. Dec. 18, 2019), ECF No. 541 ("concern" that an MDL including non-AFFF cases "could quickly become unwieldy has not disappeared" and "we have no desire to unnecessarily complicate the transferee judge's task in efficiently managing this litigation"); *see also* Order Denying Transfer and Vacating Conditional Transfer Order at 1, *In re: Nat'l Prescription Opiate Litig.*, MDL No. 2804 (J.P.M.L. Apr. 8, 2022), ECF No. 9586 (multidistrict litigation "is not static" and the relative

unconvinced" that expanding the MDL is "prudent or necessary at this time."  ECF No. 4062.

The MDL court has not held a status conference since June 2025, and no status conferences are

currently scheduled for the future.  Yet 3M proposes to send a case involving a vast number of

non-AFFF sites to the AFFF MDL all because of a smattering of allegedly AFFF sites that the

State expressly disclaims here.

The bottom line is that efficiency, convenience and justice here point strongly away from

transfer to the MDL.  Transfer would take a large, complex case focused on case-specific

discovery on hundreds of non-AFFF PFAS sites from a federal judge and magistrate in Maine

who have invested time and attention in moving it toward resolution and where it benefits from

overlap with another Maine federal case and coordination with Vermont's parallel state case.

Doing so would not only cause significant delay but would burden a severely overworked MDL

court, all based on an alleged connection to AFFF that is, at best, trivial and conjectural and is no

longer even a connection since the State has expressly excluded the relevant sites.  And during

this lengthy delay the State will continue to spend millions trying to control a grave and growing

public health threat.  There would be nothing efficient, convenient or just about such a transfer.

## CONCLUSION

The State respectfully requests the Panel vacate CTO-293.

Dated: January 22, 2026                              Respectfully submitted,

                                                     STATE OF MAINE

                                                     AARON M. FREY
                                                     ATTORNEY GENERAL

                                                     /s/ Matthew F. Pawa

---

merits of transfer can change over time where "common discovery has largely been completed, several bellwether trials have been prepared" and "myriad claims have been resolved through substantial settlements").

20

Matthew F. Pawa
Benjamin A. Krass
Gillian C.A. Cowley
Pawa Law Group, P.C.
1280 Centre Street, Suite 230
Newton Centre, MA  02459
(617) 641-9550
mp@pawalaw.com
bkrass@pawalaw.com
gcowley@pawalaw.com

Scott Boak
Mark Bower
Assistant Attorneys General
6 State House Station
Augusta, Maine 04333
(207) 626-8566
scott.boak@maine.gov
mark.bower@maine.gov

Kyle J. McGee
Viola Vetter
Grant & Eisenhofer P.A.
123 Justison Street
Wilmington, DE 19801
Tel: (302) 622-7000
kmcgee@gelaw.com
vvetter@gelaw.com

21