**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS (AFFF) PRODUCTS LIABILITY LITIGATION | MDL Docket No. 2873 |

**RESPONSE OF UNITED STATES OF AMERICA IN OPPOSITION TO MOTION FOR TRANSFER OF *CITY OF NEWBURGH* ACTION FOR COORDINATED PRETRIAL PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407**

**INTRODUCTION**

Pursuant to Rule 6.1(c) of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, the United States of America and three of its agencies (collectively, the "United States"), by and through their attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York, respectfully submit this response to the motions (Dkt. Nos. 1, 2, and 4) of three manufacturer defendant groups (collectively the "Manufacturers," and specifically, Tyco Fire Products LP ("Tyco"), Chemguard, Inc. ("Chemguard"), and 3M Company ("3M")) to transfer and consolidate for coordinated pretrial proceedings more than 80 varying actions presenting claims that in one way or another involve the Manufacturers' products.

The Panel should deny the motion as to the *only* proposed transferee case in which the United States or any federal agency is a party, *City of Newburgh v. United States et al.*, No. 18-cv-7057 (KMK) (S.D.N.Y.)—or, at a minimum, sever the claims in the *City of Newburgh* action against the United States from the dissimilar claims against the Manufacturers, and transfer only the Manufacturer claims pursuant to the pending motions. Of the 75 actions concerning aqueous film-forming foams ("AFFF") that are subject to Tyco's initial motion, 66 of them involve *only*

1

state-law claims against 3M, Tyco, Chemguard, and other manufacturer defendants.[1] *City of Newburgh*, by contrast, has 24 defendants, most of which are not sued in any other proposed transferee action. *City of Newburgh*'s principal claims are not its tort claims against the Manufacturers, but—unlike in any other proposed transferee case—environmental claims against the United States, the State of New York, and others seeking injunctive and other relief under federal environmental law. The *City of Newburgh* plaintiff asserts that these environmental claims are of pressing public health importance to Newburgh, New York, and its residents. Moreover, *City of Newburgh*'s non-common defendants are largely New York-based and would be unreasonably burdened if transfer out of their home district were ordered.

Yet the Manufacturers characterize *City of Newburgh* and more than 80 other widely varying actions as being predominantly about the Manufacturers' conduct and liability. In so doing, the Manufacturers exaggerate the commonality of manufacturer-related issues, and oversimplify and downplay the importance of other issues raised, at least as relates to *City of Newburgh*. The United States therefore urges that, if multidistrict litigation ("MDL") is authorized, *City of Newburgh* not be transferred to an MDL court. This kind of partial grant of a proposed transfer and consolidation is appropriate where some but not all of the proposed transferee actions meet the statutory requirements for transfer, but other proposed transferee actions do not. *See, e.g.*, *In re Light Cigarettes Mktg. & Sales Practices Litig.*, 652 F. Supp. 2d 1379, 1380-81 (JPML 2009) (declining to transfer three actions that differed in significant ways

---

[1] The additional actions proposed for consolidation by 3M's motion are even further afield, as they do not even involve the manufacture of AFFF products, but instead relate to the manufacture of other products containing per- or polyfluoroalkyl substances ("PFAS") by 3M and others.

from another eight, which were centralized).  *See* Point I, *infra*.

In the alternative, to the extent the Panel believes efficiency will be served by transferring as many claims against the Manufacturers as possible for consolidated discovery, the Panel could sever and transfer the product liability and tort claims against the Manufacturers from *City of Newburgh* to proceed before an MDL court, while not transferring the claims against the United States and its agencies, given the local focus of *City of Newburgh*'s claims against the United States and those claims' lack of commonality with the other proposed transferee actions.  *See* Point II, *infra* (citing prior instances of separate Panel treatment of differing claims).

## BACKGROUND

The Manufacturers propose to transfer more than 80 cases to an MDL court, relying on the asserted commonality of issues generally relating to Manufacturer knowledge and conduct, and issues concerning the alleged toxicity of the Manufacturers' products.  *See generally* Dkt. Nos. 1, 4.  The Manufacturers emphasize efficiency gains that they believe can be achieved by unifying the judicial management of all pretrial proceedings regarding Manufacturer-related claims.  *Id.*  This response focuses on *City of Newburgh*, the one proposed transferee case to which the United States is a party, and therefore neither summarizes contentions nor takes any position as to actions that involve only state-law tort claims against the Manufacturers.[2]

*City of Newburgh* is the sole proposed transferee case to which the United States or any federal agency is a party, the sole case involving federal environmental law claims concerning

---

[2] The United States nevertheless does not concede that consolidation is appropriate as to all other cases at issue, some of which are of dubious commonality—for example such as (1) tort claims relating to 3M's manufacture in Alabama of Scotchgard fabric protection products, as compared to (2) claims arising from the use of chemically distinct AFFF products at other, non-overlapping locations, and also involving AFFF products made by other companies.

the alleged use of AFFF products, and one of only eight of the 80-plus proposed transferee cases that the United States has identified involving claims regarding the *use* of AFFF products, rather than their manufacture. In *City of Newburgh*, the City seeks injunctive relief regarding what it characterizes as an ongoing public health threat arising from alleged contamination of Newburgh's municipal water supply, assertedly resulting from discharge of chemicals found in AFFF products from a nearby airport and Air National Guard base, and possibly other facilities. *See generally* Complaint, Dkt. No. 35, No. 18-cv-7057 (KMK) (S.D.N.Y.) (the "Complaint"). *City of Newburgh* involves 24 defendants, including the United States and three federal agencies, the State of New York and other state entities, the Port Authority of New York and New Jersey, airport operators, and other non-manufacturing parties. *Id.* The Complaint asserts 13 causes of action, the first six of which are not even asserted against the Manufacturers, generally arising from use of one or more of the Manufacturers' products, as opposed to the products' design or manufacture. *Id.* The *Newburgh* Complaint implicates substantial site-specific factual issues including causation and mechanisms of alleged contamination of the City's municipal water supply, and the federal defendant claims arise under federal environmental statutes that are not at issue in any of the other manufacturer AFFF actions, and only in two of 3M's additional proposed non-AFFF actions. *See id.* Causes of Action 1-3.

## ARGUMENT

**I.      THE PANEL SHOULD NOT TRANSFER *CITY OF NEWBURGH***

Transfer under 28 U.S.C. § 1407 is authorized where three requirements are met: (1) one or more cases raise common issues of fact are pending in different districts; (2) transfer would serve the convenience of the parties and witnesses; and (3) transfer would promote the just and

4

efficient conduct of the actions.  The overarching goal of such transfers is to "assure the 'just and efficient' conduct of such actions."  *In re New York City Mun. Sec. Litig.*, 572 F.2d 49, 51 (2d Cir. 1978).  In particular, a party moving for consolidation "must bear the burden of showing the commonality of factual and legal issues in different actions," and a court should examine the underlying facts "with close attention" before ordering consolidation.  *In re Repetitive Stress Injury Litig.*, 11 F.3d 368, 373 (2d Cir. 1993), *on reh'g,* 35 F.3d 637 (2d Cir. 1994) (internal quotation marks omitted).  The Panel is "typically hesitant to centralize litigation against multiple, competing defendants which marketed, manufactured and sold similar products."  *In re Yellow Brass Plumbing Component Prod. Liab. Litig.*, 844 F. Supp. 2d 1377, 1378 (JPML 2012).  The requirements for consolidation are not met here, at a minimum, as to the *City of Newburgh* case.

    A.  **The Commonality Requirement Is Not Met as to *City of Newburgh***

As noted, *City of Newburgh* is brought against four federal government defendants and 20 additional defendants, many of which are not Manufacturers.  The case concerns alleged contamination of Newburgh's principal water reservoir and supply, allegedly resulting from acts of numerous parties, including the operators of a nearby airport and Air National Guard base.  Unlike most cases subject to the transfer motion, the claims against the United States in *City of Newburgh* include no tort claims.

Meanwhile, as the Manufacturers concede, *City of Newburgh* is the *only* proposed transferee case involving United States Government defendants[3]; it involves claims under federal

---

[3] Both Tyco and 3M urge the panel to consider possible future federal actions.  But the Panel should focus on the cases that are actually before it, and should reject any argument that transfer

environmental statutes that are not implicated in any other proposed AFFF transferee cases, and only some of which are raised in only two of the (even less factually related) non-AFFF cases against 3M; and it involves claims against the State of New York, the Port Authority of New York and New Jersey, and other local parties that are not common to many or all of the other proposed transferee cases.  The issues under the federal environmental actions will, broadly speaking, be site-specific: *City of Newburgh*'s Clean Water Act[4] claim stems from alleged violations of specific wastewater discharge permits that are applicable to the airport and Air National Guard base in Newburgh for specific bodies of water in the surrounding area, and its CERCLA and RCRA claims[5] will similarly focus on site-specific factual and legal issues.  *See In re Monsanto PCB Water Cont. Litig*, 176 F. Supp. 3d 1379, 1380 (JPML 2016) (denying consolidation in part because "[t]he factual questions relating to the alleged contamination of each of [six different] bodies of water undoubtedly will differ—particularly as plaintiffs do not allege that Monsanto directly contaminated these waters, but rather that PCBs manufactured by Monsanto and incorporated into other products thereafter leached into the environment.  Similarly, the facts relating to regulation of these waters and plaintiffs' remediation efforts is likely to differ significantly."); *cf. In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*,

---

is warranted based on conceivable future filings.  The Panel is "disinclined to take into account the mere possibility of future filings in [its] centralization calculus."  *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.*, 959 F. Supp. 2d 1375, 1376 (JPML 2013); *In re Zimmer, Inc., Centralign Hip Prosthesis Prods. Liab. Litig. (No. II)*, 366 F. Supp. 2d 1384, 1385 (JPML 2005) (observing of "prospect of additional actions that are or may soon be pending" that "such actions are not now before the Panel, and their pendency does not create a persuasive reason for transfer of the five . . . actions that are").

[4] 33 U.S.C. § 1251 *et seq.  See* Complaint, Cause of Action 2.

[5] The Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.*; the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.  See* Complaint, Causes of Action 1 and 3.

33 F. Supp. 3d 259, 267-71 (S.D.N.Y. 2014) (rejecting proposed settlement of environmental claims, in part, because of lack of sufficient discovery specific to individual sites and corresponding factual information regarding damages). Indeed, CERCLA cases have been noted as often "aris[ing] differently from most other complex litigation." *See* Manual for Complex Litigation (Fourth) § 34.11.

Next, the presence of so many non-recurring parties and non-common issues makes *City of Newburgh* inappropriate for transfer and consolidated handling. Indeed, the Panel has previously rejected consolidation for just these sorts of reasons. *See, e.g.*, *In re Proton-Pump Inhibitor Prod. Liab. Litig.*, 273 F. Supp. 3d 1360, 1361 (JPML 2017) (denying centralization where "[a]lthough AstraZeneca is sued in most of the actions, . . . P & G is sued in only eight, Takeda in four, and Pfizer in two"); *In re: Cordarone (Amiodarone Hydrochloride) Mktg., Sales Practices & Prod. Liab. Litig.*, 190 F. Supp. 3d 1346, 1347 (JPML 2016) ("Given the different defendants sued in these actions, centralization appears unlikely to serve the convenience of a substantial number of parties and their witnesses." (footnote omitted)); *In re Ambulatory Pain Pump-Chondrolysis Prod. Liab. Litig.*, 709 F. Supp. 2d 1375, 1377 (JPML 2010) (denying consolidation when the actions did not name the same defendants, and where, as here, "several defendants are named in but a handful of actions").

The Manufacturers' linkage of the proposed transferee cases based on the existence of claims of negligence or product liability is insufficient to overcome the differences among many of the cases, and specifically the unmistakable divergence of *City of Newburgh*—including different plaintiffs, different defendants, a different focus (use of AFFF products rather than the manufacture of both AFFF products and other non-AFFF products containing PFAS), different

alleged mechanisms of injury, different legal theories, and resulting likely needs for differing case management approaches.  Precisely these types of differences render consolidation inappropriate, even in the face of arguments that the movant otherwise will struggle to defend a large number of lawsuits around the country.  *See, e.g.*, *In re Table Saw Prods. Liab. Litig.,* 641 F. Supp. 2d 1384, 1384 (JPML 2009) (transfer and consolidation denied, notwithstanding argument that "[t]he 42 constituent actions all arise from accidents in which the subject plaintiffs were injured by table saws, and all plaintiffs advance a theory that those saws are defective because, inter alia, they lack 'flesh detection' technology"; common issues "are overshadowed by the non-common ones. Each action arises from an individual accident that occurred under necessarily unique circumstances").  The same considerations apply when the movant articulates common issues in toxic tort cases.  *See In re American-Manufactured Drywall Prods. Liab. Litig.,* 716 F. Supp. 2d 1367, 1368 (JPML 2010) ("[T]he different manufacturer defendants produced the drywall using different, proprietary techniques and different sources. The proponents of centralization have not convinced us that any efficiencies from centralization would outweigh the multiple individualized issues, including ones of liability and causation, that these actions appear to present.").

Meanwhile, the Panel has recognized that coordination without transfer or consolidation, rather than transfer and consolidation under section 1407, is preferable when it is feasible—as it certainly is in the case of *City of Newburgh.  See In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*, 469 F. Supp. 2d 1348, 1350 (JPML 2006) (concluding that "voluntary cooperation between [a proposed transferor court] and the transferee court on matters of overlapping concern will result in a prompt and efficient disposition of the entire litigation without transfer").  Indeed,

the Panel has "emphasized that centralization under Section 1407 should be the last solution after considered review of all other options." *In re Express Courier Intern'l Inc. Fair Labor Standards Act (FLSA) and Wage and Hour Lit.*, --- F. Supp. 3d ---, MDL No. 2854, 2018 WL 3725839, at *1 (JPML, Aug. 1, 2018) (citing *In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (JPML 2011)). Here, if MDL consolidation is approved as to cases that truly center on each Manufacturer's production of AFFF products, and on their conduct and culpability, the Southern District of New York court presiding over *City of Newburgh* could coordinate case management and discovery in connection with claims against the Manufacturers, to the extent necessary, with the Manufacturer-oriented discovery directed in a Manufacturer-centered MDL, if the Panel authorizes one.

B.   **Efficiency and Convenience Weigh Against Consolidating *City of Newburgh***

Nor should the Panel accept the Manufacturers' unsupported assumption that transfer and consolidation necessarily will support the statutory objectives of promoting just and efficient resolution of claims, or serving the convenience of witnesses and the parties. As the Second Circuit has cautioned and explained, "[t]he systemic urge to aggregate litigation must not be allowed to trump [the courts'] dedication to individual justice, and we must take care that each individual plaintiff's—and defendant's—cause not be lost in the shadow of a towering mass litigation." *In re Repetitive Stress Injury Litig.*, 11 F.3d 368, 373 (2d Cir. 1993) (holding that even though the cases were in the early stages of litigation, they involved too many different sites and injuries to consolidate them, and citing a number of additional Second Circuit cases on

point).[6] And here, there are innumerable case-specific issues among the cases proposed for transfer, and, again, *City of Newburgh* centers on many locality-specific issues that will not recur in the other proposed transferee cases, including the City of Newburgh's principal claims stemming from use of AFFF products under various environmental statutes, which have little connection to the Manufacturers.

Transfer and consolidation also are unwarranted in *City of Newburgh* because there is a severe risk that such a transfer to an MDL court would result in the subordination of issues arising under environmental statutes, including the allegedly time-sensitive question of responsibility to address Newburgh's alleged water quality issues, until after the resolution of claims pertaining directly to the Manufacturers' possible liability for the manufacture of AFFF and other products. Such a subordination or delay in adjudication would be contrary to Newburgh's asserted urgent need to determine responsibility for the alleged contamination of its water system, and its asserted need to compel funding of mitigation or replacement measures.

And, of course, most persons with relevant knowledge about Newburgh's water supply and possible mitigation or replacement measures are located in and near the Southern District of New York—not in some potentially distant transferee jurisdiction. In determining whether to consolidate, a court not only looks at commonality, but also "weighs the saving of time and effort consolidation would produce against any inconvenience, delay, or expense that it would cause." *Huene v. United States*, 743 F.2d 703, 704 (9th Cir. 1984) (Rule 42). That required

---

[6] *In re Repetitive Stress Injury* involved a proposed transfer under Rule 42, not § 1407, and, because Rule 42 transfers include trial, the prejudicial effect of transfer would have been even greater than had the issue been a proposed § 1407 transfer. The concerns voiced by the *Repetitive Stress Injury* court nevertheless apply in the § 1407 context as well.

analysis cuts strongly against the proposed transfer of *City of Newburgh*.  Any benefits of the proposed transfer can be replicated by coordination, either with MDL-led discovery protocols that are imposed in consolidated cases that truly are focused on Manufacturer defendants, or by coordination protocols that can be developed across a number of cases involving the Manufacturers.  Meanwhile, there is a great risk of delay, expense, and prejudice to the many non-Manufacturer parties and claims at issue in *City of Newburgh*, which a transferee MDL court would logically tend to view as subordinate or follow-on issues to be addressed only after core common issues relating to the Manufacturers were resolved.

**II.     IN THE ALTERNATIVE, THE PANEL SHOULD TRANSFER, AT MOST, ONLY PART OF *CITY OF NEWBURGH***

Finally, if the Panel favors consolidation of cases brought against the Manufacturers, it could avoid the pitfalls of transferring the environmental claims against the United States by separating claims in *City of Newburgh*, such that the Panel would transfer the product liability-type claims against the Manufacturers to an MDL court, while leaving the environmental claims against the United States and other non-Manufacturer defendants to be litigated in the Southern District of New York.  That would entail not transferring Causes of Action 1-3 in the *City of Newburgh* Complaint, which are the causes of action asserted under environmental statutes against the United States and others (not including the Manufacturers), as well as Causes of Action 12 and 13 as against the United States, which seek indemnification and restitution and which, as against the United States, are presumably interrelated with the asserted statutory violations that are the only independent substantive claims asserted against the United States.

Section 1407(a) "empowers the Panel to accomplish 'partial' transfer by (1) transferring an action in its entirety to the transferee district, and (2) simultaneously remanding to the

11

transferor district any claims for which transfer was not deemed appropriate." Manual for Complex Litigation (Fourth) § 20.131. The Panel on a number of occasions has separated and remanded discrete portions of pending lawsuits where they present distinct issues. For instance, in *In re Countywide Fin. Corp. Mortgage Backed Sec. Litig.*, 812 F. Supp. 2d 1380, 1383-84 (JPML 2011), the Panel consolidated four cases, while excluding eight others from centralization, and also separated and simultaneously remanded counts in one of the complaints "because these claims are distinct from claims made against the Countrywide defendants." There, as here, the "complaint is essentially two separate complaints," *id.*—in *City of Newburgh*, a principal complaint against the United States and others concerning use of AFFF products, and a second complaint against the Manufacturers regarding their manufacture of AFFF products. *See also, e.g., In re IntraMTA Switched Access Charges Litig.*, 67 F. Supp. 3d 1378, 1380 (JPML 2014) (agreeing that claims against one defendant were not related to the common claims in other cases, and accordingly separating and remanding those claims); *In re Aredia & Zometa Prod. Liab. Litig.*, 429 F. Supp. 2d 1371, 1372-73 (JPML 2006) (separating and remanding certain claims, which were brought against different defendants and involved different pharmaceutical products); *In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*, 469 F. Supp. 2d 1348, 1350 (JPML 2006) (transferring several cases, but excluding a California state law claim that was unique and therefore was not transferred for MDL proceedings); *In re Seroquel Prod. Liability Litig.*, 447 F. Supp. 2d 1376, 1379 (JPML 2006) (separating and remanding claims which involved different defendants and different prescription medications; these "claims do not share sufficient questions of fact with the claims against AstraZeneca [the principal defendant] in the other actions to warrant inclusion" in the MDL); *In re Vioxx Prod.*

*Liability Litig.*, 360 F. Supp. 2d 1352, 1354-55 (JPML 2005) (separating and remanding claims that dealt with a different drug and thus did not share "sufficient questions of fact" with other consolidated actions concerning Vioxx); *In re Alien Children Education Litig.*, 482 F. Supp. 326 (JPML 1979) (separating claims against individual school districts from an MDL consolidating other actions against state education agency, as the claims against the school district defendants would "involve only minimal, if any, common questions of fact"); *In re Antibiotic Drugs*, 309 F. Supp. 155, 156 (JPML 1970) (separating and remanding a single count because "the just and efficient conduct of all of the civil actions involved in this multidistrict litigation will be best served by severing" the claim and leaving it in the initial district).

## CONCLUSION

The Manufacturers' motions to transfer and consolidate should be denied, at a minimum, as to *City of Newburgh v. United States et al.*, No. 18-cv-7057 (KMK) (S.D.N.Y.); in the alternative, any consolidation and transfer of *City of Newburgh* should be limited in scope to exclude the claims against the United States.

Dated: New York, New York
October 19, 2018

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

By:    *s/ David S. Jones*
DAVID S. JONES
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Tel.: (212) 637-2739
Fax: (212) 637-2730
Email: David.Jones6@usdoj.gov

13