**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: Aqueous Film-Forming Foams (AFFF) Products Liability Litigation | MDL No. 2873<br>This Document Relates To:<br><br>*Ridgewood Water v. 3M Co., et al.*,<br>No. 2:19-cv-09651 (D.N.J.) |

### RESPONSE IN OPPOSITION BY 3M COMPANY, TYCO FIRE PRODUCTS, LP, CHEMGUARD, INC., BUCKEYE FIRE EQUIPMENT COMPANY, AND NATIONAL FOAM, INC. TO RIDGEWOOD WATER'S MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-10)

Defendants 3M Company; Tyco Fire Products, LP; Chemguard, Inc.; Buckeye Fire Equipment Company; and National Foam, Inc. (collectively, "Defendants"), by and through their undersigned counsel, respectfully submit this Response In Opposition to Plaintiff Ridgewood Water's Motion to Vacate Conditional Transfer Order (CTO-10) ("Motion to Vacate").

In CTO-10, the Panel noted that this case involves "questions of fact that are common to the actions previously transferred to the District of South Carolina and assigned to Judge Gergel," and thus should be transferred to MDL No. 2873. *See* ECF No. 404 at 1. Plaintiff does not—and, given the allegations in its Complaint, cannot—contest that its case shares questions of fact with the previously-transferred cases, and offers no valid basis for the Panel to vacate CTO-10.

Plaintiff's principal argument is that this case should not be transferred to the MDL because it was improperly removed, and thus there is no federal subject matter jurisdiction. But the Panel has consistently held that such jurisdictional issues do not present an impediment to transfer, and where such an objection is raised, it is customary for the Panel to transfer the case

1

so that the MDL Court may decide the issue. That approach makes particular sense here, because the MDL Court has already considered and denied a motion to remand filed by the State of New York, and has before it another pending motion to remand, raising similar objections to the assertion of federal officer jurisdiction. And Plaintiff's other arguments against transfer are virtually identical to arguments in opposition to transfer that the Panel has already rejected in its initial Transfer Order (*In re Aqueous Film-Forming Foams Prods. Liab. Litig.* ("*In re AFFF*"), 357 F. Supp. 3d 1391 (J.P.M.L. 2018)) and/or its subsequent Transfer Order (ECF No. 384). Accordingly, Plaintiff's motion to vacate CTO-10 should be denied.

> **Plaintiff's Motion To Vacate Should Be Denied, And This Case Should Be Transferred To The MDL.**
>
> **A.     Plaintiff Does Not Contest That This Case Shares Questions Of Fact With The Cases Already Transferred To The MDL.**

In its initial Transfer Order, the Panel found that in each of the "AFFF actions" subject to the transfer motions, "plaintiffs allege that AFFF products used at airports, military bases, or certain industrial locations caused the release of PFOA or PFOS into local groundwater and contaminated drinking water supplies." *See In re AFFF*, 357 F. Supp. 3d at 1394. The Panel further found that "[w]ith some minor variations, the same group of AFFF manufacturer defendants is named in each action," and that the AFFF actions "share factual questions concerning *the toxicity of PFOA and PFOS and their effects on human health; the chemical properties of these substances and their propensity to migrate in groundwater supplies; the knowledge of the AFFF manufacturers regarding the dangers of PFOA and PFOS; their warnings, if any, regarding proper use and storage of AFFFs; and to what extent, if any, defendants conspired or cooperated to conceal the dangers of PFOA and PFOS in their*

*products.*" *Id.* "Additionally," the Panel observed, "the AFFF manufacturers likely will assert identical government contractor defenses in many of the actions." *Id.*

In its Memorandum, Plaintiff does not dispute that, like the dozens of cases already transferred, its case asserts claims arising out of alleged PFOA/PFOS groundwater contamination caused by the use of AFFF manufactured by Defendants. *See*, *e.g.*, ECF No. 429-1 at 5 (asserting that "potential sources" of its alleged contamination "are locations where commercial AFFF was stored or used") (citing Compl. ¶¶ 64-67, 71); *id.* (asserting that "AFFF use by non-federal consumers at fire readiness and suppression sites in northern Bergen County, New Jersey" "may have contributed to Ridgewood's injuries," because "[t]hese sites are located upstream and upgradient of Ridgewood, with a clear and direct pathway for contaminants to migrate to Ridgewood's wells[] or [are] near enough that PFOA and PFOS releases would have directly impacted those wells") (citing Compl. ¶¶ 66-67). *See also id.* at 10 (referring to claim that "Defendants used PFOA and PFOS in formulating commercial AFFF and other products" that they sold to customers "e.g., the Ridgewood Fire Department"); *id.* at 12 (asserting that the "injurious conduct" it alleges is "Defendants' design, manufacture, and sale of PFOA and PFOS products, including commercial AFFF"); *id.* at 17 n.7 ("Ridgewood's Complaint alleges . . . that Defendants knew of the environmental and health dangers of PFOA and PFOS for decades and failed to warn consumers or the public."). Moreover, the Defendants here include the same manufacturing defendants that the Panel acknowledged to be involved in some combination, depending on the case, in *every* action already transferred to the MDL. *In re AFFF*, 357 F. Supp.

3d at 1394.[1] Thus, transferring this case to the MDL will "serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation." *Id.*

Indeed, Plaintiff's Complaint is replete with allegations concerning many of the same factual issues identified by the Panel in its initial Transfer Order. *See*, *e.g.*, Compl. ¶ 2 (alleging that PFOA/S products that Defendants "manufactured, marketed, sold, and/or promoted" included "aqueous film-forming foam ('AFFF'), a firefighting product used on flammable liquid fires"); *id.* ¶ 5 (alleging that "Defendants manufactured, marketed, sold, and/or promoted" PFOA/S and/or products containing PFOA/S "with the knowledge that those compounds would be discharged to the land and water in New Jersey . . . during firefighting training and rescue exercises and in firefighting emergencies, among other normal and foreseeable uses"); *id.* ¶ 10, 14-17 (alleging that various Defendants "manufactured, marketed, promoted, distributed, and/or sold" AFFF containing PFOA and/or PFOS in New Jersey); *id.* ¶¶ 23-29 (allegations concerning "PFOA and PFOS: Their Chemical Characteristics, Risks, and Regulatory Standards"); *id.* ¶¶ 30-34 (allegations concerning "Defendants' Production of PFOA and PFOS Products," including AFFF); *id.* ¶¶ 35-41 (allegations concerning "Defendants' Production and Commercialization of AFFF"); *id.* ¶¶ 42-63 (allegations concerning "Defendants' Knowledge of Threats Posed by Their PFOA and PFOS Products"); *id.* ¶ 66 (alleging that "[f]or decades, Defendants did not warn AFFF users of PFOA and PFOS's existence in AFFF, the hazards associated with PFOA

---

[1] The Complaint also names as defendants E.I. Du Pont De Nemours and Company, The Chemours Company, and Honeywell International Inc. DuPont/Chemours entities are also named as defendants in at least one other case (*City of Dayton v. 3M Co. et al.*, No. 2:18-cv-3496 (D.S.C.)) already transferred to the MDL and three other cases (*Town of East Hampton v. 3M Co., et al.*, No. 2:19-cv-00642 (E.D.N.Y.), *Schaap, et al. v. 3M Co., et al.*, No. 2:19-cv-00105 (D.N.M.), and *Teune et al. v. 3M Co., et al.*, No. 2:19-cv-00162 (D.N.M.)) that are subject to conditional transfer orders (CTO-4, CTO-5, and CTO-6, respectively).

and. PFOS in AFFF, or the mobility and persistence of PFOA and PFOS released to the environment when AFFF was used as instructed by Defendants by spraying it directly on the ground during fire training exercises"); *id.* ("alleging that "[t]he use of AFFF to extinguish fires allowed PFOA and PFOS to escape into the ground and migrate to surrounding public and private drinking water wells" and that "[a]s such, sites where AFFF was used, including fire training areas, sites of past emergency response incidents, airports, and other areas where AFFF has been stored and accidentally released, are substantial contributors to PFOA and PFOS contamination"); *id.* (alleging that "[t]hroughout the time AFFF containing PFOA and PFOS have been used, the instructions, warning labels, and material safety data sheets that were provided with the AFFF by the Defendants did not fully identify and notify customers, users, regulators, public water suppliers, or the public concerning the health and environmental hazards of AFFF, of which Defendants knew or should have known."); *id.* ¶ 67 (alleging that "[t]here are several known AFFF release sites near Ridgewood's wells that likely have contributed to the release of Defendants' PFAS and consequent contamination of Ridgewood's wells, including, but not limited to, municipal facilities such as the Bergen County Law and Public Safety Institute in Mahwah and the Ridgewood Fire Department in the Village of Ridgewood; and locations of past fire suppression activities, such as the site of a large fire in 2015 at an electrical substation on Hopper Road near Ho-ho-kus Brook."); *id.* ¶ 71 (alleging PFOA/S contamination of "groundwater that supplies Ridgewood's production wells" from sources including "fire suppression and training sites" and "AFFF storage sites"). *See also id.* ¶¶ 1, 3, & 4.

In short, the Panel should deny Plaintiff's motion to vacate CTO-10 because, just as in *In re Bridgestone/Firestone, Inc.*, this action indisputably involves "common questions of fact with the actions in this litigation previously transferred" to the MDL. *See* 542 F. Supp. 2d 1361, 1362 (J.P.M.L. 2008). *Accord* ECF No. 384 at 3 (denying the State of New York's and State of Ohio's motions to vacate CTOs because "[t]he State plaintiffs . . . likewise assert claims against AFFF manufacturers relating to PFOA and PFOS contamination of groundwater drinking supplies, and their actions will entail many of the same factual questions presented in the MDL"); *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 2018 WL 3768753, at *1 (J.P.M.L. Aug. 1, 2018) (denying motions to vacate conditional transfer orders where "Plaintiffs do not dispute that their actions share multiple factual issues with those already in the MDL").

**B.    None Of Plaintiff's Arguments Provides A Basis For Vacating The Conditional Transfer Order.**

    **1.    Plaintiff's Challenge To Federal Officer Jurisdiction Provides No Basis For Vacating The CTO; If Anything, The Pendency Of Plaintiff's Motion To Remand *Supports* Transfer In The Interest Of Judicial Economy.**

Plaintiff devotes almost the entirety of its Memorandum (*see* ECF No. 429-1 at 6-17) to the argument that Defendants improperly invoked federal officer jurisdiction as the basis for removal, that the case should be remanded to state court, and thus that the Panel should not transfer the case because "the Transferee Court will not have jurisdiction over it." *See* ECF No. 429-1 at 2. But Plaintiff's focus on the supposed lack of federal jurisdiction is misplaced, for it is well-established that "Section 1407 does not empower the MDL Panel to decide questions going to the jurisdiction or the merits of a case, including issues relating to a motion to remand." *In re*

6

*Ivy*, 901 F.2d 7, 9 (2d Cir. 1990). Rather, even where a proper "jurisdictional objection is pending," it is customary for the Panel to transfer the case with "that objection to be resolved by the transferee court." *Id. See also Royal Park Investments SA/NV v. Bank of Am. Corp.*, 941 F. Supp. 2d 367, 371 (S.D.N.Y. 2013) ("the JPML has repeatedly cited to *Ivy* in support of holding that cases with pending remand motions . . . should be transferred to the MDL court for resolution of those motions").

The Panel's recent decision in *In re Johnson & Johnson* is a case in point. There too, "[i]n support of their motions to vacate, plaintiffs primarily argue[d] that federal subject matter jurisdiction over their actions [was] lacking, and that plaintiffs' motions for remand to state court [were] pending." 2018 WL 3768753, at *1. But the Panel denied plaintiffs' motions to vacate the CTOs, explaining that "such jurisdictional issues generally do not present an impediment to transfer" and that "Plaintiffs can present their remand arguments to the transferee judge." *Id.* (citation and footnote omitted). *Accord*, *e.g.*, *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 2017 U.S. Dist. LEXIS 66101, at *2 (J.P.M.L. May 1, 2017) ("The Panel often has held that jurisdictional issues do not present an impediment to transfer, as plaintiffs can present arguments regarding those issues to the transferee judge.").[2]

Indeed, Plaintiff's argument that the case should be remanded because there is no federal officer jurisdiction only underscores that the case *should* be transferred to the MDL because

---

[2] The Defendants dispute Plaintiff's contention that there is no basis here for the assertion of federal officer jurisdiction in this case. As shown in the Memorandum Of Law In Opposition To Plaintiff's Motion to Remand, this case was properly removed because there is, at the very least, a plausible basis to believe that the PFAS contamination allegedly affecting Ridgewood's water supply originates in part from the Teterboro Airport's federally-mandated use of military-grade AFFF products and that Defendants have a viable government contractor defense. *See Ridgewood Water v. 3M, et al.*, No. 19-cv-09651 (D.N.J.) (ECF No. 19). But as discussed in the text, the fact that Plaintiff contends otherwise provides no basis for vacating the CTO.

where, as here, a jurisdictional issue arises in multiple cases, there are "real economies" in allowing the MDL Court to resolve remand motions: "Once transferred, the jurisdictional objections can be heard and resolved by a single court . . . . Consistency as well as economy is thus served." *In re Ivy*, 901 F.2d at 9; *see also Aguilar v. Merck & Co.*, 2005 WL 8159736, at *2 (E.D.N.Y. Nov. 22, 2005) ("the 'preferable practice' in MDL litigation is to allow the transferee court to resolve jurisdictional issues that implicate common questions of law and fact arising in numerous cases").

That principle applies here, where the Panel created the *In re AFFF* MDL in part because "the AFFF manufacturers likely will assert identical government contractor defenses in many of the actions." *See* 357 F. Supp. 3d at 1394. Moreover, the existence of a colorable government contractor defense forms the basis for the removal not just of this action, but of numerous cases already transferred to the MDL,[3] and the MDL Court has already considered, and denied, a motion to remand filed by the State of New York that challenged removal based on the assertion of federal officer (and federal enclave) jurisdiction. *State of New York v. 3M Co. et al.*, No. 2:19-cv-01022 (D.S.C. May 24, 2019) (ECF No. 48). In addition, another motion to remand challenging the assertion of federal officer jurisdiction is already pending in another case in the MDL, *see Eynon v. The 3M Co. et al.*, No. 2:18-cv-03365 (D.S.C.), and plaintiffs in other cases transferred to the MDL have indicated an intent to file similar motions to remand. *See Kervin v. 3M Co. et al.*, No. 2:18-cv-03558 (D.S.C.) (ECF No. 6); *Andrews et al. v. Port Auth. of N.Y. & N.J.*, No. 2:18-cv-03521 (D.S.C.) (ECF No. 6). These circumstances counsel in favor of denial of

---

[3] Before the formation of this MDL, Judge Seybert issued a detailed opinion in one such case, denying remand and resolving jurisdiction in the Manufacturing Defendants' favor. *Ayo v. 3M Company*, 2018 WL 4781145, at *15 (E.D.N.Y. Sept. 30, 2018).

Plaintiff's motion to vacate the CTO so as to allow the MDL Court to resolve the federal officer jurisdiction issue in this case as well as the others already transferred. As the Panel recognized in its initial Transfer Order, "[t]he efficiencies to be gained through centralized treatment" of such common questions "are considerable." *In re AFFF*, 357 F. Supp.3d at 1394. Transfer of this case would not only "prevent inconsistent pretrial rulings" on the federal officer jurisdiction issue, but also "conserve the resources of the parties, their counsel, and the judiciary." *Id.*

### 2. Plaintiff's Argument That The Case Should Not Be Transferred Because It May Involve Some Sites At Which Non-MilSpec AFFF Was Used Is Meritless.

Plaintiff's next argument—that this case should not be transferred because it supposedly "does not involve federally-regulated MilSpec AFFF," which is "*the focus of the MDL*" (ECF No. 429-1 at 17-18)—fares no better. As discussed above (*see* p. 7 n. 2), whether this case "involve[s] federally-regulated MilSpec AFFF" is very much in issue. And in any event, as the Panel's April 2, 2019 Transfer Order denying New York's and Ohio's motions to vacate makes clear, "that defendants' potential government contractor defense may not be applicable to some sites" at issue in a case "*does not weigh against centralization*." ECF No. 384 at 2 (emphasis added). Indeed, the Panel noted, "[m]ultiple contamination sites *already* at issue in the MDL involve *non-military firefighting or industrial facilities*," and "[t]ransfer under Section 1407 does not require a complete identity of factual and legal issues when the actions, as they do here, arise from a common factual core." *Id.* (emphasis added). *Accord*, *e.g.*, *In re BP Sec.*, *Derivative & ERISA Litig.*, 734 F. Supp. 2d 1380, 1383 (J.P.M.L. 2010) (transfer under Section 1407 does not require "a complete identity or even a majority of common factual and legal issues"). That reasoning applies with equal force here.

### 3. Plaintiff's Suggestion That This Case Should Be Treated As A "Non-AFFF Case" Is Disingenuous Given Its Own Allegations Of Injury Stemming From The Use Of AFFF.

Finally, Plaintiff argues that this case should not be transferred because "its allegations of PFOA and PFOS contamination are much broader than the manufacture and use of AFFF," and that this case "most closely resembles the non-AFFF cases" against 3M that the Panel declined, in its initial Transfer Order, to include in the MDL. *See* ECF No. 429-1 at 19. But Plaintiff's suggestion that the Panel should treat this as a "non-AFFF" case is foreclosed both by Plaintiff's own AFFF allegations and by what the Panel actually said in its initial Transfer Order.

In denying Defendant 3M Company's motion to include certain non-AFFF actions in the MDL, the Panel observed that those actions "*do not involve allegations relating to AFFFs*," but, rather, relate *entirely* to 3M's sale of other sorts of products containing PFAS ("an umbrella term that includes PFOS and PFOA") or its manufacture, management, or disposal of PFAS at its manufacturing facilities. *In re AFFF*, 357 F. Supp.3d at 1392 (emphasis added). In stark contrast, as shown in Section A above, this case shares many common issues with the cases already transferred to the MDL, because Plaintiff's Complaint *does* "involve allegations relating to AFFFs" and Plaintiff expressly asserts claims against the Defendants based on alleged contamination of its water supplies *from the use of AFFF*. *See*, *e.g.*, Compl. ¶ 67 ("There are several known AFFF release sites near Ridgewood's wells that likely have contributed to the release of Defendants' PFAS and consequent contamination of Ridgewood's wells"); ECF No. 429-1 at 5 (asserting that "AFFF use by non-federal consumers at fire readiness and suppression sites in northern Bergen County, New Jersey" "may have contributed to Ridgewood's injuries,"

10

because "[t]hese sites are located upstream and upgradient of Ridgewood, with a clear and direct pathway for contaminants to migrate to Ridgewood's wells or [are] near enough that PFOA and PFOS releases would have directly impacted those wells"). Plaintiff's *additional* allegations regarding *other* products containing PFOS and PFOA do not convert this into a "non-AFFF" case like those excluded from the Panel's initial Transfer Order.

The Panel did not contemplate that cases would qualify for transfer to the MDL only if the claims relate "solely" to AFFF, and such a limitation would be untenable in any event because even in cases where the plaintiffs' claims cite AFFF as the only alleged source of PFOA or PFOS contamination, it is open to the Defendants in the MDL to allege—and to take discovery seeking to show—that the contamination actually arises in whole or in part from other PFOA or PFOS sources for which those Defendants are not responsible. Thus, "non-AFFF" sources are potentially at issue in *every* AFFF case, and as noted above, the Panel has already recognized in the *In re AFFF* proceedings that "[t]ransfer under Section 1407 does not require a complete identity of factual and legal issues when the actions, as they do here, arise from a common factual core." ECF No. 384 at 2. The possibility that other sources contributed to the alleged PFOS and/or PFOA contamination, as Plaintiff asserts, does not eliminate the factual issues that this case shares with those already transferred or obviate the need for coordination across cases involving AFFF with respect to the numerous common factual issues identified by the Panel. On the other hand, requiring the parties to litigate outside the MDL the AFFF issues that are clearly presented simply because the case may also present some non-AFFF issues would inevitably lead to just the sort of duplication of effort and inefficiencies that the Panel's Transfer Order was intended to forestall. *See In re AFFF*, 357 F. Supp. 3d at 1395 (expressly declining to "exclude *any* of the

AFFF actions from the MDL" and explaining that if any actions "entail unique factual or legal issues, the transferee court has the discretion to address those issues through the use of appropriate pretrial devices, such as separate tracks for discovery and motion practice") (emphasis added).[4]

## CONCLUSION

For the foregoing reasons, the Panel should deny Plaintiff's motion to vacate CTO-10.

---

[4] None of the cases cited in Plaintiff's Memorandum provides grounds for granting the Motion to Vacate. For example, Plaintiff cites *Creative Home Accents, LLC v. Fifth Third Bancorp (In re Checking Account Overdraft Litig.)*, 818 F. Supp. 2d 1373, 1374 (J.P.M.L. 2011), in which the Panel granted a motion to vacate and found that transfer would "significantly hinder the resolution of the already-centralized actions." *See* ECF No. 429-1 at 18. But in that case, the MDL had been centralized more than two years before and was "quite mature," with the transferee judge having already set actions for trial. *Creative Home Accents*, 818 F. Supp. 2d at 1373. The Panel recognized that "the relative merits of transferring new tag-along actions to an ongoing MDL can change over time," and relied on the advanced progress of that MDL in granting the motion to vacate. *Id.* Here, in contrast, the Panel centralized the MDL only a few months ago, and MDL proceedings are in their early stages. The concerns underlying the Panel's ruling in *Creative Home Accents* simply do not apply here.

Similarly, the Panel in *In Re: Abbott Labs, Inc.*, 763 F. Supp. 2d 1376 (J.P.M.L. 2011), was considering an initial motion to centralize five actions into a new MDL. *See id.* at 1376. Plaintiff points to the Panel's finding in *Abbott Labs* that individual facts in those actions would "predominate," *see* ECF No. 429-1 at 18, but the Panel there stressed that the proponents of centralization "failed to convince" it that any shared factual questions among the "relatively few actions" at issue were "sufficiently complex and/or numerous" to justify transfer. 763 F. Supp. 2d at 1377. In creating this MDL, however, the Panel already concluded that the many cases at issue shared "common questions of fact" such that transfer was warranted, and recognized that "[t]he efficiencies to be gained through centralized treatment of common factual questions in such a large litigation are considerable." *In re AFFF*, 357 F. Supp. 3d at 1394; *accord* ECF No. 384 at 1 (the "numerosity of locations and actions, and the lack of practicable alternatives to centralization to address the common factual and legal questions, was one of the reasons we centralized this litigation").

DATED: May 29, 2019

Respectfully submitted,

| | |
|---|---|
| **3M Company** | **Tyco Fire Products LP and Chemguard, Inc.** |
| /s/ Daniel L. Ring | /s/ Liam J. Montgomery |
| Daniel L. Ring | Stephen D. Raber |
| MAYER BROWN LLP | Joseph G. Petrosinelli |
| 71 South Wacker Drive | Liam J. Montgomery |
| Chicago, Illinois 60606 | J. Liat Rome |
| Tel: (312) 782-0600 | WILLIAMS & CONNOLLY LLP |
| Fax: (312) 701-7711 | 725 Twelfth Street, N.W. |
| dring@ mayerbrown.com | Washington, DC 20005 |
| | Telephone: (202) 434-5000 |
| Attorney for 3M Company | Facsimile: (202) 434-5029 |
| | sraber@wc.com |
| | jpetrosinelli@wc.com |
| | lmontgomery@wc.com |
| | jrome@wc.com |
| | |
| | Attorneys for Tyco Fire Products LP and Chemguard, Inc. |
| **Buckeye Fire Equipment Co.** | **National Foam, Inc.** |
| /s/ Michael L. Carpenter | /s/ Keith E. Smith |
| Michael L. Carpenter | Keith E. Smith |
| GRAY LAYTON KERSH SOLOMON FURR & SMITH, PA | Greenberg Traurig, LLP |
| 516 S. New Hope Road | 1717 Arch Street, Suite 400 |
| Gastonia, NC 28052 | Philadelphia, PA 19103 |
| 704-865-4400 | Tel:   215 988 7800 |
| mcarpenter@gastonlegal.com | smithkei@gtlaw.com |
| | |
| Attorney for Buckeye Fire Equipment Co. | Attorney for National Foam, Inc. |