**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: AQUEOUS FILM FORMING FOAMS (AFFF) PRODUCTS LIABILITY LITIGATION | MDL No. 2873<br><br>This Document Relates to:<br><br>*State of New Mexico v. United States*, No. 1:19-cv-00178-KWR-JFR (D.N.M.) |

**RESPONSE OF TYCO FIRE PRODUCTS, LP, CHEMGUARD, INC., AND 3M COMPANY IN OPPOSITION TO STATE OF NEW MEXICO'S MOTION TO VACATE CONDITIONAL TRANSFER ORDER NO. 26**

Tyco Fire Products, LP, Chemguard, Inc., and 3M Company, through their undersigned counsel, respectfully submit this Response in Opposition to the State of New Mexico's Motion to Vacate Conditional Transfer Order No. 26 ("CTO-26").[1]

In CTO-26, the Panel found that *State of New Mexico v. United States*, No. 1:19-cv-00178 (D.N.M.), appears to involve "questions of fact that are common to the actions previously transferred to the District of South Carolina and assigned to Judge Gergel" and accordingly should be transferred to MDL No. 2873. *See* CTO-26 at 1, ECF No. 603. That finding is unquestionably correct. The Amended Complaint in *State of New Mexico* asserts claims arising from alleged environmental releases of aqueous film-forming foam ("AFFF") containing perfluorooctane sulfonate ("PFOS") and perfluorooctanoic acid ("PFOA"). In creating the MDL, this Panel

---

[1] Although Tyco, Chemguard, and 3M are not parties to the *State of New Mexico v. United States* action, they are defendants in the vast majority of the actions that currently comprise this MDL, and Joseph G. Petrosinelli and Michael A. Olsen, Tyco/Chemguard's and 3M's respective lead counsel, are co-lead counsel for the defendants in the MDL. Tyco, Chemguard, and 3M, along with other defendants in MDL member actions, would be prejudiced if the *State of New Mexico* action were allowed to proceed outside the MDL, as that arrangement could well result in inconsistent pretrial rulings, duplicative discovery, and a waste of resources.

1

concluded that all actions involving environmental discharges of AFFF share factual questions that warrant centralization, and that it "will not exclude any of the AFFF actions from the MDL." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1395 (J.P.M.L. 2018) ("Initial Transfer Order").  The arguments of the State of New Mexico ("the State") for vacating CTO-26 are just quarrels with the Panel's rationale for creating the MDL in the first place.  In addition, while we recognize that responsibility for assigning cases to MDLs rests solely with this Panel, it is worth noting that Judge Gergel has expressed his view that *State of New Mexico* belongs in the AFFF MDL.  *See* Ex. A at 50–56.

Accordingly, the Panel should deny the State's Motion to Vacate.

### THE PANEL SHOULD DENY THE STATE'S MOTION TO VACATE CTO-26 AND TRANSFER THIS ACTION TO THE MDL.

**A.     This Case Involves Questions of Fact in Common with the Cases Already Transferred to the MDL.**

The Panel's order establishing MDL No. 2873 centralized a group of cases alleging that "AFFF products used at airports, military bases, or certain industrial locations caused the release of PFOA or PFOS into local groundwater and contaminated drinking water supplies."  Initial Transfer Order, 357 F. Supp. 3d at 1394.  Those cases, the Panel found, "share factual questions" including those "concerning the toxicity of PFOA and PFOS and their effects on human health; [and] the chemical properties of these substances and their propensity to migrate in groundwater supplies."  *Id.*  The Panel noted that centralization of pre-trial proceedings in AFFF cases would "eliminate duplicative discovery; prevent inconsistent pretrial rulings (including with respect to discovery, privilege, and *Daubert* motion practice); and conserve the resources of the parties, their counsel, and the judiciary."  *Id.*  The Panel concluded that all then-existing AFFF actions would be centralized in the MDL, notwithstanding that some of the cases were more "procedurally advanced" than others.  *Id.* at 1395.

This case is undoubtedly an "AFFF action[]" as contemplated by the original transfer order. *Id.* The State's Amended Complaint alleges that the use of AFFF products at Cannon Air Force Base and Holloman Air Force Base has caused the release of PFOA and/or PFOS into groundwater and drinking water, thereby requiring remedial measures. Am. Compl. ¶¶ 20–116. Putting aside the specific identity of the sites, the allegations in *State of New Mexico* are shared with all of the 150+ cases currently in the MDL. Like the claims in those cases, the Amended Complaint raises questions of fact concerning the toxicity of PFOA and PFOS and their effects on human health, *id.* ¶¶ 24–30, 35–39; and concerning their chemical properties and propensity to migrate in groundwater, *id.* ¶¶ 20–23, 54–116. An essential element of the State's claims is that "Defendants' discharges and the resulting contamination at Cannon and Holloman have created an imminent and substantial endangerment to human health and the environment." *Id.* ¶ 3. In connection with its claim under the federal Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 et seq., the State alleges that "[t]he hazardous substances present at Cannon and Hollomon, including but not limited to PFAS, as described herein, [are] 'hazardous wastes' as defined in 42 U.S.C. § 6903(5), because . . . they 'cause, or significantly contribute to an increase in mor[t]ality or an increase in serious irreversible, or incapacitating reversible, illness' and 'pose a substantial present or potential hazard to human health or the environment.'" *Id.* ¶ 146. The State makes similar allegations in support of its claim under the New Mexico Hazardous Waste Act ("NMHWA"), N.M.S.A. §§ 74-4-1 to -14. *Id.* ¶¶ 124, 137.

Factual commonalities with MDL cases exist at an even more granular level. Cannon Air Force Base, one of the two sites of AFFF use involved in the State's case, is the alleged source of the groundwater contamination at issue in four cases filed by private plaintiffs—the *Schaap* and

*Teune* plaintiffs—that already are part of the MDL.² This Panel transferred two of those cases to the MDL over plaintiffs' objections. *See* June 5, 2019, Transfer Order at 1–3, ECF No. 446. The other two cases were direct-filed in the MDL. As this Panel has held with regard to other governmental plaintiffs, excluding the State's action from the MDL "would result in a duplication of efforts" as the case "involve[s] the same allegations regarding contamination" of groundwater around the subject Air Force bases. Initial Transfer Order, 357 F. Supp. 3d at 1396; *see also* Apr. 2, 2019, Transfer Order at 1, ECF No. 384 (transferring cases brought by the States of New York and Ohio because sites of alleged AFFF use at issue in their complaints "already are at issue in actions brought by non-state entities pending in the MDL" and "[t]ransfer of these actions thus will reduce the potential for duplicative discovery and pretrial practice").

    **B.**    **None of the State's Arguments Provides a Basis for Vacating CTO-26**.

           **1.**    **There Is No Basis for the State's Contention that This Action Is Fundamentally Different from All of the Other AFFF Cases.**

The State argues that its action "lacks any . . . relevant factual commonality with the MDL." Mem. in Supp. of Pls.' Mot. to Vacate Conditional Transfer Order No. 26 ("State Mem.") at 5, ECF No. 618-1. That assertion is plainly incorrect for the reasons explained above. The State's efforts to differentiate its case from the AFFF actions that already have been transferred to the MDL rest on distinctions without any legally relevant difference.

The State highlights that it has not named AFFF manufacturers as defendants. State Mem. at 4. But the MDL is not a collection of cases brought only against AFFF manufacturers; it is a centralization of *AFFF actions*. *See* Initial Transfer Order, 357 F. Supp. 3d at 1395. Several other

---

² The *Schaap* and *Teune* plaintiffs have each filed two cases arising from the same facts: one against manufacturing defendants and one against certain federal defendants. *Schaap v. 3M Co.*, Case No. 2:19-cv-01644-RMG (D.S.C.); *Schaap v. United States*, Case No. 2:19-cv-03288-RMG (D.S.C.); *Teune v. 3M Co.*, Case No. 2:19-cv-01645-RMG (D.S.C.); and *Teune v. United States*, Case No. 2:19-cv-03290-RMG (D.S.C.).

4

cases in the MDL involve claims brought against the United States.  For example, the *Schaap* and *Teune* plaintiffs have filed actions that name only federal government defendants: the United States, the U.S. Department of Defense, and the U.S. Air Force.  Compl., *Schaap v. United States*, Case No. 2:19-cv-03288-RMG (D.S.C. filed Nov. 21, 2019) (Dkt. No. 1); Compl., *Teune v. United States*, Case No. 2:19-cv-03290-RMG (D.S.C. filed Nov. 21, 2019) (Dkt. No. 1).  More generally, the Panel has already rejected the argument that claims against "non-manufacturer defendants" should proceed outside the MDL, noting that such claims "appear inextricably linked to the claims against the manufacturer defendants."  Initial Transfer Order, 357 F. Supp. 3d at 1396 n.12.

      The State suggests that, despite the allegations of its Amended Complaint, the toxicity and health effects of PFOA and PFOS are not *really* in question here because "the United States has not disputed the toxicity of PFAS compounds."  State Mem. at 5.  The United States has not disputed the toxicity of PFAS compounds because the case is at an early stage—the United States has not yet answered the Amended Complaint and has so far elected to defend itself on other grounds.  To ultimately show that PFAS compounds are "hazardous" and give rise to an "imminent and substantial endangerment," the State will be required to adduce facts relating to the alleged toxicity of the chemicals.  In any event, the State does not dispute that its claims implicate other issues in common with MDL actions, such as the chemical properties of PFOA and PFOS and their tendency to migrate in groundwater.

      In a related vein, the State argues that this case does not warrant inclusion in the MDL because the Amended Complaint makes "no allegations of personal injury that would require discovery relevant to the toxicity of PFAS for purposes of establishing causation."  *Id.*  The Panel has made clear that this is no impediment to transfer.  In creating the MDL, the Panel noted that the then-existing universe of AFFF cases included not only personal-injury cases but also "class

actions seeking to represent individuals who live near sites where AFFF was used and assert claims for medical monitoring and property damage, and cases brought by water authorities and other governmental entities seeking costs for environmental remediation or upgrades to water treatment systems." Initial Transfer Order, 357 F. Supp. 3d at 1395. The Panel held that all of these cases fell within the category of "AFFF actions" subject to centralization because they "involve the same mode of [alleged] groundwater contamination caused by the same product." *Id.* Since then, and for the same reasons, the Panel has held that the MDL properly encompasses AFFF actions brought by States in their sovereign capacity, which obviously do not include personal-injury claims. *See* Apr. 2, 2019, Transfer Order at 1–2 ("That the States bring their claims as *parens patriae* or on behalf of a public trust does not significantly diminish the factual overlap with the claims pending in the MDL.").

Finally, the State argues that "the legal claims and defenses, and thus the discovery arising therefrom, are not the same as those in the AFFF Products Liability MDL." State Mem. at 6. But "[t]ransfer under Section 1407 does not require a complete identity of factual and legal issues when the actions, as they do here, arise from a common factual core," Apr. 2, 2019, Transfer Order at 2, and the claims and defenses in the case are not unique as compared to other actions already in the MDL. Other plaintiffs have asserted RCRA claims against the United States. *See* 2d Am. Compl. ¶¶ 346–62, *City of Newburgh v. United States*, No. 2:18-cv-03358-RMG (D.S.C. filed Aug. 21, 2019) (Dkt. No. 226); Am. Compl. ¶¶ 132–43, *County of Westchester v. United States*, Case No. 2:19-cv-01724-RMG (D.S.C. filed Dec. 17, 2019) (Dkt. No. 56). And even if the State is the only AFFF plaintiff to assert a claim under the NMHWA (so far), a principal defense of the United States to that claim—sovereign immunity—is one that will arise in every MDL case in which a

state-law claim is raised against the United States.³  *See, e.g.*, Am. Compl. ¶¶ 144–58, *County of Westchester v. United States*, Case No. 2:19-cv-01724-RMG (D.S.C. filed Dec. 17, 2019); Am. Compl. ¶¶ 225–62, *Security Water Dist. v. United States*, No. 2:19-cv-02187-RMG (D.S.C. filed Oct. 21, 2019) (Dkt. No. 30); 2d Am. Compl. ¶¶ 415–42, *City of Newburgh v. United States*, No. 2:18-cv-03358-RMG (D.S.C. filed Aug. 21, 2019).  The inclusion of a unique cause of action in a case does not preclude its transfer to the MDL where, as here, there is significant overlap of factual issues with MDL actions.  *See, e.g.*, Apr. 2, 2019, Transfer Order at 2 (transferring cases brought by the States of New York and Ohio to AFFF MDL notwithstanding that "they bring some unique claims") (citing *In re Oxycontin Antitrust Litig.*, 542 F. Supp. 2d 1359, 1360 (J.P.M.L. 2008) ("[T]he presence of additional or differing legal theories is not significant when the actions still arise from a common factual core . . . .")).

## 2. Transfer Will Not Impose An Undue Burden on the State.

The State asserts in conclusory fashion that "[t]ransfer would be extremely inconvenient to the State and its witnesses, all of whom are located in New Mexico."  State Mem. at 8.  But transfer does not mean that the witnesses will be required to travel to the District of South Carolina.  Pretrial discovery of the State's witnesses can take place in New Mexico.  Given that the four *Schaap/Teune* actions involving Cannon Air Force Base are already in the MDL, transfer of this

---

³ In fact, Judge Gergel has recognized the importance of the sovereign immunity defense, and discovery on that issue is proceeding apace in the MDL.  *See* Ex. B at 55 (noting the need to "get the discovery finished on immunity issues" because "governmental immunity" is one of the "Number 1" priorities in the MDL).  The State acknowledges as much in its brief, even while disclaiming the possibility of inconsistent rulings if this case proceeded outside of the MDL.  State Mem. at 7 (citing same).

The United States has also repeatedly noted the primacy of the sovereign immunity issue in the MDL.  *See* Ex. A at 21 (counsel for the United States asserting at an MDL status conference that "sovereign immunity" is one of two "key issues in this case . . . at the first level, at the highest level"); Ex. C at 25 (counsel for the United States stating her belief that, "as the Court has echoed," the need to "address sovereign immunity issues . . . up front").

case to the MDL is virtually certain to be *more* convenient for site-specific document custodians and witnesses, who can avoid duplicative discovery if there is coordination of pretrial proceedings among all cases involving that facility. In addition, it seems likely that this case and many other AFFF cases already in the MDL will implicate some of the same federal government documents and witnesses related to the Air Force's use, transport, and storage of AFFF in general. Transfer of this action will achieve economies as to those sources of facts.

Moreover, the Panel has regularly rejected self-focused "convenience" arguments of the sort the State advances, emphasizing that the relevant inquiry is the *overall* convenience of the parties and witnesses, not the convenience of any one litigant. *See, e.g.*, *In re Johnson & Johnson Talcum Powder Prods. Mkt'g, Sales Practices & Prods. Liab. Litig.*, MDL No. 2738, 2018 WL 3768753, at *1 (J.P.M.L. Aug. 1, 2018) ("Transfer of an action is appropriate if it furthers the expeditious resolution of the litigation taken as a whole, even if some parties to the action might experience inconvenience or delay."); *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1351–52 (J.P.M.L. 2012) ("While we are aware that centralization may pose some inconvenience to some parties, in deciding issues of transfer under Section 1407, we look to the overall convenience of the parties and witnesses, not just those of a single plaintiff or defendant in isolation."); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672, 2016 U.S. Dist. LEXIS 47253, *4 (J.P.M.L. Apr. 7, 2016) (quoting same when denying motions to vacate conditional transfer orders). The Panel has already found that centralization here will "serve the convenience of the parties and witnesses" overall "and promote the just and efficient conduct of this litigation." Initial Transfer Order, 357 F. Supp. 3d at 1394. The State offers no valid basis for treating this case any differently from the other cases already transferred to the MDL—all of which have parties and witnesses from outside the District of South Carolina.

Finally, the State maintains that transfer of this case will impede and delay its efforts to protect its sovereign interests. State Mem. at 8–9. The Panel has already rejected a similar argument advanced by the States of New York and Ohio. Apr. 2, 2019, Transfer Order at 1–3. To the extent that the State seeks expedited discovery or injunctive relief, the MDL court is well placed to consider its request. Initial Transfer Order, 357 F. Supp. 3d at 1395 ("To the extent the actions entail unique factual or legal issues, the transferee court has the discretion to address those issues through the use of appropriate pretrial devices, such as separate tracks for discovery and motion practice."); June 5, 2019, Transfer Order at 1–2 ("To the extent plaintiffs seek 'unique or time-sensitive relief pertaining to [their] water supplies, [they] can and should raise such concerns with the transferee court.'" (citing Initial Transfer Order, 357 F. Supp. 3d at 1395–96)); *see also In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 24 F. Supp. 3d 1361, 1362–63 (J.P.M.L. 2014) (noting that handling of plaintiffs' pending motion for preliminary injunction and expedited discovery could be considered after transfer by transferee judge).[4]

The fact that there have already been some proceedings in the District of New Mexico (specifically, briefing on the State's motion for preliminary injunction and the United States'

---

[4] The State also notes the existence of an action brought against it by the United States in the District of New Mexico related to Cannon Air Force Base. *See* State Mem. at 7–8 n.5. The State asserts that "[i]t makes no sense for the State's claims against the Government for cleanup and damages to be transferred to the AFFF Products Liability MDL while the Government's related action against the State proceeds in [federal court in] New Mexico." *Id.* However, the case that the State refers to is not an AFFF action. Rather, it is a case about statutory interpretation and federal preemption in which the United States contends that the New Mexico Environment Department "violated the NMHWA and RCRA by including a definition of hazardous waste in [a] Permit [to Cannon Air Force Base] that exceeds the scope of those statutes and, therefore, exceeds RCRA's waiver of sovereign immunity." *United States v. N.M. Env't Dep't*, No. 2:19-cv-00046-KG-SMV, 2020 WL 1536151, at *10 (D.N.M. Mar. 31, 2020) (denying State's motion to dismiss). Although both cases relate in some way to Cannon Air Force Base, the causes of action are distinct, and the cases are unlikely to have any overlap in discovery or other pretrial proceedings. Hence, transferring the State's AFFF action to the MDL will have no impact on the other case.

motion to dismiss) is not a barrier to transfer. This case is less procedurally advanced than were "the consolidated *Bell* class actions in the District of Colorado" when this Panel transferred those actions to the newly-formed MDL. Initial Transfer Order, 357 F. Supp. 3d at 1395. Class certification discovery had already been completed in those cases, and the transferor court had already heard argument on the class certification motion. *Id.* at 1395 & n.11. Nevertheless, the Panel held that transfer of the *Bell* cases was appropriate because there still remained "[s]ignificant common discovery and pretrial motion practice" to be done. *Id.* at 1395. The Panel reached the same conclusion with respect to actions in which parties had fully briefed and argued motions to dismiss before the transferor court. *See id.* at 1397–98 (transferring *Barnstable County* and *City of Westfield* to the MDL from the District of Massachusetts); *Barnstable Cty v. 3M Co.*, No. 1:17-cv-40002, 2017 WL 6452245 (D. Mass. Dec. 18, 2017) (granting in part and denying in part defendants' motions to dismiss one year before transfer to MDL); Civil Docket (D. Mass.), *City of Westfield v. 3M Co.*, No. 2:18-cv-03435-RMG (D.S.C. Dec. 17, 2018) (Dkt. No. 46) (copy of docket at time of transfer showing fully briefed and argued motions to dismiss). The same rationale applies here. Notwithstanding that the State has completed one round of preliminary briefing, these matters may be considered by Judge Gergel upon transfer, and the discovery that remains to be done will be more efficiently conducted through centralized proceedings.

\*   \*   \*

The State's action raises questions of fact in common with other AFFF actions in the MDL, and transfer will further the interests of overall efficiency and convenience. Accordingly, the Panel should deny the State's motion to vacate CTO-26 and should transfer the action to MDL No. 2873.

Dated: April 3, 2020

Respectfully submitted,

/s/ Stephen D. Raber
Stephen D. Raber
Joseph G. Petrosinelli
Liam J. Montgomery
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
E-Mail: sraber@wc.com

Attorneys for Tyco Fire Products, LP, and Chemguard, Inc.

/s/ Daniel L. Ring
Daniel L. Ring
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711
E-Mail: dring@ mayerbrown.com

Attorney for 3M Company