# Exhibit A

# Excerpted Transcript of Feb. 7, 2020 MDL Status Conference (J. Gergel D.S.C.)

```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF SOUTH CAROLINA
                     CHARLESTON DIVISION
```

```
*******************************
IN RE:  AQUEOUS FILM-FORMING    *   MDL No. 2:18-mn-2873
FOAMS PRODUCTS LIABILITY        *
LITIGATION                      *   February 7, 2020
*******************************
```

TRANSCRIPT OF STATUS CONFERENCE

BEFORE THE HONORABLE RICHARD M. GERGEL
UNITED STATES DISTRICT JUDGE, presiding

A P P E A R A N C E S:

| | |
|---|---|
| For the Plaintiffs: | Motley Rice LLC<br>BY:  FRED THOMPSON III, ESQ.<br>28 Bridgeside Boulevard<br>Mt. Pleasant, SC 29464 |
| | Douglas and London PC<br>BY:  MICHAEL A. LONDON, ESQ.<br>59 Maiden Lane, 6th Floor<br>New York, NY 10038 |
| | Napoli Shkolnik PLLC<br>BY:  PAUL J. NAPOLI, ESQ.<br>1301 Avenue of the Americas<br>10th Floor<br>New York, NY 10019 |
| | Baron and Budd<br>BY:  SCOTT SUMMY, ESQ.<br>3102 Oak Lawn Avenue #1100<br>Dallas, TX 75219 |
| For the Defendants: | Duffy and Young LLC<br>BY:  BRIAN C. DUFFY, ESQ.<br>96 Broad Street<br>Charleston, SC 29401 |
| | Williams & Connolly LLP DC<br>BY:  JOSEPH G. PETROSINELLI, ESQ.<br>725 12th Street NW<br>Washington, DC 20005 |

Karen E. Martin, RMR, CRR
US District Court
District of South Carolina

```
                        Mayer Brown LLP
                        BY:  MICHAEL A. OLSEN, ESQ.
                             DAN RING, ESQ.
                        71 S. Wacker Drive
                        Chicago, IL 60606

For the United States   US Department of Justice
of America:             BY:  CHRISTINA M. FALK, ESQ.
                             FREDERICK G. HALL, ESQ.
                        Environmental Torts, Civil Div.
                        175 N Street NE
                        Washington, DC 20002

Also Appearing:         GALE PEARSON, ESQ.
                        ALEXANDER KIPPERMAN, ESQ.
                        CARLA BURKE PICKREL, ESQ.
                        CHARLES SCHAFFER, ESQ.
                        JUSTIN ARENAS, ESQ.
                        CHRISTIAN MARCUM, ESQ.
                        NANCY CHRISTENSEN, ESQ.
                        DAVID HOYLE, ESQ.
                        REBECCA NEWMAN, ESQ.
                        GARY DOUGLAS, ESQ.
                        GREGORY CADE, ESQ.
                        KEVIN McKIE, ESQ.
                        GARY ANDERSON, ESQ.
                        JANPAUL PORTAL, ESQ.
                        JOHN GILMOUR, ESQ.
                        BILL JACKSON, ESQ.
                        AMY KENDALL, ESQ.
                        FRED LONGER, ESQ.
                        VIOLA VETTER, ESQ.
                        REBECCA FONSECA, ESQ.
                        WES BOWDEN, ESQ.
                        SARAH HANSEL, ESQ.
                        STEPHANIE BEIHL, ESQ.
                        DAVID REAP, ESQ.
                        ALLAN KANNER, ESQ.
                        TATE KUNKLE, ESQ.
                        JOHN CHILDS, ESQ.
                        ELIZABETH KNAUER, ESQ.
                        NICHOLAS MINO, ESQ.
                        LIAT ROME, ESQ.
                        LIAM MONTGOMERY, ESQ.
                        MOLLY CRAIG, ESQ.
                        MICHAEL CARPENTER, ESQ.
                        KEITH SMITH, ESQ.
                        JONATHAN HANDLER, ESQ.
                        KAT HACKER, ESQ.
                        TALLY PARHAM CASEY, ESQ.
```

```
                         DAVE ERICKSON, ESQ.
                         FRANK GALLUCCI, ESQ.
                         PATRICK LANCIOTTI, ESQ.
                         STEVE WEBER, ESQ.
                         ROBERT JORDAN, ESQ.
                         CLIFF BRINSON, ESQ.
                         SARA GOURLEY, ESQ.
                         ERIK MATNENEY, ESQ.
                         PAUL DOMINICK, ESQ.
                         ROE FRAZA, ESQ.
                         CHIN-ZEN PLOTNER, ESQ.
                         MATT HOLIAN, ESQ.
                         DANIEL OSBURN, ESQ.
                         BRENT DWERLKOTTI, ESQ.

Court Reporter:          KAREN E. MARTIN, RMR, CRR
                         PO Box 835
                         Charleston, SC 29402
```

Proceedings reported by stenographic court reporter. Transcript produced with computer-aided transcription software.

1  working with 3M on AFFF.  I went through three years of
2  research files.  They were five boxes.  I probably went --
3  they've all -- each file was about a half an inch thick on
4  product pitches that other manufacturers were making about
5  all kinds of products.
6          **THE COURT**:  I'm not surprised.
7          **MS. FALK**:  Yes, exactly.  And they were research
8  products from universities and it was, you know, anything
9  from radar to developing FORTRAN computer language.  The
10 one thing I didn't find was a single file on AFFF.
11         And this brings me to my next point when I
12 suggested that maybe the parties in this litigation may be
13 in a better position than the United States is in terms of
14 honing down the areas that we need to look at.  In
15 particular, if you noticed in the JSR report, there's this
16 discussion about how 3M has all of these people that have
17 been previously deposed, that they've produced all the
18 documents on and the depositions in.  And some of the
19 plaintiffs in this case maybe have been active in those
20 depositions.  The United States is behind the eight ball
21 on this.  We weren't involved in any of that.  This is all
22 new to us.  All these documents are being dropped on us
23 the first time.
24         When I began to get frustrated with the amount
25 of documents that we were recovering just from the

1   National Archives, I started to look at the documents that
2   the parties have already produced in this case.  And a lot
3   of those documents narrow things down to very particular
4   timeframes where if the key issues in this case for -- at
5   the first level, at the highest level, are sovereign
6   immunity and boil, contractor defense, then you could
7   narrow that down to whenever they're having discussions
8   with each other.
9           **THE COURT:**  You know, Ms. Falk, it occurred to
10  me that, for instance, the companies that are claiming
11  contractor immunity and have documents, I don't know --
12  have they already provided those documents, produced?  It
13  seems to me that is --
14          **MS. FALK:**  If they are --
15          **THE COURT:**  -- going to be very important.
16          **MS. FALK:**  If I could just finish for one
17  second?
18          **THE COURT:**  Yes.
19          **MS. FALK:**  If they are even in the sea of
20  millions of documents --
21          **THE COURT:**  Now, you know --
22          **MS. FALK:**  -- all that I am asking for is I went
23  through and identified some myself.  And I'm going to ask
24  our contractor to go look in that area.
25          **THE COURT:**  Yes.

1  then responded.  Okay?
2          **MR. LONDON**:  Thank you, Your Honor, yes.
3          **THE COURT**:  Mr. Petrosinelli, do you have
4  anything?
5          **MR. PETROSINELLI**:  Yes.  Just as to Mr. London's
6  point, when we got that request, we have already produced
7  our insurance information.  But we sent it to all the
8  other defendants.  And I haven't heard any objection.
9          **THE COURT**:  Yeah, just -- they know April 3rd
10 they're going to have to explain to me why they haven't
11 produced it.  Okay?
12         Yes?
13         **MR. LONDON**:  And a few other issues that some of
14 my colleagues will handle with respect, first, to an issue
15 with respect to New Mexico, a filed action.
16         **MR. NAPOLI**:  Sure, Your Honor, we pointed out on
17 Page 13 of the Joint Status Report for you -- for your
18 information that the State of New Mexico had filed a claim
19 against the US Government involving AFFF.  Nobody has
20 filed a CTO to have the case be pending here.  And just
21 from plaintiff's side, we're concerned that there will be
22 rulings that may affect what's going on in this process.
23 So we wanted you to be aware of that.  I'm not sure if
24 that's --
25         **THE COURT**:  So it's -- the normal mechanism to

```
 1  getting a case transferred is how?
 2          MR. NAPOLI:  You know, it's usually the
 3  defendants who file the CTO.  But I would imagine either
 4  side can file it or the Court can give notice to the JPML.
 5          THE COURT:  Why don't -- Ms. Falk, what's the
 6  Government's view on that?
 7          MS. FALK:  Your Honor, I reached out -- this
 8  case is being handled -- we mentioned before the acronym
 9  CERCLA.  The case originally was filed under the Resource
10  Conservation Recovery Act by the State of New Mexico is
11  here today -- by the State of New Mexico seeking a
12  preliminary injunction to speed up the clean up at a
13  certain Air Force base in New Mexico.
14          THE COURT:  And it's AFFF?
15          MS. FALK:  For AFFF, that's correct, Your Honor.
16  And the Government in that case had -- they filed a
17  preliminary injunction.  The Government moved to dismiss
18  on jurisdictional grounds based on a preemption argument
19  within CERCLA and that's fully briefed, the preliminary
20  injunction, the opposition, the motion to dismiss under
21  CERCLA.
22          I have alerted the division ENRD, the
23  Environment and Natural Resources Division, Department of
24  Justice about the case and asked them what they wanted to
25  do.  They would like to get the ruling, you know, some
```

1  finality particularly on a preliminary injunction
2  before --
3         **THE COURT:** I think this would be arguably
4  within the MDL. I -- you know, I think the Plaintiff's
5  Executive Committee could file a motion bringing it to the
6  attention of the court in New Mexico that there is an MDL
7  and seeking the court's transfer here. I would just hate
8  issues like this to get addressed that are relevant to
9  this case. They should be in one place unless there's a
10 reason otherwise.
11        Yes, sir?
12        **MR. NAPOLI:** Just before Mr. Kanner goes,
13 because I have one concern because I also represent the
14 dairy farmers right outside Cannon Air Force Base that
15 insisted on suing the US Government in that case as well
16 as the manufacturers. So if something is decided there,
17 and then we have the same issues here, that concerns me.
18        **THE COURT:** That concerns me.
19        Yes, sir? You can step forward and state your
20 name for the record.
21        **MR. KANNER:** Yes, Allan Kanner, K-A-N-N-E-R.
22 I'm in the MDL on behalf of Vermont. I also represent the
23 State of New Mexico.
24        **THE COURT:** Yes.
25        **MR. KANNER:** The state is trying to get DOD to

1  clean up this site.  We're proceeding --
2  　　　　　THE COURT:  So are other states in this
3  litigation.  Okay?  So, I mean --
4  　　　　　MR. KANNER:  I'm not aware of any other state
5  who's filed a RCRA action.  The issues in a RCRA case, as
6  I'm sure Your Honor is familiar with that, are not going
7  to relate to any of these matters.
8  　　　　　I think one thing that was a little disturbing
9  to me when I first saw this in the Joint Status Report is
10 that not a single one of the lead counsel picked up the
11 phone to say, hey, how do you feel about it, New Mexico?
12 What are you thinking about?  I don't think that's a good
13 way for us to move forward in these cases.  We were not
14 asked, but we agree with the Government, it makes no
15 sense.  We've already briefed the issue.  It's not an
16 issue that's going to do -- it's not an issue that's
17 currently before the Court or likely to be before the
18 Court.  Most -- State of Vermont here.
19 　　　　　THE COURT:  There's a claim, I take it, of
20 immunity under CERCLA, is that -- where is the Government
21 seeking immunity?
22 　　　　　MS. FALK:  Your Honor, it's not really immunity,
23 it's preemption, but it would have the same effect.  And
24 the court would like subject matter jurisdiction.
25 　　　　　THE COURT:  You're dealing with a core issue in

1  this litigation.  I think it's -- I think you at least
2  need to bring this to the attention of the court.  And
3  there may be -- you're representing the state.  The
4  Government is claiming immunity.  There may be discovery
5  very relevant to this issue that you're not going to have
6  the benefit of.  And you're going to get a ruling, you
7  could potentially get an adverse ruling that would
8  disadvantage your client.
9              **MR. PETROSINELLI**:  Your Honor, can I be heard on
10 this --
11             **THE COURT**:  Yes, sir.
12             **MR. PETROSINELLI**:  -- just so you know the
13 defense position?  We agree with Mr. Napoli, I think, and
14 Your Honor that this case -- any case in the federal
15 courts related to AFFF liability and immunity or
16 preemption issues should be here.  It's just that we
17 weren't sued in the case so we can't tag it.
18             **THE COURT**:  No.  Here's what you're going to do.
19 Both the defense committee -- leadership committee and the
20 plaintiff should communicate with the court in New Mexico
21 and advise the court of the MDL and that you believe that
22 it's the obligation under the MDL statutes that this
23 matter be transferred to this Court.
24             **MS. FALK**:  Your Honor, if I might?  I raised
25 this matter with counsel of record for the United States

1  in the division that's handling the case.  And I believe
2  she contacted the State of New Mexico about it to see what
3  they wanted to do.  Rather than go through all this
4  rigmarole, if you really want it tagged into this case, I
5  can reach out to counsel.
6        **THE COURT**:  I think it needs to be tagged.  I
7  think these are core issues here.  And I'm sympathetic to
8  the State of New Mexico's interests in getting things
9  done, but this is an issue -- this courtroom is filled
10 with lawyers from across America representing a variety of
11 individuals and entities and sovereign states and so
12 forth.  And you're asking an isolated judge with a limited
13 record to be ruling on an issue which I think everybody
14 recognizes is a lot more complicated than something that
15 can be, you know, quickly disposed of.  I would -- I think
16 it should be tagged, Ms. Falk.
17       **MS. FALK**:  All right.  I'll certainly let my
18 co-counsel in on me doing that.
19       **MR. KANNER**:  Your Honor, I understand your
20 position.  I would just note that we're suing because
21 there's an imminent substantial endangerment to public
22 health.
23       **THE COURT**:  Let me say this.  That is the
24 plaintiff's claim in this case.  Okay?  And obviously, an
25 MDL does not move with the velocity of an individual case.

1  You give up a little bit of that when you're in an MDL.
2  But you're looking for how to coordinate litigation in all
3  93 judicial districts in the country.  And this is just
4  another one out there.  And I've read the complaints in a
5  lot of these cases and they are very similar to what
6  you're asserting.  They may -- you know, the state may
7  have adopted a certain statutory approach.  But it's
8  essentially the same issue.  And the Government has the
9  same defense.  And I just think that it needs to be dealt
10 with in a comprehensive way.  That's why the MDL statute
11 exists so that we don't have 93 judges -- districts, 600
12 federal judges in 93 judicial districts randomly issuing
13 orders in the same case.  So I think the tag -- I think it
14 should be tagged and brought here.
15          **MR. KANNER**:  Very well.  I hope you'll keep an
16 open mind on the subject.  I hope to get a chance to brief
17 it to Your Honor.
18          **THE COURT**:  That's fine.  But I'm instructing
19 the plaintiff and defense committees to write the court
20 and to advise them of my view that this is subject to the
21 MDL.  Okay?
22          Other issues, Mr. London?
23          **MR. LONDON**:  Sorry, one more issue.  And
24 Mr. Summy is going to handle this.  It's on Page 15, Your
25 Honor.