BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE: | Aqueous Film-Forming Foams<br>Products Liability Litigation | MDL No. 2873 |

**REPLY IN SUPPORT OF DEFENDANTS
E. I. du PONT de NEMOURS AND COMPANY
AND THE CHEMOURS COMPANY'S
<u>MOTION TO TRANSFER TAG-ALONG ACTION TO THE *IN RE AFFF* MDL</u>**

Defendants E. I. du Pont de Nemours and Company and The Chemours Company[1] ("EID/CC") respectfully submit this reply memorandum of law in further support of EID/CC's motion to transfer the Related Case at issue to the *AFFF MDL* as an AFFF Action.[2]  As set forth in EID/CC's moving papers[3] and below, transfer of the Related Case to the *AFFF MDL* for consolidation with NJAW's MDL Action is necessary to avoid duplicative discovery, motion practice, and other litigation processes, and to eliminate the risk of inconsistent outcomes.

**I.    NJAW's Artful Pleadings Do Not Exclude Claims for the Penns Grove System from the MDL Action.**

At its essence, NJAW's position is that it can dodge the pending *AFFF MDL* through artful pleadings.  NJAW urges that the matter should not be transferred because it allegedly intends to pursue *only* a point-source contamination claim for Penns Grove against EID/CC alone, via the Related Case.  According to NJAW, its decision conclusively renders the Related

---

[1] NJAW incorrectly refers to EID/CC as "sister" defendants in its Response.  EID and Chemours are not and never have been corporate siblings.  Chemours was spun off from EID in 2015, and has been an independent, publicly-traded company since that time.

[2] Previously-defined terms are given the same definitions set forth in EID/CC's moving papers.

[3] Mem. of Law (D.I. 657-1), *In re AFFF*, MDL No. 2873 (J.P.M.L. July 1, 2020) ("Memorandum" or "Mem.").

Case a non-AFFF action.  *See* NJAW's Response in Opp'n (D.I. 669), *In re AFFF*, MDL No. 2873 (J.P.M.L. July 22, 2020) ("Response").

As a practical matter, however, NJAW's newly-announced intent to carve out the Penns Grove system is not reflected in any of its three MDL Action complaints and was not proffered until *after* EID/CC's counsel requested a dismissal of the Related Case so that NJAW's claims could proceed in the *AFFF MDL* without duplication.  As NJAW concedes, the Penns Grove system was specifically identified in its first two MDL Action complaints as part of a list of NJAW's public water supply systems.  (Response at pp. 3-4.)  In the Second Amended Complaint, NJAW identifies none of its systems by name and instead alleges that "[s]ome but not all of NJAW's systems have been contaminated" with PFAS from products attributable to the MDL Action defendants.  (MDL Action Second Am. Compl. [attached to Mem. at D.I. 657-11], at ¶ 9.)  Based on NJAW's own pleadings, it must have considered Penns Grove to be among the "some . . . contaminated" systems at issue in all three versions of the MDL Action complaint because, among other indications, it filed the Related Case regarding that system.

The MDL Action Second Amended Complaint includes no carve-out excluding claims relating to the Penns Grove system.  On the face of that pleading, NJAW brings claims against all MDL Action defendants regarding "systems [that] have been contaminated" with PFOA or PFOS, which include Penns Grove.  The text of the operative complaint will control the scope of the MDL Action, and neither EID/CC nor other parties in the MDL Action can or should rely on expressions of intent not reflected in NJAW's pleading.  If NJAW meant to specify a *subset* of allegedly contaminated systems for which it intended to bring claims in the MDL Action, it has filed three different complaints in which it could have clarified that point.  Its failure to do so suggests that (at best) NJAW wishes to "leave the door open" to raising AFFF-related claims

2

regarding the Penns Grove system in the MDL Action if it is dissatisfied with developments in the Related Case. Such an approach would undermine the very purpose of the MDL.

## II. EID/CC's Defenses Render the Related Case an AFFF Action Regardless of NJAW's Pleading of its Claims.

Even if NJAW effectively excluded claims related to the Penns Grove system from the MDL Action, which it has not, the Related Case still would qualify as an AFFF Action. While NJAW may be the "master of its complaint" (Response at p. 12), it is *not* the master of its adverse parties' defenses. As discussed in their opening Memorandum, EID/CC's defenses in the Related Case will likely include equitable allocation or contribution based on potential alternative sources of contamination of the Penns Grove system that would be treated by NJAW's treatment facility, including potential contamination via AFFF use. Third-party discovery on those defenses would draw in the non-EID/CC defendants in the MDL Action, exposing those entities to repetitive discovery if the cases both proceed in different forums.

The Panel's prior decisions denying early transfers of the *Hardwick* and *Related EDNY Water District* cases, as well as the *Middlesex* decision cited by NJAW, make clear that transfer will be appropriate in cases in which claims *or defenses* relating to AFFF that are not apparent or significant on the face of a complaint emerge over the course of litigation. *E.g.*, Order Denying Transfer at pp. 1-2 (D.I. 54), *In re AFFF*, MDL No. 2873 (J.P.M.L. Dec. 18, 2019) ("*Middlesex* Order") (analyzing propriety of transfer by reference to whether potential tag-along involved "claims **or defenses** based on contamination of water supplies by AFFFs" (emphasis added)). The rule urged by NJAW, which would restrict the Panel's review to the allegations of a complaint regardless of any subsequent developments in a case, would make participation in the MDL optional at the unilateral discretion of plaintiffs.

### III. EID/CC's Motion Is Consistent With Their Position on MDL Scope.

In its Response, NJAW suggests that EID/CC improperly shifted position on the appropriate scope of the *AFFF MDL*. While not directly relevant to the narrow question of whether the Related Case should be transferred, EID/CC note that they have consistently supported a limited *AFFF MDL* rather than an undifferentiated conglomeration of all PFAS cases. EID/CC's actions have been in accord with this position. EID/CC were aware of the general *possibility* of AFFF contamination affecting the Penns Grove system by the time NJAW filed its MDL Action in 2018 (without naming EID/CC). EID/CC did not move to transfer the Related Case earlier precisely because they recognized that a nebulous possibility that a case might touch upon questions related to AFFF in the future does not make it an AFFF Action.

EID/CC only moved to transfer after they had evidence supporting the prospect of discovery into potential AFFF contamination in the Related Case and *had been named as AFFF defendants by NJAW* in a second action. If EID/CC are required to litigate both cases simultaneously in two forums, they will likely have to engage in (and burden MDL Action co-defendants and the courts involved with) duplicative discovery and other litigation activities concerning overlapping, AFFF-related factual issues. EID/CC's motion in no way deviates from their prior positions before the Panel, and transfer of the Related Case would not invite a "Mega-PFAS" docket, as NJAW threatens. Instead, the requested transfer would confirm the existing limitations on the *AFFF MDL* while discouraging tactical avoidance through artful pleading, which could undermine the efficiency and expertise offered by the MDL process.

### IV. NJAW's Revisionist History Does Not Limit EID/CC's Defenses.

NJAW devotes extensive portions of its Response to an argument that AFFF cannot be at issue in the Related Case because EID/CC have acknowledged limited, historic releases of PFOA

4

from Chambers Works and have not identified by name potential sources of AFFF contamination in the vicinity of the facility. NJAW's arguments on the merits are misplaced in the context of an inherently procedural motion and mistaken on the facts and burdens at issue. Regardless of how NJAW might seek to organize, spread, or divide its claims between its two actions, EID/CC are entitled to further develop evidence concerning any AFFF-related contamination of the Penns Grove system. That activity should take place in the *AFFF MDL*.

NJAW's foundational assertion that "[t]here is no debate that the PFOA in NJAW's wells emanated from the Defendants' Chambers Works facility" is flatly wrong—and irrelevant to the question of whether claims or defenses in the Related Case might implicate AFFF. (Response at p. 5.) EID/CC have and continue to deny liability in the Related Case, and NJAW's pleadings and discovery to date fall far short of meeting its burdens of proof to demonstrate a causal nexus between Chambers Works and any actionable PFOA contamination of its wells, which are located up to 2 miles away. Indeed, were NJAW's "no debate" pronouncement justified, NJAW would not have a basis to oppose transfer based on its need for further "detailed site-specific discovery" regarding Chambers Works. (Response at p. 6). And even if NJAW ultimately could prove its claim in the Related Case (which it has not and cannot), EID/CC would be entitled to seek equitable allocation and contribution from third-party defendants. N.J.S.A. 58:10-23.11f.a.(2)(a).[4]

---

[4] The United States District Court for the District of South Carolina is fully capable of construing and applying the New Jersey Spill Act to the extent necessary to preside over the Related Case, just as it will address issues arising under the common law or statutes of numerous states in the course of the *AFFF MDL*. NJAW's protestations that the Related Case should not be transferred because it involves a "unique" New Jersey statute ring particularly hollow given that NJAW previously sought to add New Jersey Spill Act claims *to its MDL Action* by the First Amended Complaint; that count was only withdrawn after EID/CC raised the issue of claim duplication between the two cases. Furthermore, the Related Case is already pending in a federal forum, not before a New Jersey state court.

In this regard, NJAW's professed surprise that EID/CC would pursue evidence of potential AFFF-related contamination in the Related Case is unreasonable.  NJAW itself has taken the position in its MDL Action that contamination from AFFF is widespread enough to affect water supply systems "owned and operated by NJAW **throughout the State of New Jersey**."  (MDL Action Second Am. Compl. [attached to Mem. at D.I. 657-11], at ¶ 1 (emphasis added).)  The discovery responses from the *Rowe* litigation submitted by NJAW show that DuPont consistently denied that operations at Chambers Works were the only potential source of PFOA found in groundwater or soil in the vicinity of the facility.  (*See* Ex. E to Response [D.I. 669-5], at pp. 2-4.)  EID/CC pleaded defenses in their Answer to the Related Case Complaint stating that NJAW's claimed clean-up or removal costs were "caused by intervening, superseding, or supervening causes" or "by acts or omissions of one or more persons for whose conduct Defendants are not responsible and with whom Defendants have no legal connection" and sought equitable allocation.  (*See* 2nd, 3rd, 9th, and 12th Additional or Affirmative Defenses, Answer and Affirmative Defenses, NJAW Related Case, D.I. 8 (D.N.J. May 29, 2018), attached as Exhibit A to Second Certification of Natalie S. Watson, Esq. in Support of EID/CC's Reply ["Watson Reply Cert."].)  Documents produced to NJAW in the Related Case reflect EID/CC's understanding that the groundwater and soil in the vicinity of Chambers Works was likely affected by PFAS from other sources—including "storage and use of fire[-]fighting foams" at fire stations in the area.  (*See* DEFS00057395 & DEFS00057468, excerpted from *Conceptual Site Model (CSM) for Poly- and Perfluoroalkyl Substances (PFAS) Chemours Chambers Works, Deepwater, New Jersey* submitted to New Jersey Department of Environmental Protection on July 18, 2017, attached as Exhibit B to Watson Reply Cert.)

6

Notably, EID/CC could not begin meaningful investigation of potential AFFF contamination affecting the Penns Grove system before *NJAW* disclosed well sampling results showing the types and amounts of different PFAS (if any) detected in its supply wells over time. NJAW's Related Case Complaint made no reference to sampling results other than to allege that PFOA was detected at levels "as high as 0.10 ppb" at an unknown time at an unspecified treatment system point-of-entry and that "[b]ased upon sampling following the installation and operation of the GAC [Granular Activated Carbon] filtration system, the occurrence of **PFOA** in NJAW's Penns Grove System is beneath the .04 ppb guidance level set by NJDEP in 2007." (Related Case Compl. [attached to Mem. at D.I. 657-4], at ¶¶ 68, 74 (emphasis added).)[5]

Subsequent document production in the Related Case revealed that non-PFOA PFAS that are associated with AFFF—including PFOS—have been detected in the Penns Grove system supply wells.[6] The system's two supply wellfields are in the vicinity of multiple possible sources

---

[5] The paucity of allegations regarding well sampling results and the omission of AFFF-related allegations in the Related Case Complaint defined the scope of what EID/CC considered to be proper discovery *from Defendants* in the Related Case. The Related Case Complaint does not detail sampling levels for any substance other than PFOA, nor does it identify specific levels of PFOA or any other constituent found in particular wells at any point in time. Accordingly, when NJAW interposed facially overbroad discovery demands seeking documents and information from EID/CC regarding any and all "PFAS" or "any toxic, hazardous and/or harmful substance, contaminant or pollutant" (thereby encompassing thousands of substances), EID/CC appropriately objected and limited their discovery responses to PFOA-related information and documents. (See Ex. B & C to Response [D.I. 669-2 & 3].) Through subsequent conferral, EID/CC asked NJAW to identify any other regulated substances found in the Penns Grove supply well influents in excess of applicable limits that would be treated by the GAC filtration system and as to which NJAW had a theory of potential migration from Chambers Works. The conferral process was paused as a result of the planned mediation of the Related Case, but to date NJAW has identified no such additional constituents. Contrary to the Response, EID/CC's objections to NJAW's overbroad requests have no bearing on any party's ability to pursue discovery from other entities regarding potential PFOA or PFOS contamination of NJAW's supply wells through AFFF use (or otherwise).

[6] EID/CC is not submitting copies of pertinent sampling results because they have been designated as "Confidential" by NJAW under the Discovery Confidentiality Order in the Related Case. At least one public document summarizing sampling of raw water in the Penns Grove

7

of AFFF that may explain these results, including highways (where AFFF may be deployed in major crashes where fuel ignites or is at risk of igniting) and a fire station (where AFFF may be stored and used in training exercises) that appears within the wellfields' capture zones.[7]

The location of potential AFFF sources in relation to the Penns Grove wellfields, the evidence adduced of PFOS detections in the Penns Grove system supply wells, and NJAW's allegations of statewide AFFF-related contamination in the MDL Action all distinguish the Related Case from *Middlesex*.  As the Panel noted in denying transfer, the issue of transfer was raised in *Middlesex* before the moving defendant had even answered the complaint, such that "any claims or defenses based on contamination of water supplies by AFFFs remain[ed] too speculative to warrant transfer."  *See Middlesex* Order at pp. 1-2.  In the Related Case, by contrast, substantial document discovery has taken place that supports the likelihood of AFFF-related discovery.  Furthermore, neither *Middlesex*, *Hardwick*, or the *Related EDNY Water District Cases* involved multiple matters in which a single plaintiff sought to duplicate or split claims against an overlapping set of defendants between two cases.

### V.    Transfer of the Related Case Would Further Overall Efficiency and Preempt the Risks of Repetitive Litigation Activity and Inconsistent Outcomes.

The current posture of discovery in the Related Case also reflects that transfer at the present time would maximize the efficiencies provided by the MDL.[8]  The case is sufficiently

---

system's shallow supply wells over the period of October 2014 to January 2017 reflects that levels of PFOS were "as high as 13 ng/L."  (*See* N.J. Drinking Water Quality Institute Treatment Subcommittee, Second Addendum to Appendix C: R*ecommendation on Perfluorinated Compound Treatment Options for Drinking Water*, Nov. 2017, at p. 2, attached as Exhibit C to Watson Reply Cert.)  If additional documentation would assist the Panel, EID/CC will confer with NJAW regarding submission of sampling results produced in the Related Case.

[7] Chambers Works is outside the capture zones for wellfields supplying the Penns Grove system.

[8] To the extent that the Response appears to suggest that transfer would prejudice or inconvenience NJAW by delaying the rescheduling of mediation, it bears emphasizing that

8

developed to confirm the non-speculative prospect of AFFF-related discovery, but no depositions or third-party discovery has occurred that might duplicate efforts in the MDL Action. No trial date has been set in the Related Case, and no scheduling order is currently in place.

NJAW's position that transfer of the Related Case based on subsequent developments after "two plus years of litigation" would delay NJAW's vision of "justice" is flawed in two respects. (*See* Response at pp. 2, 11.)  First, it would essentially prevent the transfer of *any* case in which a plaintiff did not concede AFFF Action status: cases without explicit reference to AFFF in their complaints would always be either too early to transfer (because no discovery had occurred) or too late (because the advancement of discovery would render any measure of delay or coordination anathema).  Second, NJAW wrongly evaluates efficiency solely in terms of its interests and anticipated trial schedule.  The Panel has made clear that AFFF Actions should be transferred "if it furthers the expeditious resolution of the litigation taken as a whole, even if some parties to the action might experience inconvenience or delay." Transfer Order at p. 1 (D.I. 384), *In re AFFF*, MDL NO. 2873 (J.P.M.L. June 5, 2019).

### VI.   The Issue of Transfer Is Properly Before the Panel.

NJAW's final argument that EID/CC should move to dismiss the Related Case in the District of New Jersey to resolve NJAW's splitting of claims omits a key fact: the District of New Jersey directed EID/CC to file the instant motion to transfer before the Panel in hopes of

---

NJAW, without forewarning, moved to add EID/CC as defendants to its MDL Action *one day* before the originally-scheduled mediation dates in the Related Case.  The mediation had been postponed with hopes of a quick rescheduling due to the COVID-19 pandemic shortly before NJAW's motion was filed.  However, the two subsequent amended MDL Action complaints expanding and adding to NJAW's claims against EID/CC worked a material change on EID/CC's assessment of the prospects and parameters for exploring a mediated resolution.  This altered landscape resulting from NJAW's new pleadings, and not the prospect of transfer, is what undermined the parties' prior agreement to mediate in the Related Case.

obviating the need for it to decide motion to dismiss. After receiving NJAW's First Amended Complaint in the MDL Action, which both replicated NJAW's New Jersey Spill Act claim and added expanded claims against EID/CC, EID/CC requested that NJAW voluntarily dismiss the Related Case (with all discovery preserved). NJAW refused. EID/CC then requested that the Magistrate Judge presiding over the Related Case lift the stay of that matter so that EID/CC could move to dismiss. (*See* NJAW Related Case May 8, 2020 Letter [attached to Mem. at D.I. 657-8].)

The Magistrate Judge held a teleconference during which NJAW announced that it had moved to further amend its MDL Action pleadings. Based in part on this amendment (which it did not provide to EID/CC's Related Case counsel in the Related Case or to the Magistrate Judge in advance of the call), NJAW opposed the very motion to dismiss that it now suggests EID/CC should have filed. The Magistrate Judge advised that she would defer to the Panel in the first instance as to whether a transfer of the Related Case to the *AFFF MDL* might resolve the issues of claim-splitting and duplicative and burdensome litigation processes without requiring dispositive motion practice before the District of New Jersey. Accordingly, she stayed the Related Case pending EID/CC's motion to transfer. (*See* Order, D.I. 58, NJAW Related Case (D.N.J. May 13, 2020).)

## CONCLUSION

For the reasons stated in their Memorandum and this Reply, Defendants E. I. du Pont de Nemours and Company and The Chemours Company respectfully request that their Motion to Transfer be granted and the Related Case transferred to the *AFFF MDL*.

Dated: July 29, 2020

        Respectfully submitted,

        */s/ Michael P. Kelly*
        Michael P. Kelly

        */s/ Lanny S. Kurzweil*
        Lanny S. Kurzweil

        */s/ Natalie S. Watson*
        Natalie S. Watson

        McCarter & English, LLP
        100 Mulberry Street
        4 Gateway Center
        Newark, NJ 07102
        973-848-5357
        Service Email: nwatson@mccarter.com

        *Attorneys for E. I. du Pont de Nemours and Company and The Chemours Company in the Related Case*