# United States District Court
## Western District of Michigan (Southern Division (1))
## CIVIL DOCKET FOR CASE #: 1:20-cv-00787-PLM-RSK

Nessel et al v. E. I. Du Pont De Nemours and Company et al
Assigned to: District Judge Paul L. Maloney
Referred to: Magistrate Judge Ray Kent
Demand: $100,000,000,000
Cause: 42:6901 Resource & Recovery Act

Date Filed: 08/20/2020
Jury Demand: Plaintiff
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: Federal Question

**plaintiff**

**Dana Nessel**
*on behalf of*
The People of the State of Michigan

represented by **Amy E. Keller**
DiCello Levitt Gutzler LLC
Ten North Dearborn St., 6th Fl.
Chicago, IL 60602
(312) 214-7900
Email: akeller@dicellolevitt.com
*ATTORNEY TO BE NOTICED*

**plaintiff**

**Michigan, State of**

represented by **Amy E. Keller**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**defendant**

**E. I. Du Pont De Nemours and Company**

**defendant**

**Chemours Company, The**

**defendant**

**Chemours Company FC, LLC, The**

**defendant**

**DowDupont, Inc.**

**defendant**

**Corteva, Inc.**

**defendant**

**DuPont De Nemours, Inc.**

**defendant**

**Archroma U.S., Inc.**

**defendant**

Arkema, Inc.

**defendant**

AGC Chemicals Americas Inc.

**defendant**

Daikin America, Inc.

**defendant**

Solvay Specialty Polymers, USA

**defendant**

Chemguard, Inc.

**defendant**

Tyco Fire Products, LP

**defendant**

National Foam, Inc.

**defendant**

Angus Fire Armour Corporation

**defendant**

Kidde P.L.C., Inc.

**defendant**

Kidde-Fenwal, Inc.

**defendant**

Raytheon Technologies Corporation

**defendant**

UTC Fire & Security Americas
Corporation Inc.

**defendant**

Vulcan Fire Systems, Inc.

**defendant**

Huntington Laboratories, Inc.

**defendant**

Ecolab Inc.

**defendant**

Mine Safety Appliances Company, LLC

**defendant**

Verde Environmental, Inc.

*also known as*
Micro-Blaze, Inc.

**defendant**

**Hartford Chemical Sales Corporation**

**defendant**

**G.V.C. Chemical Corporation**

**defendant**

**Stevens Company, Inc.**

**defendant**

**Hazard Control Technologies, Inc.**

**defendant**

**Fire-Ade, Inc.**

**defendant**

**Rockwood Systems, Inc.**
*formerly known as*
Rockwood Systems Corporation

**defendant**

**Cobra Fire Protection, Inc.**

**defendant**

**BroCo Products, Inc.**

**defendant**

**Pioneer Products, Inc.**

**defendant**

**Denko, Inc.**
*also known as*
Denko Foam, Inc.

**defendant**

**Russell Martin Industries, Inc.**

**defendant**

**Dawn Chemical Corporation of
Wisconsin, Inc.**

**defendant**

**Amerex Corporation**

**defendant**

**Perimeter Solutions LP**

**defendant**

**Noble Industrial Supply Corporation**

**defendant**

**Royal Chemical Company**

**defendant**

**VST Chemical Corporation**

**defendant**

**Summit Environmental Corporation, Inc.**

**defendant**

**Fire Service Plus, Inc.**

**defendant**

**Buckeye Fire Equipment Company**

**defendant**

**3M Company**

**defendant**

**Dyneon, L.L.C.**

| Date Filed | # | Docket Text |
|---|---|---|
| 08/20/2020 | 1 | COMPLAINT with jury demand against All Defendants filed by Dana Nessel and Michigan, State of (Keller, Amy) Modified text on 8/21/2020 (jlg) (Entered: 08/20/2020) |
| 08/24/2020 | 2 | NOTICE that this case has been assigned Paul L. Maloney ; with NOTICE OF DEFICIENCY re filing fee (ndj) (Entered: 08/24/2020) |
| 08/24/2020 | | FILING FEE PAID re 1 by plaintiffs Michigan, State of, Dana Nessel in the amount of $400, receipt number AMIWDC-5606642 [Attorney Amy E. Keller added to party Michigan, State of(pty:pla)] (Keller, Amy) (Entered: 08/24/2020) |
| 08/25/2020 | | SUMMONS NOT ISSUED as to plaintiff Dana Nessel *none provided* (ndj) (Entered: 08/25/2020) |
| 08/26/2020 | 3 | PROPOSED SUMMONS to be issued re 1 (Keller, Amy) (Entered: 08/26/2020) |
| 08/27/2020 | 4 | SUMMONS ISSUED as to defendants 3M Company, AGC Chemicals Americas Inc., Amerex Corporation, Angus Fire Armour Corporation, Archroma U.S., Inc., Arkema, Inc., BroCo Products, Inc., Buckeye Fire Equipment Company, Chemguard, Inc., Chemours Company FC, LLC, The, Chemours Company, The, Cobra Fire Protection, Inc., Corteva, Inc., Daikin America, Inc., Dawn Chemical Corporation of Wisconsin, Inc., Denko, Inc., DowDupont, Inc., DuPont De Nemours, Inc., Dyneon, L.L.C., E. I. Du Pont De Nemours and Company, Ecolab Inc., Fire Service Plus, Inc., Fire-Ade, Inc., G.V.C. Chemical Corporation, Hartford Chemical Sales Corporation, Hazard Control Technologies, Inc., Huntington Laboratories, Inc., Kidde P.L.C., Inc., Kidde-Fenwal, Inc., Mine Safety Appliances Company, LLC, National Foam, Inc., Noble Industrial Supply Corporation, Perimeter Solutions LP, Pioneer Products, Inc., Raytheon Technologies Corporation, Rockwood Systems, Inc., Royal Chemical Company, Russell Martin Industries, Inc., Solvay Specialty Polymers, USA, Stevens Company, Inc., Summit Environmental Corporation, Inc., Tyco Fire Products, LP, UTC Fire & Security Americas Corporation Inc., VST |

Chemical Corporation, Verde Environmental, Inc., Vulcan Fire Systems, Inc. (pjw) (Entered: 08/27/2020)

<table>
<tr><td colspan="4" align="center"><b>PACER Service Center</b></td></tr>
<tr><td colspan="4" align="center"><b>Transaction Receipt</b></td></tr>
<tr><td colspan="4" align="center">08/28/2020 10:54:10</td></tr>
<tr><td><b>PACER Login:</b></td><td>MayerBro25</td><td><b>Client Code:</b></td><td>19607996</td></tr>
<tr><td><b>Description:</b></td><td>Docket Report</td><td><b>Search Criteria:</b></td><td>1:20-cv-00787-PLM-RSK</td></tr>
<tr><td><b>Billable Pages:</b></td><td>3</td><td><b>Cost:</b></td><td>0.30</td></tr>
</table>

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ATTORNEY GENERAL DANA NESSEL, on
behalf of the People of the State of Michigan, and
the STATE OF MICHIGAN,

No. 20-cv-00787

HON.

     Plaintiffs,

MAG.

v

E. I. DU PONT DE NEMOURS AND COMPANY,
THE CHEMOURS COMPANY, THE
CHEMOURS COMPANY FC, LLC,
DOWDUPONT, INC., CORTEVA, INC.,
DUPONT DE NEMOURS, INC., ARCHROMA
U.S., INC., ARKEMA, INC., AGC CHEMICALS
AMERICAS INC., DAIKIN AMERICA, INC.,
SOLVAY SPECIALTY POLYMERS, USA,
CHEMGUARD, INC., TYCO FIRE PRODUCTS,
LP, NATIONAL FOAM, INC., ANGUS FIRE
ARMOUR CORPORATION, KIDDE P.L.C., INC.,
KIDDE-FENWAL, INC., RAYTHEON
TECHNOLOGIES CORPORATION, UTC FIRE
& SECURITY AMERICAS CORPORATION,
INC., VULCAN FIRE SYSTEMS, INC.,
HUNTINGTON LABORATORIES, INC.,
ECOLAB INC., MINE SAFETY APPLIANCES
COMPANY, LLC, VERDE ENVIRONMENTAL,
INC., a/k/a MICRO-BLAZE, INC., HARTFORD
CHEMICAL SALES CORPORATION, G.V.C.
CHEMICAL CORPORATION, STEVENS
COMPANY, INC., HAZARD CONTROL
TECHNOLOGIES, INC., FIRE-ADE, INC.,
ROCKWOOD SYSTEMS, INC., f/k/a
ROCKWOOD SYSTEMS CORPORATION,
COBRA FIRE PROTECTION, INC., BROCO
PRODUCTS, INC., PIONEER PRODUCTS,
INC., DENKO, INC., a/k/a DENKO FOAM, INC.,
RUSSELL MARTIN INDUSTRIES, INC., DAWN
CHEMICAL OF WISCONSIN,
INC., AMEREX CORPORATION, PERIMETER
SOLUTIONS LP, NOBLE INDUSTRIAL

**COMPLAINT WITH JURY
DEMAND ENDORSED
HEREON**

SUPPLY CORPORATION, ROYAL CHEMICAL
COMPANY, VST CHEMICAL CORPORATION,
SUMMIT ENVIRONMENTAL CORPORATION,
INC. FIRE SERVICES PLUS, INC., BUCKEYE
FIRE EQUIPMENT COMPANY, 3M COMPANY,
DYNEON, L.L.C.

     Defendants.

---

Dana Nessel
Attorney General
Polly A. Synk (P63473)
Danielle Allison-Yokom (P70950)
Assistant Attorneys General
Michigan Department of Attorney General
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
synkp@michigan.gov
allisonyokomd@michigan.gov

Gregory M. Utter (Pro Hac Vice to
be filed)
Joseph M. Callow, Jr. (Pro Hac Vice
to be filed)
Special Assistant Attorneys General
Matthew M. Allen (Pro Hac Vice to
be filed)
Sarah V. Geiger (Pro Hac Vice to be
filed)
Collin L. Ryan (pro hac vice pending)
Joseph B. Womick (Pro Hac Vice to
be filed)
Keating Muething & Klekamp PLL
1 East 4th Street, Suite 1400
Cincinnati, OH 45202
(513) 579-6400
gmutter@kmklaw.com
jcallow@kmklaw.com
mallen@kmklaw.com
sgeiger@kmklaw.com
cryan@kmklaw.com
jwomick@kmklaw.com

---

Adam J. Levitt (Pro Hac Vice to
be filed)
Amy E. Keller (P74015)
Special Assistant Attorneys
General Daniel R. Flynn (Pro Hac
Vice to be filed)
Laura E. Reasons (Pro Hac Vice to
be filed)
Mary McKenna (Pro Hac Vice to be
filed)
Adam Prom (Pro Hac Vice to be

Richard W. Fields (Pro Hac Vice to
be filed)
Special Assistant Attorney General
Martin F. Cunniff (Pro Hac Vice to
be filed)
Fields, PLLC
1901 L St., N.W. Suite 700,
Washington, D.C. 20036 (800) 878-
1432
fields@fieldslawpllc.com
martincunniff@fieldslawpllc.com

filed)
DiCello Levitt Gutzler LLC
10 North Dearborn Street, 6th
Floor Chicago, IL 60602
(312) 214-7900
alevitt@dicellolevitt.com
akeller@dicellolevitt.com
dflynn@dicellolevitt.com
lreasons@dicellolevitt.com
mmckenna@dicellolevitt.com
aprom@dicellolevitt.com

_____/

# TABLE OF CONTENTS

Page

**Introduction and Nature of the Action** ...................................................................... 3

I.   Mil-Spec AFFF has caused injury to Michigan's public health, safety, welfare, natural resources and the environment. ............................................. 7

**Parties** .................................................................................................................. 10

I.   Plaintiffs. ............................................................................................................ 10

II.  Defendants. ........................................................................................................ 11

    A.   PFAS Supplier Defendants. ...................................................................... 11

    B.   AFFF Manufacturer Defendants. ............................................................ 18

**Jurisdiction and Venue** .......................................................................................... 38

**Factual Allegations** ............................................................................................... 39

I.   Defendants had full knowledge of the health and environmental risks of Mil-Spec AFFF, which they intentionally hid from the public and the State ................................................................................................................... 39

II.  Defendants failed to act on their knowledge of Mil-Spec AFFF's PFAS health and environmental risks. ................................................................... 45

III. Michigan's Mil-Spec AFFF and PFAS Investigations. ................................... 46

    A.   Michigan's PFAS standards. ..................................................................... 47

    B.   MPART's PFAS & Mil-Spec AFFF investigations. ............................... 50

IV.  Mil-Spec AFFF contamination is widespread in Michigan. ........................... 53

    1.   Groundwater. ................................................................................... 58

    2.   Surface waters. ............................................................................... 59

    3.   Wildlife, soils, and sediment. ......................................................... 62

V.   Historical DuPont's spinoff of The Chemours Company. ............................... 63

First Cause of Action  RCRA – Imminent And Substantial Endangerment............. 70

i

Second Cause of Action Liability Under Part 201 of the NREPA ........................... 73

Third Cause of Action Liability Under Part 17 of the NREPA ................................. 80

Fourth Cause of Action Liability Under Part 31 of the NREPA ............................... 82

Fifth Cause of Action Trespass ................................................................................. 85

Sixth Cause of Action Public Nuisance .................................................................... 88

Seventh Cause of Action Unjust Enrichment ............................................................ 92

Eight Cause of Action Strict Liability for Defective Design ..................................... 93

Nineth Cause of Action Strict Liability for Failure to Warn ..................................... 95

Tenth Cause of Action Violation of the Michigan Uniform Fraudulent
    Transfer Act ......................................................................................................... 97

**Request for Relief** .................................................................................................. 100

Jury Demand ........................................................................................................... 102

**There are no other civil actions arising from the facts or occurrences
pending before this Court or previously dismissed between the Parties.**

## COMPLAINT

Plaintiffs, Attorney General Dana Nessel, on behalf of the People of the State
of Michigan, and the State of Michigan (collectively, State or Michigan), seek to hold
the manufacturers of aqueous film-forming foam (AFFF) made in accordance with
performance specifications provided by the United States Department of Defense
(DOD). AFFF made in accordance with performance specifications provided by DOD
is commonly known as "Mil-Spec AFFF." The State of Michigan refers to Mil-Spec
AFFF in this Complaint for ease of reference only. The State of Michigan expressly
denies that so-called Mil-Spec AFFF was made in accordance with manufacturing
or production specifications required by DOD or any other federal agency.
Moreover, as discussed below, the DOD performance specifications detailing the
manufacture of Mil-Spec AFFF did not require Defendants to use hazardous
perfluoroalkyl and polyfluoroalkyl substances (PFAS).

The State of Michigan seeks to hold Defendants accountable for their
culpable conduct related to their manufacture, design, distribution, sale, release,
supply, transport, arrangement for disposal or treatment, handling, and/or use of
Mil-Spec AFFF, which contains PFAS, throughout the State.

Plaintiffs seek to recover the funds and resources necessary for Michigan to
continue identifying, monitoring, and remediating AFFF-PFAS contamination
caused by releases of Mil-Spec AFFF at military, aviation, and other sites
throughout the State of Michigan.

Michigan brings this civil action for monetary damages, natural resource and punitive damages, and injunctive, equitable, and other relief to require Defendants E. I. Du Pont De Nemours and Company, The Chemours Company, The Chemours Company FC, LLC, DowDupont, Inc., Corteva, Inc., DuPont De Nemours, Inc., Archroma U.S., Inc., Arkema, Inc., AGC Chemicals Americas Inc., Daikin America, Inc., Solvay Specialty Polymers, USA, Chemguard, Inc., Tyco Fire Products, LP, National Foam, Inc., Angus Fire Armour Corporation, Kidde P.L.C., Inc., Kidde-Fenwal, Inc., Raytheon Technologies Corporation, UTC Fire & Security Americas Corporation Inc., Vulcan Fire Systems, Inc., Huntington Laboratories, Inc., Ecolab Inc., Mine Safety Appliances Company, LLC, Verde Environmental, Inc., a/k/a Micro-Blaze, Inc., Hartford Chemical Sales Corporation, G.V.C. Chemical Corporation, Stevens Company, Inc., Hazard Control Technologies, Inc., Fire-Ade, Inc., Rockwood Systems, Inc., f/k/a Rockwood Systems Corporation, Cobra Fire Protection, Inc., BroCo Products, Inc. Pioneer Products, Inc., Denko, Inc., a/k/a Denko Foam, Inc., Russell Martin Industries, Inc., Dawn Chemical Corporation of Wisconsin, Perimeter Solutions LP, Noble Industrial Supply Corporation, Royal Chemical Company, VST Chemical Corporation, Summit Environmental Corporation, Inc., and Fire Service Plus, Inc., and Buckeye Fire Equipment Company, 3M Company, and Dyneon, L.L.C. (collectively, Defendants) to protect and restore Michigan's precious natural resources from widespread contamination and injury caused by Mil-Spec AFFF, and for its Complaint states as follows:

## INTRODUCTION AND NATURE OF THE ACTION

1.      Michigan is the largest state east of the Mississippi, and the Great Lakes surrounding the State contain 20% of the world's fresh water.

2.      Michigan is also one of the most populated states in the country with over 10,000,000 residents and boasts a large and diverse economy.

3.      Michigan has established itself as a leader in protecting the environment and in identifying, monitoring, and addressing contamination caused by the release of aqueous film-forming foam and related products (AFFF), which contain per- and polyfluoroalkyl substances (PFAS), into the State of Michigan.

4.      As discussed below, there are several types of AFFF.  One type is manufactured in accordance with the DOD performance specification Mil-F-24385, which is commonly referred to as Mil-Spec AFFF.

5.      The purpose of Mil-F-24385 is to obtain a product that rapidly controls and contains fuel-based fires. It is a procurement specification and a performance specification, but it is not a manufacturing or product specification.

6.      Mil-F-24385 calls for Mil-Spec AFFF to include "fluorocarbon surfactants plus other compounds as required to conform to the requirements specified."[1]

7.      MIL-F-24385 is not a manufacturing spec. Defendants had complete control over what specific fluorinated surfactant they chose in their proprietary formulation and the methods and procedures for making their products. Defendants

---

[1] See e.g. Mil-F-24385 Amendment 1 (1994) at § 1,1,

established the manufacturing specifications and the product quality specifications

of their product based on meeting MIL-F-24385's product performance

specifications.

8.     There are thousands of "fluorocarbon surfactants."  There was no

requirement under Mil-F-24385 (or any of its amendments) for Defendants to use

PFOA, PFOS, or other hazardous PFAS compounds in the manufacture of Mil-Spec

AFFF.

9.     Defendants, without direction from DOD or any federal agency,

unilaterally chose to include PFOA, PFOS and/or other hazardous PFAS compounds

as the "fluorocarbon surfactants" called for under Mil-F-24385.  Defendants could

have chosen to use non-hazardous "fluorocarbon surfactants" when manufacturing

Mil-Spec AFFF, but chose not to do so.

10.     Defendants had complete control over what specific fluorinated

surfactant they chose in their proprietary formulation and the methods and

procedures for making Mil-Spec AFFF.

11.     Defendants chose to utilize PFOA, PFOS, and other hazardous PFAS

compounds in Mil-Spec AFFF and failed to warn and share information with all of

its customers, including the DOD, on the impacts of their products on the

environment.

12.     No federal agency has ever instructed any Defendant to prepare a

specific formulation of Mil-Spec AFFF other than to insist that one of the

ingredients to be included in a formulation of Mil-Spec AFFF be comprised of a

4

fluorinated surfactant, which is a broad family of ingredients that are numbered in the thousands.

13. DOD and its related agencies did not develop Mil-Spec AFFF products. DOD and its related agencies developed a product performance specification and were not directly involved design of formulations and the compositions of Mil-Spec AFFF.

14. Defendants developed their own proprietary Mil-Spec AFFF formulations and established their own product and manufacturing specifications – none of which DOD or any other federal agency had anything to do with. Defendants withheld critical information on how to manage the toxic wastes of their Mil-Spec AFFF by hiding behind trade secret protections.

15. Historically, DOD purchased Mil-Spec AFFF for use on military bases. Mil-Spec AFFF is also used at federally regulated civilian airports. This Complaint seeks to remedy contamination caused by the release of Mil-Spec AFFF and not any other type of AFFF.

16. Michigan brings this action against all Defendants pursuant to the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6901, et seq., specifically Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B).

17. Michigan also brings this action against all Defendants under Part 201 of the Natural Resources and Environmental Protection Act (NREPA) (Mich. Comp. Laws §§ 324.20101–324.20142), Part 17 of the NREPA (Mich. Comp. Laws §§

324.1701–324.1706), and Part 31 of the NREPA (Mich. Comp. Laws §§ 324.3101–324.3134).

18.     Michigan also brings this action against all Defendants under Michigan's laws of negligence, trespass, public nuisance, unjust enrichment, strict liability for defective design, and strict liability for failure to warn.

19.     Michigan also brings claims against Historical DuPont, Corteva, Inc., DuPont De Nemours, Inc., and The Chemours Company pursuant to the Michigan Uniform Fraudulent Transfer Act (MUFTA) (collectively, MUFTA Defendants), Mich. Comp. Laws § 566.31 et seq.

20.     As used in this Complaint, the term "natural resources" shall mean land, fish, wildlife, biota, air, water, ground water, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the State.

21.     As used in this Complaint, the term "natural resource damages" include, without limitation:  (i) Natural Resource Damage Assessment Costs; (ii) the costs of restoration, rehabilitation, or replacement of injured or lost Natural Resources and the services they provide, or of acquisition of equivalent resources (including costs of Natural Resource Restoration Projects); (iii) the costs of planning and monitoring such restoration activities; (iv) any other compensation for injury, destruction, loss, impairment, diminution in value, loss, or loss of use or non-use of Natural Resources and/or the services they provide; and (v) each of the categories of recoverable damages described in applicable State Natural Resource Damage law.

## I.   Mil-Spec AFFF has caused injury to Michigan's public health, safety, welfare, natural resources and the environment.

22.    Firefighting foams can be divided into two classes:  (a) foam "used to extinguish Class A materials, such as wood, paper, and brush"; and (b) foam "used to extinguish Class B materials, which include gasoline, oil, and jet fuel."[2]

23.    Generally, Class B AFFF is a firefighting foam created specifically for addressing Class B types of fires, such as flammable liquid fires.

24.    Class B AFFF is used in industrial facilities, to train firefighters, to test firefighting equipment, and for preventing fires resulting from oil and gasoline. Class B AFFF is also used for extinguishing live fires under these circumstances.

25.    Historically, the United States Department of Defense (DOD) used Mil-Spec AFFF, a type of Class B AFFF, to fight fuel fires on military bases.  AFFF used by DOD and other federal agencies must conform to the military-specific performance and quality control measurements as prescribed by the military specifications.

26.    The Department of Defense, together with all agencies and affiliates of the United States Armed Forces, including their respective employees, agents, and persons under their direction or supervision, are referred to collectively herein as "DOD." AFFF used by DOD and other federal agencies must conform to the military-specific performance and quality control measurements as prescribed by the military specification Mil-F-24385, which requires Mil-Spec AFFF liquid

---

[2] https://www.michigan.gov/pfasresponse/0,9038,7-365-86514-496805--,00.html (accessed August 19, 2020).

concentrate to contain either 3% or 6% PFAS. In MIL-F-24385, DOD refers to 3% AFFF concentrate as "Type 3" and to 6% AFFF concentrate as "Type 6."

27. This complaint does not concern variants of AFFF that were not required to conform to military specification Mil-F-24385, which were designed and manufactured for, and/or sold to, private entities and state and local fire departments for commercial use.

28. Federal Aviation Administration directives require the use of Mil-Spec AFFF at certain civilian airports.

29. For purposes of this complaint only, the term "Airports" includes all airports located within the State of Michigan that are subject to the Federal Aviation Administration's authority and/or guidance, including each and every airport authority that operates or oversees one or more Airports and any individual or entity responsible for conducting firefighting activities or procuring Mil-Spec AFFF for use at any Airports.

30. Mil-Spec AFFF contains PFAS, including PFOA and PFOS. PFAS are known as "forever" chemicals, because they are extremely persistent in the environment and resistant to typical environmental degradation processes.

31. For purposes of this Complaint only, PFAS includes, but is not limited to, Perfluorooctanoic acid (PFOA) (Fluorinated Carbon Chain Length: $C_8$) (Chemical Abstract Services Registry Number (CASRN): 335-67-1) and Perfluorooctanesulfonic acid (PFOS) (Fluorinated Carbon Chain Length: $C_8$) (CASRN: 1763-23-1) (including the chemicals themselves, as well as all of their

8

salts, ionic states, and acid forms of molecules, as well as their "precursor" chemicals), by-products from the production of those chemicals used in Mil-Spec AFFF, and any other PFAS that has been used in Mil-Spec AFFF.

32.     There may be more than 5,000 different types of PFAS.  This Complaint encompasses all of the thousands of PFAS, known or unknown, that have been used in Mil-Spec AFFF (as defined herein).

33.     Michigan reserves its right to identify additional PFAS used in Mil-Spec AFFF identified through discovery and as the science and research on the emerging PFAS crisis develops.

34.     As a result of its chemical structure, Mil-Spec AFFF containing PFAS does not normally hydrolyze, photolyze, or biodegrade under environmental conditions, and is extremely persistent in the environment.  This means that once Mil-Spec AFFF is released into the environment, it migrates into and causes extensive contamination and injury to State natural resources and property.

35.     The release of Mil-Spec AFFF into the environment has also harmed the State's public health, safety, welfare, and the environment as exposure to PFAS contained in Mil-Spec AFFF is correlated with a wide array of harmful and serious public health effects.

36.     Defendants distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Mil-Spec AFFF throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

9

## PARTIES

### I.      Plaintiffs.

37.      Plaintiffs are Attorney General Dana Nessel, on behalf of the People of the State of Michigan, and the State of Michigan (collectively, State or Michigan).

38.      The State maintains its principal office at 525 West Ottawa Street, Lansing, Michigan 48933.

39.      The State brings this action in its capacity as sovereign, as trustee of State natural resources (or of substantial interest in property) contaminated and injured by Defendants, and pursuant to its *parens patriae* authority on behalf of the residents of Michigan.

40.      The Attorney General has statutory and common law authority to appear on behalf of the people of the State of Michigan in any cause or matter, and this authority is liberally construed.  See Mich. Comp. Laws § 14.28; *Michigan State Chiropractic Ass'n v. Kelley*, 262 N.W.2d 676, 677 (Mich. Ct. App. 1977).

41.      In addition, the Attorney General is explicitly authorized to commence a civil action under Parts 201, 17, and 31 of the NREPA.

42.      The State brings this action based upon its statutory authority to protect State natural resources and property, and its common law police power. This power includes, but is not limited to, its power to prevent pollution of the State's natural resources and property, to prevent nuisances, and to prevent and abate hazards to public health, safety, welfare, natural resources and the environment.  Mich. Comp. Laws § 324.1701.

## II.      Defendants.

### A.      PFAS Supplier Defendants.

43.      **Defendant E.I. du Pont de Nemours and Company (Historical DuPont)** is a Delaware corporation with its principal place of business at 974 Centre Road, Wilmington, Delaware 19805.

44.      Historical DuPont may be served with process through its registered agent, The Corporation Company, 40600 Ann Arbor Road E, Suite 201, Plymouth, Michigan 48170.

45.      **Defendant The Chemours Company** is a Delaware corporation with its principal place of business at 1007 Market Street, Wilmington, Delaware 19899.

46.      The Chemours Company may be served with process through its registered agent, The Corporation Company, 40600 Ann Arbor Road E, Suite 201, Plymouth, Michigan 48170.

47.      The Chemours Company conducts business throughout the United States, including in the State of Michigan.

48.      The Chemours Company was incorporated as a subsidiary of Historical DuPont as of April 30, 2015.

49.      From April 30, 2015 until July 2015, The Chemours Company was a wholly-owned subsidiary of Historical DuPont.

50.      In July 2015, Historical DuPont spun off The Chemours Company and transferred to The Chemours Company its "performance chemicals" business line,

11

which includes its fluoroproducts business, and distributed shares of The Chemours Company stock to Historical DuPont stockholders.

51.     The Chemours Company has since been an independent, publicly-traded company.

52.     **Defendant The Chemours Company FC, LLC** is a Delaware corporation with its principal place of business at 1007 Market Street, Wilmington, Delaware 19898.

53.     The Chemours Company FC, LLC may be served with process through its registered agent The Corporation Company, 40600 Ann Arbor Road E, Suite 201, Plymouth, Michigan 48170.

54.     The Chemours Company FC, LLC conducts business throughout the United States, including in the State of Michigan.

55.     The Chemours Company FC, LLC operates as a subsidiary of The Chemours Company and manufactures fluoropolymer resins.

56.     The Chemours Company and The Chemours Company FC, LLC are collectively referred to throughout this Complaint as "Chemours."

57.     **Defendant DowDuPont (Dow Dupont)** is a Delaware corporation with its principal place of business at 974 Centre Road, Wilmington, Delaware 19805.

58.     DowDuPont may be served with process through its registered agent The Corporation Company, 40600 Ann Arbor Road E, Suite 201, Plymouth, Michigan 48170.

12

59. Historical DuPont merged with The Dow Chemical Company in August 2017 to create DowDuPont.

60. Historical DuPont and The Dow Chemical Company each merged with wholly-owned subsidiaries of DowDuPont and, as a result, became subsidiaries of DowDuPont. Since the time of the merger, DowDuPont has effected a series of separation transactions to separate its businesses into three independent, publicly-traded companies for each of its agriculture, materials science, and specialty products businesses, discussed herein.

61. DowDuPont conducts business throughout the United States, including in the State of Michigan.

62. **Defendant Corteva, Inc. (Corteva)** is a Delaware corporation with its principal place of business at 974 Centre Road, Wilmington, Delaware 19805.

63. Corteva may be served with process through its registered agent The Corporation Company, 40600 Ann Arbor Road E, Suite 201, Plymouth, Michigan 48170.

64. Corteva conducts business throughout the United States, including in the State of Michigan.

65. On June 1, 2019, DowDuPont separated its agriculture business by spinning it off into Corteva.

66. Corteva was initially formed in February 2018.

67. From February 2018 until June 1, 2019, Corteva was a wholly-owned subsidiary of DowDuPont.

13

68.     On June 1, 2019, DowDuPont distributed to DowDuPont stockholders all issued and outstanding shares of Corteva common stock by way of a pro rata dividend.

69.     Following the June 1, 2019 stock distribution, Corteva became (and remains) the direct parent of Historical DuPont and holds certain DowDuPont assets and liabilities, including DowDuPont's agriculture and nutritional businesses.

70.     **Defendant DuPont de Nemours, Inc. (New DuPont)** is a Delaware corporation with its principal place of business at 974 Centre Road, Wilmington, Delaware 19805.

71.     New DuPont may be served with process through its registered agent The Corporation Company, 40600 Ann Arbor Road E, Suite 201, Plymouth, Michigan 48170.

72.     On June 1, 2019, DowDuPont, the surviving entity after the spin-off of Corteva and of another entity known as Dow, Inc., changed its name to DuPont de Nemours, Inc., i.e. New DuPont.

73.     New Dupont retained assets in the specialty products business lines following the above described spin-offs, as well as the balance of the financial assets and liabilities of Historical DuPont not assumed by Corteva, Inc.

74.     New DuPont conducts business throughout the United States, including in the State of Michigan.

14

75.     Historical DuPont, Chemours, Corteva, and New DuPont are collectively referred to as "DuPont" throughout this Complaint.

76.     DuPont manufactured and sold, distributed and/or supplied PFAS and/or their chemical precursors to the AFFF Manufacturer Defendants (as defined below) for use in Mil-Spec AFFF products that have been distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

77.     **Defendant Archroma U.S., Inc. (Archroma)** is a Delaware corporation with its principal place of business located at 5435 77 Center Drive, Charlotte, North Carolina 28217.

78.     Archroma may be served with process through its registered agent, The Corporation Company, 40600 Ann Arbor Road East, Suite 201, Plymouth, Michigan 48107.

79.     Archroma manufactured and sold, distributed and/or supplied PFAS and/or their chemical precursors to the AFFF Manufacturer Defendants (as defined below) for use in Mil-Spec AFFF products that have been distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

80.    **Defendant Arkema, Inc. (Arkema)** is a Pennsylvania corporation with its principal place of business at 900 First Avenue, King of Prussia, Pennsylvania 19406.

81.    Arkema may be served with process through its registered agent, CSC-Lawyers Incorporating Service, 601 Abbot Road, East Lansing, Michigan 48823.

82.    Arkema manufactured and sold, distributed and/or supplied PFAS and/or their chemical precursors to the AFFF Manufacturer Defendants (as defined below) for use in Mil-Spec AFFF products that have been distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

83.    **Defendant AGC Chemicals Americas, Inc. (AGCCA)**, is a Delaware corporation with its principal place of business at 55 East Uwchlan Avenue, Suite 201, Exton, Pennsylvania 19341.

84.    AGCCA may be served with process through its registered agent, The Corporation Company, 40600 Ann Arbor Road E, Suite 201, Plymouth, Michigan 48170.

85.    AGCCA manufactured and sold, distributed and/or supplied PFAS and/or their chemical precursors to the AFFF Manufacturer Defendants (as defined below) for use in Mil-Spec AFFF products that have been distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used

throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

86.    **Defendant Daikin America, Inc. (Daikin America)** is a Delaware corporation with its principal place of business at 20 Olympic Drive, Orangeburg, New York 10862.

87.    Daikin America may be served with process through its registered agent, Sadashige Irie, 28317 Beck Road, Suite E2, Wixom, Michigan 48393.

88.    AGCCA manufactured and sold, distributed and/or supplied PFAS and/or their chemical precursors to the AFFF Manufacturer Defendants (as defined below) for use in Mil-Spec AFFF products that have been distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

89.    **Defendant Solvay Specialty Polymers, USA, LLC (Solvay)** is a Delaware corporation with its principal place of business at 4500 McGinnis Ferry Road, Alpharetta, Georgia 30004.

90.    Solvay may be served with process through its registered agent, CSC-Lawyers Incorporating Service, 601 Abbot Road, East Lansing, Michigan 48823.

91.    Solvay manufactured and sold, distributed and/or supplied PFAS and/or their chemical precursors to the AFFF Manufacturer Defendants (as defined below) for use in Mil-Spec AFFF products that have been distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used

17

throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

**B.   AFFF Manufacturer Defendants.**

92.   **Defendant Chemguard, Inc. (Chemguard)** is a corporation organized and existing under the laws of Texas, with its principal place of business at 204 South 6th Avenue, Mansfield, Texas 76063.

93.   Chemguard, Inc. may be served with process through its registered agent, C T Corporation System, at The Corporation Company, 40600 Ann Arbor Road East, Suite 201, Plymouth, Michigan 48170.

94.   At all relevant times, Chemguard manufactured, designed, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Mil-Spec AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

95.   **Defendant Tyco Fire Products, LP** is a limited partnership organized and existing under the laws of Delaware, with its principal place of business at One Stanton Street, Marinette, Wisconsin 54143.

96.   Tyco Fire Products, LP may be served with process through its registered agent, The Corporation Company, 40600 Ann Arbor Road East, Suite 201, Plymouth, Michigan 48170.

97.   Tyco Fire Products, LP is the successor-in-interest to The Ansul Company (Ansul), having acquired Ansul in 1990.  Ansul and Tyco (as the successor-in-interest to Ansul), will hereinafter be collectively referred to as

18

"Tyco/Ansul." Tyco/Ansul manufactured and currently manufactures the Ansul brand of products, including Ansul brand Mil-Spec AFFF.

98.    At all relevant times, Tyco/Ansul manufactured, designed, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Mil-Spec AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

99.    **Defendant National Foam, Inc. (National Foam)** is a corporation organized and existing under the laws of Delaware, with its principal place of business located at 141 Junny Road, Angier, North Carolina 27501.

100.    National Foam may be served with process at its principal place of business, 141 Junny Road, Angier, North Carolina 27501.

101.    On information and belief, National Foam currently manufactures the Angus brand of AFFF products and is a subsidiary of Angus International Safety Group, Ltd, a United Kingdom private limited company.

102.    At all relevant times, National Foam manufactured, designed, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Mil-Spec AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

103.    **Defendant Angus Fire Armour Corporation (Angus Fire)** is a corporation organized and existing under the laws of Delaware, with its principal place of business at 141 Junny Road, Angier, North Carolina 27501.

104.    Angus Fire may be served with process through its registered agent, The Prentice-Hall Corporation System, Inc., 251 Little Falls Drive Wilmington, Delaware 19808.

105.    On information and belief, Angus Fire is a subsidiary of Angus International Safety Group, Ltd., a United Kingdom private limited company.

106.    At all relevant times, Angus Fire manufactured, designed, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Mil-Spec AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

107.    **Defendant Kidde P.L.C., Inc. (Kidde P.L.C.)** is a corporation organized and existing under the laws of Delaware, with its principal place of business at One Carrier Place, Farmington, Connecticut 06034.

108.    Kidde P.L.C. may be served with process through its registered agent, The Corporation Company, 40600 Ann Arbor Road East, Suite 201, Plymouth, Michigan 48170.

109.    At all relevant times, Kidde P.L.C. manufactured, designed, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Mil-Spec AFFF containing PFAS throughout the

State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

110.     **Defendant Kidde-Fenwal, Inc. (Kidde-Fenwal)** is a corporation organized and existing under the laws of Delaware, with its principal place of business at One Financial Plaza, Hartford, Connecticut 06101.

111.     Kidde-Fenwal may be served with process through its registered agent, The Corporation Company, 40600 Ann Arbor Road East, Suite 201, Plymouth, Michigan 48170.

112.     At all relevant times, Kidde-Fenwal manufactured, designed, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Mil-Spec AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

113.     On information and belief, Kidde-Fenwal is the successor-in-interest to Kidde Fire Fighting, Inc. (f/k/a Chubb National Foam, Inc., f/k/a National Foam System, Inc.).

114.     **Defendant Raytheon Technologies Corporation (Raytheon Technologies)** is a corporation organized and existing under the laws of Delaware, with its principal place of business at 10 Farm Springs Road, Farmington, Connecticut 06032.

115. Raytheon Technologies may be served with process through its registered agent, The Corporation Company, 40600 Ann Arbor Road East, Suite 201, Plymouth, Michigan 48170.

116. On information and belief, Kidde P.L.C. was acquired by United Technologies Corporation in or around 2005.

117. On information and belief, Kidde-Fenwal, Inc. became part of the UTC Control & Security unit of United Technologies Corporation.

118. On information and belief, United Technologies Corporation merged with Raytheon Company to form Raytheon Technologies in or around April 2020.

119. At all relevant times, Raytheon Technologies manufactured, designed, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Mil-Spec AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

120. **Defendant UTC Fire & Security Americas Corporation, Inc. (UTC Fire)** is a corporation organized and existing under the laws of North Carolina, with its principal place of business at 3211 Progress Drive, Lincolnton, North Carolina 28092.

121. UTC Fire may be served with process through its registered agent, The Corporation Company, 40600 Ann Arbor Road East, Suite 201, Plymouth, Michigan 48170.

122.    On information and belief, UTC Fire was created when United Technologies Corporation acquired Kidde P.L.C. and combined it with Chubb Fire, Ltd., a United Kingdom private limited company, in or around 2005.

123.    On information and belief, UTC Fire became a subsidiary of Raytheon Technologies when United Technologies Corporation merged with Raytheon Company in April 2020.

124.    At all relevant times, UTC Fire manufactured, designed, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Mil-Spec AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

125.    **Defendant Vulcan Fire Systems, Inc. (Vulcan Fire)** is a corporation organized and existing under the laws of Kentucky, with its principal place of business at 3330 Gilmore Indus Boulevard, Louisville, Kentucky 40213.

126.    Vulcan Fire may be served with process through its registered agent, CSC-Lawyers Incorporating Service Company, 601 Abbot Road, East Lansing, Michigan 48823.

127.    At all relevant times, Vulcan Fire manufactured, designed, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Mil-Spec AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

128.    **Defendant Huntington Laboratories, Inc. (Huntington Laboratories)** is a corporation organized and existing under the laws of Indiana, with its principal place of business at 970 East Tipton Street, Huntington, Indiana 46750.

129.    Huntington Laboratories merged with Defendant Ecolab Inc. in 1997.

130.    **Defendant Ecolab Inc. (Ecolab)** is a corporation organized and existing under the laws of Delaware, with its principal place of business at 370 Wabasha Street North, Saint Paul, Minnesota 55102 and is the successor-in-interest to Huntington Laboratories (collectively, Ecolab).

131.    Ecolab may be served with process through its registered agent, The Corporation Company, 40600 Ann Arbor Road East, Suite 201, Plymouth, Michigan 48170.

132.    At all relevant times, Ecolab  and Huntington manufactured, designed, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Mil-Spec AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

133.    **Defendant Mine Safety Appliances Company, LLC (Mine Safety Appliances)** is a limited liability company organized and existing under the laws of Pennsylvania, with its principal place of business at 1000 Cranberry Woods Drive, Cranberry Township, Pennsylvania 16066.

134. Mine Safety Appliances may be served with process through its registered agent, The Corporation Company, 40600 Ann Arbor Road East, Suite 201, Plymouth, Michigan 48170.

135. At all relevant times, Mine Safety Appliances manufactured, designed, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Mil-Spec AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

136. **Defendant Verde Environmental, Inc., a/k/a Micro-Blaze, Inc. (Verde Environmental)** is a corporation organized and existing under the laws of Delaware, with its principal place of business at 9223 Eastex Fairway, Houston, Texas 77093.

137. Verde Environmental may be served with process through its registered agent, The Corporation Trust Company, Corporation Trust Center 1209 Orange Street, Wilmington, Delaware 19801.

138. At all relevant times, Verde Environmental manufactured, designed, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Mil-Spec AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

139. **Defendant Hartford Chemical Sales Corporation (Hartford)** is a corporation organized and existing under the laws of New York, with its principal place of business at 2001 Marcus Avenue, Lake Success, New York 11042.

140. Hartford may be served with process at 2001 Marcus Avenue, Lake Success, New York 11042.

141. At all relevant times, Hartford manufactured, designed, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Mil-Spec AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

142. **Defendant G.V.C. Chemical Corporation (G.V.C. Chemical)** is a corporation organized and existing under the laws of New York, with its principal place of business at 29 Front Street, East Rockaway, New York 11518.

143. G.V.C. Chemical may be served with process at 29 Front Street, East Rockaway, New York 11518.

144. At all relevant times, G.V.C. Chemical Corporation manufactured, designed, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Mil-Spec AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

26

145. **Defendant Stevens Company, Inc. (Stevens Company)** was a Michigan Corporation with its principal place of business at 25460 Novi Road, Novi, Michigan 48375. Stevens Company dissolved in 2015.

146. Stevens Company's last registered agent to be served with process, Barbara Culham, was located at 15460 Trans-X Road, Novi, Michigan 48375.

147. At all relevant times, Stevens Company manufactured, designed, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Mil-Spec AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

148. **Defendant Hazard Control Technologies, Inc. (Hazard Control Technologies)** is a corporation organized and existing under the laws of Florida, with its principal place of business at 150 Walter Way, Fayetteville, Georgia 30214.

149. Hazard Control Technologies may be served with process through its registered agent, Gerda M. Benson, 500 South Beach Road, Hobe Sound, Florida 33455.

150. At all relevant times, Hazard Control Technologies distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Mil-Spec AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

27

151.   **Defendant Fire-Ade, Inc. (Fire-Ade)** is corporation organized and existing under the laws of North Carolina, with its principal place of business at 2800 Griffith Road, Winston Salem, North Carolina 27103.

152.   Fire-Ade may be served with process through its registered agent, Rhonda K. Clodfelter, 2615 Motsinger Road, Winston Salem, North Carolina 27107.

153.   At all relevant times, Fire-Ade manufactured, designed, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Mil-Spec AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

154.   **Defendant Rockwood Systems, Inc., f/k/a Rockwood Systems Corporation (Rockwood Systems)** is a corporation organized and existing under the laws of New York, with its principal place of business at 17 Allen Lane, Sloatsburg, New York 10974.

155.   Rockwood Systems may be served with process at 17 Allen Lane, Sloatsburg, New York 10974.

156.   At all relevant times, Rockwood Systems manufactured, designed, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Mil-Spec AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

28

157.    **Defendant Cobra Fire Protection, Inc. (Cobra)** is a corporation
organized and existing under the laws of Virginia, with its principal place of
business at 1 Hulvey Drive, Stafford, Virginia 22556.

158.    Cobra may be served with process through its registered agent,
Registered Agents Inc., 4445 Corporation Lane, Suite 264, Virginia Beach, Virginia
23462.

159.    At all relevant times, Cobra manufactured, designed, distributed, sold,
released, supplied, transported, arranged for disposal or treatment, handled, and/or
used Mil-Spec AFFF containing PFAS throughout the State of Michigan causing
injury to Michigan's public health, safety, welfare, natural resources and the
environment.

160.    **Defendant BroCo Products, Inc. (BroCo)** is a corporation
organized and exiting under the laws of Ohio, with its principal place of business at
8400 Baker Avenue, Cleveland, Ohio 44102.

161.    BroCo may be served with process through its registered agent,
Stephen C. Brown, 18624 Syracuse Avenue, Cleveland, Ohio 44110.

162.    At all relevant times, BroCo manufactured, designed, distributed, sold,
released, supplied, transported, arranged for disposal or treatment, handled, and/or
used Mil-Spec AFFF containing PFAS throughout the State of Michigan causing
injury to Michigan's public health, safety, welfare, natural resources and the
environment.

29

163.   **Defendant Pioneer Products, Inc. (Pioneer Products)** is a corporation organized and existing under the laws of New York, with its principal place of business at 169 Mineola Blvd, Mineola, New York 11501.

164.   Pioneer Products may be served with process through its registered agent, Lipstein & Associates, Inc., 388 South Oyster Bay Road, Hicksville, New York, 11801.

165.   At all relevant times, Pioneer Products manufactured, designed, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Mil-Spec AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

166.   **Denko, Inc., a/k/a Denko Foam, Inc. (Denko)**, is a corporation organized and existing under the laws of New York, with its principal place of business at P.O. Box 1236 Elmira, New York, 14902.

167.   Denko may be served with process at P.O. Box 1236 Elmira, New York, 14902.

168.   At all relevant times, Denko manufactured, designed, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Mil-Spec AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

169.     **Russell Martin Industries, Inc. (Russell Martin Industries)** is a corporation organized and existing under the laws of New York, with its principal place of business at 888 Ocean Street, Baldwin Harbor, New York 14410.

170.     Russell Martin Industries may be served with process at 888 Ocean Street, Baldwin Harbor, New York 14410.

171.     At all relevant times, Russell Martin Industries manufactured, designed, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Mil-Spec AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

172.     **Defendant Dawn Chemical Corporation of Wisconsin (Dawn Chemical)** is a corporation organized and existing under the laws of Wisconsin, with its principal place of business at 3325 W Kiehnau Avenue, Milwaukee, Wisconsin 53209.

173.     Dawn Chemical may be served through its registered agent, Michael St. George, 9229 N. Ironwood Lane, Bayside, Wisconsin 53217.

174.     At all relevant times, Dawn Chemical manufactured, designed, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Mil-Spec AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

31

175. **Defendant Amerex Corporation (Amerex)** is a corporation organized and existing under the laws of Alabama, with its principal place of business located at 7595 Gadsden Highway, Trussville, Alabama 35173.

176. Amerex may be served with process at 7595 Gadsden Highway, Trussville, Alabama 35173.

177. In 2011, Amerex acquired Solberg Scandinavian AS (Solberg), one of the largest European manufactures of AFFF. Solberg continued to operate as a products division of Amerex after the acquisition.

178. At all relevant times, Amerex manufactured, designed, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Mil-Spec AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

179. **Defendant Perimeter Solutions LP (Perimeter Solutions)** is limited partnership organized and existing under the laws of Delaware, with its principle place of business at 8000 Maryland Avenue, Suite 350, Clayton, Missouri 63105.

180. Perimeter Solutions may be served with process through its registered agent, C T Corporation System, at 120 S. Central Avenue, Clayton, Missouri 63105.

181. In 2019, Perimeter Solutions purchased the Solberg products division of Amerex.

32

182.    At all relevant times, Perimeter Solutions manufactured, designed, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Mil-Spec AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

183.    Perimeter Solutions is the successor-in-interest to Solberg.

184.    **Defendant Noble Industrial Supply Corporation (Noble)** is a corporation organized and existing under the laws of New York, with its principal place of business at 45 Middle Neck Road #4, Great Neck, New York 11021.

185.    Noble may be served with process through its registered agent Fine & Bassik, Esqs., at 316 Great Neck Road, Great Neck, New York 11021.

186.    At all relevant times, Noble manufactured, designed, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Mil-Spec AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

187.    **Defendant Royal Chemical Company (Royal)** is corporation organized and existing under the laws of Ohio, with its principal place of business at 8679 South Freeway Drive, Macedonia, Ohio 44056.

188.    Royal may be served with process through its registered agent, The Corporation Company, 40600 Ann Arbor Road East, Suite 201, Plymouth, Michigan 48170.

189.    At all relevant times, Royal manufactured, designed, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Mil-Spec AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

190.    **Defendant VST Chemical Corporation (VST**) is corporation organized and existing under the laws of New York, with its principal place of business at 253 West Penn Street, Long Beach, New York 11561.

191.    VST may be served with process at 20 Woods Road, Yulan, New York 12792.

192.    At all relevant times, VST manufactured, designed, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Mil-Spec AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

193.    **Defendant Summit Environmental Corporation, Inc. (Summit)** is a publicly traded corporation organized and existing under the laws of Texas, with its principal place of business at 16610 Dallas Parkway, Suite 2100, Dallas, Texas 75248.

194.    Summit may be served with process at 610 West Rawson Avenue, Oak Creek, Wisconsin 53154.

34

195.    At all relevant times, Summit manufactured, designed, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Mil-Spec AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

196.    **Defendant Fire Services Plus, Inc. (Fire Services Plus)** is a corporation organized and existing under the laws of Georgia, with its principal place of business located at 473 Dividend Drive, Peachtree City, Georgia 30269.

197.    Fire Services Plus may be served with process through its registered agent, Ronald E. Thames, 180 Etowah Trace, Fayetteville, Georgia 30214.

198.    At all relevant times, Fire Services Plus manufactured, designed, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Mil-Spec AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

199.    **Defendant Buckeye Fire Equipment Company (Buckeye)** is a corporation organized under the laws of Ohio, with its principal place of business located at 110 Kings Road, Kings Mountain, North Carolina 28086.

200.    Buckeye may be served with process through its registered agent, A Haon Corporate Agent, Inc., 29225 Chagrin Boulevard, Suite 350, Pepper Pike, Ohio 44122.

201.    At all relevant times, Buckeye manufactured, designed, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Mil-Spec AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

202.    **Defendant 3M Company (3M)** is a Delaware corporation with its principal place of business at 3M Center, St. Paul, Minnesota 55144.

203.    3M may be served with process through its registered agent, CSC-Lawyers Incorporating Service, 601 Abbot Road, East Lansing, Michigan 48823.

204.    At all relevant times, 3M manufactured, designed, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Mil-Spec AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

205.    **Defendant Dyneon, L.L.C. (Dyneon)** is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 6744 33rd Street North, Oakdale, Minnesota 55128.

206.    Dyneon left instructions for service with the Corporations, Securities & Commercial Licensing Bureau of the Michigan Department of Licensing and Regulatory Affairs directing service to be completed c/o 3M Company at 3M Center, 220-9E-02, St. Paul, Minnesota 55144.

207.   At all relevant times, Dyneon manufactured, designed, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Mil-Spec AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

208.   All Defendants:  (a) acted with actual or constructive knowledge that Mil-Spec AFFF would be delivered into areas affecting the State's natural resources and property; (b) are legally responsible for and committed each of the wrongful acts alleged in this Complaint; and (c) promoted Mil-Spec AFFF products containing PFAS, despite the availability of reasonable alternatives and their actual or constructive knowledge that the contamination alleged in this Complaint would be the inevitable result of their conduct.

209.   To the extent any act or omission of any Defendant is alleged in this Complaint, the officers, directors, agents, employees, or representatives of each such Defendant committed or authorized each such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of such Defendants, and did so while acting within the scope of their duties, employment or agency.

210.   Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates, and divisions of the named Defendants.

211.   Pursuant to 42 U.S.C. § 6903(15) and Mich. Comp. Laws § 324.301(h),
each Defendant is a "person" subject to the provisions of RCRA, 42 U.S.C. §§
6903(15), 6972, and the NREPA, Mich. Comp. Laws § 324.20137.

212.   The State's investigation of other entities that have caused Mil-Spec
AFFF to be released into the environment creating imminent and substantial
danger to public health and the environment is ongoing.

## JURISDICTION AND VENUE

213.   This Court has subject matter jurisdiction over this action under 28
U.S.C. § 1331.

214.   This Court has the authority to grant declaratory relief, 28 U.S.C. §
2201, as well as further relief requested in this Complaint, including injunctive
relief, 28 U.S.C. § 2202.

215.   This Court has jurisdiction over the RCRA claims set forth in this
complaint under Section 7002(a) of RCRA, 42 U.S.C. § 6972(a); the federal
Declaratory Judgment Act, 28 U.S.C. § 2201; and 28 U.S.C. § 1331 (federal
question).

216.   This Court also has supplemental jurisdiction over the NREPA,
common law, and MUFTA claims set forth in this complaint under 28 U.S.C. § 1367,
as they are substantially related to the RCRA claims and form part of the same case
or controversy.

217.   This Court has personal jurisdiction over Defendants by virtue of each
Defendants' regular and systematic contacts with the State of Michigan, including,

among other things, purposefully marketing, selling and/or distributing their Mil-Spec AFFF and/or products containing Mil-Spec AFFF to and within Michigan, and because they have the requisite minimum contacts with Michigan necessary to constitutionally permit the Court to exercise jurisdiction over them consistent with traditional notions of fair play and substantial justice.

218.    Venue is proper in the United States District Court for the Western District of Michigan pursuant to 28 U.S.C. § 1391 because a substantial part of the acts described in this Complaint occurred in this judicial district.

## FACTUAL ALLEGATIONS

**I.    Defendants had full knowledge of the health and environmental risks of Mil-Spec AFFF, which they intentionally hid from the public and the State.**

219.    PFAS are a family of chemical compounds containing strong carbon-fluorine bonds.[3]

220.    PFAS are human-made, synthetic chemicals that do not exist naturally in the environment.[4]

---

[3] U.S. Environmental Protection Agency, *EPA's Per- and Polyfluoroalkyl Substances (PFAS) Action Plan*, p 1, https://www.epa.gov/sites/production/files/2019 02/documents/pfas_action_plan_021319_508compliant_1.pdf (February 2019) (accessed August 19, 2020).

[4]  *Id*. at 1.

221.   PFAS are known as "forever" chemicals, because they are extremely persistent in the environment and resistant to typical environmental degradation processes.[5]

222.   PFAS do not break down or biodegrade over time, and instead, accumulate in the environment.[6]

223.   PFAS generally absorb poorly and tend to be mobile in soil and groundwater systems.

224.   This combination of properties enables PFAS to readily migrate in soil, surface water, and groundwater.[7]

225.   The pernicious characteristics of PFAS mean that once these chemicals are released into the environment, they migrate into and cause extensive contamination and injury to State natural resources and property.[8]

226.   The public is exposed to PFAS through ingestion of drinking water and contaminated food, inhalation, dermal contact, and other pathways.[9]

---

[5] *Id.* at 1.

[6] U.S. EPA., *Basic Information on* PFAS, https://www.epa.gov/pfas/basicinformation-pfas (accessed August 19, 2020).

[7] John A. Simon, *Editor's perspective—Per- and polyfluorinated substances pose substantial challenges to remediation practitioners*, Remediation: The Journal of Environmental Cleanup Costs, Technologies, and Techniques, 2018;28:3–7, https://onlinelibrary.wiley.com/doi/full/10.1002/rem.21547 (March 12, 2018) (accessed August 19, 2020).

[8] See generally Simon, *supra* n. 6.

[9] See *Basic Information on PFAS*, *supra* n. 5.

40

227.    PFAS bioaccumulate in the human body and can bio-magnify in animals, particularly fish and "top of the food chain" mammals.[10]

228.    PFAS can even be found in the blood of human infants, and protein-rich breast milk appears to be a source of PFAS exposure.[11]

229.    Even low doses of PFAS can result in adverse health effects for humans as well as animals.[12]

230.    Exposure to certain PFAS is correlated with a wide array of harmful and serious health effects in humans and animals, including but not limited to:

    (a) Liver damage;

    (b) Altered cholesterol levels;

    (c) Pregnancy-induced hypertension and/or preeclampsia;

    (d) Thyroid disease;

    (e) Modulation of the immune system;

---

[10] See, e.g., NBC News, *Breast-Fed Babies Show Buildup of Potentially Harmful Chemical*, http://www.nbcnews.com/id/57764921/ns/technology_and_science-science/t/breast-fed-babies-show-buildup-potentially-harmful-chemical/#.Xbs7FyhKhMB (August 21, 2015) (accessed August 19, 2020).

[11] See U.S. Dep't of Health and Human Services, Agency for Toxic Substances and Disease Registry, *Toxicological Profile for Perfluoroalkyls, Draft for Public Comment* (June 2018) (available at https://www.atsdr.cdc.gov/toxprofiles/tp200.pdf) (accessed August 19, 2020).

[12] See, e.g., Michigan Science Advisory Workgroup, *Health-Based Drinking Water Value Recommendations for PFAS in Michigan*, https://www.michigan.gov/documents/pfasresponse/HealthBased_Drinking_Water_Value_Recommendations_for_PFAS_in_Michigan_Report_659258_7.pdf (June 27, 2019) (accessed August 19, 2020); *see also* Michigan PFAS Science Advisory Panel, *Scientific Evidence and Recommendations for Managing PFAS Contamination in Michigan* (Dec. 7, 2018) (available at: https://www.michigan.gov/documents/pfasresponse/Science_Advisory_Board_Report_641294_7.pdf) (accessed August 19, 2020).

(f) Decreased fertility; and

(g) Decreases in birth weight.[13]

231.    PFAS contamination is a serious threat to public health, as well as to State natural resources and property.

232.    Because PFAS are persistent in the environment, unless PFAS are actively cleaned up from contaminated State natural resources and property or otherwise remediated, these chemicals will remain within the State and continue to contaminate State natural resources and property indefinitely.

233.    PFAS are difficult and costly to treat and remove from State natural resources and property or otherwise remediate.[14]

234.    PFAS have been used for decades in a wide array of consumer and industrial products, including Mil-Spec AFFF.[15]

235.    Release of Mil-Spec AFFF into the environment, which then seeps into and travels through soil, groundwater, and surface water, is a known pathway for PFAS to enter the environment.

236.    Defendants designed, marketed, developed, distributed, sold, manufactured, released, supplied, transported, arranged for disposal or treatment, handled, and/or used PFAS designed for Mil-Spec AFFF and/or Mil-Spec AFFF in

---

[13] See *Toxicological Profile for Perfluoroalkyls—Draft for Public Comment*, supra note 10

[14] See, e.g., Simon, *supra* n. 6.

[15] *Id.* at 1.

Michigan in such a way as to cause harm to the State's public health, safety, welfare, natural resources and the environment.

237. Defendants have known for decades that PFAS are toxic and because Mil-Spec AFFF contains PFAS, the release of Mil-Spec AFFF poses substantial health and environmental risks. Notwithstanding that knowledge, Defendants persistently and intentionally hid the danger of Mil-Spec AFFF from Michigan and the public.

238. Defendants released PFAS into the environment as a result of, or in connection with their design, marketing, development, distribution, sale, manufacturing, release, supply, transport, arrangement for disposal or treatment, handling, and/or use of PFAS designed for Mil-Spec AFFF and/or Mil-Spec AFFF in Michigan.

239. Defendants knew, foresaw, and/or reasonably should have known and/or foreseen that PFAS from Mil-Spec AFFF would contaminate and harm the State's public health, safety, welfare, natural resources, and the environment.

240. The Defendants have earned extraordinary profits from their business practices related to Mil-Spec AFFF.

241. Despite their explicit knowledge of the dangers of PFAS used in Mil-Spec AFFF, Defendants deliberately and intentionally concealed the dangers of PFAS from governmental entities, including the State of Michigan and its agencies, and the public at large in order to protect profits and avoid public responsibility for injuries and damage caused by their toxic products.

43

242.    Instead of disclosing the dangers associated with PFAS used in Mil-Spec AFFF, Defendants went to great lengths to falsely promote Mil-Spec AFFF as being safe and appropriate for widespread use.

243.    Defendants repeatedly assured and represented to governmental entities and to the public that such exposures presented no risk of harm and were of no legal, toxicological, or medical significance of any kind.

244.    At all relevant times, Defendants shared and/or should have shared among themselves, all relevant information relating to the presence, biopersistence, and bioaccumulation of PFAS from Mil-Spec AFFF in the environment and in human blood and associated toxicological, epidemiological, and/or other adverse effects and/or risks.

245.    At all relevant times, Defendants, through their acts and/or omissions, controlled, minimized, trivialized, manipulated, and/or otherwise influenced the information that was published in peer-review journals, released by any governmental entity, and/or otherwise made available to the public relating to PFAS in human blood and any alleged adverse impacts and/or risks associated therewith, effectively preventing the State from discovering the existence and extent of any harm as alleged herein.

246.    At all relevant times, Defendants, through their acts and/or omissions, took steps to attack, challenge, discredit, and/or otherwise undermine any scientific studies, findings, statements, and/or other information that proposed, alleged, suggested, or even implied any potential adverse environmental damage and health

44

effects or risks and/or any other fact of any legal, toxicological, or medical significance associated with the presence of PFAS in the environment and human blood.

247.   At all relevant times, Defendants, through their acts and/or omissions, concealed and/or withheld information from their customers, governmental entities, and the public that would have properly and fully alerted Michigan to the environmental, toxicological, medical, or other significant risks from PFAS contamination.

248.   At all relevant times, Defendants encouraged the continued and increased use and release of Mil-Spec AFFF, which caused PFAS to be released into the environment of Michigan by their customers and others, despite knowledge of the toxicity, persistence, and bioaccumulation concerns associated with Mil-Spec AFFF containing PFAS.

249.   Defendants' actions have contaminated and harmed Michigan's public health, safety, welfare, natural resources and the environment.

## II.   Defendants failed to act on their knowledge of Mil-Spec AFFF's PFAS health and environmental risks.

250.   Despite their knowledge that Mil-Spec AFFF posed environmental and public health risks, and despite the availability of reasonable alternatives, Defendants failed to take appropriate precautionary measures to prevent or mitigate contamination caused by Mil-Spec AFFF.

251.   Defendants promoted Mil-Spec AFFF as being environmentally sound and appropriate for widespread use.

45

252. At all times relevant to this litigation, Defendants were or should have been aware that PFAS contamination of and injury to the State's natural resources and property was inevitable as a result of the use of Mil-Spec AFFF, due to PFAS's solubility, recalcitrance to biodegradation and bioremediation, and the normal and foreseen use of Mil-Spec AFFF manufactured, distributed, sold, and used in Michigan.

253. Defendants possess—and have always possessed—vastly superior knowledge, resources, experience, and other advantages, in comparison to anyone or any agency, concerning the nature and properties of PFAS and Mil-Spec AFFF.

254. By virtue of their tremendous economic power and analytical resources, including the employment of scientists such as chemists, engineers, and toxicologists, Defendants have at all relevant times been in a position to know, identify, and confirm the threat Mil-Spec AFFF posed and still poses to State natural resources and public health.

255. In addition, by virtue of this superior knowledge, and/or by virtue of Defendants' partial and incorrect statements regarding the nature and impacts of PFAS, Defendants had a duty to disclose the truth and to act in accordance with the truth about PFAS.

## III.    Michigan's Mil-Spec AFFF and PFAS Investigations.

256.    Mil-Spec AFFF contamination in Michigan's groundwater, surface water, and natural resources is a serious, immediate, and direct threat to the State's public health, safety, welfare, natural resources and the environment.

257.    In response to this serious and immediate threat, Michigan has implemented one of the most aggressive Mil-Spec AFFF investigations and PFAS sampling plans in the nation.

258.    In November 2017, Executive Directive No. 2017-4 established MPART to address concerns about PFAS contamination in Michigan.[16]

## A.    Michigan's PFAS standards.

259.    MPART was tasked with the formation of an Independent Science Advisory Panel, comprised of experts from throughout the United States, to provide analysis of human health risks associated with PFAS in the environment and evidence-based recommendations to Michigan.

260.    On December 7, 2018, the Independent Science Advisory Panel published a report which, amongst other things, advised that the State of Michigan should impose drinking water standards for PFOS and PFOA that are more restrictive than the U.S. EPA's Lifetime Health Advisory (LHA) of 70 ppt combined for PFOS and PFOA and that the State of Michigan should evaluate other PFAS.[17]

---

[16] See generally Executive Directive No. 2017-4, https://www.michigan.gov/documents/snyder/ED_2017-4_605925_7.pdf (November 13, 2017) (accessed August 19, 2020).

[17] Michigan PFAS Science Advisory Panel, *Scientific Evidence and Recommendations for Managing PFAS Contamination in Michigan* (Dec. 7, 2018), available at

47

261. In March 2019, Governor Gretchen Whitmer announced that Michigan will establish enforceable state drinking water standards for PFAS.[18]

262. Governor Whitmer directed MPART to form an independent Science Advisory Workgroup to navigate the science and standards from across the country and develop health-based values (HBVs) to inform the initial phase of the rulemaking process for establishing state drinking water standards.[19]

263. The Science Advisory Workgroup undertook a methodical approach to evaluate existing and proposed standards from across the country for the 18 PFAS analytes considered under U.S. EPA Method 537.1.[20]

264. The Science Advisory Workgroup focused on those PFAS that they determined had enough peer reviewed studies on which to base their conclusions.[21]

265. On August 3, 2020, EGLE adopted new standards aimed at protecting Michiganders from PFAS contamination in municipal drinking water:[22]

| Specific PFAS | Drinking Water HBV | Chemical Abstract Services |
|---|---|---|
| | | |

---

https://www.michigan.gov/documents/pfasresponse/Science_Advisory_Board_Report_641294_7.pdf (last accessed August 19, 2020).

[18] *Health-Based Drinking Water Value Recommendations for PFAS in Michigan*, n. 11, *supra*, at 2.

[19] *Id.*

[20] *Id.* at 3; *see also Method 537.1: Determination of Selected Per- and Polyfluorinated Alkyl Substances in Drinking Water by Solid Phase Extraction and Liquid Chromatography/Tandem Mass Spectrometry (LC/MS/MS)* https://cfpub.epa.gov/si/si_public_record_Report.cfm?dirEntryId=343042&Lab=NERL (accessed August 19, 2020).

[21] *Id.*

[22] *Id.*

48

|  |  | Registry Number (CASRN) |
|---|---|---|
| PFNA | 6 ng/L (ppt) | 375-95-1 |
| PFOA | 8 ng/L (ppt) | 335-67-1 |
| PFHxA | 400,000 ng/L (ppt) | 307-24-4 |
| PFOS | 16 ng/L (ppt) | 1763-23-1 |
| PFHxS | 51 ng/L (ppt) | 355-46-4 |
| PFBS | 420 ng/L (ppt) | 375-73-5 |
| HFPO-DA (GenX) | 370 ng/L (ppt) | 13252-13-6 |

266.    On August 3, 2020, EGLE adopted new standards aimed at protecting Michiganders from PFAS contamination in municipal drinking water.

267.    Administered by the Department of Environment, Great Lakes, and Energy (EGLE) (f/k/a Michigan Department of Environmental Quality), the new regulations limit seven PFAS chemicals in drinking water, consistent with the recommendations of the Science Advisory Workgroup, as reflected in the chart above.

268.    The limits in the chart above represent the current Maximum Contamination Levels for municipal drinking water in Michigan.

269.    The new drinking water standards also update Michigan's existing groundwater clean-up criteria of 70 ppt for PFOS and PFOA. The new groundwater standard is 8 ppt for PFOA and 16 ppt for PFOS.

270.   These new levels represent the current cleanup criteria under Part 201 of the NREPA for groundwater used as drinking water under the authority of Mich. Admin. Code R 299.6.

**B.     MPART's PFAS & Mil-Spec AFFF investigations.**

271.   Immediately after its formation, MPART began a series of investigations and collected sampling data to identify, characterize, and address risks to the State's public health, safety, welfare, natural resources and the environment as quickly as possible.[23]

272.   MPART initiated a Statewide PFAS Sampling Program in 2018, which consists of multiple phases.

273.   MPART began Phase I of its Statewide PFAS Sampling Program (MPART Study Phase I) in April 2018 in order to test drinking water for approximately 75% of Michigan's residents.[24]

274.   Executive Order 2019-3, issued by Governor Gretchen Whitmer, established MPART as an enduring body to continue to address the PFAS

---

[23] See, e.g., Department of Environment, Great Lakes, and Energy, Michigan PFAS Action Response Team, *PFAS Sites Being Investigated*, https://www.michigan.gov/pfasresponse/0,9038,7-365-86511---,00.html (accessed August 19, 2020).

[24] Michigan PFAS Action Response Team, *PFAS Response, Phase I (2018)*, available at https://www.michigan.gov/pfasresponse/0,9038,7-365--495899--,00.html (accessed August 19, 2020).

50

contamination in Michigan, protect public health, safety, welfare, natural resources, and the environment, and ensure the safety of Michigan's land, air, and water.[25]

275.    MPART conducted Phase II of MPART's Statewide PFAS Sampling Program (MPART Study Phase II) in 2019 to sample non-community public water supplies which were not part of Phase I in order to assess the potential for PFAS impact in drinking water for expanded at-risk populations.[26]

276.    A total of 2,500 facilities, including both community water supplies (CWS) and non-community water supplies (NCWS), were sampled during the MPART Study Phase I and Phase II.

277.    A total of 70 CWS with intakes in one of the Great Lakes, connecting channels, or inland rivers, and 1,045 other CWS that rely solely on groundwater were sampled.

278.    The CWS facilities sampled consisted of municipalities, manufactured housing communities, apartment complexes, subdivisions, condominium developments, and others.

---

[25] See generally Executive Directive No. 2019-3, https://www.michigan.gov/whitmer/0,9309, 7-387-90499_90705-488737--,00.html; see also Department of Environment, Great Lakes, and Energy, Michigan PFAS Action Response Team, MPART, https://www .michigan.gov/pfasresponse/0, 9038, 7-365-86513---,00.html (accessed August 19, 2020).

[26] Michigan PFAS Action Response Team, *PFAS Response, Phase II (2019),* available at https://www.michigan.gov/pfasresponse/0,9038,7-365-86510_88061_92549_92526-495786--,00.html (accessed August 19, 2020).

51

279.    A total of 460 schools, 165 childcare providers and Michigan Head Start programs, and approximately 716 additional water supplies classified as NCWS, which have their own groundwater well(s), were also sampled.

280.    In addition to MPART's Statewide public water supply Phase I and Phase II studies, MPART has also conducted groundwater investigations and found exceedances of Part 201 cleanup criteria (of 8 ppt for PFOA and 16 ppt for PFOS) at 105 sites.  EGLE has also conducted groundwater investigations at other sites and over 40 of those exceed the revised drinking water criteria of 8 ppt for PFOA or 16 ppt for PFOS.  MPART also has conducted wastewater screening, surface water screening, fish and wildlife screening, and screening of surface water foam suspected to be the result of PFAS contamination.

281.    MPART has discovered elevated PFAS concentrations from Mil-Spec AFFF in lakes and waterways across the State of Michigan.

282.    PFAS-contaminated foam has been documented on the surface of rivers and lakes detrimentally affected by PFAS contamination in Michigan.

283.    Since June 2019, health advisories have been issued by local health departments or the Michigan Department of Health and Human Services warning residents to avoid contact with PFAS foam on various lakes and streams in Michigan.

284.    These advisories which are in place indefinitely, advise residents to avoid ingesting PFAS foam and to wash their hands after touching foam.

52

285.    Human-health-based consumption advisories have been established for fish in various lakes and streams in Michigan based on the presence of PFAS in edible portions of fish.

286.    These advisories range from limitations on consumption to "do not eat" advisories, and such advisories remain in effect at this time.

287.    MPART has also discovered elevated levels of PFAS in groundwater and surface water, including drinking water sources.

288.    Defendants manufactured Mil-Spec AFFF that was delivered to Michigan.

289.    MPART's widespread sampling conducted pursuant to Executive Directive 2017-4 and Executive Order 2019-3 has revealed the presence of PFAS at levels that threaten significant portions of the State's ecosystem.

290.    The State's investigation and response are ongoing given the scope of the problem and that knowledge of PFAS's public health and environmental risks is evolving.


IV.    **Mil-Spec AFFF contamination is widespread in Michigan.**

291.    In this Complaint, the State seeks damages and remedies for Mil-Spec AFFF contamination at locations and/or properties throughout the State.  In this Complaint, the State *does not* seek damages and remedies for PFAS contamination caused by the release of non-Mil-Spec (i.e., commercially available) AFFF.

292.     Mil-Spec AFFF contamination has harmed natural resources and property throughout the State and has injured the State's public health, safety,

welfare, natural resources, and the environment and interferes with the use of
these precious resources.

293.    As noted above, the term "natural resources" shall mean land, fish,
wildlife, biota, air, water, ground water, drinking water supplies, and other such
resources belonging to, managed by, held in trust by, appertaining to, or otherwise
controlled by the United States, the State or the Tribes.  Likewise, the term
"natural resource damages" include, without limitation:  (i) Natural Resource
Damage Assessment Costs; (ii) the costs of restoration, rehabilitation, or
replacement of injured or lost Natural Resources and the services they provide, or of
acquisition of equivalent resources (including costs of Natural Resource Restoration
Projects); (iii) the costs of planning and monitoring such restoration activities; (iv)
any other compensation for injury, destruction, loss, impairment, diminution in
value, loss, or loss of use or non-use of Natural Resources and/or the services they
provide; and (v) each of the categories of recoverable damages described in
applicable State Natural Resource Damage law.

294.    Given PFAS's properties, including their resistance to biodegradation
and their solubility, PFAS from Mil-Spec AFFF continues to move through
groundwater, surface waters, soils, and other natural resources, and cause
contamination in new locations, adversely impacting State natural resources and
property.

54

295.    PFAS continue to move through the environment and contaminate and injure State natural resources and property at a number of locations throughout the State with known Mil-Spec AFFF contamination.

296.    The State seeks a remedy through this lawsuit for contamination at any site within the State where Mil-Spec AFFF has been detected, or in the future will be detected, and where PFAS from Mil-Spec AFFF has been or will be detected above Michigan's current clean up criteria.

297.    Defendants' acts and omissions directly and proximately caused and continue to cause PFAS from Mil-Spec AFFF to intrude into and contaminate and injure these natural resources and property.

298.    There are proven and preliminary remedial techniques for cleaning up PFAS from Mil-Spec AFFF in environmental media, and for successfully treating drinking water.

299.    Absent use of remediation and treatment methods, PFAS contamination associated with Mil-Spec AFFF will continue to spread through the State's natural resources and property.

300.    Although PFAS are persistent in the environment, PFAS from Mil-Spec AFFF can be successfully remediated in certain natural resources and/or successfully treated, but at significant expense.

301.    PFAS contamination levels from Mil-Spec AFFF in State natural resources including groundwater and drinking water typically fluctuate (i.e., increase and decrease) over time as PFAS from Mil-Spec AFFF moves through

groundwater, and due to other factors, including changes in seasonal precipitation levels.

302. PFAS levels from Mil-Spec AFFF can fluctuate at a single contamination site over time. For this reason, the only way to be certain that PFAS from Mil-Spec AFFF no longer exists in State natural resources such as groundwater or drinking water is to remediate or treat the PFAS. In other words, if Mil-Spec AFFF is not remediated, it will contaminate the environment forever.

303. The presence and migration of PFAS from Mil-Spec AFFF in the State's natural resources and property, absent large-scale and costly remediation and/or treatment, will continue indefinitely, and will continue to threaten the State's natural resources and property.

304. Because of the injury Mil-Spec AFFF has caused and is causing to State natural resources, Michigan's natural resources require restoration, including compensation for interim and permanent losses.

305. The State reserves its right to amend this Complaint as additional evidence of Mil-Spec AFFF contamination comes to light including, but not limited to, Mil-Spec AFFF contamination of wildlife, soils, sediments, and other State natural resources.

306. Contamination from use of Mil-Spec AFFF at locations throughout Michigan has injured the State's natural resources belonging to, managed by, controlled by, appertaining to, or held in trust by the State or a local unit of

government and/or adversely impacted their beneficial public trust uses including those for drinking water, recreation, fishing, agriculture, and other uses.

307. Contamination from use of Mil-Spec AFFF in Michigan has caused substantial injury and damage to the State natural resources.

308. Michigan and its residents have been deprived of the full use and enjoyment of natural resources belonging to, managed by, controlled by, appertaining to, or held in trust by the State or a local unit of government, which have been substantially harmed by Mil-Spec AFFF contamination throughout the State.

309. The State's natural resources and property will continue to be harmed and injured for the foreseeable future by the ongoing release and/or spread of PFAS from Mil-Spec AFFF contamination throughout the State.

310. Defendants' acts and/or omissions have caused and/or contributed to Mil-Spec AFFF contamination throughout the State.

311. To the extent that Defendants did not own any property or operate any facility with Mil-Spec AFFF contamination in the State, Defendants knew or should have known that Mil-Spec AFFF would be released or disposed of from facilities and/or properties in the State and did not take any action to ensure that the owners or operators properly disposed of Mil-Spec AFFF.

312. Defendants failed to disclose the environmental and health risks of Mil-Spec AFFF that were known or should have been known to them, to consumers, to users, or to the State.

313. Because Defendants failed to disclose the environmental and health risks of Mil-Spec AFFF, the risks associated with Mil-Spec AFFF were unknown to the State.

314. Defendants were in the best position to reduce the risk of harm of Mil-Spec AFFF contamination in Michigan.

315. Each of the State's natural resources is precious, limited, and invaluable, as described in more detail below.

### 1. Groundwater.

316. Groundwater is a precious, limited, and invaluable State natural resource that is used for drinking water, irrigation, agriculture, and other important purposes.

317. Agriculture is a significant industry in Michigan, where the food and agriculture system accounts for an estimated $104.7 billion in direct, indirect, and induced economic activity annually.

318. Agriculture accounts for approximately 805,000 jobs in the State of Michigan.

319. Approximately 45% of Michiganders rely upon groundwater as a source for their drinking water.[27]

---

[27] Michigan Department of Environment, Great Lakes, and Energy (f/k/a Michigan Department of Environmental Quality), *Fact Sheet: Groundwater Statistics*, https://www.michigan.gov/documents/deq/deq-wd-gws-wcu-groundwaterstatistics_270606_7.pdf (rev. Jan. 2018) (accessed August 19, 2020).

58

320.    State natural resources, including groundwater, are vital to Michigan's public health, safety, and welfare, and to the State's economy and ecology.

321.    Defendants' PFAS and Mil-Spec AFFF has contaminated and damaged the State's groundwater in locations throughout the State, and at yet to be identified sites of PFAS contamination.

322.    Defendants' PFAS and Mil-Spec AFFF has contaminated and damaged drinking water that is drawn from groundwater sources in locations throughout the State.

323.    Ongoing additional testing continues to reveal further PFAS contamination and injury of groundwater in locations throughout Michigan caused by Defendants' Mil-Spec AFFF.

324.    It is certain that additional testing will reveal further PFAS contamination and injury of groundwater in locations throughout Michigan caused by Defendants' Mil-Spec AFFF.

### 2.    Surface waters.

325.    Surface waters are precious, limited, and invaluable State natural resources that are used for drinking water, irrigation, recreation such as swimming and fishing, and ecological and other important purposes.

326.    The Great Lakes—Superior, Huron, Michigan, Ontario and Erie—comprise the largest body of fresh water on Earth, holding nearly 21% of the world's fresh surface water and more than 84% of North America's fresh surface water.[28]

327.    3,288 miles of Michigan's border is along the shores of Lake Michigan, Lake Superior, Lake Huron, and Lake Erie.[29]

328.    There are also more than 11,000 inland lakes of five acres in size or larger in Michigan.  According to the Michigan Historical Society, a person in Michigan is never more than six miles from an inland lake or more than 85 miles from the shore of the Great Lakes.[30]

329.    Michigan's Great Lakes include some of most majestic natural shorescapes on the planet and the State's tourism and recreation industries are dependent upon clean water, including surface waters.

330.    Michigan's Great Lakes shoreline and its inland lakes are commercially, recreationally, aesthetically, and ecologically important to the State and its residents, including by supporting aquatic ecosystems, and biota such as fish.

331.    Tourism is a significant industry in Michigan.

---

[28] U.S. EPA, *Facts and Figures About the Great Lakes*, https://www.epa.gov/greatlakes/facts-and-figures-about-great-lakes (accessed August 19, 2020).

[29] Michigan.gov, *Does Michigan Have the Longest Coast Line in the United States*? https://www.michigan.gov/som/0,4669,7-192-26847-103397--,00.html (accessed August 19, 2020).

[30] Michigan State University, Michigan Inland Lake Partnership, *FAQ*, https://www.canr.msu.edu/michiganlakes/faq (accessed August 19, 2020)..

332.    In 2018, approximately 124.8 million visitors came to Michigan and spent approximately $25.7 billion in the State.

333.    In 2018, the tourism industry supports approximately 6.0% of all jobs in Michigan and generated approximately $2.8 billion in state and local taxes.[31]

334.    A significant portion of Michigan's tourism industry relates to outdoor recreation.

335.    Outdoor recreation is also vitally important to Michigan residents.

336.    A 2017 telephone survey conducted by Public Sector Consultants on behalf of the Michigan Department of Natural Resources established that 54% of surveyed individuals swam outdoors in Michigan, 41% of surveyed individuals fished in Michigan, 32% of surveyed individuals canoed, kayaked, used stand-up paddle boards, or went wind surfing in Michigan, and 31% of surveyed individuals used motor boats.[32]

337.    Defendants' PFAS and Mil-Spec AFFF have contaminated and injured the State's surface waters in locations throughout the State.

338.    Ongoing additional testing continues to reveal further Mil-Spec AFFF contamination and injury of surface waters in locations throughout Michigan caused by Defendants' Mil-Spec AFFF.

---

[31] Tourism Economics, *Economic Impact of Tourism in Michigan*, 2018 p 3, https://medc.app.box.com/s/oheae29l9u5204v6myfviuhph5ax5btp (accessed August 19, 2020).

[32] Public Sector Consultants and The Michigan Department of Natural Resources, *Michigan Statewide Comprehensive Outdoor Recreation Plan: 2018-2022*, p 11, https://publicsectorconsultants.com/wp-content/uploads/2018/09/SCORP2018-2022_Final.pdf (accessed August 19, 2020).

339.     It is certain that additional testing will reveal further Mil-Spec AFFF contamination in surface waters in locations throughout Michigan caused by Defendants' Mil-Spec AFFF.

### 3.     Wildlife, soils, and sediment.

340.     Wildlife, soil, and sediments are precious, limited, and of great value to State natural resources.

341.     Agriculture is one of Michigan's largest industries, contributing billions annually to Michigan's economy.

342.     Michigan's fish and other wildlife are used for food and recreational purposes, and provide a significant economic benefit to the State, including through tourism and recreation.

343.     Injuries to wildlife affect not only individual wildlife, but the entire ecosystem of which they are a part.

344.     Soil and sediments are part of or interconnected with the health of the State's natural resources such as surface waters, groundwater, and wildlife, and provide numerous values and services, including but not limited to recreation, tourism, and agriculture.

345.     Sediments are important as habitat for wildlife including fish, among other important ecological uses; and soils may contain contaminants that migrate to groundwater.

346.     A healthy and functioning ecosystem depends upon the interplay between non-impaired soils, sediments, and wildlife.

347.    The State's investigation and response are ongoing given the scope of

PFAS contamination from Mil-Spec AFFF and because knowledge of the public

health and environmental risks associated with Mil-Spec AFFF is evolving.

348.    It is certain that additional testing will reveal further Mil-Spec AFFF

contamination and injury of agricultural operations, soils, sediments, and wildlife in

locations throughout Michigan.

## V.    Historical DuPont's spinoff of The Chemours Company.

349.    Chemours was organized by DuPont in the state of Delaware on

February 18, 2014 as Performance Operations, LLC, for the purpose of transferring

to Chemours assets and liabilities, including any entities holding assets and

liabilities, associated with certain of DuPont's Performance Chemicals segment.

Chemours changed its name to The Chemours Company, LLC on April 15, 2014.

The Chemours Company, LLC had nominal operations during the period from

February 18, 2014 through December 31, 2014.  The Chemours Company, LLC was

converted from a limited liability company to a Delaware corporation on April 30,

2015.[33]

350.    In July 2015, Historical DuPont transferred to The Chemours

Company its "performance chemicals" business line, including titanium

technologies, fluoroproducts, and chemical solutions.[34]

---

[33] See The Chemours Company SEC Information Statement Summary,
https://www.sec.gov/Archives/edgar/data/1627223/000119312515215110/d832629dex
991.htm (June 5, 2015) (accessed August 19, 2020).

[34] See *Id*.

351.   In addition to the transfer of assets, The Chemours Company accepted broad assumption of many liabilities for Historical DuPont's historical use and discharge of PFAS, although the specific details regarding the liabilities that The Chemours Company assumed are set forth in the non-public schedules.[35]

352.   The transfer to The Chemours Company of Historical DuPont's performance chemicals business line, which was loaded with failing products and substantial debts, as well as many environmental liabilities from Historical DuPont, which were known by Historical DuPont to be extraordinarily large, resulted in a transfer in which The Chemours Company did not receive a reasonably equivalent value in exchange for the transfer or obligation.

353.   Further, the assets transferred to The Chemours Company were unreasonably small in relation to the business or transaction.  Historical DuPont believed or reasonably should have believed that The Chemours Company would incur debts beyond its ability to pay them as they became due.

354.   At the time of those transfers, the performance chemicals business line carried an estimated debt and/or liabilities of approximately $4 billion.

355.   In 2015, prices of Titanium Dioxide plummeted, significantly decreasing the value of Historical DuPont's titanium technologies business line.[36]

---

[35] See generally, Separation Agreement by and between E. I. DuPont de Nemours and Company and The Chemours Company (Separation Agreement), https://www.sec.gov/Archives/edgar/data/30554/000003055415000065/exhibit21separationagreeme.htm (June 26, 2015) (accessed August 19, 2020).

[36] See, e.g., Cyrus Sanati, *How DuPont Spinoff Chemours Came Back from the Brink*, Fortune, https://fortune.com/2016/05/18/how-dupont-spinoff-chemours-came-back-from-the-brink/ (May 18, 2016) (accessed August 19, 2020.)

356.    Historical DuPont had also promised to phase out production and use of PFOA, a major component of its fluoroproducts line, by 2015.

357.    Under the Separation Agreement, The Chemours Company agreed to indemnify Historical DuPont against, and assumed for itself, all "Chemours Liabilities," which is defined broadly to include, among other things, "any and all liabilities relating," "primarily to, arising primarily out of or resulting primarily from, the operation of or conduct of the [Performance Chemicals] Business at any time." This indemnification is uncapped and does not have a survival period.[37]

358.    The Chemours Company agreed to indemnify Historical DuPont against and assume for itself the Performance Chemical Business's liabilities regardless of:  (a) when or where such liabilities arose; (b) whether the facts upon which they are based occurred prior to, on, or subsequent to the effective date of the spinoff; (c) where or against whom such liabilities are asserted or determined; (d) whether arising from or alleged to arise from negligence, gross negligence, recklessness, violation of law, fraud or misrepresentation by any member of the Historical DuPont group or the Chemours group; and (e) which entity is named in any action associated with any liability.[38]

359.    The Chemours Company agreed to indemnify Historical DuPont from, and assume all, environmental liabilities that arose prior to the spinoff if they were

---

[37] See Separation Agreement, *supra* n. 34, p 11.
[38] *Id.* at 53–65 (Article VI—Indemnification).

65

"primarily associated" with the Performance Chemicals Business.[39]  Such liabilities were deemed "primarily associated" if Historical DuPont reasonably determined that 50.1% of the liabilities were attributable to the Performance Chemicals Business.[40]

360.   The Chemours Company also agreed to use its best efforts to be fully substituted for Historical DuPont with respect to "any order, decree, judgment, agreement or Action with respect to Chemours Assumed Environmental Liabilities . . . ."[41]

361.   At the time of the July 2015 spin-off, Historical DuPont was well aware of its potential liabilities related to PFAS contamination throughout the United States.

362.   Until the spinoff was complete, The Chemours Company was a wholly-owned subsidiary of Historical DuPont.  Although The Chemours Company had a separate board, the board was controlled by Historical DuPont employees.

363.   Once the spinoff was complete, seven new members of The Chemours Company board were appointed, for an eight-member board of directors of the new public company.  The negotiations concerning the spinoff were conducted and the related decisions were made while the board was still controlled by Historical DuPont.

---

[39] *Id.* at 7, 53–65 (Article VI—Indemnification).

[40] *Id.*

[41] *Id.* at 63.

66

364.    The new independent board appointed upon the completion of the spinoff did not take part in the negotiations of the terms of the separation.

365.    In 2005, Historical DuPont agreed to pay $16.5 million to resolve eight counts brought by the EPA alleging violations of the Toxic Substances Control Act and the Resource Conservation and Recovery Act concerning the toxicity of PFAS.[42] At the time, it was the largest such penalty in history.[43]

366.    Also in 2005, Historical DuPont settled a class action lawsuit filed on behalf of 70,000 residents of Ohio and West Virginia for $343 million.[44]  Under the terms of the 2005 class action settlement, Historical DuPont agreed to fund a panel of scientists to determine if any diseases were linked to PFOA exposure, to filter local water for as long as C-8 (*i.e.*, long-chain PFAS) concentrations exceeded regulatory thresholds, and to set aside $235 million for ongoing medical monitoring of the affected community.[45]  This panel was known as the C-8 Science Panel and is discussed herein.

367.    After eight years, the C-8 Science Panel found several significant diseases, including cancer, with a probable link to PFOA.

---

[42] See U.S. EPA, *Reference News Release: EPA Settles PFOA Case Against DuPont for Largest Environmental Administrative Penalty in Agency History*, https://www.epa.gov/enforcement/reference-news-release-epa-settles-pfoa-case-against-dupont-largest-environmental (Dec. 14, 2005) (accessed August 19, 2020.)

[43] *Id.*

[44] See Settlement Agreement in *Leach v. E.I DuPont de Nemours and Company*, In the Circuit Court of Wood County, West Virginia, Case No. 01-C-608.

[45] *Id.*

67

368.    Thereafter, more than 3,500 personal injury claims were filed in Ohio and West Virginia as part of the 2005 settlement that were consolidated into a multidistrict litigation court in Ohio (the Ohio MDL).[46]

369.    As The Chemours Company explained in its November 2016 SEC filing: "[s]ignificant unfavorable outcomes in a number of cases in the [Ohio] MDL could have a material adverse effect on Chemours consolidated financial position, results of operations or liquidity."[47]

370.    Juries in three bellwether trials returned multimillion-dollar verdicts against Historical DuPont, awarding compensatory damages and, in two cases, punitive damages to plaintiffs who claimed that PFOA exposure caused their illnesses.[48]

371.    On February 13, 2017, Historical DuPont and The Chemours Company agreed to pay $671 million to resolve the Ohio MDL.[49]

---

[46] See *In re: E.I. du Pont de Nemours and Company C-8 Personal Injury Litigation*, Case No. 1-13-MD-2433.

[47] See The Chemours Company SEC Form 10-Q Quarterly Report, p 22 http://d18rn0p25nwr6d.cloudfront.net/CIK-0001627223/595eddb7-8814-4221-a013-d8e5c2fabea3.pdf (Nov. 2016) (accessed August 19, 2020.)

[48] See Erica Teichert, *Jury orders DuPont to pay $10.5 million over leaked chemical*, Reuters, https://www.reuters.com/article/us-du-pont-verdict/jury-orders-dupont-to-pay-10-5-million-over-leaked-chemical-idUSKBN14P1VD (Jan. 5, 2017) (accessed August 19, 2020.)

[49] Kris Maher and Cameron McWhirter, *DuPont Settlement of Chemical Exposure Case Seen as "Shot in the Arm" for Other Suits*, The Wall Street Journal, https://www.wsj.com/articles/dupont-chemours-settle-teflon-chemical-exposure-case-for-671-million-1486987602 (Feb. 13, 2017) (accessed August 19, 2020.)

372.    The Chemours Company also agreed to pay $25 million for future PFOA costs not covered by the settlement for each of the next five years (up to an additional $125 million).[50]

373.    Historical DuPont also agreed to cover additional amounts up to $25 million for five years.[51]

374.    At the time of the transfer of its Performance Chemicals Business to The Chemours Company, Historical DuPont had been sued, threatened with suit, and/or had knowledge of the likelihood of litigation to be filed regarding Historical DuPont's liability for damages and injuries from the release of PFAS and products that contain PFAS including Mil-Spec AFFF.

375.    The Chemours Company also assumed the obligation to clean-up Pompton Lakes, New Jersey, where Historical DuPont manufactured explosives from 1902 to 1994, and where lead salts, mercury, volatile organic compounds, explosive powders, chlorinated solvents, and detonated blasting caps still contaminate groundwater and soil.  The Chemours Company's SEC filings estimate that the remediation, which began in 1985, may cost as much as $119 million to complete.[52]

---

[50] See DowDupont Inc. SEC Form 10-Q Quarterly Report, p 43, https://www.sec.gov/Archives/edgar/data/1666700/000166670017000026/dowdupont3q17093017.htm (for the period ending Sept. 30, 2017) (accessed August 19, 2020.)

[51] *Id.*

[52] *Id.* at 23.

376.    Creating The Chemours Company and engaging in the above-described corporate machinations was an attempt to segregate a large portion of Historical DuPont's environmental liabilities, including liabilities related to its PFAS contained in  Mil-Spec AFFF.

377.    Through the consolidation of Historical DuPont's performance chemical liabilities, DuPont has attempted to limit the availability of funds arising out of—and necessary to pay damages for—that DuPont's liability.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION
## RCRA – IMMINENT AND SUBSTANTIAL ENDANGERMENT

### (Against All Defendants)

378.    The State repeats, realleges, and incorporates by reference the allegations contained in Paragraphs 1–377, above, as though fully set forth herein.

379.    RCRA Section 3006, 42 U.S.C. § 6926, allows the Administrator of the U.S. Environmental Protection Agency (U.S. EPA) to authorize a state to administer its own hazardous waste program in lieu of the federal program when the Administrator deems the state program to be equivalent to and consistent with the federal program.

380.    On October 30, 1986, the State of Michigan was granted final authorization by the U.S. EPA Administrator, pursuant to Section 3006(b) of RCRA, 42 U.S.C. § 6926(b), to administer a hazardous waste management program in Michigan in lieu of the federal RCRA program. 40 C.F.R. §§ 272.1150-1151. This authorization is periodically updated to maintain authorization. In November of

70

2000, U.S. EPA and MDEQ (now referred to as EGLE) entered into a Memorandum of Understanding agreeing that the MDEQ could use Part 201 cleanup criteria and processes to implement RCRA corrective action, so long as they were not less stringent than RCRA.

381. Section 7002(a)(l)(B) of RCRA, 42 U.S.C. § 6972(a)(l)(B), under which the State brings this claim, is RCRA's citizen enforcement provision. Section 7002(a)(l)(B) authorizes "any person" to seek redress in federal court for risks posed to public health and the environment by "hazardous wastes" and "solid wastes." A Section 7002(a)(l)(B) claim alleges endangerment to health or environment rather than a statutory violation.

382. A "State" is included within the definition of "person" under RCRA. 42 U.S.C. § 6903(15).

383. Any person may bring a lawsuit under RCRA § 7002(a)(1)(B) when: (a) a "solid or hazardous waste"; (b) "may present an imminent and substantial endangerment to health or the environment"; and (c) the defendant falls within one of the categories of entities that Congress declared liable for taking abatement action or such other action as a court determines may be necessary.

384. The persons declared liable by Congress for abatement of endangerments under RCRA § 7002(a)(l)(B) are entities that contributed to "past or present handling, storage, treatment, transportation, or disposal" of the "solid wastes" at issue.

71

385. Under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27), "solid waste" is "discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities."

386. For purposes of RCRA § 7002(a)(l)(B) citizen suits, substances qualify as "solid wastes" when the above statutory definition as set forth in RCRA § 1004 (27) is met.

387. Mil-Spec AFFF containing and leaching PFAS contaminants, including PFOA and PFOS, into the environment is solid waste because it constitutes discarded materials resulting from industrial and commercial operations.

388. According to the U.S. EPA, human exposure to PFOA and PFOS may result in adverse health effects to humans such as developmental, thyroid, liver, and immune system effects.

389. Defendants have caused or contributed to a condition that presents or may present an imminent and substantial endangerment to health or the environment because Defendants have released "solid wastes" into the environment.

390. The State is entitled to relief under RCRA § 7002(a), 42 U.S.C. § 6972(a), requiring Defendants to take such action as may be necessary to abate the imminent and substantial endangerment to public health and the environment based on the disposal of "solid wastes" that present an imminent and substantial endangerment to public health and the environment.

## SECOND CAUSE OF ACTION
## LIABILITY UNDER PART 201 OF THE NREPA

### (Against All Defendants)

391.    The State repeats, realleges, and incorporates by reference the allegations contained in Paragraphs 1–390, above, as though fully set forth herein.

392.    The purpose of Part 201 of the NREPA is to provide for appropriate response activities to eliminate unacceptable risks to public health, safety, or welfare, or to the environment from environmental contamination at facilities within the State of Michigan.  Mich. Comp. Laws § 324.20102(c).

393.    Part 201 of the NREPA also allows the State to recover "[d]amages for the full value of injury to, destruction of, or loss of natural resources[.]." Mich. Comp. Laws § 324.20126a(1)(c).

394.    Part 201 of the NREPA authorizes the Attorney General, on behalf of the State, to commence a civil action seeking, inter alia, "[t]emporary or permanent injunctive relief necessary to protect the public health, safety, or welfare, or the environment from the release or threat of release," and a "declaratory judgment on liability for future response activity costs and damages."  Mich. Comp. Laws § 324.20137(1).

395.    PFOA and PFOS are "hazardous substances" under Part 201 of the NREPA. Mich. Comp. Laws § 324.20101(1)(x), and EGLE established groundwater cleanup criteria for these substances under Mich. Admin. Code R 299.6(12), effective January 10, 2018.

396.    Mil-Spec AFFF contains PFAS compounds regulated by the State of Michigan, including, but not limited to PFOA and PFOS.

397.    PFAS other than those known as PFOA and PFOS may be "hazardous substances" under Part 201 of the NREPA, Mich. Comp. Laws § 324.20101(1)(x), based on EGLE's determination that these substances pose an unacceptable risk to the public health, safety, or welfare, or the environment, considering the fate of the material, dose-response, toxicity, or adverse impact on natural resources. Mich. Comp. Laws § 324.20101.

398.    The leaking, emitting, discharging, escaping, leaching, dumping and disposal of hazardous substances constitute a "release" or "threat of release" as those terms are defined in Mich. Comp. Laws § 324.20101(1)(pp) and Mich. Comp. Laws § 324.20101(1)(ccc).

399.    PFAS are contained in Mil-Spec AFFF and the release of PFAS from Mil-Spec AFFF requires action under Part 201 of the NREPA.

400.    EGLE has established standards for certain PFAS for exposure pathways including drinking water (see paragraph 265, supra), groundwater cleanup (see paragraphs 269–270 and 395, supra), and groundwater-surface water interface. Mich. Comp. Laws § 324.20120e(1)(a), Mich. Comp. Laws § 324.20120a(5).

401.    As a result of the testing conducted by MPART in 2018 and 2019, the State has discovered that Mil-Spec AFFF is a significant source of PFAS contamination throughout the State.

402.    The levels of PFOA and PFOS from Mil-Spec AFFF in groundwater at and around locations throughout the State exceed the concentrations that satisfy the criteria under Part 201.

403.    The levels of PFOA and PFOS from Mil-Spec AFFF impacting surface water, soils, and sediments at and around locations throughout the State exceed state standards and criteria.

404.    The levels of other PFAS from Mil-Spec AFFF in groundwater at and around locations throughout the State pose an unacceptable risk to the public health, safety, or welfare, or the environment, considering the fate of the material, dose-response, toxicity, or adverse impact on natural resources.

405.    Samples taken in groundwater discharging to surface water at and around the locations throughout the State exceed the generic groundwater-surface water interface cleanup criteria for PFOA and PFOS.

406.    Locations throughout the State contaminated with PFAS from Mil-Spec AFFF are an area, place, parcel or parcels of property, or portion of a parcel of property where a hazardous substance in excess of the concentrations that satisfy the cleanup criteria for unrestricted residential use has been released, deposited, disposed of, or otherwise comes to be located.

407.    Mich. Comp. Laws § 324.20126(1), provides, in pertinent part, that:

Notwithstanding any other provision or rule of law and except as provided in subsections (2), (3), (4), and (5) and section 20128, the following persons are liable under this part:

***

75

(a) The owner or operator of a facility if the owner or operator is responsible for an activity causing a release or threat of release.

(b) The owner or operator of a facility at the time of disposal of a hazardous substance if the owner or operator is responsible for an activity causing a release or threat of release.

(c) An owner or operator of a facility who becomes an owner or operator on or after June 5, 1995.

***

(d) A person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of a hazardous substance owned or possessed by the person, by any other person, at a facility owned or operated by another person and containing the hazardous substance.

***

(e) A person who accepts or accepted any hazardous substance for transport to a facility selected by that person.

408. Defendants are responsible for activities causing a release or threat of release of PFAS from Mil-Spec AFFF.

409. Defendants owned or operated one or more locations or facilities throughout the State where PFAS from Mil-Spec AFFF was released.

410. By contract, agreement, or otherwise, Defendants arranged for the disposal or treatment of Mil-Spec AFFF containing PFAS, and/or arranged with a transporter for transport for disposal or treatment of Mil-Spec AFFF containing PFAS, by the third-party purchasers of Mil-Spec AFFF containing PFAS, at

76

facilities owned or operated by other persons, including but not limited to third-party purchasers of Mil-Spec AFFF containing PFAS.

411.   Defendants accepted for transport Mil-Spec AFFF containing PFAS to the locations or facilities from which PFAS was released onto or into the State's natural resources and the environment.

412.   Mich. Comp. Laws § 324.20126a, provides, in pertinent part, that:

(1) Except as provided in section 20126(2), a person who is liable under section 20126 is jointly and severally liable for all of the following:

> (a) All costs of response activity lawfully incurred by the state relating to the selection and implementation of response activity under this part.

> (b) Any other costs of response activity reasonably incurred under the circumstances by any other person.

> (c) Damages for the full value of injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing the injury, destruction, or loss resulting from the release.

***

(3) The amounts recoverable in an action shall include interest. This interest shall accrue from the date payment is demanded in writing, or the date of expenditure or damage, whichever is later. The rate of interest on the outstanding unpaid balance of the accounts recoverable under this section shall be the same rate as specified in section 6013(8) of the revised judicature act of 1961, Act No. 236 of the Public Acts of 1961, being section 600.613 of the Michigan Compiled Laws.

***

(6) If the department determines that there may be an imminent and substantial endangerment to the public health, safety, or welfare, or to the environment because of an actual or threatened release from a facility, the attorney general may bring an action against any person who is liable under section 20126 or any other appropriate person to secure the relief that may be necessary to abate the danger or threat.

77

The court has jurisdiction to grant such relief as the public interest
and the equities of the case may require.

413.    As a result of releases and threatened releases of hazardous

substances for which Defendants are responsible, the State has incurred and is

continuing to incur response activity costs, including investigation, monitoring, and

enforcement costs, at the facilities.

414.    Releases and threatened releases of hazardous substances for which

Defendants are responsible has also caused injury to, destruction of, and loss of the

State's natural resources.

415.    Mich. Comp. Laws § 324.20137(1), provides, in pertinent part, that:

[I]n addition to other relief authorized by law, the attorney general
may, on behalf of the state, commence a civil action seeking one or
more of the following:

> (a) Temporary or permanent injunctive relief necessary to
> protect the public health, safety, or welfare, or the
> environment from the release or threat of release.
>
> (b) Recovery of state response activity costs pursuant to
> Section 20126a.
>
> (c) Damages for the full value of injury to, destruction of,
> or loss of natural resources resulting from the release or
> threat of release, including the reasonable costs of
> assessing the injury, destruction, or loss resulting from
> the release or threat of release.
>
> (d) A declaratory judgment on liability for future response
> costs and damages.
>
> (e) A civil fine of not more than $10,000.00 for each day of
> noncompliance without sufficient cause with a written
> request of the department pursuant to section
> 20114(1)(h).  A fine imposed under this subdivision shall
> be based on the seriousness of the violation and any good
> faith efforts of the person to comply with this part.

(f) A civil fine of not more than $1,000.00 for each day of violation of this part. A fine imposed under this subdivision shall be based upon the seriousness of the violation and any good faith efforts of the person to comply with this part.

\*\*\*

(k) Any other relief necessary for the enforcement of this part.

416. As a result of releases and threatened releases of hazardous substances for which Defendants are responsible, the State has incurred and is continuing to incur response activity costs, including investigation, monitoring, and enforcement.

417. Releases and threatened releases of hazardous substances for which Defendants are responsible have also caused injury to, destruction of, and loss of the State's natural resources.

418. Due to the injury, destruction, and loss of natural resources, Defendants are liable to the State for the cost of restoring, repairing, replacing, or acquiring the equivalent of the natural resources injured or acquiring substitute or alternative resources. Mich. Comp. Laws § 324.20126a(4).

419. Accordingly, under Part 201 of the NREPA, the State seeks to hold Defendants liable for all past and future natural resource damages, loss-of-use damages, response activity costs, costs of investigation, costs of testing and monitoring, costs of providing water from an alternate source, costs of installing and maintaining an early warning system to detect PFAS from Mil-Spec AFFF before it reaches wells, costs of remediating PFAS from Mil-Spec AFFF in natural resources

including groundwater, surface waters, soils, sediments, and other natural resources, any other costs or other expenditures incurred to address PFAS contamination from Mil-Spec AFFF in Michigan, interest on the damages according to law, any applicable civil fines, and any other relief necessary for the enforcement of Part 201 to remedy PFAS contamination in Michigan.

420.    The State also seeks a declaratory judgment on Defendants' liability for future response activity costs and damages pursuant to Mich. Comp. Laws § 342.20137(1)(d) including, but not limited to, costs related to providing an alternative water supply, costs related to health assessments or health-effect studies carried out under the supervision, or with the approval of, the Michigan Department of Health and Human Services related to response activities, interest, and oversight of any future response activities that Defendants may perform.

### THIRD CAUSE OF ACTION
### LIABILITY UNDER PART 17 OF THE NREPA

### (Against All Defendants)

421.    The State repeats, realleges, and incorporates by reference the allegations contained in Paragraphs 1–420, above, as though fully set forth herein.

422.    Part 17 of the NREPA authorizes the Attorney General, on behalf of the State, to maintain a civil action "for declaratory and equitable relief against any person for the protection of the air, water, and other natural resources and the public trust in these resources from pollution, impairment, or destruction." Mich.

Comp. Laws § 324.1701(1). Part 17 of the NREPA is commonly referred to as the "Michigan Environmental Protection Act."

423. Part 17 of the NREPA applies to pollution of surface water and groundwater contamination.

424. As set forth in more detail above, surface water and groundwater have been contaminated at or around numerous locations in Michigan.

425. Part 17 of the NREPA authorizes the Court to grant declaratory and equitable relief, to impose conditions on the defendant to protect the environment, to direct the adoption of antipollution standards, or to remand a case to appropriate administrative proceedings. It allows the court to fashion standards in the context of actual problems as they arise in individual cases.

426. Accordingly, the State seeks to hold Defendants liable for all past and future natural resource damages, loss-of-use damages, response activity costs, costs of investigation, costs of testing and monitoring, costs of providing water from an alternate source, costs of installing and maintaining an early warning system to detect PFAS from Mil-Spec AFFF before it reaches wells, costs of remediating PFAS Mil-Spec from AFFF in natural resources including groundwater, surface waters, soils, sediments, and other natural resources, any other costs or other expenditures incurred to address PFAS contamination from Mil-Spec AFFF in Michigan, interest on the damages according to law, any applicable civil fines, and any other relief necessary for the enforcement of Part 17 to remedy PFAS contamination in Michigan.

427.   The State also seeks a declaratory judgment on Defendants' liability for future response activity costs and damages pursuant to Mich. Comp. Laws § 342.20137(1)(d) including, but not limited to, costs related to providing an alternative water supply, costs related to health assessments or health-effect studies carried out under the supervision, or with the approval of, the Michigan Department of Health and Human Services related to response activities, interest, and oversight of any future response activities that Defendants may perform.

## FOURTH CAUSE OF ACTION
## LIABILITY UNDER PART 31 OF THE NREPA

### (Against All Defendants)

428.   The State repeats, realleges, and incorporates by reference the allegations contained in Paragraphs 1–427, above, as though fully set forth herein.

429.   Part 31 of the NREPA, Mich. Comp. Laws § 324.3101 *et seq.* is Michigan's primary pollution control statute.  Part 31 of the NREPA has the dual purpose of protecting water quality and regulating water-waste disposal.  Under Mich. Comp. Laws § 324.3103(1), the Michigan Department of Natural Resources and Environment has the duty and authority to "protect and conserve the water resources of the state."  "Waters of the state" includes both surface and underground waters.

430.   Mich. Comp. Laws § 324.3115(1) provides that the Attorney General may commence a civil action for appropriate relief, including a permanent or

82

temporary injunction, for violations of Part 31 of the NREPA or its implementing rules.

431.     Mich. Comp. Laws § 324.3109(1) prohibits the direct or indirect discharge of any substance into the waters of the State that is or may become injurious to: (a) "the public health, safety, or welfare"; (b) "domestic, commercial, industrial, agricultural, recreational, or other uses that are being made or may be made of such waters"; (c) "the value or utility of riparian lands"; (d) "livestock, wild animals, birds, fish, aquatic life, or plants or to their growth, or propagation"; and (e) "the value of fish and game."

432.     "'Waters of the state' means groundwaters, lakes, rivers, and streams and all other watercourses and waters, including the Great Lakes within the jurisdiction of [the State of Michigan.]" Mich. Comp. Laws § 324.3101(aa).

433.     Through their distribution, sale, release, supply, transport, arrangement for disposal or treatment, handling, and/or use of Mil-Spec AFFF in Michigan, Defendants have directly or indirectly caused PFAS from Mil-Spec AFFF to be discharged into the waters of the state, and these discharges are or may become injurious to public health, fish, plants, aquatic life, and other designated uses of the waters of the state and, therefore, these practices are in violation of Mich. Comp. Laws § 324.3109.

434.     A violation of Mich. Comp. Laws § 324.3109 is prima facie evidence of the existence of a public nuisance and "may be abated according to law in an action

brought by the attorney general in a court of competent jurisdiction." Mich. Comp. Laws § 324.3109(6).

435.    The State is entitled to relief requiring Defendants to take such action as may be necessary to abate the injurious PFAS from Mil-Spec AFFF discharged to the waters of the State as defined in Part 31 of the NREPA.

436.    The State further seeks statutory penalties, fines, and any other relief available under Part 31.

437.    In addition, Defendants knew or should have known that they directly or indirectly discharged substances that are or may become injurious to public health, fish, plants, aquatic life, and other designated uses of the waters of the State.

438.    As a result, the value of the natural resources of the State have been significantly damaged.  In addition, the State has incurred, and continues to incur, costs of surveillance and enforcement resulting from the violations of Part 31.

439.    Accordingly, the State seeks to hold Defendants liable for all past and future natural resource damages, loss-of-use damages, response activity costs, costs of investigation, costs of testing and monitoring, costs of providing water from an alternate source, costs of installing and maintaining an early warning system to detect PFAS from Mil-Spec AFFF before it reaches wells, costs of remediating PFAS from Mil-Spec AFFF in natural resources including groundwater, surface waters, soils, sediments, and other natural resources, any other costs or other expenditures incurred to address PFAS contamination from Mil-Spec AFFF in Michigan, interest

on the damages according to law, any applicable civil fines, and any other relief necessary for the enforcement of Part 31 to remedy PFAS contamination in Michigan.

440.    The State also seeks a declaratory judgment on Defendants' liability for future response activity costs and damages pursuant to Mich. Comp. Laws § 342.20137(1)(d) including, but not limited to, costs related to providing an alternative water supply, costs related to health assessments or health-effect studies carried out under the supervision, or with the approval of, the Michigan Department of Health and Human Services related to response activities, interest, and oversight of any future response activities that Defendants may perform.

## FIFTH CAUSE OF ACTION
## TRESPASS

### (Against All Defendants)

441.    The State repeats, realleges, and incorporates by reference the allegations contained in Paragraphs 1–440, above, as though fully set forth herein.

442.    The Mil-Spec AFFF that Defendants manufactured, designed, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used affecting the State's property and its groundwater, surface waters, fish, wildlife, marine resources, and other natural resources constitutes an unauthorized direct and immediate physical intrusion of property in which the State and/or a substantial number of its residents have exclusive possessory interests.

443. The trespass of Mil-Spec AFFF, which contains PFAS, alleged herein has varied over time and has not ceased.

444. The Mil-Spec AFFF that Defendants manufactured, designed, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used continues to be located on or in the State's property and its groundwater, surface water, fish, wildlife, marine resources, and other natural resources.

445. Defendants intended to distribute, sell, release, supply, transport, arrange for disposal or treatment, handle, and/or use Mil-Spec AFFF, which contains PFAS, and Defendants knew with substantial certainty that their acts would contaminate the State's property and its surface waters and groundwater, fish, wildlife, marine resources, and other natural resources.

446. Defendants are liable for trespass.

447. The trespass has caused significant harm resulting from Defendants' unreasonable interference with the use or enjoyment of the State's property and its surface waters and groundwater, fish, wildlife, marine resources, and other natural resources.

448. The State has not consented to and does not consent to the trespass alleged herein.

449. The State brings this claim as the exclusive owner of the property and interests in property, as well as in both its public trustee and *parens patriae* capacities.

86

450.    The State has a duty to protect and restore its natural resources and protect the health and comfort of its residents.

451.    In its *parens patriae* capacity, the State may protect its quasi-sovereign interests, including the State's interest in the well-being of its residents, as well as its residents' interest in the integrity of the State's natural resources.

452.    Accordingly, the State is bringing this action for the invasion of its exclusive possessory interests in the State's natural resources, in addition to its residents' interest in the integrity of the State's natural resources.

453.    As long as the State's property and natural resources remain contaminated due to Defendants' conduct, the trespass continues and is ongoing.

454.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, the State and its residents, which it represents *parens patriae*, have suffered monetary losses and damages in an amount to be proven at trial.

455.    As a direct and proximate result of the Defendants' acts and omissions as alleged herein, the State seeks to hold Defendants liable for all past and future natural resource damages, loss-of-use damages, response activity costs, costs of investigation, costs of testing and monitoring, costs of providing water from an alternate source, costs of installing and maintaining an early warning system to detect Mil-Spec AFFF containing PFAS before it reaches wells, costs of remediating Mil-Spec AFFF containing PFAS from natural resources including groundwater, surface waters, soils, sediments, and other natural resources, any other costs or other expenditures incurred to address contamination from Mil-Spec AFFF

containing PFAS in Michigan, interest on the damages according to law, any
applicable civil fines, and any other relief necessary to remedy PFAS contamination
from Mil-Spec AFFF.

## SIXTH CAUSE OF ACTION
## PUBLIC NUISANCE

### (Against All Defendants)

456.    The State repeats, realleges, and incorporates by reference the
allegations contained in Paragraphs 1–455, above, as though fully set forth herein.

457.    Defendants manufactured, designed, distributed, sold, released,
supplied, transported, arranged for disposal or treatment, handled, and/or used Mil-
Spec AFFF, which contains PFAS, in a manner that created or participated in
creating a public nuisance that unreasonably interferes, endangers, or injures the
property, health, safety, and welfare of the general public and the State of
Michigan.

458.    Defendants, by their negligent, reckless, and willful acts and omissions
as set forth above, have, among other things, knowingly unleashed Mil-Spec AFFF
PFAS contamination in State natural resources and property throughout Michigan,
having concealed the threat, thereby causing and threatening to cause Mil-Spec
AFFF PFAS contamination of the State's natural resources and property.
Defendants' PFAS continues to spread in and contaminate more State natural
resources and property throughout the State.

459.    Each Defendant has caused, contributed to, maintained, and/or participated in a public nuisance by substantially and unreasonably interfering with, obstructing and/or threatening, among other things:  (a) Michigan residents' common public rights to enjoy State natural resources and property free from unacceptable health risk, pollution, and contamination; and (b) the State's *parens patriae* and public trust abilities to protect, conserve, and manage the State's natural resources.

460.    Each Defendant has, at all times relevant to this action, caused, contributed to, maintained, and/or participated in the creation of such public nuisance.  Among other things, each Defendant is a substantial contributor to such public nuisance as follows:

(a)    Defendants manufactured, designed, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, used, and/or otherwise placed into the stream of Mil-Spec AFFF, which contains PFAS, when they knew, or reasonably should have known, that PFAS would escape from Mil-Spec AFFF and contaminate State natural resources and property;

(b)    Defendants manufactured, designed, designed, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, used, and/or otherwise placed into the stream of commerce Mil-Spec AFFF, which contains PFAS, that was delivered into the State (and areas affecting the State's natural resources and property), when they knew, or reasonably should have known, that PFAS contained in Mil-Spec AFFF would be released readily into the

89

environment during the normal, intended, and foreseeable uses of Mil-Spec AFFF, and when released, PFAS contained in Mil-Spec AFFF would persist in the environment and not break down, contaminate State natural resources and property, including soils, sediments, groundwater, surface waters, wildlife, and drinking water supplies, and, ultimately, be difficult and costly to remove; and

(c) Defendants manufactured, designed, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, used, and/or otherwise placed into the stream of commerce Mil-Spec AFFF, which contains PFAS, that was delivered into the State (and areas affecting the State's natural resources and property), when they knew, or reasonably should have known, that PFAS contained in Mil-Spec AFFF posed substantial risks to public health.

461. Defendants also had firsthand knowledge and experience regarding releases of PFAS contained in Mil-Spec AFFF to the environment, including groundwater and other natural resources.

462. Despite their knowledge that contamination of the State's natural resources and property with PFAS contained in Mil-Spec AFFF was the inevitable consequence of their conduct, Defendants failed to provide adequate warnings or special instructions, failed to take any other reasonable precautionary measures to prevent or mitigate such contamination, and/or affirmatively misrepresented the hazards of PFAS in their product information and/or instructions for use.

463. Defendants knew, or in the exercise of reasonable care should have known, that the introduction and use of Mil-Spec AFFF would unreasonably and

90

seriously endanger, injure, and interfere with the ordinary comfort, use, and enjoyment of natural resources and property relied upon by the State and its residents, as it has.

464.    Defendants have caused, contributed to, maintained, and/or participated in a public nuisance that has caused substantial injury to the State's natural resources and property, in which the public has interests represented by and protected by the State in its trustee and *parens patriae* capacities.  Defendants' conduct also threatens to cause substantial additional injury to the State's natural resources and property.  The public nuisance has caused and/or continues to threaten to cause substantial injury to property directly owned by the State.

465.    The contamination of the State's natural resources and property with Defendants' PFAS-containing Mil-Spec AFFF is ongoing. PFAS from Mil-Spec AFFF continues to threaten, migrate into, and enter the State's natural resources and property, and cause new contamination in new locations.

466.    As a direct and proximate result of Defendants' acts and omissions, the State's natural resources and property are contaminated with PFAS from Mil-Spec AFFF.

467.    The State has incurred, is incurring, and will incur, investigation, remediation, cleanup, restoration, removal, treatment, monitoring, and other costs and expenses related to contamination of the State's natural resources and property.

91

468.   Defendants' acts and omissions have caused and/or threatened to cause injuries to the State's natural resources and property that are indivisible.

469.   As a direct and proximate result of the Defendants' acts and omissions as alleged herein, the State seeks to hold Defendants liable for all past and future natural resource damages, loss-of-use damages, response activity costs, costs of investigation, costs of testing and monitoring, costs of providing water from an alternate source, costs of installing and maintaining an early warning system to detect Mil-Spec AFFF containing PFAS before it reaches wells, costs of remediating Mil-Spec AFFF containing PFAS from natural resources including groundwater, surface waters, soils, sediments, and other natural resources, any other costs or other expenditures incurred to address contamination from Mil-Spec AFFF containing PFAS in Michigan, interest on the damages according to law, any applicable civil fines, and any other relief necessary to remedy PFAS contamination from Mil-Spec AFFF.

## SEVENTH CAUSE OF ACTION
## UNJUST ENRICHMENT

### (Against All Defendants)

470.   The State repeats, realleges, and incorporates by reference the allegations contained in Paragraphs 1–469, above, as though fully set forth herein.

471.   By common law and the principles of justice, a person or entity may not be inequitably enriched by receiving a benefit at another's expense.

472.    The principles of unjust enrichment are violated where a party steps in to address a duty owed by another to the public to protect the public from an urgent threat to their health, safety, or general welfare and pays expenses that rightfully should have been paid by the other person.

473.    As described herein, Defendants have obtained revenue and profits from the production, sale, and use of Mil-Spec AFFF, which contains PFAS, which has resulted in PFAS contamination in the State of Michigan.

474.    To address Mil-Spec AFFF PFAS contamination in the State of Michigan in order to protect its residents and natural resources, the State has incurred, and continues to incur, substantial costs in investigating and responding to Mil-Spec AFFF PFAS contamination throughout the State of Michigan.

475.    Defendants have been unjustly enriched because they received a benefit from the State's response activities and did not have to incur their own costs to investigate and remediate the PFAS contamination caused by or related to the production, sale, use, and disposal of Mil-Spec AFFF.

476.    The principles of justice and established common law require Defendants to reimburse the State for performing a duty properly owed by Defendants as a result of their conduct, as alleged herein.

## EIGHT CAUSE OF ACTION
## STRICT LIABILITY FOR DEFECTIVE DESIGN

### (Against All Defendants)

93

477. The State repeats, realleges, and incorporates by reference the allegations contained in Paragraphs 1–476, above, as though fully set forth herein.

478. Defendants have a duty to not design, market, develop, distribute, sell, manufacture, or release products with defective designs, or products that are unreasonably unsafe when stored and/or used in a foreseeable manner.

479. Defendants designed, marketed, developed, distributed, sold, manufactured, released, and/or otherwise handled, supplied, and/or used PFAS and/or products containing PFAS, including Mil-Spec AFFF, in a manner that created or participated in the defective design that unreasonably interferes, endangers, or injures the property, health, safety, and welfare of the general public and the State of Michigan, or contributes to placing into the stream of commerce a product with such a defective design.

480. Mil-Spec AFFF and its feedstocks are not reasonably safe products. These products are able to, do, and are substantially likely to contaminate groundwater and surface water, and subsequently harm drinking water, public health, the environment, property, and natural resources through their usage and storage. There are reasonable alternative designs which Defendants could pursue that would cause less or no harm to the public and natural resources, the costs of which would not be unduly burdensome on Defendants.

481. The contamination of the State's natural resources and property with Defendants' PFAS is ongoing. PFAS continue to threaten, migrate into, and enter

the State's natural resources and property, and cause new contamination in new locations.

482. As a direct and proximate result of Defendants' acts and omissions, the State's natural resources and property are contaminated with PFAS.

483. The State has incurred, is incurring, and will incur, investigation, remediation, cleanup, restoration, removal, treatment, monitoring, and other costs and expenses related to contamination of the State's natural resources and property.

484. Defendants' acts and omissions have caused and/or threatened to cause injuries to the State's natural resources and property that are indivisible.

485. The State is entitled to relief including damages and requiring Defendants to take such action as may be necessary to abate the injurious PFAS discharged to the groundwater and surface waters of the State by Defendants.

## NINETH CAUSE OF ACTION
## STRICT LIABILITY FOR FAILURE TO WARN

### (Against All Defendants)

486. The State repeats, realleges, and incorporates by reference the allegations contained in Paragraphs 1–485, above, as though fully set forth herein.

487. Defendants have a duty to not design, market, develop, distribute, sell, manufacture, or release products without adequate warnings about latent dangers arising from the foreseeable use and storage of their products placed into the stream of commerce.

488.   Defendants designed, marketed, developed, distributed, sold, manufactured, released, and/or otherwise handled, supplied, and/or used PFAS and/or Mil-Spec AFFF, without providing adequate warning to consumers that the products unreasonably interfere with, endanger, or injure the property, health, safety, and welfare of the general public and the State of Michigan.

489.   Mil-Spec AFFF and its feedstocks are not reasonably safe products. Defendants violated their duty to warn consumers that these products are able to, do, and are substantially likely to contaminate groundwater and surface water, and subsequently harm drinking water, public health, the environment, property, and natural resources through their usage and storage.  Defendants failed to warn consumers of the latent dangers by not providing information regarding the negative potential outcomes or ways to reduce the harmful impact of use and/or storage of Mil-Spec AFFF when used in a foreseeable manner.

490.   The contamination of the State's natural resources and property with Defendants' PFAS is ongoing.  PFAS continue to threaten, migrate into, and enter the State's natural resources and property, and cause new contamination in new locations.

491.   As a direct and proximate result of Defendants' acts and omissions, the State's natural resources and property are contaminated with PFAS.

492.   The State has incurred, is incurring, and will incur, investigation, remediation, cleanup, restoration, removal, treatment, monitoring, and other costs

and expenses related to contamination of the State's natural resources and property.

493.    Defendants' acts and omissions have caused and/or threatened to cause injuries to the State's natural resources and property that are indivisible.

494.    The State is entitled to relief including damages and requiring Defendants to take such action as may be necessary to abate the injurious PFAS discharged to the groundwater and surface waters of the State by Defendants.

### TENTH CAUSE OF ACTION
### VIOLATION OF THE MICHIGAN UNIFORM
### FRAUDULENT TRANSFER ACT

**(Against Defendants Historical DuPont; Corteva, Inc.;
E.I. DuPont de Nemours, Inc., and The Chemours Company)**

495.    The State repeats, realleges, and incorporates by reference the allegations contained in Paragraphs 1–494, above, as though fully set forth herein.

496.    Under the Michigan Uniform Fraudulent Transfer Act (MUFTA):

A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following circumstances:  (1) With actual intent to hinder, delay, or defraud any creditor or the debtor.  (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor did either of the following:  (i) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (ii) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.  (Mich. Comp. Laws § 566.34.)

497.    The "MUFTA Defendants," *i.e.*, Historical DuPont, Corteva, Inc., E.I. DuPont de Nemours, Inc., and The Chemours Company, have:  (a) acted with actual

97

intent to hinder, delay, and defraud parties; and/or (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and (i) were engaged or were about to engage in a business for which the remaining assets of The Chemours Company were unreasonably small in relation to the business; or (ii) intended to incur, or believed or reasonably should have believed that The Chemours Company would incur, debts beyond its ability to pay as they became due.

498.   The MUFTA Defendants engaged in acts in furtherance of a scheme to transfer Historical DuPont's assets out of the reach of parties such as the State of Michigan that have been damaged as a result of the MUFTA Defendants' conduct, omissions, and actions described in this Complaint.

499.   It is primarily Historical DuPont, rather than The Chemours Company, that, for decades, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used PFAS and/or Mil-Spec AFFF containing PFAS with the superior knowledge that they were toxic, mobile, persistent, bio-accumulative, and biomagnifying, and through normal and foreseen use, would impact the State natural resources.

500.   As a result of the transfer of assets and liabilities described in this Complaint, the MUFTA Defendants have attempted to limit the availability of assets to cover judgments for all of the liability for damages and injuries from the distribution, sale, release, supply, transport, arrangement for disposal or treatment, handling, and/or use of PFAS and/or Mil-Spec AFFF containing PFAS

98

501.    At the time of the transfer of its Performance Chemicals Business to The Chemours Company, Historical DuPont had been sued, threatened with suit, and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries from the distribution, sale, release, supply, transport, arrangement for disposal or treatment, handling, and/or use of PFAS and/or Mil-Spec AFFF containing PFAS.

502.    The MUFTA Defendants acted without receiving a reasonably equivalent value in exchange for the transfer or obligation, and Historical DuPont believed or reasonably should have believed that The Chemours Company would incur debts beyond The Chemours Company's ability to pay as they became due.

503.    At all times relevant to this action, the claims, judgments, and potential judgments against The Chemours Company potentially exceeded The Chemours Company's ability to pay.

504.    Pursuant to Mich. Comp. Laws § 566.34, the State seeks avoidance of any transfer of Historical DuPont liabilities for the claims brought in this Complaint and to hold the MUFTA Defendants liable for any damages or other remedies that may be awarded by the Court or jury under this Complaint.

505.    The State further seeks all other rights and remedies that may be available to it under the MUFTA, including prejudgment remedies as available under applicable law, as may be necessary to fully compensate the State for the damages and injuries it has suffered as alleged in this Complaint.

99

## REQUEST FOR RELIEF

WHEREFORE, the State of Michigan, by and through the Michigan Attorney General Dana Nessel, respectfully seeks entry of judgment in its favor and against Defendants for:

A.     Compensatory damages arising from PFAS contamination and injury of State natural resources and property, including groundwater, surface waters, drinking water supplies, biota, wildlife (including fish), and their associated soils, sediments, and uses, and other State natural resources and property, according to proof, including, but not limited to:

       i.     natural resource damages;

      ii.     loss-of-use damages;

     iii.     costs of investigation;

     iv.     costs of testing and monitoring;

      v.     costs of providing water from an alternate source;

     vi.     costs of installing and maintaining an early warning system to detect PFAS before it reaches wells;

    vii.     costs of remediating PFAS from natural resources including groundwater, surface waters, soils, sediments, and other natural resources;

    viii.     costs of remediating PFAS contamination at release sites;

     ix.     disgorgement of revenues;

      x.     any other costs or other expenditures incurred to address PFAS contamination and injury; and

xi.    interest on the damages according to law;

B.    Declare and adjudge that Defendants' past and/or present generation, handling, storage, treatment, transportation, and/or disposal of solid wastes presents, or may present, an imminent and substantial endangerment to public health and to the environment under RCRA Section 7002(a)(1)(B);

C.    Temporary or permanent injunctive relief necessary to protect the public health, safety, or welfare, or the environment from the release or threat of release of PFAS from Mil-Spec AFFF pursuant to Mich. Comp Laws § 324.20137(1)(a);

D.    Damages for the full value of injury to, destruction of, or loss of natural resources resulting from the release or threat of release, including the reasonable costs of assessing the injury, destruction, or loss resulting from the release or threat of release of PFAS from Mil-Spec AFFF pursuant to Mich. Comp. Laws § 324.20137(1)(c) and Mich. Comp. Laws § 324.20126a(1)(c);

E.    Civil fines pursuant to Mich. Comp. Laws §§ 324.20137(1)(e), (f);

F.    Injunctive and equitable relief to compel Defendants to abate the continuing nuisance and trespass by enjoining the further use, sale, distribution, and discharge of PFAS in the State and compelling Defendants to remove PFAS from State natural resources and property;

G.    Statutory penalties and fines pursuant to Mich. Comp. Laws §§ 324.3115(1), (2), (3), and/or (4).

H.    Damages for the  full value of the injuries done to the natural resources of the State and the costs of surveillance and enforcement by the State

101

resulting from Defendants' violations of Part 31 of the NREPA pursuant to Mich.

Comp. Laws § 324.3115(2);

     I.     Ordering that the State is entitled to avoid any transfer of Historical

DuPont liabilities to The Chemours Company and put the State in the position it

would have been had the transfer not occurred;

     J.     Punitive damages and such other damages as allowed by statute;

     K.     Costs (including reasonable attorney fees, court costs, and other

reasonable litigation expenses);

     L.     Prejudgment interest; and

     M.     All other and further relief as the Court deems just, proper, and

equitable.

## JURY DEMAND

Plaintiff, the State of Michigan, by and through the Michigan Attorney

General Dana Nessel, demands a trial by jury of all issues so triable as a matter of

right.

Respectfully submitted,

Dana Nessel
Attorney General

*/s/ Amy E. Keller*
Amy E. Keller (P74015)
Adam J. Levitt (Pro Hac Vice to be filed)
Special Assistant Attorneys General
Daniel R. Flynn (Pro Hac Vice to be filed)

102

Laura E. Reasons (Pro Hac Vice to be filed)
Mary McKenna (Pro Hac Vice to be filed)
Adam Prom (Pro Hac Vice to be filed)
DiCello Levitt Gutzler LLC
10 North Dearborn Street, 6th Floor
Chicago, IL 60602
(312) 214-7900
akeller@dicellolevitt.com
alevitt@dicellolevitt.com
dflynn@dicellolevitt.com
lreasons@dicellolevitt.com
mmckenna@dicellolevitt.com
aprom@dicellolevitt.com

Gregory M. Utter (Pro Hac Vice to be filed)
Joseph M. Callow, Jr. (Pro Hac Vice to be filed)
Special Assistant Attorneys General
Sarah V. Geiger (Pro Hac Vice to be filed)
Collin L. Ryan (Pro Hac Vice to be filed)
Joseph B. Womick (Pro Hac Vice to be filed)
Keating Muething & Klekamp PLL
1 East 4th Street, Suite 1400
Cincinnati, OH 45202
(513) 579-6400
gmutter@kmklaw.com
jcallow@kmklaw.com
mallen@kmklaw.com
sgeiger@kmklaw.com
cryan@kmklaw.com
jwomick@kmklaw.com

Richard W. Fields (Pro Hac Vice to be filed)
Special Assistant Attorney General
Martin F. Cunniff (Pro Hac Vice to be filed)
Fields PLLC

103

1901 L St., N.W.
Suite 700
Washington, D.C. 20036
Fields@fieldslawpllc.com
MartinCunniff@fieldslawpllc.com

Polly A. Synk (P63473)
Danielle Allison-Yokom (P70950)
Assistant Attorneys General
Michigan Department of Attorney
General
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
synkp@michigan.gov
allisonyokomd@michigan.gov

Dated August 20, 2020.

10203362.2