Query     Reports     Utilities     Help     Log Out

# United States District Court
## Western District of Michigan (Southern Division (1))
### CIVIL DOCKET FOR CASE #: 1:20-cv-01080

Nessel et al v. Tyco Fire Products LP et al
Assigned to:
Cause: 28:1441 Petition for Removal

Date Filed: 11/09/2020
Jury Demand: Plaintiff
Nature of Suit: 385 Prop. Damage Prod. Liability
Jurisdiction: U.S. Government Defendant

**defendant**
**Cobra Fire Protection, Inc.**

**plaintiff**
**Dana Nessel**                    represented by  **Dana Nessel**
                                                   PRO SE

**plaintiff**
**Michigan, State of**

V.

**defendant**
**Chemguard, Inc.**

**defendant**
**Tyco Fire Products LP**

**defendant**
**National Foam, Inc.**

**defendant**
**Angus Fire Armour Corporation**

**defendant**
**Kiddie p.l.c., Inc.**

**defendant**
**Kiddie-Fenwal, Inc.**

**defendant**
**Raytheon Technologies Corporation**

**defendant**
**UTC Fire & Security Americas Corporation Inc.**

<u>defendant</u>

**Vulcan Fire Systems, Inc.**

<u>defendant</u>

**Huntington Laboratories, Inc.**

<u>defendant</u>

**Ecolab Inc**

<u>defendant</u>

**Mine Safety Appliances Company, LLC**

<u>defendant</u>

**Verde Environmental, Inc.**

<u>defendant</u>

**Hartford Chemical Sales Corporation**

<u>defendant</u>

**G.V.C. Chemical Corporation**

<u>defendant</u>

**Stevens Company, Inc.**

<u>defendant</u>

**Hazard Control Technologies, Inc.**

<u>defendant</u>

**Fire-Ade, Inc.**

<u>defendant</u>

**Rockwood Systems, Inc.**

<u>defendant</u>

**BroCo Products, Inc.**

<u>defendant</u>

**Pioneer Products, Inc.**

<u>defendant</u>

**Denko, Inc.**

<u>defendant</u>

**Russell Martin Industries, Inc.**

<u>defendant</u>

**Dawn Chemical Corporation of Wisconsin, Inc.**

<u>defendant</u>

**Amerex Corporation**

11/10/2020

Case MDL No. 2873 Document 721-3 Filed 11/10/20 Page 3 of 89
United States District Court for the Western District of Michigan

**defendant**

**Perimeter Solutions LP**

**defendant**

**Noble Industrial Supply Corporation**

**defendant**

**Royal Chemical Company**

**defendant**

**VST Chemical Corporation**

**defendant**

**Summit Environmental Corporation, Inc.**

**defendant**

**Fire Services Plus, Inc..**

**defendant**

**Buckeye Fire Equipment Company**

| Date Filed | # | Docket Text |
|---|---|---|
| 11/09/2020 | 1 | NOTICE OF REMOVAL from Michigan Circuit Court for Ingham County case number 20-458-CE filed by Chemguard, Inc., Tyco Fire Products LP (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Ellis, Nicholas) (Entered: 11/09/2020) |
| 11/09/2020 | | FILING FEE PAID re 1 by defendants Chemguard, Inc., Tyco Fire Products LP in the amount of $400 (Ellis, Nicholas) (Entered: 11/09/2020) |

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 11/10/2020 09:42:23 | | |
| **PACER Login:** | wc0010 | **Client Code:** | 47429.0016 |
| **Description:** | Docket Report | **Search Criteria:** | 1:20-cv-01080 |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

STATE OF MICHIGAN
CIRCUIT COURT FOR THE 30TH JUDICIAL CIRCUIT
INGHAM COUNTY

ATTORNEY GENERAL DANA NESSEL, on
behalf of the People of the State of Michigan,
and the STATE OF MICHIGAN,

No. 2020-_____-

HON.

       Plaintiffs,

v

CHEMGUARD, INC., TYCO FIRE
PRODUCTS, LP, NATIONAL FOAM, INC.,
ANGUS FIRE ARMOUR CORPORATION,
KIDDE P.L.C., INC., KIDDE-FENWAL, INC.,
RAYTHEON TECHNOLOGIES
CORPORATION, UTC FIRE & SECURITY
AMERICAS CORPORATION, INC.,VULCAN
FIRE SYSTEMS, INC., HUNTINGTON
LABORATORIES, INC., ECOLAB INC.,
MINE SAFETY APPLIANCES COMPANY,
LLC, VERDE ENVIRONMENTAL, INC., a/k/a
MICRO-BLAZE, INC., HARTFORD
CHEMICAL SALES CORPORATION, G.V.C.
CHEMICAL CORPORATION, STEVENS
COMPANY, INC., HAZARD CONTROL
TECHNOLOGIES, INC., FIRE-ADE, INC.,
ROCKWOOD SYSTEMS, INC., f/k/a
ROCKWOOD SYSTEMS CORPORATION,
COBRA FIRE PROTECTION, INC., BROCO
PRODUCTS, INC., PIONEER PRODUCTS,
INC., DENKO, INC., a/k/a DENKO FOAM,
INC., RUSSELL MARTIN INDUSTRIES, Inc.
DAWN CHEMICAL CORPORATION OF
WISCONSIN, INC., AMEREX
CORPORATION, PERIMETER SOLUTIONS
LP, NOBLE INDUSTRIAL SUPPLY
CORPORATION, ROYAL CHEMICAL
COMPANY, VST CHEMICAL
CORPORATION, SUMMIT
ENVIRONMENTAL CORPORATION, INC.,
FIRE SERVICES PLUS, INC., BUCKEYE
FIRE EQUIPMENT COMPANY.

**COMPLAINT WITH JURY
DEMAND ENDORSED
HEREON**

Defendants.

Dana Nessel
Attorney General
Polly A. Synk (P63473)
Danielle Allison-Yokom (P70950)
Assistant Attorneys General
Michigan Department of Attorney General
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
synkp@michigan.gov
allisonyokomd@michigan.gov

Gregory M. Utter
Joseph M. Callow, Jr.
Special Assistant Attorneys
General
Matthew M. Allen
Sarah V. Geiger
Collin L. Ryan
Joseph B. Womick
Keating Muething & Klekamp
PLL
1 East 4th Street, Suite 1400
Cincinnati, OH 45202
(513) 579-6400
gmutter@kmklaw.com
jcallow@kmklaw.com
mallen@kmklaw.com
sgeiger@kmklaw.com
cryan@kmklaw.com
jwomick@kmklaw.com

Adam J. Levitt
Amy E. Keller (P74015)
Special Assistant Attorneys General
Daniel R. Flynn
Laura E. Reasons
Mary McKenna
Adam Prom
DiCello Levitt Gutzler LLC
10 North Dearborn Street, 6th Floor
Chicago, IL 60602
(312) 214-7900
alevitt@dicellolevitt.com
akeller@dicellolevitt.com
dflynn@dicellolevitt.com
lreasons@dicellolevitt.com
mmckenna@dicellolevitt.com
aprom@dicellolevitt.com

Richard W. Fields
Special Assistant Attorney
General
Martin F. Cunniff
Fields, PLLC
1901 L St., N.W. Suite 700,
Washington, D.C. 20036 (800)
878-1432
fields@fieldslawpllc.com
martincunniff@fieldslawpllc.com

# TABLE OF CONTENTS

Page

Introduction and Nature of the Action ............................................................... 2

I.   Commercial AFFF has caused injury to Michigan's public health,
   safety, welfare, natural resources and the environment................................. 4

Parties.................................................................................................................. 7

I.   Plaintiffs. ........................................................................................................ 7

II.   Defendants. .................................................................................................... 8

Jurisdiction and Venue ..................................................................................... 27

Factual Allegations ........................................................................................... 29

I.   Defendants had full knowledge of the health and environmental risks
   of Commercial AFFF, which they intentionally hid from the public and
   the State. ...................................................................................................... 29

II.   Defendants failed to act on their knowledge of Commercial AFFF's
   health and environmental risks. ................................................................. 35

III.   Michigan's Commercial AFFF and PFAS Investigations................................ 36

    A.   Michigan's PFAS standards.................................................................. 37

    B.   MPART's PFAS & AFFF investigations................................................ 39

IV.   Commercial AFFF contamination is widespread in Michigan. ...................... 44

        1.   Groundwater................................................................................... 49

        2.   Surface waters. ................................................................................ 50

        3.   Wildlife, soils, and sediment. ......................................................... 52

First Cause of Action Liability Under Part 201 of the NREPA................................. 53

Second Cause of Action Liability Under Part 17 of the NREPA .............................. 61

Third Cause of Action Liability Under Part 31 of the NREPA................................. 63

Fourth Cause of Action Trespass ........................................................................ 66

Fifth Cause of Action Public Nuisance ......................................................................... 68

Sixth Cause of Action Unjust Enrichment ................................................................. 73

**Request for Relief**.......................................................................................................... 74

**There are no other civil actions arising from the facts or occurrences pending before this Court or previously dismissed between the Parties.**

## COMPLAINT

Plaintiffs, Attorney General Dana Nessel, on behalf of the People of the State of Michigan, and the State of Michigan (collectively, State or Michigan), seek to hold the manufacturers of commercially available aqueous film-forming foam (AFFF) accountable for their culpable conduct related to their distribution, sale, release, supply, transport, arrangement for disposal or treatment, handling, and/or other release of AFFF, which contains hazardous perfluoroalkyl and polyfluoroalkyl substances (PFAS), throughout the State. Plaintiffs seek to recover the funds and resources necessary for Michigan to continue identifying, monitoring, and remediating AFFF–PFAS contamination caused by releases of commercially available AFFF at non-military, non-aviation, and non-tribal sites throughout the State of Michigan.

Michigan brings this civil action for monetary damages, natural resource and punitive damages, and injunctive, equitable, and other relief to require Defendants Chemguard, Inc., Tyco Fire Products, LP, National Foam, Inc., Angus Fire Armour Corporation, Kidde P.L.C., Inc., Kidde-Fenwal, Inc., Raytheon Technologies Corporation, UTC Fire & Security Americas Corporation Inc., Vulcan Fire Systems, Inc., Huntington Laboratories, Inc., Ecolab Inc., Mine Safety Appliances Company, LLC, Verde Environmental, Inc., a/k/a Micro-Blaze, Inc., Hartford Chemical Sales Corporation, G.V.C. Chemical Corporation, Stevens Company, Inc., Hazard Control

1

Technologies, Inc., Fire-Ade, Inc., Rockwood Systems, Inc., f/k/a Rockwood Systems Corporation, Cobra Fire Protection, Inc., BroCo Products, Inc., Pioneer Products, Inc., Denko, Inc., a/k/a Denko Foam, Inc., Russell Martin Industries, Inc., Dawn Chemical Corporation of Wisconsin, Amerex Corporation, Perimeter Solutions LP, Noble Industrial Supply Corporation, Royal Chemical Company, VST Chemical Corporation, Summit Environmental Corporation, Inc., Fire Service Plus, Inc., and Buckeye Fire Equipment Company (collectively, Defendants) to protect and restore Michigan's precious natural resources from widespread contamination and injury caused by commercially available AFFF, and for its Complaint states as follows:

## INTRODUCTION AND NATURE OF THE ACTION

1. Michigan is the largest state east of the Mississippi, and the Great Lakes surrounding the State contain 20% of the world's fresh water.

2. Michigan is also one of the most populated states in the country with over 10,000,000 residents and boasts a large and diverse economy.

3. Michigan has established itself as a leader in protecting the environment and in identifying, monitoring, and addressing contamination caused by the release of aqueous film-forming foam and related products (AFFF), which contain per- and polyfluoroalkyl substances (PFAS), into the State of Michigan.

4. As discussed below, there are several types of AFFF. One type is manufactured in accordance with military specification Mil-F-24385 (Mil-Spec AFFF). Mil-Spec AFFF is used on military bases and at federally regulated civilian airports.

2

5.     This Complaint *does not* seek to remedy contamination caused by the release of Mil-Spec AFFF.

6.     Rather, this Complaint seeks to remedy contamination of the State's environment and the State's natural resources caused by PFAS contained in commercially available AFFF (Commercial AFFF).

7.     Commercial AFFF *is not* designed and/or manufactured in accordance with military specification Mil-F-24385.  Commercial AFFF *is not* distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used in Michigan at the direction of the official authority of the United States Government or any of its federal agencies.

8.     Michigan brings this action against all Defendants pursuant to Part 201 of the Natural Resources and Environmental Protection Act (NREPA) (MCL 324.20101–324.20142), Part 17 of the NREPA (MCL 324.1701–324.1706), and Part 31 of the NREPA (MCL 324.3101–324.3134).

9.     Michigan also brings this action against all Defendants under Michigan's laws of public nuisance, trespass, and unjust enrichment.

10.     Michigan's claims—arising under Part 201, 17, and 31 of the NREPA, public nuisance, trespass, and unjust enrichment—proximately relate to the release of PFAS contained in Commercial AFFF into Michigan's environment.  Michigan's claims *do not* proximately relate to the production or design of Commercial AFFF.  Moreover, this Complaint *does not* assert any products liability claims such as

3

defective design, manufacturing defects, labeling defects, or failure to warn. Nor does this Complaint seek damages for personal property or personal injury.

11. As used in this Complaint, the term "natural resources" shall mean land, fish, wildlife, biota, air, water, ground water, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the State.

12. As used in this Complaint, the term "natural resource damages" include, without limitation: (i) Natural Resource Damage Assessment Costs; (ii) the costs of restoration, rehabilitation, or replacement of injured or lost Natural Resources and the services they provide, or of acquisition of equivalent resources (including costs of Natural Resource Restoration Projects); (iii) the costs of planning and monitoring such restoration activities; (iv) any other compensation for injury, destruction, loss, impairment, diminution in value, loss, or loss of use or non-use of Natural Resources and/or the services they provide; and (v) each of the categories of recoverable damages described in applicable State Natural Resource Damage law.

**I.      Commercial AFFF has caused injury to Michigan's public health, safety, welfare, natural resources and the environment.**

13. Firefighting foams can be divided into two classes: (a) foam "used to extinguish Class A materials, such as wood, paper, and brush;" and (b) foam "used to extinguish Class B materials, which include gasoline, oil, and jet fuel."[1]

---

[1] https://www.michigan.gov/pfasresponse/0,9038,7-365-86514-496805--,00.html (accessed August 19, 2020).

4

14.     Generally, Class B AFFF is a firefighting foam created specifically for addressing Class B types of fires, such as flammable liquid fires.

15.     Class B AFFF is used in industrial facilities, to train firefighters, to test firefighting equipment, and for preventing fires resulting from oil and gasoline. Class B AFFF is also used for extinguishing live fires under these circumstances.

16.     Historically, the United States Department of Defense (DOD) used Mil-Spec AFFF, a type of Class B AFFF, to fight fuel fires on military bases. AFFF used by DOD and other federal agencies must conform to the military-specific performance and quality control measurements as prescribed by the military specifications.

17.     Not all AFFF, however, is Mil-Spec AFFF.

18.     Since the 1960s, Defendants have made Commercial AFFF available for use by private entities and state and local fire departments.

19.     Commercial AFFF differs from Mil-Spec AFFF.

20.     Commercial AFFF is Class B AFFF and it is not produced in accordance with, or required to be produced in accordance with, military specification Mil-F-24385.

21.     Commercial AFFF includes AFFF produced in conformance with Underwriters Laboratory (UL) lab standards.

22.     Mil-Spec performance and quality control specifications do not govern or apply to the sale or use of Commercial AFFF.

5

23.     Commercial AFFF contains PFAS, including PFOA and PFOS. PFAS are known as "forever" chemicals, because they are extremely persistent in the environment and resistant to typical environmental degradation processes.

24.     For purposes of this Complaint only, PFAS includes, but is not limited to, Perfluorooctanoic acid (PFOA) (Fluorinated Carbon Chain Length: $C_8$) (Chemical Abstract Services Registry Number (CASRN): 335-67-1) and Perfluorooctanesulfonic acid (PFOS) (Fluorinated Carbon Chain Length: $C_8$) (CASRN: 1763-23-1) (including the chemicals themselves, as well as all of their salts, ionic states, and acid forms of molecules, as well as their "precursor" chemicals), by-products from the production of those chemicals used in Commercial AFFF, and any other PFAS that has been used in Commercial AFFF.

25.     There may be more than 5,000 different types of PFAS. This Complaint encompasses all of the thousands of PFAS, known or unknown, that have been used in Commercial AFFF (as defined herein).

26.     Michigan reserves its right to identify additional PFAS used in Commercial AFFF identified through discovery and as the science and research on the emerging PFAS crisis develops.

27.     As a result of its chemical structure, Commercial AFFF containing PFAS does not normally hydrolyze, photolyze, or biodegrade under environmental conditions, and is extremely persistent in the environment. This means that once Commercial AFFF is released into the environment, it migrates into and causes extensive contamination and injury to State natural resources and property.

6

28.     The release of Commercial AFFF into the environment has also harmed the State's public health, safety, welfare, and the environment as exposure to PFAS contained in Commercial AFFF is correlated with a wide array of harmful and serious public health effects.

29.     Defendants distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Commercial AFFF throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

## PARTIES

### I.     Plaintiffs.

30.     Plaintiffs are Attorney General Dana Nessel, on behalf of the People of the State of Michigan, and the State of Michigan (collectively, State or Michigan).

31.     The State maintains its principal office at 525 West Ottawa Street, Lansing, Michigan 48933.

32.     The State brings this action in its capacity as sovereign, as trustee of State natural resources (or of substantial interest in property) contaminated and injured by Defendants, and pursuant to its *parens patriae* authority on behalf of the residents of Michigan.

33.     The Attorney General has statutory and common law authority to appear on behalf of the people of the State of Michigan in any cause or matter, and this authority is liberally construed.  See MCL 14.28; *Michigan State Chiropractic Ass'n v Kelley*, 79 Mich App 789, 791 (1977).

7

34.     In addition, the Attorney General is explicitly authorized to commence a civil action under Parts 201, 17, and 31 of the NREPA.

35. .    The State brings this action based upon its statutory authority to protect State natural resources and property, and its common law police power. This power includes, but is not limited to, its power to prevent pollution of the State's natural resources and property, to prevent nuisances, and to prevent and abate hazards to public health, safety, welfare, natural resources and the environment.  MCL 324.1701.

**II.     Defendants.**

36.     **Defendant Chemguard, Inc. (Chemguard)** is a corporation organized and existing under the laws of Texas, with its principal place of business at 204 South 6th Avenue, Mansfield, Texas 76063.

37.     Chemguard, Inc. may be served with process through its registered agent, C T Corporation System, at The Corporation Company, 40600 Ann Arbor Road East, Suite 201, Plymouth, Michigan 48170.

38.     At all relevant times, Chemguard manufactured, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Commercial AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

39.    **Defendant Tyco Fire Products, LP** is a limited partnership organized and existing under the laws of Delaware, with its principal place of business at One Stanton Street, Marinette, Wisconsin 54143.

40.    Tyco Fire Products, LP may be served with process through its registered agent, The Corporation Company, 40600 Ann Arbor Road East, Suite 201, Plymouth, Michigan 48170.

41.    Tyco Fire Products, LP is the successor-in-interest to The Ansul Company (Ansul), having acquired Ansul in 1990. Ansul and Tyco (as the successor-in-interest to Ansul), will hereinafter be collectively referred to as "Tyco/Ansul." Tyco/Ansul manufactured and currently manufactures the Ansul brand of products, including Ansul brand Commercial AFFF.

42.    At all relevant times, Tyco/Ansul manufactured, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Commercial AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

43.    **Defendant National Foam, Inc. (National Foam)** is a corporation organized and existing under the laws of Delaware, with its principal place of business located at 141 Junny Road, Angier, North Carolina 27501.

44.    National Foam may be served with process at its principal place located at 141 Junny Road, Angier, North Carolina 27501.

9

45.    On information and belief, National Foam currently manufactures the Angus brand of AFFF products and is a subsidiary of Angus International Safety Group, Ltd, a United Kingdom private limited company.

46.    At all relevant times, National Foam manufactured, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Commercial AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

47.    **Defendant Angus Fire Armour Corporation (Angus Fire)** is a corporation organized and existing under the laws of Delaware, with its principal place of business at 141 Junny Road, Angier, North Carolina 27501.

48.    Agnus Fire may be served with process through its registered agent, The Prentice-Hall Corporation System, Inc., 251 Little Falls Drive Wilmington, Delaware 19808.

49.    On information and belief, Angus Fire is a subsidiary of Angus International Safety Group, Ltd., a United Kingdom private limited company.

50.    At all relevant times, Angus Fire manufactured, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Commercial AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

10

51.    **Defendant Kidde P.L.C., Inc. (Kidde P.L.C.)** is a corporation organized and existing under the laws of Delaware, with its principal place of business at One Carrier Place, Farmington, Connecticut 06034.

52.    Kidde P.L.C. may be served with process through its registered agent, The Corporation Company, 40600 Ann Arbor Road East, Suite 201, Plymouth, Michigan 48170.

53.    At all relevant times, Kidde P.L.C. manufactured, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Commercial AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

54.    **Defendant Kidde-Fenwal, Inc. (Kidde-Fenwal)** is a corporation organized and existing under the laws of Delaware, with its principal place of business at One Financial Plaza, Hartford, Connecticut 06101.

55.    Kidde-Fenwal may be served with process through its registered agent, The Corporation Company, 40600 Ann Arbor Road East, Suite 201, Plymouth, Michigan 48170.

56.    At all relevant times, Kidde-Fenwal manufactured, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Commercial AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

11

57.     On information and belief, Kidde-Fenwal is the successor-in-interest to Kidde Fire Fighting, Inc. (f/k/a Chubb National Foam, Inc. f/k/a National Foam System, Inc.).

58.     **Defendant Raytheon Technologies Corporation (Raytheon Technologies)** is a corporation organized and existing under the laws of Delaware, with its principal place of business at 10 Farm Springs Road, Farmington, Connecticut 06032.

59.     Raytheon Technologies may be served with process through its registered agent, The Corporation Company, 40600 Ann Arbor Road East, Suite 201, Plymouth, Michigan 48170.

60.     On information and belief, Kidde P.L.C. was acquired by United Technologies Corporation in or around 2005.

61.     On information and belief, Kidde-Fenwal, Inc. became part of the UTC Control & Security unit of United Technologies Corporation.

62.     On information and belief, United Technologies Corporation merged with Raytheon Company to form Raytheon Technologies in or around April 2020.

63.     At all relevant times, Raytheon Technologies manufactured, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Commercial AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

64. **Defendant UTC Fire & Security Americas Corporation, Inc. (UTC Fire)** is a corporation organized and existing under the laws of North Carolina, with its principal place of business at 3211 Progress Drive, Lincolnton, North Carolina 28092.

65. UTC Fire may be served with process through its registered agent, The Corporation Company, 40600 Ann Arbor Road East, Suite 201, Plymouth, Michigan 48170.

66. On information and belief, UTC Fire was created when United Technologies Corporation acquired Kidde P.L.C. and combined it with Chubb Fire, Ltd., a United Kingdom private limited company, in or around 2005.

67. On information and belief, UTC Fire became a subsidiary of Raytheon Technologies when United Technologies Corporation merged with Raytheon Company in April 2020.

68. At all relevant times, UTC Fire manufactured, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Commercial AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

69. **Defendant Vulcan Fire Systems, Inc. (Vulcan Fire)** is a corporation organized and existing under the laws of Kentucky, with its principal place of business at 3330 Gilmore Indus Boulevard, Louisville, Kentucky 40213.

13

70.     Vulcan Fire may be served with process through its registered agent, CSC-Lawyers Incorporating Service Company, 601 Abbot Road, East Lansing, Michigan 48823.

71.     At all relevant times, Vulcan Fire manufactured, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Commercial AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

72.     **Defendant Huntington Laboratories, Inc. (Huntington Laboratories)** was a corporation organized and existing under the laws of Indiana, with its principal place of business at 970 East Tipton Street, Huntington, Indiana 46750.

73.     Huntington Laboratories merged with Defendant Ecolab Inc. in 1997.

74.     **Defendant Ecolab Inc. (Ecolab)** is a corporation organized and existing under the laws of Delaware, with its principal place of business at 370 Wabasha Street North, Saint Paul, Minnesota 55102 and is the successor-in-interest to Huntington Laboratories (collectively, Ecolab).

75.     Ecolab may be served with process through its registered agent, The Corporation Company, 40600 Ann Arbor Road East, Suite 201, Plymouth, Michigan 48170.

76.     At all relevant times, Ecolab manufactured, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used

14

Commercial AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

77. **Defendant Mine Safety Appliances Company, LLC (Mine Safety Appliances)** is a limited liability company organized and existing under the laws of Pennsylvania, with its principal place of business at 1000 Cranberry Woods Drive, Cranberry Township, Pennsylvania 16066.

78. Mine Safety Appliances may be served with process through its registered agent, The Corporation Company, 40600 Ann Arbor Road East, Suite 201, Plymouth, Michigan 48170.

79. At all relevant times, Mine Safety Appliances manufactured, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Commercial AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

80. **Defendant Verde Environmental, Inc., a/k/a Micro-Blaze, Inc. (Verde Environmental)** is a corporation organized and existing under the laws of Delaware, with its principal place of business at 9223 Eastex Fairway, Houston, Texas 77093.

81. Verde Environmental may be served with process through its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

82.     At all relevant times, Verde Environmental manufactured, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Commercial AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

83.     **Defendant Hartford Chemical Sales Corporation (Hartford)** is a corporation organized and existing under the laws of New York, with its principal place of business at 2001 Marcus Avenue, Lake Success, New York 11042.

84.     Hartford may be served with process at 2001 Marcus Avenue, Lake Success, New York 11042.

85.     At all relevant times, Hartford manufactured, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Commercial AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

86.     **Defendant G.V.C. Chemical Corporation (G.V.C. Chemical)** is a corporation organized and existing under the laws of New York, with its principal place of business at 29 Front Street, East Rockaway, New York 11518.

87.     G.V.C. Chemical may be served with process at 29 Front Street, East Rockaway, New York 11518.

88.     At all relevant times, G.V.C. Chemical Corporation manufactured, distributed, sold, released, supplied, transported, arranged for disposal or

16

treatment, handled, and/or used Commercial AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

89. **Defendant Stevens Company, Inc. (Stevens Company)** was a Michigan Corporation with its principal place of business at 25460 Novi Road, Novi, Michigan 48375. Stevens Company dissolved in 2015.

90. Stevens Company's last registered agent to be served with process, Barbara Culham, was located at 15460 Trans-X Road, Novi, Michigan 48375.

91. At all relevant times, Stevens Company manufactured, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Commercial AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

92. **Defendant Hazard Control Technologies, Inc. (Hazard Control Technologies)** is a corporation organized and existing under the laws of Florida, with its principal place of business at 150 Walter Way, Fayetteville, Georgia 30214.

93. Hazard Control Technologies may be served with process through its registered agent, Gerda M. Benson, 500 South Beach Road, Hobe Sound, Florida 33455.

94. At all relevant times, Hazard Control Technologies distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Commercial AFFF containing PFAS throughout the State of Michigan causing

17

injury to Michigan's public health, safety, welfare, natural resources and the environment.

95.     **Defendant Fire-Ade, Inc. (Fire-Ade)** is a corporation organized and existing under the laws of North Carolina, with its principal place of business at 2800 Griffith Road, Winston Salem, North Carolina 27103.

96.     Fire-Ade may be served with process through its registered agent, Rhonda K. Clodfelter, 2615 Motsinger Road, Winston Salem, North Carolina 27107.

97.     At all relevant times, Fire-Ade manufactured, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Commercial AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

98.     **Defendant Rockwood Systems, Inc., f/k/a Rockwood Systems Corporation (Rockwood Systems)** is a corporation organized and existing under the laws of New York, with its principal place of business at 17 Allen Lane, Sloatsburg, New York 10974.

99.     Rockwood Systems may be served with process at 17 Allen Lane, Sloatsburg, New York 10974.

100.     At all relevant times, Rockwood Systems manufactured, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Commercial AFFF containing PFAS throughout the State of Michigan

causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

101. **Defendant Cobra Fire Protection, Inc. (Cobra)** is a corporation organized and existing under the laws of Virginia, with its principal place of business at 1 Hulvey Drive, Stafford, Virginia 22556.

102. Cobra may be served with process through its registered agent, Registered Agents Inc., 4445 Corporation Lane, Suite 264, Virginia Beach, Virginia 23462.

103. At all relevant times, Cobra manufactured, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Commercial AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

104. **Defendant BroCo Products, Inc. (BroCo)** is a corporation organized and exiting under the laws of Ohio, with its principal place of business at 8400 Baker Avenue, Cleveland, Ohio 44102.

105. BroCo may be served with process through its registered agent, Stephen C. Brown, 18624 Syracuse Avenue, Cleveland, Ohio 44110.

106. At all relevant times, BroCo manufactured, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Commercial AFFF containing PFAS throughout the State of Michigan causing

19

injury to Michigan's public health, safety, welfare, natural resources and the environment.

107. **Defendant Pioneer Products, Inc. (Pioneer Products)** is a corporation organized and existing under the laws of New York, with its principal place of business at 169 Mineola Blvd, Mineola, New York 11501.

108. Pioneer Products may be served with process through its registered agent, Lipstein & Associates, Inc., 388 South Oyster Bay Road Hicksville, New York 11801.

109. At all relevant times, Pioneer Products manufactured, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Commercial AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

110. **Denko, Inc., a/k/a Denko Foam, Inc. (Denko)** is a corporation organized and existing under the laws of New York, with its principal place of business at P.O. Box 1236 Elmira, New York 14902.

111. Denko may be served with process at P.O. Box 1236 Elmira, New York, 14902.

112. At all relevant times, Denko manufactured, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Commercial AFFF containing PFAS throughout the State of Michigan causing

20

injury to Michigan's public health, safety, welfare, natural resources and the environment.

113. **Russell Martin Industries, Inc. (Russell Martin Industries)** is a corporation organized and existing under the laws of New York, with its principal place of business at 888 Ocean Street, Baldwin Harbor, New York 14410.

114. Russell Martin Industries may be served with process at 888 Ocean Street, Baldwin Harbor, New York 14410.

115. At all relevant times, Russell Martin Industries manufactured, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Commercial AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

116. **Defendant Dawn Chemical Corporation of Wisconsin (Dawn Chemical)** is a corporation organized and existing under the laws of Wisconsin, with its principal place of business at 3325 W Kiehnau Avenue, Milwaukee, Wisconsin 53209.

117. Dawn Chemical may be served through its registered agent, Michael St. George, 9229 N. Ironwood Lane, Bayside, Wisconsin 53217.

118. At all relevant times, Dawn Chemical manufactured, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Commercial AFFF containing PFAS throughout the State of Michigan causing

21

injury to Michigan's public health, safety, welfare, natural resources and the environment.

119. **Defendant Amerex Corporation (Amerex)** is a corporation organized and existing under the laws of Alabama, with its principal place of business located at 7595 Gadsden Highway, Trussville, Alabama 35173.

120. Amerex may be served with process at 7595 Gadsden Highway, Trussville, Alabama 35173.

121. In 2011, Amerex acquired Solberg Scandinavian AS (Solberg), one of the largest European manufactures of AFFF. Solberg continued to operate as a products division of Amerex after the acquisition.

122. At all relevant times, Amerex manufactured, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Commercial AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

123. **Defendant Perimeter Solutions LP (Perimeter Solutions)** is limited partnership organized and existing under the laws of Delaware, with its principle place of business at 8000 Maryland Avenue, Suite 350, Clayton, Missouri 63105.

124. Perimeter Solutions may be served with process through its registered agent, C T Corporation System, 120 S. Central Avenue, Clayton, Missouri 63105.

22

125. In 2019, Perimeter Solutions purchased the Solberg products division of Amerex.

126. At all relevant times, Perimeter Solutions manufactured, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Commercial AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

127. Perimeter Solutions is the successor-in-interest to Solberg.

128. **Defendant Noble Industrial Supply Corporation (Noble)** is a corporation organized and existing under the laws of New York, with its principal place of business at 45 Middle Neck Road #4, Great Neck, New York 11021.

129. Noble may be served with process through its registered agent, Fine & Bassik, Esqs., 316 Great Neck Road, Great Neck, New York 11021.

130. At all relevant times, Noble manufactured, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Commercial AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

131. **Defendant Royal Chemical Company (Royal)** is corporation organized and existing under the laws of Ohio, with its principal place of business at 8679 South Freeway Drive, Macedonia, Ohio 44056.

23

132. Royal may be served with process through its registered agent, The Corporation Company, 40600 Ann Arbor Road East, Suite 201, Plymouth, Michigan 48170.

133. At all relevant times, Royal manufactured, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Commercial AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

134. **Defendant VST Chemical Corporation (VST)** is a corporation organized and existing under the laws of New York, with its principal place of business at 253 West Penn Street, Long Beach, New York 11561.

135. VST may be served with process at 20 Woods Road, Yulan, New York 12792.

136. At all relevant times, VST manufactured, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Commercial AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

137. **Defendant Summit Environmental Corporation, Inc. (Summit)** is a publicly traded corporation organized and existing under the laws of Texas, with its principal place of business at 16610 Dallas Parkway, Suite 2100, Dallas, Texas 75248.

24

138.   Summit may be served with process at 610 West Rawson Avenue, Oak Creek, Wisconsin 53154.

139.   At all relevant times, Summit manufactured, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Commercial AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

140.   **Defendant Fire Services Plus, Inc. (Fire Services Plus)** is a corporation organized and existing under the laws of Georgia, with its principal place of business located at 473 Dividend Drive, Peachtree City, Georgia 30269.

141.   Fire Services Plus may be served with process through its registered agent, Ronald E. Thames, 180 Etowah Trace, Fayetteville, Georgia 30214.

142.   At all relevant times, Fire Services Plus manufactured, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Commercial AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

143.   **Defendant Buckeye Fire Equipment Company (Buckeye)** is a corporation organized under the laws of Ohio, with its principal place of business located at 110 Kings Road, Kings Mountain, North Carolina 28086.

144. Buckeye may be served with process through its registered agent, A Haon Corporate Agent, Inc., 29225 Chagrin Boulevard, Suite 350, Pepper Pike, Ohio 44122.

145. At all relevant times, Buckeye manufactured, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Commercial AFFF containing PFAS throughout the State of Michigan causing injury to Michigan's public health, safety, welfare, natural resources and the environment.

146. All Defendants: (a) acted with actual or constructive knowledge that Commercial AFFF would be delivered into areas affecting the State's natural resources and property; (b) are legally responsible for and committed each of the wrongful acts alleged in this Complaint; and (c) promoted Commercial AFFF products containing PFAS, despite the availability of reasonable alternatives and their actual or constructive knowledge that the contamination alleged in this Complaint would be the inevitable result of their conduct.

147. To the extent any act or omission of any Defendant is alleged in this Complaint, the officers, directors, agents, employees, or representatives of each such Defendant committed or authorized each such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of such Defendants, and did so while acting within the scope of their duties, employment or agency.

26

148.     Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates, and divisions of the named Defendants.

149.     The State's investigation of other entities that have caused Commercial AFFF to be released into the environment creating imminent and substantial danger to public health and the environment is ongoing.

## JURISDICTION AND VENUE

150.     This Court has jurisdiction over the subject matter of this action pursuant to MCL 600.605.

151.     This Court may exercise jurisdiction over Defendants because they are or at the relevant times were authorized to do business in Michigan; are or at the relevant times were registered with the Corporation, Securities & Commercial Licensing Bureau of the Michigan Department of Licensing and Regulatory Affairs; are or at the relevant times were transacting business in Michigan, or otherwise intentionally availing themselves of the Michigan market through the distribution, sale, release, supply, transport, arrangement for disposal or treatment, handling, and/or use of Commercial AFFF throughout the State of Michigan and/or at the relevant times owned, used, or possessed certain real and tangible property situated within the State.

152.     Because PFAS are not naturally occurring, Defendants' contacts with Michigan are the only possible explanation for the widespread PFAS contamination

27

from Commercial AFFF, causing injury to Michigan's public health, safety, welfare, natural resources, and the environment.

153. Defendants' connections with the State of Michigan are consistent with the requirements of the Due Process Clause of the Fourteenth Amendment given that Defendants have purposefully availed themselves of the privilege of conducting activities in Michigan, the causes of action arise from Defendants' activities in Michigan, and Defendants' activities are so substantially connected to Michigan to make the exercise of jurisdiction over Defendants reasonable.

154. Venue is proper in this Court because the State is the plaintiff and State natural resources and/or property have been contaminated, injured, and/or otherwise damaged by Commercial AFFF used at locations in Ingham County.

155. Venue is also proper in this Court because "[t]he county in which the seat of state government is located is a proper county in which to commence and try . . ." an "action . . . commenced by the attorney general in the name of the state or of the people of the state for the use and benefit thereof." MCL 600.1631(a).

156. Moreover, the State brings claims pursuant to Part 31 of Michigan's Natural Resources and Environmental Protection Act, which provides that "[a]n action under this subsection may be brought *in the circuit court for the county of Ingham* or for the county in which the defendant is located, resides, or is doing business." MCL 324.3115(1) (emphasis added).

157. Because the State seeks to remedy statewide contamination and natural resources and property damages stemming from systematic and widespread

28

violations of its water resources protection statute and regulations, venue is proper
as this Court is a default venue for statewide claims arising under Part 31 of the
NREPA.

## FACTUAL ALLEGATIONS

I.    **Defendants had full knowledge of the health and environmental
      risks of Commercial AFFF, which they intentionally hid from the
      public and the State.**

158.    PFAS are a family of chemical compounds containing strong carbon-
fluorine bonds.[2]

159.    PFAS are human-made, synthetic chemicals that do not exist naturally
in the environment.[3]

160.    PFAS are known as "forever" chemicals, because they are extremely
persistent in the environment and resistant to typical environmental degradation
processes.[4]

161.    PFAS do not break down or biodegrade over time, and instead,
accumulate in the environment.[5]

---

[2] U.S. Environmental Protection Agency, *EPA's Per- and Polyfluoroalkyl Substances
(PFAS) Action Plan*, p 1, https://www.epa.gov/sites/production/files/2019
02/documents/pfas_action_plan_021319_508compliant_1.pdf (February 2019)
(accessed August 19, 2020).

[3] *Id.* at 1.

[4] *Id.* at 1.

[5] U.S. EPA., *Basic Information on PFAS*,
https://www.epa.gov/pfas/basicinformation-pfas (accessed August 19, 2020).

162.    PFAS generally absorb poorly and tend to be mobile in soil and groundwater systems.

163.    This combination of properties enables PFAS to readily migrate in soil, surface water, and groundwater.[6]

164.    The pernicious characteristics of PFAS mean that once these chemicals are released into the environment, they migrate into and cause extensive contamination and injury to State natural resources and property.[7]

165.    The public is exposed to PFAS through ingestion of drinking water and contaminated food, inhalation, dermal contact, and other pathways.[8]

166.    PFAS bioaccumulate in the human body and can bio-magnify in animals, particularly fish and "top of the food chain" mammals.[9]

167.    PFAS can even be found in the blood of human infants, and protein-rich breast milk appears to be a source of PFAS exposure.[10]

---

[6] John A. Simon, *Editor's perspective—Per- and polyfluorinated substances pose substantial challenges to remediation practitioners*, Remediation: The Journal of Environmental Cleanup Costs, Technologies, and Techniques, 2018;28:3–7, https://onlinelibrary.wiley.com/doi/full/10.1002/rem.21547 (March 12, 2018) (accessed August 19, 2020).

[7] See generally Simon, *supra* n. 6.

[8] See *Basic Information on PFAS*, *supra* n. 5.

[9] See, e.g., NBC News, *Breast-Fed Babies Show Buildup of Potentially Harmful Chemical*, http://www.nbcnews.com/id/57764921/ns/technology_and_science-science/t/breast-fed-babies-show-buildup-potentially-harmful-chemical/#.Xbs7FyhKhMB (August 21, 2015) (accessed August 19, 2020).

[10] See U.S. Dep't of Health and Human Services, Agency for Toxic Substances and Disease Registry, *Toxicological Profile for Perfluoroalkyls, Draft for Public Comment* (June 2018) (available at https://www.atsdr.cdc.gov/toxprofiles/tp200.pdf) (accessed August 19, 2020.)

168. Even low doses of PFAS can result in adverse health effects for humans as well as animals.[11]

169. Exposure to certain PFAS is correlated with a wide array of harmful and serious health effects in humans and animals, including but not limited to:

(a) Liver damage;

(b) Altered cholesterol levels;

(c) Pregnancy-induced hypertension and/or preeclampsia;

(d) Thyroid disease;

(e) Modulation of the immune system;

(f) Decreased fertility; and

(g) Decreases in birth weight.[12]

170. PFAS contamination is a serious threat to public health, as well as to State natural resources and property.

171. Because PFAS are persistent in the environment, unless PFAS are actively cleaned up from contaminated State natural resources and property or

---

[11] See, e.g., Michigan Science Advisory Workgroup, *Health-Based Drinking Water Value Recommendations for PFAS in Michigan,* https://www.michigan.gov/documents/pfasresponse/HealthBased_Drinking_Water_ Value_Recommendations_for_PFAS_in_Michigan_Report_6 59258_7.pdf (June 27, 2019) (accessed August 19, 2020); *see also* Michigan PFAS Science Advisory Panel, *Scientific Evidence and Recommendations for Managing PFAS Contamination in Michigan,* (https://www.michigan.gov/documents/pfasresponse/Science_Advisory_Board_Repor t_641294_7.pdf) (December 7, 2018) (accessed August 19, 2020).

[12] See *Toxicological Profile for Perfluoroalkyls—Draft for Public Comment, supra* n. 10.

31

otherwise remediated, these chemicals will remain within the State and continue to contaminate State natural resources and property indefinitely.

172.   PFAS are difficult and costly to treat and remove from State natural resources and property or otherwise remediate.[13]

173.   PFAS have been used for decades in a wide array of consumer and industrial products, including Commercial AFFF.[14]

174.   Release of Commercial AFFF into the environment, which then seeps into and travels through soil, groundwater, and surface water, is a known pathway for PFAS to enter the environment.

175.   Defendants distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Commercial AFFF in Michigan in such a way as to cause harm to the State's public health, safety, welfare, natural resources and the environment.

176.   Defendants have known for decades that PFAS are toxic and because Commercial AFFF contains PFAS, the release of Commercial AFFF poses substantial health and environmental risks.  Notwithstanding that knowledge, Defendants persistently and intentionally hid the danger of Commercial AFFF from Michigan and the public.

177.   Defendants released Commercial AFFF into the environment as a result of, or in connection with their distribution, sale, release, supply, transport,

---

[13] See, e.g., Simon, *supra* n. 6.

[14] *Id.* at 1.

arrangement for disposal or treatment, handling, and/or use of Commercial AFFF in Michigan.

178.    Defendants knew, foresaw, and/or reasonably should have known and/or foreseen that PFAS from Commercial AFFF would contaminate and harm the State's public health, safety, welfare, natural resources and the environment.

179.    The Defendants have earned extraordinary profits from their business practices related to Commercial AFFF.

180.    Despite their explicit knowledge of the dangers of PFAS used in Commercial AFFF, Defendants deliberately and intentionally concealed the dangers of Commercial AFFF from governmental entities, including the State of Michigan and its agencies, and the public at large in order to protect profits and avoid public responsibility for injuries and damage caused by their toxic products.

181.    Instead of disclosing the dangers associated with Commercial AFFF, Defendants went to great lengths to falsely promote Commercial AFFF as being safe and appropriate for widespread use.

182.    Defendants repeatedly assured and represented to governmental entities and to the public that exposure to Commercial AFFF presented no risk of harm and was of no legal, toxicological, or medical significance of any kind.

183.    At all relevant times, Defendants shared and/or should have shared among themselves, all relevant information relating to the presence, biopersistence, and bioaccumulation of PFAS from Commercial AFFF in the environment and in

33

human blood and associated toxicological, epidemiological, and/or other adverse effects and/or risks.

184. At all relevant times, Defendants, through their acts and/or omissions, controlled, minimized, trivialized, manipulated, and/or otherwise influenced the information that was published in peer-review journals, released by any governmental entity, and/or otherwise made available to the public relating to PFAS in human blood and any alleged adverse impacts and/or risks associated therewith, effectively preventing the State from discovering the existence and extent of any harm as alleged herein.

185. At all relevant times, Defendants, through their acts and/or omissions, took steps to attack, challenge, discredit, and/or otherwise undermine any scientific studies, findings, statements, and/or other information that proposed, alleged, suggested, or even implied any potential adverse environmental damage and health effects or risks and/or any other fact of any legal, toxicological, or medical significance associated with the presence of PFAS from Commercial AFFF in the environment and human blood.

186. At all relevant times, Defendants, through their acts and/or omissions, concealed and/or withheld information from their customers, governmental entities, and the public that would have properly and fully alerted Michigan to the environmental, toxicological, medical, or other significant risks from Commercial AFFF contamination.

34

187.   At all relevant times, Defendants encouraged the continued and increased use of Commercial AFFF, which caused PFAS to be released into the environment of Michigan, by their customers and others, despite knowledge of the toxicity, persistence, and bioaccumulation concerns associated with Commercial AFFF containing PFAS.

188.   Defendants' actions have contaminated and harmed Michigan's public health, safety, welfare, natural resources and the environment.

## II.   Defendants failed to act on their knowledge of Commercial AFFF's health and environmental risks.

189.   Despite their knowledge that Commercial AFFF posed environmental and public health risks, and despite the availability of reasonable alternatives, Defendants failed to take appropriate precautionary measures to prevent or mitigate contamination caused by Commercial AFFF.

190.   Defendants promoted Commercial AFFF as being environmentally sound and appropriate for widespread use.

191.   At all times relevant to this litigation, Defendants were or should have been aware that injury to the State's natural resources and property was inevitable as a result of the use of Commercial AFFF, due to PFAS's solubility, recalcitrance to biodegradation and bioremediation, and the normal and foreseen use of Commercial AFFF manufactured, distributed, sold, and used in Michigan.

192.   Defendants possess—and have always possessed—vastly superior knowledge, resources, experience, and other advantages, in comparison to anyone or any agency, concerning the nature, and properties of PFAS and Commercial AFFF.

35

193. By virtue of their tremendous economic power and analytical resources, including the employment of scientists such as chemists, engineers, and toxicologists, Defendants have at all relevant times been in a position to know, identify, and confirm the threat Commercial AFFF posed and still poses to the State's public health, safety, welfare, natural resources and the environment.

194. In addition, by virtue of this superior knowledge, and/or by virtue of Defendants' partial and incorrect statements regarding the nature and impacts of Commercial AFFF, Defendants had a duty to disclose the truth and to act in accordance with the truth about Commercial AFFF.

## III.    Michigan's Commercial AFFF and PFAS Investigations.

195. Commercial AFFF contamination in Michigan's groundwater, surface water, and natural resources is a serious, immediate, and direct threat to the State's public health, safety, welfare, natural resources, and the environment.

196. In response to this serious and immediate threat, Michigan has implemented one of the most aggressive Commercial AFFF investigations and PFAS sampling plans in the nation.

197. In November 2017, Executive Directive No. 2017-4 established MPART to address concerns about PFAS contamination in Michigan.[15]

---

[15] See generally Executive Directive No. 2017-4,
https://www.michigan.gov/documents/snyder/ED_2017-4_605925_7.pdf (November 13, 2017) (accessed August 19, 2020).

## A. Michigan's PFAS standards.

198. MPART was tasked with the formation of an Independent Science Advisory Panel, comprised of experts from throughout the United States, to provide analysis of human health risks associated with PFAS in the environment and evidence-based recommendations to Michigan.

199. On December 7, 2018, the Independent Science Advisory Panel published a report which, amongst other things, advised that the State of Michigan should impose drinking water standards for PFOS and PFOA that are more restrictive than the U.S. EPA's Lifetime Health Advisory (LHA) of 70 ppt combined for PFOS and PFOA and that the State of Michigan should evaluate other PFAS.[16]

200. In March 2019, Governor Gretchen Whitmer announced that Michigan will establish enforceable state drinking water standards for PFAS.[17]

201. Governor Whitmer directed MPART to form an independent Science Advisory Workgroup to navigate the science and standards from across the country and develop health-based values (HBVs) to inform the initial phase of the rulemaking process for establishing state drinking water standards.[18]

---

[16] Michigan PFAS Science Advisory Panel, *Scientific Evidence and Recommendations for Managing PFAS Contamination in Michigan* (Dec. 7, 2018), available at
https://www.michigan.gov/documents/pfasresponse/Science_Advisory_Board_Report_641294_7.pdf (accessed August 19, 2020).

[17] *Health-Based Drinking Water Value Recommendations for PFAS in Michigan*, n. 11, *supra*, at 2.

[18] *Id.*

37

202.    The Science Advisory Workgroup undertook a methodical approach to evaluate existing and proposed standards from across the country for the 18 PFAS analytes considered under U.S. EPA Method 537.1.[19]

203.    The Science Advisory Workgroup focused on those PFAS that they determined had enough peer reviewed studies on which to base their conclusions.[20]

204.    On August 3, 2020, EGLE adopted new standards aimed at protecting Michiganders from PFAS contamination in municipal drinking water:[21]

| Specific PFAS | Drinking Water HBV | Chemical Abstract Services Registry Number (CASRN) |
|---|---|---|
| PFNA | 6 ng/L (ppt) | 375-95-1 |
| PFOA | 8 ng/L (ppt) | 335-67-1 |
| PFHxA | 400,000 ng/L (ppt) | 307-24-4 |
| PFOS | 16 ng/L (ppt) | 1763-23-1 |
| PFHxS | 51 ng/L (ppt) | 355-46-4 |
| PFBS | 420 ng/L (ppt) | 375-73-5 |
| HFPO-DA (GenX) | 370 ng/L (ppt) | 13252-13-6 |

---

[19] *Id.* at 3; *see also Method 537.1: Determination of Selected Per- and Polyfluorinated Alkyl Substances in Drinking Water by Solid Phase Extraction and Liquid Chromatography/Tandem Mass Spectrometry (LC/MS/MS)* https://cfpub.epa.gov/si/si_public_record_Report.cfm?dirEntryId=343042&Lab=NER L (accessed August 19, 2020).

[20] *Id.*

[21] *Id.*

205.   On August 3, 2020, MPART announced an expansion of PFAS investigations and clean-up efforts across the state in response to the state's adoption of new standards aimed at protecting Michiganders from PFAS contamination in municipal drinking water.

206.   Administered by the Department of Environment, Great Lakes, and Energy (EGLE) (f/k/a Michigan Department of Environmental Quality), the new regulations limit seven PFAS chemicals in drinking water, consistent with the recommendations of the Science Advisory Workgroup, as reflected in the chart above.

207.   The limits in the chart above represent the current Maximum Contamination Levels for municipal drinking water in Michigan.

208.   The new drinking water standards also update Michigan's existing groundwater clean-up criteria of 70 ppt for PFOS and PFOA.  The new groundwater standard is 8 ppt for PFOA and 16 ppt for PFOS.

209.   These new levels represent the current cleanup criteria under Part 201 of the NREPA for groundwater used as drinking water under the authority of Mich. Admin. Code R 299.6.

**B.     MPART's PFAS & Commercial AFFF investigations.**

210.   Immediately after its formation, MPART began a series of investigations and collected sampling data to identify, characterize, and address

risks to the State's public health, safety, welfare, natural resources and the environment as quickly as possible.[22]

211. MPART initiated a Statewide PFAS Sampling Program in 2018, which consists of multiple phases.

212. MPART began Phase I of its Statewide PFAS Sampling Program (MPART Study Phase I) in April 2018 in order to test drinking water for approximately 75% of Michigan's residents.[23]

213. Executive Order 2019-3, issued by Governor Gretchen Whitmer, established MPART as an enduring body to continue to address the PFAS contamination in Michigan, protect public health, safety, welfare, natural resources, and the environment, and ensure the safety of Michigan's land, air, and water.[24]

214. MPART conducted Phase II of MPART's Statewide PFAS Sampling Program (MPART Study Phase II) in 2019 to sample non-community public water

---

[22] See, e.g., Department of Environment, Great Lakes, and Energy, Michigan PFAS Action Response Team, *PFAS Sites Being Investigated*, https://www.michigan.gov/pfasresponse/0,9038,7-365-86511---,00.html (accessed August 19, 2020).

[23] Michigan PFAS Action Response Team, *PFAS Response, Phase I (2018)*, available at https://www.michigan.gov/pfasresponse/0,9038,7-365--495899--,00.html (accessed August 19, 2020).

[24] See generally Executive Directive No. 2019-3, https://www.michigan.gov/whitmer/0,9309, 7-387-90499_90705-488737--,00.html; see also Department of Environment, Great Lakes, and Energy, Michigan PFAS Action Response Team, MPART, https://www .michigan.gov/pfasresponse/0, 9038, 7-365-86513---,00.html (accessed August 19, 2020).

supplies which were not part of Phase I in order to assess the potential for PFAS impact in drinking water for expanded at-risk populations.[25]

215.   A total of 2,500 facilities, including both community water supplies (CWS) and non-community water supplies (NCWS), were sampled during the MPART Study Phase I and Phase II.

216.   A total of 70 CWS with intakes in one of the Great Lakes, connecting channels, or inland rivers, and 1,045 other CWS that rely solely on groundwater were sampled.

217.   The CWS facilities sampled consisted of municipalities, manufactured housing communities, apartment complexes, subdivisions, condominium developments, and others.

218.   A total of 460 schools, 165 childcare providers and Michigan Head Start programs, and approximately 716 additional water supplies classified as NCWS, which have their own groundwater well(s), were also sampled.

219.   In addition to MPART's Statewide public water supply Phase I and Phase II studies, MPART has also conducted groundwater investigations and found exceedances of Part 201 cleanup criteria (of 8 ppt for PFOA and 16 ppt for PFOS) at 105 sites.  EGLE has also conducted groundwater investigations at other sites and over 40 of those exceed the revised drinking water criteria of 8 ppt for PFOA or 16 ppt for PFOS.  MPART also has conducted wastewater screening, surface water

---

[25] Michigan PFAS Action Response Team, *PFAS Response, Phase II (2019),* available at https://www.michigan.gov/pfasresponse/0,9038,7-365-86510_88061_92549_92526-495786--,00.html (accessed August 19, 2020).

41

screening, fish and wildlife screening, and screening of surface water foam suspected to be the result of PFAS contamination.

220.    MPART has discovered elevated PFAS concentrations from Commercial AFFF in lakes and waterways across the State of Michigan.

221.    PFAS-contaminated foam has been documented on the surface of rivers and lakes detrimentally affected by PFAS contamination in Michigan.

222.    Since June 2019, health advisories have been issued by local health departments or the Michigan Department of Health and Human Services warning residents to avoid contact with PFAS foam on various lakes and streams in Michigan.

223.    These advisories which are in place indefinitely, advise residents to avoid ingesting PFAS foam and to wash their hands after touching foam.

224.    Human-health-based consumption advisories have been established for fish in various lakes and streams in Michigan based on the presence of PFAS in edible portions of fish.

225.    These advisories range from limitations on consumption to "do not eat" advisories, and such advisories remain in effect at this time.

226.    MPART has also discovered elevated levels of PFAS in groundwater and surface water, including drinking water sources.

227. On March 29, 2018, the Michigan Fire Marshal conducted a survey of 1,035 fire stations in Michigan to identify which were currently using or had previously used Commercial AFFF.[26]

228. As of February 11, 2020, approximately 795 fire stations had responded to the survey, of which 359 reported using a total of approximately 37,148 gallons of Commercial AFFF.[27]

229. Neither the State of Michigan nor its local fire departments provided Defendants with specifications to govern the formulation, performance, testing, storage, inspection, packaging, and/or labeling of Commercial AFFF nor did they require that Commercial AFFF conform to the DOD's Mil-Specs.

230. Similarly, based upon information and belief, private entities that used Commercial AFFF in Michigan did not provide Defendants with specifications to govern the formulation, performance, testing, storage, inspection, packaging, and/or labeling of Commercial AFFF nor did they require that AFFF conform to the DOD's Mil-Specs.

231. Defendants manufactured PFAS and/or Commercial AFFF that was delivered to Michigan for various commercial methods, including, but not limited to, fire prevention training and fire extinguishing.

---

[26] https://www.michigan.gov/pfasresponse/0,9038,7-365-86514-496805--,00.html (accessed August 19, 2020).
[27] *Id.*

232. MPART's widespread sampling conducted pursuant to Executive Directive 2017-4 and Executive Order 2019-3 has revealed the presence of PFAS at levels that threaten significant portions of the State's ecosystem.

233. The State's investigation and response are ongoing given the scope of the problem and that knowledge of PFAS's public health and environmental risks is evolving.

## IV. Commercial AFFF contamination is widespread in Michigan.

234. In this Complaint, the State seeks damages and remedies for Commercial AFFF contamination at locations and/or properties throughout the State except at: (1) locations and/or property owned by the federal government of the United States; (2) locations and/or properties that qualify as non-military airports subject to 14 CFR 139.1 and Federal Aviation Administration regulations; and (3) locations and/or properties that qualify as a Federal Enclave under Article One Section 8 Clause 17 of the United States Constitution.

235. Commercial AFFF contamination has harmed natural resources and property throughout the State and has injured the State's public health, safety, welfare, natural resources, and the environment and interferes with the use of these precious resources.

236. As noted above, the term "natural resources" shall mean land, fish, wildlife, biota, air, water, ground water, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States, the State or the Tribes. Likewise, the term

44

"natural resource damages" include, without limitation: (i) Natural Resource Damage Assessment Costs; (ii) the costs of restoration, rehabilitation, or replacement of injured or lost Natural Resources and the services they provide, or of acquisition of equivalent resources (including costs of Natural Resource Restoration Projects); (iii) the costs of planning and monitoring such restoration activities; (iv) any other compensation for injury, destruction, loss, impairment, diminution in value, loss, or loss of use or non-use of Natural Resources and/or the services they provide; and (v) each of the categories of recoverable damages described in applicable State Natural Resource Damage law.

237.    Given PFAS's properties, including their resistance to biodegradation and their solubility, PFAS from Commercial AFFF continues to move through groundwater, surface waters, soils, and other natural resources, and cause contamination in new locations, adversely impacting State natural resources and property.

238.    PFAS continue to move through the environment and contaminate and injure State natural resources and property at a number of locations throughout the State with known Commercial AFFF contamination.

239.    The State seeks a remedy through this lawsuit for contamination at any site within the State where Commercial AFFF has been detected, or in the future will be detected, and where PFAS from Commercial AFFF has been or will be detected above Michigan's current clean up criteria.

45

240. Defendants' acts and omissions directly and proximately caused and continue to cause PFAS from Commercial AFFF to intrude into and contaminate and injure these natural resources and property.

241. There are proven and preliminary remedial techniques for cleaning up PFAS from Commercial AFFF in environmental media, and for successfully treating drinking water.

242. Absent use of remediation and treatment methods, PFAS contamination associated with Commercial AFFF will continue to spread through the State's natural resources and property.

243. Although PFAS are persistent in the environment, PFAS from Commercial AFFF can be successfully remediated in certain natural resources and/or successfully treated, but at significant expense.

244. PFAS contamination levels from Commercial AFFF in State natural resources including groundwater and drinking water typically fluctuate (i.e., increase and decrease) over time as PFAS from Commercial AFFF moves through groundwater, and due to other factors, including changes in seasonal precipitation levels.

245. PFAS levels from Commercial AFFF can fluctuate at a single contamination site over time. For this reason, the only way to be certain that PFAS from Commercial AFFF no longer exists in State natural resources such as groundwater or drinking water is to remediate or treat the PFAS. In other words, if Commercial AFFF is not remediated, it will contaminate the environment forever.

46

246. The presence and migration of PFAS from Commercial AFFF in the State's natural resources and property, absent large-scale and costly remediation and/or treatment, will continue indefinitely, and will continue to threaten the State's natural resources and property.

247. Because of the injury Commercial AFFF has caused and is causing to State natural resources, Michigan's natural resources require restoration, including compensation for interim and permanent losses.

248. The State reserves its right to amend this Complaint as additional evidence of Commercial AFFF contamination comes to light including, but not limited to, Commercial AFFF contamination of wildlife, soils, sediments, and other State natural resources.

249. Contamination from use of Commercial AFFF at locations throughout Michigan has injured the State's natural resources belonging to, managed by, controlled by, appertaining to, or held in trust by the State or a local unit of government and/or adversely impacted their beneficial public trust uses including those for drinking water, recreation, fishing, agriculture, and other uses.

250. Contamination from use of Commercial AFFF in Michigan has caused substantial injury and damage to the State natural resources.

251. Michigan and its residents have been deprived of the full use and enjoyment of natural resources belonging to, managed by, controlled by, appertaining to, or held in trust by the State or a local unit of government, which

47

have been substantially harmed by Commercial AFFF contamination throughout the State.

252. The State's natural resources and property will continue to be harmed and injured for the foreseeable future by the ongoing release and/or spread of PFAS from Commercial AFFF contamination throughout the State.

253. Defendants' acts and/or omissions have caused and/or contributed to Commercial AFFF contamination throughout the State.

254. To the extent that Defendants did not own any property or operate any facility with Commercial AFFF contamination in the State, Defendants knew or should have known that Commercial AFFF would be released or disposed of from facilities and/or properties in the State and did not take any action to ensure that the owners or operators properly disposed of Commercial AFFF.

255. Defendants failed to disclose the environmental and health risks of Commercial AFFF that were known or should have been known to them, to consumers, to users, or to the State.

256. Because Defendants failed to disclose the environmental and health risks of Commercial AFFF, the risks associated with Commercial AFFF were unknown to the State.

257. Defendants were in the best position to reduce the risk of harm of Commercial AFFF contamination in Michigan.

258. Each of the State's natural resources is precious, limited, and invaluable, as described in more detail below.

48

### 1. Groundwater.

259. Groundwater is a precious, limited, and invaluable State natural resource that is used for drinking water, irrigation, agriculture, and other important purposes.

260. Agriculture is a significant industry in Michigan, where the food and agriculture system accounts for an estimated $104.7 billion in direct, indirect, and induced economic activity annually.

261. Agriculture accounts for approximately 805,000 jobs in the State of Michigan.

262. Approximately 45% of Michiganders rely upon groundwater as a source for their drinking water.[28]

263. State natural resources, including groundwater, are vital to the health, safety, and welfare of Michigan's residents, and to the State's economy and ecology.

264. Defendants' Commercial AFFF has contaminated and damaged the State's groundwater in locations throughout the State and at yet to be identified sites of PFAS contamination from Commercial AFFF.

265. Defendants' Commercial AFFF has contaminated and damaged drinking water that is drawn from groundwater sources in locations throughout the State.

---

[28] Michigan Department of Environment, Great Lakes, and Energy (f/k/a Michigan Department of Environmental Quality), *Fact Sheet: Groundwater Statistics*, https://www.michigan.gov/documents/deq/deq-wd-gws-wcu-groundwaterstatistics_270606_7.pdf (rev. Jan. 2018) (accessed August 19, 2020).

49

266.   Ongoing additional testing continues to reveal further PFAS contamination and injury of groundwater in locations throughout Michigan caused by Defendants' Commercial AFFF.

267.   It is certain that additional testing will reveal further PFAS contamination and injury of groundwater in locations throughout Michigan caused by Defendants' Commercial AFFF.

### 2.   Surface waters.

268.   Surface waters are precious, limited, and invaluable State natural resources that are used for drinking water, irrigation, recreation such as swimming and fishing, and ecological and other important purposes.

269.   The Great Lakes—Superior, Huron, Michigan, Ontario and Erie—comprise the largest body of fresh water on Earth, holding nearly 21% of the world's fresh surface water and more than 84% of North America's fresh surface water.[29]

270.   3,288 miles of Michigan's border is along the shores of Lake Michigan, Lake Superior, Lake Huron, and Lake Erie.[30]

271.   There are also more than 11,000 inland lakes of five acres in size or larger in Michigan.  According to the Michigan Historical Society, a person in

---

[29] U.S. EPA, *Facts and Figures About the Great Lakes*, https://www.epa.gov/greatlakes/facts-and-figures-about-great-lakes (accessed August 19, 2020).

[30] Michigan.gov, *Does Michigan Have the Longest Coast Line in the United States?* https://www.michigan.gov/som/0,4669,7-192-26847-103397--,00.html (accessed August 19, 2020).

Michigan is never more than six miles from an inland lake or more than 85 miles from the shore of the Great Lakes.[31]

272.   Michigan's Great Lakes include some of most majestic natural shorescapes on the planet and the State's tourism and recreation industries are dependent upon clean water, including surface waters.

273.   Michigan's Great Lakes shoreline and its inland lakes are commercially, recreationally, aesthetically, and ecologically important to the State and its residents, including by supporting aquatic ecosystems, and biota such as fish.

274.   Tourism is a significant industry in Michigan.

275.   In 2018, approximately 124.8 million visitors came to Michigan and spent approximately $25.7 billion in the State.

276.   In 2018, the tourism industry supports approximately 6.0% of all jobs in Michigan and generated approximately $2.8 billion in state and local taxes.[32]

277.   A significant portion of Michigan's tourism industry relates to outdoor recreation.

278.   Outdoor recreation is also vitally important to Michigan residents.

279.   A 2017 telephone survey conducted by Public Sector Consultants on behalf of the Michigan Department of Natural Resources established that 54% of

---

[31] Michigan State University, Michigan Inland Lake Partnership, *FAQ*, https://www.canr.msu.edu/michiganlakes/faq (accessed August 19, 2020.)

[32] Tourism Economics, *Economic Impact of Tourism in Michigan*, 2018 p 3, https://medc.app.box.com/s/oheae29l9u5204v6myfviuhph5ax5btp (accessed August 19, 2020).

surveyed individuals swam outdoors in Michigan, 41% of surveyed individuals fished in Michigan, 32% of surveyed individuals canoed, kayaked, used stand-up paddle boards, or went wind surfing in Michigan, and 31% of surveyed individuals used motor boats.[33]

280. Defendants' Commercial AFFF has contaminated and injured the State's surface waters in locations throughout the State.

281. Ongoing additional testing continues to reveal further PFAS contamination and injury of surface waters in locations throughout Michigan caused by Defendants' Commercial AFFF.

282. It is certain that additional testing will reveal further PFAS contamination in surface waters in locations throughout Michigan caused by Defendants' Commercial AFFF.

### 3. Wildlife, soils, and sediment.

283. Wildlife, soil, and sediments are precious, limited, and of great value to State natural resources.

284. Agriculture is one of Michigan's largest industries, contributing billions annually to Michigan's economy.

---

[33] Public Sector Consultants and The Michigan Department of Natural Resources, Michigan Statewide Comprehensive Outdoor Recreation Plan: 2018-2022, p 11, https://publicsectorconsultants.com/wp-content/uploads/2018/09/SCORP2018-2022_Final (accessed August 19, 2020.)

285. Michigan's fish and other wildlife are used for food and recreational purposes, and provide a significant economic benefit to the State, including through tourism and recreation.

286. Injuries to wildlife affect not only individual wildlife, but the entire ecosystem of which they are a part.

287. Soil and sediments are part of or interconnected with the health of the State's natural resources such as surface waters, groundwater, and wildlife, and provide numerous values and services, including but not limited to recreation, tourism, and agriculture.

288. Sediments are important as habitat for wildlife including fish, among other important ecological uses; and soils may contain contaminants that migrate to groundwater.

289. A healthy and functioning ecosystem depends upon the interplay between non-impaired soils, sediments, and wildlife.

290. The State's investigation and response are ongoing given the scope of PFAS contamination from Commercial AFFF and because knowledge of the public health and environmental risks associated with Commercial AFFF is evolving.

291. It is certain that additional testing will reveal further Commercial AFFF contamination and injury of agricultural operations, soils, sediments, and wildlife in locations throughout Michigan.

### CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### LIABILITY UNDER PART 201 OF THE NREPA

**(Against All Defendants)**

292. The State repeats, realleges, and incorporates by reference the allegations contained in Paragraphs 1–291, above, as though fully set forth herein.

293. The purpose of Part 201 of the NREPA is to provide for appropriate response activities to eliminate unacceptable risks to public health, safety, or welfare, or to the environment from environmental contamination at facilities within the State of Michigan. MCL 324.20102(c).

294. Part 201 of the NREPA also allows the State to recover "[d]amages for the full value of injury to, destruction of, or loss of natural resources[.]." MCL 324.20126a(1)(c).

295. Part 201 of the NREPA authorizes the Attorney General, on behalf of the State, to commence a civil action seeking, inter alia, "[t]emporary or permanent injunctive relief necessary to protect the public health, safety, or welfare, or the environment from the release or threat of release," and a "declaratory judgment on liability for future response activity costs and damages." MCL 324.20137(1).

296. PFOA and PFOS are "hazardous substances" under Part 201 of the NREPA. MCL 324.20101(1)(x), and EGLE established groundwater cleanup criteria for these substances under Mich. Admin. Code R 299.6(12), effective January 10, 2018.

297. Commercial AFFF contains PFAS compounds regulated by the State of Michigan, including, but not limited to PFOA and PFOS.

54

298.    PFAS other than those known as PFOA and PFOS may be "hazardous substances" under Part 201 of the NREPA, MCL 324.20101(1)(x), based on EGLE's determination that these substances pose an unacceptable risk to the public health, safety, or welfare, or the environment, considering the fate of the material, dose-response, toxicity, or adverse impact on natural resources.  MCL 324.20101.

299.    The leaking, emitting, discharging, escaping, leaching, dumping and disposal of hazardous substances constitute a "release" or "threat of release" as those terms are defined in MCL 324.20101(1)(pp) and MCL 324.20101(1)(ccc).

300.    PFAS are contained in Commercial AFFF and the release of PFAS from Commercial AFFF requires action under Part 201 of the NREPA.

301.    EGLE has established standards for certain PFAS for exposure pathways including drinking water (see paragraph 204, *supra*), groundwater cleanup (see paragraphs 208 and 296, *supra*), and groundwater-surface water interface.  MCL 324.20120e(1)(a), MCL 324.20120a(5).

302.    As a result of the testing conducted by MPART in 2018 and 2019, the State has discovered that Commercial AFFF is a significant source of PFAS contamination throughout the State.

303.    The levels of PFOA and PFOS from Commercial AFFF in groundwater at and around locations throughout the State exceed the concentrations that satisfy the criteria under Part 201.

55

304. The levels of PFOA and PFOS from Commercial AFFF impacting surface water, soils, and sediments at and around locations throughout the State exceed state standards and criteria.

305. The levels of other PFAS from Commercial AFFF in groundwater at and around locations throughout the State pose an unacceptable risk to the public health, safety, or welfare, or the environment, considering the fate of the material, dose-response, toxicity, or adverse impact on natural resources.

306. Samples taken in groundwater discharging to surface water at and around the locations throughout the State exceed the generic groundwater-surface water interface cleanup criteria for PFOA and PFOS.

307. Locations throughout the State contaminated with PFAS from Commercial AFFF are an area, place, parcel or parcels of property, or portion of a parcel of property where a hazardous substance in excess of the concentrations that satisfy the cleanup criteria for unrestricted residential use has been released, deposited, disposed of, or otherwise comes to be located.

308. MCL 324.20126(1), provides, in pertinent part, that:

Notwithstanding any other provision or rule of law and except as provided in subsections (2), (3), (4), and (5) and section 20128, the following persons are liable under this part:

\*\*\*

    (a) The owner or operator of a facility if the owner or operator is responsible for an activity causing a release or threat of release.

    (b) The owner or operator of a facility at the time of disposal of a hazardous substance if the owner or operator is responsible for an activity causing a release or threat of release.

56

(c) An owner or operator of a facility who becomes an owner or operator on or after June 5, 1995.

\*\*\*

(d) A person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of a hazardous substance owned or possessed by the person, by any other person, at a facility owned or operated by another person and containing the hazardous substance.

\*\*\*

(e) A person who accepts or accepted any hazardous substance for transport to a facility selected by that person.

309. Defendants are responsible for activities causing a release or threat of release of PFAS from Commercial AFFF.

310. Defendants owned or operated one or more locations or facilities throughout the State where PFAS from Commercial AFFF was released.

311. By contract, agreement, or otherwise, Defendants arranged for the disposal or treatment of Commercial AFFF containing PFAS, and/or arranged with a transporter for transport for disposal or treatment of Commercial AFFF containing PFAS, by the third-party purchasers of Commercial AFFF containing PFAS, at facilities owned or operated by other persons, including but not limited to third-party purchasers of Commercial AFFF containing PFAS.

312. Defendants accepted for transport Commercial AFFF containing PFAS to the locations or facilities from which PFAS was released onto or into the State's natural resources and the environment.

57

313.   MCL 324.20126a, provides, in pertinent part, that:

(1) Except as provided in section 20126(2), a person who is liable under
section 20126 is jointly and severally liable for all of the following:

> (a) All costs of response activity lawfully incurred by the
> state relating to the selection and implementation of
> response activity under this part.

> (b) Any other costs of response activity reasonably incurred
> under the circumstances by any other person.

> (c) Damages for the full value of injury to, destruction of,
> or loss of natural resources, including the reasonable costs
> of assessing the injury, destruction, or loss resulting from
> the release.

\*\*\*

(3) The amounts recoverable in an action shall include interest.  This
interest shall accrue from the date payment is demanded in writing, or
the date of expenditure or damage, whichever is later.  The rate of
interest on the outstanding unpaid balance of the accounts recoverable
under this section shall be the same rate as specified in section 6013(8)
of the revised judicature act of 1961, Act No. 236 of the Public Acts of
1961, being section 600.613 of the Michigan Compiled Laws.

\*\*\*

(6) If the department determines that there may be an imminent and
substantial endangerment to the public health, safety, or welfare, or to
the environment because of an actual or threatened release from a
facility, the attorney general may bring an action against any person
who is liable under section 20126 or any other appropriate person to
secure the relief that may be necessary to abate the danger or threat.
The court has jurisdiction to grant such relief as the public interest
and the equities of the case may require.

314.   As a result of releases and threatened releases of hazardous

substances for which Defendants are responsible, the State has incurred and is

continuing to incur response activity costs, including investigation, monitoring, and

enforcement costs, at the facilities.

58

315.   Releases and threatened releases of hazardous substances for which

Defendants are responsible have also caused injury to, destruction of, and loss of the

State's natural resources.

316.   MCL 324.20137(1), provides, in pertinent part, that:

> [I]n addition to other relief authorized by law, the attorney general may, on behalf of the state, commence a civil action seeking one or more of the following:
>
> > (a) Temporary or permanent injunctive relief necessary to protect the public health, safety, or welfare, or the environment from the release or threat of release.
> >
> > (b) Recovery of state response activity costs pursuant to Section 20126a.
> >
> > (c) Damages for the full value of injury to, destruction of, or loss of natural resources resulting from the release or threat of release, including the reasonable costs of assessing the injury, destruction, or loss resulting from the release or threat of release.
> >
> > (d) A declaratory judgment on liability for future response costs and damages.
> >
> > (e) A civil fine of not more than $10,000.00 for each day of noncompliance without sufficient cause with a written request of the department pursuant to section 20114(1)(h). A fine imposed under this subdivision shall be based on the seriousness of the violation and any good faith efforts of the person to comply with this part.
> >
> > (f) A civil fine of not more than $1,000.00 for each day of violation of this part. A fine imposed under this subdivision shall be based upon the seriousness of the violation and any good faith efforts of the person to comply with this part.
> >
> > ***
> >
> > (k) Any other relief necessary for the enforcement of this part.

317. As a result of releases and threatened releases of hazardous substances for which Defendants are responsible, the State has incurred and is continuing to incur response activity costs, including investigation, monitoring, and enforcement.

318. Releases and threatened releases of hazardous substances for which Defendants are responsible has also caused injury to, destruction of, and loss of the State's natural resources.

319. Due to the injury, destruction, and loss of natural resources, Defendants are liable to the State for the cost of restoring, repairing, replacing, or acquiring the equivalent of the natural resources injured or acquiring substitute or alternative resources. MCL 324.20126a(4).

320. Accordingly, under Part 201 of the NREPA, the State seeks to hold Defendants liable for all past and future natural resource damages, loss-of-use damages, response activity costs, costs of investigation, costs of testing and monitoring, costs of providing water from an alternate source, costs of installing and maintaining an early warning system to detect PFAS from Commercial AFFF before it reaches wells, costs of remediating PFAS from Commercial AFFF in natural resources including groundwater, surface waters, soils, sediments, and other natural resources, any other costs or other expenditures incurred to address PFAS contamination from Commercial AFFF in Michigan, interest on the damages according to law, any applicable civil fines, and any other relief necessary for the enforcement of Part 201 to remedy PFAS contamination in Michigan.

321.    The State also seeks a declaratory judgment on Defendants' liability for future response activity costs and damages pursuant to MCL 342.20137(1)(d) including, but not limited to, costs related to providing an alternative water supply, costs related to health assessments or health-effect studies carried out under the supervision, or with the approval of, the Michigan Department of Health and Human Services related to response activities, interest, and oversight of any future response activities that Defendants may perform.

## SECOND CAUSE OF ACTION
## LIABILITY UNDER PART 17 OF THE NREPA

### (Against All Defendants)

322.    The State repeats, realleges, and incorporates by reference the allegations contained in Paragraphs 1–321, above, as though fully set forth herein.

323.    Part 17 of the NREPA authorizes the Attorney General, on behalf of the State, to maintain a civil action "for declaratory and equitable relief against any person for the protection of the air, water, and other natural resources and the public trust in these resources from pollution, impairment, or destruction." MCL 324.1701(1). Part 17 of the NREPA is commonly referred to as the "Michigan Environmental Protection Act."

324.    Part 17 of the NREPA applies to pollution of surface water and groundwater contamination.

325.    As set forth in more detail above, surface water and groundwater have been contaminated at or around numerous locations in Michigan.

326. Part 17 of the NREPA authorizes the Court to grant declaratory and equitable relief, to impose conditions on the defendant to protect the environment, to direct the adoption of antipollution standards, or to remand a case to appropriate administrative proceedings. It allows the court to fashion standards in the context of actual problems as they arise in individual cases.

327. Accordingly, the State seeks to hold Defendants liable for all past and future natural resource damages, loss-of-use damages, response activity costs, costs of investigation, costs of testing and monitoring, costs of providing water from an alternate source, costs of installing and maintaining an early warning system to detect PFAS from Commercial AFFF before it reaches wells, costs of remediating PFAS from Commercial AFFF in natural resources including groundwater, surface waters, soils, sediments, and other natural resources, any other costs or other expenditures incurred to address PFAS contamination from Commercial AFFF in Michigan, interest on the damages according to law, any applicable civil fines, and any other relief necessary for the enforcement of Part 17 to remedy PFAS contamination in Michigan.

328. The State also seeks a declaratory judgment on Defendants' liability for future response activity costs and damages pursuant to MCL 342.20137(1)(d) including, but not limited to, costs related to providing an alternative water supply, costs related to health assessments or health-effect studies carried out under the supervision, or with the approval of, the Michigan Department of Health and

62

Human Services related to response activities, interest, and oversight of any future response activities that Defendants may perform.

### THIRD CAUSE OF ACTION
### LIABILITY UNDER PART 31 OF THE NREPA

#### (Against All Defendants)

329.    The State repeats, realleges, and incorporates by reference the allegations contained in Paragraphs 1–328, above, as though fully set forth herein.

330.    Part 31 of the NREPA, MCL 324.3101 *et seq.*, is Michigan's primary pollution control statute.  Part 31 of the NREPA has the dual purpose of protecting water quality and regulating water-waste disposal.  Under MCL 324.3103(1), the Michigan Department of Natural Resources and Environment has the duty and authority to "protect and conserve the water resources of the state."  "Waters of the state" includes both surface and underground waters.

331.    MCL 324.3115(1) provides that the Attorney General may commence a civil action for appropriate relief, including a permanent or temporary injunction, for violations of Part 31 of the NREPA or its implementing rules.

332.    MCL 324.3109(1) prohibits the direct or indirect discharge of any substance into the waters of the State that is or may become injurious to:  (a) "the public health, safety, or welfare"; (b) "domestic, commercial, industrial, agricultural, recreational, or other uses that are being made or may be made of such waters"; (c) "the value or utility of riparian lands"; (d) "livestock, wild animals, birds, fish,

aquatic life, or plants or to their growth, or propagation"; and (e) "the value of fish and game."

333.    "'Waters of the state' means groundwaters, lakes, rivers, and streams and all other watercourses and waters, including the Great Lakes within the jurisdiction of [the State of Michigan.]" MCL 324.3101(aa).

334.    Through their distribution, sale, release, supply, transport, arrangement for disposal or treatment, handling, and/or use of Commercial AFFF in Michigan, Defendants have directly or indirectly caused PFAS from Commercial AFFF to be discharged into the waters of the state, and these discharges are or may become injurious to public health, fish, plants, aquatic life, and other designated uses of the waters of the state and, therefore, these practices are in violation of MCL 324.3109.

335.    A violation of MCL 324.3109 is prima facie evidence of the existence of a public nuisance and "may be abated according to law in an action brought by the attorney general in a court of competent jurisdiction." MCL 324.3109(6).

336.    The State is entitled to relief requiring Defendants to take such action as may be necessary to abate the injurious PFAS from Commercial AFFF discharged to the waters of the State as defined in Part 31 of the NREPA.

337.    The State further seeks statutory penalties, fines, and any other relief available under Part 31.

338.    In addition, Defendants knew or should have known that they directly or indirectly discharged substances that are or may become injurious to public

64

health, fish, plants, aquatic life, and other designated uses of the waters of the State.

339. As a result, the value of the natural resources of the State have been significantly damaged. In addition, the State has incurred, and continues to incur, costs of surveillance and enforcement resulting from the violations of Part 31.

340. Accordingly, the State seeks to hold Defendants liable for all past and future natural resource damages, loss-of-use damages, response activity costs, costs of investigation, costs of testing and monitoring, costs of providing water from an alternate source, costs of installing and maintaining an early warning system to detect PFAS from Commercial AFFF before it reaches wells, costs of remediating PFAS from Commercial AFFF in natural resources including groundwater, surface waters, soils, sediments, and other natural resources, any other costs or other expenditures incurred to address PFAS contamination from Commercial AFFF in Michigan, interest on the damages according to law, any applicable civil fines, and any other relief necessary for the enforcement of Part 31 to remedy PFAS contamination in Michigan.

341. The State also seeks a declaratory judgment on Defendants' liability for future response activity costs and damages pursuant to MCL 342.20137(1)(d) including, but not limited to, costs related to providing an alternative water supply, costs related to health assessments or health-effect studies carried out under the supervision, or with the approval of, the Michigan Department of Health and

65

Human Services related to response activities, interest, and oversight of any future response activities that Defendants may perform.

## FOURTH CAUSE OF ACTION
## TRESPASS

### (Against All Defendants)

342. The State repeats, realleges, and incorporates by reference the allegations contained in Paragraphs 1–341, above, as though fully set forth herein.

343. The Commercial AFFF that Defendants distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used affecting the State's property and its groundwater, surface waters, fish, wildlife, marine resources, and other natural resources constitutes an unauthorized direct and immediate physical intrusion of property in which the State and/or a substantial number of its residents have exclusive possessory interests.

344. · The trespass of Commercial AFFF, which contains PFAS, alleged herein has varied over time and has not ceased.

345. The Commercial AFFF that Defendants distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used continues to be located on or in the State's property and its groundwater, surface water, fish, wildlife, marine resources, and other natural resources.

346. Defendants intended to distribute, sell, release, supply, transport, arrange for disposal or treatment, handle, and/or use Commercial AFFF, which contains PFAS, and Defendants knew with substantial certainty that their acts

66

would contaminate the State's property and its surface waters and groundwater, fish, wildlife, marine resources, and other natural resources.

347. Defendants are liable for trespass.

348. The trespass has caused significant harm resulting from Defendants' unreasonable interference with the use or enjoyment of the State's property and its surface waters and groundwater, fish, wildlife, marine resources, and other natural resources.

349. The State has not consented to and does not consent to the trespass alleged herein.

350. The State brings this claim as the exclusive owner of the property and interests in property, as well as in both its public trustee and *parens patriae* capacities.

351. The State has a duty to protect and restore its natural resources and protect the health and comfort of its residents.

352. In its *parens patriae* capacity, the State may protect its quasi-sovereign interests, including the State's interest in the well-being of its residents, as well as its residents' interest in the integrity of the State's natural resources.

353. Accordingly, the State is bringing this action for the invasion of its exclusive possessory interests in the State's natural resources, in addition to its residents' interest in the integrity of the State's natural resources.

354. As long as the State's property and natural resources remain contaminated due to Defendants' conduct, the trespass continues and is ongoing.

67

355. As a direct and proximate result of Defendants' acts and omissions as alleged herein, the State and its residents, which it represents *parens patriae*, have suffered monetary losses and damages in an amount to be proven at trial.

356. As a direct and proximate result of the Defendants' acts and omissions as alleged herein, the State seeks to hold Defendants liable for all past and future natural resource damages, loss-of-use damages, response activity costs, costs of investigation, costs of testing and monitoring, costs of providing water from an alternate source, costs of installing and maintaining an early warning system to detect Commercial AFFF containing PFAS before it reaches wells, costs of remediating Commercial AFFF containing PFAS from natural resources including groundwater, surface waters, soils, sediments, and other natural resources, any other costs or other expenditures incurred to address contamination from Commercial AFFF containing PFAS in Michigan, interest on the damages according to law, any applicable civil fines, and any other relief necessary to remedy PFAS contamination from Commercial AFFF.

### FIFTH CAUSE OF ACTION
### PUBLIC NUISANCE

#### (Against All Defendants)

357. The State repeats, realleges, and incorporates by reference the allegations contained in Paragraphs 1–356, above, as though fully set forth herein.

358. Defendants distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Commercial AFFF, which contains

PFAS, in a manner that created or participated in creating a public nuisance that unreasonably interferes, endangers, or injures the property, health, safety, and welfare of the general public and the State of Michigan.

359. Defendants, by their negligent, reckless, and willful acts and omissions as set forth above, have, among other things, knowingly unleashed Commercial AFFF PFAS contamination in State natural resources and property throughout Michigan, having concealed the threat, thereby causing and threatening to cause Commercial AFFF PFAS contamination of the State's natural resources and property. Defendants' PFAS continues to spread in and contaminate more State natural resources and property throughout the State.

360. Each Defendant has caused, contributed to, maintained, and/or participated in a public nuisance by substantially and unreasonably interfering with, obstructing and/or threatening, among other things: (a) Michigan residents' common public rights to enjoy State natural resources and property free from unacceptable health risk, pollution, and contamination; and (b) the State's *parens patriae* and public trust abilities to protect, conserve, and manage the State's natural resources.

361. Each Defendant has, at all times relevant to this action, caused, contributed to, maintained, and/or participated in the creation of such public nuisance. Among other things, each Defendant is a substantial contributor to such public nuisance as follows:

69

(a) Defendants distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, used, and/or otherwise placed into the stream of Commercial AFFF, which contains PFAS, when they knew, or reasonably should have known, that PFAS would escape from Commercial AFFF and contaminate State natural resources and property;

(b) Defendants distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, used, and/or otherwise placed into the stream of commerce Commercial AFFF, which contains PFAS, that was delivered into the State (and areas affecting the State's natural resources and property), when they knew, or reasonably should have known, that PFAS contained in Commercial AFFF would be released readily into the environment during the normal, intended, and foreseeable uses of Commercial AFFF, and when released, PFAS contained in Commercial AFFF would persist in the environment and not break down, contaminate State natural resources and property, including soils, sediments, groundwater, surface waters, wildlife, and drinking water supplies, and, ultimately, be difficult and costly to remove; and

(c) Defendants distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, used, and/or otherwise placed into the stream of commerce Commercial AFFF, which contains PFAS, that was delivered into the State (and areas affecting the State's natural resources and property), when they knew, or reasonably should have known, that PFAS contained in Commercial AFFF posed substantial risks to public health.

70

362. Defendants also had firsthand knowledge and experience regarding releases of PFAS contained in Commercial AFFF to the environment, including groundwater and other natural resources.

363. Despite their knowledge that contamination of the State's natural resources and property with PFAS contained in Commercial AFFF was the inevitable consequence of their conduct, Defendants failed to provide adequate warnings or special instructions, failed to take any other reasonable precautionary measures to prevent or mitigate such contamination, and/or affirmatively misrepresented the hazards of PFAS in their product information and/or instructions for use.

364. Defendants knew, or in the exercise of reasonable care should have known, that the introduction and use of Commercial AFFF would unreasonably and seriously endanger, injure, and interfere with the ordinary comfort, use, and enjoyment of natural resources and property relied upon by the State and its residents, as it has.

365. Defendants have caused, contributed to, maintained, and/or participated in a public nuisance that has caused substantial injury to the State's natural resources and property, in which the public has interests represented by and protected by the State in its trustee and *parens patriae* capacities. Defendants' conduct also threatens to cause substantial additional injury to the State's natural resources and property. The public nuisance has caused and/or continues to threaten to cause substantial injury to property directly owned by the State.

71

366. The contamination of the State's natural resources and property with Defendants' PFAS-containing Commercial AFFF is ongoing. PFAS from Commercial AFFF continues to threaten, migrate into, and enter the State's natural resources and property, and cause new contamination in new locations.

367. As a direct and proximate result of Defendants' acts and omissions, the State's natural resources and property are contaminated with PFAS from Commercial AFFF.

368. The State has incurred, is incurring, and will incur, investigation, remediation, cleanup, restoration, removal, treatment, monitoring, and other costs and expenses related to contamination of the State's natural resources and property.

369. Defendants' acts and omissions have caused and/or threatened to cause injuries to the State's natural resources and property that are indivisible.

370. As a direct and proximate result of the Defendants' acts and omissions as alleged herein, the State seeks to hold Defendants liable for all past and future natural resource damages, loss-of-use damages, response activity costs, costs of investigation, costs of testing and monitoring, costs of providing water from an alternate source, costs of installing and maintaining an early warning system to detect Commercial AFFF containing PFAS before it reaches wells, costs of remediating Commercial AFFF containing PFAS from natural resources including groundwater, surface waters, soils, sediments, and other natural resources, any other costs or other expenditures incurred to address contamination from

72

Commercial AFFF containing PFAS in Michigan, interest on the damages according to law, any applicable civil fines, and any other relief necessary to remedy PFAS contamination from Commercial AFFF.

## SIXTH CAUSE OF ACTION
## UNJUST ENRICHMENT

### (Against All Defendants)

371.   The State repeats, realleges, and incorporates by reference the allegations contained in Paragraphs 1–370, above, as though fully set forth herein.

372.   By common law and the principles of justice, a person or entity may not be inequitably enriched by receiving a benefit at another's expense.

373.   The principles of unjust enrichment are violated where a party steps in to address a duty owed by another to the public to protect the public from an urgent threat to their health, safety, or general welfare and pays expenses that rightfully should have been paid by the other person.

374.   As described herein, Defendants have obtained revenue and profits from the production, sale, and use of Commercial AFFF, which contains PFAS, which has resulted in PFAS contamination in the State of Michigan.

375.   To address Commercial AFFF PFAS contamination in the State of Michigan in order to protect its residents and natural resources, the State has incurred, and continues to incur, substantial costs in investigating and responding to Commercial AFFF PFAS contamination throughout the State of Michigan.

376. Defendants have been unjustly enriched because they received a benefit from the State's response activities and did not have to incur their own costs to investigate and remediate the PFAS contamination caused by or related to the production, sale, use, and disposal of Commercial AFFF.

377. The principles of justice and established common law require Defendants to reimburse the State for performing a duty properly owed by Defendants as a result of their conduct, as alleged herein.

## REQUEST FOR RELIEF

WHEREFORE, the State of Michigan, by and through the Michigan Attorney General Dana Nessel, respectfully seeks entry of judgment in its favor and against Defendants for:

A. Compensatory damages arising from contamination from PFAS from Commercial AFFF and injury of State natural resources and property, including groundwater, surface waters, drinking water supplies, biota, wildlife (including fish), and their associated soils, sediments, and uses, and other State natural resources and property, according to proof, including, but not limited to:

    (i)    natural resource damages;

    (ii)    loss-of-use damages;

    (iii)    past and future response activity costs;

    (iv)    costs of investigation;

    (v)    costs of testing and monitoring;

    (vi)    costs of providing water from an alternate source;

74

     (vii)   costs of installing and maintaining an early warning system to detect PFAS from Commercial AFFF before it reaches wells;

     (viii)  costs of remediating PFAS from Commercial AFFF in natural resources including groundwater, surface waters, soils, sediments, and other natural resources;

     (ix)   remedial action, including cleanup of PFAS contamination from Commercial AFFF;

     (x)    any other costs or other expenditures incurred to address PFAS contamination and injury from Commercial AFFF; and

     (xi)   interest on the damages according to law;

B.     Temporary or permanent injunctive relief necessary to protect the public health, safety, or welfare, or the environment from the release or threat of release of PFAS from Commercial AFFF pursuant to MCL 324.20137(1)(a);

C.     Damages for the full value of injury to, destruction of, or loss of natural resources resulting from the release or threat of release, including the reasonable costs of assessing the injury, destruction, or loss resulting from the release or threat of release of PFAS from Commercial AFFF pursuant to MCL 324.20137(1)(c) and MCL 324.20126a(1)(c);

D.     Civil fines pursuant to MCL 324.20137(1)(e) and (f);

E.     Any other relief necessary for the State to enforce Part 201 of the NREPA pursuant to MCL 20137(1)(k);

F.      Injunctive and equitable relief to compel Defendants to abate the
continuing nuisance and trespass by enjoining the further use, sale, distribution,
and discharge of Commercial AFFF containing PFAS in the State and compelling
Defendants to remove PFAS from Commercial AFFF from State natural resources
and property pursuant to MCL 324.3109(6).

G.      Statutory penalties and fines pursuant to MCL 324.3115(1), (2), (3),
and/or (4).

H.      Damages for the full value of the injuries done to the natural resources
of the State and the costs of surveillance and enforcement by the State resulting
from Defendants' violations of Part 31 of the NREPA pursuant to MCL
324.3115(2);

I.      Punitive damages and such other damages as allowed by statute;

J.      Costs (including reasonable attorney fees, court costs, and other
reasonable litigation expenses);

K.      Prejudgment interest; and

L.      Any other and further relief as the Court deems just, proper, and
equitable.

**Plaintiffs demand a trial by jury on all claims so triable.**

Respectfully submitted,

Dana Nessel
Attorney General

*/s/ Amy E. Keller*
Amy E. Keller (P74015)
Adam J. Levitt

76

Special Assistant Attorneys General
Daniel R. Flynn
Laura E. Reasons
Mary McKenna
Adam Prom
DiCello Levitt Gutzler LLC
10 North Dearborn Street, 6th Floor
Chicago, IL 60602
(312) 214-7900
akeller@dicellolevitt.com
alevitt@dicellolevitt.com
dflynn@dicellolevitt.com
lreasons@dicellolevitt.com
mmckenna@dicellolevitt.com
aprom@dicellolevitt.com

Gregory M. Utter
Joseph M. Callow, Jr.
Special Assistant Attorneys General
Sarah V. Geiger
Collin L. Ryan
Joseph B. Womick
Keating Muething & Klekamp PLL
1 East 4th Street, Suite 1400
Cincinnati, OH 45202
(513) 579-6400
gmutter@kmklaw.com
jcallow@kmklaw.com
mallen@kmklaw.com
sgeiger@kmklaw.com
cryan@kmklaw.com
jwomick@kmklaw.com

Richard W. Fields
Special Assistant Attorney General
Martin F. Cunniff
Fields PLLC
1901 L St., N.W.
Suite 700
Washington, D.C. 20036
Fields@fieldslawpllc.com
MartinCunniff@fieldslawpllc.com

Polly A. Synk (P63473)
Danielle Allison-Yokom (P70950)

Assistant Attorneys General
Michigan Department of Attorney
General
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
synkp@michigan.gov
allisonyokomd@michigan.gov

Dated: August 20, 2020.

10203349.1

STATE OF MICHIGAN
CIRCUIT COURT FOR THE 30TH JUDICIAL CIRCUIT
INGHAM COUNTY

ATTORNEY GENERAL DANA NESSEL, on
behalf of the People of the State of Michigan,
and the STATE OF MICHIGAN,

No. 2020-_____-

HON.

   Plaintiffs,

v

**JURY DEMAND**

CHEMGUARD, INC., TYCO FIRE
PRODUCTS, LP, NATIONAL FOAM, INC.,
ANGUS FIRE ARMOUR CORPORATION,
KIDDE P.L.C., INC., KIDDE-FENWAL, INC.,
RAYTHEON TECHNOLOGIES
CORPORATION, UTC FIRE & SECURITY
AMERICAS CORPORATION, INC.,VULCAN
FIRE SYSTEMS, INC., HUNTINGTON
LABORATORIES, INC., ECOLAB INC.,
MINE SAFETY APPLIANCES COMPANY,
LLC, VERDE ENVIRONMENTAL, INC., a/k/a
MICRO-BLAZE, INC., HARTFORD
CHEMICAL SALES CORPORATION, G.V.C.
CHEMICAL CORPORATION, STEVENS
COMPANY, INC., HAZARD CONTROL
TECHNOLOGIES, INC., FIRE-ADE, INC.,
ROCKWOOD SYSTEMS, INC., f/k/a
ROCKWOOD SYSTEMS CORPORATION,
COBRA FIRE PROTECTION, INC., BROCO
PRODUCTS, INC., PIONEER PRODUCTS,
INC., DENKO, INC., a/k/a DENKO FOAM,
INC., RUSSELL MARTIN INDUSTRIES, Inc.
DAWN CHEMICAL CORPORATION OF
WISCONSIN, INC., AMEREX
CORPORATION, PERIMETER SOLUTIONS
LP, NOBLE INDUSTRIAL SUPPLY
CORPORATION, ROYAL CHEMICAL
COMPANY, VST CHEMICAL
CORPORATION, SUMMIT
ENVIRONMENTAL CORPORATION, INC.,
FIRE SERVICES PLUS, INC., BUCKEYE
FIRE EQUIPMENT COMPANY.

Defendants.

Dana Nessel
Attorney General
Polly A. Synk (P63473)
Danielle Allison-Yokom (P70950)
Assistant Attorneys General
Michigan Department of Attorney General
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
synkp@michigan.gov
allisonyokomd@michigan.gov

Gregory M. Utter
Joseph M. Callow, Jr.
Special Assistant Attorneys
General
Matthew M. Allen
Sarah V. Geiger
Collin L. Ryan
Joseph B. Womick
Keating Muething & Klekamp
PLL
1 East 4th Street, Suite 1400
Cincinnati, OH 45202
(513) 579-6400
gmutter@kmklaw.com
jcallow@kmklaw.com
mallen@kmklaw.com
sgeiger@kmklaw.com
cryan@kmklaw.com
jwomick@kmklaw.com

Adam J. Levitt
Amy E. Keller (P74015)
Special Assistant Attorneys General
Daniel R. Flynn
Laura E. Reasons
Adam Prom
DiCello Levitt Gutzler LLC
10 North Dearborn Street, 6th Floor
Chicago, IL 60602
(312) 214-7900
alevitt@dicellolevitt.com
akeller@dicellolevitt.com
dflynn@dicellolevitt.com
lreasons@dicellolevitt.com
aprom@dicellolevitt.com

Richard W. Fields
Special Assistant Attorney
General
Martin F. Cunniff
Fields, PLLC
1901 L St., N.W. Suite 700,
Washington, D.C. 20036 (800)
878-1432
fields@fieldslawpllc.com
martincunniff@fieldslawpllc.com

## JURY DEMAND

Pursuant to MCR 2.508(B)(1), Plaintiffs, Attorney General Dana Nessel, on behalf of the People of the State of Michigan, hereby demands a trial by jury of all issues so triable as a matter of right.

Respectfully submitted,

Dana Nessel
Attorney General

*/s/ Amy E. Keller*
Amy E. Keller (P74015)
Adam J. Levitt
Special Assistant Attorneys General
Daniel R. Flynn
Laura E. Reasons
Adam Prom
DiCello Levitt Gutzler LLC
10 North Dearborn Street, 6th Floor
Chicago, IL 60602
(312) 214-7900
akeller@dicellolevitt.com
alevitt@dicellolevitt.com
dflynn@dicellolevitt.com
lreasons@dicellolevitt.com
aprom@dicellolevitt.com

Gregory M. Utter
Joseph M. Callow, Jr.
Special Assistant Attorneys General
Sarah V. Geiger
Collin L. Ryan
Joseph B. Womick
Keating Muething & Klekamp PLL
1 East 4th Street, Suite 1400
Cincinnati, OH 45202
(513) 579-6400
gmutter@kmklaw.com
jcallow@kmklaw.com
mallen@kmklaw.com
sgeiger@kmklaw.com

cryan@kmklaw.com
jwomick@kmklaw.com

Richard W. Fields
Special Assistant Attorney General
Martin F. Cunniff
Fields PLLC
1901 L St., N.W.
Suite 700
Washington, D.C. 20036
Fields@fieldslawpllc.com
MartinCunniff@fieldslawpllc.com

Polly A. Synk (P63473)
Danielle Allison-Yokom (P70950)
Assistant Attorneys General
Michigan Department of Attorney
General
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
synkp@michigan.gov
allisonyokomd@michigan.gov

Dated:  August 21, 2020.
10206010.1