## BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: Aqueous Film-Forming Foams (AFFF) Products Liability Litigation | MDL No. 2873 This Document Relates To: *Nessel, et al. v. 3M Co., et al.*, No. 1:21-cv-00205 (W.D. Mich.) |

## MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER
## TAG-ALONG ACTION *NESSEL V. 3M CO.* TO THE *IN RE AFFF* MDL

This is one of three related actions that the State of Michigan and its Attorney General Dana Nessel ("Plaintiffs") have brought against various Defendants for alleged contamination of groundwater and other natural resources with per- or polyfluoroalkyl substances ("PFAS"), including perfluorooctane sulfonate ("PFOS") and/or perfluorooctanoic acid ("PFOA"). All three seek to "recover the funds and resources necessary for Michigan to continue identifying, monitoring, and remediating" such contamination "*throughout the State*." Ex. 1, Complaint, p. 1 (emphasis added); *compare with* Ex. 2, Complaint, p. 1, *Nessel v. E.I. Du Pont de Nemours and Co., et al.*, No. 1:20-cv-00787, ECF No. 1 (W.D. Mich.) ("putative MilSpec AFFF" complaint); Ex. 3, Complaint, p. 1, *Nessel v. Chemguard, Inc., et al.*, 1:20-cv-1080, ECF 1-1 (W.D. Mich.) ("putative commercial AFFF" complaint). Plaintiffs' other two cases have already been transferred to MDL No. 2873. *See* Dkt. 687, Dkt. 866.[1] As described in the Panel's recent Transfer Order (Dkt. 866), the other two cases purport to seek recovery for alleged "PFAS" stemming specifically from aqueous film-forming foams ("AFFF"). Defendants 3M Company, E.I. Du Pont De Nemours and Company, The Chemours Company, The Chemours Company FC,

---

[1] Unless identified by another case number, references to "Dkt. __" are to the Panel's docket for MDL 2873.

LLC, DowDupont, Inc., Corteva, Inc., Dupont de Nemours, Inc., AGC Chemicals Americas, Inc., and Archroma U.S., Inc. ("Moving Defendants") now move to transfer this action to the *In re AFFF* MDL as well.

Transfer is plainly warranted under the Panel's prior transfer orders. In its initial Transfer Order, the Panel concluded that all "the AFFF actions" then before it should be transferred to the MDL. *In re AFFF Prods. Liab. Litig.*, 357 F. Supp.3d 1391, 1395 (J.P.M.L. 2018). Since then, the Panel has held that cases should be transferred where a plaintiff asserts that the contamination at issue stems at least in part from AFFF, even if the plaintiff "alleges additional sources of contamination" as well (Dkt. 483, at 2; Dkt. 446, at 2); ordered transfer of multiple cases brought by sovereign States "so long as the action involves facts common to the MDL proceeding" (Dkt. 384, at 2; *see also* Dkt. 650); and, in its recent Order transferring these Plaintiffs' putative commercial AFFF case, reiterated its "reject[ion]" of a plaintiff's attempt "to split its claims into AFFF and non-AFFF complaints and thereby maintain an action outside the MDL" (Dkt. 866, at 4 (citing Dkt. 691, at 2)). These Panel precedents support transfer here for two primary reasons.

First, it is now apparent from Plaintiffs' own discovery responses that AFFF is at issue in this case, just as in the two putative "AFFF" actions brought by these Plaintiffs that have already been transferred. Although Plaintiffs' complaint in this case purports to plead a completely litigation-driven definition of "PFAS" that excludes AFFF, and thus purports to seek recovery only for PFAS contamination from putative "non-AFFF" sources, Plaintiffs have since served verified discovery responses that expressly identify multiple sites as at issue *in this case* and as having contamination *from AFFF*. Transfer is warranted on this basis alone. As Plaintiffs themselves have put alleged contamination from AFFF at issue, this case is no different from

others the Panel has transferred where contamination from both non-AFFF and AFFF sources was asserted. *See* Dkt. 483, at 2; Dkt. 446, at 2. And because AFFF is at issue, there can be no denying that—like all the other cases already transferred—this case "involves facts common to the MDL proceeding." Dkt. 384, at 2. As in their two putative "AFFF" cases, Plaintiffs here seek to recover for alleged contamination of groundwater and other natural resources throughout Michigan—indeed, the prayer for relief and many substantive allegations in all three cases are identical—and discovery responses served thus far by Plaintiffs show that PFAS contamination from AFFF and non-AFFF sources will overlap at multiple locations at issue.

Second, transfer is also warranted because—as the Panel recently explained in transferring Plaintiffs' putative commercial AFFF action to the MDL—a plaintiff may not "split its claims into AFFF and non-AFFF complaints and thereby maintain an action outside the MDL." Dkt. 866, at 4. But that is, again, exactly what Plaintiffs have attempted to do here. Moreover, the concern about resulting inefficiency that the Panel expressed in transferring Plaintiffs' putative commercial AFFF case—that "it would [be] inefficient for plaintiffs' commercial AFFF action to proceed separately from its Mil-Spec AFFF action" (*id.*)—applies with equal force here. Indeed, the U.S. District Court has already concluded in assigning this case to Judge Paul Maloney that this case is in fact "related" to the prior "AFFF" actions that were in front of him before they were transferred, confirming that Plaintiffs' efforts to split their claims to avoid removal and transfer should now be rejected by this Panel.

## BACKGROUND

This action was filed on January 14, 2020 in the State of Michigan Circuit Court for the 22nd Judicial Circuit, Washtenaw County, and was then transferred by that court to the State of Michigan Circuit Court for the 17th Judicial Circuit, Kent County. *See* Ex. 1, Docket Sheets and

Complaint. Plaintiffs generally allege that Defendants have "designed, marketed, developed, distributed, sold, manufactured, released, supplied, transported, arranged for disposal or treatment of, handled, and/or used PFAS and/or PFAS-containing products in Michigan" that allegedly have contaminated "the State's natural resources and property." Ex. 1, Complaint ¶ 100. Plaintiffs also purport to allege that "PFAS as defined in this Complaint does *not* include aqueous film-forming foams (AFFFs) of any kind or type containing PFOA and/or PFOS, or otherwise." *Id*. ¶ 19. But Plaintiffs repeatedly allege that they seek damages resulting from "*PFAS*" contamination "*throughout the State*" (*id*., p. 1 & ¶¶ 406-408, 419-420, 435, 446, 448, 555 (emphases added)), including damages for contamination of groundwater and surface waters (*id*. ¶¶ 414-437), which allegedly affect (among other things) the State's agriculture, tourism, and recreation industries (*id*. ¶¶ 418, 439-41). Plaintiffs also seek damages for PFAS contamination "at yet to be identified locations." *E.g.*, *id*. ¶ 404. They further allege that PFAS "continue to move through the environment and contaminate and injure State natural resources and property." *Id*. ¶ 448; *see also id.* ¶ 539. Among other remedies, Plaintiffs seek "[c]ompensatory damages arising from PFAS contamination and injury of State natural resources and property, including groundwater, surface waters, drinking water supplies, biota, wildlife (including fish), and their associated soils, sediments, and uses, and other State natural resources and property." *Id*., p. 109. Plaintiffs assert claims under Michigan's Natural Resources and Environmental Protection Act ("NREPA"), and for negligence, trespass, public nuisance, and unjust enrichment. *Id.* ¶¶ 457-557.

On August 20, 2020, Plaintiffs filed two additional actions seeking to recover for alleged PFAS contamination of groundwater and other natural resources throughout Michigan. First, Plaintiffs filed a suit against Moving Defendants and others in the U.S. District Court for the

Western District of Michigan for damages from "PFAS" contamination allegedly caused by the use of military specification AFFF ("MilSpec AFFF"). *See* Ex. 2, Complaint, p. 1. That case was assigned to U.S. District Court Judge Paul L. Maloney. The Complaint defines "PFAS" broadly as "perfluoroalkyl and polyfluoroalkyl substances." *Id.* The defendants named there include most Defendants named in this putative "non-AFFF" case.[2] Again, Plaintiffs sought damages resulting from PFAS contamination "*throughout the State*" (*id*., p. 1 & ¶¶ 291-292, 295, 308-310, 321-322, 337, 401-406, 409, 458, 474 (emphasis added)), including damages for contamination of groundwater and surface waters and "at yet to be identified sites" that allegedly affect (among other things) the State's agriculture, tourism, and recreation industries. *Id*. ¶¶ 316-339. And Plaintiffs again sought "[c]ompensatory damages arising from PFAS contamination and injury of State natural resources and property, including groundwater, surface waters, drinking water supplies, biota, wildlife (including fish), and their associated soils, sediments, and uses, and other State natural resources and property." *Id*., p. 100. Plaintiffs asserted claims under the Resource Conservation and Recovery Act ("RCRA"), under NREPA, and for trespass, nuisance, unjust enrichment, and strict liability. *Id*. ¶¶ 378-494. On September 11, 2020, the Panel transferred that action, without objection by Plaintiffs, to the MDL. Dkt. 687.

Also on August 20, 2020, Plaintiffs filed a lawsuit against AFFF "manufacturers" in the State of Michigan Circuit Court for the 30th Judicial Circuit, Ingham County, purportedly asserting claims for injuries allegedly caused by PFAS from "[c]ommercial" or non-"Mil-Spec"

---

[2] Thirteen of the seventeen Defendants named in the Complaint in this putative "non-AFFF" case were named as defendants in Plaintiffs' putative MilSpec AFFF case. Those Defendants included 3M, E.I. Du Pont de Nemours and Company, The Chemours Company, The Chemours Company FC, LLC, DowDupont, Inc., Corteva, Inc., Dupont de Nemours, Inc., Archroma U.S., Inc., Arkema, Inc., AGC Chemicals Americas Inc., Daikin America, Inc., Solvay Specialty Polymers USA, LLC, and Dyneon, LLC (which was a Delaware limited liability corporation but has not existed since 2011).

AFFF. *See* Ex. 3, Complaint, p. 1 & ¶¶ 5-6. The Complaint in this case likewise defines "PFAS" as "perfluoroalkyl and polyfluoroalkyl substances." *Id.*, p. 1. A third time, Plaintiffs sought damages resulting from PFAS contamination "*throughout the State*" (*id.*, p. 1 & ¶¶ 151, 234-235, 238, 251-253, 264-265, 280, 302-307, 310, 359, 375 (emphasis added)), and pleaded identical allegations relating to damages from contamination of groundwater and surface waters, including "at yet to be identified sites," and their resulting impact on the State's agriculture, tourism, and recreation industries. *Id.* ¶¶ 259-282. Yet again, Plaintiffs sought compensatory damages arising from PFAS contamination of "State natural resources and property, including groundwater, surface waters, drinking water supplies, biota, wildlife (including fish), and their associated soils, sediments, and uses, and other State natural resources and property." *Id.*, p. 74. Plaintiffs asserted claims under NREPA and for trespass, public nuisance, and unjust enrichment. *Id.* ¶¶ 292-377.

Certain defendants removed Plaintiffs' putative commercial AFFF action to the U.S. District Court for the Western District of Michigan based on federal officer jurisdiction on the ground that the alleged PFAS contamination arose in part from MilSpec AFFF, and defendants intended to assert the federal government contractor defense against Plaintiffs' claims. Judge Maloney was assigned to the case upon determination that it was related to these Plaintiffs' putative MilSpec AFFF case. Plaintiffs moved to remand the action to state court, contending that the complaint did not seek damages from MilSpec AFFF. Motion to Remand, *Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, ECF No. 25; *see* Ex. 3, Complaint, ¶ 5 ("This Complaint does not seek to remedy contamination caused by the release of Mil-Spec AFFF."). Judge Maloney denied Plaintiffs' motion to remand. He held "that Plaintiffs' artful pleading does not obviate the facts on the ground," noting that "*Plaintiffs admit* that Defendants produced MilSpec AFFF and that PFAS from AFFF spread contamination throughout the state." *Nessel v.*

*Chemguard, Inc.*, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021) (emphasis added). Over Plaintiffs' objection, the Panel then transferred that case, too, to the MDL. Dkt. 866. In its Transfer Order, the Panel explained that "it seems likely that plaintiffs' commercial AFFF and Mil-Spec AFFF actions will share common factual questions, as both involve contamination of the same groundwater in the State of Michigan"; it had "previously rejected an attempt by a water authority to split its claims into AFFF and non-AFFF complaints and thereby maintain an action outside the MDL"; and "it would [be] inefficient for plaintiffs' commercial AFFF action to proceed separately from its Mil-Spec AFFF action." *Id*. at 4 (citing *Nessel*, 2021 WL 744683).

On January 28, 2021, in state-court proceedings in this putative "non-AFFF" case, Plaintiffs served their Objections and Responses to Defendant Daikin America, Inc.'s First Set of Interrogatories and Requests for Admission (attached as Exhibit 4) ("January 28 discovery responses"). Plaintiffs' January 28 discovery responses disclosed the identities of sites at which Plaintiffs are seeking to recover damages *in this case* from alleged PFAS contamination. Plaintiffs identified a number of sites at which they claimed that the alleged PFAS contamination arose from *both* alleged "PFAS" (*i.e.*, putatively non-AFFF) as well as alleged "AFFF" sources. Ex. 4, at 40 ("RACER Willow Run," "Roosevelt Refinery," and "Flint Bishop International Airport Landfill"); *id*. at 41 ("Melvindale Sewer").

On March 1, 2021, Defendant 3M Company removed this action to federal court based on federal officer jurisdiction. *See* Ex. 5, Notice of Removal, *Nessel v. 3M Co.*, No. 1:2021-cv-00205, ECF No. 1 (W.D. Mich.). 3M averred that Plaintiffs had claimed in their putative MilSpec AFFF action in the MDL that the contamination at the RACER Willow Run site that Plaintiffs put at issue in *this* case arises, at least in part, from MilSpec AFFF; that MilSpec AFFF is a plausible source of the alleged PFAS contamination at other "PFAS" sites identified by

Plaintiffs in their January 28 discovery responses in this case; and that 3M intended to assert a federal government contractor defense to Plaintiffs' claims. *Id*. at ¶¶ 22-27. Judge Maloney was assigned to the case based upon a determination that it was related to both the putative MilSpec AFFF and putative commercial AFFF cases brought by Plaintiffs. *See* No. 1:2021-cv-00205, ECF No. 3 (memorandum of related case); *id*., ECF No. 4 (notice of judicial assignment).

On March 2, 2021, 3M identified this action to the Panel as a potential tag-along action. Dkt. 915. On March 3, 2021, the Panel Clerk issued a text-only entry stating that the Clerk had determined, without explanation, that this action is "not appropriate for inclusion in this MDL." Dkt. 916. Moving Defendants bring this motion to transfer pursuant to JPML Rule 7.1(b)(i).

## THIS CASE SHOULD BE TRANSFERRED TO THE MDL

Under its prior orders in the *In re AFFF* MDL, the Panel should transfer *Nessel v. 3M Co.* for two independent reasons. First, because Plaintiffs have now put contamination from AFFF sources at issue in this case, this case is an "AFFF" action that should be transferred to the MDL under the Panel's initial Transfer Order and subsequent Transfer Orders. Second, even apart from the fact that Plaintiffs themselves have now put AFFF at issue here, the Panel's recent transfer orders have made clear that transfer of putatively non-AFFF cases to the MDL is appropriate when plaintiffs try to split their claims into "AFFF" and "non-AFFF" claims so as to maintain an action outside the MDL, as Plaintiffs have tried to do here. By moving to transfer this case, Moving Defendants are in no way seeking to expand the scope of the *In re AFFF* MDL beyond that delineated by the Panel's prior orders. Rather, transfer is clearly appropriate under the Panel's prior transfer orders for this MDL; because they already have two related and overlapping actions pending in the MDL, Plaintiffs should not be permitted to do an end-run

around the MDL by purporting to plead separate claims that their recently served discovery responses now acknowledge are overlapping.

I.      **Transfer Is Warranted Because Plaintiffs Have Put AFFF At Issue In This Case.**

      A.      **This Is An AFFF Case That Shares Questions Of Fact With The MDL.**

In its initial Transfer Order, the Panel held that all of the "AFFF actions" before it should be transferred to the new MDL. *In re AFFF*, 357 F. Supp. 3d at 1394. Here, Plaintiffs' own verified discovery responses in this case have now made clear that this action—like Plaintiffs' self-styled "AFFF" actions already transferred to the MDL—is an "AFFF action" encompassed by the Panel's prior transfer orders. Despite Plaintiffs' effort in their Complaint in this case to disavow any claim to recover for damages resulting from the use and disposal of *AFFF* products (*see* Ex. 1, Complaint ¶ 19), discovery has shown that this action (again, like Plaintiffs' two already-transferred actions) will involve claims relating to PFAS contamination throughout the State of Michigan that is caused at least in part by AFFF.

Specifically, in their January 28 discovery responses, Plaintiffs claimed that "in this litigation," they "seek to recover damages and obtain other relief related to PFAS contamination" at a number of sites at which there is "*both*" "PFAS contamination unrelated to AFFF" as well as "AFFF contamination." Ex. 4, at 35 (emphasis added). Those sites include "RACER Willow Run" in Washtenaw County, "Roosevelt Refinery" in Isabella County, "Flint Bishop International Airport Landfill" in Genesee County, and "Melvindale Sewer" in Wayne County. *Id.* at 40-41. Since Plaintiffs have put at issue in this case sites where *they themselves* claim that there is PFAS contamination from AFFF sources—and since they seek damages for injuries resulting from "PFAS" contamination at those sites—this action plainly involves AFFF claims.

In their January 28 discovery responses, Plaintiffs also identify multiple other "PFAS" sites as at issue in this case where the alleged contamination likely resulted from AFFF, at least

in part. Thus, many of the (putatively "non-AFFF") "PFAS" sites identified by those responses are in proximity to locations identified by those same responses as "AFFF" sites. For instance, Plaintiffs identify the "Oscoda Township Dump" and the "AuSable Twp Smith Street Area," both in Iosco County, as "PFAS" sites. Ex. 4, at 36, 37. But those two sites are near numerous other sites in Iosco County that Plaintiffs identify as "AFFF" sites, including "Wurtsmith Air Force Base," "Whispering Pines," "Van Ettan Lake," "Loud Drive," "Colbath Road," "Oscoda Area Schools," and "McDonald Store Fire (aka F-4)." *Id.* at 40.[3] Moreover, Plaintiffs' January 28 discovery responses identify multiple other "PFAS" sites in counties that Plaintiffs also identify as having "AFFF" sites. *Compare, e.g.*, *id.* at 36-38 (multiple "PFAS" sites in Muskegon County), *with id.* at 40-41 (multiple "AFFF" sites in Muskegon County); *and id.* at 36-39 (multiple "PFAS" sites in Kalamazoo County), *with id.* at 41 ("AFFF" site in Kalamazoo County). Further, the four sites that Plaintiffs identified in their January 28 discovery responses as both "PFAS" and "AFFF" sites are located in counties (Genesee, Isabella, Washtenaw, and Wayne) in which there are additional "PFAS" sites identified by Plaintiffs at which the use of AFFF may be a potential source of the alleged PFAS contamination. *See id.* at 35-39 (identifying nineteen additional "PFAS" sites located in Genesee, Isabella, Washtenaw, and Wayne County).

Accordingly, Plaintiffs are apparently seeking to recover for both alleged "PFAS" *and* "AFFF" contamination at a number of sites identified in their January 28 discovery responses in this action. Moreover, in verified discovery responses served in their already-transferred MilSpec AFFF case, Plaintiffs have expressly identified at least one of these sites (RACER Willow Run)

---

[3] For instance, the "Oscada Township Dump" site and "AuSable Twp Smith Street Area" site are located 2.5 miles and 3.5 miles, respectively, from the former "Wurtsmith Air Force Base" site.

as at issue in that case too.[4] And Plaintiffs' January 28 discovery responses have identified multiple counties (including but not limited to Genesee County, Isabella County, Iosco County, Kalamazoo County, Muskegon County, Washtenaw County, and Wayne County) where, according to Plaintiffs, there are both "PFAS" and "AFFF" sites, and Plaintiffs allege in all three of their cases that they are seeking to recover for contamination "throughout the State" and "at yet to be identified" locations. *See* Ex. 1, Complaint, p. 1 & ¶ 404; Ex. 2, Complaint, p. 1 & ¶ 321; Ex. 3, p. 1 & ¶ 264. At a minimum, contamination at all those sites will be a subject of discovery in this case *and* in the two cases already transferred.

Although Plaintiffs *also* assert PFAS contamination from non-AFFF-sources here, that is not a reason for the Panel to decline to transfer the case. The Panel has repeatedly rejected the argument that cases qualify for transfer to the MDL only if the claims relate exclusively to AFFF. For instance, in *Ridgewood Water v. 3M Co.*, the plaintiff argued that its case should not be transferred because "it alleges multiple sources of contamination, only some of which stem from the use of AFFFs"; the Panel disagreed, explaining that the fact "[t]hat plaintiff alleges additional sources of contamination does not convert *Ridgewood Water* into a 'non-AFFF' case of the type we excluded from the MDL in the initial centralization order." Dkt. 483, at 2. It is a settled principle in the Panel's jurisprudence that "[t]ransfer under Section 1407 does not require a complete identity of factual and legal issues when the actions … arise from a common factual core." *Id*. (citing *In re Oxycontin Antitrust Litig.*, 542 F. Supp. 2d 1359, 1360 (J.P.M.L. 2008)); *accord* Dkt. 650, at 2; Dkt. 384, at 1-2. Thus, the Panel concluded, *Ridgewood Water* should be

---

[4] Because the verified discovery responses in the MilSpec AFFF case in which Plaintiffs have identified RACER Willow Run, Wurtsmith Air Force Base, and other sites as at issue in that case is subject to a protective order entered by Judge Gergel in the MDL, Moving Defendants have not submitted those discovery responses as an exhibit herewith. If the Panel deems it necessary, Moving Defendants will submit Plaintiffs' verified discovery responses from the MilSpec AFFF case to the Panel under seal.

transferred to the MDL because that case "shares numerous factual questions regarding AFFFs and PFOS/PFOA contamination with the actions in the MDL." Dkt. 483, at 2; *accord, e.g.*, Dkt. 446, at 2 ("That [plaintiff] alleges *additional* sources of contamination is no obstacle to transfer"). The same is true here.[5]

Because Plaintiffs have put AFFF at issue, this action clearly involves "common questions of fact with the actions in this litigation previously transferred." *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 542 F. Supp. 2d 1361, 1362 (J.P.M.L. 2008). As the Panel has previously acknowledged, transfer may be appropriate when it "becomes apparent" "as pretrial proceedings progress" that "AFFF claims and discovery" will be at issue in the case. Dkt. 541, at 1. That is what has occurred here. Thus, this action "share[s] factual questions" with the MDL because it "similarly involves allegations that the groundwater in Michigan was contaminated by PFOS and/or PFOA stemming from use of AFFF products." Dkt. 866, at 4. *Compare In re AFFF*, 357 F. Supp. 3d at 1394 (identifying common factual issues presented by AFFF cases as "the toxicity of PFOA and PFOS and their effects on human health," "the chemical properties of these substances and their propensity to migrate in groundwater supplies," Defendants' "knowledge … regarding the dangers of PFOA and PFOS," and "to what

---

[5] Plaintiffs cannot avoid that result by purporting to artificially *re-define* "PFAS" to exclude PFAS attributable to AFFF. *See* Ex. 1, Complaint ¶ 19 ("PFAS as defined in this Complaint does *not* include" AFFFs). The utter artificiality of their purported definition is underscored by their own allegations elsewhere in the same Complaint. For example, the preamble to the Complaint (at p. 1) acknowledges that "perfluoroalkyl and polyfluoroalkyl substances" are "a group of chemicals commonly referred to as PFAS," and the Complaint elsewhere cites the EPA's February 2020 PFAS Action Plan by its title "EPA's Per- and Polyfluoroalkyl Substances (PFAS) Action Plan." *Id.* ¶ 4 n.1. And the very PFAS Action Plan the Complaint cites makes clear that federal regulators do not define "PFAS" to exclude PFAS from AFFF, explaining that "[w]hile the use of certain PFAS have been discontinued, legacy uses and a lack of commercially viable alternatives to certain public safety products (*e.g., fire fighting foams*) have resulted in PFAS contamination in certain areas." EPA PFAS Action Plan: Program Update 4 (Feb. 2020), https://www.epa.gov/sites/production/files/2020-01/documents/pfas_action_plan_feb2020.pdf (emphasis added) (cited at Ex. 1, Complaint ¶¶ 4-5 nn.2-3).

extent, if any, defendants conspired or cooperated to conceal the dangers of PFOA and PFOS in their products"), *with, e.g.*, Ex. 1, Complaint ¶¶ 108-126 (allegations that "PFAS are toxic and pose substantial health and environmental risks"); *id.* ¶¶ 127-151 (allegations that "Defendants [had] full knowledge of PFAS health and environmental risks, which they intentionally hid from the public and the State"); *id.* ¶¶ 414-437 (allegations of natural resource damage to groundwater and surface waters). *See also, e.g.*, Dkt. 384, at 3 (denying the State of New York's and State of Ohio's motions to vacate CTOs because "[t]he State plaintiffs . . . likewise assert claims against AFFF manufacturers relating to PFOA and PFOS contamination of groundwater drinking supplies, and their actions will entail many of the same factual questions presented in the MDL").[6] Because it clearly shares numerous factual (and legal) issues with the cases already transferred to the MDL—including the two other cases brought by these very Plaintiffs—the Panel should transfer this action to the MDL as well.

**B.    Given The Overlap Between This Case And Other Actions Already Transferred, Including Plaintiffs' Two Other Cases To Recover For Alleged PFAS Contamination "Throughout The State" Of Michigan, Transfer Would Also Clearly Serve The Convenience Of The Parties And Witnesses And Promote the Efficiency Of The Litigation Overall.**

The Panel previously determined that the AFFF-related actions subject to its initial Transfer Order "involve[d] the same mode of groundwater contamination caused by the same product" and required "significant and overlapping discovery of the AFFF manufacturers and their products"; for those reasons (among others), the Panel concluded that centralization would "serve the convenience of the parties and witnesses" overall "and promote the just and efficient conduct of this litigation." *In re AFFF*, 357 F. Supp. 3d at 1394-95; *see also id.* at 1394 (transfer

---

[6] Moreover, as further discussed in Section I.B *infra*, the defenses that certain Defendants intend to raise or are likely to raise in this case (including the government contractor defense as well as defenses relating to allocation of fault) will present common factual (and legal) issues with other cases in the MDL.

to the MDL "will eliminate duplicative discovery; prevent inconsistent pretrial rulings (including with respect to discovery, privilege, and *Daubert* motion practice); and conserve the resources of the parties, their counsel, and the judiciary"). Here, Plaintiffs have put AFFF at issue in this case, and for that reason alone, transfer is appropriate under the Panel's initial Transfer Order and subsequent transfer orders to serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation overall.

But transfer is even more plainly warranted here because these same Plaintiffs have brought two other related actions that have already been transferred to the MDL and in which, just as in this action, Plaintiffs broadly seek recovery for PFAS contamination "*throughout the State*" of Michigan. *Compare* Ex. 1, Complaint, p.1, *with* Ex. 2, Complaint, p. 1, *and* Ex. 3, Complaint, p. 1 (emphasis added). Indeed, all three complaints are based on substantively identical allegations of purported contamination of groundwater, surface waters, and other natural resources throughout Michigan with the same PFAS chemicals. *Compare, e.g.*, Ex. 1, Complaint ¶¶ 414-437, *with* Ex. 2, Complaint ¶¶ 316-339, *and* Ex. 3, Complaint ¶¶ 259-282. All three complaints plead many of the same causes of action and seek essentially the same remedies. *Compare, e.g.*, Ex. 1, Complaint ¶¶ 457-557 & p. 109, *with* Ex. 2, Complaint ¶¶ 378-494 & p. 100, *and* Ex. 3, Complaint ¶¶ 292-377 & p. 74. Moreover, Plaintiffs' putative MilSpec AFFF complaint seeks those remedies against most of the very same Defendants that are named in this case. *See supra* at 5 n.2. For all these reasons, discovery in this case will overlap with discovery in Plaintiffs' other two cases—and with discovery in other cases in the MDL—in myriad ways, so that transfer of this case to the MDL for coordinated proceedings would foster convenience, efficiency, and judicial economy. *See* Dkt. 384, at 2 (ordering transfer of cases brought by New York and Ohio; "While they bring some unique claims, the States also assert

14

claims . . . already raised in MDL No. 2873 against the same AFFF manufacturer defendants that are litigating actions in the MDL. Given the significant overlap between the States' actions and those in the MDL, exclusion from the MDL likely would result in duplicative pretrial proceedings.").

In addition, Plaintiffs have expressly identified at least one site as at issue in this case—the "RACER Willow Run" site (Ex. 4, at 40)—which they have also identified as at issue in discovery in their "MilSpec AFFF" case in the MDL. *See supra* at 11 n.4. In multiple transfer orders, the Panel has noted that transfer was appropriate where the actions involved contamination at sites already at issue in the MDL. *See* Dkt. 650, at 2 (transferring State of New Mexico's action because one site named in the complaint "is directly at issue in the MDL"); Dkt. 384, at 1 (sites identified in State of New York's and State of Ohio's complaints "already are at issue" in MDL).

Further, it is readily apparent not only from the discovery served thus far but also from the broad allegations in all three of Plaintiffs' cases seeking recovery for PFAS contamination throughout the State of Michigan (and alleging that the contamination is affecting the State's agriculture, tourism, and recreation industries) that there will be multiple other locations at which PFAS contamination from AFFF and non-AFFF sources will be intertwined and/or will be the subject of discovery as to the roles of AFFF and other sources. Dkt. 866, at 4 ("it seems likely that plaintiffs' commercial AFFF and Mil-Spec AFFF actions will share common factual questions, as both involve contamination of the same groundwater in the State of Michigan"); Dkt. 446, at 2 (transfer warranted where plaintiff's "allegations [were] intertwined with those of several actions pending in the MDL, which also allege contamination of [same] aquifer"). Indeed, Plaintiffs' allegations in this case that PFAS "continue[s] to move through the

environment and contaminate and injure State natural resources and property" (Ex. 1, Complaint ¶ 448) is simply inconsistent with Plaintiffs' attempt to segregate AFFF and non-AFFF sites. Likewise, Plaintiffs' claims in this case to recover for injuries to "fish and other wildlife," which similarly move through the environment, are also inconsistent with Plaintiffs' attempt to segregate AFFF and non-AFFF sites. *Id.* ¶ 439. All of Plaintiffs' claims thus should be coordinated before a single judge in the MDL.[7]

One or more Moving Defendants also will be asserting AFFF-related defenses in this case—including the federal government contractor defense—and it would be efficient to have those defenses litigated in the MDL. *See* 357 F. Supp. 3d at 1394 (transfer was favored by fact that "AFFF manufacturers likely will assert identical government contractor defenses"). As Judge Gergel has ruled multiple times in the MDL in denying motions to remand by other plaintiffs, AFFF manufacturers are entitled to pursue a government contractor defense to PFAS claims arising from the use of MilSpec AFFF. *See In re AFFF,* No. 2:18-mn-2873, 2019 WL 2807266, at *2-3 (D.S.C. May 24, 2019); Order 3-5, ECF No. 320 (Sept. 27, 2019); *id.,* Order 3-6, ECF No. 325 (Oct. 1, 2019); *see also Nessel,* 2021 WL 744683, at *3. Moreover, as noted above, in their putative MilSpec AFFF case already in the MDL, Plaintiffs have claimed that PFAS contamination caused by the use of MilSpec AFFF exists at or near "PFAS" sites put at issue in *this* case by Plaintiffs' January 28 discovery responses. For instance, Plaintiffs have identified "RACER Willow Run" and "Wurtsmith Air Force Base" as MilSpec AFFF contamination sites in discovery they have served in their putative MilSpec AFFF case. *See*

---

[7] It is no answer for Plaintiffs to suggest that they may offer experts who will purport to "divide" the alleged contamination between AFFF and non-AFFF sources—if anything, that only confirms that discovery in this case will overlap discovery relating to AFFF that already is ongoing in the MDL proceedings, especially since, as Judge Maloney recognized, Defendants need not accept Plaintiffs' efforts to identify the source of the alleged contamination here. *Nessel,* 2021 WL 744683, at *4

*supra* at 11 n.4. And as discussed above, their discovery responses in *this* case make clear that Plaintiffs seek to recover for damages at the same RACER Willow Run site, and at Iosco County sites in proximity to Wurtsmith Air Force Base. Ex. 4, at 35-41. As a result, Defendant 3M Company (and potentially other Defendants) will be asserting the government contractor defense in this case, which—despite Plaintiffs' effort to split AFFF from non-AFFF claims—will also implicate AFFF-related issues being litigated in the MDL. As Judge Maloney held in denying Plaintiffs' motion to remand their putative commercial AFFF case, "Plaintiffs['] attempt to surgically divide their complaints ... cannot prevent Defendants from raising the production of MilSpec AFFF as a defense or an alternative theory." *Nessel*, 2021 WL 744683, at *3.

In addition, just as Defendant 3M Company (and potentially other Defendants) intend to raise MilSpec AFFF use as "a defense or an alternate theory" in this putatively "non-AFFF" case, it is open to defendants in Plaintiffs' putative "*AFFF*" cases in the MDL to claim—and to take discovery seeking to show—that the alleged PFAS contamination at issue in those cases actually arises in whole or in part from "*non*-AFFF" sources for which those defendants may not be responsible. Thus, "non-AFFF" sources of AFFF contamination in Michigan are also potentially at issue in Plaintiffs' putative *AFFF* cases.[8]  All Defendants in each of Plaintiffs' three actions will be entitled to take discovery in support of an alternative-causation theory or defense and allocation of fault. For this reason, too, the factual and legal issues in this case will inevitably overlap with those in cases already transferred to the MDL.

Accordingly, transfer of this action as well will prevent the very duplication of effort and inefficiencies that the Panel's initial Transfer Order was intended to forestall.

---

[8] And as noted above (at 5 n.2), most of the Defendants in *this* case and in the Plaintiffs' putative MilSpec AFFF case *are the same defendants*.

II.    **Plaintiffs May Not Split Their Claims Between AFFF And Non-AFFF Actions In Order To Maintain An Action Outside The MDL.**

Even apart from the fact that Plaintiffs by their January 28 discovery responses have now put AFFF at issue in this case so that this action inevitably will present claims and issues common to the MDL, transfer of this action is also warranted under the Panel's order in *New Jersey American Water Co v. 3M Co*. Dkt. 691. There, the Panel ruled that transfer of putatively "non-AFFF" actions to the *In re AFFF* MDL is appropriate if the plaintiff is "asserting [both AFFF and non-AFFF] actions that relate to PFAS contamination of, potentially, the same water supply." *Id*. at 2. Because the plaintiff there "could have asserted [both its AFFF and non-AFFF] claims in the same action, but instead chose to split these claims across two actions," the Panel ruled that it would be "inefficient for these actions to proceed separately and potentially prejudicial to the parties." *Id*.; *accord* Dkt. 866, at 4. While Plaintiffs here have attempted to split their putative "non-AFFF" claims from their two putative AFFF actions already in the MDL, the Panel's prior rulings make clear that this action should be transferred to the MDL too to avoid inefficiency and undue prejudice to the Moving Defendants.

In *New Jersey American Water*, the plaintiff had filed a complaint that, the plaintiff argued, did "not involve allegations regarding AFFFs," but rather, involved allegations against E.I. Du Pont de Nemours and Company ("DuPont") regarding contamination of the Penns Grove water system caused by PFOA releases from a DuPont manufacturing facility. Dkt. 691, at 1. The Panel explained, however, that the plaintiff had also filed a second action which named both DuPont and AFFF manufacturers, and which sought recovery for PFAS contamination of its water supply systems (including Penns Grove) resulting from AFFF. *Id*. at 1-2. After the Panel Clerk initially determined that the case was inappropriate for transfer and declined to issue a CTO, the Panel nevertheless determined that transfer of the putative *non*-AFFF action to the *In re AFFF* MDL was

18

warranted. As the Panel explained, that was because the "plaintiff [wa]s seeking (or potentially seeking) recovery for PFAS contamination of the same water supply" (*i.e.*, Penns Grove) in a separate action that raised AFFF claims on its face. *Id.* at 2. Thus, the Panel concluded, "[i]t would be inefficient for these actions to proceed separately and potentially prejudicial to the parties." *Id.*[9] The Panel reaffirmed that conclusion in its recent decision transferring these Plaintiffs' putative commercial AFFF action to the MDL, stating that a plaintiff may not "split its claims into AFFF and non-AFFF complaints and thereby maintain an action outside the MDL." Dkt. 866, at 4 (citing Dkt. 691, at 2).

This action is on all fours with the *New Jersey American Water* cases. Here, too, the same Plaintiffs have brought multiple actions seeking recovery for PFAS contamination: two putative AFFF actions pending in the MDL, and this putative non-AFFF action. *See* Dkt. 866, at 4. This putative non-AFFF action names many of the same Defendants that were named in Plaintiffs' putative MilSpec AFFF action. Further, all three actions similarly seek recovery for PFAS contamination of "State natural resources and property," including groundwater and surface waters, "throughout the State." *Compare* Ex. 1, Complaint, p. 109, *with* Ex. 2, p. 100, *and* Ex. 3, p 74. And as discussed above, multiple specific sites at issue in this case, including RACER Willow Run and others, will also be at issue in one or both of Plaintiffs' putative AFFF actions. *See* Ex. 4, at 40-41.

Thus, even if the Panel were to credit Plaintiffs' purported disavowal of AFFF-related claims in their complaint in this case, and ignore Plaintiffs' January 28 discovery responses that put AFFF at issue in this case, transfer is appropriate for the same reason that the Panel transferred the putative non-AFFF action in *New Jersey American Water*. Here, Plaintiffs are "seeking (or

---

[9] While the Panel noted that it had declined to transfer multiple non-AFFF action pending in the Eastern District of New York because "[n]one of those plaintiffs asserted contamination from AFFF sources, and none was pursuing a separate action relating to AFFF contamination in the MDL," that was not the case in *New Jersey American Water*. Dkt. 691, at 2. Nor is it the case here.

potentially seeking) recovery for PFAS contamination of *the same water supply*" in both their AFFF and non-AFFF actions. Dkt. 691, at 2. Further, Plaintiffs "could have asserted all of [their] claims in the same action, but instead chose to split these claims across [three] actions." *Id*. Therefore, transfer of this case is appropriate. As in *New Jersey American Water*, "[i]t would be inefficient for these actions to proceed separately and potentially prejudicial to the parties." *Id*.

Indeed, as noted above, the Panel has already concluded that Plaintiffs' putative commercial AFFF and MilSpec AFFF actions likely "will share common factual questions, as both involve contamination of the *same groundwater* in the State of Michigan." Dkt. 866, at 4 (emphasis added). No less will *this* action "share common factual questions" with both of *those* actions because this action, too, involves alleged contamination of the same groundwater, surface waters, and other natural resources throughout the State of Michigan. *See, e.g.*, Ex. 1, Complaint ¶¶ 414-422. Accordingly, here too, transfer of this action "will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation." Dkt. 866, at 4; Dkt. 691, at 2; *see also* Section I.B, *supra*.

## **CONCLUSION**

For the foregoing reasons, the Panel should transfer the *Nessel v. 3M Co.* tag-along action to the *In re AFFF* MDL before Judge Gergel.

DATED: March 12, 2021                    Respectfully submitted,

                                         */s/ Daniel L. Ring*
                                         Daniel L. Ring
                                         MAYER BROWN LLP
                                         71 South Wacker Drive
                                         Chicago, Illinois  60606
                                         Tel: (312) 782-0600
                                         Fax: (312) 701-7711
                                         dring@ mayerbrown.com

                                         **Attorney for 3M Company**

20

*/s/ J. Michael Huget*
J. Michael Huget
Honigman LLP
315 East Eisenhower Parkway, Suite 100
Ann Arbor, MI 48108
(734) 418-4254
mhuget@honigman.com

Lanny Kurzweil
Ira Gottlieb
McCarter & English, LLP
100 Mulberry Street, Four Gateway Center
Newark, NJ 07102
(973) 639-2044
lkurzweil@mccarter.com
igottlieb@mccarter.com

**Attorneys for Defendants E.I. du Pont de Nemours and Company, The Chemours Company, and The Chemours Company FC, LLC**

*/s/ Katherin L.I. Hacker*
Katherine L.I. Hacker
Bartlit Beck LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
(303) 592-3100
kat.hacker@bartlitbeck.com

**Attorney for Defendants DowDuPont, Inc., Corteva, Inc., and DuPont de Nemours, Inc.**

*/s/ Peter C. Condron*
Peter C. Condron
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
(202) 624-2500
pcondron@crowell.com

**Attorney for Defendant AGC Chemicals Americas, Inc.**

21

*/s/ Melanie B. Dubis*
Melanie B. Dubis
Parker Poe Adams & Bernstein LLP
PNC Plaza
301 Fayetteville Street, Suite 1400
Raleigh, NC 27601
(919) 890-4158
melaniedubis@parkerpoe.com

**Attorneys for Defendant Archroma U.S., Inc.**