**UNITED STATES JUDICIAL PANEL**
on
**MULTIDISTRICT LITIGATION**

IN RE: AQUEOUS FILM-FORMING FOAMS
PRODUCTS LIABILITY LITIGATION                                    MDL No. 2873

**TRANSFER ORDER**

**Before the Panel**:\*  We are presented with motions in three actions.  First, plaintiffs in the District of Arizona *Jeffries* action move under Panel Rule 7.1 to vacate our order that conditionally transferred *Jeffries* to the District of South Carolina for inclusion in MDL No. 2873.  The *Jeffries* defendants oppose the motion.[1]  Second, defendant Intercontinental Terminals Company, LLC, and plaintiffs in the Southern District of Texas *Ogden* action separately move under Panel Rule 7.1 to vacate our order that conditionally transferred *Ogden* to MDL No. 2873.  Defendants Tyco Fire Products, LP; Chemguard, Inc.; and Williams Fire & Hazard Control oppose these motions.  Finally, various defendants in the Western District of Michigan *Nessel* action[2] move under 28 U.S.C. § 1407(c) to transfer *Nessel* to MDL No. 2873.  Plaintiffs Attorney General Dana Nessel and the State of Michigan oppose this motion.

In support of their motion to vacate, plaintiffs in *Jeffries* argue that federal subject matter jurisdiction over *Jeffries* is lacking, and that their pending motion for remand to state court should be decided before transfer.  We are not persuaded by this argument.  The Panel has held that such jurisdictional objections generally do not present an impediment to transfer.[3]  *See, e.g.*, *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 170 F. Supp. 2d 1346, 1347–48 (J.P.M.L. 2001) ("[R]emand motions can be presented to and decided by the transferee judge.").

---

\* Judge David C. Norton did not participate in the decision of this matter.

[1] The opposing defendants in *Jeffries* include: Tyco Fire Products, LP; Chemguard, Inc.; Perimeter Solutions, LP; and L.N. Curtis and Sons, Inc.

[2] The moving defendants in *Nessel* are: 3M Company; E.I. Du Pont De Nemours and Company; The Chemours Company; The Chemours Company FC, LLC; DowDupont, Inc.; Corteva, Inc.; Dupont de Nemours, Inc.; AGC Chemicals Americas, Inc.; and Archroma U.S., Inc.

[3] Panel Rule 2.1(d) expressly provides that the pendency of a conditional transfer order does not limit the pretrial jurisdiction of the court in which the subject action is pending.  Between the date a remand motion is filed and the date that transfer of the action to the MDL is finalized, a court generally has adequate time to rule on a remand motion if it chooses to do so.

- 2 -

The *Jeffries* plaintiffs also argue that their action involves different factual questions than the actions in the MDL because Mr. Jeffries was a firefighter who allegedly was exposed to per- or polyfluoroalkyl substances (PFAS) through use of aqueous film-forming foams (AFFFs), which are used to extinguish fires. Recently, though, we held that such direct exposure actions share common factual questions with the actions in the MDL, such that Section 1407 transfer is appropriate. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, MDL No. 2873, 2021 WL 755083, at *1–2 (J.P.M.L. Feb. 4, 2021) (the February Transfer Order). Plaintiffs' attempts to distinguish *Jeffries* from the firefighter actions at issue in the February Transfer Order are unavailing. That plaintiffs may allege in more detail specific interactions between the AFFF manufacturers and Mr. Jeffries' employer does not eliminate the common factual questions relating to PFAS and AFFF exposure that *Jeffries* shares with the more than 300 firefighter actions in the MDL. Moreover, while the firefighter plaintiffs in the actions transferred in the February Transfer Order may not all have alleged that they developed testicular cancer as a result of exposure to AFFFs, this is an injury alleged by multiple plaintiffs in the MDL. "Section 1407 does not require a complete identity or even majority of common factual issues as a prerequisite to transfer." *In re Ins. Brokerage Antitrust Litig.*, 360 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005).

Like *Jeffries*, the Southern District of Texas *Ogden* action involves allegations that plaintiffs and class members were exposed to AFFFs during firefighting activities. Movants, however, present a somewhat different argument in opposition to transferring *Ogden*. This action arises from a petrochemical fire at a bulk liquid storage terminal near Houston, Texas. Plaintiffs seek to represent a class of all first responders who worked to suppress this fire, who allegedly used AFFF containing PFAS to fight the fire and were thereby exposed to those chemicals. Movants argue that, because *Ogden* arises from a single incident, as opposed to chronic exposure over a period of years, individual issues relating to "acute exposure" and the cause and suppression of the fire will predominate over any common questions of fact.

While *Ogden* is somewhat unique in arising from a particular incident, it will share many of the same questions of fact as the other direct exposure firefighter actions in the MDL. Like some of those actions, plaintiffs in *Ogden* principally seek a medical monitoring class relating to exposure to AFFFs. Discovery and motion practice in *Ogden*, as in the actions in the MDL, will concern the toxicity of PFAS and their effects on human health; the chemical properties of these substances; the knowledge of the AFFF manufacturers regarding the dangers of PFAS; and their warnings, if any, regarding proper use and storage of AFFFs. While most of the actions in the MDL involve chronic exposure, there likely will be significant overlap in the science and discovery. Significant efficiencies may be obtained through transfer.[4]

---

[4] Movants rely on our decision to deny transfer of the Southern District of New York *Kovach* action, which also involved a single incident. *Kovach*, though, was quite different from *Ogden*. *Kovach* was a *pro se* action in which plaintiff alleged that he witnessed an intentional dumping of AFFF at an Air National Guard base in 1990 and that he was discharged from the military in retaliation for reporting the incident to a state environmental regulator. *See* Order Vacating Conditional Transfer Order at 1, MDL No. 2873 (J.P.M.L. Mar. 27, 2020), ECF No. 621. Plaintiff sought unique relief, including retroactive military promotion and retirement benefits. *Id.* In

(continued…)

- 3 -

Movants also argue that transfer will not produce efficiencies because *Ogden* will involve numerous factual questions surrounding the fire that are unrelated to AFFFs and which are being litigated in a consolidated litigation in the Southern District of Texas.  The consolidated Texas litigation, however, does not involve any other AFFF actions or claims.  Allowing *Ogden* to remain in the Southern District of Texas thus could complicate that litigation by introducing new and complex issues relating to AFFF products and PFAS exposure.  Any discovery relating to those issues will be duplicative of that ongoing in MDL No. 2873.  In contrast, it seems less likely that duplicative discovery and motion practice relating to the fire will or need occur in the MDL. Moreover, movants appear well-placed to take advantage of the discovery and any pretrial rulings in the consolidated Texas litigation.  Intercontinental Terminals Company, LLC, the owner of the tank farm where the fire occurred, is a defendant in most, if not all, of the other actions in the consolidated Texas litigation.  The *Ogden* plaintiffs are represented by counsel who, according to the AFFF manufacturers, represent plaintiffs in at least one other action in the consolidated litigation and are co-lead counsel in that litigation.  Regardless, movants' contention that most of the discovery and pretrial proceedings in *Ogden* will focus on the facts surrounding the fire overlooks plaintiffs' allegations.  They seek a medical monitoring class relating to use and exposure to AFFF, and allege no injuries from the fire unrelated to AFFF.  The common AFFF issues, therefore, are at the heart of plaintiffs' claims.

Plaintiffs in both *Jeffries* and *Ogden* argue that transfer will cause them inconvenience. But, centralization under Section 1407 is for pretrial proceedings only.  There usually is no need for parties or witnesses to travel to the transferee court for depositions or court hearings.  *See In re MLR, LLC, Patent Litig.*, 269 F. Supp. 2d 1380, 1381 (J.P.M.L. 2003).  In any event, transfer of an action is appropriate if it furthers the expeditious resolution of the litigation taken as a whole, even if some parties to the action might experience inconvenience or delay.  *See In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1351–52 (J.P.M.L. 2012) ("[W]e look to the overall convenience of the parties and witnesses, not just those of a single plaintiff or defendant in isolation.").

Turning to the Western District of Michigan *Nessel* action, moving defendants argue that *Nessel* will share common questions of facts with the actions in MDL No. 2873, including two other actions in the MDL brought by the same plaintiffs—the Attorney General and State of Michigan.  The *Nessel* actions in the MDL explicitly relate to contamination of Michigan's groundwater by PFAS contained in AFFF.  We transferred one of these actions to the MDL over plaintiffs' opposition that the action related only to contamination from "commercial" AFFF products (as opposed to "Mil-Spec" AFFF products that were manufactured in accordance with military specifications and primarily used at military bases and airports).  *See* February Transfer Order at *3.  Unlike those actions, the *Nessel* action now before us, on the face of the complaint, purports to relate only to non-AFFF contamination of Michigan groundwater.

We are persuaded that plaintiffs' attempt to separate their non-AFFF and AFFF claims is untenable.  Although plaintiffs in their complaint purport to disclaim any liability from AFFF

contrast, plaintiffs in *Ogden* present more straightforward claims for injuries due to exposure to AFFF containing PFAS.

- 4 -

contamination, they identified in written discovery responses multiple locations at which PFAS contamination from both AFFF and non-AFFF sources is alleged. At least one of these locations, according to defendants, is already at issue in one of plaintiffs' MDL actions. It thus appears likely that the *Nessel* actions in the MDL and this *Nessel* action will involve common discovery relating to the same contaminated groundwater. In this instance, declining to transfer this action will result in duplicative discovery and pretrial proceedings.[5]

Much of our rationale for transferring plaintiffs' "commercial AFFF" action to MDL No. 2873 is equally applicable to their "non-AFFF" action. *See id.* Of particular note, we previously rejected an attempt by a water authority to split its claims into AFFF and non-AFFF complaints and thereby maintain an action outside the MDL. *See* Transfer Order at 2, MDL No. 2873 (J.P.M.L. Oct. 5, 2020), ECF No. 691 ("Plaintiff could have asserted all of these claims in the same action, but instead chose to split these claims across two actions. It would be inefficient for these actions to proceed separately and potentially prejudicial to the parties."). Plaintiffs' attempt to distinguish this decision is not persuasive. Allowing *Nessel* to proceed separately from plaintiffs' other actions, particularly where they may involve the same allegedly contaminated sites, would be similarly inefficient.[6]

Plaintiffs argue that transfer would not be efficient because the MDL is procedurally advanced and *Nessel* will introduce many new sites, parties, and non-AFFF sources of contamination. We rejected similar arguments by the States of New York and Ohio. *See* Transfer Order at 1, MDL No. 2873 (J.P.M.L. Apr. 2, 2019), ECF No. 384 ("[T]his numerosity of locations and actions, and the lack of practicable alternatives to centralization to address the common factual and legal questions ,was one of the reasons we centralized this litigation."). The MDL remains in the discovery stage and we are confident the transferee court will efficiently adjudicate plaintiffs' claims.

Finally, plaintiffs contend that defendants removed *Nessel* to federal court to avoid the Michigan state court's rulings. Defendants' reasons for removing *Nessel*, however, are irrelevant

---

[5] Plaintiffs argue that they were asked to identify sites contaminated by AFFF, but are not seeking damages for AFFF-related damages. Besides the probability of duplicative discovery involving the same allegedly contaminated groundwater, plaintiffs overlook that defendants may raise contamination from AFFF sources as a "defense or an alternate theory." *Nessel v. Chemguard, Inc.*, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021) (denying remand motion in the "commercial AFFF" action).

[6] Plaintiffs cite two orders in which we declined to transfer actions by water authorities that alleged only non-AFFF contamination of plaintiffs' water sources. Critically, though, plaintiffs in those actions did not seek, in separate actions, to hold AFFF manufacturers liable for the same alleged contamination. Further, those actions were far more limited in scope, whereas *Nessel* potentially extends to all contaminated groundwater in the State of Michigan. *See* Order Denying Transfer at 1, MDL No. 2873 (J.P.M.L. Dec. 18, 2019), ECF No. 541 (*Middlesex*); Order Denying Transfer, MDL No. 2873 (J.P.M.L. Mar. 27, 2020), ECF No. 620 (eight Eastern District of New York actions).

- 5 -

to whether transfer under Section 1407 is appropriate.  As with *Jeffries*, plaintiffs in *Nessel* can present any remand arguments to the transferee court.  *See In re Prudential*, 170 F. Supp. 2d at 1347–48.

Accordingly, after considering the argument of counsel, we find that the actions listed on Schedule A involve common questions of fact with the actions transferred to MDL No. 2873, and that transfer under 28 U.S.C. § 1407 will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation.  In our order centralizing this litigation, we held that the District of South Carolina was an appropriate Section 1407 forum for actions in which plaintiffs allege that AFFF products used at airports, military bases, or certain industrial locations caused the release of PFOS and/or PFOA into local groundwater and contaminated drinking water supplies.  The actions in the MDL share factual questions concerning the use and storage of AFFFs; the toxicity of PFAS and the effects of these substances on human health; and these substances' chemical properties and propensity to migrate in groundwater supplies.  *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018).  All three actions, for the reasons stated above, will involve similar factual questions.

IT IS THEREFORE ORDERED that the actions listed on Schedule A are transferred to the District of South Carolina and, with the consent of that court, assigned to the Honorable Richard M. Gergel for coordinated or consolidated pretrial proceedings.

PANEL ON MULTIDISTRICT LITIGATION

Karen K. Caldwell
Chair

| | |
|---|---|
| Catherine D. Perry | Nathaniel M. Gorton |
| Matthew F. Kennelly | Roger T. Benitez |
| Dale A. Kimball | |

**IN RE: AQUEOUS FILM-FORMING FOAMS**
**PRODUCTS LIABILITY LITIGATION**                                    MDL No. 2873

## SCHEDULE A

District of Arizona

JEFFRIES, ET AL. v. CHEMGUARD INCORPORATED, ET AL.,
     C.A. No. 2:21−00059

Western District of Michigan

NESSEL, ET AL. v. 3M COMPANY, ET AL., C.A. No. 1:21−00205

Southern District of Texas

OGDEN, ET AL. v. INTERCONTINENTAL TERMINALS COMPANY, LLC, ET AL.,
     C.A. No. 4:21−00273