**BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

MDL No. 2873

IN RE: AQUEOUS FILM-FORMING FOAMS
PRODUCTS LIABILITY LITIGATION

**MEMORANDUM OF LAW IN SUPPORT OF
MARATHON PETROLEUM COMPANY LP'S MOTION TO VACATE
CONDITIONAL TRANSFER ORDER (CTO-78)**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ....................................................................................................................... 1

ARGUMENT ............................................................................................................................. 4

    I.   Federal Jurisdiction Does Not Exist As Mil-Spec AFFF Has No Relevance To Marathon's Claims ............................................................................................................ 4

    II.  Unique Questions of Fact and Law In This Case Will Predominate ................................. 8

CONCLUSION ......................................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Abbott Laboratories, Inc.*,
   763 F. Supp. 2d 1376 (J.P.M.L. 2011)..................................................................................9

*In re AFFF Prods. Liab. Litig.*,
   MDL No. 2:18-mn-2873-RMG (D.S.C. May 24, 2019)..........................................................6

*In re AFFF Prods. Liab. Litig.*,
   MDL No. 2:18-mn-2873-RMG (D.S.C. Oct. 1, 2019) ............................................................6

*In re AFFF Prods. Liab. Litig.*,
   MDL No. 2:18-mn-2873-RMG (D.S.C. Sept. 27, 2019)..........................................................6

*Ayo v. 3M Co.*,
   No. 18-CV-0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) ........................6, 7

*Bennett v. MIS Corp.*,
   607 F.3d 1076 (6th Cir. 2010) .................................................................................................5

*City of Corona v. 3M Co.*,
   No. 5:21-CV-01156-SVW-AS, 2021 WL 3829700 (C.D. Cal. Aug. 27, 2021).......................7

*In re ClassicStar Mare Lease Litig.*,
   528 F. Supp. 2d 1345 (U.S. Jud. Pan. Mult. Lit. 2007) ...........................................................9

*In re Credit Union Checking Account Overdraft Litig.*,
   158 F. Supp. 3d 1363 (J.P.M.L. 2016).....................................................................................9

*Curnow v. Stryker Corp.*,
   No. 13-13271, 2013 WL 5651439 (E.D. Mich. Oct. 15, 2013)...............................................8

*Isaacson v. Dow Chem. Co.*,
   517 F.3d 129 (2d Cir. 2008).....................................................................................................7

*Johnson v. Micron Tech., Inc.*,
   354 F. Supp. 2d 736 (E.D. Mich. 2005)...................................................................................8

*Leite v. Crane Co.*,
   749 F.3d 1117 (9th Cir. 2014) .................................................................................................5

*Nessel v. Chemguard Inc.*,
   No. 1:20-CV-01080, 2021 WL 744683 (W.D. Mi. Jan. 6, 2021).........................................6, 7

*In re Oxycontin Antitrust Litig.*,
  542 F. Supp. 2d 1359 (U.S. Jud. Pan. Mult. Lit. 2008) ............................................................9

**Statutes**

28 U.S.C. § 1407 ................................................................................................................1, 9

28 U.S.C. § 1407(a) ................................................................................................................4

28 U.S.C. § 1441(a) ................................................................................................................4

28 U.S.C. § 1442 .....................................................................................................................6

28 U.S.C. § 1447(c) ................................................................................................................8

**Other Authorities**

J.P.M.L. Rule 2.1(d) ................................................................................................................8

**PRELIMINARY STATEMENT**

Defendants seek to transfer this case to MDL No. 2873 ("the MDL") to avoid having the Eastern District of Michigan decide Plaintiff Marathon Petroleum Company LP's ("Marathon") motion to remand. This case, however, is distinct from cases currently pending in the MDL and the factors necessary for transfer under 28 U.S.C. § 1407 are not met. Federal jurisdiction does not exist because defendants' fabricated defense does not meet the criteria required to assert federal officer jurisdiction.[1] Additionally, even if the lack of jurisdiction is ignored, this case is factually distinct from cases currently pending within the MDL as Marathon's complaint raises factual issues that will predominate over any alleged common fact questions. As such, this Court should vacate the conditional transfer order (CTO-78) in this case.

**BACKGROUND**

Marathon has used commercially-available PFAS-containing AFFF purchased from defendants for decades at its Detroit refinery. *See generally* Compl., Ex. A. Since 2018, Marathon has investigated contamination at the refinery, detecting PFAS-containing AFFF. Mot. To Remand, Ex. C at 5. Marathon has spent millions of dollars investigating the contamination, as well as examining the viability of various treatment options relating to the PFAS-containing AFFF contamination. *Id*. Marathon has never used or detected Mil-Spec AFFF at the Detroit refinery. *Id*. The parties agree that Mil-Spec AFFF was never sold to, released on, or migrated to Marathon's Detroit refinery. On December 16, 2021, Marathon filed suit exclusively under Michigan state law to recover costs and damages related to defendants' PFAS-containing AFFF products. *See* Ex. A. Marathon did not allege any recovery based on Mil-Spec AFFF contamination. *See* Ex. A.

---

[1] Marathon's motion to remand is currently pending in the Eastern District of Michigan. Briefing is set to conclude by February 28, 2022.

1

Despite this, on January 19, 2022, defendants filed a notice of removal. Not. of Removal, Ex. B. Defendants' removal is based on their intention "to raise the *defense* that such damages arise at least in part from the presence of PFAS from Mil-Spec AFFF in the vicinity of (if not on) the Property." Ex. B at 2-3 (emphasis in original). Specifically, defendants allege that Mil-Spec AFFF present in nearby rivers accounts for some unspecified portion of the diminution in value of Marathon's property, which is one element of the damages Marathon seeks to recover in this case. *Id.* Mil-Spec AFFF, however, is a red herring—it was never used by Marathon, it has never been discharged at Marathon's Detroit refinery, and defendants do not (and cannot) claim that Mil-Spec AFFF has migrated onto Marathon's property and commingled with existing contamination. Ex. C at 2.

To support their claim, defendants point to Willow Run Airport ("Willow Run") and Selfridge Air National Guard Base ("Selfridge") as potential sources of Mil-Spec AFFF. Ex. B at 11-12. Defendants argue that Willow Run and Selfridge have been identified by the State of Michigan as sites that **may** have used Mil-Spec AFFF. The following map illustrates the location of Willow Run, Selfridge, and Marathon's refinery:



Tellingly, defendants do not allege that the Mil-Spec AFFF migrated onto Marathon's property. Lacking any direct link of Mil-Spec AFFF to contamination at Marathon's refinery, defendants resort to a speculative and unsupported chain of assumptions. Ex. B at 11-12. Specifically, defendants contend that Mil-Spec AFFF may have migrated between 20 and 26 miles from either Willow Run or Selfridge through surface water runoff and groundwater flow, entering the Rouge River and Detroit River. Yet those rivers are more than a mile away from Marathon's property. Defendants speculate the following chain of events:

> 1) Willow Run and Selfridge, located more than 20 and 26 miles from the refinery, respectively, may have released Mil-Spec AFFF on their properties;
>
> 2) This Mil-Spec AFFF "likely" migrated into adjacent surface water bodies or groundwater;
>
> 3) The Mil-Spec AFFF then "likely" migrated, through surface water runoff or groundwater flow, over 20 miles into the Rouge and Detroit Rivers in "proximity" to Marathon's refinery;
>
> 4) The Mil-Spec AFFF may have accumulated in this location in sufficient quantities to impact riverfront property values;

3

5) The affected river-front property values then drove down property values of adjacent properties; and

6) This cascade of decreasing property values continued for miles until it reached and allegedly affected the market value of Marathon's refinery, which was already contaminated with defendants' PFAS-containing AFFF.[2]

Ex. B at 11-12.

On January 20, 2022, defendant 3M Company ("3M") filed a Notice of Potential Tag-Along Action with this MDL. Doc No. 1274. The next day, the United States Judicial Panel on Multidistrict Litigation ("JPML") court entered a conditional transfer order (CTO-78). Doc No. 1276. Marathon filed its notice of objection to CTO-78 on January 28, 2022. Doc No. 1277. Marathon filed its motion to remand on January 31, 2022. Ex. C.

## ARGUMENT

There are two fundamental differences between this case and those within the MDL that render transfer inappropriate. First, federal jurisdiction does not exist because the federal officer removal statute, defendants' sole basis for federal jurisdiction, does not apply. Second, Marathon's claims do not share common questions of fact or law with those currently within the MDL, and consolidating this case will not promote "just and efficient conduct" as proscribed in 28 U.S.C. § 1407(a). The Panel, therefore, should vacate CTO-78.

**I.      Federal Jurisdiction Does Not Exist As Mil-Spec AFFF Has No Relevance To Marathon's Claims.**

Removal is proper if federal courts have original jurisdiction of the action. 28 U.S.C. § 1441(a). A private party asserting federal officer jurisdiction under the federal officer removal statute must establish the following three criteria: (1) it is a "person" within the meaning of the

---

[2] The area surrounding Marathon's refinery in Detroit is heavily industrialized, and has been for decades. Similarly, both the Rouge and Detroit Rivers have been the subject of environmental cleanup and remediation efforts for a similar amount of time. Given this, defendants' claims that Mil-Spec AFFF contamination in the surrounding area would somehow lower the market value of Marathon's Refinery is not plausible.

4

statute who is "acting under" a federal officer; (2) it performed the actions for which it is being sued under the color of federal officer; and (3) that it raised a colorable federal defense. *Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010). When invoking removal jurisdiction, a defendant's "factual allegations" will originally be accepted as true unless challenged by the plaintiff. *Leite v. Crane Co.*, 749 F.3d 1117, 1121-22 (9th Cir. 2014). Parties cannot offer mere legal conclusions, but must allege the underlying facts supporting each of the requirements for removal jurisdiction. *Leite*, 749 F.3d at 1122.

Marathon's suit relates to PFAS contamination caused solely by commercially-available PFAS-containing AFFF at its refinery. Marathon's suit does not relate, even tangentially, to defendants' design, production, or sale of Mil-Spec AFFF under the supposed supervision or direction of the U.S. military. The federal officer removal statute—the sole basis for defendants' notice of removal—is therefore inapplicable because defendants have no plausible federal contractor defense on which to rely.

Defendants' removal is based on the speculative assertion that Mil-Spec AFFF may have accumulated in sufficient quantities and proximity to Marathon's refinery to affect its market value. Marathon does not dispute that defendants are considered "person[s]" as defined by the federal officer removal statute. Nor does it dispute that the design, manufacture, and supply of Mil-Spec AFFF may provide an appropriate basis for federal officer removal in other cases relating to contamination or harm caused **directly** by Mil-Spec AFFF purchase, use, or exposure.

Marathon's injuries, however, are attributed solely to commercially-available PFAS-containing AFFF. There was no government contract between defendants in the purchase, use, or release of the PFAS-containing AFFF at issue in this case. Mil-Spec AFFF is not identical to PFAS-containing AFFF; they are distinct and unique products, designed, marketed, and sold

5

separately to distinct and unique customers. Marathon did not purchase Mil-Spec AFFF, and Mil-Spec AFFF forms no basis of Marathon's claims, injuries, damages, or factual allegations. Because Mil-Spec AFFF is not a source of Marathon's injuries, defendants cannot avail themselves of § 1442's removal provisions.

In support of their notice of removal, defendants attempt to equate this case to those already within the MDL. *See* Ex. B at 3-4; *Nessel v. Chemguard Inc.*, No. 1:20-CV-01080, 2021 WL 744683 (W.D. Mi. Jan. 6, 2021); *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018); Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG (D.S.C. May 24, 2019), ECF No. 103 ("MDL Order 1"), at 3-6; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG (D.S.C. Sept. 27, 2019), ECF No. 320 ("MDL Order 2"), at 3-5; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG (D.S.C. Oct. 1, 2019), ECF No. 325 ("MDL Order 3"), at 3-6; (Collectively Ex. E). Defendants' reliance on these cases is misplaced as they do not support removal based on defendants' causation theory.

In *Nessel*, plaintiffs alleged that PFAS from commercial AFFF caused statewide contamination of the State of Michigan's natural resources and property. 2021 WL 744683 *1. Plaintiffs also filed a nearly identical complaint alleging that defendants acted similarly but with Mil-Spec AFFF. *Id.* Defendants removed the case to federal court and plaintiffs moved to remand. *Id.* The court considered whether defendants properly invoked the federal officer removal statute. *Id.* at *3. The court held that defendants met their burden because plaintiffs' property was cross-contaminated with both commercial AFFF and Mil-Spec AFFF. *Id.* The court found that, because the case dealt with statewide contamination, it "would be impossible to determine which of Plaintiffs' injuries were caused by Commercial AFFF and which were

6

caused by Mil[-]Spec AFFF." *Id*. at *3. The court further ruled that plaintiffs' attempt to distinguish the contamination by filing separate complaints for commercial AFFF and Mil-Spec AFFF did not defeat defendants' causation theory. *Id.* No such cross-contamination exists in this case; Marathon's Complaint deals with one property, Marathon's Detroit refinery, and does not encompass statewide contamination. Because of this, this Court need not undertake a fact-finding process to determine that Marathon's claims do not implicate Mil-Spec AFFF.

In *Ayo*, plaintiffs alleged exposure to PFOA and PFOS and that "for decades the [New York Air National Guard ha[d]] used a half-acre Airport Fire Training Area located at the Airport" where it applied Mil-Spec AFFF, and that the manufacturer defendants had "failed to warn . . . [the Government] of the dangers posed by their AFFF products." 2018 WL 4781145. The defendants' removal was proper because the *Ayo* plaintiffs expressly alleged that they were injured by Mil-Spec AFFF. No such allegation is made here; the opposite is the case.

Lastly, MDL Orders 1, 2, and 3 are all distinguishable. All cases involved (1) claims seeking damages relating to Mil-Spec AFFF contamination on plaintiffs' properties, and (2) theories that, if credited, showed direct contamination of Mil-Spec AFFF on plaintiffs' property. Neither is present is this case. MDL 1 Order at 3-6; MDL Order 2 at 3-5; MDL Order 3 at 3-6.

Here, in contrast to *Nessel* and *Ayo*, no Mil-Spec AFFF or cross-contamination is alleged. Instead, defendants' theory that discharges occurring more than 20 miles from Marathon's property does not demonstrate that the acts for which they are being sued—here, the production and sale of commercial AFFF—occurred "because of" what they were asked to do by the Government. *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008). This case is more akin to *City of Corona*, which was remanded because defendants offered no connection to the Mil-Spec AFFF and plaintiffs' complaint, and the Panel subsequently denied the conditional

7

transfer order as moot. *City of Corona v. 3M Co.*, 2021 WL 3829700, at *4, MDL No. 2873, Case No. CAC/5:21-cv-01156, Document No. 13, Aug. 30, 2021 Order. Because speculative allegations of Mil-Spec AFFF in the "proximity" of Marathon's property is the only basis for defendants' federal jurisdiction theory, and because Mil-Spec AFFF has no relevance to Marathon's Complaint or claims, there is no proper basis for the transfer of this case to the MDL, and this Panel should vacate the CTO-78.

Lastly, Marathon's motion to remand should, and likely will be, decided by the Eastern District of Michigan before the decision relating to CTO-78 is finalized. *Johnson v. Micron Tech., Inc.*, 354 F. Supp. 2d 736, 739-40 (E.D. Mich. 2005); *see also Curnow v. Stryker Corp.*, No. 13-13271, 2013 WL 5651439, at * 3 (E.D. Mich. Oct. 15, 2013). Because this case does not belong in federal court, a transfer to the MDL would result in a needless waste of resources and unnecessary delay. Defendants' jurisdictional claim hinges on their naked, speculative assertion that Marathon's damages arise "at least in part" from the presence of Mil-Spec AFFF in the "vicinity" of Marathon's property. Marathon's motion to remand is currently pending before the United States District Court for the Eastern District of Michigan. Briefing will be completed by February 21, 2022, giving the district court 38 days to decide Marathon's motion before the Panel's scheduled hearing session on March 31, 2022. Judicial economy is best served by allowing the Eastern District of Michigan to decide defendants' baseless jurisdictional argument rather than re-briefing the issue again after transfer. Because the entry of a conditional transfer order does not affect federal district court proceedings, J.P.M.L. Rule 2.1(d), the Panel should delay making any final determinations regarding transfer until after its motion to remand is decided. 28 U.S.C. § 1447(c).

**II.    Unique Questions of Fact and Law In This Case Will Predominate.**

Even assuming the existence of federal subject matter jurisdiction, Marathon's complaint

concerns unique questions of fact categorically different from the focus of the MDL. The Panel has required that for transfer to be appropriate, cases arise from a "common factual core." *In re Oxycontin Antitrust Litig.*, 542 F. Supp. 2d 1359, 1360 (U.S. Jud. Pan. Mult. Lit. 2008). While transfer under Section 1407 does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer, it does require that actions arise from the same "factual milieu." *In re ClassicStar Mare Lease Litig.*, 528 F. Supp. 2d 1345, 1346 (U.S. Jud. Pan. Mult. Lit. 2007). Transfer to an MDL is not appropriate where facts of a particular case will predominate. *See In re Credit Union Checking Account Overdraft Litig.*, 158 F. Supp. 3d 1363, 1365 (J.P.M.L. 2016) (finding manageability issues and declining to centralize cases where specific questions would be unique to a certain case); *In re Abbott Laboratories, Inc.*, 763 F. Supp. 2d 1376, 1376-77 (J.P.M.L. 2011) (denying centralization where individual facts contained in the considered actions predominated over any alleged common fact questions).

This Panel has held that MDL No. 2873 has centered on cases involving allegations that AFFF used at airports, firefighting facilities, and military bases caused the release of PFAS into groundwater and direct exposure to firefighting equipment. MDL Order Re: CTO-10, Doc. 45; MDL Order Re: CTO-39, Doc. 483. The Panel has recognized that the cases within MDL No. 2873 share several important factual questions, including the following: "questions concerning the toxicity of PFOA and PFOS and their effects on human health; the chemical properties of these substances; the knowledge of the AFFF manufacturers regarding the dangers of PFOA and PFOS; their warnings, if any, regarding proper use and storage of AFFFs; and to what extent, if any, defendants conspired or cooperated to conceal the dangers of PFOA and PFOS in their products." Doc. No. 866.

Here, while Marathon's claims do overlap with some of these common factual issues, the

9

factual questions that will predominate Marathon's claims are unique. For example, Marathon's claim will require extensive discovery regarding defendants' targeted promotion of PFAS-containing AFFF to the refining industry. As a downstream user of PFAS-containing AFFF, Marathon will require additional discovery relating to communications made to Marathon by defendants, in addition to purchase agreements, sales invoices, material safety data sheets, product environmental data sheets, industrial hygiene surveys, internal audits of refinery customers, and other business documents between Marathon and defendants (and their vendors, consultants, and sales representatives). These factual issues do not overlap with the existing cases in MDL No. 2873.

Additionally, while certain factual questions regarding groundwater contamination are common to cases in MDL No. 2873, groundwater contamination at Marathon's refinery is unique. Not only does Marathon's refinery have a self-contained wastewater treatment facility, it also has stored, used, and refined petroleum products for decades, thus presenting unique questions of transport, fate, and potential comingling of contaminants.

Additionally, Marathon's allegations relate to Marathon's use of commercial PFAS-containing AFFF as an industrial user, for industrial purposes, which led to contamination of Marathon's industrial facility. Marathon's claims do not relate to PFAS contamination stemming from other sources that migrated onto Marathon's property. To the extent there are any cases in MDL No. 2873 involving downstream users, those plaintiffs either 1) used Mil-Spec AFFF themselves; or 2) have sites cross-contaminated with Mil-Spec AFFF.

Moreover, Marathon is a unique plaintiff. Currently, there is only one other case in MDL No. 2873 that involves a refinery-operating plaintiff. *See* Doc. No. 476, Order Finalizing CTO-15 (*Valero Refining Co. v. 3M et al.*, No. 19-cv-00223 (E.D.OK.)). That case, however, is

distinguishable because federal subject matter jurisdiction existed based on diversity jurisdiction and because plaintiff Valero did not object to transfer. While MDL No. 2873 is currently organized to handle claims brought by property owners, there is currently no plaintiffs group that would allow efficient (or effective) resolution of the unique factual questions presented by Marathon's claims. Marathon is aware of no case (excluding *Valero*) that involves claims by a plaintiff relating to a manufacturing site (much less a refinery) that would involve similar issues of fact. The cases currently pending in MDL No. 2873 do not involve private customers of PFAS-containing AFFF. Rather, MDL No. 2873 includes the following classes of plaintiffs: 1) residential property owners; 2) public entities including water districts, municipalities, and states; and 3) firefighters suffering direct exposure to PFAS-containing AFFF through direct exposure. *See generally* MDL No. 2873. Because Marathon's claims involved unique factual questions that will predominate, the Panel should vacate CTO-78.

## CONCLUSION

Because there is no basis for federal jurisdiction, and because this case entails factual issues largely outside of the Panel's intended scope, transfer to the MDL is inappropriate and the Panel should vacate CTO-78.

Dated: February 14, 2022                          Respectfully submitted,

/s/ *Carter F. Thurman*
Carter F. Thurman
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, DC 20005
Telephone: (202) 898-5800
cthurman@hollingsworthllp.com

*Attorney for Plaintiff*
*Marathon Petroleum Company LP*