# EXHIBIT A

| STATE OF MICHIGAN<br>3rd JUDICIAL CIRCUIT<br>COUNTY OF WAYNE | VERIFICATION OF<br>BUSINESS COURT ELIGIBILITY<br>AND NOTICE OF ASSIGNMENT | CASE NO.<br>21-                          -CB |
|---|---|---|

Court address: 2 Woodward Ave., Detroit, MI 48226

| Plaintiff(s)<br>MARATHON PETROLEUM COMPANY LP | v | Defendant(s)<br>3M COMPANY (f/k/a MINNESOTA MINING AND MANUFACTURING CO.); NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS, LP; CHEMGUARD, INC.; HAYDEN & COMPANY; WILLFIRE LLC; and DOE DEFENDANTS 1 TO 20 |
|---|---|---|

I am the attorney for the [check one] ☑ plaintiff ☐ defendant and per *MCR 2.114(B)(2) and MCR 2.114(D)* declare to the best of my information, knowledge, and belief that this case meets the statutory requirements to be assigned to the business court, *MCR 2.112(O),MCL 600.8031 et seq.*, and request assignment to the Business Court for the following reasons:

[***Both Sections 1 and 2 must be completed to be accepted by the Court (check all that apply)***]

1. **Parties**. This is a qualifying business or commercial dispute as defined by *MCL 600.8031(1)(c)* because,

   ☑ all of the parties are business enterprises

   ☐ one or more of the parties is a business enterprise and the other parties are its or their present or former owners, managers, shareholders, members, directors, officers, agents, employees, suppliers, or competitors, and the claims arise out of those relationships

   ☐ one of the parties is a non-profit organization, and the claims arise out of that party's organizational structure, governance, or finances

   ☐ It is an action involving the sale, merger, purchase, combination, dissolution, liquidation, organizational structure, governance, or finances of a business enterprise.

   **AND**

2. **Actions**. This business or commercial action as defined by *MCL 600.8031(2)* involves,

   ☐ information technology, software, or website development, maintenance, or hosting

   ☐ the internal organization of business entities and the rights or obligations of shareholders, partners, members, owners, officers, directors, or managers

   ☐ contractual agreements or other business dealings, including licensing, trade secret, intellectual property, antitrust, securities, noncompete, nonsolicitation, and confidentiality agreements if all available administrative remedies are completely exhausted, including but not limited to, alternative dispute resolution processes prescribed in the agreements

   ☐ commercial transaction, including commercial bank transactions

   ☐ business or commercial insurance policies

   ☐ commercial real property

   ☑ other type of business or commercial dispute (explain): This is an action to recover costs incurred in remediation of PFAS compounds.

| 12/16/21 | /s/ James E. DeLine |
|---|---|
| Date | Signature |
|  | James E. DeLine          P45205 |
|  | Name (type or print)          Bar no. |

*(left margin, vertical text)* Angila Mayfield    12/16/2021 3:30 PM    Cathy M. Garrett    WAYNE COUNTY CLERK    IN MY OFFICE    21-017284-CB FILED

Approved, SCAO

Original - Court
1st Copy- Defendant

2nd Copy - Plaintiff
3rd Copy -Return

| STATE OF MICHIGAN THIRD JUDICIAL CIRCUIT WAYNE COUNTY | SUMMONS | CASE NO. 21-017284-CB Hon.Edward Ewell, Jr. |
|---|---|---|

Court address : 2 Woodward Ave., Detroit MI 48226

Court telephone no.: 313-224-5195

| Plaintiff's name(s), address(es), and telephone no(s) MARATHON PETROLEUM COMPANY LP | v | Defendant's name(s), address(es), and telephone no(s). 3M COMPANY (f/k/a MINNESOTA MINING AND MANUFACTURING CO.) |
|---|---|---|
| Plaintiff's attorney, bar no., address, and telephone no James E. Deline 45205 500 Woodward Ave Ste 2500 Detroit, MI 48226-5499 | | |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or  family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving  the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving  the family or family members of the person(s) who are the subject of the complaint.

## Civil Case

☒ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035

☐ MDHHS  and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the  complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court,  ☐_____ Court,

where it was given case number _____ and assigned to Judge _____.

The action ☐ remains  ☐ is no longer  pending.

Summons section completed by court clerk.

**SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons  and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date 12/16/2021 | Expiration date* 3/17/2022 | Court clerk Angila Mayfield |
|---|---|---|

Cathy M. Garrett- Wayne County Clerk.

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**MC 01** (9/19)          **SUMMONS**          MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105



**SUMMONS**
Case No. : **21-017284-CB**

## PROOF OF SERVICE

TO PROCESS SERVER:  You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk.  If you are unable to complete service you must return this original and all copies to the court clerk.

### CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

☐  **OFFICER CERTIFICATE**            **OR**            ☐  **AFFIDAVIT OF PROCESS SERVER**

| | |
|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that:    (notarization not required) | Being first duly sworn, I state that I am a legally competent adult, and I am not a party or an officer of a corporate party (MCR 2.103[A]),  and that:    (notarization required) |

☐ I served personally a copy of the summons and complaint.

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint, together with _____
List all documents served with the Summons and Complaint

_____

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled $ | Fee $ | | Signature _____ |
|---|---|---|---|---|
| Incorrect address fee $ | Miles traveled $ | Fee $ | **Total fee** $ | Name (type or print) |
| | | | | Title |

Subscribed and sworn to before me on _____ , _____ County, Michigan.
Date

My commission expires: _____        Signature: _____
Date                                    Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

### ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____
Attachments

_____ on _____
Day, date, time

_____ on behalf of _____.
Signature

Approved, SCAO

| Original - Court | 2nd Copy - Plaintiff |
| 1st Copy- Defendant | 3rd Copy -Return |

| **STATE OF MICHIGAN**<br>**THIRD JUDICIAL CIRCUIT**<br>**WAYNE COUNTY** | **SUMMONS** | **CASE NO.**<br>**21-017284-CB**<br>**Hon.Edward Ewell, Jr.** |
|---|---|---|

Court address : 2 Woodward Ave., Detroit MI 48226

Court telephone no.: 313-224-5195

| **Plaintiff's name(s), address(es), and telephone no(s)**<br>MARATHON PETROLEUM COMPANY LP<br><br>**Plaintiff's attorney, bar no., address, and telephone no**<br><br>James E. Deline 45205<br>500 Woodward Ave Ste 2500<br>Detroit, MI 48226-5499 | v | **Defendant's name(s), address(es), and telephone no(s).**<br>CHEMGUARD, INC. |
|---|---|---|

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or  family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving  the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving  the family or family members of the person(s) who are the subject of the complaint.

## Civil Case

☒ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035

☐ MDHHS  and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the  complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

   been previously filed in ☐ this court, ☐_____ Court,

   where it was given case number _____ and assigned to Judge _____.

   The action ☐ remains  ☐ is no longer  pending.

Summons section completed by court clerk.

| **SUMMONS** |
|---|

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1.  You are being sued.
2.  **YOU HAVE 21 DAYS** after receiving this summons  and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3.  If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4.  If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>12/16/2021 | Expiration date*<br>3/17/2022 | Court clerk<br>Angila Mayfield |
|---|---|---|

Cathy M. Garrett- Wayne County Clerk.

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**MC 01** (9/19)         **SUMMONS**          MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

**SUMMONS**

Case No. : **21-017284-CB**

## PROOF OF SERVICE

TO PROCESS SERVER: You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

### CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

| ☐ **OFFICER CERTIFICATE** | **OR** | ☐ **AFFIDAVIT OF PROCESS SERVER** |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that:    (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult, and I am not a party or an officer of a corporate party (MCR 2.103[A]),  and that:    (notarization required) |

☐ I served personally a copy of the summons and complaint.

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint, together with _____
List all documents served with the Summons and Complaint

_____

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled $ | Fee $ | | Signature _____ |
|---|---|---|---|---|
| Incorrect address fee $ | Miles traveled $ | Fee $ | Total fee $ | Name (type or print) _____ |
| | | | | Title _____ |

Subscribed and sworn to before me on _____ , _____ County, Michigan.
                                                        Date

My commission expires: _____    Signature: _____
                                        Date                                                    Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

### ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____
                                                                                                            Attachments

_____ on _____
                                                        Day, date, time

_____ on behalf of _____.

Signature

Approved, SCAO

Original - Court     2nd Copy - Plaintiff
1st Copy- Defendant    3rd Copy -Return

| **STATE OF MICHIGAN**<br>**THIRD JUDICIAL CIRCUIT**<br>**WAYNE COUNTY** | **SUMMONS** | **CASE NO.**<br>**21-017284-CB**<br>**Hon.Edward Ewell, Jr.** |
|---|---|---|

Court address : 2 Woodward Ave., Detroit MI 48226         Court telephone no.: 313-224-5195

| Plaintiff's name(s), address(es), and telephone no(s)<br>MARATHON PETROLEUM COMPANY LP<br><br>**Plaintiff's attorney, bar no., address, and telephone no**<br><br>James E. Deline 45205<br>500 Woodward Ave Ste 2500<br>Detroit, MI 48226-5499 | v | Defendant's name(s), address(es), and telephone no(s).<br>DOE DEFENDANTS 1 TO 20 |
|---|---|---|

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or  family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving  the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving  the family or family members of the person(s) who are the subject of the complaint.

## Civil Case

☒ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035

☐ MDHHS  and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the  complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐_____ Court,

where it was given case number _____ and assigned to Judge _____.

The action ☐ remains ☐ is no longer  pending.

Summons section completed by court clerk.    | **SUMMONS** |

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1.  You are being sued.
2.  **YOU HAVE 21 DAYS** after receiving this summons  and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3.  If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4.  If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>12/16/2021 | Expiration date*<br>3/17/2022 | Court clerk<br>Angila Mayfield |
|---|---|---|

Cathy M. Garrett- Wayne County Clerk.

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**MC 01** (9/19)        **SUMMONS**        MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105



**SUMMONS**

Case No. : **21-017284-CB**

## PROOF OF SERVICE

TO PROCESS SERVER:  You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons.  You must make and file your return with the court clerk.  If you are unable to complete service you must return this original and all copies to the court clerk.

## CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

☐   **OFFICER CERTIFICATE**  OR  ☐   **AFFIDAVIT OF PROCESS SERVER**

| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that:    (notarization not required) | Being first duly sworn, I state that I am a legally competent adult, and I am not a party or an officer of a corporate party (MCR 2.103[A]),  and that:    (notarization required) |

☐ I served personally a copy of the summons and complaint.

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint, together with _____
      <span style="font-size:small">List all documents served with the Summons and Complaint</span>

_____

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled $ | Fee $ | | Signature _____ |
|---|---|---|---|---|
| Incorrect address fee $ | Miles traveled $ | Fee $ | Total fee $ | Name (type or print) _____ |

Title _____

Subscribed and sworn to before me on _____ , _____ County, Michigan.
                                                          Date

My commission expires: _____   Signature: _____
                                    Date                                         Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____
                                                                                                                    Attachments

_____ on _____
                                                                on                         Day, date, time

_____ on behalf of _____.
Signature

Approved, SCAO

| | | |
|---|---|---|
| | Original - Court | 2nd Copy - Plaintiff |
| | 1st Copy- Defendant | 3rd Copy -Return |

| STATE OF MICHIGAN THIRD JUDICIAL CIRCUIT WAYNE COUNTY | SUMMONS | CASE NO. 21-017284-CB Hon.Edward Ewell, Jr. |
|---|---|---|

Court address : 2 Woodward Ave., Detroit MI 48226

Court telephone no.: 313-224-5195

| Plaintiff's name(s), address(es), and telephone no(s) MARATHON PETROLEUM COMPANY LP | v | Defendant's name(s), address(es), and telephone no(s). HAYDEN & COMPANY |
|---|---|---|
| **Plaintiff's attorney, bar no., address, and telephone no** James E. Deline 45205 500 Woodward Ave Ste 2500 Detroit, MI 48226-5499 | | |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

## Civil Case

☒ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035

☐ MDHHS  and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the  complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court,

where it was given case number _____ and assigned to Judge _____.

The action ☐ remains   ☐ is no longer  pending.

Summons section completed by court clerk.

| SUMMONS |
|---|

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1.  You are being sued.
2.  **YOU HAVE 21 DAYS** after receiving this summons  and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3.  If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4.  If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date 12/16/2021 | Expiration date* 3/17/2022 | Court clerk Angila Mayfield |
|---|---|---|

Cathy M. Garrett- Wayne County Clerk.

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**MC 01** (9/19)          **SUMMONS**          MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

**SUMMONS**
Case No. : **21-017284-CB**

## PROOF OF SERVICE

TO PROCESS SERVER:  You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons.  You must make and file your return with the court clerk.  If you are unable to complete service you must return this original and all copies to the court clerk.

### CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

☐  **OFFICER CERTIFICATE**          **OR**          ☐  **AFFIDAVIT OF PROCESS SERVER**

| | |
|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that:    (notarization not required) | Being first duly sworn, I state that I am a legally competent adult, and I am not a party or an officer of a corporate party (MCR 2.103[A]),  and that:      (notarization required) |

☐ I served personally a copy of the summons and complaint.

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint, together with _____
_____List all documents served with the Summons and Complaint_____

_____

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled $ | Fee $ | | Signature _____ |
|---|---|---|---|---|
| Incorrect address fee $ | Miles traveled $ | Fee $ | Total fee $ | Name (type or print) _____ |
| | | | | Title _____ |

Subscribed and sworn to before me on _____ , _____ County, Michigan.
_____Date_____

My commission expires: _____     Signature: _____
_____Date_____          _____Deputy court clerk/Notary public_____

Notary public, State of Michigan, County of _____

### ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____
_____Attachments_____

_____ on _____
_____Day, date, time_____

_____ on behalf of _____.
Signature

Approved, SCAO

Original - Court
1st Copy- Defendant

2nd Copy - Plaintiff
3rd Copy -Return

| STATE OF MICHIGAN<br>THIRD JUDICIAL CIRCUIT<br>WAYNE COUNTY | **SUMMONS** | CASE NO.<br>**21-017284-CB**<br>**Hon.Edward Ewell, Jr.** |
|---|---|---|

Court address : 2 Woodward Ave., Detroit MI 48226                                    Court telephone no.: 313-224-5195

| Plaintiff's name(s), address(es), and telephone no(s)<br>MARATHON PETROLEUM COMPANY LP | v | Defendant's name(s), address(es), and telephone no(s).<br>NATIONAL FOAM, INC. |
|---|---|---|
| Plaintiff's attorney, bar no., address, and telephone no<br><br>James E. Deline 45205<br>500 Woodward Ave Ste 2500<br>Detroit, MI 48226-5499 | | |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

## Civil Case

☒ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court,

where it was given case number _____ and assigned to Judge _____.

The action ☐ remains  ☐ is no longer pending.

Summons section completed by court clerk.

| **SUMMONS** |
|---|

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1.  You are being sued.
2.  **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3.  If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4.  If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>12/16/2021 | Expiration date*<br>3/17/2022 | Court clerk<br>Angila Mayfield |
|---|---|---|

Cathy M. Garrett- Wayne County Clerk.

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**MC 01** (9/19)          **SUMMONS**          MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

**SUMMONS**
Case No. : **21-017284-CB**

## PROOF OF SERVICE

TO PROCESS SERVER:  You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons.  You must make and file your return with the court clerk.  If you are unable to complete service you must return this original and all copies to the court clerk.

### CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

☐ **OFFICER CERTIFICATE**       **OR**       ☐ **AFFIDAVIT OF PROCESS SERVER**

I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that:    (notarization not required)

Being first duly sworn, I state that I am a legally competent adult, and I am not a party or an officer of a corporate party (MCR 2.103[A]),  and that:    (notarization required)

☐ I served personally a copy of the summons and complaint.

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint, together with _____

List all documents served with the Summons and Complaint

_____

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled $ | Fee $ | |
|---|---|---|---|
| Incorrect address fee $ | Miles traveled $ | Fee $ | **Total fee** $ |

Signature _____

Name (type or print) _____

Title _____

Subscribed and sworn to before me on _____ , _____ County, Michigan.
Date

My commission expires: _____    Signature: _____
Date                                                          Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____
Attachments

_____ on _____
Day, date, time

_____ on behalf of _____.
Signature

Approved, SCAO

Original - Court 1st Copy- Defendant
2nd Copy - Plaintiff 3rd Copy -Return

| STATE OF MICHIGAN THIRD JUDICIAL CIRCUIT WAYNE COUNTY | SUMMONS | CASE NO. 21-017284-CB Hon.Edward Ewell, Jr. |
|---|---|---|

Court address : 2 Woodward Ave., Detroit MI 48226

Court telephone no.: 313-224-5195

| Plaintiff's name(s), address(es), and telephone no(s) MARATHON PETROLEUM COMPANY LP | v | Defendant's name(s), address(es), and telephone no(s). TYCO FIRE PRODUCTS, LP |
|---|---|---|

Plaintiff's attorney, bar no., address, and telephone no

James E. Deline 45205
500 Woodward Ave Ste 2500
Detroit, MI 48226-5499

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or  family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving  the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving  the family or family members of the person(s) who are the subject of the complaint.

## Civil Case

☒ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035

☐ MDHHS  and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the  complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court,

where it was given case number _____ and assigned to Judge _____.

The action ☐ remains  ☐ is no longer  pending.

Summons section completed by court clerk.

| SUMMONS |
|---|

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1.  You are being sued.
2.  **YOU HAVE 21 DAYS** after receiving this summons  and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3.  If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4.  If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date 12/16/2021 | Expiration date* 3/17/2022 | Court clerk Angila Mayfield |
|---|---|---|

Cathy M. Garrett- Wayne County Clerk.

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**MC 01** (9/19)           **SUMMONS**           MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

**SUMMONS**
Case No. : **21-017284-CB**

## PROOF OF SERVICE

TO PROCESS SERVER:  You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons.  You must make and file your return with the court clerk.  If you are unable to complete service you must return this original and all copies to the court clerk.

### CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

| ☐   **OFFICER CERTIFICATE** | **OR** | ☐   **AFFIDAVIT OF PROCESS SERVER** |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that:    (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult, and I am not a party or an officer of a corporate party (MCR 2.103[A]),  and that:    (notarization required) |

☐ I served personally a copy of the summons and complaint.

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint, together with _____

List all documents served with the Summons and Complaint

_____

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled $ | Fee $ | | Signature _____ |
|---|---|---|---|---|
| Incorrect address fee $ | Miles traveled $ | Fee $ | Total fee $ | Name (type or print) _____ |

Title _____

Subscribed and sworn to before me on _____ , _____ County, Michigan.

Date

My commission expires: _____    Signature: _____

Date                                                           Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

### ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____

Attachments

_____ on _____

Day, date, time

_____ on behalf of _____.

Signature

Approved, SCAO

Original - Court
1st Copy- Defendant

2nd Copy - Plaintiff
3rd Copy -Return

| STATE OF MICHIGAN<br>THIRD JUDICIAL CIRCUIT<br>WAYNE COUNTY | SUMMONS | CASE NO.<br>21-017284-CB<br>Hon.Edward Ewell, Jr. |
|---|---|---|

Court address : 2 Woodward Ave., Detroit MI 48226

Court telephone no.: 313-224-5195

**Plaintiff's name(s), address(es), and telephone no(s)**
MARATHON PETROLEUM COMPANY LP

v

**Defendant's name(s), address(es), and telephone no(s).**
WILLFIRE LLC

**Plaintiff's attorney, bar no., address, and telephone no**

James E. Deline 45205
500 Woodward Ave Ste 2500
Detroit, MI 48226-5499

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or  family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving  the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving  the family or family members of the person(s) who are the subject of the complaint.

## Civil Case

☒ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035

☐ MDHHS  and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the  complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐_____ Court,

where it was given case number _____ and assigned to Judge _____.

The action ☐ remains   ☐ is no longer  pending.

Summons section completed by court clerk.

| SUMMONS |
|---|

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1.  You are being sued.
2.  **YOU HAVE 21 DAYS** after receiving this summons  and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3.  If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4.  If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>12/16/2021 | Expiration date*<br>3/17/2022 | Court clerk<br>Angila Mayfield |
|---|---|---|

Cathy M. Garrett- Wayne County Clerk.

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**MC 01** (9/19)          **SUMMONS**          MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

**SUMMONS**
Case No. : **21-017284-CB**

## PROOF OF SERVICE

TO PROCESS SERVER:  You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk.  If you are unable to complete service you must return this original and all copies to the court clerk.

### CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

☐  **OFFICER CERTIFICATE**       **OR**       ☐  **AFFIDAVIT OF PROCESS SERVER**

I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that:    (notarization not required)

Being first duly sworn, I state that I am a legally competent adult, and I am not a party or an officer of a corporate party (MCR 2.103[A]),  and that:     (notarization required)

☐ I served personally a copy of the summons and complaint.

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint, together with _____
_____ List all documents served with the Summons and Complaint _____

_____

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled $ | Fee $ | |
|---|---|---|---|
| Incorrect address fee $ | Miles traveled $ | Fee $ | Total fee $ |

Signature _____

Name (type or print) _____

Title _____

Subscribed and sworn to before me on _____ , _____ County, Michigan.
_____ Date

My commission expires: _____    Signature: _____
_____ Date               Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____
_____ Attachments
_____ on _____
_____ Day, date, time

_____ on behalf of _____.
Signature

**STATE OF MICHIGAN**
**IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE**

MARATHON PETROLEUM COMPANY LP,

    Plaintiff,

        v.

3M COMPANY (f/k/a MINNESOTA MINING AND
MANUFACTURING CO.); NATIONAL FOAM,
INC.; TYCO FIRE PRODUCTS, LP; CHEMGUARD,
INC.; HAYDEN & COMPANY; WILLFIRE LLC;
and DOE DEFENDANTS 1 TO 20,

    Defendants.

Case No. 21 - _____ CB

HON.

---

James E. DeLine (P45205)
**KERR, RUSSELL AND WEBER, PLC**
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
(313) 961-0200
jdeline@kerr-russell.com
*Attorneys for Plaintiff*

Joe G. Hollingsworth (pending pro hac admission)
Donald W. Fowler (pending pro hac admission)
Carter F. Thurman (pending pro hac admission)
Pete Chattrabhuti (pending pro hac admission)
**HOLLINGSWORTH LLP**
1350 I Street, N.W.
Washington, D.C. 20005
Telephone: (202) 898-5800
jhollingsworth@hollingsworthllp.com
dfowler@hollingsworthllp.com
cthurman@hollingsworthllp.com
pchattrabhuti@hollingsworthllp.com

*Attorneys for Plaintiff*

---

*There exists no other pending or resolved civil action arising out of the transaction*
*or occurrence alleged in the Complaint.*

*This case involves a business or commercial dispute as defined by MCL 600.8031*
*and meets the criteria to be assigned to the business court.*

**COMPLAINT AND JURY DEMAND**

# TABLE OF CONTENTS

INTRODUCTION AND NATURE OF ACTION ................................................................. 1

PARTIES ................................................................................................................ 3

JURISDICTION AND VENUE ................................................................................. 8

GENERAL ALLEGATIONS .................................................................................... 8

    I.    Research and Development of PFAS .................................................... 8

    II.   3M's Specific Attempts to Conceal the Environmental Characteristics of PFAS ................. 11

    III.  Defendants Continually Sold PFAS-Containing AFFF to Marathon for Decades .......... 14

    IV.  Increased Regulation of PFAS ............................................................ 17

    V.   Marathon's Discovery of the Environmental Characteristics of PFAS-Containing   AFFF, and its Continued Commitment to the Community ............................. 20

COUNT I:  SILENT FRAUD .................................................................................. 23

COUNT II:  INNOCENT MISREPRESENTATION ................................................. 23

COUNT III:  NUISANCE - COMMON LAW/MCL 324.3109 .................................... 24

COUNT IV:  FAILURE TO WARN / MCL 600.2948(3) ........................................... 25

COUNT V:  PRODUCT DESIGN DEFECT ............................................................. 26

COUNT VI:  NEGLIGENCE .................................................................................. 27

COUNT VII:  NREPA PART 201 COST RECOVERY ............................................. 28

COUNT VIII:  NREPA PART 201 CONTRIBUTION ............................................... 29

COUNT IX:  UNJUST ENRICHMENT .................................................................. 31

COUNT X:  DECLARATORY JUDGMENT ........................................................... 31

PRAYER FOR RELIEF ......................................................................................... 32

The above-captioned Plaintiff (hereafter, "Marathon"), by and through its counsel, KERR, RUSSELL AND WEBER, PLC and HOLLINGSWORTH LLP, hereby states as its Complaint against above-named Defendants (collectively, the "Defendants") as follows:

## INTRODUCTION AND NATURE OF ACTION

1.  3M Company ("3M") is one of the largest chemical companies in the world, with annual revenues of $32 billion, an employee base of over 95,000 (including more than 8,000 scientists and researchers), and research facilities that dwarf those of most universities, major corporations, and even some countries.  It markets itself to customers based on its touted scientific expertise.

2.  In the 1940s, 3M began developing a group of organic fluorine chemical products—perfluoroalkyl and polyfluoroalkyl substances ("PFAS")—that were sold for a variety of industrial uses.  For example, two of the PFAS chemicals, commonly referred to as perfluorooctanoic acid ("PFOA") and perfluorooctanesulfonic acid ("PFOS"), when applied to a surface, make that surface water-repellant.  From the 1940s onward, 3M has been the world leader in understanding and using these chemicals, but it has kept secret much of what it has learned throughout the ensuing decades from regulators, customers, its own employees, and the public.

3.  PFOS, PFOA, and perfluorohexane sulfonate ("PFHxS") are but a few of the chemicals known as "Long-Chain" or "C-8" PFAS compounds because they possess longer and more stable carbon chains.

4.  Historically, these Long-Chain PFAS compounds have been used in a variety of applications.  One of the common applications of PFAS is in aqueous film-forming foam and

related products ("AFFF").[1]  Since the 1970s, Defendants have made and sold Long-Chain based PFAS-containing AFFF, including to Marathon.

5.      For purposes of this complaint, PFAS-containing AFFF will only refer to AFFFs containing these Long-Chain PFAS compounds.  PFAS-containing AFFF does not refer to AFFFs based on C-6, C-4 or other shorter chain compounds.

6.      AFFF are Class B firefighting foams used for fire suppression, fire training, and flammable vapor suppression.  These foams are used to extinguish Class B fires, which involve flammable and combustible liquids, such as gasoline, oil, and jet fuel.  In addition to PFOA and PFOS, and PFHxS, AFFF can also contain their salts, ionic states, and acid forms of molecules, as well as their "precursor" chemicals, and other PFAS compounds.

7.      As a result of their chemical structure, PFAS-containing AFFF are stable, mobile, persistent in the environment, and resistant to biodegradation.  When PFAS-containing AFFF are released into the environment, they migrate into and stay in surface water and groundwater causing contamination due to their environmental characteristics.

8.      3M formulated its own AFFF, 3M FC-600 Light Water™, that was sold to refineries, industrial facilities, fire training centers, and other customers all over the world.  For decades, 3M sold to Marathon 3M FC-600 Light Water™ and other PFAS-containing AFFF.

9.      In addition to 3M, all Defendants manufactured, marketed, distributed, supplied, sold, transported, and arranged for disposal of PFAS-containing AFFF to Marathon.

10.     In late 2018, as a result of Defendants' actions, Marathon was informed of PFAS contamination at its Detroit Refinery located in Wayne County, Michigan (the "Site").  Marathon

---

[1] PFAS-Containing AFFF may also refer to, among other compounds, the following: Alcohol-Resistant Aqueous Film-Forming Foam ("AR-AFFF"); Fluoroprotein Foam ("FP"); Alcohol-Resistant Fluoroprotein Foam ("FPAR"); Film-Forming Fluoroprotein Foam ("FFFP"); and Alcohol-Resistant Film-Forming Fluoroprotein Foam ("AR-FFFP").

is currently investigating, sampling and planning the remediation of this PFAS contamination. Due to this contamination, Marathon's use, enjoyment, and value of its properties have been impacted.  Additionally, Marathon now faces millions of dollars in response costs, disposal costs, replacement costs, and likely future litigation.

11.     3M and other Defendants designed, studied, and sold PFAS-containing AFFF compounds for decades.

12.     Upon learning of the environmental characteristics of certain PFAS compounds, the Defendants chose to suppress material information, control the scientific research available to the public, withhold information from regulators like the United States Environmental Protection Agency ("EPA"), and lull customers like Marathon into believing that PFAS-containing AFFF were safe and could not result in environmental contamination.

13.     In addition to its investigation and remedial costs, Marathon has previously undertaken efforts at the Site to store, house, remove from equipment, and dispose of PFAS-containing AFFF, which have been rendered useless and unusable by Michigan regulations. Defendants have yet to pay for any of these costs borne by Marathon.  Accordingly, Marathon is filing this action to recover costs it has incurred and will incur investigating and remediating the Site.

## PARTIES

14.     Marathon is a limited partnership comprised of three partners: Marathon Petroleum Corporation, a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in the State of Ohio; general partner MPC Investment LLC, a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located in the State of Ohio; and Giant Industries, Inc., a corporation

organized and existing under the laws of the State of Delaware with its principal place of business located in the State of Ohio.  Marathon owns the real property commonly known as 1001 S. Oakwood Avenue, Detroit, Michigan.

15.     Defendant **3M Company ("3M")** is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in St. Paul, Minnesota. 3M is a massive conglomerate with over 95,000 employees and extensive expertise in the chemical sciences.  It is in the business of using that expertise to design, manufacture, and sell household, commercial, and industrial products.  According to 3M, it manufactures over 60,000 products, and its revenues for 2020 exceeded $32 billion.

16.     On its website, 3M describes itself as a "global powerhouse" and a "constant name on the Fortune 500 list."  It touts its research and development capabilities, with 8,100 scientists and researchers worldwide, labs in over 36 countries, over 112,000 patents, and $1.7 billion in annual expenditures for research and development alone.

17.     At all relevant times, 3M designed, manufactured, marketed, distributed, and/or sold PFAS-containing AFFF, which were purchased, stored, and/or used by Marathon and/or were stored and/or used on properties owned and/or operated by Marathon causing injury to Marathon's property and the surrounding environment.

18.     Defendant **Tyco Fire Products, LP ("Tyco")** is a limited partnership organized and existing under the laws of the State of Delaware with its principal place of business located at One Stanton Street, Marinette, Wisconsin.

19.     On information and belief, Tyco is a subsidiary of Johnson Controls International Plc, an Irish public limited company listed on the New York Stock Exchange [NYSE: JCI].

20.     Tyco is the successor-in-interest to The Ansul Company ("Ansul"), having acquired Ansul in 1990.  After Tyco acquired Ansul in 1990, Tyco continued to manufacture, distribute, and sell PFAS-containing AFFF.  Ansul and Tyco (as the successor-in-interest to Ansul) will hereinafter be collectively referred to as "Tyco."   Tyco manufactured and currently manufactures the Ansul brand of products, including the Ansul brand of PFAS-containing AFFF.

21.     At all relevant times, Tyco designed, manufactured, marketed, distributed, and/or sold PFAS-containing AFFF, which were purchased, stored, and/or used by Marathon and/or were stored and/or used on properties owned and/or operated by Marathon, causing injury to Marathon's property and the surrounding environment.

22.     Defendant **National Foam, Inc. ("National Foam")** is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 141 Junny Road, Angier, North Carolina.

23.     National Foam previously manufactured the Universal Gold brand of AFFF products.

24.     National Foam currently manufactures the Angus brand of AFFF products and is a subsidiary of Angus International Safety Group, Ltd, a United Kingdom private limited company.

25.     At all relevant times, National Foam designed, manufactured, marketed, distributed, and/or sold PFAS-containing AFFF, which were purchased, stored, and/or used by Marathon and/or were stored and/or used on properties owned and/or operated by Marathon, causing injury to Marathon's property and the surrounding environment.

26.     Defendant **Chemguard, Inc. ("Chemguard")** is a corporation organized and existing under the laws of the State of Texas, with its principal place of business located at 204 South 6th Avenue, Mansfield, Texas.

27.     On information and belief, Chemguard is a subsidiary of Johnson Controls International Plc, an Irish public limited company listed on the New York Stock Exchange [NYSE: JCI].

28.     At all relevant times, Chemguard designed, manufactured, marketed, distributed, and/or sold PFAS-containing AFFF, which were purchased, stored, and/or used by Marathon and/or were stored and/or used on properties owned and/or operated by Marathon, causing injury to Marathon's property and the surrounding environment.

29.     Defendant **Willfire HC, LLC, doing business as Williams Fire and Hazard Control, Inc. ("Williams")**, is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located at 9605 Richard Wycoff Dr., Port Arthur, Texas.

30.     On information and belief, Williams is a wholly-owned subsidiary of either Chemguard or Tyco.

31.     On information and belief, both Tyco and Chemguard, and by extension Williams, are wholly-owned subsidiaries of Johnson Controls International Plc, an Irish public limited company listed on the New York Stock Exchange [NYSE: JCI].

32.     On information and belief, Williams received its PFAS-containing AFFF from Tyco.

33.     At all relevant times, Williams designed, manufactured, marketed, distributed, and/or sold PFAS-containing AFFF, which were purchased, stored, and/or used by Marathon and/or were stored and/or used on properties owned and/or operated by Marathon, causing injury to Marathon's property and the surrounding environment.

34.     Defendant **Hayden and Company** is a corporation organized and existing under the laws of the State of Illinois with its principal place of business located at 2604-B West 83rd Street, Darien, Illinois.

35.     At all relevant times, Hayden and Company designed, manufactured, marketed, distributed, and/or sold PFAS-containing AFFF, which were purchased, stored, and/or used by Marathon and/or were stored and/or used on properties owned and/or operated by Marathon, causing injury to Marathon's property and the surrounding environment.

36.     **Doe Defendants 1 to 20** are other suppliers, designers, manufacturers, marketers, distributors, and/or sellers of PFAS-containing AFFF, which were sold to, stored, and/or used by Marathon and/or were stored and/or used on properties owned and/or operated by Marathon, causing injury to Marathon's property and the surrounding environment.  When the Doe Defendants are identified, they will be added by name.

37.     All Defendants: (a) supplied, designed, manufactured, marketed, distributed, and or/sold PFAS-containing AFFF that were bought and used by Marathon; (b) are legally responsible for and committed each of the wrongful acts alleged in this Complaint; and (c) promoted PFAS-containing AFFF, despite the availability of reasonable alternatives and their actual or constructive knowledge that the contamination alleged in this Complaint would be the inevitable result of their conduct.

38.     To the extent any act or omission of any Defendant is alleged in this Complaint, the officers, directors, agents, employees, or representatives of each such Defendant committed or authorized each such act or omission or failed to supervise adequately or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs

of such Defendants, and did so while acting within the scope of their duties, employment, or agency.

39.     Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates, and divisions of the named Defendants.

## JURISDICTION AND VENUE

40.     This Court has jurisdiction over the subject matter of this action pursuant to MCL 600.605.

41.     This Court may exercise jurisdiction over Defendants pursuant to MCL 600.715 because they are, or at the relevant times were, authorized to do business in Michigan; are, or at the relevant times were, registered with the Corporation, Securities & Commercial Licensing Bureau of the Michigan Department of Licensing and Regulatory Affairs; are, or at the relevant times were, transacting business in Michigan, or otherwise intentionally availing themselves of the Michigan market through the distribution, sale, release, supply, transport, arrangement for disposal or treatment, handling, and/or use of PFAS-containing AFFF throughout the State of Michigan and/or at the relevant times owned, used, or possessed certain real and tangible property situated within the state.

42.     The amount in controversy exceeds $25,000.

43.     Venue is appropriate in Wayne County under MCL 600.1629(1).

## GENERAL ALLEGATIONS

I.      **Research and Development of PFAS**

44.     PFAS are a family of man-made fluorinated compounds, which contain bonded fluorine and carbon chains.

45.     PFAS are commonly known as "forever" chemicals because they are stable, extremely persistent in the environment, and resistant to typical biodegradation.

46.     PFAS generally adsorb poorly and tend to be mobile in soil, surface water, and groundwater systems.

47.     This combination of properties enables PFAS to readily migrate in soil, surface water, and groundwater.

48.     These characteristics also mean that once PFAS are released into the environment, they migrate and can cause contamination and injury to the surrounding areas.

49.     In the late 1940s, a scientist at Pennsylvania State University, Dr. Joseph Simons, developed a means for producing PFAS on a commercial scale.   The process is known as the Simons Cell Electrofluorination (or "Simons ECF") process.  Dr. Simons patented his ECF process in 1948.

50.     3M ultimately purchased Simons's patents in the 1950s and began developing products using PFAS.

51.     3M introduced its first Long-Chain PFAS-containing product to the market in the 1950s.

52.     During the ensuing decades, 3M developed and sold many other products containing Long-Chain PFAS, including AFFF, stain repellants, stain removers, paints, hydraulic fluids, and semi-conductors.

53.     The remaining Defendants also began selling PFAS-containing AFFF as early as the 1970s.

54.     There are many different types of Long-Chain PFAS, each of which has unique properties.

55.     The three primarily at issue in this case are PFOA, PFOS, and PFHxS.  On information and belief, other Long-Chain PFAS or perfourochemicals ("PFCs") found in AFFF may include, but are not limited to, the following: Perfluorobutyrate ("PFBA"), Perfluoropentanoic Acid ("PFPeA"), Perfluorobutane sulfonic acid ("PFBS"), Perfluorohexanoic acid ("PFHxA"), and Perfluoroheptanoic acid ("PFHpA"), among other PFAS compounds.  PFAS are known to be mobile, stable, persistent, and resistant to biodegradation.

56.     The allegations of this complaint do not, and should not be inferred to, refer to firefighting foams based on shorter chain chemistry such as C-6-based AFFF.  Additionally, this complaint does not allege, nor seek remedy for, contamination relating to "Mil-Spec AFFF," which are PFAS-containing AFFF manufactured in accordance with military specification and used on military bases, airfields, and Navy ships, and at certain civilian airports, as Mil-Spec AFFF has never been used at the Site.

57.     PFOS, however, and its close analog PFHxS, is a PFAS compound that is unique to 3M.  On information and belief, 3M was the only manufacturer of PFOS in the United States until both PFOS and PFHxS were phased out in 2002 by the EPA.

58.     On information and belief, 3M's common PFAS-containing product, AFFF 3M FC-600 Light Water™, contained the 3M-specific Long-Chain PFAS compounds PFOS and PFHxS, among other PFAS compounds.

59.     Such Long-Chain PFAS have been used for decades in a wide array of consumer and industrial products, including AFFF.

60.     AFFF were developed to extinguish liquid, oil, fuel, and other flammable substances.  AFFF are used as a foam solution intended to be sprayed directly onto fires or spilled fuel.

61.     PFAS-containing AFFF spread and expand across the surface of the liquid fires rapidly.  Once spread over the coverage area, many PFAS-containing AFFF products create an aqueous film on the surface of the flammable liquid, which aids in the continued suffocation of fires.   Additionally, PFAS-containing AFFF work to suppress fires by smothering the fire, separating the flame from its fuel, cooling the fuel and any adjacent metal surfaces, and suppressing the release of flammable vapors.

## II.     3M's Specific Attempts to Conceal the Environmental Characteristics of PFAS

62.     From 1958 and continuing until and after 2002 (when 3M phased out and stopped selling PFOS and PFHxS products), 3M has been well aware of the various environmental characteristics of Long-Chain PFAS and/or its byproducts.  Yet 3M never shared any of its knowledge with Marathon, when such disclosure would have materially impacted Marathon's purchase, use, and disposal practices of PFAS-containing AFFF.

63.     In addition to concealing the characteristics of PFAS from Marathon, 3M took steps to conceal the characteristics of PFAS from the scientific community.  In 1975, two academic researchers—Dr. William Guy and Dr. Donald Taves—contacted 3M regarding their finding of organic fluorine in blood from blood banks around the country and their belief that 3M's PFOS-based products may have been the source.  3M pleaded ignorance and actively sought to discredit the Guy/Taves study and the authors' contention that PFOS products were the source of the PFAS. The Guy/Taves study proved prescient.  By 1977, 3M itself confirmed what Guy/Taves already knew—that PFOS was the major organic fluorine compound found in human blood nationwide.

64.     Not only did 3M know that its PFOS was in human blood, 3M also understood very early on that PFAS were mobile.  That is, 3M understood that PFAS could migrate into the soil and later into the groundwater.  In the 1960s, through 3M's manufacturing of PFAS at its own

plants, and the subsequent significant volumes of PFAS-containing wastes associated with this process, 3M was aware that its waste chemicals had reached the groundwater in one of the waste disposal sites it used for PFAS chemicals, the Woodbury Site in Minnesota. 3M later discovered that chemicals disposed of at the Woodbury Site had within about one year of operation migrated to the water table 75 feet below ground.

65.     The Woodbury Site was not 3M's only PFAS-contaminated site. Around this same time, 3M learned that groundwater beneath another disposal site in Cottage Grove, Minnesota had contaminated a nearby water well.

66.     By 1967, 3M learned of remediation technology for PFAS contamination, when a hydrologist retained by 3M counseled the company that a carbon filtration system could produce "high quality water free of organic chemicals."

67.     In addition to concealing information from its customers, 3M concealed critical information about PFAS from government regulators. 3M was obligated under federal law to notify the EPA immediately of information that reasonably supported the conclusion that one of its products could result in injury to the environment. *See* 15 U.S.C. § 2607(e) (hereinafter "TSCA"). 3M was under this obligation since 1976, when TSCA was enacted. 3M, however, chose deceit rather than disclosure and withheld from the EPA numerous scientific studies relating to the environmental characteristics of PFAS—including studies it had conducted as early as the 1950s to the 1970s.

68.     In March 1999, a 3M toxicologist, Dr. Richard Purdy, became so concerned with 3M's failure to inform the EPA about the environmental characteristics of PFAS that he copied the EPA on his resignation letter.

69.     In his resignation letter, Dr. Purdy explained that he was resigning from 3M due to his profound disappointment in 3M's handling of the environmental characteristics of PFOS.

70.     Dr. Purdy's resignation letter outlined 3M's obfuscation, delays, and attempts to roadblock research into the environmental characteristics of PFOS.  Dr. Purdy noted that he had conducted an assessment for 3M that showed PFOS was a substance that should be reported to the EPA under TSCA.  Over Dr. Purdy's objections, 3M chose deceit over disclosure and did not submit the report to EPA at that time.

71.     Dr. Purdy even detailed in an internal email how 3M stalled his efforts to conduct further studies into the characteristics of PFAS and how 3M continually ignored the plans of its own employees to collect essential data for conducting risk assessments of PFOS.

72.     Dr. Purdy also noted in his resignation letter that there were alternative designs available to 3M.  According to Dr. Purdy, 3M previously considered chemicals that are just as stable and biologically available as PFOS.  In 2000, the same year the phase-out for PFOS was announced publicly, 3M stated that it expected to come up with substitutes for PFOS within the same year, suggesting that the delayed implementation of the alternative formulation was from 3M's decades-long effort to stall and suppress research into PFAS.  Indeed "Short-Chain" PFAS compounds, which generally contain fewer carbon atoms and are thus less stable and less persistent than Long-Chain PFAS compounds, are currently found in C-6 based AFFF, and these C-6 AFFFs have been utilized by conscientious AFFF users, such as Marathon, which have become aware of the environmental characteristics of Long-Chain PFAS such as PFOS, PFOA, and PFHxS.

73.     Ultimately, in April 2006, the EPA fined 3M more than one million dollars in penalties for over 200 violations of the TSCA dating back decades.  In levying the fine, the EPA noted that many of 3M's violations concerned its reporting, or failure to report, on PFCs and that

the information 3M failed to report was "valuable" and would have "help[ed] the scientific community to better understand the toxic substances in the environment."

74.     Evidence of 3M's complex scheme to conceal its knowledge of the characteristics of PFAS was brought to light in papers filed by the State of Minnesota in November 2017.  The State of Minnesota filed suit against 3M for its contamination of the natural resources in Minnesota because of its manufacturing of Long-Chain based PFAS products and its disposal of wastes stemming from its production processes.  In its motions, the State of Minnesota comprehensively chronicled 3M's decades-long campaign to distort the science and manipulate the press, its customers, and regulators about the characteristics of PFAS.  Shortly before trial, 3M settled the suit with the state for $850 million on February 20, 2018.

## III.   Defendants Continually Sold PFAS-Containing AFFF to Marathon for Decades

75.     Since the 1960s, Defendants have continually manufactured, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used PFAS-containing AFFF, including selling to Marathon.

76.     Defendants have known for decades that PFAS are mobile, stable, persistent, and resistant to biodegradation and that because their AFFF contains PFAS, the release of Defendants' PFAS-containing AFFF could cause environmental contamination.   Notwithstanding that knowledge, Defendants persistently and intentionally hid the characteristics of PFAS-containing AFFF from Marathon, state and federal regulators, and the public.

77.     Defendants arranged for PFAS-containing AFFF to be disposed into the environment as a result of, or in connection with their distribution, sale, release, supply, transport, arrangement for disposal or treatment, and/or handling of PFAS-containing AFFF to Marathon.

78.     The Defendants have earned substantial profits from Marathon with regard to their business practices related to PFAS-containing AFFF.

79.     Despite their explicit knowledge of the environmental characteristics of PFAS-containing AFFF, Defendants deliberately and intentionally concealed these characteristics of PFAS-containing AFFF from Marathon, state and federal regulators, and the public at large.

80.     Instead of notifying Marathon of the environmental characteristics associated with their PFAS-containing AFFF, Defendants repeatedly assured Marathon that their products were environmentally sound, effective, and appropriate for widespread use.

81.     At all relevant times, Defendants, through their acts and/or omissions, sought to control the science surrounding PFAS, and in particular PFAS-containing AFFF, preventing Marathon from discovering the existence, adverse impacts, and extent of any contamination caused by PFAS-containing AFFF at the Site, which are now regulated and have caused the need for remediation at the Site in accordance with Michigan regulations and enforcement.

82.     At all relevant times, Defendants, through their acts and/or omissions, concealed and/or withheld information from Marathon, state and federal regulators, and the public that would have properly and fully alerted Marathon to the environmental characteristics posed by PFAS-containing AFFF and the environmental contamination that could occur as a result of these characteristics.

83.     At all relevant times, Defendants failed to discourage Marathon from continuing to use their PFAS-containing AFFF products, which caused PFAS to be released into the environment surrounding the Site, despite their knowledge of the mobility, stability, persistence, and resistance to biodegradation characteristics associated with PFAS-containing AFFF.

84.     Defendants' actions have caused detections of PFAS at the Site, which Marathon is now being directed to investigate, sample, and possibly remediate.

85.     Despite their knowledge that PFAS-containing AFFF would likely cause environmental contamination, and despite their admitted availability of reasonable and less problematic alternatives, Defendants failed to take appropriate precautionary measures to prevent or mitigate contamination caused by their PFAS-containing AFFF products.

86.     Defendants repeatedly promoted the PFAS-containing AFFF products as being environmentally sound and appropriate for use by Marathon.

87.     At all times relevant to this litigation, Defendants were or should have been aware that contamination to the Site and surrounding environment was inevitable as a result of their sale of PFAS-containing AFFF, due to PFAS's mobility, persistence, and resistance to biodegradation, and that this contamination resulted from the normal and foreseeable use of PFAS-containing AFFF manufactured, distributed, and sold by Defendants.

88.     At all times relevant to this litigation, Defendants were or should have been aware that Marathon would rely upon their acts/or omissions in purchasing the PFAS-containing AFFF products from Defendants, and such reliance resulted in detection of PFAS at the Site, which Marathon is now investigating and cleaning up at the direction of the Great Lakes Water Authority ("GLWA") and the Michigan Department of Environment, Great Lakes, and Energy ("EGLE").

89.     Defendants possess—and have always possessed—vastly superior knowledge, resources, experience, and other advantages, in comparison to any person or any agency, concerning the nature and properties of PFAS and specifically PFAS-containing AFFF.

90.     In addition, by virtue of this superior knowledge, due to Defendants' silence or misleading statements regarding the nature and impacts of their PFAS-containing AFFF products,

Defendants had a duty to disclose to Marathon the truth about the nature of their PFAS-containing AFFF products.

## IV.    **Increased Regulation of PFAS**

91.    The EPA and state environmental agencies have begun investigating various PFAS compounds, including PFOA, PFOS, and PFHxS.  These agencies have begun establishing regulatory, cleanup, health standards, and guidelines for PFAS.  The EPA has currently set its drinking water health advisory for PFOA and PFOS combined at 70 ppt.

92.    The EPA is currently moving forward with various regulatory actions, including listing PFOA, PFOS, and PFHxS as hazardous substances under Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), listing PFAS as hazardous wastes under the Resource Conservation and Recovery Act ("RCRA"), and creating health advisories for lifetime exposure to PFAS.

93.    In 2019, the EPA released an extensive PFAS Action Plan, which seeks to provide both short-term solutions and long-term strategies to address PFAS substances in the environment. The action plan addresses over twenty key focus areas, including addressing PFAS in drinking water, reducing PFAS exposure, increasing research into the characteristics and environmental fate of PFAS, and funding additional PFAS efforts.

94.    The EPA has published a proposed rulemaking under TSCA for PFAS relating to increased categorization and indexing of chemical properties of PFAS.  This proposal would require companies to report information, including the volume of PFAS they manufacture and its chemical identity.

95.     State regulators have also taken notice.  In November 2017, Michigan established the Michigan PFAS Action Response Team ("MPART") to address concerns about PFAS contamination in Michigan.

96.     The State of Michigan's Part 4 Rules, Water Quality Standards (of Part 31, Water Resources Protection, of Act 451 of 1994), specify water quality standards for all waters of the state.

97.     Michigan has established water quality standards for surface water for PFOS and PFOA under Rule 57 of the Part 4 Water Quality Standards of Part 31 of NREPA.  The applicable water quality standards for PFOS is 12 ppt for streams that are not used for drinking water and 11 ppt for those used as a drinking water source.  Similarly, the water quality standard for PFOA is 12,000 ppt for surface waters that are not used for drinking water and 420 ppt for those used as a drinking water source.

98.     Additionally, on January 9, 2018, the Michigan Department of Environmental Quality, the predecessor to EGLE, established drinking water cleanup criteria for PFAS of 70 ppt combined for PFOA and PFOS under the authority of Part 201, which is in line with the EPA's Lifetime Health Advisory.

99.     On August 3, 2020, EGLE adopted the following new standards aimed at protecting Michiganders from PFAS contamination in municipal drinking water:

| PFAS Compound | Drinking Water Standards |
|---|---|
| PFNA | 6 ng/L (ppt) |
| PFOA | 8 ng/L (ppt) |
| PFHxA | 400,000 ng/L (ppt) |
| PFOS | 16 ng/L (ppt) |
| PFHxS | 51 ng/L (ppt) |
| PFBS | 420 ng/L (ppt) |
| HFPO-DA (GenX) | 370 ng/L (ppt) |

100.    During this same time, EGLE also updated Michigan's existing groundwater clean-up criteria of 70 ppt for PFOS and PFOA.  The new groundwater standard is 8 ppt for PFOA, 16 ppt for PFOS, and 51 ppt for PFHxS.

101.    These new levels also represent the current cleanup criteria under Michigan Act 245 of 1929 ("NREPA Part 201") for groundwater used as drinking water under the authority of Mich. Admin. Code R. 299.6.

102.    Given the existence of cleanup criteria under NREPA Part 201, PFAS-containing AFFF, including those containing PFOA, PFHxA, GenX, and the 3M specific PFOS and PFHxS, are considered "hazardous substances" under Section 20101(1)(x) of NREPA Part 201, MCL§ 324.20101(1)(x).

103.    The State of Michigan has determined that PFAS-containing AFFF are "hazardous substances" under NREPA Part 201 in recent litigations.  On August 20, 2020, the State of Michigan filed suit in both the Ingham County Circuit Court and the United States District Court

for the Western District of Michigan, against 3M, National Foam, Chemguard, Tyco, and other commercial suppliers of PFAS-containing AFFF for alleged natural resource damages caused by the development, sale, release, supply, transport, arrangement for disposal or treatment, handling, and use of PFAS-containing AFFF by the Defendants.

## V.   Marathon's Discovery of the Environmental Characteristics of PFAS-Containing AFFF and its Continued Commitment to the Community

104.   Marathon used PFAS-containing AFFF at the Site with assurances from, and as directed by, Defendants.

105.   Marathon relied upon Defendants' increased knowledge of the environmental characteristics of PFAS-containing AFFF in making its decisions to purchase and use PFAS-containing AFFF.

106.   PFAS-containing AFFF were utilized at the Site to address fires, in training exercises, and in response to mutual aid calls made by the City of Detroit and other municipal firefighting departments.

107.   In 2018, Marathon undertook sampling of its wastewaters emanating from the Detroit Refinery in compliance with Parts 31 and 201 of NREPA.  The results showed levels of Long-Chain PFAS such as PFOA, PFOS, and PFHxS above applicable criteria.

108.   Later that same year, on December 20, 2018, Marathon was issued a Notice of Violation by GLWA, identifying Marathon as a potential source of white foam that was observed emerging from a storm water basin in Melvindale, Michigan near the Site.

109.   At the direction of GLWA, Marathon has begun investigating, sampling, and planning remediation of the Site.

110.    Since Marathon began wastewater sampling in 2018, Marathon has spent over $6,471,989 assessing and investigating the Site, as well as examining the viability of various treatment options.

111.    As of 2019, Marathon has been forced to store or adequately dispose of 3M FC-600 Light Water™, Thunderstorm, and National Foam Universal Gold PFAS-containing AFFF from the Site.

112.    These PFAS-containing AFFF inventories at the Site have been replaced by alternative foams, including C-6 AFFF and fluorine-free foam, at Marathon's expense.

113.    Refineries, bulk storage facilities, and terminals, such as those owned and operated by Marathon, maintain and/or use AFFF to extinguish Class B fires.  Marathon and its facilities are the intended consumers of Defendants' PFAS-containing AFFF products.

114.    Marathon owns and operates a refinery and associated facilities in Detroit, Michigan, where Defendants' AFFF products were marketed, purchased, stored, and/or used.

115.    As a result of Marathon's historic use of PFAS-containing AFFF, Marathon has incurred and will continue to incur costs of addressing PFAS contamination related to Defendants' PFAS-containing AFFF products.

116.    Defendants understood the characteristics of their PFAS-containing AFFF products for several decades before Marathon, state and federal regulators, and the public but actively concealed and misrepresented the nature of PFAS compounds to maximize their own profits. Further, Defendants were aware of alternative product designs, though they have only shifted towards Short-Chain PFAS in recent years.

117.    Defendants, by their negligent, reckless, and willful acts and omissions, as set forth above, have, among other things, knowingly withheld information from Marathon regarding the

environmental characteristics of PFAS-containing AFFF, which has resulted in Marathon incurring and continuing to incur costs of addressing PFAS contamination at the direction of GLWA and other regulators.

118.    These costs were incurred by Marathon's reliance on Defendants' increased knowledge of PFAS-containing AFFF and Defendants' assurances regarding PFAS-containing AFFF's environmental characteristics.

119.    As a direct and proximate result of the conduct, omissions, and products of the Defendants, Marathon has incurred and will continue to incur substantial damages and costs associated with their products at the Site, including but not limited to disposing of and replacing unused products containing PFAS-containing AFFF, and continued investigation and remediation of Marathon's Site.  Defendants never revealed the environmental characteristics of their PFAS-containing AFFF products and, merely because Marathon purchased and used Defendants' AFFF products at the Site exactly as intended and instructed, Marathon is now exposed to costs and damages to which it would not have otherwise been exposed.  Marathon did not know, and could not have known, the environmental characteristics of the products it was using – or the subsequent investigation and cleanup it would be directed to conduct because of Defendants' AFFF products.

120.    Accordingly, Marathon brings this action for the following: (1) compensatory and exemplary damages consisting of general and site-specific costs and damages incurred and to be incurred by Marathon including, but not limited to, costs to dispose of unused AFFF products, replacement costs, costs of identifying, investigating, monitoring, and/or remediating Defendants' AFFF products and related costs, and real property environmental stigma/loss of market value damages; (2) declarative relief, finding Defendants liable for all future investigation, remediation,

and restoration costs associated with the Site; and (3) such other equitable relief as may be appropriate at law or equity under the facts established and proven by Plaintiff.

## COUNT I: SILENT FRAUD

121.     Marathon repeats, re-alleges, and incorporates herein by reference each and every allegation contained in the preceding paragraphs, as though set forth herein.

122.     Defendants, as vendors of PFAS-containing AFFF, had a legal duty under MCL 600.2946-600.2949 and an equitable duty to disclose material facts about the environmental characteristics of their products, particularly after the Defendants acquired new information that made their previous affirmative statements misleading or untrue.

123.     Defendants failed to disclose additional information they learned about the environmental characteristics and disposal concerns surrounding their PFAS-containing AFFF and failed to warn Marathon about the knowledge of the environmental characteristics of PFAS they subsequently gained.

124.     Defendants failed to disclose this additional information with the intention of inducing Marathon's reliance on, including its continued purchases of, PFAS-containing AFFF.

125.     Defendants' false representations were reasonably relied upon by Marathon in its decision to purchase and use PFAS-containing AFFF.

126.     As a result of this reliance, Marathon now faces millions of dollars in investigation, sampling, and remediation costs.

## COUNT II: INNOCENT MISREPRESENTATION

127.     Marathon repeats, re-alleges, and incorporates herein by reference each and every allegation contained in the preceding paragraphs, as though set forth herein.

128.    Defendants failed to disclose material information and made affirmative false statements to Marathon regarding the environmental characteristics of PFAS compounds in PFAS-containing AFFF.

129.    Based on these false statements and misrepresentations, Marathon entered into contracts with all Defendants for the purchase of PFAS-containing AFFF.

130.    Based on these false statements and misrepresentations, Marathon purchased and used PFAS-containing AFFF from Defendants for decades.

131.    Because of these false statements and misrepresentations, Marathon is now faced with millions of dollars in cleanup costs, litigation costs, and disposal costs.

## COUNT III: NUISANCE - COMMON LAW/MCL 324.3109

132.    Marathon repeats, re-alleges, and incorporates herein by reference each and every allegation contained in the preceding paragraphs, as though set forth herein.

133.    The use and disposal of PFAS-containing AFFF have caused an unreasonable interference with the use and enjoyment of Marathon's properties.

134.    Defendants produced and sold PFAS-containing AFFF knowing that they would contaminate surface water or groundwater and pollute the environment.  As a result of Defendants' sales of chemicals to Marathon that the State of Michigan has deemed harmful and a hazardous substance and that 3M knew or could reasonably foresee would be disposed of at Marathon's properties, Marathon has suffered property damage, including at its Detroit Refinery.

135.    Moreover, PFAS-containing AFFF caused pollution to surface water or groundwater in and around the Site.  The pollution constitutes a public or private nuisance.

136.     As a result of the pollution caused by PFAS-containing AFFF, Marathon is now suffering unique harms separate from the general public, including significant liability and remediation costs.

**COUNT IV: FAILURE TO WARN / MCL 600.2948(3)**

137.     Marathon repeats, re-alleges, and incorporates herein by reference each and every allegation contained in the preceding paragraphs, as though set forth herein.

138.     Marathon's use and disposal of PFAS-containing AFFF was reasonably foreseeable to Defendants.  Defendants knew of Marathon's disposal practices and regularly advised customers like Marathon of appropriate methods to dispose of Defendants' products.

139.     Defendants were aware that the environmental characteristics of PFAS-containing AFFF might result in contamination that would need to be investigated and remediated, and Defendants had a duty to warn Marathon of those risks.

140.     Defendants failed to warn Marathon of any of the environmental characteristics of PFAS, and their effect on use and disposal of PFAS-containing AFFF, even though they were in a superior and unique position to understand these characteristics.

141.     Defendants failed to warn Marathon that PFAS would reach surface water or groundwater and that Marathon might be forced to investigate the Site for potential PFAS contamination.

142.     Defendants knew or should have known of the environmental characteristics of PFAS-containing AFFF as early as the 1960s and at all times thereafter.

143.     To the extent Defendants learned of any environmental characteristics after it sold PFAS-containing AFFF to Marathon, Defendants also failed to warn Marathon of the environmental characteristics of PFAS after it sold PFAS-containing AFFF products to Marathon.

144.     The environmental characteristics of PFAS were neither obvious nor known to Marathon, nor were they a matter of common knowledge to other purchasers of PFAS-containing AFFF.

145.     If Marathon had known that its use of PFAS-containing AFFF could cause surface water, groundwater, or environmental contamination, it never would have purchased the product in the first instance or would have ceased using the product earlier, adopted different disposal practices, and/or begun cleaning up at an earlier date.

146.     As a result of Defendants' failure to warn Marathon of the risks of PFAS, Marathon's properties have been damaged and surface water on and the groundwater underneath those properties have been contaminated by PFAS.  Marathon now faces significant potential liability and property damage.

## COUNT V: PRODUCT DESIGN DEFECT

147.     Marathon repeats, re-alleges, and incorporates herein by reference each and every allegation contained in the preceding paragraphs, as though set forth herein.

148.     Defendants are in the business of designing, manufacturing, and distributing numerous Long-Chain PFAS-containing products, including PFAS-containing AFFF.

149.     Marathon purchased PFAS-containing AFFF directly from Defendants or their agents beginning in the 1970s and continuing into the 2000s.

150.     Defendants had a duty to design, manufacture, and distribute its chemical products in a manner that would not cause environmental pollution and/or surface water or groundwater contamination when used for the purposes for which they were designed.

151.    Defendants breached their duty by designing, manufacturing, and distributing Long-Chain PFAS-containing products, including PFAS-containing AFFF, knowing that they would and did cause environmental pollution and surface water or groundwater contamination.

152.    It was reasonably foreseeable to Defendants, and Defendants knew, that their customers, including Marathon, would use and dispose of PFAS-containing AFFF in a way that could cause PFAS to pollute the environment and contaminate surface water or groundwater.

153.    There was a reasonable alternative design available that would have reduced the foreseeable risk of harm posed by the older formulation of PFAS-containing AFFF while maintaining the product's usefulness and desirability.

154.    As a result of Defendants' defective PFAS-containing AFFF, Marathon's properties have been damaged and surface water on and the groundwater underneath the properties have been contaminated by PFAS.  Marathon now faces significant potential liability, cleanup costs, and property damage.

## COUNT VI: NEGLIGENCE

155.    Marathon repeats, re-alleges, and incorporates herein by reference each and every allegation contained in the preceding paragraphs, as though set forth herein.

156.    Defendants owed a duty to act with care in creating, manufacturing, selling, and advising customers regarding the use and disposal of its PFAS-containing AFFF products.

157.    Defendants breached their duty by engaging in the conduct alleged above including, but not limited to, creating a product with environmental characteristics that would result in environmental contamination, failing to take action to mitigate those risks, selling products with knowledge of these environmental characteristics, and failing to disclose those environmental characteristics to their customers, including Marathon, regulators, and the general public.

158.    Had Marathon been aware of the environmental characteristics of PFAS-containing AFFF, it never would have used the product, or would have switched to an alternative sooner.

159.    As a result of Defendants' negligence, Marathon's properties have been damaged and surface water on and the groundwater underneath the properties have been contaminated by PFAS.  Marathon now faces significant potential liability, cleanup costs, and property damage.

## COUNT VII: NREPA PART 201 COST RECOVERY

160.    Marathon repeats, re-alleges, and incorporates herein by reference each and every allegation contained in the preceding paragraphs, as though set forth herein.

161.    Marathon is a "person" within the meaning of Part 201 of NREPA, MCL 324.20126.

162.    Defendants are each a "person" within the meaning of Part 201 of NREPA, MCL 324.20126.

163.    The Site is a "facility" within the meaning of Part 201 of NREPA, MCL 324.20101(1)(s).

164.    PFAS are "hazardous substances" under Part 201 of the NREPA, MCL 324.20101(1)(x).

165.    PFAS including PFOA, PFOS, and PFHxS are "hazardous substances" under Part 201 the NREPA, MCL 324.20101(1)(x), based upon EGLE's establishment of residential drinking water cleanup criteria for PFOA, PFOS, and PFHxS under Mich. Admin. Code R 299.6(12), effective January 10, 2018, and under Mich. Admin. Code R 325.10604g, effective August 3, 2020.

166.     The leaking, emitting, discharging, escaping, leaching, dumping, and disposal of hazardous substances constitute a "release" or "threat of release" as those terms are defined in MCL 324.20101(1)(pp) and MCL 324.20101(1)(ccc).

167.     PFAS have been released into the Site.

168.     EGLE has established cleanup criteria for PFOA, PFOS, and PFHxS for exposure pathways including surface water, groundwater-surface water interface, and groundwater as a source of drinking water.  MCL 324.20120e(1)(a), Mich. Admin. Code R. 299.6(12).

169.     The levels of PFOA, PFOS, and PFHxS in surface water and groundwater at and around the Site have historically exceeded and currently exceed the concentrations that satisfy the cleanup and exposure criteria under Part 201.

170.     Defendants arranged for disposal or treatment of PFAS-containing AFFF, which contains PFAS and other "hazardous substances" at the Site within the meaning of Part 201 of NREPA, MCL 324.20126(1)(b).

171.     In connection with the releases of "hazardous substances" at the Site, Marathon has incurred and will incur "costs of response activity" within the meaning of Part 201, MCL 324.20101(1)(ww) and MCL 324.20126a(1)(b), to remediate the facility.  The costs of response activity were reasonably incurred under the circumstances.

172.     Defendants are liable, pursuant to Part 201 of NREPA, MCL 324.20126a(1), to Marathon for past and future costs of response activities.

**COUNT VIII: NREPA PART 201 CONTRIBUTION**

173.     Marathon repeats, re-alleges, and incorporates herein by reference each and every allegation contained in the preceding paragraphs, as though set forth herein.

174.    Marathon is a "person" within the meaning of Part 201 of NREPA, MCL 324.20126.

175.    Defendants are each a "person" within the meaning of Part 201 of NREPA, MCL 324.20126.

176.    The Site is a "facility" within the meaning of Part 201 of NREPA, MCL 324.20101(1)(s).

177.    There was an actual or threatened "release" of "hazardous substances" within the meaning of Part 201, MCL 324.20101(1)(pp) and MCL 324.20126.

178.    Defendants arranged for disposal or treatment of PFAS-containing AFFF, which contain PFAS and other "hazardous substances" within the meaning of Part 201, MCL 324.20126(1)(d).

179.    In connection with the releases of PFAS-containing AFFF and other "hazardous substances" at the Site, Marathon has incurred and will incur "costs of response activity" within the meaning of Part 201, MCL 324.20129(3).   The costs of response activity were reasonably incurred under the circumstances.

180.    Marathon has incurred, and may be ordered to incur, costs of response activity associated with remediation of the Site, which costs are greater than Marathon's equitable share of those costs.

181.    Defendants are liable, pursuant to Part 201, MCL 324.20126 (1), and MCL 324 20129(3), to Marathon for past and future costs of response activity paid by Marathon in excess of Marathon's equitable share of such costs.

## COUNT IX: UNJUST ENRICHMENT

182.   Marathon repeats, re-alleges, and incorporates herein by reference each and every allegation contained in the preceding paragraphs, as though set forth herein.

183.   Marathon has incurred and will continue to incur expenses in connection with the use and presence of Defendants' PFAS-containing AFFF products at the Site, including disposal and replacement costs of unused products, and identification, investigation, monitoring, remediation, assessment, and other costs incurred as a result of the Defendants' fraud and other acts and/or omissions described herein.

184.   Defendants are responsible for expenditures related to Defendants' PFAS-containing AFFF products, which were caused by the use of their products.  In accordance with equitable principles, Defendants should have to pay these costs.  It would be unjust for Defendants to retain the benefit of Marathon's expenditures incurred in connection with their products.  For Defendants to fail to make restitution to Marathon would be inequitable.  Defendants have been unjustly enriched at Marathon's expense.

185.   Accordingly, Marathon requests restitution for the full amount by which Defendants were unjustly enriched and an injunction ordering Defendants to return all monies by which they were unjustly enriched as a result of Marathon's expenditures in connection with Defendants' AFFF products.

## COUNT X: DECLARATORY JUDGMENT

186.   Marathon repeats, re-alleges, and incorporates herein by reference each and every allegation contained in the preceding paragraphs, as though set forth herein.

187.   The facts and circumstances of this case present an actual controversy regarding the rights and legal relations of the parties.

188.    The rights of the parties can only be determined by declaratory judgment.

189.    Marathon is entitled under MCR 2.605 to a declaratory judgment declaring and adjudging, among other things, that:

> A.  Defendants' past and/or present manufacture, sale, supply, handling, and transportation arranged for Marathon's disposal of a NREPA Part 201 hazardous substance at a facility owned or operated by another person, and that such actions require Defendants to pay Marathon's response costs to investigate, sample, and remediate the Site;
>
> B.  Defendants are liable for any further response activity costs or damages incurred by Marathon in connection with the Site;
>
> C.  All Defendants are strictly liable, and jointly and/or severally liable as appropriate, to Marathon for the claims set forth above; and
>
> D.  Marathon's contracts with one or more of the Defendants for the purchase of PFAS-containing AFFF are rescinded.

## **PRAYER FOR RELIEF**

WHEREFORE, Marathon requests judgment in its favor and against all of the Defendants as follows:

A.    Declare and adjudge that Defendants' past and/or present manufacture, sale, supply, handling, and transportation arranged for Marathon's disposal of a NREPA Part 201 hazardous substance at a facility owned or operated by another person, and that such actions require Defendants to pay Marathon's response costs to investigate, sample, and remediate the Site;

B.    Holding and declaring all Defendants to be strictly liable, and jointly and/or severally liable as appropriate, to Marathon for the claims set forth above, and awarding Marathon damages consisting of costs incurred and to be incurred in responding to any contamination caused by the Defendants' PFAS-containing AFFF products, and damages for injury to, destruction of, and loss of

Marathon's property, including the costs of disposing of and replacing unused products, and assessing, monitoring and/or remediating damages, and the costs of experts needed to make such an assessment;

C.    Holding and declaring all Defendants to be strictly liable, and jointly and/or severally liable as appropriate, to Marathon for the claims set forth above, and awarding Marathon compensatory damages consisting of costs to dispose of unused PFAS-containing AFFF products and real property environmental stigma/loss of market value damages;

D.    Awarding money damages to pay for the remediation and/or restoration of the PFAS chemicals and/or for efforts, and/or to pay for the diminution in market value for the Site;

E.    Awarding exemplary, punitive, and such other damages allowed by statute in an amount to be determined at trial;

F.    Awarding Marathon reasonable attorneys' fees, costs, and other reasonable litigation expenses;

G.    Awarding declaratory relief to Marathon, binding on any subsequent action or actions, that holds Defendants liable for any further response activity costs or damages incurred by Marathon in connection with the Site;

H.    Awarding equitable relief for Marathon's reasonably expected future damages as set forth above; and

I.    Awarding such other and further relief at law and/or in equity that the Court deems appropriate.

## <u>DEMAND FOR TRIAL BY JURY</u>

Marathon demands a jury on all issues triable by a jury.


Dated: December 16, 2021                    Respectfully submitted,

**KERR RUSSELL AND WEBER, PLC**

By:      */s/ James E. DeLine*
       James E. DeLine (P45205)
KERR RUSSELL AND WEBER, PLC
Attorneys for Plaintiff
500 Woodward Ave, Ste. 2500
Detroit, MI 48226
(313) 961-0200
jdeline@kerr-russell.com

Joe G. Hollingsworth (pending pro hac admission)
Donald W. Fowler (pending pro hac admission)
Carter F. Thurman (pending pro hac admission)
Pete Chattrabhuti (pending pro hac admission)
HOLLINGSWORTHLLP
1350 I Street, N.W.
Washington, D.C. 20005
Telephone: (202) 898-5800
jhollingsworth@hollingsworthllp.com
dfowler@hollingsworthllp.com
cthurman@hollingsworthllp.com
pchattrabhuti@hollingsworthllp.com

*Attorneys for Plaintiff*
*Marathon Petroleum Company LP*

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MARATHON PETROLEUM COMPANY LP,

          Plaintiff,

  v.

3M COMPANY (f/k/a MINNESOTA
MINING AND MANUFACTURING CO.);
NATIONAL FOAM, INC.; TYCO FIRE
PRODUCTS LP; CHEMGUARD, INC.;
HAYDEN & COMPANY; WILLFIRE LLC;
and DOE DEFENDANTS 1 TO 20,

          Defendants.

Case No. 2:22-cv-10117

**NOTICE OF REMOVAL**

Defendants Tyco Fire Products LP and Chemguard, Inc. (collectively "Tyco" unless identified by full name), by and through undersigned counsel, hereby give notice of the removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Circuit Court for the County of Wayne, to the United States District Court for the Eastern District of Michigan. As grounds for removal, Tyco alleges as follows on personal knowledge as to its own conduct and status and on information and belief as to all other matters:

## PRELIMINARY STATEMENT

1.      Plaintiff Marathon Petroleum Company LP seeks to hold Tyco and other Defendants liable based on their alleged conduct in designing, manufacturing, selling, or distributing aqueous film-forming foam ("AFFF") containing so-called "Long-Chain" per- and polyfluoroalkyl substances ("PFAS"), including perfluoro-octanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS").   Plaintiff claims that its use of AFFF at its Detroit Refinery (the "Property") to extinguish fires and to train firefighting personnel has contaminated and damaged its property and caused it to incur certain costs.   One widely used type of AFFF has been manufactured by a select group of suppliers (including Tyco) under the authority and direction of the Department of Defense ("DoD") and in accordance with the military's rigorous specifications ("MilSpec AFFF").   Although the Complaint states that Plaintiff does not claim that the Property itself has been contaminated by MilSpec AFFF, *see* Complaint (Ex. A) ¶ 56, it seeks compensatory damages for, among other things, alleged "real property environmental stigma/loss of market value." *Id.* ¶ 120.  Tyco denies that Plaintiff is entitled to any recovery, including recovery of damages for alleged "real property environmental stigma/loss of market value."  But at least to the extent that Plaintiff intends to seek discovery and damages for "real property environmental stigma/loss of market value," Tyco intends to raise the *defense* that such damages arise at least in part from the presence of PFAS from

2

MilSpec AFFF in the vicinity of (if not on) the Property. *See Nessel v. Chemguard, Inc.*, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021) ("Plaintiffs cannot decide what defense Defendants might present"). Insofar as Plaintiff's damages claim relates to MilSpec AFFF, Tyco's conduct is immune from liability (and damages) under the federal "government contractor" defense recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988). Because, with respect to MilSpec AFFF, Tyco has acted under federal authority and has a federal defense, the federal officer removal statute, 28 U.S.C. § 1442(a)(1), entitles Tyco to remove this action in order to have that defense adjudicated in a federal forum. *See, e.g., Bennett v. MIS Corp.*, 607 F.3d 1076, 1084-85 (6th Cir. 2010); *accord Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 810–15 (3d Cir. 2016). Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

2. All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the plaintiff's claimed injuries or damages are caused at least in part by MilSpec AFFF. *See, e.g.*, *Chemguard*, 2021 WL 744683, at *3; *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018). The court overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation has also found on

multiple occasions that removal under § 1442(a)(1) is proper in these circumstances. *See* Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 103 (D.S.C. May 24, 2019) ("MDL Order 1"), at 3–6; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019) ("MDL Order 2"), at 3–5; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("MDL Order 3"), at 3–6. Given its experience with the claims and defenses in AFFF litigation, the MDL Court's holdings clearly demonstrate that this case, too, has been properly removed to federal court.[1]

## **BACKGROUND**

3.     This action was filed on December 16, 2021, in the Circuit Court for the County of Wayne bearing Case No. 21-017284-CB (Ex. A, Complaint).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 102(a) and 1441(a) because the Circuit Court for the County of Wayne is located within the Eastern District of Michigan.

4.     Tyco Fire Products LP and Chemguard, Inc. were both served on December 20, 2021.  This Notice of Removal is timely filed in accordance with 28 U.S.C. § 1446(b).

---

[1] Following removal, Tyco intends to designate this action for transfer to the MDL.

4

5. Tyco is not required to notify or obtain the consent of any other Defendant in this action in order to remove Plaintiff's action as a whole under § 1442(a)(1). *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Hilbert v. McDonnell Douglas Corp.*, 529 F. Supp. 2d 187, 195 (D. Mass. 2008); *Linden v. Chase Manhattan Corp.*, No. 99 Civ. 3970(LLS), 1999 WL 518836, at *1 (S.D.N.Y. July 21, 1999).

6. Plaintiff alleges generally that the Defendants, including Tyco, have designed, manufactured, marketed, distributed, and/or sold AFFF products that contain Long-Chain PFAS, including PFOS, PFOA, and/or their chemical precursors. Plaintiff alleges that the AFFF designed, manufactured, marketed, distributed, and/or sold by the Defendants, has caused PFAS contamination of the Property and has caused or will cause Plaintiff to incur various costs. Complaint ¶ 10. Plaintiff also seeks damages for "real property environmental stigma//loss of market value." *Id.* ¶ 120.

7. Plaintiff asserts causes of action against all Defendants for silent fraud (*id.* ¶¶ 121–26), innocent misrepresentation (*id.* ¶¶ 127–31), nuisance – common law/MCL 324.3109 (*id.* ¶¶ 132–36), failure to warn/MCL 600.2948(3) (*id.* ¶¶ 137–46), product design defect (*id.* ¶¶ 147–54), negligence (*id.* ¶¶ 155–59), NREPA part 201 cost recovery (*id.* ¶¶ 160–72), NREPA part 201 contribution (*id.* ¶¶ 173–81), unjust enrichment (*id.* ¶¶ 182–85), and declaratory judgment (*id.* ¶¶ 186–89).

8.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for all parties and a copy is being filed with the Clerk of the Circuit Court for the County of Wayne.

9.     By filing a Notice of Removal in this matter, Tyco does not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue; and Tyco specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

10.     Tyco reserves the right to amend or supplement this Notice of Removal.

## REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442

11.     Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal of an action relating to a defendant's acts undertaken at the direction of a federal officer.  Removal is appropriate under this provision where the removing defendant establishes that: (a) it is a "person" that has "acted under" federal authority; (b) its actions taken pursuant to a federal officer's direction have a causal nexus with plaintiff's claims or injuries or are otherwise related to the lawsuit; and (c) it can assert a "colorable" federal defense.  *Bennett*, 607 F.3d at 1085-88; 28 U.S.C. § 1442.

12.     Removal rights under Section 1442(a)(1) have a "broad scope," *Bennett*, 607 F.3d at 1084—much broader than under the general removal statute,

28 U.S.C. § 1441. Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). This is because Section 1442(a)(1) protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990(BSJ), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted). This important federal policy "should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham*, 445 F.3d at 1252. To the contrary, Section 1442 as a whole must be "liberally construe[d]" in favor of removal. *Papp*, 842 F.3d at 812 (alterations in original) (internal quotation marks omitted).

## A.    MilSpec AFFF

13.    Since the 1960s, the United States military has used MilSpec AFFF on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to train its personnel, put out fires, save lives, and protect property. Indeed, the United States Naval Research Laboratory developed AFFF in response to catastrophic fires aboard the aircraft carriers *USS Forrestal* in 1967 and *USS Enterprise* in 1969.[2] Decades later, the Naval Research Laboratory described

---

[2] *See* Press Release 71-09r, U.S. Naval Research Lab., Navy Researchers

the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[3]

14.    The manufacture and sale of MilSpec AFFF is governed by rigorous military specifications created and administered by Naval Sea Systems Command. The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then.[4]  All MilSpec AFFF products must be qualified for listing on the applicable Qualified Products List prior to military procurement.  Prior to such listing, a manufacturer's products are examined, tested, and approved to be in conformance with specification requirements.[5]  The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements.  After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity

---

Apply Science to Fire Fighting (Oct. 23, 2009), https://tinyurl.com/y2jq4q4w.

[3] U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

[4] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

[5] Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

of the qualification status."[6]  Naval Sea Systems Command reserves the right to perform any of the quality assurance inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements.

15.     From its inception until very recently, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants."  All fluorocarbon surfactants are PFAS, and that category includes the Long-Chain compounds PFOA, PFOS, and their chemical precursors—the very compounds at issue in the Complaint here.  This requirement has been in force for virtually the entire time period at issue in the Complaint.  In 2019 the MilSpec removed the modifier "fluorocarbon" from "surfactants," but it expressly states that "the DoD intends to acquire and use AFFF with the lowest demonstrable concentrations of . . . PFOS and PFOA" "[i]n the short term."  PFOA or PFOS are unavoidably present at some concentrations in fluorocarbon surfactants, and the current MilSpec expressly contemplates that AFFF formulations will contain PFOA and PFOS (subject to recently imposed limits).

16.     Part 139 airports are those serving scheduled passenger flights by nine passenger (or larger) aircraft or unscheduled passenger flights by 31 passenger (or larger) aircraft.  *See* 14 C.F.R. § 139.1 (2019).  The federal government requires Part

---

[6] *Id.*

9

139 airports to use MilSpec AFFF.  On July 8, 2004, the FAA issued Advisory

Circular 150/5210-6D, which stated that "AFFF agents [used by Part 139 airports]

must meet the requirements of Mil-F-24385F."[7]  Although the preamble indicated

that the circular was for guidance only, on February 8, 2006, the FAA issued a

CertAlert clarifying that the MilSpec AFFF requirement was, in fact, mandatory and

that "[a]ny AFFF purchased after July 1, 2006 by an airport operator certified under

Part 139 must meet [Mil-F-24385F]."[8]  The FAA explained:

> There are several reasons for this requirement.  First of all, AFFF has
> to be compatible when mixed.  AFFF manufactured by different
> manufacturers, although meeting the UL 162 standard, may not be
> compatible.  AFFF meeting the Military Specification will always be
> compatible with other Military Specification AFFF no matter the
> manufacturer.  Second, AFFF meeting the military specification
> requires less agent than AFFF meeting UL 162 to extinguish the same
> size fire.  Finally, the requirement to use Mil Spec is in concert with the
> National Fire Protection Association National Fire Code 403,
> paragraph 5.1.2.1.[9]

17.    On September 1, 2016, the FAA issued a superseding CertAlert, which

reiterated that "Airport operators must ensure any AFFF purchased after July 1,

2006, meets Mil-Spec standards."[10]  Thus, from July 1, 2006 to present, airport

---

[7]    *See* Advisory Circular 150/5210-6D at 4, Chapter 6, https://tinyurl.com/yxpk87ky.

[8] *See* DOT/FAA/TC-14/22, Impact of Alternative Fuels Present in Airports on Aircraft Rescue and Firefighting Response at 25-26 (Aug. 2014), https://tinyurl.com/rt35dgp.

[9] *Id.*

[10] Federal Aviation Administration, Cert Alert No. 16-05: Update on Mil-Spec

operators holding an FAA Airport Operating Certificate have been required to purchase MilSpec AFFF for use.

**B.    MilSpec AFFF Impacts in the Vicinity of Plaintiff's Property**

18.    As noted above, Plaintiff here seeks "compensatory and exemplary damages consisting of general and site-specific costs and damages incurred and to be incurred by Marathon including … real property environmental stigma/loss of market value damages."  Complaint ¶ 120.

19.    Plaintiff's Property is proximate to two waterways—the Rouge River and the Detroit River—that are likely to contain PFAS from MilSpec AFFF.

20.    The Willow Run Airport (the "Airport"), located southwest of the Property, is a Part 139 airport.  Since at least 2006, the Airport has used and released MilSpec AFFF (some of which, on information and belief, Tyco has manufactured) to fight fires and/or for training purposes.  PFAS have been detected in the soil and groundwater at the Airport, Airport, and they have also been detected in an adjacent surface water body downstream of the airport that drains to the Rouge River.  Water flows from the area of the Airport to the Rouge River and ultimately into the Detroit River.  Some PFAS in the Rouge River and the Detroit River likely originates from

---

Aqueous    Film    Forming    Foam    (AFFF)    at    2    (Sept.    1,    2016), https://tinyurl.com/ya5pvbkh.

MilSpec AFFF used at the Airport.  Plaintiff's Property lies within several hundred yards of the Rouge River and within less than three miles of the Detroit River.

21.     The Selfridge Air National Guard Base (the "Base"), located northeast of the Property, has been identified by the State of Michigan in other litigation as a site that has been contaminated by PFAS from MilSpec AFFF.  The Base has used and released MilSpec AFFF (some of which, on information and belief, Tyco has manufactured) to fight fires and/or for training purposes.  In addition, in 2018 approximately 800 gallons of MilSpec AFFF were spilled at the Base in 2018.  As a result of these activities, substantial levels of PFAS have been detected at the Base.  Surface water runoff and groundwater from the Base flows into Lake St. Clair, which in turn flows into the Detroit River.  Based on available data, it is reasonable to infer that some of the PFAS detected in the Detroit River originated from MilSpec AFFF used at the Base.

22.     Again, Tyco denies that Plaintiff is entitled to any recovery, including recovery of damages for alleged "real property environmental stigma/loss of market value."  But, in the alternative, Tyco contends that if Plaintiff has suffered any such "real property environmental stigma/loss of market value damages," they have been caused at least in part by the proximity of the Property to the locations described above where PFAS from MilSpec AFFF are present.

## C.    All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied

### 1.    *Tyco Is a "Person" that Has "Acted Under" Federal Authority in Designing and Selling MilSpec AFFF.*

23.    Tyco Fire Products LP and Chemguard, Inc. (a limited partnership and corporation, respectively) each meet the definition of a "person" under Section 1442(a)(1).  For purposes of the statute, the term "person" includes "corporations, companies, associations, firms, [and] partnerships."  *Papp*, 842 F.3d at 812 (quoting 1 U.S.C. § 1); *accord Bennett*, 607 F.3d at 1085; *Isaacson*, 517 F.3d at 135–36.

24.    "The words 'acting under' are to be interpreted broadly . . . ."  *Isaacson*, 517 F.3d at 136 (citation omitted).  The requirement that a defendant "act[] under" a federal officer is satisfied when an entity assists or helps carry out, the duties or tasks of a federal officer.  *Papp*, 842 F.3d at 812; *accord Bennett*, 607 F.3d at 1088.  Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813.  A government contractor that manufactures a product to government specifications "act[s] under" federal authority.  *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 153 (2007).

25.    The requirement of "acting under" federal office is met here because the effect of Plaintiff's claims, at least in part, is to challenge Tyco's alleged conduct in providing vital products "that, in the absence of Defendants, the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137.  MilSpec AFFF is a

mission-critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission-critical" and "life-saving product" used by all branches of the U.S. armed forces and NATO members (internal quotation marks omitted)); *cf. Isaacson*, 517 F.3d at 137. The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[11] Accordingly, the military has long depended upon outside contractors like Tyco to develop and supply AFFF. *See Chemguard*, 2021 WL 744683, at *3 (holding that Tyco and other AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8–9 (same); *see also* MDL Order 1, at 3–6 (finding that the "acting under" requirement was satisfied because defendant demonstrated that it was manufacturing AFFF under the guidance of the U.S. military); MDL Order 2, at 3–5; MDL Order 3, at 3–6 (same). If Tyco and other manufacturers did not provide MilSpec AFFF, the government would have to manufacture and supply the product itself.

---

[11] Fulfilling the Roosevelts' Vision, *supra* n.3, at 37.

14

26.    In designing, manufacturing and supplying the MilSpec AFFF at issue, Tyco acted under the direction and control of one or more federal officers. Specifically, Tyco acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.  Further, the AFFF products in question were subject to various tests by the United States Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the DoD.[12]

### 2.    *The Nexus Requirement Is Satisfied.*

27.    The second requirement, that the defendant's actions taken "under color of federal office" have a causal nexus with plaintiff's claims or injuries or be otherwise related to the lawsuit, erects a hurdle that "is quite low."   *Isaacson*, 517 F.3d at 137; *accord Bennett*, 607 F.3d at 1088.[13]  To satisfy this requirement, it is sufficient for a defendant to establish that an act that allegedly caused or contributed to the plaintiff's injury occurred while the defendant was performing its official duties. *Isaacson*, 517 F.3d at 137–38.

---

[12] *See* Dep't of Defense, SD-6, *supra* n.5, at 1.

[13] The "acting under" and "under color of" prongs overlap.  Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction."  *Albrecht*, 2011 WL 5109532, at *5.

15

28. In assessing removal under Section 1442(a)(1), courts "credit Defendants' theory of the case when determining whether [the] causal connection exists." *Isaacson*, 517 F.3d at 137; *see also Chemguard*, 2021 WL 744683, at *3. Here, accepting Tyco's allegations as true, Plaintiff's claimed "real property environmental stigma/loss of market value damages" arise at least in part from Tyco's production and sale of AFFF manufactured to military specifications and used at the Airport and the Base. Plaintiff alleges that Long-Chain PFAS in AFFF are the source of its damages. Tyco contends that the presence of such chemicals in MilSpec AFFF was required by military specifications and/or otherwise approved by DoD. The conflict is apparent: MilSpec AFFF was developed by Tyco, and other manufacturers to meet specifications established by the DoD. The design choices Plaintiff is attempting to impose via state tort law would create a conflict in which Tyco could not comply with both the MilSpec and the purported state-prescribed duty of care. *See Boyle*, 487 U.S. at 509; *see also Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'casual connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government."); MDL Order 1, at 5–6 ("Here, [Plaintiff]'s claims arise out of use of AFFF products that it claims Tyco manufactured and sold, and for which the U.S. military imposes MilSpec standards. The Court . . . finds that the causation element of federal officer removal is satisfied here."); MDL Order 2, at 5 (finding the causation element of federal officer removal

satisfied where Tyco's AFFF products, "for which the military imposes MilSpec standards," were used at several airports); MDL Order 3, at 5–6 (same as to MilSpec AFFF used at a single airport). Because Plaintiff's purported stigma damages arise at least in part from MilSpec AFFF, the nexus between Plaintiff's alleged "real property environmental stigma/loss of market value damages" and Tyco's actions under color of federal office is clear.

### 3. *The "Colorable Federal Defense" Requirement Is Satisfied.*

29. The third requirement ("colorable federal defense") is satisfied by Tyco's assertion of the government contractor defense.

30. At the removal stage, a defendant need only show that its government contractor defense is colorable; that is, "that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'" *Papp*, 842 F.3d at 815 (alteration in original) (citation omitted); *accord Bennett*, 607 F.3d at 1089 ("a colorable federal defense need only be plausible"). In other words, "[a] defendant 'need not win his case before he can have it removed.'" *Id.* (quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." (citation omitted)). At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-

17

discovery, to determine the threshold jurisdictional issue." *Cuomo v. Crane Co.*, 771 F.3d 113, 116 (2d Cir. 2014).[14] Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted).

31.    Under the government contractor defense, the defendant is not liable for the design, manufacture, or warnings of equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

32.    Tyco has satisfied these elements for purposes of removal.   As discussed above, Naval Sea Systems Command approved reasonably precise specifications, governing MilSpec AFFF formulation, performance, testing, storage,

---

[14] *See also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage.  Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (internal citation omitted)).

18

inspection, packaging, and labeling. Tyco's products appeared on the DoD Qualified Products List, which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec. *See Ayo*, 2018 WL 4781145, at *13 ("[T]here is colorable evidence that Manufacturing Defendants' Mil-Spec AFFF is not a stock product and that the government approved reasonably precise specifications requiring them to use [PFAS], including PFOS and PFOA, in their products."); *see also id.* ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); MDL Order 1, at 5 (finding defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications"); MDL Order 2, at 4 (same, as to Tyco); MDL Order 3, at 5 (same); *see also Chemguard*, 2021 WL 744683, at *4.

33.     Moreover, the government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF. The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand. Indeed, it is clear that the United States has long understood that AFFF contains Long-Chain PFAS and may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the soil and potentially

reach groundwater; and that it has been reported that this may raise environmental or human health issues.[15] For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from fire fighting exercises are considered to have adverse effects environmentally."[16] By no later than 2001, DoD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent." In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer. More recently, in a November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA regarding PFOS and PFOA. Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[17]

---

[15] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1–6 (Nov. 4, 2002).

[16] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

[17] Dep't of Defense, *Aqueous Film Forming Foam Report to Congress* 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants," and recognizes that PFAS, including PFOS and PFOA, will be present (subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[18] *See Ayo*, 2018 WL 4781145, at \*12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design."); MDL Order 1, at 5 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . .").

34.     At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See Twinam v. Dow Chem. Co.* (*In re "Agent Orange" Prod. Liab. Litig.*), 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at \*5 ("A

----

[18] *See* MIL-PRF-24385F(SH), Amendment 4, § 6.6 & Tables I, III (2020), https://quicksearch.dla.mil/qsDocDetails.aspx?ident_number=17270; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)). Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *13.

35. By seeking to impose tort liability on Tyco for alleged injuries to Plaintiff that were caused in whole or in part by Tyco's compliance with military specifications, Plaintiff is attempting to use state tort law to attack design choices dictated by the military. The government contractor defense precludes such an attack. *See Boyle*, 487 U.S. at 509.

WHEREFORE, Tyco hereby removes this action from the Circuit Court for the County of Wayne to this Court.

Dated:  January 19, 2022                    Respectfully submitted,

                                            */s/ Nicholas J. Ellis*
                                            Ann Marie Uetz (P48922)
                                            Nicholas J. Ellis (P73174)
                                            FOLEY & LARDNER LLP
                                            500 Woodward Ave., Suite 2700
                                            Detroit, MI 48226
                                            (313) 234-7100
                                            auetz@foley.com
                                            nellis@foley.com

                                            *Attorneys for Tyco Fire Products, LP,*
                                            *Chemguard, Inc., and Willfire HC LLC,*
                                            *d/b/a Williams Fire and Hazard Control,*
                                            *Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Nicholas J. Ellis, hereby certify that this document filed through the ECF system will be sent electronically all registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on this date including plaintiffs.

Dated: January 19, 2022                              */s/ Nicholas J. Ellis*

# Exhibit A

Approved, SCAO

| | | |
|---|---|---|
| | Original - Court<br>1st Copy- Defendant | 2nd Copy - Plaintiff<br>3rd Copy -Return |

| STATE OF MICHIGAN<br>THIRD JUDICIAL CIRCUIT<br>WAYNE COUNTY | SUMMONS | CASE NO.<br>21-017284-CB<br>Hon.Edward Ewell, Jr. |
|---|---|---|

| Court address : 2 Woodward Ave., Detroit MI 48226 | Court telephone no.: 313-224-5195 |
|---|---|

| Plaintiff's name(s), address(es), and telephone no(s)<br>MARATHON PETROLEUM COMPANY LP | v | Defendant's name(s), address(es), and telephone no(s).<br>TYCO FIRE PRODUCTS, LP<br><br>C/O<br>CT Corporation System, at the Corporation Company<br>40600 Ann Arbor Road East<br>Suite 201,<br>Plymouth, Michigan 48170 |
|---|---|---|
| Plaintiff's attorney, bar no., address, and telephone no<br><br>James E. Deline 45205<br>500 Woodward Ave Ste 2500<br>Detroit, MI 48226-5499 | | |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

### Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

### Civil Case

☒ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court,

where it was given case number _____ and assigned to Judge _____.

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk.

| SUMMONS |
|---|

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>12/16/2021 | Expiration date*<br>3/17/2022 | Court clerk<br>Angila Mayfield |
|---|---|---|

Cathy M. Garrett- Wayne County Clerk.

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01 (9/19)       SUMMONS       MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

| STATE OF MICHIGAN 3rd JUDICIAL CIRCUIT COUNTY OF WAYNE | VERIFICATION OF BUSINESS COURT ELIGIBILITY AND NOTICE OF ASSIGNMENT | CASE NO. 21-        -CB |
|---|---|---|

Court address: 2 Woodward Ave., Detroit, MI 48226

| Plaintiff(s) MARATHON PETROLEUM COMPANY LP | v | Defendant(s) 3M COMPANY (f/k/a MINNESOTA MINING AND MANUFACTURING CO.); NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS, LP; CHEMGUARD, INC.; HAYDEN & COMPANY; WILLFIRE LLC; and DOE DEFENDANTS 1 TO 20 |
|---|---|---|

I am the attorney for the [check one] ☑ plaintiff ☐ defendant and per *MCR 2.114(B)(2) and MCR 2.114(D)* declare to the best of my information, knowledge, and belief that this case meets the statutory requirements to be assigned to the business court, *MCR 2.112(O), MCL 600.8031 et seq.*, and request assignment to the Business Court for the following reasons:

[*Both Sections 1 and 2 must be completed to be accepted by the Court (check all that apply)*]

1. **Parties**. This is a qualifying business or commercial dispute as defined by *MCL 600.8031(1)(c)* because,

☑ all of the parties are business enterprises

☐ one or more of the parties is a business enterprise and the other parties are its or their present or former owners, managers, shareholders, members, directors, officers, agents, employees, suppliers, or competitors, and the claims arise out of those relationships

☐ one of the parties is a non-profit organization, and the claims arise out of that party's organizational structure, governance, or finances

☐ It is an action involving the sale, merger, purchase, combination, dissolution, liquidation, organizational structure, governance, or finances of a business enterprise.

**AND**

2. **Actions**. This business or commercial action as defined by *MCL 600.8031(2)* involves,

☐ information technology, software, or website development, maintenance, or hosting

☐ the internal organization of business entities and the rights or obligations of shareholders, partners, members, owners, officers, directors, or managers

☐ contractual agreements or other business dealings, including licensing, trade secret, intellectual property, antitrust, securities, noncompete, nonsolicitation, and confidentiality agreements if all available administrative remedies are completely exhausted, including but not limited to, alternative dispute resolution processes prescribed in the agreements

☐ commercial transaction, including commercial bank transactions

☐ business or commercial insurance policies

☐ commercial real property

☑ other type of business or commercial dispute (explain): This is an action to recover costs incurred in remediation of PFAS compounds.

| 12/16/21 | /s/ James E. DeLine | |
|---|---|---|
| Date | Signature | |
| | James E. DeLine | P45205 |
| | Name (type or print) | Bar no. |

# STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

MARATHON PETROLEUM COMPANY LP,

Plaintiff,

v.

3M COMPANY (f/k/a MINNESOTA MINING AND
MANUFACTURING CO.); NATIONAL FOAM,
INC.; TYCO FIRE PRODUCTS, LP; CHEMGUARD,
INC.; HAYDEN & COMPANY; WILLFIRE LLC;
and DOE DEFENDANTS 1 TO 20,

Defendants.

Case No. 21 - _____ CB

HON.

---

James E. DeLine (P45205)
**KERR, RUSSELL AND WEBER, PLC**
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
(313) 961-0200
jdeline@kerr-russell.com
*Attorneys for Plaintiff*

Joe G. Hollingsworth (pending pro hac admission)
Donald W. Fowler (pending pro hac admission)
Carter F. Thurman (pending pro hac admission)
Pete Chattrabhuti (pending pro hac admission)
**HOLLINGSWORTH LLP**
1350 I Street, N.W.
Washington, D.C. 20005
Telephone: (202) 898-5800
jhollingsworth@hollingsworthllp.com
dfowler@hollingsworthllp.com
cthurman@hollingsworthllp.com
pchattrabhuti@hollingsworthllp.com

*Attorneys for Plaintiff*

---

*There exists no other pending or resolved civil action arising out of the transaction
or occurrence alleged in the Complaint.*

*This case involves a business or commercial dispute as defined by MCL 600.8031
and meets the criteria to be assigned to the business court.*

## COMPLAINT AND JURY DEMAND

# TABLE OF CONTENTS

INTRODUCTION AND NATURE OF ACTION ................................................................. 1

PARTIES ......................................................................................................................... 3

JURISDICTION AND VENUE ......................................................................................... 8

GENERAL ALLEGATIONS ............................................................................................ 8

    I.      Research and Development of PFAS ...................................................................... 8

    II.    3M's Specific Attempts to Conceal the Environmental Characteristics of PFAS ................... 11

    III.   Defendants Continually Sold PFAS-Containing AFFF to Marathon for Decades ........... 14

    IV.   Increased Regulation of PFAS ............................................................................. 17

    V.    Marathon's Discovery of the Environmental Characteristics of PFAS-Containing   AFFF, and its Continued Commitment to the Community .......................................... 20

COUNT I:  SILENT FRAUD .......................................................................................... 23

COUNT II:  INNOCENT MISREPRESENTATION ........................................................... 23

COUNT III:  NUISANCE - COMMON LAW/MCL 324.3109 .......................................... 24

COUNT IV:  FAILURE TO WARN / MCL 600.2948(3) .................................................. 25

COUNT V:  PRODUCT DESIGN DEFECT ................................................................... 26

COUNT VI:  NEGLIGENCE ......................................................................................... 27

COUNT VII:  NREPA PART 201 COST RECOVERY ..................................................... 28

COUNT VIII:  NREPA PART 201 CONTRIBUTION ...................................................... 29

COUNT IX:  UNJUST ENRICHMENT ......................................................................... 31

COUNT X:  DECLARATORY JUDGMENT ..................................................................... 31

PRAYER FOR RELIEF .................................................................................................. 32

The above-captioned Plaintiff (hereafter, "Marathon"), by and through its counsel, KERR, RUSSELL AND WEBER, PLC and HOLLINGSWORTH LLP, hereby states as its Complaint against above-named Defendants (collectively, the "Defendants") as follows:

## INTRODUCTION AND NATURE OF ACTION

1.       3M Company ("3M") is one of the largest chemical companies in the world, with annual revenues of $32 billion, an employee base of over 95,000 (including more than 8,000 scientists and researchers), and research facilities that dwarf those of most universities, major corporations, and even some countries.  It markets itself to customers based on its touted scientific expertise.

2.       In the 1940s, 3M began developing a group of organic fluorine chemical products—perfluoroalkyl and polyfluoroalkyl substances ("PFAS")—that were sold for a variety of industrial uses.  For example, two of the PFAS chemicals, commonly referred to as perfluorooctanoic acid ("PFOA") and perfluorooctanesulfonic acid ("PFOS"), when applied to a surface, make that surface water-repellant.  From the 1940s onward, 3M has been the world leader in understanding and using these chemicals, but it has kept secret much of what it has learned throughout the ensuing decades from regulators, customers, its own employees, and the public.

3.       PFOS, PFOA, and perfluorohexane sulfonate ("PFHxS") are but a few of the chemicals known as "Long-Chain" or "C-8" PFAS compounds because they possess longer and more stable carbon chains.

4.       Historically, these Long-Chain PFAS compounds have been used in a variety of applications.  One of the common applications of PFAS is in aqueous film-forming foam and

related products ("AFFF").[1] Since the 1970s, Defendants have made and sold Long-Chain based PFAS-containing AFFF, including to Marathon.

5.     For purposes of this complaint, PFAS-containing AFFF will only refer to AFFFs containing these Long-Chain PFAS compounds. PFAS-containing AFFF does not refer to AFFFs based on C-6, C-4 or other shorter chain compounds.

6.     AFFF are Class B firefighting foams used for fire suppression, fire training, and flammable vapor suppression. These foams are used to extinguish Class B fires, which involve flammable and combustible liquids, such as gasoline, oil, and jet fuel. In addition to PFOA and PFOS, and PFHxS, AFFF can also contain their salts, ionic states, and acid forms of molecules, as well as their "precursor" chemicals, and other PFAS compounds.

7.     As a result of their chemical structure, PFAS-containing AFFF are stable, mobile, persistent in the environment, and resistant to biodegradation. When PFAS-containing AFFF are released into the environment, they migrate into and stay in surface water and groundwater causing contamination due to their environmental characteristics.

8.     3M formulated its own AFFF, 3M FC-600 Light Water™, that was sold to refineries, industrial facilities, fire training centers, and other customers all over the world. For decades, 3M sold to Marathon 3M FC-600 Light Water™ and other PFAS-containing AFFF.

9.     In addition to 3M, all Defendants manufactured, marketed, distributed, supplied, sold, transported, and arranged for disposal of PFAS-containing AFFF to Marathon.

10.    In late 2018, as a result of Defendants' actions, Marathon was informed of PFAS contamination at its Detroit Refinery located in Wayne County, Michigan (the "Site"). Marathon

---

[1] PFAS-Containing AFFF may also refer to, among other compounds, the following: Alcohol-Resistant Aqueous Film-Forming Foam ("AR-AFFF"); Fluoroprotein Foam ("FP"); Alcohol-Resistant Fluoroprotein Foam ("FPAR"); Film-Forming Fluoroprotein Foam ("FFFP"); and Alcohol-Resistant Film-Forming Fluoroprotein Foam ("AR-FFFP").

is currently investigating, sampling and planning the remediation of this PFAS contamination. Due to this contamination, Marathon's use, enjoyment, and value of its properties have been impacted. Additionally, Marathon now faces millions of dollars in response costs, disposal costs, replacement costs, and likely future litigation.

11.     3M and other Defendants designed, studied, and sold PFAS-containing AFFF compounds for decades.

12.     Upon learning of the environmental characteristics of certain PFAS compounds, the Defendants chose to suppress material information, control the scientific research available to the public, withhold information from regulators like the United States Environmental Protection Agency ("EPA"), and lull customers like Marathon into believing that PFAS-containing AFFF were safe and could not result in environmental contamination.

13.     In addition to its investigation and remedial costs, Marathon has previously undertaken efforts at the Site to store, house, remove from equipment, and dispose of PFAS-containing AFFF, which have been rendered useless and unusable by Michigan regulations. Defendants have yet to pay for any of these costs borne by Marathon. Accordingly, Marathon is filing this action to recover costs it has incurred and will incur investigating and remediating the Site.

## **PARTIES**

14.     Marathon is a limited partnership comprised of three partners: Marathon Petroleum Corporation, a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in the State of Ohio; general partner MPC Investment LLC, a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located in the State of Ohio; and Giant Industries, Inc., a corporation

organized and existing under the laws of the State of Delaware with its principal place of business located in the State of Ohio. Marathon owns the real property commonly known as 1001 S. Oakwood Avenue, Detroit, Michigan.

15.     Defendant **3M Company ("3M")** is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in St. Paul, Minnesota. 3M is a massive conglomerate with over 95,000 employees and extensive expertise in the chemical sciences. It is in the business of using that expertise to design, manufacture, and sell household, commercial, and industrial products. According to 3M, it manufactures over 60,000 products, and its revenues for 2020 exceeded $32 billion.

16.     On its website, 3M describes itself as a "global powerhouse" and a "constant name on the Fortune 500 list." It touts its research and development capabilities, with 8,100 scientists and researchers worldwide, labs in over 36 countries, over 112,000 patents, and $1.7 billion in annual expenditures for research and development alone.

17.     At all relevant times, 3M designed, manufactured, marketed, distributed, and/or sold PFAS-containing AFFF, which were purchased, stored, and/or used by Marathon and/or were stored and/or used on properties owned and/or operated by Marathon causing injury to Marathon's property and the surrounding environment.

18.     Defendant **Tyco Fire Products, LP ("Tyco")** is a limited partnership organized and existing under the laws of the State of Delaware with its principal place of business located at One Stanton Street, Marinette, Wisconsin.

19.     On information and belief, Tyco is a subsidiary of Johnson Controls International Plc, an Irish public limited company listed on the New York Stock Exchange [NYSE: JCI].

20. Tyco is the successor-in-interest to The Ansul Company ("Ansul"), having acquired Ansul in 1990. After Tyco acquired Ansul in 1990, Tyco continued to manufacture, distribute, and sell PFAS-containing AFFF. Ansul and Tyco (as the successor-in-interest to Ansul) will hereinafter be collectively referred to as "Tyco." Tyco manufactured and currently manufactures the Ansul brand of products, including the Ansul brand of PFAS-containing AFFF.

21. At all relevant times, Tyco designed, manufactured, marketed, distributed, and/or sold PFAS-containing AFFF, which were purchased, stored, and/or used by Marathon and/or were stored and/or used on properties owned and/or operated by Marathon, causing injury to Marathon's property and the surrounding environment.

22. Defendant **National Foam, Inc. ("National Foam")** is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 141 Junny Road, Angier, North Carolina.

23. National Foam previously manufactured the Universal Gold brand of AFFF products.

24. National Foam currently manufactures the Angus brand of AFFF products and is a subsidiary of Angus International Safety Group, Ltd, a United Kingdom private limited company.

25. At all relevant times, National Foam designed, manufactured, marketed, distributed, and/or sold PFAS-containing AFFF, which were purchased, stored, and/or used by Marathon and/or were stored and/or used on properties owned and/or operated by Marathon, causing injury to Marathon's property and the surrounding environment.

26. Defendant **Chemguard, Inc. ("Chemguard")** is a corporation organized and existing under the laws of the State of Texas, with its principal place of business located at 204 South 6th Avenue, Mansfield, Texas.

27. On information and belief, Chemguard is a subsidiary of Johnson Controls International Plc, an Irish public limited company listed on the New York Stock Exchange [NYSE: JCI].

28. At all relevant times, Chemguard designed, manufactured, marketed, distributed, and/or sold PFAS-containing AFFF, which were purchased, stored, and/or used by Marathon and/or were stored and/or used on properties owned and/or operated by Marathon, causing injury to Marathon's property and the surrounding environment.

29. Defendant **Willfire HC, LLC, doing business as Williams Fire and Hazard Control, Inc. ("Williams")**, is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located at 9605 Richard Wycoff Dr., Port Arthur, Texas.

30. On information and belief, Williams is a wholly-owned subsidiary of either Chemguard or Tyco.

31. On information and belief, both Tyco and Chemguard, and by extension Williams, are wholly-owned subsidiaries of Johnson Controls International Plc, an Irish public limited company listed on the New York Stock Exchange [NYSE: JCI].

32. On information and belief, Williams received its PFAS-containing AFFF from Tyco.

33. At all relevant times, Williams designed, manufactured, marketed, distributed, and/or sold PFAS-containing AFFF, which were purchased, stored, and/or used by Marathon and/or were stored and/or used on properties owned and/or operated by Marathon, causing injury to Marathon's property and the surrounding environment.

34.     Defendant **Hayden and Company** is a corporation organized and existing under the laws of the State of Illinois with its principal place of business located at 2604-B West 83rd Street, Darien, Illinois.

35.     At all relevant times, Hayden and Company designed, manufactured, marketed, distributed, and/or sold PFAS-containing AFFF, which were purchased, stored, and/or used by Marathon and/or were stored and/or used on properties owned and/or operated by Marathon, causing injury to Marathon's property and the surrounding environment.

36.     **Doe Defendants 1 to 20** are other suppliers, designers, manufacturers, marketers, distributors, and/or sellers of PFAS-containing AFFF, which were sold to, stored, and/or used by Marathon and/or were stored and/or used on properties owned and/or operated by Marathon, causing injury to Marathon's property and the surrounding environment. When the Doe Defendants are identified, they will be added by name.

37.     All Defendants: (a) supplied, designed, manufactured, marketed, distributed, and or/sold PFAS-containing AFFF that were bought and used by Marathon; (b) are legally responsible for and committed each of the wrongful acts alleged in this Complaint; and (c) promoted PFAS-containing AFFF, despite the availability of reasonable alternatives and their actual or constructive knowledge that the contamination alleged in this Complaint would be the inevitable result of their conduct.

38.     To the extent any act or omission of any Defendant is alleged in this Complaint, the officers, directors, agents, employees, or representatives of each such Defendant committed or authorized each such act or omission or failed to supervise adequately or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs

of such Defendants, and did so while acting within the scope of their duties, employment, or agency.

39.     Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates, and divisions of the named Defendants.

## JURISDICTION AND VENUE

40.     This Court has jurisdiction over the subject matter of this action pursuant to MCL 600.605.

41.     This Court may exercise jurisdiction over Defendants pursuant to MCL 600.715 because they are, or at the relevant times were, authorized to do business in Michigan; are, or at the relevant times were, registered with the Corporation, Securities & Commercial Licensing Bureau of the Michigan Department of Licensing and Regulatory Affairs; are, or at the relevant times were, transacting business in Michigan, or otherwise intentionally availing themselves of the Michigan market through the distribution, sale, release, supply, transport, arrangement for disposal or treatment, handling, and/or use of PFAS-containing AFFF throughout the State of Michigan and/or at the relevant times owned, used, or possessed certain real and tangible property situated within the state.

42.     The amount in controversy exceeds $25,000.

43.     Venue is appropriate in Wayne County under MCL 600.1629(1).

## GENERAL ALLEGATIONS

## I.     Research and Development of PFAS

44.     PFAS are a family of man-made fluorinated compounds, which contain bonded fluorine and carbon chains.

45. PFAS are commonly known as "forever" chemicals because they are stable, extremely persistent in the environment, and resistant to typical biodegradation.

46. PFAS generally adsorb poorly and tend to be mobile in soil, surface water, and groundwater systems.

47. This combination of properties enables PFAS to readily migrate in soil, surface water, and groundwater.

48. These characteristics also mean that once PFAS are released into the environment, they migrate and can cause contamination and injury to the surrounding areas.

49. In the late 1940s, a scientist at Pennsylvania State University, Dr. Joseph Simons, developed a means for producing PFAS on a commercial scale. The process is known as the Simons Cell Electrofluorination (or "Simons ECF") process. Dr. Simons patented his ECF process in 1948.

50. 3M ultimately purchased Simons's patents in the 1950s and began developing products using PFAS.

51. 3M introduced its first Long-Chain PFAS-containing product to the market in the 1950s.

52. During the ensuing decades, 3M developed and sold many other products containing Long-Chain PFAS, including AFFF, stain repellants, stain removers, paints, hydraulic fluids, and semi-conductors.

53. The remaining Defendants also began selling PFAS-containing AFFF as early as the 1970s.

54. There are many different types of Long-Chain PFAS, each of which has unique properties.

55.     The three primarily at issue in this case are PFOA, PFOS, and PFHxS.   On information and belief, other Long-Chain PFAS or perfourochemicals ("PFCs") found in AFFF may include, but are not limited to, the following: Perfluorobutyrate ("PFBA"), Perfluoropentanoic Acid ("PFPeA"), Perfluorobutane sulfonic acid ("PFBS"), Perfluorohexanoic acid ("PFHxA"), and Perfluoroheptanoic acid ("PFHpA"), among other PFAS compounds. PFAS are known to be mobile, stable, persistent, and resistant to biodegradation.

56.     The allegations of this complaint do not, and should not be inferred to, refer to firefighting foams based on shorter chain chemistry such as C-6-based AFFF. Additionally, this complaint does not allege, nor seek remedy for, contamination relating to "Mil-Spec AFFF," which are PFAS-containing AFFF manufactured in accordance with military specification and used on military bases, airfields, and Navy ships, and at certain civilian airports, as Mil-Spec AFFF has never been used at the Site.

57.     PFOS, however, and its close analog PFHxS, is a PFAS compound that is unique to 3M. On information and belief, 3M was the only manufacturer of PFOS in the United States until both PFOS and PFHxS were phased out in 2002 by the EPA.

58.     On information and belief, 3M's common PFAS-containing product, AFFF 3M FC-600 Light Water™, contained the 3M-specific Long-Chain PFAS compounds PFOS and PFHxS, among other PFAS compounds.

59.     Such Long-Chain PFAS have been used for decades in a wide array of consumer and industrial products, including AFFF.

60.     AFFF were developed to extinguish liquid, oil, fuel, and other flammable substances. AFFF are used as a foam solution intended to be sprayed directly onto fires or spilled fuel.

61. PFAS-containing AFFF spread and expand across the surface of the liquid fires rapidly. Once spread over the coverage area, many PFAS-containing AFFF products create an aqueous film on the surface of the flammable liquid, which aids in the continued suffocation of fires. Additionally, PFAS-containing AFFF work to suppress fires by smothering the fire, separating the flame from its fuel, cooling the fuel and any adjacent metal surfaces, and suppressing the release of flammable vapors.

## II.  3M's Specific Attempts to Conceal the Environmental Characteristics of PFAS

62. From 1958 and continuing until and after 2002 (when 3M phased out and stopped selling PFOS and PFHxS products), 3M has been well aware of the various environmental characteristics of Long-Chain PFAS and/or its byproducts. Yet 3M never shared any of its knowledge with Marathon, when such disclosure would have materially impacted Marathon's purchase, use, and disposal practices of PFAS-containing AFFF.

63. In addition to concealing the characteristics of PFAS from Marathon, 3M took steps to conceal the characteristics of PFAS from the scientific community. In 1975, two academic researchers—Dr. William Guy and Dr. Donald Taves—contacted 3M regarding their finding of organic fluorine in blood from blood banks around the country and their belief that 3M's PFOS-based products may have been the source. 3M pleaded ignorance and actively sought to discredit the Guy/Taves study and the authors' contention that PFOS products were the source of the PFAS. The Guy/Taves study proved prescient. By 1977, 3M itself confirmed what Guy/Taves already knew—that PFOS was the major organic fluorine compound found in human blood nationwide.

64. Not only did 3M know that its PFOS was in human blood, 3M also understood very early on that PFAS were mobile. That is, 3M understood that PFAS could migrate into the soil and later into the groundwater. In the 1960s, through 3M's manufacturing of PFAS at its own

plants, and the subsequent significant volumes of PFAS-containing wastes associated with this process, 3M was aware that its waste chemicals had reached the groundwater in one of the waste disposal sites it used for PFAS chemicals, the Woodbury Site in Minnesota. 3M later discovered that chemicals disposed of at the Woodbury Site had within about one year of operation migrated to the water table 75 feet below ground.

65. The Woodbury Site was not 3M's only PFAS-contaminated site. Around this same time, 3M learned that groundwater beneath another disposal site in Cottage Grove, Minnesota had contaminated a nearby water well.

66. By 1967, 3M learned of remediation technology for PFAS contamination, when a hydrologist retained by 3M counseled the company that a carbon filtration system could produce "high quality water free of organic chemicals."

67. In addition to concealing information from its customers, 3M concealed critical information about PFAS from government regulators. 3M was obligated under federal law to notify the EPA immediately of information that reasonably supported the conclusion that one of its products could result in injury to the environment. *See* 15 U.S.C. § 2607(e) (hereinafter "TSCA"). 3M was under this obligation since 1976, when TSCA was enacted. 3M, however, chose deceit rather than disclosure and withheld from the EPA numerous scientific studies relating to the environmental characteristics of PFAS—including studies it had conducted as early as the 1950s to the 1970s.

68. In March 1999, a 3M toxicologist, Dr. Richard Purdy, became so concerned with 3M's failure to inform the EPA about the environmental characteristics of PFAS that he copied the EPA on his resignation letter.

69. In his resignation letter, Dr. Purdy explained that he was resigning from 3M due to his profound disappointment in 3M's handling of the environmental characteristics of PFOS.

70. Dr. Purdy's resignation letter outlined 3M's obfuscation, delays, and attempts to roadblock research into the environmental characteristics of PFOS. Dr. Purdy noted that he had conducted an assessment for 3M that showed PFOS was a substance that should be reported to the EPA under TSCA. Over Dr. Purdy's objections, 3M chose deceit over disclosure and did not submit the report to EPA at that time.

71. Dr. Purdy even detailed in an internal email how 3M stalled his efforts to conduct further studies into the characteristics of PFAS and how 3M continually ignored the plans of its own employees to collect essential data for conducting risk assessments of PFOS.

72. Dr. Purdy also noted in his resignation letter that there were alternative designs available to 3M. According to Dr. Purdy, 3M previously considered chemicals that are just as stable and biologically available as PFOS. In 2000, the same year the phase-out for PFOS was announced publicly, 3M stated that it expected to come up with substitutes for PFOS within the same year, suggesting that the delayed implementation of the alternative formulation was from 3M's decades-long effort to stall and suppress research into PFAS. Indeed "Short-Chain" PFAS compounds, which generally contain fewer carbon atoms and are thus less stable and less persistent than Long-Chain PFAS compounds, are currently found in C-6 based AFFF, and these C-6 AFFFs have been utilized by conscientious AFFF users, such as Marathon, which have become aware of the environmental characteristics of Long-Chain PFAS such as PFOS, PFOA, and PFHxS.

73. Ultimately, in April 2006, the EPA fined 3M more than one million dollars in penalties for over 200 violations of the TSCA dating back decades. In levying the fine, the EPA noted that many of 3M's violations concerned its reporting, or failure to report, on PFCs and that

the information 3M failed to report was "valuable" and would have "help[ed] the scientific community to better understand the toxic substances in the environment."

74.      Evidence of 3M's complex scheme to conceal its knowledge of the characteristics of PFAS was brought to light in papers filed by the State of Minnesota in November 2017. The State of Minnesota filed suit against 3M for its contamination of the natural resources in Minnesota because of its manufacturing of Long-Chain based PFAS products and its disposal of wastes stemming from its production processes. In its motions, the State of Minnesota comprehensively chronicled 3M's decades-long campaign to distort the science and manipulate the press, its customers, and regulators about the characteristics of PFAS. Shortly before trial, 3M settled the suit with the state for $850 million on February 20, 2018.

## III.    Defendants Continually Sold PFAS-Containing AFFF to Marathon for Decades

75.      Since the 1960s, Defendants have continually manufactured, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used PFAS-containing AFFF, including selling to Marathon.

76.      Defendants have known for decades that PFAS are mobile, stable, persistent, and resistant to biodegradation and that because their AFFF contains PFAS, the release of Defendants' PFAS-containing AFFF could cause environmental contamination. Notwithstanding that knowledge, Defendants persistently and intentionally hid the characteristics of PFAS-containing AFFF from Marathon, state and federal regulators, and the public.

77.      Defendants arranged for PFAS-containing AFFF to be disposed into the environment as a result of, or in connection with their distribution, sale, release, supply, transport, arrangement for disposal or treatment, and/or handling of PFAS-containing AFFF to Marathon.

78.     The Defendants have earned substantial profits from Marathon with regard to their business practices related to PFAS-containing AFFF.

79.     Despite their explicit knowledge of the environmental characteristics of PFAS-containing AFFF, Defendants deliberately and intentionally concealed these characteristics of PFAS-containing AFFF from Marathon, state and federal regulators, and the public at large.

80.     Instead of notifying Marathon of the environmental characteristics associated with their PFAS-containing AFFF, Defendants repeatedly assured Marathon that their products were environmentally sound, effective, and appropriate for widespread use.

81.     At all relevant times, Defendants, through their acts and/or omissions, sought to control the science surrounding PFAS, and in particular PFAS-containing AFFF, preventing Marathon from discovering the existence, adverse impacts, and extent of any contamination caused by PFAS-containing AFFF at the Site, which are now regulated and have caused the need for remediation at the Site in accordance with Michigan regulations and enforcement.

82.     At all relevant times, Defendants, through their acts and/or omissions, concealed and/or withheld information from Marathon, state and federal regulators, and the public that would have properly and fully alerted Marathon to the environmental characteristics posed by PFAS-containing AFFF and the environmental contamination that could occur as a result of these characteristics.

83.     At all relevant times, Defendants failed to discourage Marathon from continuing to use their PFAS-containing AFFF products, which caused PFAS to be released into the environment surrounding the Site, despite their knowledge of the mobility, stability, persistence, and resistance to biodegradation characteristics associated with PFAS-containing AFFF.

84.     Defendants' actions have caused detections of PFAS at the Site, which Marathon is now being directed to investigate, sample, and possibly remediate.

85.     Despite their knowledge that PFAS-containing AFFF would likely cause environmental contamination, and despite their admitted availability of reasonable and less problematic alternatives, Defendants failed to take appropriate precautionary measures to prevent or mitigate contamination caused by their PFAS-containing AFFF products.

86.     Defendants repeatedly promoted the PFAS-containing AFFF products as being environmentally sound and appropriate for use by Marathon.

87.     At all times relevant to this litigation, Defendants were or should have been aware that contamination to the Site and surrounding environment was inevitable as a result of their sale of PFAS-containing AFFF, due to PFAS's mobility, persistence, and resistance to biodegradation, and that this contamination resulted from the normal and foreseeable use of PFAS-containing AFFF manufactured, distributed, and sold by Defendants.

88.     At all times relevant to this litigation, Defendants were or should have been aware that Marathon would rely upon their acts/or omissions in purchasing the PFAS-containing AFFF products from Defendants, and such reliance resulted in detection of PFAS at the Site, which Marathon is now investigating and cleaning up at the direction of the Great Lakes Water Authority ("GLWA") and the Michigan Department of Environment, Great Lakes, and Energy ("EGLE").

89.     Defendants possess—and have always possessed—vastly superior knowledge, resources, experience, and other advantages, in comparison to any person or any agency, concerning the nature and properties of PFAS and specifically PFAS-containing AFFF.

90.     In addition, by virtue of this superior knowledge, due to Defendants' silence or misleading statements regarding the nature and impacts of their PFAS-containing AFFF products,

Defendants had a duty to disclose to Marathon the truth about the nature of their PFAS-containing AFFF products.

## IV.    **Increased Regulation of PFAS**

91.    The EPA and state environmental agencies have begun investigating various PFAS compounds, including PFOA, PFOS, and PFHxS.  These agencies have begun establishing regulatory, cleanup, health standards, and guidelines for PFAS.  The EPA has currently set its drinking water health advisory for PFOA and PFOS combined at 70 ppt.

92.    The EPA is currently moving forward with various regulatory actions, including listing PFOA, PFOS, and PFHxS as hazardous substances under Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), listing PFAS as hazardous wastes under the Resource Conservation and Recovery Act ("RCRA"), and creating health advisories for lifetime exposure to PFAS.

93.    In 2019, the EPA released an extensive PFAS Action Plan, which seeks to provide both short-term solutions and long-term strategies to address PFAS substances in the environment. The action plan addresses over twenty key focus areas, including addressing PFAS in drinking water, reducing PFAS exposure, increasing research into the characteristics and environmental fate of PFAS, and funding additional PFAS efforts.

94.    The EPA has published a proposed rulemaking under TSCA for PFAS relating to increased categorization and indexing of chemical properties of PFAS.  This proposal would require companies to report information, including the volume of PFAS they manufacture and its chemical identity.

95.     State regulators have also taken notice.  In November 2017, Michigan established the Michigan PFAS Action Response Team ("MPART") to address concerns about PFAS contamination in Michigan.

96.     The State of Michigan's Part 4 Rules, Water Quality Standards (of Part 31, Water Resources Protection, of Act 451 of 1994), specify water quality standards for all waters of the state.

97.     Michigan has established water quality standards for surface water for PFOS and PFOA under Rule 57 of the Part 4 Water Quality Standards of Part 31 of NREPA.  The applicable water quality standards for PFOS is 12 ppt for streams that are not used for drinking water and 11 ppt for those used as a drinking water source.  Similarly, the water quality standard for PFOA is 12,000 ppt for surface waters that are not used for drinking water and 420 ppt for those used as a drinking water source.

98.     Additionally, on January 9, 2018, the Michigan Department of Environmental Quality, the predecessor to EGLE, established drinking water cleanup criteria for PFAS of 70 ppt combined for PFOA and PFOS under the authority of Part 201, which is in line with the EPA's Lifetime Health Advisory.

99.     On August 3, 2020, EGLE adopted the following new standards aimed at protecting Michiganders from PFAS contamination in municipal drinking water:

| PFAS Compound | Drinking Water Standards |
|---|---|
| PFNA | 6 ng/L (ppt) |
| PFOA | 8 ng/L (ppt) |
| PFHxA | 400,000 ng/L (ppt) |
| PFOS | 16 ng/L (ppt) |
| PFHxS | 51 ng/L (ppt) |
| PFBS | 420 ng/L (ppt) |
| HFPO-DA (GenX) | 370 ng/L (ppt) |

100.    During this same time, EGLE also updated Michigan's existing groundwater clean-up criteria of 70 ppt for PFOS and PFOA. The new groundwater standard is 8 ppt for PFOA, 16 ppt for PFOS, and 51 ppt for PFHxS.

101.    These new levels also represent the current cleanup criteria under Michigan Act 245 of 1929 ("NREPA Part 201") for groundwater used as drinking water under the authority of Mich. Admin. Code R. 299.6.

102.    Given the existence of cleanup criteria under NREPA Part 201, PFAS-containing AFFF, including those containing PFOA, PFHxA, GenX, and the 3M specific PFOS and PFHxS, are considered "hazardous substances" under Section 20101(1)(x) of NREPA Part 201, MCL§ 324.20101(1)(x).

103.    The State of Michigan has determined that PFAS-containing AFFF are "hazardous substances" under NREPA Part 201 in recent litigations. On August 20, 2020, the State of Michigan filed suit in both the Ingham County Circuit Court and the United States District Court

for the Western District of Michigan, against 3M, National Foam, Chemguard, Tyco, and other commercial suppliers of PFAS-containing AFFF for alleged natural resource damages caused by the development, sale, release, supply, transport, arrangement for disposal or treatment, handling, and use of PFAS-containing AFFF by the Defendants.

## V.  Marathon's Discovery of the Environmental Characteristics of PFAS-Containing AFFF and its Continued Commitment to the Community

104.  Marathon used PFAS-containing AFFF at the Site with assurances from, and as directed by, Defendants.

105.  Marathon relied upon Defendants' increased knowledge of the environmental characteristics of PFAS-containing AFFF in making its decisions to purchase and use PFAS-containing AFFF.

106.  PFAS-containing AFFF were utilized at the Site to address fires, in training exercises, and in response to mutual aid calls made by the City of Detroit and other municipal firefighting departments.

107.  In 2018, Marathon undertook sampling of its wastewaters emanating from the Detroit Refinery in compliance with Parts 31 and 201 of NREPA. The results showed levels of Long-Chain PFAS such as PFOA, PFOS, and PFHxS above applicable criteria.

108.  Later that same year, on December 20, 2018, Marathon was issued a Notice of Violation by GLWA, identifying Marathon as a potential source of white foam that was observed emerging from a storm water basin in Melvindale, Michigan near the Site.

109.  At the direction of GLWA, Marathon has begun investigating, sampling, and planning remediation of the Site.

110.    Since Marathon began wastewater sampling in 2018, Marathon has spent over $6,471,989 assessing and investigating the Site, as well as examining the viability of various treatment options.

111.    As of 2019, Marathon has been forced to store or adequately dispose of 3M FC-600 Light Water™, Thunderstorm, and National Foam Universal Gold PFAS-containing AFFF from the Site.

112.    These PFAS-containing AFFF inventories at the Site have been replaced by alternative foams, including C-6 AFFF and fluorine-free foam, at Marathon's expense.

113.    Refineries, bulk storage facilities, and terminals, such as those owned and operated by Marathon, maintain and/or use AFFF to extinguish Class B fires.  Marathon and its facilities are the intended consumers of Defendants' PFAS-containing AFFF products.

114.    Marathon owns and operates a refinery and associated facilities in Detroit, Michigan, where Defendants' AFFF products were marketed, purchased, stored, and/or used.

115.    As a result of Marathon's historic use of PFAS-containing AFFF, Marathon has incurred and will continue to incur costs of addressing PFAS contamination related to Defendants' PFAS-containing AFFF products.

116.    Defendants understood the characteristics of their PFAS-containing AFFF products for several decades before Marathon, state and federal regulators, and the public but actively concealed and misrepresented the nature of PFAS compounds to maximize their own profits. Further, Defendants were aware of alternative product designs, though they have only shifted towards Short-Chain PFAS in recent years.

117.    Defendants, by their negligent, reckless, and willful acts and omissions, as set forth above, have, among other things, knowingly withheld information from Marathon regarding the

environmental characteristics of PFAS-containing AFFF, which has resulted in Marathon incurring and continuing to incur costs of addressing PFAS contamination at the direction of GLWA and other regulators.

118.    These costs were incurred by Marathon's reliance on Defendants' increased knowledge of PFAS-containing AFFF and Defendants' assurances regarding PFAS-containing AFFF's environmental characteristics.

119.    As a direct and proximate result of the conduct, omissions, and products of the Defendants, Marathon has incurred and will continue to incur substantial damages and costs associated with their products at the Site, including but not limited to disposing of and replacing unused products containing PFAS-containing AFFF, and continued investigation and remediation of Marathon's Site. Defendants never revealed the environmental characteristics of their PFAS-containing AFFF products and, merely because Marathon purchased and used Defendants' AFFF products at the Site exactly as intended and instructed, Marathon is now exposed to costs and damages to which it would not have otherwise been exposed. Marathon did not know, and could not have known, the environmental characteristics of the products it was using – or the subsequent investigation and cleanup it would be directed to conduct because of Defendants' AFFF products.

120.    Accordingly, Marathon brings this action for the following: (1) compensatory and exemplary damages consisting of general and site-specific costs and damages incurred and to be incurred by Marathon including, but not limited to, costs to dispose of unused AFFF products, replacement costs, costs of identifying, investigating, monitoring, and/or remediating Defendants' AFFF products and related costs, and real property environmental stigma/loss of market value damages; (2) declarative relief, finding Defendants liable for all future investigation, remediation,

and restoration costs associated with the Site; and (3) such other equitable relief as may be appropriate at law or equity under the facts established and proven by Plaintiff.

### COUNT I: SILENT FRAUD

121. Marathon repeats, re-alleges, and incorporates herein by reference each and every allegation contained in the preceding paragraphs, as though set forth herein.

122. Defendants, as vendors of PFAS-containing AFFF, had a legal duty under MCL 600.2946-600.2949 and an equitable duty to disclose material facts about the environmental characteristics of their products, particularly after the Defendants acquired new information that made their previous affirmative statements misleading or untrue.

123. Defendants failed to disclose additional information they learned about the environmental characteristics and disposal concerns surrounding their PFAS-containing AFFF and failed to warn Marathon about the knowledge of the environmental characteristics of PFAS they subsequently gained.

124. Defendants failed to disclose this additional information with the intention of inducing Marathon's reliance on, including its continued purchases of, PFAS-containing AFFF.

125. Defendants' false representations were reasonably relied upon by Marathon in its decision to purchase and use PFAS-containing AFFF.

126. As a result of this reliance, Marathon now faces millions of dollars in investigation, sampling, and remediation costs.

### COUNT II: INNOCENT MISREPRESENTATION

127. Marathon repeats, re-alleges, and incorporates herein by reference each and every allegation contained in the preceding paragraphs, as though set forth herein.

128. Defendants failed to disclose material information and made affirmative false statements to Marathon regarding the environmental characteristics of PFAS compounds in PFAS-containing AFFF.

129. Based on these false statements and misrepresentations, Marathon entered into contracts with all Defendants for the purchase of PFAS-containing AFFF.

130. Based on these false statements and misrepresentations, Marathon purchased and used PFAS-containing AFFF from Defendants for decades.

131. Because of these false statements and misrepresentations, Marathon is now faced with millions of dollars in cleanup costs, litigation costs, and disposal costs.

## COUNT III: NUISANCE - COMMON LAW/MCL 324.3109

132. Marathon repeats, re-alleges, and incorporates herein by reference each and every allegation contained in the preceding paragraphs, as though set forth herein.

133. The use and disposal of PFAS-containing AFFF have caused an unreasonable interference with the use and enjoyment of Marathon's properties.

134. Defendants produced and sold PFAS-containing AFFF knowing that they would contaminate surface water or groundwater and pollute the environment. As a result of Defendants' sales of chemicals to Marathon that the State of Michigan has deemed harmful and a hazardous substance and that 3M knew or could reasonably foresee would be disposed of at Marathon's properties, Marathon has suffered property damage, including at its Detroit Refinery.

135. Moreover, PFAS-containing AFFF caused pollution to surface water or groundwater in and around the Site. The pollution constitutes a public or private nuisance.

136.    As a result of the pollution caused by PFAS-containing AFFF, Marathon is now suffering unique harms separate from the general public, including significant liability and remediation costs.

## COUNT IV: FAILURE TO WARN / MCL 600.2948(3)

137.    Marathon repeats, re-alleges, and incorporates herein by reference each and every allegation contained in the preceding paragraphs, as though set forth herein.

138.    Marathon's use and disposal of PFAS-containing AFFF was reasonably foreseeable to Defendants. Defendants knew of Marathon's disposal practices and regularly advised customers like Marathon of appropriate methods to dispose of Defendants' products.

139.    Defendants were aware that the environmental characteristics of PFAS-containing AFFF might result in contamination that would need to be investigated and remediated, and Defendants had a duty to warn Marathon of those risks.

140.    Defendants failed to warn Marathon of any of the environmental characteristics of PFAS, and their effect on use and disposal of PFAS-containing AFFF, even though they were in a superior and unique position to understand these characteristics.

141.    Defendants failed to warn Marathon that PFAS would reach surface water or groundwater and that Marathon might be forced to investigate the Site for potential PFAS contamination.

142.    Defendants knew or should have known of the environmental characteristics of PFAS-containing AFFF as early as the 1960s and at all times thereafter.

143.    To the extent Defendants learned of any environmental characteristics after it sold PFAS-containing AFFF to Marathon, Defendants also failed to warn Marathon of the environmental characteristics of PFAS after it sold PFAS-containing AFFF products to Marathon.

144.    The environmental characteristics of PFAS were neither obvious nor known to Marathon, nor were they a matter of common knowledge to other purchasers of PFAS-containing AFFF.

145.    If Marathon had known that its use of PFAS-containing AFFF could cause surface water, groundwater, or environmental contamination, it never would have purchased the product in the first instance or would have ceased using the product earlier, adopted different disposal practices, and/or begun cleaning up at an earlier date.

146.    As a result of Defendants' failure to warn Marathon of the risks of PFAS, Marathon's properties have been damaged and surface water on and the groundwater underneath those properties have been contaminated by PFAS. Marathon now faces significant potential liability and property damage.

## COUNT V: PRODUCT DESIGN DEFECT

147.    Marathon repeats, re-alleges, and incorporates herein by reference each and every allegation contained in the preceding paragraphs, as though set forth herein.

148.    Defendants are in the business of designing, manufacturing, and distributing numerous Long-Chain PFAS-containing products, including PFAS-containing AFFF.

149.    Marathon purchased PFAS-containing AFFF directly from Defendants or their agents beginning in the 1970s and continuing into the 2000s.

150.    Defendants had a duty to design, manufacture, and distribute its chemical products in a manner that would not cause environmental pollution and/or surface water or groundwater contamination when used for the purposes for which they were designed.

151. Defendants breached their duty by designing, manufacturing, and distributing Long-Chain PFAS-containing products, including PFAS-containing AFFF, knowing that they would and did cause environmental pollution and surface water or groundwater contamination.

152. It was reasonably foreseeable to Defendants, and Defendants knew, that their customers, including Marathon, would use and dispose of PFAS-containing AFFF in a way that could cause PFAS to pollute the environment and contaminate surface water or groundwater.

153. There was a reasonable alternative design available that would have reduced the foreseeable risk of harm posed by the older formulation of PFAS-containing AFFF while maintaining the product's usefulness and desirability.

154. As a result of Defendants' defective PFAS-containing AFFF, Marathon's properties have been damaged and surface water on and the groundwater underneath the properties have been contaminated by PFAS. Marathon now faces significant potential liability, cleanup costs, and property damage.

## COUNT VI: NEGLIGENCE

155. Marathon repeats, re-alleges, and incorporates herein by reference each and every allegation contained in the preceding paragraphs, as though set forth herein.

156. Defendants owed a duty to act with care in creating, manufacturing, selling, and advising customers regarding the use and disposal of its PFAS-containing AFFF products.

157. Defendants breached their duty by engaging in the conduct alleged above including, but not limited to, creating a product with environmental characteristics that would result in environmental contamination, failing to take action to mitigate those risks, selling products with knowledge of these environmental characteristics, and failing to disclose those environmental characteristics to their customers, including Marathon, regulators, and the general public.

158.    Had Marathon been aware of the environmental characteristics of PFAS-containing AFFF, it never would have used the product, or would have switched to an alternative sooner.

159.    As a result of Defendants' negligence, Marathon's properties have been damaged and surface water on and the groundwater underneath the properties have been contaminated by PFAS. Marathon now faces significant potential liability, cleanup costs, and property damage.

## COUNT VII: NREPA PART 201 COST RECOVERY

160.    Marathon repeats, re-alleges, and incorporates herein by reference each and every allegation contained in the preceding paragraphs, as though set forth herein.

161.    Marathon is a "person" within the meaning of Part 201 of NREPA, MCL 324.20126.

162.    Defendants are each a "person" within the meaning of Part 201 of NREPA, MCL 324.20126.

163.    The Site is a "facility" within the meaning of Part 201 of NREPA, MCL 324.20101(1)(s).

164.    PFAS are "hazardous substances" under Part 201 of the NREPA, MCL 324.20101(1)(x).

165.    PFAS including PFOA, PFOS, and PFHxS are "hazardous substances" under Part 201 of the NREPA, MCL 324.20101(1)(x), based upon EGLE's establishment of residential drinking water cleanup criteria for PFOA, PFOS, and PFHxS under Mich. Admin. Code R 299.6(12), effective January 10, 2018, and under Mich. Admin. Code R 325.10604g, effective August 3, 2020.

166.    The leaking, emitting, discharging, escaping, leaching, dumping, and disposal of hazardous substances constitute a "release" or "threat of release" as those terms are defined in MCL 324.20101(1)(pp) and MCL 324.20101(1)(ccc).

167.    PFAS have been released into the Site.

168.    EGLE has established cleanup criteria for PFOA, PFOS, and PFHxS for exposure pathways including surface water, groundwater-surface water interface, and groundwater as a source of drinking water. MCL 324.20120e(1)(a), Mich. Admin. Code R. 299.6(12).

169.    The levels of PFOA, PFOS, and PFHxS in surface water and groundwater at and around the Site have historically exceeded and currently exceed the concentrations that satisfy the cleanup and exposure criteria under Part 201.

170.    Defendants arranged for disposal or treatment of PFAS-containing AFFF, which contains PFAS and other "hazardous substances" at the Site within the meaning of Part 201 of NREPA, MCL 324.20126(1)(b).

171.    In connection with the releases of "hazardous substances" at the Site, Marathon has incurred and will incur "costs of response activity" within the meaning of Part 201, MCL 324.20101(1)(ww) and MCL 324.20126a(1)(b), to remediate the facility. The costs of response activity were reasonably incurred under the circumstances.

172.    Defendants are liable, pursuant to Part 201 of NREPA, MCL 324.20126a(1), to Marathon for past and future costs of response activities.

## COUNT VIII: NREPA PART 201 CONTRIBUTION

173.    Marathon repeats, re-alleges, and incorporates herein by reference each and every allegation contained in the preceding paragraphs, as though set forth herein.

174. Marathon is a "person" within the meaning of Part 201 of NREPA, MCL 324.20126.

175. Defendants are each a "person" within the meaning of Part 201 of NREPA, MCL 324.20126.

176. The Site is a "facility" within the meaning of Part 201 of NREPA, MCL 324.20101(1)(s).

177. There was an actual or threatened "release" of "hazardous substances" within the meaning of Part 201, MCL 324.20101(1)(pp) and MCL 324.20126.

178. Defendants arranged for disposal or treatment of PFAS-containing AFFF, which contain PFAS and other "hazardous substances" within the meaning of Part 201, MCL 324.20126(1)(d).

179. In connection with the releases of PFAS-containing AFFF and other "hazardous substances" at the Site, Marathon has incurred and will incur "costs of response activity" within the meaning of Part 201, MCL 324.20129(3). The costs of response activity were reasonably incurred under the circumstances.

180. Marathon has incurred, and may be ordered to incur, costs of response activity associated with remediation of the Site, which costs are greater than Marathon's equitable share of those costs.

181. Defendants are liable, pursuant to Part 201, MCL 324.20126 (1), and MCL 324 20129(3), to Marathon for past and future costs of response activity paid by Marathon in excess of Marathon's equitable share of such costs.

## COUNT IX: UNJUST ENRICHMENT

182.    Marathon repeats, re-alleges, and incorporates herein by reference each and every allegation contained in the preceding paragraphs, as though set forth herein.

183.    Marathon has incurred and will continue to incur expenses in connection with the use and presence of Defendants' PFAS-containing AFFF products at the Site, including disposal and replacement costs of unused products, and identification, investigation, monitoring, remediation, assessment, and other costs incurred as a result of the Defendants' fraud and other acts and/or omissions described herein.

184.    Defendants are responsible for expenditures related to Defendants' PFAS-containing AFFF products, which were caused by the use of their products.  In accordance with equitable principles, Defendants should have to pay these costs.  It would be unjust for Defendants to retain the benefit of Marathon's expenditures incurred in connection with their products.  For Defendants to fail to make restitution to Marathon would be inequitable.  Defendants have been unjustly enriched at Marathon's expense.

185.    Accordingly, Marathon requests restitution for the full amount by which Defendants were unjustly enriched and an injunction ordering Defendants to return all monies by which they were unjustly enriched as a result of Marathon's expenditures in connection with Defendants' AFFF products.

## COUNT X: DECLARATORY JUDGMENT

186.    Marathon repeats, re-alleges, and incorporates herein by reference each and every allegation contained in the preceding paragraphs, as though set forth herein.

187.    The facts and circumstances of this case present an actual controversy regarding the rights and legal relations of the parties.

188. The rights of the parties can only be determined by declaratory judgment.

189. Marathon is entitled under MCR 2.605 to a declaratory judgment declaring and adjudging, among other things, that:

A. Defendants' past and/or present manufacture, sale, supply, handling, and transportation arranged for Marathon's disposal of a NREPA Part 201 hazardous substance at a facility owned or operated by another person, and that such actions require Defendants to pay Marathon's response costs to investigate, sample, and remediate the Site;

B. Defendants are liable for any further response activity costs or damages incurred by Marathon in connection with the Site;

C. All Defendants are strictly liable, and jointly and/or severally liable as appropriate, to Marathon for the claims set forth above; and

D. Marathon's contracts with one or more of the Defendants for the purchase of PFAS-containing AFFF are rescinded.

## PRAYER FOR RELIEF

WHEREFORE, Marathon requests judgment in its favor and against all of the Defendants as follows:

A. Declare and adjudge that Defendants' past and/or present manufacture, sale, supply, handling, and transportation arranged for Marathon's disposal of a NREPA Part 201 hazardous substance at a facility owned or operated by another person, and that such actions require Defendants to pay Marathon's response costs to investigate, sample, and remediate the Site;

B. Holding and declaring all Defendants to be strictly liable, and jointly and/or severally liable as appropriate, to Marathon for the claims set forth above, and awarding Marathon damages consisting of costs incurred and to be incurred in responding to any contamination caused by the Defendants' PFAS-containing AFFF products, and damages for injury to, destruction of, and loss of

Marathon's property, including the costs of disposing of and replacing unused products, and assessing, monitoring and/or remediating damages, and the costs of experts needed to make such an assessment;

C. Holding and declaring all Defendants to be strictly liable, and jointly and/or severally liable as appropriate, to Marathon for the claims set forth above, and awarding Marathon compensatory damages consisting of costs to dispose of unused PFAS-containing AFFF products and real property environmental stigma/loss of market value damages;

D. Awarding money damages to pay for the remediation and/or restoration of the PFAS chemicals and/or for efforts, and/or to pay for the diminution in market value for the Site;

E. Awarding exemplary, punitive, and such other damages allowed by statute in an amount to be determined at trial;

F. Awarding Marathon reasonable attorneys' fees, costs, and other reasonable litigation expenses;

G. Awarding declarative relief to Marathon, binding on any subsequent action or actions, that holds Defendants liable for any further response activity costs or damages incurred by Marathon in connection with the Site;

H. Awarding equitable relief for Marathon's reasonably expected future damages as set forth above; and

I. Awarding such other and further relief at law and/or in equity that the Court deems appropriate.

# DEMAND FOR TRIAL BY JURY

Marathon demands a jury on all issues triable by a jury.


Dated: December 16, 2021              Respectfully submitted,

                                 **KERR RUSSELL AND WEBER, PLC**

                                 By:   */s/ James E. DeLine*
                                     James E. DeLine (P45205)
                                 KERR RUSSELL AND WEBER, PLC
                                 Attorneys for Plaintiff
                                 500 Woodward Ave, Ste. 2500
                                 Detroit, MI 48226
                                 (313) 961-0200
                                 jdeline@kerr-russell.com

                                 Joe G. Hollingsworth (pending pro hac admission)
                                 Donald W. Fowler (pending pro hac admission)
                                 Carter F. Thurman (pending pro hac admission)
                                 Pete Chattrabhuti (pending pro hac admission)
                                 HOLLINGSWORTH LLP
                                 1350 I Street, N.W.
                                 Washington, D.C. 20005
                                 Telephone: (202) 898-5800
                                 jhollingsworth@hollingsworthllp.com
                                 dfowler@hollingsworthllp.com
                                 cthurman@hollingsworthllp.com
                                 pchattrabhuti@hollingsworthllp.com

                                 *Attorneys for Plaintiff*
                                 *Marathon Petroleum Company LP*

# STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

MARATHON PETROLEUM COMPANY LP,

Plaintiff,

v.

3M COMPANY (f/k/a MINNESOTA MINING AND
MANUFACTURING CO.); NATIONAL FOAM,
INC.; TYCO FIRE PRODUCTS, LP; CHEMGUARD,
INC.; HAYDEN & COMPANY; WILLFIRE LLC;
and DOE DEFENDANTS 1 TO 20,

Defendants.

Case No. 21 - _____ CB

HON. _____

---

James E. DeLine (P45205)
**KERR, RUSSELL AND WEBER, PLC**
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
(313) 961-0200
jdeline@kerr-russell.com
*Attorneys for Plaintiff*

Joe G. Hollingsworth (pending pro hac admission)
Donald W. Fowler (pending pro hac admission)
Carter F. Thurman (pending pro hac admission)
Pete Chattrabhuti (pending pro hac admission)
**HOLLINGSWORTH LLP**
1350 I Street, N.W.
Washington, D.C. 20005
Telephone: (202) 898-5800
jhollingsworth@hollingsworthllp.com
dfowler@hollingsworthllp.com
cthurman@hollingsworthllp.com
pchattrabhuti@hollingsworthllp.com

*Attorneys for Plaintiff*

---

## DEMAND FOR TRIAL BY JURY

Marathon demands a jury on all issues triable by a jury.

Dated: December 16, 2021        Respectfully submitted,

**KERR RUSSELL AND WEBER, PLC**

By:    */s/ James E. DeLine*
       James E. DeLine (P45205)
KERR RUSSELL AND WEBER, PLC
Attorneys for Plaintiff
500 Woodward Ave, Ste. 2500
Detroit, MI 48226
(313) 961-0200
jdeline@kerr-russell.com

Joe G. Hollingsworth (pending pro hac admission)
Donald W. Fowler (pending pro hac admission)
Carter F. Thurman (pending pro hac admission)
Pete Chattrabhuti (pending pro hac admission)
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, D.C. 20005
Telephone: (202) 898-5800
jhollingsworth@hollingsworthllp.com
dfowler@hollingsworthllp.com
cthurman@hollingsworthllp.com
pchattrabhuti@hollingsworthllp.com

*Attorneys for Plaintiff*
*Marathon Petroleum Company LP*

# EXHIBIT C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARATHON PETROLEUM
COMPANY LP,

    Case No. 22 –cv-10117

Plaintiff,

    Hon. Mark A. Goldsmith

       v.

    Magistrate Judge Jonathan J.C. Grey

3M COMPANY (f/k/a MINNESOTA
MINING AND MANUFACTURING
CO.); NATIONAL FOAM, INC.;
TYCO FIRE PRODUCTS, LP;
CHEMGUARD, INC.; HAYDEN &
COMPANY; WILLFIRE LLC; and
DOE DEFENDANTS 1 TO 20,

Defendants.

---

## PLAINTIFF'S MOTION TO REMAND

Plaintiff, Marathon Petroleum Company LP, moves pursuant to 28 U.S.C.

§ 1447(c) to remand this action to the Wayne County Business Court and recover

reasonable attorneys' fees and costs incurred as a result of this removal. This

Motion is supported by the accompanying brief. The undersigned counsel certifies

in accordance with E.D. Mich. Local Rule 7.1(a) that counsel personally spoke to

opposing counsel, explaining the nature of the relief to be sought by way of this

motion and seeking concurrence in the relief; opposing counsel expressly denied

concurrence.

On January 20, 2022, defendant 3M Company filed a notice of potential tag-along action with the United States Judicial Panel on Multidistrict Litigation ("JPML"), *In re AFFF Prods. Liab. Litig.*, MDL No. 2873, Doc No. 1274. The next day, the MDL court entered a Conditional Transfer Order. MDL No. 2873, Doc No. 1276. Plaintiff is contemporaneously filing a notice of opposition to the conditional transfer order (CTO-78) with the JPML, objecting to the transfer of this case as a "tag along action" pursuant to Rule 7.1 (c) of the Rules of Procedure of the JPML. Plaintiff requests that this Court determine the jurisdictional issues raised in this motion before any decision by the JPML as to the conditional transfer order. *See Johnson v. Micron Tech.*, *Inc.*, 354 F. Supp. 2d 736, 739-740 (E.D. Mich. 2005) (holding the district court retains exclusive jurisdiction until the § 1407 transfer is complete and as such, motions to remand should be resolved before the panel acts on the motion to transfer); *Curnow v. Stryker Corp.*, No. 19-12371, 2013 WL 5651439, at *4 (E.D. Mich. Oct. 15, 2013) (holding the same).

Dated: January 31, 2022          **KERR RUSSELL AND WEBER, PLC**

By: */s/ James E. DeLine*
James E. DeLine (P45205)
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
Telephone: (313) 961-0200
jdeline@kerr-russell.com

Joe G. Hollingsworth (pending admission)
Donald W. Fowler (pending admission)
Carter F. Thurman (pending admission)
Pete Chattrabhuti (pending admission)
**HOLLINGSWORTH**LLP
1350 I Street, N.W.
Washington, DC 20005
Telephone: (202) 898-5800
jhollingsworth@hollingsworthllp.com
dfowler@hollingsworthllp.com
cthurman@hollingsworthllp.com
pchattrabhuti@hollingsworthllp.com

*Attorneys for Plaintiff,*
*Marathon Petroleum Company LP*

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ............................................................... i

CONCISE STATEMENT OF THE ISSUES PRESENTED ..................................... ii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ........................... iii

INDEX OF AUTHORITIES ................................ **Error! Bookmark not defined.**

PRELIMINARY STATEMENT ................................................................ 1

BACKGROUND ............................................................................ 4

ARGUMENT .................................................................................. 9

   I.   Legal Standard. ................................................................. 9

   II.  Defendants Cannot Establish That the Federal Officer Removal Statute Applies. ......................................................... 10

      A.  Mil-Spec AFFF has no relevance to Marathon's claims .................... 11

      B.  Defendants have not demonstrated a connection or association between Mil-Spec AFFF and Marathon's claims. ............................ 12

      C.  Defendants fail to satisfy the "acting under" prong of the federal officer removal statute. ................................................... 18

      D.  Defendants do not have a colorable claim that the government contractor defense applies to the complaint in this matter. ................. 19

CONCLUSION ................................................................................ 21

## <u>CONCISE STATEMENT OF THE ISSUES PRESENTED</u>

Defendants removed this state-law action, stemming from PFAS contamination at Marathon's Detroit refinery, under the federal officer removal statute, which permits removal only if a defendant's actions were directed by a federal officer. Removal was predicated on defendants' naked assertion that, "on information and belief," Marathon's damages arise "at least in part" from the presence of "Mil-Spec AFFF"—a PFAS-containing foam manufactured to military specifications—in the "vicinity" of the refinery.  Should this case be remanded where Mil-Spec AFFF was never used or discharged at the refinery (defendants concede it was used only at Willow Run Airport and Selfridge Air National Guard Base), defendants do not claim that Mil-Spec AFFF migrated onto Marathon's property, Marathon's complaint does not implicate Mil-Spec AFFF, and there was no government contract involved in the purchase, use, or release of the PFAS found at the refinery?

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

28 U.S.C. § 1447(c)

*Am. Telecom Co. v. Republic of Lebanon,* 501 F.3d 534 (6th Cir. 2007)

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)

*Bennett v. MIS Corp.*, 607 F.3d 1076 (6th Cir. 2010)

*Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988)

*Curnow v. Stryker Corp.*, No. 19-12371, 2013 WL 5651439 (E.D. Mich. Oct. 15, 2013)

*Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095 (9th Cir. 2018)

*Johnson v. Micron Tech., Inc.*, 354 F. Supp. 2d 736 (E.D. Mich. 2005)

*Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014)

*Mesa v. California*, 489 U.S. 121 (1989)

*Watson v. Philip* Morris, 551 U.S. 142 (2007)

# INDEX OF AUTHORITIES

**Page(s)**

**Cases**

*In re AFFF Prods. Liab. Litig.,*
MDL No. 2:19-mn-2873 ...................................................................................8

*In re AFFF Prods. Liab. Litig.,*
MDL No. 2:18-mn-2873-RMG (D.S.C. May 24, 2019) ...................................17

*In re AFFF Prods. Liab. Litig.,*
MDL No. 2:18-mn-2873-RMG (D.S.C. Sept. 27, 2019) ..................................17

*In re AFFF Prods. Liab. Litig.,*
MDL No. 2:18-mn-2873-RMG (D.S.C. Oct. 1, 2019)......................................17

*Am. Telecom Co. v. Republic of Lebanon,*
501 F.3d 534 (6th Cir. 2007) ...........................................................................10

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ..........................................................................................14

*Ayo v. 3M Co.,*
No. 18-CV-0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept.
30, 2018) ...............................................................................................14, 16, 17

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ..........................................................................................14

*Bennett v. MIS Corp.,*
607 F.3d 1076 (6th Cir. 2010) ..............................................................11, 12, 20

*Boyle v. United Techs. Corp.,*
487 U.S. 500 (1988) .....................................................................................14, 20

*City of Corona v. 3M Co.,*
No. 5:21-CV-01156-SVW-AS, 2021 WL 3829700 (C.D. Cal. Aug.
27, 2021) ........................................................................................................12, 14

*In re Commonwealth's Motion to Appoint Counsel Against or*
    *Directed to Def. Ass'n of Philadelphia*,
    790 F.3d 457 (3d Cir. 2015) ...............................................................18

*Curnow v. Stryker Corp.*,
    No. 13-13271, 2013 WL 5651439 (E.D. Mich. Oct. 15, 2013) ........................10

*Fidelitad, Inc. v. Insitu, Inc.*,
    904 F.3d 1095 (9th Cir. 2018) ....................................................17, 20

*Hagen v. Benjamin Foster Co.*,
    739 F. Supp. 2d 770 (E.D. Pa. 2010).................................................20

*Isaacson v. Dow Chem. Co.*,
    517 F.3d 129 (2d Cir. 2008) .................................................14, 15, 17

*Johnson v. Micron Tech., Inc.*,
    354 F. Supp. 2d 736 (E.D. Mich. 2005) ...........................................10

*Leite v. Crane Co.*,
    749 F.3d 1117 (9th Cir. 2014) .........................................9, 11, 13, 14

*Mesa v. California*,
    489 U.S. 121 (1989).........................................................................13

*Morrison v. Humana Inc.*,
    No. 3:16-CV-00598-GNS, 2017 WL 2312476 (W.D. KY. May 26,
    2017) ..............................................................................................9

*Nessel v. Chemguard Inc.*,
    No. 1:20-CV-10802021, WL 744683 (W.D. Mi. Jan. 6, 2021) ............14, 16, 17

*Papp v. Fore-Kast Sales Co.*,
    842 F.3d 805 (3d Cir. 2016) .....................................................13, 18

*Ramey v. Martin-Baker Aircraft Co.*,
    874 F.2d 946 (4th Cir. 1989) ...........................................................20

*Ripley v. Foster Wheeler LLC*,
    841 F.3d 207 (4th Cir. 2016) .....................................................13, 19

*Watson v. Philip Morris Companies, Inc.*,
    551 U.S. 142 (2007)..........................................................11, 18, 19

## Statutes

28 U.S.C. § 1441(a) ...............................................................................................9

28 U.S.C. §1442 .............................................................................................12, 19

28 U.S.C. §1442(a)(1) ....................................................................................2, 10

28 U.S.C. § 1447(c) ...........................................................................................10

## Other Authorities

J.P.M.L. Rule 2.1(d) ...........................................................................................10

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARATHON PETROLEUM
COMPANY LP,

Case No. 22-cv-10117

Plaintiff,

Hon. Mark A. Goldsmith

    v.

Magistrate Judge Jonathan J.C. Grey

3M COMPANY (f/k/a MINNESOTA
MINING AND MANUFACTURING
CO.); NATIONAL FOAM, INC.;
TYCO FIRE PRODUCTS, LP;
CHEMGUARD, INC.; HAYDEN &
COMPANY; WILLFIRE LLC; and
DOE DEFENDANTS 1 TO 20,

Defendants.

---

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND

### PRELIMINARY STATEMENT

Plaintiff Marathon Petroleum Company ("Marathon") brought this suit in Wayne County Business Court to recover costs and damages under Michigan statutory and common laws for the contamination of its Detroit refinery property by per- and polyfluoroalkyl substances ("PFAS") caused by PFAS-containing aqueous film-forming foam ("PFAS-containing AFFF") manufactured and sold by defendants to Marathon.

To avoid litigating Marathon's state law claims in state court, Defendants Tyco Fire Products LP ("Tyco") and Chemguard, Inc. ("Chemguard")

(collectively, "defendants") filed a notice of removal on January 19, 2022. Notice of Removal, ECF No. 1. Defendants' notice of removal is based solely on their intention to assert the "government contractor" defense under the federal officer removal statute, 28 U.S.C. §1442(a)(1). To attempt to fit within the federal officer removal statute, defendants point to Marathon's request for real property environmental stigma/loss of market value as one element of damages in this case. Defendants argue that, if Marathon intends to seek such damages, they will "raise the defense that such damages arise at least in part from the presence of Mil-Spec AFFF[1] in the vicinity (if not on)" Marathon's property. *Id.* at PageID.2-3.

Mil-Spec AFFF, however, is a red herring—it was never used by Marathon, it has never been discharged at Marathon's Detroit refinery, and defendants do not (and cannot) claim that Mil-Spec AFFF has migrated onto Marathon's property and commingled with existing contamination. Rather, defendants point to Mil-Spec AFFF that may have been discharged more than 20 miles from Marathon's property, which they claim may have migrated through surface water and groundwater, ultimately making its way near—but not onto—Marathon's property, thereby possibly contributing to the diminution in value of Marathon's property.

---

[1] Mil-Spec AFFF is PFAS-containing AFFF manufactured in accordance with military specification and used on military bases, airfields, and Navy ships, and at certain civilian airports. Notice, ECF No. 1-1 PageID.39, ¶ 56. In contrast, the PFAS-containing AFFF at issue in Marathon's complaint is a commercial product not subject to Mil-Spec standards.

*Id.* at PageID.11-12. Defendants point to Willow Run Airport ("Willow Run") in Ypsilanti and Selfridge Air National Guard Base ("Selfridge") in Harrison Township as potential sources of Mil-Spec AFFF. Willow Run is more than 20 miles from Marathon's refinery. Selfridge is more than 26 miles away. These distances do not account for the much longer surface water and groundwater pathways required for Mil-Spec AFFF to migrate to the areas near Marathon's property.

Unable to plausibly allege that Mil-Spec AFFF is actually contaminating Marathon's refinery, defendants are forced to fabricate a causation theory that would not provide a defense to liability but may at most reduce the damages they owe by some unspecified amount. Defendants' claim is based on a causation theory so attenuated and speculative as to not warrant consideration by this Court. Defendants' theory is based on the following:

(1) Mil-Spec AFFF may have been discharged at remote locations more than 20 miles away;

(2) The Mil-Spec AFFF "likely" migrated into adjacent surface water and groundwater;

(3) The Mil-Spec AFFF then "likely" migrated more than 20 miles through undefined surface water and groundwater pathways;

(4) The Mil-Spec AFFF may have then accumulated in the Rouge and Detroit Rivers in concentrations high enough to impact river-front property values in "proximity" to Marathon's land-locked property;

(5) The affected river-front property values then drove down property values of the adjacent property; and

(6) This cascade of decreasing property values continued (for miles) until it reached Marathon's refinery, which is already contaminated with non-Mil-Spec AFFF that was manufactured by defendants.

Even though the federal officer removal statute is broad, no court has found removal appropriate where such an attenuated connection is alleged. This Court should reject defendants' efforts and promptly remand this case to the Wayne County Business Court so a Michigan court can decide important state-law issues affecting Michigan property that defendants concede is not contaminated by Mil-Spec AFFF.

## BACKGROUND

PFAS are a family of man-made fluorinated compounds commonly known as "forever" chemicals because they are stable, extremely persistent in the environment, and resistant to typical biodegradation. There are two types of AFFF relevant to this motion: (1) Mil-Spec AFFF, which was designed for, purchased, and used by DOD or certain FAA-regulated airports, according to DOD specifications and performance standards; and (2) commercially-available PFAS-containing AFFF sold to commercial customers, such as Marathon, since the 1960s. These two AFFF products are not interchangeable—they are distinct products with unique chemical compositions and formulas.

Since the 1960s, defendants have commercially manufactured, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled,

and/or used PFAS-containing AFFF, including selling PFAS-containing AFFF to Marathon. ECF No. 1-1, PageID.43, Compl. ¶ 75. Defendants have known for decades that PFAS are mobile, stable, persistent, and resistant to biodegradation and that, because their commercial AFFF contain PFAS, the release of defendants' PFAS-containing AFFF would cause environmental contamination. *Id.*, Compl. ¶ 76. Notwithstanding that knowledge, defendants persistently and intentionally hid the characteristics of PFAS-containing AFFF from Marathon, state and federal regulators, and the public. ECF No. 1-1, PageID.44, Compl. ¶ 79.

Since 2018, Marathon has investigated contamination at the refinery, detecting PFAS-containing AFFF. ECF No. 1-1, PageID.31-32, Compl. ¶ 10. As alleged in the complaint, Mil-Spec AFFF has never been sold to, used at, or housed at the Detroit refinery. ECF No. 1-1, PageID.39, Compl ¶ 56. Marathon has spent over $6,471,989 investigating the contamination, as well as examining the viability of various treatment options relating to the PFAS-containing AFFF contamination. ECF No. 1-1, PageID.50, Compl. ¶ 110. Moreover, Marathon has **not** detected Mil-Spec AFFF contamination.

On December 16, 2021, Marathon filed suit to recover costs and damages related to defendants' PFAS-containing AFFF products. Marathon sued exclusively under Michigan state law and did not allege any recovery based on Mil-Spec AFFF contamination. ECF No. 1-1, PageID.39, Compl. ¶ 56. Marathon

has incurred and will continue to incur substantial damages and costs associated with defendants' products, including but not limited to disposing of and replacing unused products containing PFAS-containing AFFF, and continued investigation and remediation of Marathon's Detroit refinery.

On January 19, 2022, defendants filed a notice of removal, alleging that they "intend[] to raise the *defense* that such damages arise at least in part from the presence of PFAS from Mil-Spec AFFF in the vicinity of (if not on) the Property." Notice of Removal, ECF No. 1, PAGEID.2-3 (emphasis in original). Specifically, defendants allege that Mil-Spec AFFF present in nearby rivers accounts for some unspecified portion of the diminution in value of Marathon's property, which is one element of the damages Marathon seeks to recover in this case.

To support their claim, defendants allege that Willow Run and Selfridge have been identified by the State of Michigan as sites that **may** have used Mil-Spec AFFF. The following map illustrates the location of Willow Run, Selfridge, and Marathon's refinery:



Tellingly, defendants do not allege that the Mil-Spec AFFF migrated onto
Marathon's property.  Lacking any direct link of Mil-Spec AFFF to contamination
at Marathon's refinery, defendants resort to a speculative and unsupported chain of
assumptions.  Notice of Removal, ECF No. 1, at 11-12.  Specifically, defendants
contend that Mil-Spec AFFF may have migrated between 20 and 26 miles from
either Willow Run or Selfridge through surface water runoff and groundwater
flow, entering the Rouge River and Detroit River.  Yet those rivers are more than a
mile away from Marathon's property.  Defendants speculate the following chain of
events:

> 1) Willow Run and Selfridge, located more than 20 and 26 miles from the
> refinery, respectively, may have released Mil-Spec AFFF on their properties;
>
> 2) This Mil-Spec AFFF "likely" migrated into adjacent surface water bodies
> or groundwater;

3) The Mil-Spec AFFF then "likely" migrated, through surface water runoff or groundwater flow, over 20 miles into the Rouge and Detroit Rivers in "proximity" to Marathon's refinery;

4) The Mil-Spec AFFF may have accumulated in this location in sufficient quantities to impact riverfront property values;

5) The affected river-front property values then drove down property values of adjacent properties; and

6) This cascade of decreasing property values continued, for miles, until it reached and allegedly affected the market value of Marathon's refinery, which was already contaminated with defendants' PFAS-containing AFFF.[2]

Notice of Removal, ECF No. 1, at 11-12. This theory is far too speculative and attenuated to give rise to federal officer jurisdiction. Indeed, under defendants' theory every ground contamination matter involving PFAS in the entire metropolitan Detroit area would be removable to federal court.

On January 20, 2022, defendant the 3M Company ("3M") filed a Notice of Potential Tag-Along Action with the United States Judicial Panel on Multidistrict Litigation ("JPML"). *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873, Doc No. 1274. The next day, the JPML court entered a conditional transfer order. Case No. MDL No. 2:18-mn-2873, Doc No. 1276. Marathon's notice of objection to the conditional transfer order was filed January 28, 2022. Case No. MDL No.

---

[2] The area surrounding Marathon's refinery in Detroit is heavily industrialized, and has been for decades. Similarly, both the Rouge and Detroit Rivers have been the subject of environmental cleanup and remediation efforts for a similar amount of time. Given this, defendants' claims that Mil-Spec AFFF contamination in the surrounding area would somehow lower the market value of Marathon's Refinery is not plausible.

2:18-mn-2873, Doc No. 1277. The parties' briefing on the conditional transfer order will be completed in mid-March. Thus, the JPML will take up Marathon's motion to vacate the conditional transfer order at the scheduled hearing session on March 31, 2022. *See* https://www.jpml.uscourts.gov/hearing-information.

## ARGUMENT

Marathon's suit relates to PFAS contamination caused solely by commercially-available PFAS-containing AFFF at its site. Marathon's suit does not relate, even tangentially, to defendants' design, production, or sale of Mil-Spec AFFF under the supposed supervision or direction of the U.S. military. The federal officer removal statute—the sole basis for defendants' notice of removal—is inapplicable because defendants' have no plausible federal contractor defense on which to rely.

## I.     Legal Standard.

Removal is proper if federal courts would have original jurisdiction of the action. 28 U.S.C. § 1441(a). When invoking removal jurisdiction, a defendant's "factual allegations" will originally be accepted as true unless challenged by the plaintiff. *Leite v. Crane Co.*, 749 F.3d, 1117, 1121-22 (9th Cir. 2014). However, "[i]f, at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case **shall** be remanded." *Morrison v. Humana Inc.*, No. 3:16-CV-00598-GNS, 2017 WL 2312476, at *2 (W.D. KY. May 26, 2017)

(quoting *Am. Telecom Co. v. Republic of Lebanon,* 501 F.3d 534, 537 (6th Cir. 2007); 28 U.S.C. § 1447(c) (emphasis added).

Motions to remand should be resolved before the JPML acts on a motion to transfer so the federal court can assure itself of jurisdiction before the case is transferred to the MDL. *Johnson v. Micron Tech., Inc.*, 354 F. Supp. 2d 736, 739-40 (E.D. Mich. 2005); *see also Curnow v. Stryker Corp.*, No. 13-13271, 2013 WL 5651439, at * 3 (E.D. Mich. Oct. 15, 2013). Additionally, "the pendency of the conditional transfer order does not affect or suspend orders and pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court." J.P.M.L. Rule 2.1(d). This matter involves a Michigan plaintiff seeking relief under Michigan statutory and common laws. This Court should make its determination relating to its subject matter jurisdiction over this matter because, without it, this case must be remanded. 28 U.S.C. § 1447(c).

## II.  Defendants Cannot Establish That the Federal Officer Removal Statute Applies.

The federal officer removal statute allows for removal only in suits against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). A private party asserting federal officer jurisdiction under the federal officer removal statute must establish the following three criteria: (1) it is a

10

"person" within the meaning of the statute who is "acting under" a federal officer; (2) it performed the actions for which it is being sued under the color of federal officer; and (3) that it raised a colorable federal defense. *Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010).[3] Parties cannot offer mere legal conclusions, but must allege the underlying facts supporting each of the requirements for removal jurisdiction. *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014). Defendants fail to satisfy these three elements.

### A. *Mil-Spec AFFF has no relevance to Marathon's claims.*

Defendants' removal is based on the speculative assertion that Mil-Spec AFFF may have ended up in sufficient quantities and proximity to Marathon's refinery to affect its market value. Marathon does not dispute that defendants are considered "person[s]" as defined by the federal officer removal statute. Nor does it dispute that the design, manufacture, and supply of Mil-Spec AFFF may provide an appropriate basis for federal officer removal in other cases relating to contamination or harm caused **directly** by Mil-Spec AFFF purchase, use, or exposure. That is not the case here.

---

[3] The products at issue in this litigation involved non-Mil-Spec AFFF sold by defendants to Marathon, making it more akin to the category of heavily-regulated civilian products like those described by the Supreme Court in *Watson v. Philip Morris Companies, Inc.* (compared to a situation where a formula that was uniquely designed for military use or a specialized military product sold to the government), 551 U.S. 142, 147–50 (2007).

Marathon's injuries are attributed solely to commercially-available PFAS-containing AFFF. There was no government contract between defendants in the purchase, use, or release of the PFAS-containing AFFF at issue in this case. Mil-Spec AFFF is not identical to PFAS-containing AFFF; they are distinct and unique products, designed, marketed, and sold separately to distinct and unique customers. Marathon did not purchase Mil-Spec AFFF, and Mil-Spec AFFF forms no basis of Marathon's claims, injury, damages, or factual allegations. Because Mil-Spec AFFF is not a source of Marathon's injuries, defendants cannot avail itself of § 1442's removal provisions.

### B. Defendants have not demonstrated a connection or association between Mil-Spec AFFF and Marathon's claims.

Defendants have not established that they performed the actions for which they are being sued "under the color" of a federal officer. *Bennett*, 607 F.3d at 1085. This requires that defendants establish a sufficient connection or association between the charged conduct and asserted official authority. *Id.* at 1088 (citations omitted); *City of Corona v. 3M Co.*, No. 5:21-CV-01156-SVW-AS, 2021 WL 3829700, at *4 (C.D. Cal. Aug. 27, 2021) (holding that a Mil-Spec AFFF manufacturer must demonstrate a connection between its actions taken pursuant to the direction of federal officers and the plaintiffs' harm and finding defendant did not allege the underlying facts sufficient to support each of the requirements for removal jurisdiction under the federal officer statute); *Ripley v. Foster Wheeler*

*LLC*, 841 F.3d 207, 209 (4th Cir. 2016); *Mesa v. California*, 489 U.S. 121, 131–32 (1989) (noting that the defendant "must by direct averment exclude the possibility that [plaintiff's suit] was based on acts or conduct of his not justified by his federal duty"). In other words, defendants must show that they are being sued because of the act they performed at the direction of the federal officer.

Defendants have been sued here for the sale of PFAS-containing AFFF to Marathon and not because of any actions they performed at the direction of a federal officer. Significantly, the government contractor defense defendants describe would not insulate them from liability under any of the claims Marathon is asserting. Instead, defendants argue that their intended use of the government contractor defense might reduce, by some unspecified amount, a single element of Marathon's claimed damages.

Here, defendants simply argue—without support—that a causal nexus exists between its liability producing actions and some federal officer's direction. When a party files a motion to remand challenging the removal of an action from state court, factual attacks on defendants' allegations relating to jurisdiction after removal are permissible if they would directly undermine one of the required elements of the federal officer removal statute. *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 811 (3d Cir. 2016) (citing *Leite*, 749 F.3d at 1122). Courts have held that once plaintiffs raise a factual attack on defendants' jurisdiction allegations,

defendants must not only support their allegations with competent proof but also bear the burden by proving by a preponderance of the evidence that requirements for removal jurisdiction have been met. *See Leite,* 749 F.3d at 1122; *City of Corona,* 2021 WL 3829700, at *4.

Defendants' theory of causation is subject to the plausibility standards of *Twombly* and *Iqbal*. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64 (2009). Claims are plausible when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft*, 556 U.S. at 663–64. The reviewing court may draw on its experience and common sense in determining plausibility. Under this standard, a defendant's unsupported allegations are far too speculative to implicate Mil-Spec AFFF in this matter.

In an attempt to minimize their burden, defendants rely on three cases for the proposition that this Court should "credit" their theory when determining whether the casual connection exists. Notice of Removal, ECF No. 1 at PageID.16 (citing *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008); *Nessel v. Chemguard Inc.*, No. 1:20-CV-10802021, WL 744683 (W.D. Mi. Jan. 6, 2021); *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018); *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988)). Defendants'

reliance on these cases is misplaced as they do not support removal based on defendants' causation theory.

In *Isaacson*, plaintiffs alleged that defendants' production of dioxin through the manufacturing of Agent Orange resulted in contamination. 517 F.3d 129. Specifically, this case involved a Vietnam War veteran suing manufacturers of Agent Orange for exposure suffered directly from defendants' products during the war. Defendants removed the case to federal court and plaintiffs moved to remand. *Id.* at 129. The court, in deciding plaintiffs' motion to remand, considered whether "the acts complained of—that is, producing dioxin through the manufacturing of Agent Orange—were taken 'under color of [federal] office.'" *Id.* at 137. The court found that the contracts under which the defendants were producing dioxin "gave rise to the contamination" in question—*i.e.*, defendants were being sued "*because of* what they were asked to do by the Government." *Id.* Put simply, in *Isaacson*, the Agent Orange that was the direct source of plaintiffs' harm was produced specifically at the behest of the Government. Marathon's complaint, in contrast, makes it clear that it never bought, used, or sustained injury from Mil-Spec AFFF, nor was PFAS-containing AFFF bought through a government contract entered into by defendants. Nor are the claims and injuries in the Complaint based on PFAS-containing AFFF bought through a government contract entered into by defendants.

In *Nessel*, plaintiffs alleged that PFAS from commercial AFFF caused statewide contamination of the State of Michigan's natural resources and property. 2021 WL 744683 *1. Plaintiffs also filed a nearly identical complaint alleging that defendants acted similarly but with Mil-Spec AFFF. *Id.* Defendants removed the case to federal court and plaintiffs moved to remand. *Id.* The court considered whether defendants properly invoked the federal officer removal statute. *Id.* at *3. The court held that defendants met their burden because plaintiffs' property was cross-contaminated with both commercial AFFF and Mil-Spec AFFF. *Id.* The court found that, because the case dealt with statewide contamination, it "would be impossible to determine which of Plaintiffs' injuries were caused by Commercial AFFF and which were caused by Mil[-]Spec AFFF." *Id* at *3. The court further ruled that plaintiffs' attempt to distinguish the contamination by filing separate complaints for commercial AFFF and Mil-Spec AFFF did not defeat defendants' causation theory. *Id.* No such cross-contamination exists in this case; Marathon's Complaint deals with one property, Marathon's Detroit refinery, and does not encompass statewide contamination. Because of this, this Court need not undertake a fact-finding process to determine that Marathon's claims do not implicate Mil-Spec AFFF.

In *Ayo*, plaintiffs alleged exposure to PFOA and PFOS and that "for decades the [New York Air National Guard ha[d]] used a half-acre Airport Fire Training

Area located at the Airport" where it applied Mil-Spec AFFF, and that the manufacturer defendants had "failed to warn . . . [the Government] of the dangers posed by their AFFF products."  2018 WL 4781145.  The defendants' removal was proper because the *Ayo* plaintiffs expressly alleged that they were injured by Mil-Spec AFFF.[4]  No such allegation is made here; in fact, the opposite is the case.

Here, in contrast to *Isaacson*, *Nessel*, and *Ayo*, no Mil-Spec AFFF or cross-contamination is alleged.  Instead, defendants' theory that discharges occurred more than 20 miles from Marathon's property does not demonstrate that the acts for which they are being sued—here, the production and sale of commercial AFFF—occurred "because of" what they were asked to do by the Government. *Isaacson*, 517 F.3d at 137.

In situations such as the one presented in this case, courts have rejected federal officer removal and granted remand where a removing defendant's showing fails to establish a connection or association.  *See, e.g.*, *Fidelitad, Inc. v.*

---

[4] Defendants also cite three orders from the AFF MDL.  *See* Notice, ECF No. 1 at 16 (citing Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG (D.S.C. May 24, 2019), ECF No. 103 ("MDL Order 1"), at 3–6; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG (D.S.C. Sept. 27, 2019), ECF No. 320 ("MDL Order 2"), at 3–5; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18- mn-2873-RMG (D.S.C. Oct. 1, 2019), ECF No. 325 ("MDL Order 3"), at 3–6).  However, each of these cases involved (1) claims seeking damages relating to Mil-Spec AFFF contamination on plaintiffs' properties, and (2) theories that, if credited, showed direct contamination of Mil-Spec AFFF on plaintiffs' property.  Neither is present is this case.

*Insitu, Inc.*, 904 F.3d 1095 (9th Cir. 2018) (holding that the federal officer removal statute did not apply even in instances where defendants sold identical products to the military and to the private party plaintiff when the conduct that gave rise to plaintiffs' claims was not related to any direction or contract from a federal officer).

Because defendants present no support of a connection between Marathon's claims and defendants' design, manufacture, and supply of Mil-Spec AFFF, they fail to satisfy the requirements of the federal officer removal statute. *Papp*, 842 F.3d at 811, n.4.

### C. Defendants fail to satisfy the "acting under" prong of the federal officer removal statute.

Although the Supreme Court has emphasized that the federal officer removal statute "must be liberally construed," and in particular, "[t]he words 'acting under' are broad," the "broad language is not limitless." *Watson*, 551 U.S. at 152; *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Philadelphia*, 790 F.3d 457, 468 (3d Cir. 2015). In rejecting Phillip Morris's argument in favor of applying the federal officer removal statute in *Watson*, the Supreme Court limited its application to "private persons who lawfully assist a federal officer in the performance of his official duty, but only if the private parties were authorized to act with or for federal officers or agents in affirmatively executing duties under federal law." 551 U.S. at 143 (cleaned up). A private actor

does not "act under" a federal officer "simply by *complying* with the law," but instead the actions "must involve an effort to assist, or help carry out, the federal superior's duties or tasks." *Id.* (emphasis in the original). As distinguished from cases where § 1442 has been found to apply, defendants have not provided any evidence that they satisfy these requirements with respect to the "acting under" prong.

Here, defendants' attempt to satisfy the "acting under" criteria hinges entirely upon their manufacturing Mil-Spec AFFF, which is not a basis for Marathon's claims. Whether defendants were acting under federal authority in the design, manufacture, and supply of Mil-Spec AFFF is not the relevant inquiry. Instead, proper inquiry is this: does Mil-Spec AFFF that was discharged more than 20 miles from Marathon's property present a defense to Marathon's claims? For the reasons discussed above, the answer is no. Defendants' attempt to interject Mil-Spec AFFF does not satisfy the "acting under" criteria of the federal officer removal statute.

### D. Defendants do not have a colorable claim that the government contractor defense applies to the complaint in this matter.

Lastly, defendants must show that they possess a colorable federal defense. *Ripley*, 841 F.3d at 209. To establish a colorable defense, defendants must show the following: (1) the United States established or approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the

supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States. *Ramey v. Martin-Baker Aircraft Co.*, 874 F.2d 946, 949 (4th Cir. 1989) (citing *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988)). Courts have found that the connection or association analysis described above is the same as the colorable defense requirement. *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 785 (E.D. Pa. 2010). While defendants will not be required to prove the success of the defense, they must nevertheless show the same "unusually close" or nexus requirements. *Bennett*, 607 F.3d at 1090.

Much like the analysis stated above, Marathon's complaint disclaims any remedy or allegations relating to Mil-Spec AFFF contamination at the site. Marathon's claims do not arise from Mil-Spec AFFF formulated or sold at the federal government's behest. Similarly, there is no indication that defendants discharged or caused the discharge of Mil-Spec AFFF, either onsite or offsite, that has caused subsequent cross contamination at the Detroit Refinery. Lastly, defendants' concurrent development, manufacture, and sale of commercially-available PFAS-containing AFFF has no relevance to the Mil-Spec AFFF required for federal officer removal. *Fidelitad, Inc.*, 904 F.3d 1095.

## CONCLUSION

For the foregoing reasons, this Court should remand this action to the Wayne County Business Court and award Marathon its reasonable attorneys' fees and costs incurred as a result of defendants' improper removal.

Dated: January 31, 2022 **KERR RUSSELL AND WEBER, PLC**

By: */s/ James E. DeLine*
James E. DeLine (P45205)
KERR RUSSELL AND WEBER, PLC
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
Telephone: (313) 961-0200
jdeline@kerr-russell.com

Joe G. Hollingsworth (pending admission)
Donald W. Fowler (pending admission)
Carter F. Thurman (pending admission)
Pete Chattrabhuti (pending admission)
**HOLLINGSWORTH**LLP
1350 I Street, N.W.
Washington, DC 20005
Telephone: (202) 898-5800
jhollingsworth@hollingsworthllp.com
dfowler@hollingsworthllp.com
cthurman@hollingsworthllp.com
pchattrabhuti@hollingsworthllp.com

*Attorneys for Plaintiff,*
*Marathon Petroleum Company LP*

# EXHIBIT D

Case MDL No. 2873   Document 1304-4   Filed 02/14/22   Page 151 of 178

# U.S. District Court
## Eastern District of Michigan (Detroit)
## CIVIL DOCKET FOR CASE #: 2:22-cv-10117-MAG-JJCG

Marathon Petroleum Company LP v. 3M Company et al
Assigned to: District Judge Mark A. Goldsmith
Referred to: Magistrate Judge Jonathan J.C. Grey
Demand: $75,000
Case in other court:  Wayne County Circuit Court, 21-017284-CB
Cause: Civil Miscellaneous Case

Date Filed: 01/19/2022
Jury Demand: Plaintiff
Nature of Suit: 893 Environmental Matters
Jurisdiction: Federal Question

## Plaintiff

**Marathon Petroleum Company LP**

represented by **James E. DeLine**
Kerr, Russell and Weber, PLC
500 Woodward Ave
Ste. 2500
Detroit, MI 48226
313-961-0200
Email: jdeline@kerr-russell.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew L. Powell**
Kerr, Russell,
500 Woodward Avenue
Suite 2500
Detroit, MI 48226
313-961-0200
Fax: 313.961.0388
Email: mpowell@kerr-russell.com
*ATTORNEY TO BE NOTICED*

V.

## Defendant

**3M Company**
*formerly known as*
Minnesota Mining and Manufacturing Co.

represented by **Cheryl A. Bush**
Bush, Seyferth PLLC
100 W. Big Beaver Road
Suite 400
Troy, MI 48084
248-822-7800
Fax: 248-822-7001
Email: bush@bsplaw.com
*ATTORNEY TO BE NOTICED*

**Derek J. Linkous**

Bush Seyferth PLLC
100 W. Big Beaver Rd.
Suite 400
Troy, MI 48084
248-822-7800
Email: linkous@bsplaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**National Foam, Inc.**

**Defendant**

**Tyco Fire Products LP**                  represented by  **Nicholas J. Ellis**
                                                            Foley & Lardner LLP
                                                            One Detroit Center
                                                            500 Woodward Avenue
                                                            Suite 2700
                                                            Detroit, MI 48226-3489
                                                            313-234-7100
                                                            Fax: 313-234-2800
                                                            Email: nellis@foley.com
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**Chemguard, Inc.**                        represented by  **Nicholas J. Ellis**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**Hayden & Company**                       represented by  **Ronald L. Cornell , Jr.**
                                                            Seyburn, Kahn,
                                                            2000 Town Center
                                                            Suite 1500
                                                            Southfield, MI 48075-1195
                                                            248-353-7620
                                                            Email: rcornell@seyburn.com
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**Willfire LLC**

**Defendant**

**Doe Defendant 1**

**Defendant**

**Doe Defendant 2**

**Defendant**

**Doe Defendant 3**

**Defendant**

**Doe Defendant 4**

**Defendant**
**Doe Defendant 5**

**Defendant**
**Doe Defendant 6**

**Defendant**
**Doe Defendant 7**

**Defendant**
**Doe Defendant 8**

**Defendant**
**Doe Defendant 9**

**Defendant**
**Doe Defendant 10**

**Defendant**
**Doe Defendant 11**

**Defendant**
**Doe Defendant 12**

**Defendant**
**Doe Defendant 13**

**Defendant**
**Doe Defendant 14**

**Defendant**
**Doe Defendant 15**

**Defendant**
**Doe Defendant 16**

**Defendant**
**Doe Defendant 17**

**Defendant**
**Doe Defendant 18**

**Defendant**
**Doe Defendant 19**

**Defendant**
**Doe Defendant 20**

| Date Filed | # | Docket Text |
|---|---|---|
| 01/19/2022 | 1 | NOTICE OF REMOVAL by Tyco Fire Products LP, Chemguard, Inc. from Wayne County Circuit Court, case number 21-017284-CB. Receipt No: AMIEDC-8760472 - Fee: $ 402 [Previously dismissed case: No] [Possible companion case(s): United States District Court for South Carolina, No. 2:18-mn-2873, Judge Hon. Richard Mark Gergel] (Attachments: # 1 Exhibit A) (Ellis, Nicholas) (Entered: 01/19/2022) |
| 01/19/2022 | | A United States Magistrate Judge of this Court is available to conduct all proceedings in this civil action in accordance with 28 U.S.C. 636c and FRCP 73. The Notice, Consent, and Reference of a Civil Action to a Magistrate Judge form is available for download at http://www.mied.uscourts.gov (DPer) (Entered: 01/19/2022) |
| 01/19/2022 | | NOTICE of error directed to Nicholas J. Ellis re 1 Notice of Removal. Parties listed on the initiating document were omitted. The filing attorney must use the docket event Addition of Parties to correct the error and add defendant Doe Defendants 1 to 20. [No Image Associated with this docket entry] (DPer) (Entered: 01/19/2022) |
| 01/19/2022 | | Addition of Parties to CM/ECF: Defendants Doe Defendant 1, Doe Defendant 2, Doe Defendant 3, Doe Defendant 4, Doe Defendant 5, Doe Defendant 6, Doe Defendant 7, Doe Defendant 8, Doe Defendant 9, Doe Defendant 10, Doe Defendant 11, Doe Defendant 12, Doe Defendant 13, Doe Defendant 14, Doe Defendant 15, Doe Defendant 16, Doe Defendant 17, Doe Defendant 18, Doe Defendant 19, Doe Defendant 20. Reason: The party was not added to CM/ECF when e-filing Notice of Error, 1 Notice of Removal, (Ellis, Nicholas) (Entered: 01/19/2022) |
| 01/19/2022 | 2 | [STRICKEN] STATEMENT of DISCLOSURE of CORPORATE AFFILIATIONS and FINANCIAL INTEREST by Chemguard, Inc. identifying Corporate Parent Johnson Controls International plc for Chemguard, Inc.. (Ellis, Nicholas) Modified on 1/20/2022 (LHos). (Entered: 01/19/2022) |
| 01/19/2022 | 3 | [STRICKEN] STATEMENT of DISCLOSURE of CORPORATE AFFILIATIONS and FINANCIAL INTEREST by Tyco Fire Products LP identifying Corporate Parent Johnson Controls International plc for Tyco Fire Products LP. (Ellis, Nicholas) Modified on 1/20/2022 (LHos). (Entered: 01/19/2022) |
| 01/19/2022 | 4 | [STRICKEN] STATEMENT of DISCLOSURE of CORPORATE AFFILIATIONS and FINANCIAL INTEREST by Willfire LLC identifying Corporate Parent Johnson Controls International plc for Willfire LLC. (Ellis, Nicholas) Modified on 1/20/2022 (LHos). (Entered: 01/19/2022) |
| 01/20/2022 | | NOTICE of Error directed to: Nicholas J. Ellis re 4 Statement of Disclosure of Corporate Affiliations, 3 Statement of Disclosure of Corporate Affiliations, 2 Statement of Disclosure of Corporate Affiliations. Wrong or incomplete PDF image was uploaded. Document was stricken and must be refiled correctly. [No Image Associated with this docket entry] (LHos) (Entered: 01/20/2022) |
| 01/20/2022 | 5 | STATEMENT of DISCLOSURE of CORPORATE AFFILIATIONS and FINANCIAL INTEREST by Chemguard, Inc. identifying Corporate Parent Johnson Controls International plc for Chemguard, Inc.. (Ellis, Nicholas) (Entered: 01/20/2022) |
| 01/20/2022 | 6 | STATEMENT of DISCLOSURE of CORPORATE AFFILIATIONS and FINANCIAL INTEREST by Tyco Fire Products LP identifying Corporate Parent Johnson Controls International plc for Tyco Fire Products LP. (Ellis, Nicholas) (Entered: 01/20/2022) |
| 01/20/2022 | 7 | STATEMENT of DISCLOSURE of CORPORATE AFFILIATIONS and FINANCIAL |

| | | INTEREST by Willfire LLC identifying Corporate Parent Johnson Controls International plc for Willfire LLC. (Ellis, Nicholas) (Entered: 01/20/2022) |
|---|---|---|
| 01/31/2022 | 8 | NOTICE of Appearance by Ronald L. Cornell, Jr on behalf of Hayden & Company. (Cornell, Ronald) (Entered: 01/31/2022) |
| 01/31/2022 | 9 | MOTION to Remand by Marathon Petroleum Company LP. (Powell, Matthew) (Entered: 01/31/2022) |
| 02/03/2022 | 10 | STIPULATED ORDER Extending Time to Respond to Complaint. Signed by District Judge Mark A. Goldsmith. (KSan) (Entered: 02/03/2022) |
| 02/03/2022 | 11 | STIPULATED ORDER Extending Time to Respond to Complaint as to Defendant Hayden & Company. Signed by District Judge Mark A. Goldsmith. (KSan) (Entered: 02/03/2022) |
| 02/04/2022 | 12 | NOTICE of Appearance by Cheryl A. Bush on behalf of 3M Company. (Bush, Cheryl) (Entered: 02/04/2022) |
| 02/04/2022 | 13 | NOTICE of Appearance by Derek J. Linkous on behalf of 3M Company. (Linkous, Derek) (Entered: 02/04/2022) |
| 02/04/2022 | 14 | STATEMENT of DISCLOSURE of CORPORATE AFFILIATIONS and FINANCIAL INTEREST by 3M Company (Linkous, Derek) (Entered: 02/04/2022) |
| 02/04/2022 | 15 | Joint MOTION to Stay *Defendants 3M, Tyco, and Chemguard's Joint Motion to Stay This Action Pending Transfer Decision by the Judicial Panel on Multidistrict Litigation* by 3M Company. (Attachments: # 1 Exhibit A - Unpublished Cases) (Linkous, Derek) (Entered: 02/04/2022) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 02/10/2022 12:17:02 | | | |
| **PACER Login:** | hllp1982 | **Client Code:** | 1272.0004 |
| **Description:** | Docket Report | **Search Criteria:** | 2:22-cv-10117-MAG-JJCG |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

# EXHIBIT E1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

|  |  |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2:18-mn-2873-RMG **ORDER** **This Order Relates to** **Case No. 2:19-cv-01022-RMG** |

Before the Court is the State of New York's motion to remand its claims to New York state court. (Dkt. No. 71.) For the reasons set forth below, the motion is denied.

## I.    Background

In June 2018, the State of New York ("New York") brought claims against 3M Company; Tyco Fire Products L.P.; Chemguard, Inc.; Buckeye Fire Equipment Company; National Foam, Inc.; and Kidde-Fenwall, Inc. (collectively, "Defendants") alleging that the aqueous film-forming foam ("AFFF") and related products designed, manufactured, marketed and sold by Defendants contaminated New York groundwater with the chemical compounds perfluorooctanoic acid/perfluorooctanoate ("PFOA") and perfluorooctane sulfonic acid/perfluorooctane sulfonate ("PFOS"), resulting in New York incurring costs to investigate, monitor, remediate and otherwise respond to the resulting public health risk and harm to New York's natural resources. (2:19-cv-01022-RMG, Dkt. No. 1-1 ¶¶ 1-4.) New York alleged that Defendants' AFFF products, containing PFOS/PFOA, were used by the Air National Guard and the United States Air Force on military bases and at civilian airports and firefighting training centers in New York, including (i) Stewart Air National Guard Base and Stewart International

Airport in Newburgh and New Windsor, (ii) Francis S. Gabreski Airport in Southampton, (iii) Plattsburgh Air Force Base in Plattsburgh, and (iv) Griffiss Air Force Base in Rome. (*Id.* ¶¶ 56-58, 64-103.)  New York brought four causes of action for public nuisance, strict products liability for defective design, strict products liability for failure to warn, and restitution. (*Id.* ¶¶ 106-32.)

In November 2018, Defendant Tyco Fire Products L.P. ("Tyco") removed the action to the District Court for the Northern District of New York on the basis of the federal officer removal statute, pursuant to 28 U.S.C. § 1442(a)(1), and federal enclave jurisdiction, pursuant to 28 U.S.C. §§ 1331 and 1441(a). (*Id.* Dkt. No. 1.)  In April 2019, the Judicial Panel on Multidistrict Litigation (the "Panel") transferred this matter under 28 U.S.C. § 1407 into these multidistrict litigation ("MDL") proceedings, finding that transfer serves the convenience of the parties and witnesses and promotes just and efficient litigation. (*Id.* Dkt. No. 39 at 3.)  Shortly thereafter, New York brought the instant motion to remand this action to Albany County New York State Supreme Court.

## II.     **Legal Standard**

As the party that invoked the Court's jurisdiction, Tyco bears the burden of establishing that the case was properly removed from state court. *Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 148, 151 (4th Cir. 1994); *see also Bennett v. Bally Mfg. Corp.*, 785 F. Supp. 559, 560 (D.S.C. 1992).   The Court should strictly construe removal jurisdiction because it "raises significant federalism concerns." *Mulcahey*, 29 F.3d at 151 (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941)); *see also S.C. v. Boehringer Ingelheim Roxane, Inc.*, No. 3:07-cv-00665-CMC, 2007 WL 1232156, at *1 (D.S.C. Apr. 26, 2007).   Doubts as to the Court's jurisdiction should weigh in favor of remanding to state court. *Mulcahey*, 29 F.3d at 151.

### III.    Discussion

The Court finds that Tyco properly removed this action to federal court both under the federal officer removal statute, on the basis of its government contractor immunity defense, and under federal enclave jurisdiction, on the basis of the tort claims alleged to have arisen on Griffiss Air Force Base in the 1970s through 1990s.

### A.    Removal Was Proper Under the Federal Officer Removal Statute

The federal officer removal statute authorizes removal to federal court of any civil action or criminal prosecution commenced in state court against "any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1).  Thus, a private defendant, such as a government contractor, who seeks to removal a case under § 1441(a)(1) must show (1) that it was a "person acting under" a federal officer, *see e.g.*, *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007); *Ripley v. Foster Wheeler LLC*, 841 F.3d 207, 209 (4th Cir. 2016); (2) that it has a "colorable federal defense," *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999); and (3) that the charged conduct was carried out for or in relation to the asserted official authority, *see* 28 U.S.C. § 1442(a)(1).  "In imposing these requirements, the statute aims to protect the Federal Government from interference with its 'operations,' primarily by providing 'a federal forum for a federal defense.'" *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017) (quoting *Watson*, 551 U.S. at 147).  In reviewing removal on a motion to remand, the Court should reject a "narrow, grudging interpretation of the statute, recognizing that one of the most important reasons for removal is to have the validity of the defense of official immunity tried in federal court." *Acker*, 527 U.S. at 431.

The Court finds these elements of § 1442(a)(1) are satisfied, entitling Tyco to have removed New York's tort claims and Tyco's federal defense to federal court. As an initial matter, Tyco is a "person" under § 1442(a)(1), which includes "companies, associations, firms [and] partnerships." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016). Next, the phrase "acting under" is "broad" and should be "liberally construed" in favor of the removing Defendant. *Watson*, 551 U.S. at 147. When a private entity is involved, the phrase "acting under" is interpreted to "contemplate a relationship where the government exerts some 'subjection, guidance, or control." *Sawyer*, 860 F.3d at 255 (quoting *Watson*, 551 U.S. at 151). The Court of Appeals for the Fourth Circuit has observed that "courts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it *manufactured for the government*." *Sawyer*, 860 F.3d at 255. Here, New York alleges that Tyco manufactured and sold AFFF products containing PFOS/PFOA to the U.S. military, which used and stored the products at certain sites. Because the U.S. military accepts and tests AFFF products against military specifications ("MilSpec") promulgated by Naval Sea Systems Command, including specifications that AFFF product formulations include the chemical class that includes PFOA/PFOS, Tyco has demonstrated that it was manufacturing the product under the U.S. military's guidance.

Second, Tyco has a "colorable" federal defense of government contractor immunity. To assert government contractor immunity to tort liability, Tyco must demonstrate that "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988). "Removal need not be justified as to all claims asserted in the

plaintiffs' complaint; rather, the defense need only apply to one claim to remove the case." *Sawyer*, 860 F.3d at 257. Tyco has demonstrated this colorable defense, where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications, which included specifications for the chemical class that includes PFOS/PFOA. As to whether Tyco adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, Tyco points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the Environmental Protection Agency's stated concerns with PFOS/PFOA in drinking water,[1] and the defense need not be "clearly sustainable" to justify removal as merely "colorable." *Acker*, 527 U.S. at 432 ("We therefore do not require the officer virtually to 'win his case before he can have it removed.'").

Last, Tyco has sufficiently demonstrated that it "engag[ed] in government-directed conduct causally related to the plaintiff['s] claims." *Sawyer*, 860 F.3d at 254. To satisfy this "causation requirement" necessary to justify removal on the basis of the federal officer statute, non-governmental corporate defendants such as Tyco "must demonstrate that the acts for which they are being sued . . . occurred *because of* what they were asked to do by the Government." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008) (emphasis in original). This is satisfied where there is a "causal nexus between the allegedly tortious conduct and asserted official authority," which "has been interpreted broadly." *Brady v. XE Servs LLC*, No. 5:09-CV-449-BO, No. 5:09-CV-450-BO, 2010 WL 11566021, at *2 (E.D.N.C. May 18, 2010). For this, the Court looks to whether Tyco demonstrated that its alleged acts "occurred *while*" it was "performing [its] official duties." *Isaacson*, 517 F.3d at 137-38 (emphasis in original). Here,

---

[1] *See* Dep't of Defense, Aqueous Film Forming Foam Report to Congress, cleared for open publication Nov. 3, 2017, at 1-2, *available at https://www.denix.osd.mil/derp/home/documents/aqueous-film-forming-foam-report-to-congress/.*

New York's claims arise out of use of AFFF products that it claims Tyco manufactured and sold, and for which the U.S. military imposes MilSpec standards. The Court should "credit the [removing defendant's] theory of the case" and finds that the causation element of federal officer removal is satisfied here. *Acker*, 527 U.S. at 432.

The Court, therefore, finds that Tyco properly removed the claims against it to federal court pursuant to the federal officer removal statute.

**B.    Removal Was Proper Under Federal Enclave Jurisdiction**

The Court also finds that removal was proper under 28 U.S.C. § 1441(a).  The federal court has jurisdiction pursuant to 28 U.S.C. § 1331 over New York's tort claims relating to AFFF product use and contamination at Griffiss Air Force Base, a federal enclave, and has supplemental jurisdiction over the claims relating to the other alleged contamination sites.

The federal enclave doctrine arises out of Congress's constitutional authority to "exercise exclusive legislation" over the District of Columbia "and to exercise like authority over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dockyards, and other needful buildings." U.S. Const. art. I, § 8, cl. 17.  A federal enclave is a "portion of land over which the United States government exercises federal legislative jurisdiction." *Brookhaven Sci. Assocs., LLC v. Donaldson*, No. 04 Civ. 4013 (LAP), 2007 WL 2319141, at *5 (S.D.N.Y. Aug. 9, 2007); s*ee also Stokes v. Adair*, 265 F.2d 662, 666 (4th Cir. 1959).  Griffiss Air Force Base was a federal enclave from 1945, when it was deeded by New York to the United States, to 1995, when it was decommissioned as an air force base and began operation as a civilian airport.  New York alleges that "beginning in the 1970s through at least the 1990s," AFFF products manufactured and sold by Defendants that contained PFOS/PFOA were stored and used at Griffiss Air Force Base. (2:19-cv-01022-RMG,

Dkt. No. 1-1 ¶ 99.)  "It has long been settled that where lands for such a purpose are purchased by the United States with the consent of the State legislature, the jurisdiction theretofore residing in the state passes, in virtue of the constitutional provision, to the United States, thereby making the jurisdiction of the latter the sole jurisdiction." *Surplus Trading Co. v. Cook*, 281 U.S. 647, 652 (1930).  Because Griffiss Air Force Base was a federal enclave under federal jurisdiction at the time of the relevant conduct, the tort claims arising from that conduct on Griffiss Air Force Base are subject to the federal court's jurisdiction.

New York's tort claims arising out of AFFF product use and contamination at sites other than Griffiss Air Force Base, including Stewart Air National Guard Base, Stewart International Airport, Gabreski Airport and Plattsburgh Air Force Base, are subject to this Court's supplemental jurisdiction.  "[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]" 28 U.S.C. § 1367(a).  The Court may nonetheless decline to exercise its jurisdiction where the tort claims arising from these contamination sites "predominate" over the claim arising from Griffiss Air Force Base, or for other "compelling reasons." 28 U.S.C. § 1367(c).  New York brings the same tort claims against the same Defendants for the same conduct alleged to have arisen on the Griffiss Air Force Base, as it does relating to the other contamination sites.  The Court finds no compelling reason to sever and remand the tort claims relating to the other contamination sites, including where the Panel found that all claims in this action warranted consolidation into these MDL proceedings.

When the Panel ordered New York's action transferred into these MDL proceedings, it observed that, "Revealingly, [New York and Ohio] alternatively request that, should the Panel transfer these actions into the MDL, we direct the transferee court to prioritize discovery and

consideration of their objections to federal jurisdiction and the government contractor defense."
(2:18-mn-2873, Dkt. No. 384 at 3.)  Denying New York's motion to remand and maintaining its
action in the MDL proceedings ensures that New York has the opportunity to engage in efficient
and centralized discovery of these significant issues of federal question that implicate the merits
of New York's claims.

**IV.**     **Conclusion**

For the foregoing reasons, the State of New York's motion to remand (Dkt. No. 71) is
**DENIED**.

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

May 24, 2019
Charleston, South Carolina

8

# EXHIBIT E2

RECEIVED USDC
CLERK, CHARLESTON, SC

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA** 2019 SEP 27 PM 1:50
**CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2:18-mn-2873-RMG **ORDER** **This Order Relates to** **Case No. 2:19-cv-02123-RMG** |

Before the Court is the State of New York's motion to remand its claims to New York state court. (Dkt. No. 230.) For the reasons set forth below, the motion is denied.

I.    **Background**

In February 2019, the State of New York ("New York") brought claims against 3M Company, Tyco Fire Products L.P., Chemguard, Inc., Buckeye Fire Equipment Company and National Foam, Inc. ("Defendants") alleging that the aqueous film-forming foam ("AFFF") and related products designed, manufactured, marketed and sold by Defendants contaminated New York groundwater with the chemical compounds perfluorooctanoic acid/perfluorooctanoate ("PFOA") and perfluorooctane sulfonic acid/perfluorooctane sulfonate ("PFOS"), resulting in New York incurring costs to investigate, monitor, remediate and otherwise respond to the resulting public health risk and harm to New York's natural resources. (2:19-cv-02123-RMG, Dkt. No. 1-1 ¶¶ 1-4.) New York alleges that the AFFF products designed or manufactured by Defendants, containing PFOS/PFOA, were stored or used at sites throughout New York, including certain civilian airports. (*Id.* at 30.) New York brought four causes of action for public

nuisance, strict products liability for defective design, strict products liability for failure to warn, and restitution. (*Id.* ¶¶ 131-57.)

In June 2019, Defendants Tyco Fire Products L.P. and Chemguard, Inc. ("Tyco/Chemguard") removed the action to the District Court for the Northern District of New York on the basis of the federal officer removal statute, 28 U.S.C. § 1442(a)(1). (*Id.* Dkt. No. 1.) The Judicial Panel on Multidistrict Litigation (the "Panel") then transferred this matter under 28 U.S.C. § 1407 into these multidistrict litigation proceedings, finding that transfer serves the convenience of the parties and witnesses and promotes just and efficient litigation. (*Id.* Dkt. No. 19.) New York initially opposed the transfer, but then withdrew its opposition. Shortly thereafter, New York brought the instant motion to remand this action to the New York Supreme Court in Albany County.

## II.   **Legal Standard**

As the parties that invoked the Court's jurisdiction, Tyco/Chemguard bear the burden of establishing that the case was properly removed from state court. *Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 148, 151 (4th Cir. 1994); *see also Bennett v. Bally Mfg. Corp.*, 785 F. Supp. 559, 560 (D.S.C. 1992). The Court should strictly construe removal jurisdiction because it "raises significant federalism concerns." *Mulcahey*, 29 F.3d at 151 (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941)); *see also S.C. v. Boehringer Ingelheim Roxane, Inc.*, No. 3:07-cv-00665-CMC, 2007 WL 1232156, at *1 (D.S.C. Apr. 26, 2007). Doubts as to the Court's jurisdiction should weigh in favor of remanding to state court. *Mulcahey*, 29 F.3d at 151.

## III.   **Discussion**

The federal officer removal statute authorizes removal to federal court of any civil action or criminal prosecution commenced in state court against "any officer (or any person acting

2

under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). Thus, a private defendant, such as a government contractor, who seeks to remove a case under § 1441(a)(1) must show (1) that it was a "person acting under" a federal officer, *see e.g.*, *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007); *Ripley v. Foster Wheeler LLC*, 841 F.3d 207, 209 (4th Cir. 2016); (2) that it has a "colorable federal defense," *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999); and (3) that the charged conduct was carried out for or in relation to the asserted official authority, *see* 28 U.S.C. § 1442(a)(1). "In imposing these requirements, the statute aims to protect the Federal Government from interference with its 'operations,' primarily by providing 'a federal forum for a federal defense.'" *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017) (quoting *Watson*, 551 U.S. at 147).

Here, Tyco/Chemguard is a "person" under § 1442(a)(1), which includes "companies, associations, firms [and] partnerships." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016). The phrase "acting under" is "broad" and should be "liberally construed" in favor of the removing Defendant. *Watson*, 551 U.S. at 147. When a private entity is involved, the phrase "acting under" is interpreted to "contemplate a relationship where the government exerts some 'subjection, guidance, or control.'" *Sawyer*, 860 F.3d at 255 (quoting *Watson*, 551 U.S. at 151). "[C]ourts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it *manufactured for the government*." *Sawyer*, 860 F.3d at 255 (emphasis in original). New York alleges that Tyco/Chemguard defectively designed AFFF products containing PFOS/PFOA, which were then "stored and/or used" at various sites across the state, including certain civilian airports. The complaint does not allege how the AFFF products arrived to the sites, but New York's argument

3

for remand is primarily that because Tyco/Chemguard sold a portion of the AFFF products to civilian airports and a portion to the U.S. military, that Tyco/Chemguard were not "acting under" a federal officer when it designed the AFFF products. Designing AFFF products to military specifications ("MilSpec") promulgated by the Department of Defense, including that the products contain the chemical class to which PFOS/PFOA belong, as Tyco/Chemours allege, may constitute "acting under" the military's guidance. The Court should reject a "narrow, grudging interpretation of the [federal officer removal] statute, recognizing that one of the most important reasons for removal is to have the validity of the defense of official immunity tried in federal court." *Acker*, 527 U.S. at 431.

Second, and relatedly, Tyco/Chemguard have a "colorable" federal defense of government contractor immunity. To assert government contractor immunity to tort liability, Tyco/Chemguard must demonstrate that "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988). "Removal need not be justified as to all claims asserted in the plaintiffs' complaint; rather, the defense need only apply to one claim to remove the case." *Sawyer*, 860 F.3d at 257. Tyco/Chemguard demonstrate this colorable defense where they contend that the AFFF products were manufactured according to MilSpec, which included specifications for the chemical class that includes PFOS/PFOA. The defense need not be "clearly sustainable" to justify removal as merely "colorable." *Acker*, 527 U.S. at 432 ("We therefore do not require the officer virtually to 'win his case before he can have it removed.'").

4

Last, Tyco/Chemguard sufficiently demonstrate that they "engag[ed] in government-directed conduct causally related to the plaintiff['s] claims." *Sawyer*, 860 F.3d at 254. To satisfy this "causation requirement" of removal on the basis of the federal officer statute, non-governmental corporate defendants such as Tyco/Chemguard "must demonstrate that the acts for which they are being sued . . . occurred *because of* what they were asked to do by the Government." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008) (emphasis in original). This is met where there is a "causal nexus between the allegedly tortious conduct and asserted official authority," which "has been interpreted broadly." *Brady v. XE Servs LLC*, No. 5:09-CV-449-BO, No. 5:09-CV-450-BO, 2010 WL 11566021, at *2 (E.D.N.C. May 18, 2010). For this, the Court looks to whether Tyco/Chemguard demonstrated that their alleged acts "occurred *while* [they] were performing their official duties." *Isaacson*, 517 F.3d at 137-38 (emphasis in original). New York's claims arise out of use of AFFF products that it claims Tyco/Chemguard designed, and for which the military imposes MilSpec standards. The Court should "credit the [removing defendant's] theory of the case" and finds that the causation element of federal officer removal is satisfied here. *Acker*, 527 U.S. at 432.

Because the elements of § 1442(a)(1) are satisfied, entitling Tyco/Chemguard to have removed New York's tort claims and Tyco/Chemguard's federal defense to federal court, New York's motion to remand must be denied.

## IV.    Conclusion

For the foregoing reasons, the State of New York's motion to remand (Dkt. No. 230) is **DENIED**.

**AND IT IS SO ORDERED.**

5

Richard Mark Gergel
United States District Court Judge

September 27, 2019
Charleston, South Carolina

# EXHIBIT E3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2:18-mn-2873-RMG **ORDER** **This Order Relates to** **Case No. 2:19-cv-02198-RMG** |

Before the Court is Ridgewood Water's motion to remand its claims to the Superior Court of New Jersey. (Dkt. No. 264.) For the reasons set forth below, the motion is denied.

## I.    Background

In February 2019, Ridgewood Water ("Ridgewood") brought suit in the Superior Court of New Jersey against 3M Company, E.I. Du Pont De Nemours & Company, the Chemours Company, Honeywell International Inc., Tyco Fire Products LP, Chemguard Inc., Buckeye fire Equipment Company, National Foam, Inc. and Does 1-50. Ridgewood alleges that its drinking water supply was contaminated by perfluorooctane sulfonic acid/perfluorooctane sulfonate and perfluorooctanoic acid/perfluorooctanoate ("PFOS/PFOA") substances, "including but not limited to fluoropolymers and aqueous film-forming foam ('AFFF')" and that the defendants "manufactured, marketed, sold, and/or promoted" PFOS/PFOA, products containing PFOS/PFOA, or products that would degrade to PFOS/PFOA. (2:19-cv-02198-RMG, Dkt. No. 1-2 ¶¶ 1-5.) Ridgewood brought four causes of action for defective design, failure to warn, negligence and trespass. (*Id.* ¶¶ 74-118.)

In April 2019, Defendants Tyco Fire Products L.P. and Chemguard, Inc. ("Tyco/Chemguard") removed the action to the District Court for the District of New Jersey on the basis of the federal officer removal statute, 28 U.S.C. § 1442(a)(1). (2:19-cv-02198-RMG, Dkt. No. 1.) In August 2019, the Judicial Panel on Multidistrict Litigation transferred this matter into these multidistrict litigation proceedings under 28 U.S.C. § 1407, finding that transfer serves the convenience of the parties and witnesses and promotes just and efficient litigation. (*Id.*, Dkt. No. 33.) The following month, Ridgewood Water brought the instant motion to remand this action to the Superior Court of New Jersey.

## II.    Legal Standard

As the parties that invoked federal jurisdiction, Tyco/Chemguard bear the burden of establishing that the case was properly removed from state court. *Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 148, 151 (4th Cir. 1994); *see also Bennett v. Bally Mfg. Corp.*, 785 F. Supp. 559, 560 (D.S.C. 1992). The Court should strictly construe removal jurisdiction because it "raises significant federalism concerns." *Mulcahey*, 29 F.3d at 151 (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941)); *see also S.C. v. Boehringer Ingelheim Roxane, Inc.*, No. 3:07-cv-00665-CMC, 2007 WL 1232156, at *1 (D.S.C. Apr. 26, 2007). Doubts as to the Court's jurisdiction should weigh in favor of remanding to state court. *Mulcahey*, 29 F.3d at 151.

## III.    Discussion

Ridgewood argues that remand is necessary because its complaint "disclaimed" any injury by AFFF products by pleading that as of February 2019, Ridgewood "cannot identify any military or federally-regulated airport as a source of such PFAS contamination, and on that basis alleges that the PFAS contamination in its wells is not from such sources." (2:19-cv-02198-RMG, Dkt. No. 1-2 at ¶¶ 68-69.) Ridgewood now "affirmatively disclaims any injuries traceable

to federally mandated MilSpec AFFF" (2:18-mn-2873, Dkt. No. 317 at 5), but also contends that "to the extent AFFF is a cause of Ridgewood's injuries, it is limited to *commercial* AFFF use by *non-federal consumers* at fire readiness and suppression sites in Northern Bergen County, New Jersey" (*Id.*, Dkt. No. 264-1 at 9).[1]  Ridgewood argues that Teterboro Airport is "one federally regulated airport at which Milspec AFFF could have been used," but is insufficient to support Tyco/Chemguard's government contractor defense because Teterboro Airport is a "non-federal" customer of the product and, moreover, sits south of Ridgewood's water service area. (*Id.*, Dkt. No. 264-1 at 15, 24.)

The federal officer removal statute authorizes removal to federal court of any civil action or criminal prosecution commenced in state court against "any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1).  Thus, a private defendant, such as a government contractor, who seeks to remove a case under § 1441(a)(1) must show (1) that it was a "person acting under" a federal officer, *see e.g.*, *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007); *Ripley v. Foster Wheeler LLC*, 841 F.3d 207, 209 (4th Cir. 2016); (2) that it has a "colorable federal defense," *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999); and (3) that the charged conduct was carried out for or in relation to the asserted official authority, *see* 28 U.S.C. § 1442(a)(1).  "In imposing these requirements, the statute aims to protect the Federal Government from interference with its 'operations,' primarily

---

[1] As the Judicial Panel on Multidistrict Litigation concluded when transferring the action into these proceedings: "plaintiff argues that it alleges multiple sources of contamination, only some of which stem from the use of AFFFs.  This argument is unpersuasive.  Plaintiff alleges that AFFF used by the Ridgewood Fire Department is a source of the [PFOS/PFOA] contamination. That plaintiff alleges additional sources of contamination does not convert *Ridgewood Water* into a 'non-AFFF' case of the type we excluded from the MDL in the initial centralization order." (2:19-cv-02198-RMG, Dkt. No. 33 at 2.)

by providing 'a federal forum for a federal defense.'" *Sawyer v. Foster Wheeler LLC*, 860 F.3d

249, 254 (4th Cir. 2017) (quoting *Watson*, 551 U.S. at 147).

Tyco/Chemguard is a "person" under § 1442(a)(1), which includes "companies,

associations, firms [and] partnerships." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir.

2016). The phrase "acting under" is "broad" and should be "liberally construed" in favor of the

removing Defendant. *Watson*, 551 U.S. at 147. When a private entity is involved, the phrase

"acting under" is interpreted to "contemplate a relationship where the government exerts some

'subjection, guidance, or control.'" *Sawyer*, 860 F.3d at 255 (quoting *Watson*, 551 U.S. at 151).

"[C]ourts have unhesitatingly treated the 'acting under' requirement as satisfied where a

contractor seeks to remove a case involving injuries arising from equipment that it *manufactured*

*for the government*." *Sawyer*, 860 F.3d at 255 (emphasis in original). Ridgewood characterizes

the alleged injurious conduct here as "Defendants' design, manufacture, and sale of PFOA and

PFOS products, including commercial AFFF to non-federal users." (*Id.*, Dkt. No. 264-1 at 23-

24.) Designing AFFF products to military specifications promulgated by the Department of

Defense, including that the products contain the chemical class to which PFOS/PFOA belong, as

Tyco/Chemguard allege, may constitute "acting under" the military's guidance. The Court

should reject a "narrow, grudging interpretation of the [federal officer removal] statute,

recognizing that one of the most important reasons for removal is to have the validity of the

defense of official immunity tried in federal court." *Acker*, 527 U.S. at 431.

Second, and relatedly, Tyco/Chemguard have a "colorable" federal defense of

government contractor immunity. To assert government contractor immunity to tort liability,

Tyco/Chemguard must demonstrate that "(1) the United States approved reasonably precise

specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned

the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988). "Removal need not be justified as to all claims asserted in the plaintiffs' complaint; rather, the defense need only apply to one claim to remove the case." *Sawyer*, 860 F.3d at 257. Tyco/Chemguard demonstrate a colorable defense where they contend that the AFFF products were manufactured according to MilSpec, which included specifications for the chemical class that includes PFOS/PFOA. The defense need not be "clearly sustainable" to justify removal as merely "colorable." *Acker*, 527 U.S. at 432 ("We therefore do not require the officer virtually to 'win his case before he can have it removed.'").

Last, Tyco/Chemguard plausibly allege that they "engag[ed] in government-directed conduct causally related to the plaintiff['s] claims." *Sawyer*, 860 F.3d at 254. To demonstrate this "causation requirement" of removal on the basis of the federal officer statute, non-governmental corporate defendants such as Tyco/Chemguard "must demonstrate that the acts for which they are being sued . . . occurred *because of* what they were asked to do by the Government." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008) (emphasis in original). This is met where there is a "causal nexus between the allegedly tortious conduct and asserted official authority," which "has been interpreted broadly." *Brady v. XE Servs LLC*, No. 5:09-CV-449-BO, No. 5:09-CV-450-BO, 2010 WL 11566021, at *2 (E.D.N.C. May 18, 2010). For this, the Court looks to whether Tyco/Chemguard demonstrated that their alleged acts "occurred *while* [they] were performing their official duties." *Isaacson*, 517 F.3d at 137-38 (emphasis in original). Ridgewood's claims arise out of use of AFFF products that it claims Tyco/Chemguard designed, and for which the military imposes MilSpec standards. The Court

should "credit the [removing defendant's] theory of the case" and finds that the causation element of federal officer removal is satisfied here. *Acker*, 527 U.S. at 432.

Because the elements of § 1442(a)(1) are satisfied, entitling Tyco/Chemguard to have removed Ridgewood's claims and Tyco/Chemguard's federal defense to federal court, Ridgewood's motion to remand must be denied.

**IV.    Conclusion**

For the foregoing reasons, Ridgewood Water's motion to remand (Dkt. No. 264) is **DENIED**.

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

October _1_, 2019
Charleston, South Carolina