UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION


IN RE: AQUEOUS FILM-FORMING FOAMS
PRODUCTS LIABILITY LITIGATION                                              MDL No. 2873


**TRANSFER ORDER**


**Before the Panel**:\*  We are presented with motions in three actions.  First, defendant 3M Company moves under 28 U.S.C. § 1407(c) to transfer the *Fleming* action listed on Schedule A to the District of South Carolina for inclusion in MDL No. 2873.  No party responded to this motion.  Second, plaintiffs and defendant Kester, LLC, each move under Panel Rule 7.1 to vacate our order that conditionally transferred the *McKinnon* action listed on Schedule A to MDL No. 2873.  Finally, plaintiff State of Wisconsin likewise moves under Panel Rule 7.1 to vacate our order that conditionally transferred the *State of Wisconsin* action listed on Schedule A to MDL No. 2873.  Defendants 3M Company and Tyco Fire Products LP oppose the motions to vacate in both *McKinnon* and *State of Wisconsin*, while defendant Chemguard, Inc., opposes the motion in *State of Wisconsin*.

The motion to transfer *Fleming* to the MDL is easily resolved.  *Fleming* involves a putative class of Alabama residents who use water provided by the City of Guin Water Works and Sewer Board.  Plaintiffs allege that this water was contaminated by per- or polyfluoroalkyl substances (PFAS) stemming from, *inter alia*, a nearby 3M facility.  3M persuasively argues that, while the complaint does not explicitly allege contamination by aqueous film-forming foams (AFFFs), the spill cited in the complaint involved the discharge of 3,500 gallons of AFFF from the 3M facility into a nearby waterway.  *Fleming* therefore will share common factual questions with the actions in the MDL, which involve allegations that AFFFs used at airports, military bases, or other locations to extinguish liquid fuel fires caused the release of perfluorooctane sulfonate (PFOS) and/or perfluorooctanoic acid (PFOA; both of which are considered a PFAS) into local groundwater and contaminated drinking water supplies.  *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018).  As no party opposes transfer, we will grant this motion.

Turning to the motions to vacate, movants in both actions argue that federal subject matter jurisdiction over their respective actions is lacking, and that pending motions for remand to state court should be decided before transfer.  We are not persuaded by these arguments.  The Panel has held that jurisdictional objections such as those asserted in these actions generally do not present

---

\* Judges David C. Norton and Madeline Cox Arleo did not participate in the decision of this matter.

- 2 -

an impediment to transfer.[1]  *See, e.g.*, *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 170 F. Supp. 2d 1346, 1347–48 (J.P.M.L. 2001) ("[R]emand motions can be presented to and decided by the transferee judge.").  "This is so even where, as here, plaintiffs assert that the removals were patently improper."  *In re Ford Motor Co. DPS6 PowerShift Transmission Prods. Liab. Litig.*, 289 F. Supp. 3d 1350, 1352 (J.P.M.L. 2018).

Movants in both actions also argue that their actions are sufficiently distinct from those in the MDL such that transfer is not appropriate.  Movants in *McKinnon* argue that plaintiffs allege that Mr. McKinnon was exposed to a variety of solvents, cleaners, and other chemical products during his employment at a fire department located at the Joint Forces Training Base in Los Alamitos, California.  Plaintiffs allege that Mr. McKinnon's exposure to the numerous chemicals and products listed in his complaint caused his cancers and lymphoma.  Movants argue that, because *McKinnon* involves over a dozen defendants and numerous non-AFFF products, this action will involve different witnesses and causation issues than the actions in the MDL.  They also argue that transfer would reduce efficiencies in *McKinnon*, and would inject new and unrelated products and issues in the MDL.

Plaintiffs, though, amended their complaint in *McKinnon* to expressly assert claims against 3M and Tyco for the manufacture and sale of AFFF products.  Plaintiffs allege that Mr. McKinnon was exposed to these AFFF products through the course of his employment at Los Alamitos, and that these products caused his alleged injuries.  These claims are not meaningfully distinguishable from the hundreds of cases in the MDL brought by firefighter plaintiffs who allege that they were injured by direct exposure to AFFF.  *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, MDL No. 2873, 2021 WL 755083, at *1–2 (J.P.M.L. Feb. 4, 2021) (holding that transfer of direct exposure claims by firefighters is appropriate).  That *McKinnon* involves claims of exposure to other chemicals, in addition to AFFF, is of no moment.  "Section 1407 does not require a complete identity or even majority of common factual issues as a prerequisite to transfer."  *In re Ins. Brokerage Antitrust Litig.*, 360 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005).

The State of Wisconsin similarly argues that its action is predominantly not an AFFF case.  The State contends that its complaint encompasses all PFAS products used in Wisconsin that allegedly contaminated its waters and other natural resources.  But the State, like plaintiffs in *McKinnon*, expressly alleges contamination from AFFF use and even identifies several sites in its complaint that were allegedly contaminated by AFFFs.  That the State's claims encompass both AFFF and non-AFFF sources of contamination does not eliminate the common factual questions and discovery relating to PFAS and AFFF that *State of Wisconsin* will share with the actions in the MDL.  *See* Transfer Order at 2, MDL No. 2873 (J.P.M.L. Jun. 5, 2019), ECF No. 446 ("Plaintiff suggests that our initial centralization order limited this MDL to cases alleging only contamination from AFFFs, but our order merely excluded from the MDL actions that did not contain *any* allegations relating to AFFFs.  That the Town alleges *additional* sources of contamination is no obstacle to transfer.") (emphasis in original; internal citation omitted).  The State's attempt to

---

[1] Panel Rule 2.1(d) expressly provides that the pendency of a conditional transfer order does not limit the pretrial jurisdiction of the court in which the subject action is pending.  Between the date a remand motion is filed and the date that transfer of the action to the MDL is finalized, a court generally has adequate time to rule on a remand motion if it chooses to do so.

- 3 -

distinguish its claims from those brought by numerous other states that have been transferred to the MDL is unavailing. *See, e.g.*, Transfer Order at 1–2, MDL No. 2873 (J.P.M.L. Apr. 2, 2019), ECF No. 384 (transferring *parens patriae* actions brought by States of New York and Ohio and rejecting arguments that issues unique to those cases would predominate over the common issues in the MDL).

The State also argues that common defenses, such as the government contractor defense, are not sufficient to merit centralization, because the State's theory of the case encompasses more than just the design of the products. But we previously rejected the argument that actions that do not implicate the government contractor defense are inappropriate for transfer to MDL No. 2873. *See id.* at 2 ("[T]hat defendants' potential government contractor defense may not be applicable to some sites identified by the States does not weigh against centralization. Multiple contamination sites already at issue in the MDL involve non-military firefighting or industrial facilities, and thus also will not involve this defense."). In any event, transfer under Section 1407 does not require a complete identity of factual and legal issues when the action arises from a common factual core. *See In re Oxycontin Antitrust Litig.*, 542 F. Supp. 2d 1359, 1360 (J.P.M.L. 2008).

Movants in both actions argue that transfer will cause them delay and inconvenience. Transfer, though, is appropriate if it furthers the expeditious resolution of the litigation taken as a whole, even if some parties to the action might experience inconvenience or delay. *See In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1351–52 (J.P.M.L. 2012) ("[W]e look to the overall convenience of the parties and witnesses, not just those of a single plaintiff or defendant in isolation."). Furthermore, centralization is for pretrial proceedings only, and there usually is no need for parties or witnesses to travel to the transferee court for depositions or court hearings. *See In re MLR, LLC, Patent Litig.*, 269 F. Supp. 2d 1380, 1381 (J.P.M.L. 2003). Movants' arguments in *McKinnon*, in particular, are not well taken, as the procedural posture of the case when it was in state court (where only written discovery had been completed) bears little relevance to the case's posture after the addition of the AFFF manufacturers as defendants and removal to federal court.

Accordingly, after considering the argument of counsel, we find that the actions listed on Schedule A involve common questions of fact with the actions transferred to MDL No. 2873, and that transfer under 28 U.S.C. § 1407 will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. In our order centralizing this litigation, we held that the District of South Carolina was an appropriate Section 1407 forum for actions in which plaintiffs allege that AFFF products used at airports, military bases, or certain industrial locations caused the release of PFOS and/or PFOA into local groundwater and contaminated drinking water supplies. The actions in the MDL share factual questions concerning the use and storage of AFFFs; the toxicity of PFAS and the effects of these substances on human health; and these substances' chemical properties and propensity to migrate in groundwater supplies. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d at 1394. Subsequently, we held that personal injury actions brought by firefighter plaintiffs alleging direct exposure to AFFF also shared common factual questions with the actions in the MDL. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2021 WL 755083, at *1–2. As explained above, each of these three actions will share common questions of fact with the AFFF actions in the MDL and will benefit from inclusion in the centralized proceedings.

- 4 -

IT IS THEREFORE ORDERED that the actions listed on Schedule A are transferred to the District of South Carolina and, with the consent of that court, assigned to the Honorable Richard M. Gergel for coordinated or consolidated pretrial proceedings.

PANEL ON MULTIDISTRICT LITIGATION

_____
Karen K. Caldwell
Chair

Nathaniel M. Gorton        Matthew F. Kennelly
Roger T. Benitez           Dale A. Kimball

IN RE: AQUEOUS FILM-FORMING FOAMS
PRODUCTS LIABILITY LITIGATION                     MDL No. 2873

## SCHEDULE A

<u>Northern District of Alabama</u>

FLEMING, ET AL. v. 3M COMPANY, ET AL., C.A. No. 6:22−00285

<u>Central District of California</u>

MCKINNON, ET AL. v. APPLIED INDUSTRIAL TECHNOLOGIES, ET AL., C.A. No. 8:22−01398

<u>Western District of Wisconsin</u>

STATE OF WISCONSIN v. 3M COMPANY, ET AL., C.A. No. 3:22−00412