BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: Aqueous Film-Forming Foams (AFFF) Products Liability Litigation | MDL No. 2873<br>This Document Relates To:<br><br>*State of Maine v. 3M Company, et al.*<br>No. 2:23-cv-00210 (D. Me.) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT 3M COMPANY'S MOTION TO TRANSFER TAG-ALONG ACTION *STATE OF MAINE V. 3M CO.***

The State of Maine ("Maine" or "the State") is pursuing this lawsuit to hold 3M and other PFAS manufacturers accountable for PFAS contamination in Maine that is *not* attributable to aqueous film-forming foams ("AFFF"). As 3M recognizes, the State has filed a separate action specifically seeking damages for PFAS contamination resulting from AFFF use, which has already been transferred to the AFFF MDL, *In re AFFF Products Liability MDL*, MDL No. 2:18-mn-2873-RMG (D.S.C.). *See* MDL No. 2873 ECF No. 1912.[1] Recognizing the clear distinction between the instant non-AFFF case, which does not seek recovery for contamination from or exposure to AFFF products, and the State's separately filed AFFF case, the Clerk of the Panel issued an order on June 1, 2023 determining that the non-AFFF case was "not appropriate for inclusion in this MDL." MDL No. 2873 ECF No. 1926.

---

[1] Citations to the JPML docket concerning the AFFF MDL will be denoted as "MDL No. 2873 ECF No. __."

1

3M nonetheless asks the Panel to transfer this lawsuit to the MDL. 3M primarily argues that two Maine water districts allege that the drinking water in those districts is contaminated by AFFF, that this drinking water is at issue in the State's non-AFFF case, and thus that the State's claims are implicitly seeking recoveries for AFFF contamination. But 3M is wrong: the water districts' vague boilerplate allegations are made "upon information and belief," which is an admission that the water districts themselves—to say nothing of 3M—do not in fact have any evidence that the contamination in those areas is caused by AFFF. Moreover, the State has submitted evidence with this opposition indicating that these allegations are incorrect, and that the contamination of the drinking water in question is from non-AFFF sources. For these and other reasons, 3M's transfer motion should be denied.

## BACKGROUND

On March 29, 2023, the State filed the instant suit, which concerns contamination of State natural resources with PFAS from consumer and commercial products and industrial uses (the "Non-AFFF Lawsuit"). *See* Exhibit 1 to Motion to Transfer ("Compl.") ¶¶ 2, 6, 7, 15, 35, 67, 68, 72. Maine's Complaint expressly states that "[t]he State is not seeking to recover through this Complaint any relief for contamination or injury related to [AFFF]." *Id.* ¶ 15. To account for PFAS contamination related to the use of AFFF, the State simultaneously filed a separate lawsuit (the "AFFF Lawsuit"). *See* Motion to Transfer, Ex. 2 ("AFFF Compl."). On May 8, 2023, 3M removed the AFFF Lawsuit on the basis of alleged federal officer jurisdiction and it was transferred to the MDL in South Carolina.

On May 17, 2023, 3M also removed the State's Non-AFFF Lawsuit to federal court. This notice of removal says nothing about lawsuits by water districts in Maine; this is a theory that 3M has developed only recently. Instead, the notice of removal contends, "upon information and belief" only, that out of the many Maine locations contaminated by PFAS from non-AFFF

2

sources, that AFFF contamination "possibly" *may* be commingled with non-AFFF contamination in areas near four federal facilities in Maine.  Motion to Transfer, Ex. 3 ¶¶ 26-30.  According to 3M, the mere possibility of commingling at these four locations means that the Non-AFFF Lawsuit concerns 3M's manufacture of AFFF, even though the Complaint does not say anywhere that these four locations are in fact part of the Non-AFFF Lawsuit, and expressly disclaims recovery for AFFF-related injuries.  Compl. ¶ 15.  On May 25, 2023, the State moved to remand this Non-AFFF Lawsuit to state court on an expedited basis based on a lack of subject matter jurisdiction.  That motion is fully briefed as of June 22, 2023, and is awaiting resolution by the federal court in the District of Maine.

On May 26, 2023, 3M filed a Notice of Potential Tag-Along Action with the JPML regarding the Non-AFFF Lawsuit.  MDL No. 2873 ECF No. 1923.  On June 1, 2023, the Clerk of the Panel declined to transfer the case to the MDL.  MDL No. 2873 ECF No. 1926.  3M then filed the instant Motion to Transfer, seeking an order transferring the State's Non-AFFF Lawsuit to the MDL.  MDL No. 2873 ECF No. 1933.  In its Motion to Transfer, 3M emphasizes that two Maine water districts, the Kennebunk, Kennebunkport, and Wells Water District ("KK&W Water District") and the Kennebec Water District (collectively, "Water Districts"), have filed lawsuits in which they claim—again "upon information and belief" only—that PFAS contamination of their water systems was caused at least in part by AFFF.  Because the State's Non-AFFF Lawsuit supposedly seeks to recover for injuries to these drinking water supplies, 3M argues that this lawsuit implicitly seeks to recover for injuries caused by AFFF.  *Id*. at 2.  The State's Complaint alleges contamination of drinking water for the KK&W Water District but not the Kennebec Water District.  Compl. ¶ 134(a)r.

3

On June 8, 2023, 3M filed a motion to stay, asking the Maine federal court to hold in abeyance any ruling on the State's motion to remand while the Panel decides this transfer motion. Maine has opposed 3M's motion to stay, which is fully briefed as of June 22, 2023, and is awaiting decision by the federal court in Maine.

## LEGAL STANDARD

"When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings," *i.e.*, a multidistrict litigation. 28 U.S.C. § 1407(a). Although common factual questions can authorize a transfer to the MDL, Section 1407(a) requires that "transfers for such proceedings . . . be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." *Id.* Importantly, this Panel has ruled that "a party seeking transfer of an action that does not on its face raise AFFF claims bears a significant burden to persuade us that transfer is appropriate and will not undermine the efficient progress of the AFFF MDL." MDL No. 2873 ECF No. 541 ("*Middlesex Water Co.*") at 2.

3M acknowledges that the State filed a separate AFFF lawsuit and that this Non-AFFF complaint expressly disclaims recovery "for contamination or injury related to [AFFF]." Compl. ¶ 15. As the Panel has explained on several occasions—including on August 3, 2022, in connection with 3M's failed attempt to transfer the State of New Hampshire's non-AFFF case—it intentionally limited the scope of the MDL docket to matters involving AFFF products, not PFAS in general. *See* MDL No. 2873 ECF No. 1511 ("*New Hampshire*"). The basis for the Panel's refusal to centralize non-AFFF cases in the MDL is that transfer of such actions "will not serve the convenience of the parties and witnesses or promote the just and efficient conduct of the litigation." *Id.* at 2. To warrant centralization, "the pleadings and the record" in any putatively non-AFFF case for which transfer is sought must demonstrate "that AFFF claims are

4

substantial and concrete, and that transfer to the MDL will enhance efficiency and convenience, both in the individual action and in the MDL overall." *Id.* at 2-3. 3M has not and cannot make such a showing here.

## ARGUMENT

I. **THIS NON-AFFF ACTION LACKS COMMONALITY WITH THE MDL**

    A. **The Panel has consistently excluded non-AFFF actions from the MDL.**

"When we centralized this docket, we denied a motion by 3M to extend the scope of the MDL to encompass not just cases involving AFFFs, but all cases relating to 3M's manufacture, management, disposal, and sale of PFAS. . . . We drew this line between 'AFFF' and 'non-AFFF' cases because of concerns for the manageability of this litigation[.]" MDL No. 2873 ECF No. 1511 at 1 (citing *In re AFFF*, 357 F. Supp. 3d 1391, 1396 (J.P.M.L. 2018)). As the Panel reasoned in *In re AFFF*, in contrast to AFFF-related cases, the non-AFFF cases involved unique fact patterns, such as industrial disposal practices that would entail "site-specific issues" not otherwise of relevance to the AFFF lawsuits. 357 F. Supp. 3d at 1396. Thus, the Panel found such non-AFFF cases to be "quite different" from the AFFF cases and declined to incorporate non-AFFF cases into the MDL to avoid creating a proceeding that "could quickly become unwieldy." *Id.*

Since creating the MDL in 2018, the Panel has on numerous occasions elaborated on its decision to exclude non-AFFF cases from the MDL. For example, in *Middlesex Water Co.*, the Panel denied a motion to transfer a case where the plaintiff claimed only non-AFFF sources as the cause of its PFAS contamination injuries, even though one of the defendants had proffered evidence, including expert testimony and the plaintiff's extrajudicial admissions, identifying AFFF as a potential source. MDL No. 2873 ECF No. 541 at 1. The Panel noted that, although it had "transferred several actions in which plaintiffs allege multiple sources of PFOS and PFOA

5

contamination, including from the use of AFFFs," it had not "transferred an action to the MDL that contains no allegations or claims relating to AFFF use." *Id.* The Panel reasoned that "[i]f *potential* causation or contribution arguments are sufficient to bring an action within the ambit of [the] MDL, then a large number of cases that do not assert AFFF claims might be swept into this litigation," which would "unnecessarily complicate the transferee judge's task in efficiently managing this litigation, which already involves a wide range of claims and parties." *Id.* at 2; *see also, e.g.*, MDL No. 2873 ECF No. 1352 ("*Johnson*") at 1-2 (denying transfer of case deemed "more akin to the non-AFFF actions the Panel has excluded from the MDL than more typical AFFF actions," even where defendant offered deposition testimony of local fire chief who identified AFFF as a potential source of the PFAS contamination at issue); MDL No. 2873 ECF No. 620 ("*New York Water Systems*") at 1-2 (denying transfer, even where plaintiffs' claims arose out of PFAS contamination in an aquifer which, based on allegations in another action, had been contaminated due to AFFF, because "at this point the extent of AFFF involvement in these actions is speculative"); MDL No. 2873 ECF No. 585 ("*Hardwick*") at 3 (ruling that, where plaintiff's "complaint does not on its face raise AFFF claims … transferring [it] would introduce the additional site specific issues, different modes of PFAS contamination, and different PFAS chemicals that concerned the Panel when we declined to include non-AFFF actions in the MDL") (quotation marks omitted). Most recently, the Panel rejected 3M's bid to transfer New Hampshire's non-AFFF case. The Panel explained that, since opening the MDL docket in 2018, "we have endeavored to maintain this distinction" between AFFF and non-AFFF cases, electing

6

to exclude actions that involve "only the potential for commingling" between AFFF and non-AFFF sources. *New Hampshire*, at 2.[2]

These five decisions—*Middlesex Water*, *Johnson*, *New York Water Systems*, *Hardwick*, and *New Hampshire*—show that allegations from other lawsuits and even evidence that AFFF may contaminate some resources at issue do *not* suffice to transfer to the MDL a lawsuit that seeks recoveries for non-AFFF contamination. This is precisely the situation here, and for this reason alone 3M's transfer motion should be denied.

**B.     The water district lawsuits do not show that the State has pleaded AFFF claims.**

3M's primary argument for transfer was omitted from its notice of removal and is based on conclusory and unsubstantiated allegations in two nearly identical lawsuits brought by two Maine water districts. Specifically, the KK&W Water District and the Kennebec Water District have filed lawsuits in which they allege that AFFF contamination has, "upon information and belief," contaminated drinking water in those two water districts. *See* 3M Exh. 5, ¶ 12; 3M Exh. 6, ¶ 12. 3M states that the complaint in the State's non-AFFF action seeks to recover for contamination of certain drinking water supplies in these same two water districts, but in fact the State's Complaint alleges contamination of drinking water in the KK&W Water District but not the Kennebec Water District.[3] On this basis, 3M argues that this action implicitly seeks relief for AFFF contamination, even though the State's complaint very explicitly disclaims any such relief. *See* Compl. ¶ 15. In support, 3M relies almost entirely on the Panel's *Illinois* decision and

---

[2] For similar reasons, 3M's citation to the Panel's decision involving the State of Michigan's separate PFAS cases is inapposite because there, Michigan had delineated between commercial AFFF and military AFFF, not AFFF generally and non-AFFF, as the State of Maine has done here. *See* 3M Br. at 12 (citing MDL No. 2873 ECF No. 1020).

[3] *See* Compl. ¶ 134(a).

7

largely ignores the five decisions in *Middlesex Water*, *Johnson*, *New York Water Systems*, *Hardwick*, and *New Hampshire*.  *See* Transfer Order, MDL No. 2873 ECF No. 1927 (June 5, 2023) ("*Illinois*").  In that case, Illinois brought a non-AFFF lawsuit for injuries to water supplies and contaminated sites in three water districts, even though the same three water districts had previously brought separate lawsuits alleging that this same water and "many" of these same sites were contaminated by AFFF.[4]  Based on this substantial overlap, the Panel transferred the *Illinois* action to the MDL.  3M says the Panel should do the same with the State's case here, because of the KK&W and Kennebec Water District's allegations.  But 3M is incorrect.

      First, the State's non-AFFF complaint does not seek injuries to the water supplies that are at issue in the lawsuit by the Kennebec Water District.  Victoria Eleftheriou is the Deputy Director of Maine DEP's Bureau of Remediation and Waste Management, which is responsible for investigating PFAS contamination throughout the State.  Her declaration states that the Kennebec locations identified in the State's non-AFFF complaint are not connected to the source of water for the Kennebec Water District, which is China Lake.  *See* Declaration of Victoria Eleftheriou ("Eleftheriou Decl."), Exh. 1 hereto, ¶¶ 16, 18 (the "China Middle School public water system sources its water from groundwater and not from China Lake, which is the source for the Kennebec system.").  She also testified that there is "no evidence" that the PFAS contamination in Fairfield is linked to the PFAS contamination of China Lake based on the distance between the sites, concentrations of PFAS, types of PFAS detected, and volumes and years of direct sludge application in Fairfield.  *Id.* ¶ 19.

---

[4] Unlike in *Illinois*, 3M does not argue that there are any contaminated sites on dry land or "many" such contaminated sites listed in the State's complaint that are in fact contaminated with AFFF.

More fundamentally, the KK&W and the Kennebec Water District's allegations of AFFF contamination are boilerplate. Unlike the allegations by the water suppliers in Illinois (which identified a specific AFFF source), the two Maine Water Districts merely make vague and conclusory allegations "upon information and belief." This "upon information and belief" caveat was not present in *Illinois*, and drastically weakens 3M's argument. Allegations made "upon information and belief" are permissible "when the facts at issue are peculiarly within the defendant's possession." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107 n.31 (3d Cir. 2015). But here it is obvious that the AFFF defendants have no special knowledge about how the water in the two Water Districts came to be contaminated. In effect, the Water Districts have asserted that information from defendants like 3M will somehow help them show that AFFF is to blame for PFAS contamination in the Water Districts, yet 3M comes to the Panel without proffering this information either.

Put differently, not only does 3M lack any evidence that that the contamination in these two water districts is caused by AFFF, *but the water districts have also admitted that they lack this evidence themselves*. It is highly questionable under these circumstances whether the water districts' allegation would be sufficient to state a claim against AFFF manufacturers. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that a complaint does not "suffice if it tenders naked assertion[s] devoid of further factual enhancement" or is based on "mere conclusory statements") (quotation marks omitted). *A fortiori* it should not suffice to show that the State has pleaded "substantial and concrete" AFFF claims sufficient to warrant transfer to the MDL. *See New Hampshire*, MDL No. 2873 ECF No. 1511, at 2-3.

In the absence of any firm allegation by the Water Districts, it is appropriate for this Court to take into consideration the facts that are readily available—which show that the relevant

water supplies are *not* contaminated by AFFF. To be sure, Illinois invited the Panel to weigh the plausibility of the allegations in the respective complaints, "based on the amount of detail" and the Panel declined to engage in this semantic exercise. But this case is different. Here, DEP has investigated potential sources of the PFAS contamination in the two Water Districts, and "has concluded that there is no evidence that AFFF contributed to the PFAS contamination at any of these locations." Eleftheriou Decl., Ex. 1, ¶ 13; *see also id.* ¶¶ 14-19. In short, not only are the allegations in the Water Districts' complaints admittedly based on information they do not actually have, but the only available evidence shows that this information will *not* be forthcoming, from the defendants or from anyone else.

In sum, the facts demonstrate no connection between Kennebec Water District and the State's complaint, and in any event, the KK&W and Kennebec Water District's allegations are negated both by actual evidence and by the Water Districts' admission that they do not have any countervailing information. This is very different from *Illinois*, where the water districts had identified at least one source of AFFF and (more importantly) did not hedge their own allegations linking this source to contaminated water.

Fundamentally, *Illinois* should be viewed as the outer limit of appropriateness for transfer in PFAS litigation. If an action that in fact does not involve AFFF contamination can be transferred on the basis of boilerplate assertions made without any evidentiary basis, then defendants like 3M can keep playing this game forever, sending every non-AFFF case to the MDL on the basis that someone, somewhere has said, without any real basis, that someone *else* has information to show that some small fraction of the contamination at issue may derive from AFFF. This was not the sort of dispute the MDL was created to resolve. 3M's argument based on the Water Districts' lawsuits is as thin as it gets; it should be rejected.

### C. The State's lawsuit does not include any other areas with AFFF contamination.

3M is also wrong to suggest that this action may include other areas (not listed in the KK&W and Kennebec Water District actions) where AFFF contamination has "plausibly migrated."

3M's factual predicate for removal of Maine's Non-AFFF Lawsuit most closely resembles the circumstances in *New Hampshire*. There, defendants offered government reports indicating that AFFF released from Pease Air Force Base plausibly migrates to the Great Bay estuary and other surface waters to commingle with PFAS from non-AFFF sources at issue in New Hampshire's non-AFFF case. Similarly, 3M asserts that AFFF used at military installations in Maine "plausibly migrated" to four areas in Maine. *See* 3M Br. at 11 n.5. But this "plausible migration" is just 3M's speculation (based on eyeballing maps and misreading government reports), and in any event the four areas with purportedly commingled contamination are *not* specifically listed in the State's non-AFFF complaint. Rejecting 3M's bid to transfer New Hampshire's case to the MDL, the Panel observed that such evidence "shows only the potential for commingling" and "is of a kind with evidence of AFFF use that we have found insufficient for transfer of other non-AFFF actions." MDL No. 2873 ECF No. 1511, at 2 (citing MDL No. 2873 ECF No. 1451, at 1-2). The "evidence" raised by 3M in this case, as in *New Hampshire*, amounts to pure speculation and is even less persuasive than the evidence introduced and rejected in *Johnson*, *Middlesex Water Co.*, and *New York Water Systems*.

The problem with 3M's renewed attempt to expand the scope of the MDL to include non-AFFF cases is the same as it ever was: opening the MDL doors to cases due merely to the *potential* that AFFF may have relevance to the issues at stake would "unnecessarily complicate the transferee judge's task in efficiently managing this litigation, which already involves a wide

11

range of claims and parties," *Middlesex Water Co.*, at 2, and would inevitably introduce "site-specific issues" not otherwise relevant to the AFFF cases as a whole, *In re AFFF*, 357 F. Supp. 3d at 1396.  It is not enough to point to the general possibility that AFFF may have contributed to a particular party's injury; instead, "a party seeking transfer of an action that does not on its face raise AFFF claims bears a ***significant burden*** to persuade us that transfer is appropriate and will not undermine the efficient progress of the AFFF MDL." *Middlesex Water Co.*, at 2 (emphasis added).  3M utterly fails to carry that significant burden with its empty speculation that PFAS contamination at issue in the State's non-AFFF case may nevertheless have some relationship to AFFF sources due to the conjured possibility of "commingling."

Similarly, 3M's argument that transfer is appropriate because Maine's AFFF complaint has already been transferred to the MDL and also involves statewide contamination, proves too much.  The MDL was explicitly designed to coordinate discovery and proceedings relating to claims involving AFFF, not all PFAS.  Thus, claims that relate to injuries separate and distinct from AFFF, as in Maine's Non-AFFF Lawsuit, are not appropriate for coordination, consolidation, and transfer to the MDL.

## CONCLUSION

The State respectfully requests that the Panel deny 3M's Motion to Transfer.

Dated:   June 29, 2023              STATE OF MAINE

                                             AARON M. FREY
                                             ATTORNEY GENERAL

                                             */s/ Kyle J. McGee*
                                             Viola Vetter*
                                             Kyle J. McGee*
                                             **GRANT & EISENHOFER P.A.**
                                             123 Justison Street
                                             Wilmington, DE 19801
                                             Phone: (302) 622-7000

kmcgee@gelaw.com
vvetter@gelaw.com

Scott Boak
Robert Martin
Assistant Attorneys General
6 State House Station
Augusta, Maine 04333
Phone: (207) 626-8566
Phone: (207) 626-8579
Scott.Boak@maine.gov
Robert.Martin@maine.gov

Matthew F. Pawa\*
Benjamin A. Krass\*
**SEEGER WEISS LLP**
1280 Centre Street, Suite 230
Newton Centre, MA  02459
Phone: (617) 641-9550
mpawa@seegerweiss.com
bkrass@seegerweiss.com


 \* Admitted *pro hac vice*