BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

------------------------------------------------------X
                                   :     **MDL NO. 2873**

IN RE: AQUEOUS FILM-FORMING     :
FOAMS (AFFF) PRODUCTS LIABILITY  :     This Document Relates To:
LITIGATION                         :     *Certain Underwriters at Lloyd's London, et*
                                    :     *al. v. BASF Corporation, et al.*
------------------------------------------------------X     Case No 1:24-cv-01684 (S.D.N.Y.)

**BRIEF IN SUPPORT OF MOTION TO VACATE
CONDITIONAL TRANSFER ORDER NO. 180 (CTO-180)**

Plaintiffs Certain Underwriters at Lloyd's, London ("Certain Underwriters") and Certain London Market Insurance Companies ("London Companies") (collectively, "London Market Insurers"), as well as the additional 20 Insurer Parties identified below, by and through their undersigned attorneys, respectfully submit this Motion to Vacate Conditional Transfer Order No. 180 ("CTO-180") (ECF No. 2471), issued on March 28, 2024, conditionally transferring the action *Certain Underwriters at Lloyd's London, et al. v. BASF Corporation, et al.*, Case No. 1:24-cv-01684 (S.D.N.Y.) (the "New York Action")[1] to *In re: Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2873, 2:18-mn-02873 (D.S.C.) (the "AFFF MDL").

## SUMMARY OF ARGUMENT

The New York Action should not be transferred to the AFFF MDL, and instead should be returned to the Southern District of New York ("S.D.N.Y.") and then remanded to the New York State court in which it was originally brought.

First and foremost, the Panel need not consider the instant transfer request because the Panel does not have subject matter jurisdiction over the New York Action—an insurance coverage

---

[1] Citations and references to documents on the New York Action's docket will be stylized as *New York Action,* ECF No. # (Title of Document).

lawsuit filed in New York state court that defendant BASF Corporation ("BASF") seeks to transfer to the AFFF MDL. As set forth in the fully briefed Motion to Remand that is pending in the S.D.N.Y. (*New York Action*, ECF No. 7, 8, 21, 24 (Motion, Memorandums of Law, Reply for Motion to Remand), BASF has not met, and cannot meet, its burden to show that the federal courts have subject matter jurisdiction over the numerous Certain Underwriters and London Companies in the New York Action.  BASF removed this lawsuit from its proper home in the New York State court to the S.D.N.Y. with a facially deficient Notice of Removal, incorrectly stating that Plaintiffs Certain Underwriters are foreign corporations, when in fact they are hundreds of members of unincorporated syndicates.  BASF has not established either: 1) diversity jurisdiction; or 2) the amount in controversy with respect to each of the London Market Insurers, both of which are required for subject matter jurisdiction in the federal courts.  CTO-180 should therefore be vacated, so the S.D.N.Y. can resolve the fully briefed and pending Motion to Remand and send the New York Action back to state court.

Second, even if the Panel had proper subject matter jurisdiction, this Action exclusively involves issues of insurance coverage, and this Panel has consistently held that insurance coverage actions should not be transferred and centralized in an MDL established to handle liability claims against manufacturers.  Indeed, this Panel has acknowledged that insurance coverage actions generally involve issues of state law and are not proper for MDL proceedings.  Those rulings are equally applicable here.  This Action does not contain any tort liability claims, and the insurance coverage questions at issue involve state law only.

Third, there is no commonality between the insurance claims involved in the New York Action and those in the multi-state tort liability actions centralized in the AFFF MDL.  The New York Action involves discrete New York state law insurance coverage issues implicating multiple

policies issued by numerous insurers across eleven years of coverage.  These issues include, but are not limited to: 1) whether BASF has rights to coverage under policies issued to its alleged predecessors; 2) whether an "occurrence" took place during the policy periods (as defined therein); 3) whether the policies are "triggered"; 4) whether any policy exclusions apply including, but not limited to, the pollution exclusions; 5) whether notice was timely; 6) whether the alleged defense and indemnity costs implicate the excess policies; 7) how any loss would be allocated (which BASF has asserted would be determined under New York state law), including as between the insurers' policies and BASF for years in which it has no coverage and the insurers that issued coverage and are now insolvent; 8) the order of priority in which the insurance policies would respond if coverage is found to exist as there are "claims-made" and "occurrence" based policies at issue; and 9) the application of various prior settlement agreements.  By contrast, the AFFF MDL is focused on determining liability for the bodily injury and property damage alleged in thousands of lawsuits involving exposure to PFAS chemicals allegedly associated with AFFF. Consideration of the wholly distinct insurance issues in this case would impede the court's ability to efficiently manage the AFFF MDL.

Judge Gergel has already declined to transfer another insurance coverage action into the AFFF MDL. *See, e.g.*, *Tyco Fire Products LP v. AIU Ins. Co. et al.*, Case No. 2:23-cv-2384 (D.S.C.), ECF No. 103 (Order and Opinion), at pgs. 5-8.  What is more, this Panel has declined to transfer other disparate actions to the AFFF MDL because such transfers would make the MDL too complicated and practically impossible to manage properly.  *See* Order Denying Transfer, *In Re: Aqueous Film-Forming Foams ("AFFF") Products Liability Litigation,* Case MDL No. 2873 (J.P.M.L. Dec. 7, 2023), ECF No. 2217 (*Rougeau, et al. v Ahlstrom Rhinelander, LLC, et al.,* Case No. 3:23-00546 (W.D. Wis.)) (denying transfer to AFFF MDL because inclusion of PFAS actions

not related to AFFF use or disposal would expand the scope of the MDL and raise case management concerns).   Accordingly, since the New York Action does not involve the commonality of facts and issues required for joining lawsuits together in an MDL, the Panel should vacate CTO-180.

## PROCEDURAL HISTORY

### A.  The New York Action

On February 27, 2024, BASF filed an insurance coverage declaratory judgment action in the federal court in South Carolina seeking coverage for AFFF claims.  *See BASF Corp. v. AIU Ins. Co. et al*., Case No. 2:24-cv-00993 (D.S.C.) (the "South Carolina Action").  BASF did not name the London Market Insurers (and many of its other insurers) as defendants in the South Carolina Action, because doing so would have destroyed diversity jurisdiction. (*New York Action,* ECF No. 17-2, ¶ 69 (New Jersey Complaint)).  Notably, BASF did not file its coverage action within the AFFF MDL, nor has BASF attempted to transfer it to the MDL.

On March 4, 2024, the London Market Insurers commenced this action in the Supreme Court of the State of New York, naming BASF as a defendant along with numerous defendant insurers. The London Market Insurers brought causes of action seeking declaratory judgments regarding the rights and obligations, or lack thereof, of the parties in relation to insurance policies issued by or subscribed to by 30 insurers in the 1970s, 1980s, and in recent years, to alleged predecessors of BASF and/or BASF.  BASF filed a Notice of Removal to the S.D.N.Y. on March 6.   The next day, BASF filed a Notice of Potential Tag-Along Action to the AFFF MDL.  On March 13, the Plaintiffs filed a Motion to Remand, and BASF filed a Motion to Stay the New York Action until after this Panel issues a decision on its Notice of a Potential Tag-Along Action.  These motions are currently pending.

4

Tellingly, BASF then filed an insurance coverage action in New Jersey state court which names the London Market Insurers and other insurers as defendants (the "New Jersey Action"). In the New Jersey Action, BASF pled that: 1) Certain Underwriters are members of unincorporated syndicates; and 2) the newly-named insurer defendants, which include the London Market Insurers, were not included as defendants in the South Carolina Action because doing so would have destroyed diversity jurisdiction. Despite these acknowledgments, BASF has not corrected its flawed Notice of Removal of the New York Action to specify that Plaintiffs Certain Underwriters are members of unincorporated syndicates, not corporations.

**B.  <u>The Transfer Order Creating the AFFF MDL</u>**

This Panel entered an Order on December 7, 2018 creating the AFFF MDL before the District Court for the District of South Carolina. *See In Re Aqueous Film-Forming Foams (AFFF) Products Liability Litigation*, 357 F. Supp.3d 1391 (J.P.M.L. 2018) (the "Transfer Order"). The Transfer Order provides that only property damage and personal injury claims are to be transferred and centralized; insurance coverage actions related to these claims, like this one, are not included. Specifically, the Panel noted the following:

> The "AFFF Actions" [provided to the Panel] involve common questions of fact, and that centralization will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. In each of these actions, plaintiffs alleged that AFFF products used at airports, military bases or certain industrial locations caused the release of PFOA or PFOS into local groundwater and contaminated drinking water supplies. With some minor variations, the same group of AFFF manufacturer defendants is named in each action. These actions thus share factual questions concerning the toxicity of PFOA and PFOS and their effects on human health; the chemical products of these substances and their propensity to migrate into water supplies; the knowledge of the AFFF manufacturers regarding the dangers of PFOA and PFOS; their warnings, if any, regarding proper use and storage of AFFFs; and to what extent, if any, the defendants conspired or cooperated to conceal the dangers of PFOA and PFOS in their products.

5

*Id.* at 1394.

Based upon this commonality, the Panel concluded that "[c]entralization will eliminate duplicative discovery; prevent inconsistent pre-trial rulings . . . and conserve the resources of the parties, their counsel and the judiciary." *Id.*

Significantly, the Panel also ruled that "non-AFFF actions" should not be included in the AFFF MDL as they would lack the commonality that binds the AFFF MDL actions together, such as the pollution claims arising from waste and wastewater disposal from manufacturing plants. *Id.* at 1396. The Panel ruled that those non-AFFF actions were "different in kind from the AFFF actions[,]" involve "more varied defendants", and are relatively few in number. The Panel therefore determined that expanding the AFFF MDL to include those non-AFFF actions was "not warranted." *Id.*

### C.  **The Status of the AFFF MDL**

The AFFF MDL currently involves more than 20,000 plaintiffs with thousands of individual personal injury claims, thousands of individual property damage claims, and more than 6,900 actions from 50 different states and multiple territories. *See AFFF MDL*, ECF No. 4149 (Order). To manage these claims, the AFFF MDL Court has phased the litigation into several stages to address the different groups of plaintiffs and the different alleged AFFF-related injuries or damage claims. These include: 1) public and private water providers alleging that their water supplies have been contaminated by PFAS; 2) firefighters alleging exposure to PFAS through the use of AFFF; 3) persons alleging PFAS-related injuries arising from drinking allegedly contaminated water; 4) private entities alleging PFAS caused environmental harm or property damages, and; 5) various states alleging natural resource damages due to PFAS contamination.

To date, there have been tens of millions of pages of documents produced, extensive written discovery propounded, and more than 160 depositions taken in the AFFF MDL. *See AFFF MDL*, ECF No. 3756 (Tyco Omnibus Response in Opposition to Insurer Defendants' Motions to Dismiss Amended Complaint). Furthermore, the first bellwether trial is scheduled for September 2024, which is focused solely on issues related to the claims of public and private water providers alleging that their water supplies have been contaminated by PFAS. In addition, the AFFF MDL parties are preparing for other bellwether trials relating to persons alleging PFAS-related bodily injuries arising from drinking allegedly contaminated water. The other categories of claims have not yet been scheduled for bellwether discovery or trial proceedings. In sum, thousands of AFFF-related bodily injury and property damage claims remain unresolved.

### D.   Insurance Coverage Lawsuits Are Not Within the Scope of the AFFF MDL

No insurance coverage lawsuit is part of the AFFF MDL. Rather, the AFFF MDL Court has *denied* at least one policyholder's request to make its coverage action part of the AFFF MDL. *See Tyco Fire Products LP v. AIU Ins. Co. et al.*, Case No. 2:23-cv-2384 (D.S.C.), ECF No. 103 (Order and Opinion), at pgs. 5-8.

This is not surprising. The Panel has consistently refused to expand the AFFF MDL beyond its scope and has noted that such improper expansions would impede the entire AFFF MDL's progress. *See* Order Denying Transfer, *In Re: Aqueous Film-Forming Foams ("AFFF") Products Liability Litigation,* Case MDL No. 2873 (J.P.M.L. Dec. 19, 2019), ECF No. 541; Order Denying Transfer, *In Re: Aqueous Film-Forming Foams ("AFFF") Products Liability Litigation,* Case MDL No. 2873 (J.P.M.L. Oct 4, 2023), ECF No. 2129; Order Denying Transfer, *In Re: Aqueous Film-Forming Foams ("AFFF") Products Liability Litigation,* Case MDL No. 2873 (J.P.M.L. Dec. 7, 2023), ECF No. 2217.

## ARGUMENT

### I.   The Panel Does Not Have Subject Matter Jurisdiction Over This Action

Before any decisions can be made about transfer of the New York Action to the AFFF MDL, it will be necessary to determine the threshold issue of whether the federal court has subject matter jurisdiction over the case.  This Panel, and the AFFF MDL court, should not make any decisions regarding the New York Action until the S.D.N.Y. decides the Plaintiffs' Motion to Remand and determines whether the lawsuit can appropriately be handled by a federal court, or needs to be remanded to New York state court where it was originally filed.  This sequence is essential, in order to give appropriate weight to the statutes governing federal jurisdiction.

As explained in a recent decision by Judge Liman in the Southern District of New York:

> [T]he motion [to remand] raises sensitive issues of federalism and federal jurisdiction that warrant resolution with expedition. Should it turn out that the action was improperly removed, Plaintiff would be deprived of its choice of [forum] and the state courts will have been deprived of their right to decide a matter of state law without federal interference. "If this Court does not have jurisdiction, then the MDL court will not have jurisdiction either." *Labrecque v. Johnson & Johnson*, 2015 WL 5824724, at *2 (D. Conn. Oct. 2, 2015). "'[I]n most instances, ... both expedition and sensitivity to state courts' coequal [stature] ... impel' the Court to wrangle with subject matter jurisdiction at this juncture." *Interstate Service Providers*, 2021 WL 2355384, at *5 [(E.D. Tex. June 9, 2021)] (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 587–88 (1999)). If by contrast, the action was properly removed, neither party will suffer prejudice by the Court having decided the issue; it will remove one more motion for the parties to brief when and if the JPML transfers the case and for the transferee court to address. Finally, "Congress designed the removal-and-remand process to address jurisdictional matters speedily." *Id.* at *6.

*Gallagher v. Boehringer Ingelheim Pharm., Inc.,* 2023 WL 402191, at *3 (S.D.N.Y. Jan. 25, 2023)

(Liman, J.).  The *Gallagher* court concluded that "Congress's objective would be defeated if the

Court deferred consideration of the motion [to remand] until after the JPML decided the motion to transfer."[2]

Federal courts are courts of limited jurisdiction, and their subject matter jurisdiction only encompasses questions of federal law (28 U.S.C. § 1331) or matters where there is complete diversity and the amount in controversy has been satisfied (28 U.S.C. § 1332).  The London Market Insurers contend that in removing the New York Action from state court, BASF has not met its burden of establishing that federal courts have subject matter jurisdiction over this dispute. *United Food & Com. Workers Union, Loc. 919, AFL-CIO* v. *CenterMark Properties Meriden Square, Inc.,* 30 F.3d 298, 301 (2d Cir. 1994).  "Unless that burden is met, the case must be remanded back to state court . . . the party seeking remand is presumed to be entitled to it unless the removing party can demonstrate otherwise." *Wilds v. United Parcel Sow., Inc.,* 262 F. Supp. 2d 163, 171 (S.D.N.Y. 2003) (*Bellido-Sullivan v. Am. Int'l Grp., Inc.,* 123 F. Supp. 2d 161, 163 (S.D.N.Y. 2000)).

BASF has failed to show that all of the adverse parties in the New York Action are completely diverse with regard to citizenship. *See E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.,* 160 F.3d 925, 930 (2d Cir. 1998) (holding that for complete diversity, each underwriting member of the Lloyd's syndicates must be diverse). Here, Plaintiffs Certain Underwriters at Lloyd's, London are members of unincorporated associations ("syndicates") composed of numerous individuals, referred to as "Names."  It is well-established that the citizenship of each Name must be considered in establishing diversity jurisdiction. *See, e.g.*, *Prime Prop. & Cas. Ins. Inc. v. Elantra Logistics, LLC,* 2021 WL 4066737 at *3-4 (dismissing complaint as plaintiff failed

---

[2] The *Gallagher* court denied the motion to remand, and then granted the motion to stay, to which the plaintiff had already agreed if the removal were found by the court to be proper.  *Gallagher*, 2023 WL 402191 at *9.

to sufficiently plead diversity jurisdiction against certain Underwriters at Lloyd's, London); *E.R. Squibb & Sons, Inc.,* 160 F.3d at 939; *Underwriters at Lloyd's, London v. Osting-Schwinn,* 613 F.3d 1079, 1088 (11th Cir. 2010); *Indiana Gas Co.* v. *Home Ins. Co.,* 141 F.3d 314, 317 (7th Cir. 1998).

As set forth more fully in the pending Motion to Remand before the S.D.N.Y, BASF's Notice of Removal fails to allege a single individual member of the syndicates that make up Certain Underwriters, and incorrectly characterizes the Certain Underwriters as "foreign corporations." (*New York Action,* ECF No. 5, ¶ 8 (Notice of Removal)).  Because the Notice of Removal does not identify the individual underwriters, the Court cannot determine each defendant's citizenship, and diversity jurisdiction cannot be established. *See, e.g., Prime Prop. & Cas. Ins. Inc.,* 2021 WL 4066737 at *3-4 (*quoting Advani Enters., Inc. v. Underwriters at Lloyds,* 140 F.3d 157, 161 (2nd Cir. 1998)).

And, even if the individual Names were identified, complete diversity would still not exist because "diversity jurisdiction does not encompass cases between foreigners on one side and foreigners and citizens on the other." *Bank of New York v. Bank of Am.,* 861 F.Supp. 225, 228, n.4 (S.D.N.Y. 1994). Under BASF's theory, the plaintiffs in the New York Action are all foreign corporations, who are on the opposite side of a defendant group that includes various foreign corporations.[3]  The Supreme Court has established that the presence of United States citizens on only one side of a case cannot create diversity jurisdiction where there are aliens on both sides of the case. *See Grupo Dataflux* v. *Atlas Global Group, L.P.,* 541 U.S. 567, 569, 124 S. Ct. 1920 (2004) (*citing Mossman* v. *Higginson,* 4 Dall. 12, 14, 1 L.Ed. 720 (1800)); *Growth Fund v. Morgan*

---

[3] These include HDI Global SE, AXA Group AG, Zurich International (Bermuda) Limited, Allianz Versicherungs-AG, and RSA Insurance Group Limited,

*Stanley & Co. Int'l Ltd.,* 1998 WL 375201 (S.D.N.Y. July 2, 1998) *(citing Bank of New York,* 861 F.Supp. at 228, n.4)); *Universal Licensing Corp. v. Paola del Lungo S.p.A,* 293 F.3d 579, 581 (2d Cir. 2002) (diversity lacking "where on one side there are citizens and aliens and on the opposite side there are only aliens"); *Israel Aircraft Indus., Ltd. v. Sanwa Bus. Credit Corp,* 16 F.3d 198, 202 (7th Cir. 1994) ("the statute creating the diversity jurisdiction does not contemplate an alignment of alien versus alien plus citizen.").

Furthermore, BASF's Notice of Removal does not allege that each London Market Insurer may be liable for an amount in excess of $75,000.  Instead, the Notice of Removal simply alleges that the *Plaintiffs* (the combined London Market Insurers) subscribed to "at least 30 million dollars in policy limits." (*New York Action,* ECF No. 5, ¶¶ 9, 10 (Notice of Removal)).  However, "each and every Name would [] have to satisfy the jurisdictional amount" in order to meet that requirement for subject matter jurisdiction. *E.R. Squibb & Sons, Inc.,* 160 F.3d at 933.

BASF has acknowledged that complete diversity does not exist in the New York Action, stating that it brought its later-filed New Jersey Action "to include Defendant Insurers not named in (i) the First Filed D.S.C. Action [which includes the Plaintiffs] due *to lack of diversity of citizenship with BASF or otherwise* . . .." (*New York Action,* ECF No. 17-2, ¶ 69 (New Jersey Complaint)) (emphasis added).  Yet, BASF has not corrected the inaccurate statement in its Notice of Removal, and instead has cross-moved for jurisdictional discovery before the S.D.N.Y.  The cross-motion has been opposed and is fully briefed and is ready for resolution before the S.D.N.Y.

As such, not only would transferring this action into the AFFF MDL be unprecedented but it would also introduce new issues that would need to be addressed and resolved by the AFFF MDL Court which was already dealing with multiple tracks and phases of litigation for cases with

common features.  These are the exact management and efficiency concerns that led the Panel to clearly define and limit the scope of the AFFF MDL at the outset and thereafter.

The jurisdictional motions in the S.D.N.Y. should be resolved by that court before the Panel or the AFFF MDL Court has to devote any resources to the transfer request.  The Motion to Vacate CTO-180 should therefore be granted.

## II.  **BASF Cannot Demonstrate That This Action is Suitable for the AFFF MDL**

Notwithstanding the lack of subject matter jurisdiction over the New York Action, BASF cannot prove that this insurance coverage action is suitable for the liability-focused AFFF MDL. To find that an action is suitable for transfer into a MDL, the party seeking the transfer must demonstrate: 1) the two actions share sufficient common questions of fact; 2) transfer would be for the convenience of the parties and witnesses; and 3) transfer would advance the just and efficient conduct of the actions. *See*, *e.g.*, *In re Acthar Gel Antitrust Litig.*, 543 F. Supp. 3d 1375, 1376 (J.P.M.L. 2021) (movants bear "the burden of demonstrating that centralization will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation"); *In re Highway Accident Near Rockville, Conn.*, *on Dec. 30, 1972*, 388 F. Supp. 574, 575 (J.P.M.L. 1975) ("Before transfer will be ordered, the Panel must be satisfied that all of the statutory criteria have been met").

BASF cannot show that *any*, let alone *all*, of these three factors favor transfer of the New York Action to the AFFF MDL.  Therefore, the CTO should be vacated.

### A.  **The AFFF MDL and the New York Action Do Not Share Common Questions of Fact**

BASF bears "a heavy burden to show that [the] common questions of fact are sufficiently complex, and that the accompanying discovery will be so time-consuming as to justify transfer under Section 1407." *In re 21st Century Prods., Inc. "Thrilsphere" Contract Litig.*, 448 F. Supp.

271, 273 (J.P.M.L. 1978). To warrant centralization, it is not enough for the proponent to show some "common legal questions and, perhaps, a few factual questions." *In re Pharmacy Benefit Plan Adm'rs Pricing Litig.*, 206 F. Supp.2d 1362, 1363 (J.P.M.L. 2002). Thus, BASF must show that the liability issues entailed in the bodily-injury and property damage claims in the AFFF MDL share sufficient commonality with the contractual issues in the insurance coverage action to warrant a transfer.  BASF simply cannot meet its burden.

This Panel purposefully and deliberately limited the AFFF MDL to certain claims of bodily injury and property damage related to allegations that AFFF contaminated groundwater near certain airports and other industrial locations with PFOS and/or PFOA, and excluded actions related only to PFAS contamination that is unconnected to AFFF use.  *See In Re Aqueous Film-Forming Foams (AFFF) Products Liability Litigation*, 357 F. Supp.3d at 1392-96   By doing so, the Transfer Order demonstrated that the AFFF MDL was a highly specific MDL and would not be accepting claims outside of the limited scope, such as claims involving PFAS chemicals not related to AFFF, or insurance coverage actions. That is because the insurance coverage claims do not share common questions of facts with AFFF bodily injury and property damage claims. Further, this Panel has consistently refused to expand the AFFF MDL beyond its scope and has noted that such improper expansions would impede the entire AFFF MDL's progress. *See* Order Denying Transfer, *In Re: Aqueous Film-Forming Foams ("AFFF") Products Liability Litigation,* Case MDL No. 2873 (J.P.M.L. Dec. 19, 2019), ECF No. 541; Order Denying Transfer, *In Re: Aqueous Film-Forming Foams ("AFFF") Products Liability Litigation,* Case MDL No. 2873 (J.P.M.L. Oct 4, 2023), ECF No. 2129; Order Denying Transfer, *In Re: Aqueous Film-Forming Foams ("AFFF") Products Liability Litigation,* Case MDL No. 2873 (J.P.M.L. Dec. 7, 2023), ECF No. 2217.

13

The insurance coverage issues in dispute in the New York Action involve topics that would impede the MDL's progress and include, but are not limited to: 1) whether an "occurrence" took place within the meaning of the insuring agreements in the policies; 2) whether the insurance policies are "triggered" and if so, when;  3) whether the pollution exclusions and other exclusions apply to the claims at issue; 4) whether notice was timely; 5) whether BASF has rights to coverage under policies issued to its alleged corporate predecessor; 6) whether BASF's alleged defense and indemnity costs will implicate the excess policies at issue; 7) whether coverage is barred by the terms of prior settlement agreements or judgments between certain insurers; 8) the proper method of allocating covered losses, if any, to and between the eleven years of insurance policies and to BASF for periods of time in which it has no coverage and policies were issued by insolvent insurers; and 9) the order in which the insurance policies would respond if coverage is found to exist.  These insurance-specific issues are absent from the AFFF MDL liability cases.

None of the multiple insurance coverage issues in the New York Action involve facts that will be developed in the AFFF MDL, even if those insurance claims arose from the underlying AFFF claims.  This is not a surprise; multiple courts have declined to consolidate insurance claims with underlying claims, even when the claims arose from a common source. *See. e.g., Dante v. Nat'l Flood Ins. Program*, 2013 WL 6157182 (E.D.N.Y. Nov. 22, 2013); *Murray v. Standard Fire Ins. Co.*, 2013 WL 6667340 (E.D.N.Y. Dec. 17, 2013).  Even if there may be some common factual questions, that has been found to be insufficient to warrant transfer and centralization of the insurance coverage action in a MDL. *See*, *e.g.*, *In re: Mortgage Indus. Home Affordable Modification Program (HAMP) Contract Litig.*, 867 F. Supp.2d 1338, 1338 (J.P.M.L. 2012) (denying motion to transfer industry-wide mortgage misconduct cases because circumstances surrounding each loan's history were different and there were "many different non-overlapping

defendants"); *In re: Credit Card Payment Protection Plan Mktg. and Sales Practices Litig.*, 753 F. Supp.2d 1375, 1375 (J.P.M.L. 2010) (denying motion to transfer due to insufficient common questions of fact where "each defendant appears to have offered several different products, which were marketed in different ways and subject to different disclosures").

The Panel itself has consistently denied transfer and centralization of insurance coverage actions, whether as part of a pending "liability" MDL or to establish an "insurance-only" MDL. *See*, *e.g.*, *In re COVID-19 Bus. Interruption Prot. Ins. Litig.*, 482 F. Supp.3d 1360, 1362 (J.P.M.L. 2020) (denying motion to transfer due to lack of a common defendant, minimal potential for shared discovery, and differences in "insurance policies with different coverages, conditions, exclusions, and policy language, purchased by varied businesses in different industries located in different states"); *In re Cincinnati Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*, 492 F. Supp.3d 1347, 1348 (J.P.M.L. 2020) (denying motion to transfer and concluding that "the differences among the many insurers would overwhelm any common factual questions and hinder the transferee court's ability to efficiently manage the litigation"); *In re: The Great West Cas. Co. Ins. Litig.*, 176 F. Supp.3d 1371, 1371 (J.P.M.L. 2016) (denying motion to transfer actions against an insurer because the actions "involve no common factual issues aside from the broad fact that, in each action, a common insurance company has denied coverage of an insurance claim"); *In re Ins. Cos. "Silent" Preferred Provider Org. (PPO) Litig.*, 517 F. Supp.2d 1362, 1363 (J.P.M.L. 2007) (denying motion to transfer because actions were "against different defendant insurance companies and involve[d] different contracts"); *In re Florida, Puerto Rico, and U.S. Virgin Islands 2016 and 2017 Hurricane Seasons Flood Claims Litig.*, 325 F. Supp.3d 1367, 1368 (J.P.M.L. 2018) (denying motion to transfer because "[t]hese actions possess only a superficial factual commonality—all plaintiffs allege that they suffered property damage as a result of one or another of several

15

hurricanes, and that their respective insurance companies breached the terms of plaintiffs' policies by settling plaintiffs' claims for amounts lower than the losses actually sustained").

The Panel should follow its well-reasoned precedents and deny transfer and centralization of this action by vacating CTO-180.

**B. The Transfer of This Action Will Undermine the Management and Efficiency of the AFFF MDL**

This Panel has time and again denied motions to transfer on the basis that the requested transfer would completely undermine the management and efficiency of the target or proposed MDL. It should do the same here.

In *In re COVID-19 Bus. Interruption Prot. Ins. Litig.*, 482 F. Supp.3d 1360 (J.P.M.L. 2020), the Panel noted that the proposed MDL would raise numerous and significant managerial and efficiency concerns:

- establishment of pretrial structures to manage hundreds of plaintiffs (many of whom had disparate views of the litigation) and the more than one hundred insurers.

- the complex task of identifying common insurance policies with identical or sufficiently similar policy language: here, the policies here range over eleven years of coverage, all issued by different insurers to different policyholders and represent a broad range of terms and conditions, exclusions, deductibles, and endorsements).

- overseeing discovery that would be different from insurer to insurer: (the same would be the case here)

As in the *COVID-19* case, these managerial and efficiency concerns would overwhelm the AFFF MDL, leading it to become unmanageable and lose the efficiency that it was designed to provide. *Id*. at 1363. Notably, *In re COVID-19* did not involve insurance policies issued over the course of decades, as the instant case does, but the Panel nonetheless found that the MDL would be overwhelmed by including insurance coverage cases as well as liability cases. The unique discovery and motion practice required as to each insurer in the New York Action outweighs any

efficiencies that might be realized through common discovery and motion practice in the AFFF MDL.

In *In re Hartford COVID-19 Bus. Interruption Prot. Ins. Litig.*, 493 F. Supp.3d 1358 (J.P.M.L. 2020), the Panel likewise rejected centralization, because it concluded that efficiency would be best obtained outside the MDL context. *Id.* at 1361. Much like in *In re COVID-19 Bus. Interruption Prot. Ins. Litig.*, the Panel determined that the establishment of pretrial structures and the difficulty of identifying identical or sufficiently similar policy language between the different policies, *inter alia*, would "not serve the convenience of the parties and witnesses, or further the just and efficient conduct of" the cases because of the significant amount of time it would take to organize the litigation and to resolve the central policy interpretation questions. *Id.* at 1361-62. The same is true here. These issues only further increase the difficulty of efficiently managing the nearly 20,000 plaintiffs, 6,900 actions, and 50 states and territories already within the AFFF MDL.

These efficiency concerns are underscored in the instant case, in which the AFFF MDL Court would be burdened by having to resolve the subject matter jurisdictional questions that are distinct and unique to this insurance coverage action. There is absolutely no efficiency in having the AFFF MDL Court resolve this issue to the exclusion of resolving the thousands of AFFF MDL liability cases before it. Setting aside the jurisdictional issues, in *In re Certain Underwriters at Lloyd's, London, COVID-19 Bus. Interruption Prot. Ins. Litig.*, 492 F. Supp.3d 1355 (J.P.M.L. 2020) (involving corporate Lloyd's syndicates unlike the individual members of historic syndicates here), the Panel denied centralization as to Lloyd's of London because the structure of the London market would complicate pretrial management and likely would expand the MDL to encompass other insurers who participated in this market. *Id.* at 1357–58. The Panel concluded that centralization would not serve the convenience of the parties and witnesses or further the just

and efficient conduct of this litigation.  Although the Panel noted that most of the policies at issue in the Lloyd's actions appeared to use one of two standard forms and would involve the interpretation of some of the same  phrases, the Panel concluded that significant differences among the actions in *In re Certain Underwriters* would hinder the transferee court's ability to efficiently manage the MDL and that these differences were likely to increase as more actions were transferred to the MDL.  *Id.* at 1357.  The New York Action involves 30 different insurers, includes occurrence-based and claims-made coverage, and involves the same type of significant differences that led the Panel in *In re Certain Underwriters* to deny transfer.

The transfer of the New York Action would require the AFFF MDL Court to needlessly devote significant resources to addressing: 1) subject matter jurisdictional issues; 2) BASF's alleged rights to coverage under policies issued to its alleged corporate predecessors, who in turn broke into separate entities, each claiming rights under the policies without a clear line of demarcation of whether BASF "inherited" any rights thereunder; 3) identifying over eleven years of insurance coverage amongst 30 insurers and overseeing discovery that will differ depending on the insurer; and 4) interpreting contract language from the various policies.   This process would take the AFFF MDL Court's time and attention away from the management of the court's current docket and AFFF MDL bellwether scheduling.   Doing so would undermine the efficient management of the AFFF MDL, and counsels against transfer.

**C.   <u>Transferring This Action Will Not Be More Convenient for Any Party or Witness</u>**

Transfer of the New York Action should also be denied because the transfer would not result in greater convenience for any party or potential witness.  Indeed, the only party that is currently in both the New York Action and the AFFF MDL is BASF (which is headquartered in New Jersey, not South Carolina), and BASF itself argues that New York law should be applied to

18

the New York insurance contracts at issue. (*New York Action,* ECF No. 23, pg. 13 (BASF's Cross

Motion) *citing Olin Corp. v. OneBeacon Am. Ins. Co.*, 864 F.3d 130 (2d Cir. 2017)). A New York

court will be better positioned to resolve questions of New York contractual law. In the AFFF

MDL, BASF is facing alleged liabilities related to property damage and bodily injury across the

United States arising out of its predecessors' sale and manufacture of fluorosurfactants. *None* of

the insurer Plaintiffs or defendants is a party to the AFFF MDL Action.  Given the lack of

connection of the insurer Plaintiffs and defendants in the New York Action to the AFFF MDL in

South Carolina, transfer would decrease, rather than increase, convenience for the numerous

insurer defendants.  To the extent there is any overlap in discovery taken in the MDL, it can be

produced to the insurers in the New York Action.  Furthermore, an overwhelming amount of the

historic policies (such as those subscribed to by Plaintiffs) were issued to a New York entity,

negotiated in New York and delivered to BASF's alleged predecessor's headquarters located in

New York.  As such, a New York state court is best suited to handle and resolve the issues in this

insurance coverage action and apply the applicable case law, not the federal court in South

Carolina.

Therefore, transfer should be denied.  *See*, *e.g.*, *In re Proton-Pump Inhibitor Prods. Liab.

Litig.*, 273 F. Supp.3d 1360, 1361-62 (J.P.M.L. 2017) (noting "named defendants vary from action

to action" and "[c]entralization thus appears unlikely to serve the convenience of most, if not all,

defendants and their witnesses"); *In re Ambulatory Pain Pump Chondrolysis Prods. Liab. Litig.*,

709 F. Supp.2d 1375, 1377 (J.P.M.L. 2010) (denying centralization of 102 actions where "[m]ost,

if not all, defendants [were] named in only a minority of actions; and several defendants [were]

named in but a handful of actions"); *In re Table Saw Prods. Liab. Litig.*, 641 F.Supp.2d 1384, 1385

(J.P.M.L. 2009) (denying centralization of 42 actions, where "[n]o defendant [was] sued in all actions, and several entities . . . [were] named in, at most, two or three of them").

Further, BASF (or any other party) cannot claim any prejudice if this action is not transferred.  BASF already has two competing coverage litigations (the South Carolina Action and New Jersey Action).  Most tellingly, in neither case, has BASF applied to transfer its filed lawsuit to the AFFF MDL.  Furthermore, BASF has advocated New York state insurance law should be applied to the contracts at issue.

Finally, no other party to the New York Action will be prejudiced if this Action remains in New York.  A New York federal or state court has ample authority and means to handle the New York Action which involves insurance policies issued in New York and with respect to which BASF itself urges the application of New York law.

## CONCLUSION

For the reasons set forth above, the Panel should vacate CTO-180 and deny the request to transfer and centralize the New York Action with the AFFF MDL.

Dated: April 19, 2024

Respectfully submitted,

**MENDES & MOUNT, LLP**

*/s/ Matthew B. Anderson*
Matthew B. Anderson (MA-9145)
750 Seventh Avenue
New York, New York 10019
T: (212) 261-8000
F: (212) 261-8750
Matthew.anderson@mendes.com
*Attorneys for Plaintiffs*
*Certain Underwriters at Lloyd's, London,*
*and Certain London Market Insurance Companies*

**CLYDE & CO US LLP**

*/s/ Seth M. Jaffe*
Seth M. Jaffe
30 S. Wacker Dr., Suite 2600
Chicago, IL 60606-7512
Telephone: (312) 635-7000
seth.jaffe@clydeco.us
*Counsel for Defendant Coliseum Reinsurance Company, as successor by merger to AXA Insurance Company, formerly known as Colonia Insurance Company, a New York Corporation*

**ALSTON & BIRD LLP**

*/s/ Elizabeth A. Buckel*
Elizabeth A. Buckel
90 Park Avenue, 15th Floor
New York, NY 10016
T: (212) 210-9400
F: (212) 210-9444
elizabeth.buckel@alston.com
*Attorney for Defendants AIU Insurance Company, Granite State Insurance Company, Insurance Company of the State of Pennsylvania, Lexington Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA*

**KENNEDYS LAW LLP**

*/s/ Benjamin A. Blume*
Benjamin A. Blume
Benjamin.blume@kennedyslaw.com
30 South Wacker Drive
Suite 3650
Chicago, Illinois 60606
T: (312) 800-5021
F: (312) 207-2110
*Attorney for Defendants Westport Insurance Company as successor-in-interest to Puritan Insurance Company f/k/a Manhattan Fire & Marine Insurance Company*

21

**WINDELS MARX LANE & MITTENDORF, LLP**

*/s/ Stefano V. Calogero*
Stefano V. Calogero (SC-0611)
One Giralda Farms
Madison, New Jersey 07940
T: (973) 966-3205
F: (973) 966-3250
scalogero@windelsmarx.com
*Attorney for Defendant Allstate Insurance Company, solely as successor in interest to Northbrook Excess & Surplus Insurance Company, formerly Northbrook Insurance Company*

**MURPHY & GRANTLAND, P.A.**

*/s/ Thomas McBratney*
J. Thomas McBratney III
Murphy & Grantland, P.A.
Post Office Box 6648
Columbia, SC 29260
T: (803) 454-1250
F: (803) 782-4140
tmcbratney@murphygrantland.com
*Attorneys for Defendants Everest Reinsurance Company (f/k/a Prudential Reinsurance Company) and TIG Insurance Company, as successor-in-interest by merger to Mt. McKinley Insurance Company (f/k/a Gibraltar Casualty Company)*

**RIVKIN RADLER LLP**

*/s/Anne M. Murray*
Anne M. Murray
Rivkin Radler LLP
926 RXR Plaza
Uniondale, NY 11556
T: (516) 357-3108
F: (516) 357-3333
anne.murray@rivkin.com
*Attorneys for Defendants*
*Allianz Versicherungs-AG*
*Interstate Fire & Casualty Company*

*Fireman's Fund Insurance Company, incorrectly sued herein as Allianz Global Risks US Insurance Company*

**WHITE AND WILLIAMS LLP**

*/s/ Robert F. Walsh*
Robert F. Walsh
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103
T: (215) 864-7045
F: (215) 399-9618
walshr@whiteandwilliams.com
*Attorneys for Defendants Insurance Company of North America, Oakwood Insurance Company, as successor to Central National Insurance Company of Omaha (named herein as Central National Insurance Company of Omaha), and ACE American Insurance Company*

**GOLDBERG SEGALLA LLP**

*/s/ Michael T. Glascott*
Michael T. Glascott
665 Main Street, Suite 200
Buffalo, N.Y. 14203-1425
T: (716) 566-5400
F: (716) 566-5401
mglascott@goldbergsegalla.com
*Attorneys for Defendant National Casualty Insurance Company*

**KARBAL, COHEN, ECONOMOU, SILK & DUNNE LLC**

*/s/ Wayne S. Karbal*
Wayne S. Karbal, Esq.
200 S. Wacker Drive
Suite 2550
Chicago, IL 60606
312-431-3610
wkarbal@karballaw.com
*Attorneys for Defendants Insurers First State Insurance Company; New England Reinsurance Corporation, Twin City Insurance Company*

23