**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: Aqueous Film-Forming Foams (AFFF) Products Liability Litigation | MDL No. 2873<br>This Document Relates To:<br><br>*State of Maine v. 3M Company, et al.*,<br>No. 2:23-cv-00210-JAW<br><br>*State of Maine v. 3M Company, et al.*,<br>No. 2:25-cv-00453-JAW |

**BRIEF IN OPPOSITION TO MOTION TO VACATE
CONDITIONAL TRANSFER ORDER (CTO-293)**

The Panel should deny the State of Maine's motion to vacate the Conditional Transfer Order (CTO-293). This case is one of two "almost-identical" suits that Maine filed on the same day in March 2023 against 3M Company. *Maine v. 3M Co., Inc.*, 159 F.4th 129, 130 (1st Cir. 2025). Both allege that 3M's production of per- or polyfluoroalkyl substances ("PFAS") contaminated the same statewide natural resources, and both assert the same causes of action. Despite this overlap, Maine has sought to litigate the cases separately. One action seeks recovery for alleged PFAS contamination arising in whole or part from AFFF; that case is already proceeding in the *In Re: AFFF Products Liability Litigation* MDL, alongside dozens of other cases alleging PFAS contamination in Maine. *See* Ex. 1, Am. Compl. in *Maine v. 3M Co.*, No. 2:23-cv-02573-RMG (D.S.C.) ("AFFF Compl."). In this case, by contrast, Maine purported to disclaim recovery for alleged PFAS contamination arising in whole or part from AFFF.

The Panel should transfer this case to be managed together with its counterpart in the MDL. Panel precedent makes clear that transfer is warranted when a state's "attempt to separate [its] non-AFFF and AFFF claims is untenable." Transfer Order at 3, ECF No. 1020 (J.P.M.L. June 7, 2021) (transferring Michigan's purported "non-AFFF" case). As the First Circuit has now confirmed,

Maine's case-splitting tactics are plainly untenable.

In reversing the remand of this case, the First Circuit held not only that this case belongs in federal court, but also that Maine's "efforts to have two courts answer the same questions must fail." *Maine*, 159 F.4th at 131. It explained that even in this ostensibly "non-AFFF" case, 3M is entitled to demonstrate—as a predicate to its federal contractor defense—that the PFAS contamination alleged by Maine "has commingled with AFFF contamination and so was caused largely or in part by AFFF." *Id.* at 131, 138–39. A federal court must then "adjudicate the scope of [3M's] federal contractor defense for the allegedly commingled PFAS." *Id.* at 139–40. So, regardless of Maine's purported disclaimer, the parties must investigate and a (federal) factfinder must determine "whether and to what extent" AFFF contributed to any alleged PFAS contamination at any given site in Maine. *Id*. Because these exact questions will be investigated and answered *in the MDL*—by fact and expert discovery relating to alleged AFFF contamination—it is untenable and inefficient to simultaneously investigate and answer them in a second federal forum.

In a futile attempt to resurrect the purported disclaimer the First Circuit rejected and avoid transfer, Maine has now repeatedly sought to excise from this case certain sites with potential AFFF contamination—many of which it had previously expressly identified as *included* in this case. But disclaiming a site does not end the necessary inquiry into the scope and extent of AFFF contamination "at or from" that site, including its impact on other sites and natural resources throughout the State. No number of site-specific disclaimers can obviate the need, recognized by the First Circuit, for the court and parties to address the scope and extent of AFFF contamination across the State—as to *all* natural resources and *all* alleged PFAS sites. In that sense, Maine's serial disclaimers only underscore the necessity of transfer.

What's more, Maine's site-by-site game of whack-a-mole is already making for inefficient litigation. Maine itself is struggling to determine which sites of alleged PFAS contamination it thinks belong in which of its supposedly separate statewide lawsuits, having recently proposed two amendments to the operative complaint in as many months. That should come as no surprise: Maine admitted at oral argument in the First Circuit that it is "inevitable in . . . a case with 900 sites that there's going to be an oops," Ex. 2, 1st Cir. Oral Arg. Hr'g Tr., at 21–22 (Oct. 6, 2025)— that is, that Maine will continue to discover that the alleged contamination at a site for which it is seeking recovery in its "non-AFFF" case is, in fact, attributable in whole or in part to AFFF. Maine asks for permission to proceed in this fashion indefinitely, shifting its claims and the necessary discovery at its sole discretion from one case to the other. That approach guarantees the exact inefficiencies and litigation disorder that Section 1407 was designed to address.

Maine's demonstrated inability to separate its non-AFFF and AFFF claims alone warrants transfer. But Maine's discovery responses provide an independent reason to deny the State's motion. Even if the Panel credits Maine's belated efforts to disclaim recovery for contamination "at or from" 21 specific sites with links to AFFF[1] (which it should not), Maine would not come close to eliminating the overlap between this action and the MDL. To wit, Maine is *still* seeking to recover for alleged contamination of at least 12 drinking water systems and two other sites already at issue in the MDL in actions brought by individual plaintiffs and local governments.

Faced with these clear bases for transfer, Maine resorts to mischaracterizations despite Judge Lynch having already asked for "greater candor from the State of Maine." Ex. 2 at 17. Maine mischaracterizes the First Circuit's decision as a narrow holding concerned only with federal

---

[1] Although Maine's motion refers to seven disclaimed sites, as explained below, it subsequently filed two additional supplemental disclaimers purporting to exclude 14 other sites for a grand total of 21 disclaimed sites.

jurisdiction while glossing over the court's clear guidance that the State's two PFAS cases belong in the same court and the court's recognition that both cases require analysis of the scope and extent of AFFF contamination at each site. Maine mischaracterizes 3M's grounds for seeking transfer as revolving around a handful of specific sites of plausible AFFF commingling, rather than the shared questions at the heart of both statewide PFAS cases. Maine mischaracterizes the degree of overlap between this case and cases already in the MDL. And Maine mischaracterizes the progress of discovery in the MDL to distract from the obvious efficiency gains of transfer.

The Panel should not reward Maine's transparent forum manipulation. This case hinges on factual and legal questions that are already being addressed by the MDL court. Transfer is therefore necessary to achieve a just and efficient resolution of this litigation.

## BACKGROUND

Maine brought this action in March 2023, alleging that Defendants are responsible for PFAS contamination "throughout Maine" and demanding damages for injuries to the State's "groundwater, surface waters, drinking water supplies, biota, wildlife, including fish, and their associated soils, sediments, and uses, and other State natural resources and property." *See, e.g.*, Ex. 3, Compl. ¶¶ 1, 5, 20–21, 66–77, 133; *id.* at p. 87 (Prayer for Relief ¶ A) ("Compl."). Maine's "almost-identical" AFFF suit is also based on alleged PFAS contamination of the same natural resources "throughout Maine." *Maine*, 159 F.4th at 130; *see* AFFF Compl. ¶ 206. It asserts many of the same causes of action, *id.* ¶¶ 357–428, and requests the same relief, including damages for injuries to the State's "groundwater, surface waters, drinking water supplies, biota, wildlife, including fish, and their associated soils, sediments, and uses, and other State natural resources and property," *id.* at p. 103 (Prayer for Relief ¶ A). The two complaints differ only in their treatment of AFFF: This action purported to disclaim recovery for alleged contamination from

AFFF while the action in the MDL seeks relief for that alleged source of contamination.

3M removed Maine's AFFF action to federal court, asserting the government contractor defense because of 3M's manufacture of AFFF for the federal government. Without opposition from Maine, that case was transferred to the MDL. *Maine*, 159 F.4th at 131 & n.2.

3M similarly removed this action to federal court. The district court granted Maine's remand motion, *see State of Maine v. 3M Co.*, No. 2:23-cv-00210-JAW, 2023 WL 4758816, at *1 (D. Me. July 26, 2023), and 3M appealed to the First Circuit. On September 8, 2025, while that appeal was pending, 3M removed the case a second time, prompted by Maine's service of interrogatory responses that identified at least one public water system linked to alleged MilSpec AFFF contamination. *See* Ex. 4, Notice of Removal at 2, No. 2:25-cv-00453-JAW, ECF No. 1 (D. Me.) ("Second NOR"). On September 24, 2025, 3M supplemented its second notice of removal after its preliminary investigation into the sites listed in Maine's interrogatory responses revealed six additional locations at which the alleged PFAS contamination was plausibly attributable, at least in part, to MilSpec AFFF. *See* Ex. 5, Suppl. Notice of Removal at 6–7, No. 2:25-cv-00453-JAW, ECF No. 32 ("Supplemental NOR").

On November 19, 2025, the First Circuit reversed the district court's remand order. Rejecting Maine's purported AFFF disclaimer, the First Circuit held that this so-called "non-AFFF" case will nonetheless "require a court to determine whether the source of any PFAS contamination at a given site can be attributed to AFFF." *Maine*, 159 F.4th at 139. Making that determination "requires addressing whether and to what extent [PFAS] contamination from AFFF sources has commingled with non-AFFF." *Id*. at 138–39. And "two courts," the First Circuit explained, should not "answer the[se] same questions." *Id*. at 131. Accordingly, the First Circuit directed "the district court [to] resume jurisdiction over the case," and recognized that "should the Judicial Panel on

5

Multidistrict Litigation choose to transfer this case, including to [the MDL], then further proceedings would occur in the transferee court." *Id*. at 140–41.

Despite the First Circuit's clear rejection of its overarching AFFF disclaimer, the State has now sought to disclaim one-by-one any AFFF-linked site alleged in its complaint or identified in its interrogatory responses. The day after the First Circuit's decision, the State served a second set of "supplemental" responses to 3M's interrogatories and produced a new "Claimed Site List." These responses purported to delist the seven AFFF sites 3M had identified in its second and supplemental notices of removal. On December 5, 2025, Maine filed a "Supplemental Disclaimer" purporting to disclaim relief for "contamination at or from any of the seven sites" in the second and supplemental notices of removal. ECF No. 4217-6 at 2. Days later, on December 9, 2025, Maine sought leave to amend its complaint, seeking, among other things, to remove references to the now purportedly disclaimed Juniper Ridge Landfill (which is one of just a handful of sites that the State specifically identified in its original and still operative complaint) and to append a series of site-specific disclaimers of any recovery for contamination "at or from" the seven disclaimed sites. ECF No. 4127-10.

The attempted supplemental disclaimers did not stop there. On January 21, 2026, Maine filed a second supplemental disclaimer purporting to disclaim an additional nine sites at issue in pending MDL cases. ECF No. 4127-7. Within days, Maine filed a third supplemental disclaimer of five more sites and—as an attachment to its reply brief in support of its motion to amend its complaint—a second version of its proposed amended complaint. That complaint tacked on the 14 recent site-specific disclaimers and sought, among other things, to remove references to the now purportedly disclaimed Kennebunk, Kennebunkport & Wells Water District—the sole site in the operative complaint where the State alleged excessive levels of a specific type of PFAS that 3M

6

allegedly exclusively manufactured and therefore the centerpiece of the State's successful opposition to 3M's motion to dismiss on injury and causation. *See* Ex. 6, Third Suppl. Disclaimer, No. 2:25-cv-00453-JAW, ECF No. 76. Maine's efforts also have been accompanied by seriatim amended discovery responses. As of this filing, the district court has not yet ruled on Maine's proposed amendments, which 3M has opposed as futile gamesmanship.

Consistent with the First Circuit's decision, 3M filed a notice of potential tag-along action with the Panel and moved to stay proceedings in the District of Maine pending the Panel's transfer decision. *See* Ex. 7, Motion to Stay, No 2:25-cv-0453-JAW, ECF No. 50. The stay motion remains pending. On December 17, 2025, the Clerk of the Panel entered a conditional transfer order, which Maine now seeks to vacate. ECF No. 4066.

## ARGUMENT

### I.    Transfer Is Appropriate Because Maine's Attempt to Separate Its "AFFF" and "Non-AFFF" Claims Has Become Untenable.

This case should be litigated in the MDL alongside Maine's almost-identical AFFF case. The Panel's prior precedents make clear that a case should be transferred when a state's effort to separate its AFFF and non-AFFF claims has become "untenable." Transfer Order at 3, ECF No. 1020. That time has now come. In reversing remand and rejecting Maine's purported disclaimer, the First Circuit credited 3M's allegations that PFAS contamination from AFFF "has commingled with and so has become in[di]visible with the PFAS contamination in natural resources and property which are broadly alleged in Maine's statewide non-AFFF Complaint." *Maine*, 159 F.4th at 138. The discovery and adjudication necessary to determine the scope and extent of AFFF contamination throughout Maine, and its impact on the recovery the State seeks in this case, will take years—and that process is underway in the MDL.

Maine mistakes 3M's basis for seeking transfer, asserting that transfer should be denied

7

because "Maine's complaint does not raise AFFF on its face." Pl.'s Br. in Supp. of Mot. to Vacate CTO at 1, ECF No. 4127-1 ("Pl. Br."). If that were sufficient to avoid transfer, Maine would not feel compelled to try to serially disclaim every AFFF site either it or 3M has identified so far. *Id.* at 1, 13. Even so, Maine's purported disclaimers cannot change the fact that both of its cases require determining whether and to what extent AFFF contributed to any alleged PFAS contamination at any given site in Maine. Transfer is necessary so that one court—not two—will evaluate and answer those questions.

### A.     As the First Circuit Has Held, "Maine's Efforts to Have Two Courts Answer the Same Questions Must Fail."

As the First Circuit made clear, Maine's claims in both of its "almost-identical" cases encompass alleged PFAS contamination throughout the state that plausibly derives at least in part from AFFF, making it untenable to divide the suits. *Maine*, 159 F.4th at 130. In both cases, 3M is entitled to raise a federal contractor defense as to certain alleged PFAS contamination contributed to by AFFF. So unless this case is transferred, there will be "two courts" deciding "the same questions": namely, "whether and to what extent [PFAS] contamination from AFFF sources has commingled with non-AFFF." *Id.* at 131, 139–40.

Recognizing this, Maine conceded in the First Circuit that even this "non-AFFF" case "will require a court to determine whether the source of *any* PFAS contamination at a given site can be attributed to AFFF." *Id.* at 139 & n.22. Although Maine tried to distinguish between questions of "attribution" (i.e., whether any PFAS contamination at a given site stems in part from AFFF) and "allocation" (i.e., the precise *level* of AFFF contamination), the First Circuit rejected the distinction, explaining that "the determination of whether the PFAS contamination at a site is zero percent or some amount more than zero percent attributable to AFFF is itself a source allocation determination." *Id.* at 139 n.22. While the First Circuit made its observations in the context of

discussing federal jurisdiction, its reasoning—which goes largely unmentioned by Maine—applies with equal force to whether Maine can pursue its overlapping claims in two separate federal actions. That effort "must fail." *Id*. at 131.

Maine's own allegations demonstrate the substantial overlap between its two cases. Maine alleges in its purported AFFF case that "[t]he normal and foreseeable use of AFFF, including on military bases and by fire departments, has contaminated surface and groundwater, sediment, soils, and aquatic and other wildlife." AFFF Compl. ¶ 75. Maine alleges in this case the ubiquitous movement of PFAS throughout the State. *See* Compl. ¶¶ 38, 157, 251 (alleging migration of PFAS over long distances through soil and groundwater); *id*. ¶ 39 (alleging transport of PFAS through air); *id*. ¶ 252 (alleging that PFAS contamination continues and can cause new contamination in new locations). Yet, as multiple courts have recognized, PFAS from AFFF are chemically indistinguishable from PFAS from other sources, and they commingle inseparably in the environment. *See Maryland v. 3M Co.*, 130 F.4th 380, 390 (4th Cir. 2025). Maine's allegations thus demonstrate that AFFF contamination across Maine is necessarily at issue in this case, just as it is in Maine's AFFF case pending in the MDL.

For that reason, managing both cases in the MDL will "eliminate duplicative discovery; prevent inconsistent pretrial rulings (including with respect to discovery, privilege, and *Daubert* motion practice); and conserve the resources of the parties, their counsel, and the judiciary." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018); *see also* Transfer Order at 3, ECF No. 1020 (Michigan); Transfer Order at 3, ECF No. 1927 (J.P.M.L. June 5, 2023) (Illinois); Transfer Order at 3, ECF No. 4061 (J.P.M.L. Dec. 11, 2025) (Oklahoma). As the First Circuit anticipated, *see* 159 F.4th at 140–41, the MDL court is best suited to coordinate discovery and make any pretrial rulings regarding the sources and impact of PFAS

from AFFF.

**B.    Maine's Attempted Site-Specific Disclaimers Show How Untenable the State's Maintenance of Purportedly Separate Actions Has Become.**

As explained, Maine's serial (and increasingly desperate) efforts to disclaim sites where the alleged contamination is plausibly attributable to AFFF do not eliminate the need for discovery into the scope and extent of PFAS contamination from AFFF at any given site throughout Maine.

To date, Maine has attempted to disclaim 21 sites it *now* believes are contaminated with AFFF. *See supra.* But because of 3M's federal contractor defense, this case will still require investigating and deciding whether any alleged PFAS contamination for which the State seeks to recover stems in part from MilSpec AFFF. *Maine*, 159 F.4th at 139–40. Maine's own allegations about the wide-ranging transport of PFAS and its impact on natural resources throughout the State confirm as much. Maine itself, moreover, has conceded that "its case will require a court to determine whether the *source* of any PFAS contamination at a given site can be attributed to AFFF." *Id.* at 139 (emphasis added). Despite the State's supplemental disclaimers, the court overseeing this case will thus need to assess the scope and extent of AFFF contamination "at or from" *any* PFAS site in Maine (including purportedly disclaimed sites), any further migration of PFAS from such sites, and any transport of wastes containing PFAS to other locations and into other resources throughout the State.

Indeed, Maine's attempted supplemental disclaimers reveal their own futility. For instance, although Maine now purports to disclaim recovery for the Kennebec Water District in this suit, it continues to pursue claims for alleged PFAS contamination of China Lake. *See* ECF No. 4127-7 at 2. But China Lake is the "drinking water supply" that the Kennebec Water District alleges in its MDL complaint is contaminated with PFAS from AFFF. *See* Ex. 8 ¶ 11. Similarly, Maine now purports to disclaim the Sanford Water District but it continues to pursue claims for PFAS

contamination of the Mousam River, *see* ECF No. 4127-7 at 2, which the Sanford Sewerage District alleges is contaminated with PFAS from AFFF in its wastewater, *see* Ex. 9 ¶ 10. In other words, try as it might, Maine cannot avoid the substantial overlap between its two statewide PFAS cases.[2]

In any event, Maine is wrong that it "has expressly excluded from the case" the purportedly disclaimed sites. *See* Pl. Br. at 13. Maine has only *moved* to amend its complaint to disavow recovery for those sites, a motion 3M opposed and the court has not yet decided. [3]

C.     **Panel Precedent Supports Transfer.**

Although the State claims that the Panel has rejected transfer in similar cases, recent transfer orders show just the opposite. This Panel has transferred purported "non-AFFF" actions

---

[2] Just as Maine claims to be investigating sites to determine how alleged AFFF contamination has affected its natural resources, 3M (like all Defendants) is entitled to investigate sources of alleged AFFF contamination and whether and how that alleged AFFF contamination impacts the recovery Maine seeks in this case. And there is good reason to believe that additional sites of AFFF commingling will continue to emerge as discovery progresses, given that "state records and news accounts describe AFFF's presence and use in the state as pervasive and widely geographically dispersed." *See* Defs. EIDP, Inc., The Chemours Company, The Chemours Company FC, LLC, Corteva, Inc., and DuPont de Nemours, Inc.'s Br. in Opp'n. to Pl.'s Mot. to Amend Compl. at 3, No. 2:25-cv-00453-JAW, ECF No. 69 at 3 (D. Me.).

[3] Maine argues that merely filing its motion to amend is sufficient. Pl. Br. at 13 (citing ECF Nos. 3260, 4062). The orders on which Maine relies are inapposite. Those orders involved an unopposed motion to the filing of a one-time amended complaint to remove a "few passing references to 'Class B foam'" by an individual plaintiff who claimed that the sole cause of her decedent's injuries was exposures to PFAS-containing turnout gear. ECF No. 3260 at 3. By contrast, the State's motion to amend here (i) is opposed, (ii) tacks on 21 site-specific disclaimers to try to prop up the original disclaimer rejected by the First Circuit, (iii) presupposes recurrent future amendments, as other AFFF-related sites are inevitably and continuously identified, (iv) is being used as a tool to expand the State's claims *already in the MDL*, and (v) essentially admits that the complaint, in its present form, includes claims for sites at which AFFF has been identified. As the Fourth Circuit recently explained in rejecting a state's "last-ditch effort" to disclaim certain categories of recovery to try to remain in its preferred forum, a party cannot "amend [its] complaint" or "effect a mid-litigation disclaimer" "on the fly." *West Virginia ex rel. Hunt v. CaremarkPCS Health, L.L.C.*, 140 F.4th 188, 196 (4th Cir. 2025). The operative complaint here contains two plausibly AFFF-impacted sites and no site-specific disclaimers.

brought by states where their multi-suit strategy became "untenable," Transfer Order at 3, ECF No. 1020, or where refusing transfer would result in "overlapping discovery and duplicative trial proceedings," Transfer Order at 3, ECF No. 1927. For example, this Panel transferred a purported non-AFFF action brought by Michigan where the State's two cases would "involve common discovery relating to the same contaminated groundwater," such that "declining to transfer" the action would have "result[ed] in duplicative discovery and pretrial proceedings." Transfer Order at 4, ECF No. 1020; *see also id.* (further explaining that the Panel has "rejected" attempts by plaintiffs to "split . . . claims into AFFF and non-AFFF complaints and thereby maintain an action outside the MDL").

Maine invokes New Hampshire's case that the Panel declined to transfer, but the analogy is inapt. *See* Pl. Br. at 14 (citing ECF No. 1511). Unlike in *New Hampshire*, a federal court of appeals has already recognized that questions about the scope and extent of AFFF commingling are unavoidable at any given site in Maine's AFFF and non-AFFF cases. *Maine*, 159 F.4th at 131. Indeed, Maine admitted at oral argument that it "inevitabl[y]" overlooked AFFF commingling at sites for which it seeks recovery in this case and is now planning to simply disclaim (or not) potential AFFF sites at its sole discretion, one by one as it discovers them. Ex. 2 at 20–22. All of this demonstrates why it is "untenable" for Maine to maintain two separate actions. Transfer Order at 3, ECF No. 1020.[4]

In short, resolution of this action requires discovery and consideration of the same facts to answer the "same questions" about AFFF contamination at issue in Maine's MDL case. *Maine*,

---

[4] Moreover, as discussed below, Maine is still seeking recovery from more than a dozen sites already at issue in the MDL. That on its own distinguishes *New Hampshire*, which the Panel found unsuitable for transfer because, based on the limited record in that case at the time, it appeared to have "identified different contamination sites" from those in the MDL. Order Vacating CTO at 2, ECF No. 1511 (J.P.M.L. Aug. 3, 2022).

159 F.4th at 131. The Panel should therefore deny Maine's motion to vacate the CTO and transfer this action to the MDL, so that the MDL court can efficiently oversee the relevant discovery and resolve those questions.

## II.    Even Crediting Maine's Purported Disclaimers, the Continuing Overlap with Multiple Other Actions Pending in the MDL Is Sufficient for Transfer.

Transfer is warranted for an additional, independent reason: Maine's ever-shifting supplemental interrogatory responses have revealed that—notwithstanding its attempts to disclaim 21 specific sites to date—Maine in fact continues to pursue recovery for alleged PFAS contamination of at least 14 other sites at issue in cases pending in the MDL, including cases in which individual plaintiffs have alleged that consuming water from those sites exposed them to AFFF-related contamination. This is so despite Maine's assurances that "there is no overlap because of the State's recent actions to expressly exclude any sites at issue in the MDL from the case," and "all that can be done to eliminate any overlap with the MDL, the State has done." Pl. Br. at 15, 17. Additional comprehensive discovery will be necessary to evaluate the full scope and extent of the impact of AFFF on each drinking water system, and on other sites and related natural resources, at issue in this case and in Maine's case now pending in the AFFF MDL.

### A.    Maine Still Seeks to Recover in this Case for Alleged PFAS Contamination from at Least 14 Water Systems and Resources at Issue in the MDL.

Even crediting Maine's purported site-specific disclaimers to date (which the Panel should not), Maine's supplemental interrogatory responses demonstrate that it *still* seeks to recover for alleged PFAS contamination impacting no fewer than 14 water systems and their associated sources of drinking water and other resources already at issue in the MDL.

To begin, 23 personal injury plaintiffs in the MDL have alleged that consuming water from at least 12 of the public water systems for which Maine is still expressly seeking recovery in this

13

action exposed them to AFFF-related contamination[5]:

| Maine Claimed Public Water System | MDL case(s) involving alleged exposure to AFFF from a Maine Claimed Public Water System |
|---|---|
| Calais Water Department | • *Aldamuy v. 3M Co.*, No. 2:25-cv-11800-RMG ███ |
| Cold Spring Water Company | • *Kirkland v. 3M Co.*, No. 2:25-cv-11988-RMG ███<br>███ |
| Dexter Utility District | • *Abner vs. 3M Co.*, No. 2:25-cv-11443-RMG ███<br>• *Amaral v. 3M Co.*, No. 2:25-cv-11478-RMG ███<br>• *Best v. 3M Co.*, No. 2:25-cv-11231-RMG ███ |
| Gray Water District | • *Johnson v. 3M Co.*, No. 2:25-cv-05904-RMG ███<br>███ |
| Greater Augusta Utility District | • *Abernathy v. 3M Co.*, No. 2:25-cv-11875-RMG ███<br>███<br>• *Bowie v. 3M Co.*, No. 2:25-cv-04550-RMG ███<br>• *Hanna v. 3M Co.*, No. 2:23-cv-04527-RMG ███<br>• *Ande v. 3M Co.*, No. 2:25-cv-10293-RMG ███<br>• *Huhn v. 3M Co.*, No. 2:25-cv-01045-RMG ███<br>• *Penninger v. 3M Co.*, No. 2:25-cv-11183-RMG ███<br>███<br>• *Rios v. 3M Co.*, No. 2:23-cv-04617-RMG ███ |
| Guilford-Sangerville Water District | • *Earl v. Arkema, Inc.*, 2:24-cv-04324-RMG ███ |
| Hallowell Water District | • *Moore v. 3M Co.*, 2:26-cv-00076-RMG ███ |
| Harrison Water District | • *Willis v. 3M Co.*, No. 2:25-cv-08671-RMG ███ |
| Lisbon Water District | • *Day v. 3M Co.*, No. 2:24-cv-04292-RMG ███<br>• *Krueger v. 3M Co.*, No. 2:24-cv-05671-RMG ███<br>███<br>• *Wilson-Zeigler v. 3M Co.*, No. 2:25-cv-08819-RMG<br>███ |
| Maine Water Company Skowhegan Division | • *Athanas v. 3M Co.*, No. 2:25-cv-12400-RMG ███<br>• *DeGonza v. 3M Co.*, No. 2:25-CV-13623-RMG ███<br>███<br>• *Hanna v. 3M Co.*, No. 2:23-cv-04527-RMG ███ |
| Newport Water District | • *Walker v. 3M Co.*, No. 2:25-cv-11308-RMG ███ |
| Yarmouth Water District | • *Johnson v. 3M Co.*, No. 2:25-cv-05904-RMG ███<br>███<br>• *Rich v. 3M Co.*, No. 2:21-cv-01333-RMG ███ |

---

[5] Plaintiff Fact Sheets and Profile Forms asserting such exposure are attached collectively as Exhibit 10. Certain plaintiffs' submissions in Exhibit 10 contain incorrect or outdated case names/numbers (plaintiffs ███, ███, and ███). The table reflects the plaintiffs' case information as currently identified on the MDL Court's docket.

In addition to these 12 public water systems, Maine is also still seeking recovery involving at least two other sites and resources already at issue in MDL cases brought by local governments:

| Maine Claimed Site | MDL cases[6] involving alleged AFFF contamination of a Maine Claimed Site |
|---|---|
| China Lake | *Kennebec Water District v. 3M. Co.*, No. 2:22-cv-04164-RMG (identifying China Lake as the source of "100% of Plaintiff's delivered drinking water" in a case asserting PFAS contamination of plaintiff's drinking water by AFFF sources) |
| Mousam River | *Sanford Sewerage District v. 3M Co.*, No. 2:25-cv-01310-RMG (alleging that plaintiff discharges effluent contaminated with PFAS from AFFF into the Mousam River) |

In short, even after repeatedly and belatedly attempting to carve out 21 sites from the scope of this action, Maine's own discovery responses show that it is *still* pursuing recovery with respect to at least 14 water systems and natural resources that are already at issue in the MDL.

**B.      The Overlap in Maine's Cases Confirm the Propriety of Transfer.**

Under clear Panel precedent, this overlap is "sufficient" to uphold transfer. Transfer Order at 3, ECF No. 3536 (J.P.M.L. June 2, 2025). In *Savannah*, the plaintiff municipality alleged that "its drinking water supply ha[d] been contaminated by PFAS" from various industrial sources, and "explicitly disavow[ed]" AFFF-related claims. *Id.* at 2. 3M sought transfer because (among other reasons) Savannah's water supply was already at issue in an MDL case. *See id.* at 1. In opposing transfer, Savannah argued that the only potential overlap with the MDL concerned "a single personal injury action" with minimal connection to Savannah, and which named different defendants. *Id.* at 3. The Panel rejected those arguments, finding it "sufficient" that Savannah's case "involve[d] the same water supply already at issue in the MDL." *Id.*

Similarly, in *Opelika*, the plaintiff municipality alleged that "its drinking water supply ha[d] been contaminated by PFAS stemming from various chemical and industrial facilities and

---

[6] The complaints for each action are attached as Exhibit 8 (*Kennebec*) and Exhibit 9 (*Sanford*).

landfills." Transfer Order at 1, ECF No. 3869 (J.P.M.L. Oct. 9, 2025). Like the plaintiff in *Savannah*, Opelika "explicitly disavow[ed] claims relating to AFFF use or disposal." *Id.* 3M moved to transfer because Opelika's water supply was already at issue in a personal injury action in the MDL, where the plaintiff claimed she was exposed to AFFF by drinking water at her residence in Opelika. *Id.* Opelika argued that its action was "overwhelmingly focused on the use and discharge of *non-AFFF* PFAS in industrial manufacturing" and that any overlap between the cases could be addressed through "informal coordination." *Id.* at 2 (emphasis added; internal quotations omitted). The Panel disagreed, reaffirming *Savannah* and concluding that because "*City of Opelika* and the MDL involve the same water sources," they were "sufficiently intertwined," necessitating transfer "to avoid duplicative discovery and pretrial proceedings." *Id.* (internal quotations omitted).

The Panel has relied on similar overlap in transferring the statewide "non-AFFF" cases brought by Illinois, Michigan, and Oklahoma. In *Illinois*, for example, transfer was warranted where the state sought recovery related to three community water systems that were already the subject of MDL cases brought by the municipalities that owned those systems. Transfer Order at 2–3, ECF No. 1927. Although Illinois disputed the municipalities' claimed connections to AFFF, the Panel found it "sufficient that multiple [community water system] complaints in the MDL involve[d] the same water sources" at issue in the state's case. *Id.* at 3. Michigan and Oklahoma's purported non-AFFF actions were likewise transferred because of "overlap with actions pending in the MDL." Transfer Order at 3–4, ECF No. 1020; Transfer Order at 3, ECF No. 4061 (explaining that the Panel "has transferred several other actions brought by States that overlap with other actions brought by the State or its municipalities pending in the MDL").

The same result should follow in this case, which involves at least 12 public water systems

and two other sites allegedly contaminated by AFFF that are already at issue in the MDL. Given this overlap, Maine's claims are "sufficiently intertwined" with cases in the MDL, such that "transfer [is] necessary to avoid duplicative discovery and pretrial proceedings." Transfer Order at 1, ECF No. 3869 (internal quotations omitted).

### C.      Maine's Counterarguments Are Unpersuasive.

Perhaps anticipating that the parties will continue to discover overlapping sites, Maine invents a "*de minimis*" exception under which a relatively small number of overlapping sites does not warrant transfer. *See* Pl. Br. at 17. This so-called exception has no foundation in the Panel's prior orders, which indicate that the opposite is true. In Michigan's non-AFFF case, for example, only one out of the over 100 "PFAS" sites that the state had identified, *see* Exhibit 4 to Mot. to Transfer, ECF No. 930-7 (Mar. 12, 2021), was already at issue in the MDL, and only four of those sites involved AFFF—yet the Panel nonetheless transferred the case. Transfer Order, ECF No. 1020. The Panel rejected a similar argument in transferring Wisconsin's statewide PFAS case, notwithstanding the state's protests that AFFF formed only a minor part of its claims and that transfer would "let the 'tail wag the dog.'" Br. in Supp. of Mot. to Vacate CTO, ECF 1550-1 at 8 (Aug. 25, 2025). Regardless, the overlap here is easily more than "*de minimis*." The 14 overlapping sites discussed above are more than the number of overlapping sites in the Michigan, Illinois, and Oklahoma cases combined. And these are just the overlapping sites that the limited amount of initial discovery in this case has revealed so far.

Maine dismisses additional future potential overlap as "far too small" to warrant transfer, but that conclusion is likewise unsupported. Pl. Br. at 17. Without a comprehensive investigation of each site—and just as importantly the resources that Maine itself says are still being impacted—there is no way to know how big the universe of overlapping sites and resources is. It is hard to

understand why Maine would disagree with this uncontroversial point. After all, mere days after informing the Panel that "all that can be done to eliminate any overlap with the MDL, the State has done," it filed a new round of disclaimers admitting that it had found more overlap. Of course, this is no surprise: In Maine's own words, "it's inevitable" in a case involving statewide claims of PFAS contamination "that there's going to be an oops"—or, in Maine's case, multiple *repeated* "oopses." Ex. 2 at 22–23. To the extent Maine envisions continuing its untenable game of AFFF whack-a-mole for years to come, including in response to this brief's identification of 14 new overlapping sites, the Panel should not countenance it (and it serves as no barrier to transfer). 3M will continue to investigate the approximately 900 sites across the State for which Maine is pursuing recovery in this case, and it is no solution for Maine to move the goalposts (or not) at its sole discretion each time a new connection to AFFF or the MDL is uncovered.

**III.    Transferring this Action Will Promote Efficiency and Convenience.**

This case is especially suited for transfer to the MDL because it is still at a relatively early stage of discovery. Maine is simply wrong that "[c]ommon discovery is complete"—a position it tellingly has not taken anywhere other than before this Panel—and that other discovery is proceeding at an "exceptionally rapid pace." Pl. Br. at 2.

Maine exaggerates the extent of discovery there has been into the "approximately 900 sites" it claims are at issue in this case. *Id.* at 17 (emphasis omitted). To date, 3M and other defendants have served only four targeted interrogatories seeking identification of the sites for which the State alleges contamination, the natural resources impacted by that contamination, and basic information about those sites and resources. Defendants have also requested the sampling data and documents underlying the State's interrogatory responses. So far, Maine has produced only its Department of Environmental Protection's site files, spreadsheets identifying the sites and resources at issue, and PFAS sampling data. For its part, 3M has produced limited Maine-specific

18

documents and continues to work to identify relevant products sold into Maine, including AFFF. The parties have not yet taken steps to negotiate custodians or search terms or to begin depositions. Actual discovery into Maine's claimed sites and associated resources will involve investigation of AFFF "at" and "from" each and every one of them (as well as disclaimed sites), which has not yet occurred.[7]

Maine's claim that the district court has "closely superintended" discovery, *id.* at 2, is likewise incorrect. In the five months since this case has returned from state court, the district court has entered just two discovery orders, limited to "outstanding discovery" responses to the few written discovery requests (initiated in state court) served to date. *See* Ex. 11, Order, No. 2:25-cv-00453-JAW, ECF No. 57. No scheduling order has even been entered in this case. Under any reasonable schedule (including those proposed by Maine[8]), years of fact and expert discovery remain. While Maine touts its so-called "expert analysis of causation," Pl. Br. at 5, it has disclosed no such expert analysis.

To distract from the obvious efficiency gains of litigating this case alongside multiple related actions, Maine exaggerates the overlap between this case and *Vermont* and *Higgins* to manufacture benefits to keeping the case in its home jurisdiction. There are no such benefits. *Vermont* involves allegations relating to natural resources located far away from any of the sites or resources at issue in this action. *Higgins* involves claims of a fundamentally different and limited character. Whereas Maine pursues recovery for contamination of natural resources across the state, the

---

[7] Maine protests that transfer would undermine "case-specific discovery," Pl. Br. at 20, but the MDL court has ample tools to manage that, too. Indeed, there will be case specific discovery in Maine's AFFF case that will necessarily overlap with the discovery here. In any event, the question for transfer is not just the impact on one case but on the efficient management of litigation as a whole.

[8] The schedule Maine proposed in state court last June contemplated that fact discovery would continue until May 2027, with expert discovery stretching into 2028.

plaintiffs in *Higgins* are homeowners from a single small town seeking to recover for damages to their properties based on alleged PFAS contamination from specific products and waste streams allegedly stemming from a single paper mill in the neighboring town of Waterville. In short, *Vermont* and *Higgins* are neither in the same procedural posture nor involve nearly the same degree of common facts or legal issues that this case shares with the MDL.

Just as it overstates the amount of discovery and case management that has taken place in the District of Maine, Maine understates the MDL's progress. Substantial coordination of discovery has occurred in the MDL across a wide variety of issues and claims, including Plaintiff Fact Sheets, site-specific Defense Fact Sheets, and broad master discovery (totaling millions of pages) from the same defendants named in this action, as well as others involved in the other overlapping cases in the MDL. The MDL court has actively managed the cases, initially prioritizing the public water system cases (leading to significant settlements benefitting Maine and others) and personal injury cases, while still making progress on the State AG cases. The State Sovereigns (including Maine) have served extensive discovery coordinated across multiple claims. And multiple State-owned sites (from various states) have recently been the subject of discovery, relevant to identifying the source of the alleged PFAS at those sites, under MDL Case Management Order No. 32.[9]

### CONCLUSION

For the reasons discussed above, the Panel should deny Maine's motion and transfer the above-captioned case to the MDL.

---

[9] Notably, despite its complaints of "lengthy delay" in the MDL, Maine was not among the five states to offer locations for potential selection for the CMO 32 process.

Dated: February 12, 2026

Respectfully submitted,

*/s/ Daniel L. Ring*
Daniel L. Ring
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, Illinois 60654
Tel: (312) 923-2625
Fax: (312) 527-0484
dring@jenner.com

*Counsel for Defendant 3M Company*