**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: Aqueous Film Forming Foams (AFFF) Products Liability Litigation | MDL No. 2873<br>This Document Relates To:<br><br>*State of Maine v. 3M Company, et al.*,<br>Case No. 2:25-cv-00453 (D. Me.)<br><br>*State of Maine v. 3M Company, et al.*,<br>Case No. 2:23-cv-00210 (D. Me.) |

**REPLY BRIEF IN SUPPORT OF MOTION TO VACATE
CONDITIONAL TRANSFER ORDER (CTO-293)**

3M proposes a wholesale rejection of the Panel's jurisprudence on AFFF transfer. The Panel has repeatedly upheld the distinction between AFFF and non-AFFF cases and denied transfer of the latter in the absence of substantial and concrete AFFF claims embedded in an otherwise non-AFFF case. And it has done so where the same plaintiff has filed separate AFFF and non-AFFF lawsuits. But according to 3M, such careful, separate pleading no longer should have any effect: anytime 3M wants to argue that there is "any" AFFF at "any given site" anywhere in a non-AFFF case, it is automatically entitled to transfer. That is not the law. And it is not required by the First Circuit's purely jurisdictional decision in the underlying case, which turned on a set of rules that err on the side of giving a federal forum to potential federal officers and their agents based on merely plausible allegations. Importing that federalism principle here would upend transfer law. 3M has its federal forum; its attempt to revolutionize transfer law should be rejected.

The Panel also should reject 3M's belated attempt to inject fourteen new MDL sites into this motion. The State had no way of knowing about the confidential information 3M now relies

upon with respect to most of these sites but, in any event, after receiving 3M's brief, the State

promptly filed an express disclaimer in Maine federal court disclaiming these fourteen sites.

There is no overlap.

**ARGUMENT**

**I.      3M's attempt to transfer untethered to specific sites is irreconcilable with the Panel's case law.**

3M has all but given up trying to base transfer on the specific sites it invoked in its tag-

along notice.  Those sites are now out of the case under the express, site-specific disclaimers

Maine has filed in Maine federal court.  So 3M now says transfer should be based, first and

foremost, on the possibility of literally "any" contamination attributable to AFFF "at any given

site in Maine."  ECF No. 4166 at 8.

*First*, this argument contradicts Panel case law that has repeatedly required 3M to

identify a specific site rather than accepting vague allegations about the likelihood of

commingling or overlap at some unspecified location.[1]  And 3M's "significant burden" with

respect to such sites is to establish "that AFFF claims are substantial and concrete" rather than

merely "plausible" or "possible" or to show "clear" rather than merely "potential" overlap

between specific sites in the case and those at issue in the MDL.[2]

---

[1] Order Vacating Conditional Transfer Order at 2, MDL No. 2873 (J.P.M.L. Aug. 3, 2022), ECF No. 1511; Order Denying Transfer at 3, MDL No. 2873 (J.P.M.L. Feb. 12, 2025), ECF No. 3260; Order Denying Transfer at 2, MDL No. 2873 (J.P.M.L. Dec. 11, 2025), ECF No. 4062; Transfer Order at 4, MDL No. 2873 (J.P.M.L. June 2021), ECF No. 1020; Transfer Order at 2, MDL No. 2873 (J.P.M.L. June 5, 2023), ECF No. 1927; Transfer Order at 3, MDL No. 2873 (J.P.M.L. June 2, 2025), ECF No. 3536; Transfer Order at 1, MDL No. 2873 (J.P.M.L. Oct. 9, 2025), ECF No. 3869; Transfer Order at 2, MDL No. 2873 (J.P.M.L. Dec. 11, 2025), ECF No. 4061.

[2] ECF No. 1511 at 2–3 ("significant" burden; "substantial and concrete"); ECF No. 4062 at 2–3 ("potential"; "significant burden"); ECF No. 3260 at 2–3 ("clear"; "plausible"); Order Denying Transfer at 2, MDL No. 2873 (J.P.M.L. June 2, 2025), ECF No. 3535 ("potential"); ECF No. 3536 at 2 ("possibility").

The Panel's decision vacating the CTO in New Hampshire's non-AFFF lawsuit is directly on point.  There, 3M had emphasized that New Hampshire described PFAS contamination as "statewide in nature," *see* ECF No. 1511 at 2 ("*New Hampshire*"), just as it does now with respect to Maine's complaint, *see* ECF No. 4166 at 9.  But the Panel held that allegations of a statewide PFAS problem did not necessarily sweep AFFF into the case: "PFAS contamination may be statewide, but contamination from AFFF and non-AFFF sources may still be discrete."  ECF No. 1511 at 2.[3]  Maine, like New Hampshire, has "identified different contamination sites in each action," i.e., in its separate AFFF and non-AFFF lawsuits.  *See id.*  None of the sites in this non-AFFF case has ever involved claims of "substantial and concrete" AFFF contamination but only allegedly plausible and potential AFFF contamination.  *See id.*  And even those have now been removed from the case out of an abundance of caution (not, as 3M contends, because Maine now believes there is any AFFF at the sites, which it does not).  Maine also has removed from the case any sites that allegedly overlap with MDL cases, again making it like *New Hampshire* where there also were no overlapping sites.  *See id.*

In fact, in *New Hampshire* the Panel expressly distinguished *Michigan*—the decision 3M relies on most heavily here—because Michigan "explicitly identified multiple locations where PFAS contamination was alleged to stem from both AFFF and non-AFFF sources," and so "there was little question that [*Michigan*] involved the same contaminated groundwater" at issue in the MDL.  *Id.*  3M also relies on the transfer of Illinois's lawsuit, but it was undisputed that Illinois sought to recover for "specific community water supplies that are at issue in the MDL."  ECF

---

[3] *See also* ECF No. 3260 at 2 ("speculative" that contamination in "'some portion' of an aquifer system 'necessarily means that any contamination' within that aquifer system stems from AFFF") (quoting ECF No. 620 at 2 & n.3).  Notably, 3M contradicts its own "AFFF must be here somewhere" argument by contending that the *Higgins* case pending in Maine federal court can be analyzed as a discrete site.  ECF No. 4166 at 19–20.

No. 1927 at 2.[4]

Indeed, the entire architecture of the Panel's AFFF case law would crumble under 3M's proffered approach. The Panel has repeatedly refused to create "a non-AFFF MDL" because it "would include far more site-specific issues, different modes of PFAS contamination, and different PFAS chemicals," and thus "quickly become unwieldy." ECF No. 1511 at 1.[5] 3M attacks this very premise by faulting Maine for separating its AFFF and non-AFFF cases and for maintaining this careful and strict separation with updated discovery responses and court filings (even as 3M makes ever-shifting allegations of plausible AFFF at various sites). But 3M's real gripe is not with Maine, it is with the Panel's basic approach to the AFFF MDL.

*Second,* 3M is wrong that the First Circuit's jurisdictional decision in the underlying case should "apply with equal force" to the transfer question here. The two standards fundamentally differ. The First Circuit emphasized that, under the caselaw construing the removal statute, 3M's "theory of the case must be credited," and 3M was required to show a merely "colorable" claim of commingled AFFF contamination, rather than a "clearly sustainable" claim. *State of Maine v. 3M Co.*, 159 F.4th 129, 137 (1st Cir. 2025). This was because it would "defeat the purpose" of the removal statute if the defendant were required to prove the validity of its federal officer defense in state court. *Id.* Applying this standard, the court found that 3M had "plausibly allege[d]" AFFF contamination "at one of the sites" in the complaint. *Id.* at 135 n.14. As 3M points out, the First Circuit set the jurisdictional bar quite low, finding that when 3M attempts to prove MilSpec AFFF contributed to contamination, it is entitled to do so in federal court because

---

[4] 3M suggests that additional discovery could reveal additional overlapping sites, *see* ECF No. 4166 at 17, but that is pure speculation. And the State has already disclaimed "contamination at or from" any site in Maine that is at issue in an MDL case. ECF No. 4166-6 at 2.

[5] Quotations omit internal citations, quotation, footnotes, and alterations (unless indicated).

4

federal law provides the right to present even minimally plausible federal-officer defenses to a federal court. *Id.* at 137, 139.

But when it comes to MDL transfer, the Panel does not consider the propriety of a federal forum, and does not give 3M the benefit of the doubt. Instead, transfer must promote "convenience" and the "just and efficient conduct" of litigation in both the MDL and the individual case to prevent an "unwieldy" MDL. *See* 28 U.S.C. § 1407(a); *In re AFFF Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1396 (J.P.M.L. 2018). The Panel enforces this mandate by imposing a "significant" burden on 3M to demonstrate a clear connection between AFFF and a specific site.[6] The only site-specific finding that the First Circuit made was to AFFF plausibility at a single site that has now been excluded from the case.[7] This falls far short of finding that the State's case involves "substantial and concrete" AFFF claims.

3M also quotes the First Circuit out of context. The court's concern about two courts deciding the same issue was expressly one of federalism. After emphasizing the importance of having "the validity of the defense tried in a federal court," it said "[t]his purpose would be defeated were there *state and federal court actions* deciding the same PFAS contamination

---

[6] ECF No. 1511 at 2–3; ECF No. 4062 at 3. 3M itself describes the First Circuit's decision as requiring an analysis of "each site." ECF No. 4166 at 4.

[7] The State has amended its discovery responses, filed stand-alone disclaimers, and moved to amend its complaint to remove any sites with arguable links to AFFF or the MDL. ECF No. 4127-1 at 7 & n.7; ECF No. 4166-6 at 1–2; Ex. 1 at 1–3; Ex. 2 at 5; Ex. 3 at 5–6. 3M says the Panel should disregard the disclaimers because the State's motion to amend has not yet been granted, ECF No. 4166 at 11 n.3, but the stand-alone disclaimers are effective even without amendment of the complaint. *See, e.g.*, *Gerran v. City of Ferguson*, 2025 WL 1454469, at *1 (E.D. Mo. May 21, 2025) ("although Plaintiffs have not amended their complaint to eliminate federal claims, they have voluntarily dismissed their federal claims, which has the same effect"). 3M tries to distinguish *Jenkins-Griffin*, ECF Nos. 3260 at 3 & 4062 at 3, but, if anything, the State's situation is stronger than that case as the State's original complaint does not expressly allege "foam" contamination as did the plaintiff there.

source issues alleged by Maine." 159 F.4th at 139–40 (emphasis added).[8]

In short, far from applying with "equal force," the First Circuit's decision did not apply the stringent rules this Panel has applied to potential transfers to the MDL. The Panel should continue to follow *New Hampshire* and its other precedent which requires rejection of transfer.

## II.    The fourteen "overlapping" sites identified by 3M are no longer in the case.

In its opposition brief, 3M listed fourteen sites that allegedly overlap with cases in the MDL. But there is no overlap because the State promptly responded by filing an express disclaimer of these sites in Maine federal court. Ex. 1 at 1–3. The State notes that it has excluded these sites regardless of whether there actually is AFFF at them, consistent with the Panel's orders stating that it does not engage in a merits review of such issues.[9] The Panel, moreover, should not base its decision on twelve of these sites where 3M has improperly used confidential information in violation of an MDL order.[10]

---

[8] 3M falsely accuses the State of a lack of candor in the First Circuit argument. ECF No. 4166 at 3. Judge Lynch had asked the State a question about "Brunswick" without specifying whether she meant the Brunswick Naval Air Station or the Brunswick/Topsham Water District (BTWD), both of which 3M had put at issue. The State understood the question to be about the military base and answered as such ("[w]e do not list the military bases at all in the complaint here"), which prompted Judge Lynch's comment requesting "greater candor" since she had meant the water district. ECF No. 4166-2 at 12:13-16, 17:2–12. It was an honest misunderstanding. Judge Lynch was also appearing remotely, resulting in communication issues. *See id.* at 17:13 (Judge Lynch: "(indiscernible)").

[9] ECF No. 1927 at 3 (Panel will not "engage in a merits review of the complaints"); ECF No. 4061 at 3 (Panel does not "weigh the merits"). Contrary to 3M's assertion that the State included sites in its case with actual AFFF, ECF No. 4166 at 3, the State told the First Circuit exactly what it has told the Panel here, i.e., that the State will remove sites where 3M alleges plausible AFFF regardless of whether there actually is AFFF. ECF No. 4166-2 at 17:18-18:6.

[10] *See* ECF No. 4167-1 at p. 7 ¶ 3 ("All 'Confidential Information' . . . shall not be further disclosed, disseminated, or used for any purpose other than in connection with the preparation for trial and litigation of this Action."); *id.* at p. 26 ¶ 16 (confidential information "must not be used for any business, competitive, legal, or any other purpose unrelated to this Action without the express written consent of counsel for Producing Party or by order of the Court.").

3M accuses the State of "transparent forum manipulation" but it was 3M that failed to disclose these new alleged bases for transfer in its tag-along notice.  ECF No. 4166 at 4; ECF No. 4060 at 1.  The State was thus left to hunt through the MDL docket to ferret out how its case might possibly overlap with any of thousands of MDL cases that 3M might invoke in its game of "gotcha."  And the U.S. Supreme Court has recently rejected "forum-manipulation concerns" as an argument that "fails on multiple levels" in holding that a plaintiff properly may take steps to affect the forum even "without resort to [complaint] amendments."  *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 42 n.9 (2025).

3M relies on cases in which plaintiffs continued to seek recovery for allegedly overlapping sites even after the overlap was brought to their attention, but that is the opposite of what Maine has done here.  ECF No. 4166 at 15–16.[11]  Notably, many of those plaintiffs could not disclaim the alleged overlapping site because there was only one site at issue in the case.  ECF No. 3536 at 3; ECF No. 3869 at 1; ECF No. 4061 at 2–3.

Even if there were a minuscule amount of overlap, which there is not, transfer of the State's case based upon fourteen out of 900 sites would not "promote the just and efficient conduct of the actions."  *See* 28 U.S.C. § 1407(a).  3M says that this argument has "no foundation in the Panel's prior orders," ECF No. 4166 at 17, but a case should be transferred only if it involves "substantial" AFFF claims and if transfer "will enhance efficiency and convenience, both in the individual action and in the MDL overall."  ECF No. 1511 at 2–3.  The

---

[11] ECF No. 3536 at 3 (Savannah "contends that the overlap between its action and *Allan* does not support transfer"); ECF No. 3869 at 2 (City of Opelika argued that overlap "can be addressed through information coordination between the parties and the court"); ECF No. 1927 at 3 (Illinois sought a "merits review" of the overlapping complaints); ECF No. 4061 at 3 (Oklahoma; same); ECF No. 1020 at 4 (Michigan identified in written discovery responses "multiple locations at which PFAS contamination from both AFFF and non-AFFF sources is alleged" including a location at issue in the MDL).

Panel has repeatedly declined to transfer on efficiency and convenience grounds even cases with one allegedly overlapping site where the potential overlap would be complete. ECF No. 4062 at 2 (single PWS source); ECF No. 3260 at 3 (two cases each involving single PWS).[12] The Panel has done so especially where, as here, there are "efficiencies" to be gained from a case in the transferor court involving common sites. ECF No. 4062 at 2. 3M says that the Panel has rejected this *de minimis* argument in *Michigan* and *Wisconsin*, ECF No. 4166 at 17, but *Michigan* involved approximately 800 fewer sites than the State's case, ECF No. 930-7 at 40–47, and in *Wisconsin*, the Panel did not indicate the number of sites. Transfer Order at 2–3, MDL No. 2873 (J.P.M.L. Dec. 13, 2022), ECF No. 1646.[13]

There is no overlap, much less an overlap sufficient to transfer this ~900-site case.

### III.    Efficiency, convenience, and justice will be promoted by keeping the State's case in Maine federal court.

3M understates both the progress in the State's case in Maine federal court and the close supervision of this case by the federal judges in Maine. *See* ECF No. 4166 at 18–20. And it overstates the progress of the state/sovereign cases in the MDL.

The case is far from being at an "early stage," as 3M alleges. *Id.* at 18. Common discovery is complete—as the State has consistently stated here and in district court in Maine.[14] And due to the Vermont non-AFFF case, Maine has obtained the relevant documents on common liability, including from the MDL, and does not currently expect to seek additional

---

[12] *Cf.* ECF No. 3869 at 2 ("Transfer of *City of Opelika* [involving a single drinking water supply] will not significantly expand the scope of the MDL.").

[13] Wisconsin also admitted that its case "includes a subset of AFFF claims that are necessarily similar to those included in the MDL." ECF No. 1550-1 at 8. The Panel did not indicate the number of sites in Illinois, ECF No. 1927 at 3–4, and there was 100% overlap in Oklahoma's single-site case. ECF No. 4061 at 2–3.

[14] Ex. 4 at 2 (stating that discovery is focused on "Maine-specific documents.").

information from defendants on PFAS contamination in general (as opposed to information that is specific to contamination in Maine).  ECF No. 4127-1 at 8.

Case-specific discovery is all that remains.  3M contends that the State has produced "limited Maine-specific documents," ECF No. 4166 at 18–19, but in fact the State has produced over 6.5 million pages of "site file" documents with comprehensive information and PFAS sampling data for *all* of the ~900 sites at issue, together with a chart and reliance materials compiled by the State's expert chemist attributing PFAS chemistries by environmental media at each one of these sites.[15]  The State has also completed its reproduction of over 188,000 pages of documents from the *Higgins* PFAS case that is also pending in Maine federal court; these documents are relevant to overlapping topics and sites between the two cases.[16]  And although 3M asserts that "[t]he parties" have not yet negotiated custodians or search terms, ECF No. 4166 at 19, 3M has not bothered to ask for their production but instead has focused on the site files. And after the State filed its opening brief here, defendants failed in their attempt to halt discovery and thus finally produced their Maine-specific documents, including sales records for PFAS products sold into Maine.  In short, the parties have responded to all outstanding discovery, and this case is continually making important progress on a very rapid timeline.

---

[15] ECF No. 4127-1 at 5, 8–9; Ex. 5 at 11–13.  The State's site file production contains information on all potential sources of PFAS at the Claimed Sites, and so 3M is wrong that discovery of PFAS sources "has not yet occurred."  ECF No. 4166 at 19; Ex. 5 at 9–10.  3M's suggestion that the State has removed from the case the only site (the Kennebunk, Kennebunkport & Wells Water District) where the State alleges that PFOS exclusively manufactured by 3M caused its injuries is baseless.  ECF No. 4166 at 6.  The State's expert chemist has attributed PFOS to 3M at hundreds of sites in the case.

[16] The State's case involves several sites near the *Higgins* sites.  ECF No. 4127-1 at 10.  3M is also wrong that the claims in the two cases are "fundamentally different."  ECF No. 4166 at 19. Both cases entail claims of public nuisance against 3M for contaminating groundwater and property with PFAS.  *State of Maine v. 3M Co.*, 2024 WL 5108255, at *3 (Me. B.C.D. Dec. 12, 2024); *State of Maine v. 3M Co.*, 2024 WL 5108256, at *3 (Me. B.C.D. Dec. 12, 2024); *Higgins v. Huhtamaki, Inc.*, 2024 WL 4008257, at *1, *11 (D. Me. Aug. 30, 2024).

3M downplays the activity of the Maine federal judge and magistrate based on the fact that the court has issued only two discovery orders, *id.*, but that ignores all the court orders that occurred in state court and that remain valid after removal to federal court. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 436 (1974) ("orders obtained in state court all remain effective after the case is removed to federal court"). 3M also emphasizes the lack of a CMO, but the only reason there is no CMO is because of 3M's delay tactics based on this MDL transfer attempt. *See* ECF No. 4127-13 at 3 (district court stating it will address "issuance of a scheduling order . . . after the Court rules on [3M's] pending motion to stay"). Moreover, the court has continued to closely superintend the case over the last month by *sua sponte* denying, within 24 hours, a motion by 3M to strike the State's updated proposed amended complaint.[17] In short, the Maine federal judge and magistrate are doing everything they can to effectively manage this case.

Finally, 3M is simply wrong that state/sovereign cases in the MDL are making any real progress – they have been stayed for years beyond barebones initial plaintiff fact sheets served years ago. 3M points to "CMO 32" discovery in the MDL, ECF No. 4166 at 20, but that CMO does not authorize discovery of any state's full AFFF case, only twelve sites in a subset of states. *In re: AFFF Prods. Liab. Litig.*, 2:18-mn-02873-RMG (D.S.C. Apr. 5, 2025) ECF No. 6892.

## CONCLUSION

The State respectfully requests that the Panel vacate CTO-293.

Dated: February 26, 2026                             Respectfully submitted,

                                                       STATE OF MAINE

---

[17] Ex. 6 at 1–3; Ex. 7 at 8 ¶ 15 (updated proposed amended complaint); Ex. 8 at 7–8 ¶ 15 (updated proposed amended complaint redlined against original complaint).

AARON M. FREY
ATTORNEY GENERAL

*/s/ Matthew F. Pawa*
Matthew F. Pawa
Benjamin A. Krass
Gillian C.A. Cowley
Pawa Law Group, P.C.
1280 Centre Street, Suite 230
Newton Centre, MA  02459
(617) 641-9550
mp@pawalaw.com
bkrass@pawalaw.com
gcowley@pawalaw.com

Scott Boak
Mark Bower
Assistant Attorneys General
6 State House Station
Augusta, Maine 04333
(207) 626-8566
scott.boak@maine.gov
mark.bower@maine.gov

Kyle J. McGee
Viola Vetter
Grant & Eisenhofer P.A.
123 Justison Street
Wilmington, DE 19801
Tel: (302) 622-7000
kmcgee@gelaw.com
vvetter@gelaw.com

11