**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: Aqueous Film-forming Foams (AFFF) Products Liability Litigation | MDL No. 2873<br>This Document Relates To:<br><br>*State of Maryland v. 3M Company, et al.*<br>No. 1:23-cv-01836 (D. Md.) |

**MEMORANDUM IN SUPPORT OF DEFENDANT 3M COMPANY'S MOTION TO
TRANSFER TAG-ALONG ACTION *STATE OF MARYLAND v. 3M CO., ET AL.***

The State of Maryland filed two "overlapping lawsuits" against 3M, both raising identical causes of action and both seeking recovery for damages from alleged PFAS contamination across the State. *Maryland v. 3M Co.*, 130 F.4th 380, 385 (4th Cir. 2025). The two suits had "only [one] meaningful difference." *Id*. The first suit—the so-called "AFFF case"—expressly seeks damages for alleged contamination of the State's natural resources by PFAS stemming only from aqueous film-forming foams ("AFFF"), and so was transferred immediately to this MDL, where it is now pending. *See In re AFFF Products Liability Litigation* MDL ("MDL"), ECF No. 2006 (J.P.M.L. Jul. 27, 2023).[1] This case purports to seek damages for alleged contamination of the very same natural resources by PFAS stemming from products *other than* AFFF, and Maryland has tried to avoid federal court (and now the MDL) by relying on its purported AFFF disclaimer. Although the Panel previously declined to transfer this case, it expressly invited 3M to seek transfer again "if plaintiff's attempt to separate its AFFF and non-AFFF claims becomes untenable" and the case "evolve[s] into a more obvious AFFF action"—a result the Panel said "would not be surprising." ECF No. 2129 ("Order Denying Transfer") at 4.

---

[1] Unless otherwise stated, all ECF citations herein refer to the J.P.M.L. docket for MDL No. 2873.

That time has come. In a decision the U.S. Supreme Court recently refused to disturb, the Fourth Circuit vacated the remand of this case to state court, concluding that "3M's Military AFFF production is inextricably related to [Maryland's] general allegations of PFAS contamination, notwithstanding [its] attempts to draw a line between 3M's federal and non-federal work." *Maryland*, 130 F.4th at 392. The Fourth Circuit confirmed that the factfinder in this case, just like in Maryland's AFFF case, "will have to disentangle" at least two questions related to AFFF at any given site in the State—"whether certain PFAS contamination came from 3M's Military AFFF" and "how much of a given sample of PFAS contamination came from Military AFFF." *Id*. at 391; *accord Maine v. 3M Company, Inc.*, 159 F.4th 129, 130–31, 138–39 (1st Cir. 2025) (explaining that Maine's "two almost-identical suits against 3M" will require a federal court to determine "whether and to what extent [PFAS] contamination from AFFF sources has commingled with non-AFFF"). In other words, AFFF-related litigation and discovery will inhere at the very heart of this case—just as they do in the State's AFFF case in the MDL and in hundreds of other cases brought in the MDL by Maryland-based plaintiffs.

The State has essentially conceded as much. In response to pointed questions from the Fourth Circuit, Maryland "made clear" that that it intends to seek to recover in this case for sites with mixed contamination involving PFAS from both non-AFFF *and* AFFF sources. *Id.* at 392 (finding that Maryland admits seeking in this case to "recover[] for mixed PFAS contamination from numerous geographic locations"). The effect of this binding judicial admission is plain: this case has now clearly "evolve[d] into a more obvious AFFF action" and the State's "attempt to separate its AFFF and non-AFFF claims [has] become[] untenable." Order Denying Transfer at 4.

The Fourth Circuit's rejection of the State's AFFF disclaimer for purposes of federal jurisdiction applies with equal force to the decision whether this case should be transferred to the

AFFF MDL along with its nearly identical "overlapping" twin. *Maryland*, 130 F.4th at 385. The AFFF "causation and allocation" questions that the Fourth Circuit confirmed will be a part of this case are the *very same* questions that will already be the subject of fact and expert discovery in the MDL, which will involve the *very same* "mixed PFAS contamination" at "numerous geographic locations" throughout the State. *Id*. at 392. Maryland's "efforts to have two courts answer the same questions must fail." *Maine*, 159 F.4th at 131.

Given the clear overlap between the State's two cases and other cases brought by Maryland-based plaintiffs in the MDL, it would be woefully inefficient and prejudicial to Defendants for these cases to be litigated in two separate courts. By contrast, managing both cases in the MDL will "eliminate duplicative discovery; prevent inconsistent pretrial rulings (including with respect to discovery, privilege, and *Daubert* motion practice); and conserve the resources of the parties, their counsel, and the judiciary." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018).

## BACKGROUND

### A.     Maryland's "Overlapping" PFAS Complaints

On May 30, 2023, Maryland filed two "overlapping lawsuits" against Defendants in the Circuit Court for Baltimore City. *Maryland*, 130 F.4th at 385. Each raised "the same seven state-law causes of action against 3M," *id.*, and each was based on substantially similar allegations of PFAS contamination of the same natural resources "throughout Maryland." *See* Ex. 1 (Complaint) ¶ 109; *see also* State Court Complaint ¶ 268, *State of Maryland v. 3M Co., et al.*, No. 2:23-cv-1834-RMG (D.S.C.), ECF No. 2. "The only meaningful difference in the complaints is that one was directed toward 3M's PFAS production through its manufacture of AFFF generally—Military AFFF and otherwise—while the other was directed towards 3M's production of other PFAS-containing products and specifically excluded any AFFF." *Maryland*, 130 F.4th at 385.

3M removed both suits pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1). It removed the explicitly AFFF-related action based on the State's claims to recover for alleged contamination from AFFF use at U.S. military facilities across Maryland. *See* Notice of Removal ¶¶ 1–3, *State of Maryland v. 3M Co., et al.*, No. 2:23-cv-03635-RMG (D.S.C.), ECF No. 1. As for this putative "non-AFFF" case, 3M removed it on the basis of its allegations that PFAS contamination from AFFF made pursuant to military specifications ("MilSpec AFFF") has indistinguishably commingled across Maryland with PFAS contamination from non-AFFF products. *See, e.g.*, Notice of Removal ¶¶ 1–5, *State of Maryland v. 3M Co., et al.*, No. 1:23-cv-01836-RDB (D. Md.), ECF No. 1. As a result, 3M has a right to a federal forum to raise a federal government contractor defense as to such mixed contamination. *See Maryland*, 130 F.4th at 392 (rejecting district court's contrary holding).

B.      **3M's Previous Motion to Transfer**

On July 14, 2023, 3M tagged both of Maryland's twin cases for inclusion in the MDL. ECF No. 1990. After the State's explicitly AFFF case was transferred without opposition, ECF No. 2006, 3M moved to transfer this case, ECF No. 2009. This Panel denied 3M's motion without prejudice. *See* Order Denying Transfer at 4. Framing the pertinent question as "whether there is a clear overlap between the putative non-AFFF complaint and complaints in the MDL with respect to alleged contamination sites, such that the plaintiff's attempt to maintain separate non-AFFF and AFFF complaints is untenable," the Panel found that 3M had not "established a clear overlap between [this suit] and the claims pending in the MDL, much less that the putative AFFF claims in this complaint are substantial and concrete" enough to warrant transfer. *Id.* at 2, 4. The Panel specifically found that 3M's reliance on the indistinguishable commingling of AFFF and non-AFFF PFAS contamination was "too speculative." *Id.* at 2–3. But the Panel noted that 3M's

arguments were "not wholly unpersuasive" and that "it would not be surprising if [Maryland's] attempt to separate its AFFF and non-AFFF claims becomes untenable" and this case "evolve[s] into a more obvious AFFF action." *Id.* at 4. The Panel thus expressly left open the possibility that "pleading practice could demonstrate that [this] ostensibly non-AFFF action" may, in fact, be "more properly treated as an AFFF case for which transfer to [the] MDL . . . is warranted," and invited 3M to request transfer again at the appropriate time. *Id.* at 4.

C.      **Maryland's Motion to Remand the Purported "Non-AFFF" Case to State Court**

After the Panel declined to transfer this case, the district court granted Maryland's motion to remand, *Maryland v. 3M Co.*, No. 23-cv-01836 RDB, 2024 WL 1152568, at *1 (D. Md. Feb. 12, 2024), giving the State's disclaimer of recovery for AFFF "dispositive effect" and determining that 3M's "federal defense would not be present" in the "non-AFFF" case, *Maryland*, 130 F.4th at 386.

The Fourth Circuit emphatically disagreed. It confirmed that "3M's federal work" in producing AFFF is "inextricably related to the charged conduct" at issue in this action, putting 3M's government contractor defense directly at issue. *Id.* at 391. That is because "PFAS from different sources commingle to the point that it is impossible to identify the precise source of a contaminant once those chemicals seep into the relevant waterways," and "[s]ome of the PFAS contamination charged by the State[] came from [3M's] Military AFFF." *Id.* at 390. Unlike Illinois, which has tried (contrary to fact and law) to maintain the distinction between its AFFF and non-AFFF suits by disclaiming recovery for any mixed PFAS contamination that contains "even a morsel" of AFFF, Maryland "made clear [it] did not so concede." *Id.* at 392. To the contrary, it admittedly "envision[s] recovering for mixed PFAS contamination from numerous geographic locations" in this case. *Id.* Accordingly, AFFF will necessarily comprise a core component of this

case. Because of 3M's federal contractor defense, "[w]hatever factfinder" ultimately adjudicates this case will need to "disentangle" "two pertinent questions": whether PFAS contamination at any given site in Maryland was caused in part by AFFF, and if so, to what extent. *Id.* at 391. The Fourth Circuit thus vacated the district court's remand of this action to state court, directing the district court to address in the first instance the two remaining prongs of federal officer removal. *Id.* at 393.

The Fourth Circuit subsequently denied Maryland's motion for rehearing *en banc*. *See* Order, *State of Maryland v. 3M Co.*, No. 24-1218 (4th Cir. May 28, 2025), ECF No. 66. Following the U.S. Supreme Court's recent denial of certiorari on March 2, 2026, *see Maryland v. 3M Co.*, No. 25-517, 2026 WL 568301 (U.S. Mar. 2, 2026), 3M tagged this action for inclusion in the MDL, *see* ECF No. 4193, and a conditional transfer order was denied, ECF No. 4196.

## ARGUMENT

**I.    The Fourth Circuit Has Confirmed That Maryland's Putative "Non-AFFF" Case Has Evolved Into A More Obvious AFFF Case.**

The Fourth Circuit's decision confirms that this case has "evolve[d] into a more obvious AFFF action." Order Denying Transfer at 4. Whatever factfinder adjudicates it "will *have to*" address whether and to what extent AFFF has contributed to the State's claimed damages from alleged PFAS contamination, *Maryland*, 130 F.4th at 391 (emphasis added), making the State's attempt to maintain separate non-AFFF and AFFF complaints "untenable," Order Denying Transfer at 4. Accordingly, as the Panel predicted it might, this "ostensibly non-AFFF action" has become one that is "more properly treated as an AFFF case for which transfer to MDL No. 2873 is warranted." *Id.*

To begin, the same commingling premise that the Panel previously found to be "too speculative" has now been accepted by the Fourth Circuit. *See Maryland*, 130 F.4th at 390

(crediting 3M's theory that "PFAS from different sources commingle to the point that it is impossible to identify the precise source of a contaminant once those chemicals seep into the relevant waterways" and that "[s]ome of the PFAS contamination charged by the State[] came from [3M's] Military AFFF"). That finding makes inevitable the role of AFFF in this proceeding. As the Fourth Circuit confirmed, the court overseeing this case will need to "disentangle" at least "two pertinent questions" related to AFFF: (1) the "challenging causation question" whether alleged damage caused by PFAS contamination is attributable in part to MilSpec AFFF, and (2) if so, to what extent. *Id.* at 391.[2] The effect of the Fourth Circuit's decision on the course of this case is clear, and Maryland can no longer avoid transfer by suggesting that 3M's arguments regarding the indistinguishable commingling of PFAS from AFFF and non-AFFF sources are "speculative." *see* Order Denying Transfer at 3.

The need to resolve these "important causation and allocation questions" is not only a product of 3M's federal contractor defense but also a direct result of the State's binding judicial admission that it is pursuing recovery—even in this ostensibly "non-AFFF" case—for "mixed" AFFF and non-AFFF PFAS contamination at "numerous geographic locations" throughout the State. *Id.* at 392. As a result, this case will necessarily involve the same mixed PFAS contamination

---

[2] The First Circuit reached a similar conclusion in rejecting the State of Maine's purported disclaimer of recovery for AFFF in its putative "non-AFFF" suit. Like the Fourth Circuit here, the First Circuit credited 3M's allegations that PFAS contamination from AFFF "has commingled with and so has become in[di]visible with the PFAS contamination in natural resources and property which are broadly alleged in Maine's statewide non-AFFF Complaint." *Maine*, 159 F.4th at 138. Like Maryland's claims here, Maine's claims in both of its "almost-identical" cases encompassed alleged PFAS contamination throughout the state that plausibly derived at least in part from AFFF, making it untenable to divide the suits. *Id.* at 130. As a result, just like the Fourth Circuit, the First Circuit held that even an ostensibly "non-AFFF" suit requires the federal factfinder to answer two fundamental AFFF-related questions at any given site, namely (1) "whether" and (2) "to what extent [PFAS] contamination from AFFF sources has commingled with non-AFFF." *Id.* at 131, 139–40.

at issue in Maryland's explicitly AFFF case. The two suits thus "clear[ly] overlap," making Maryland's "attempt to maintain separate non-AFFF and AFFF complaints . . . untenable." Order Denying Transfer at 2; *see also* Transfer Order at 3, ECF No. 1927 (transferring Illinois's ostensibly non-AFFF suit where transfer was "necessary to avoid overlapping discovery and duplicative pretrial proceedings"); Transfer Order at 3, ECF No. 1020 (transferring Michigan's putative non-AFFF case, explaining that the Panel has "rejected" attempts by plaintiffs to "split . . . claims into AFFF and non-AFFF complaints and thereby maintain an action outside the MDL"); Transfer Order at 3, ECF No. 4061 (similarly transferring purported "non-AFFF" case filed by Oklahoma).

In short, as confirmed by the Fourth Circuit, resolution of this action requires discovery and consideration of the same facts to answer the same questions about the potential AFFF contamination at issue in Maryland's MDL case. *See Maryland*, 130 F.4th at 391. The Panel should therefore transfer this case to the MDL, so that the MDL court can efficiently oversee the relevant discovery and resolve those questions. Maryland's "efforts to have two courts answer the same questions must fail." *Maine*, 159 F.4th at 131.

## II. The Fourth Circuit's Decision Confirms That There Are Significant Efficiency Gains From Transfer.

For similar reasons, transferring this case to the MDL would also realize important efficiency benefits. Given the substantial overlap between Maryland's nearly-identical twin suits—both will involve the very same causation and attribution questions identified by the Fourth Circuit—managing both cases in the MDL will "eliminate duplicative discovery; prevent inconsistent pretrial rulings (including with respect to discovery, privilege, and Daubert motion practice); and conserve the resources of the parties, their counsel, and the judiciary." *In re Aqueous Film-Forming Foams*, 357 F. Supp. 3d at 1394.

The State seeks to litigate the same questions and conduct the same discovery both inside and outside the MDL. That creates the very inefficiency burdens from duplicative proceedings and risks from inconsistent decisions that Section 1407 was designed to avoid. Recognizing this, this Panel has transferred purported "non-AFFF" actions brought by states where their claim-splitting stratagems have become "untenable," Transfer Order at 3, ECF No. 1020 (Michigan), or where refusing transfer would result in "overlapping discovery and duplicative trial proceedings," Transfer Order at 3, ECF No. 1927 (Illinois); *see also* Transfer Order at 3, ECF No. 4061 (Oklahoma). For example, this Panel transferred a purported non-AFFF action brought by Michigan where the State's two cases would "involve common discovery relating to the same contaminated groundwater," such that "declining to transfer" the action would have "result[ed] in duplicative discovery and pretrial proceedings." Transfer Order at 4, ECF No. 1020; *see also id.* (further explaining that the Panel has "rejected" attempts by plaintiffs to "split . . . claims into AFFF and non-AFFF complaints and thereby maintain an action outside the MDL").

The same efficiency rationale holds true here. In each of Maryland's "overlapping" suits, the government contractor defense entitles 3M to investigate and demonstrate the extent to which any alleged PFAS contamination in the state was caused in whole or part by MilSpec AFFF— implicating the highly complex apportionment and causation questions the Fourth Circuit directed the court to undertake. *Maryland*, 130 F.4th at 385, 391–92. Accordingly, the issues, discovery, and motion practice will significantly overlap between those two cases (and the many other cases before the MDL court involving Maryland-based plaintiffs raising similar if not identical issues).[3]

---

[3] Moreover, based on the same directions from the Fourth Circuit, the MDL Court will already preside over any further briefing and resolution of the renewed motion to remand that South Carolina may choose to pursue in its purported non-AFFF case (that the Fourth Circuit had consolidated with this case for purposes of appeal). That provides further support for transfer so that one district court, not two, can follow the Fourth Circuit's directions on remand. *Id.* at 383.

That Maryland admits to seeking recovery for the same mixed AFFF and non-AFFF contamination in both cases only underscores that this case will share "common factual questions and discovery relating to PFAS and AFFF" with the actions in the MDL. Transfer Order at 2, ECF No. 1646 (Dec. 13, 2022) (transferring Wisconsin's action seeking recovery for both AFFF and non-AFFF PFAS, despite purporting to be "predominantly not an AFFF case").

It would be highly inefficient to have two different courts addressing discovery and pretrial resolution of these same AFFF-related issues. Transfer is the proper result.

## CONCLUSION

The Panel should transfer this action for inclusion in the *In re AFFF* MDL.

Respectfully submitted,

DATED: March 18, 2026

/s/ *Daniel L. Ring*
Daniel L. Ring
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654
Tel: (312) 923-2625
dring@jenner.com

*Counsel for Defendant 3M Company*