**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: Aqueous Film-forming Foams (AFFF) Products Liability Litigation | MDL No. 2873<br>This Document Relates To:<br><br>*State of Maryland v. 3M Company, et al.*<br>No. 1:23-cv-01836 (D. Md.) |

**REPLY IN SUPPORT OF DEFENDANT 3M COMPANY'S MOTION TO
TRANSFER TAG-ALONG ACTION *STATE OF MARYLAND v. 3M CO., ET AL.***

Contrary to the State's insistence that "nothing has changed" since the Panel first considered transfer, Mem. in Opp'n to Mot. to Transfer ("Opp'n"), ECF No. 4241-1, at 4, the Fourth Circuit's watershed decision fundamentally reshaped the contours of this case. The Fourth Circuit held that 3M's AFFF production is "inextricably related" to Maryland's "general allegations of PFAS contamination" here, such that the "factfinder *must* . . . decide the important causation and allocation questions" concerning whether and to what extent AFFF contributed to the alleged PFAS contamination at "numerous geographic locations" throughout Maryland. *Maryland v. 3M Co.*, 130 F.4th 380, 392 (4th Cir. 2025), *cert. denied*, No. 25-517, 2026 WL 568301 (U.S. Mar. 2, 2026) (emphasis added). Like Maine before it, Maryland attempts in vain to diminish this binding appellate authority to strip it of its practical significance compelling transfer. Tellingly, the State also wholly ignores the Panel's April 2 order transferring Maine's purported "non-AFFF" case to the MDL, which followed from the First Circuit's conclusion that "the State's disavowal of AFFF claims did not obviate the need for the trial court to determine whether any particular site was contaminated by AFFF use." Transfer Order at 5, ECF No. 4225 (Apr. 2, 2026) ("*Maine* Transfer Order").

1

The Fourth Circuit's determination, identical to the First Circuit's in *Maine*, compels the same result here. To answer the AFFF-related questions identified by the Fourth Circuit will require the same AFFF-related discovery and pretrial motion practice in this case as in Maryland's "overlapping" action already proceeding in the MDL, in which the State alleges PFAS contamination of the same statewide natural resources. *Maryland*, 130 F.4th at 385. So just as it transferred Maine's "non-AFFF" suit to avoid the burdens and inefficiencies of having "two courts answer the same questions" and oversee the same discovery, *see Maine* Transfer Order at 6 (quoting *Maine v. 3M Co., Inc.*, 159 F.4th 129, 131–32 (1st Cir. 2025)), the Panel should likewise transfer this case to avoid such duplicative discovery and the risk of inconsistent rulings.

Neither of the State's two primary responses justify deviating from this Panel's approach in its April 2 order. First, the State protests that any commingling of AFFF and non-AFFF PFAS is "speculative." Opp'n at 4. But there is nothing "speculative" about the fact that centrally important AFFF questions and discovery must now be addressed in this case, particularly given the State's striking concession before the Fourth Circuit that it seeks recovery in this case for sites with mixed PFAS contamination caused by both AFFF and non-AFFF sources. The Fourth Circuit's decision (like the First Circuit's decision in *Maine*) has dictated the future course of this litigation. The Fourth Circuit expressly held that, going forward, it is "*inevitable*" that the factfinder "*will have to* disentangle" whether and to what extent alleged PFAS contamination at "numerous geographic locations" across Maryland "came from 3M's Military AFFF." *See Maryland*, 130 F.4th at 391–92 (emphases added). Like Maine, Maryland downplays the impact for transfer purposes of the Fourth Circuit's decision by emphasizing that it addressed the propriety of removal to federal court under a "deferential" standard. Opp'n at 1. But that argument fails to grapple with the Fourth Circuit's *reasoning* and the fact that this Panel transferred Maine's "non-

2

AFFF" case based on the First Circuit's materially identical reasoning, likewise in the removal context.

Second, the State falls back (at 8) on an argument that this Panel already rejected in *Maine*: that transferring this action would "expand" the scope of the AFFF MDL. *See Maine* Transfer Order at 7. Following the Fourth Circuit's decision, this action will necessarily involve AFFF-related discovery and pretrial motion practice common to the State's "overlapping" MDL action and other Maryland-based actions in the MDL and thus falls squarely within the MDL's scope. As a result—just as the Panel predicted when it initially denied transfer—this case has now "evolve[d] into a more obvious AFFF action," and thus the State's attempt to maintain two separate actions to recover for the same PFAS contamination has become "untenable." Order Denying Transfer at 4, ECF No. 2129 (Oct. 4, 2023).

## I.    The Fourth Circuit's Decision Made Clear That AFFF Is Central To This Case And Necessitates Transfer Just As The First Circuit's Decision Did In *Maine*.

Maryland cannot overcome the Fourth Circuit's conclusion that, despite the State's purported AFFF disclaimer, the very nature of the State's "non-AFFF" case implicates AFFF, such that resolving it will require the same AFFF discovery and pretrial motion practice at issue in the case's "overlapping" MDL twin. *Maryland*, 130 F.4th at 385. This Panel recently recognized that when two actions proceeding in federal court concern "the same PFAS contamination sources," such "overlap . . . merits transfer." *Maine* Transfer Order at 6 n.6. That is the case here, and the Panel should reach the same result as it did in *Maine*.

For starters, Maryland does not dispute that the Fourth Circuit's decision makes clear that the factfinder "will have to disentangle" at least "two pertinent questions" related to AFFF: (1) the "challenging causation question" whether alleged damage caused by PFAS contamination is attributable in part to AFFF, and (2) if so, to what extent. *Id.* at 391. Contrary to the State's

contention that AFFF commingling in this case remains "speculative," *see* Opp'n at 1, the Fourth Circuit expressly held that these two questions concerning AFFF contamination were "*inevitable*," *Maryland*, 130 F.4th at 392 (emphasis added). Indeed, the Fourth Circuit concluded that the factfinder in this case "*must . . .* decide *. . .* important causation and allocation questions" involving AFFF. *Id*. (emphasis added). Just as there would be no question that transfer would be appropriate if Maryland had brought a single action seeking recovery for AFFF and non-AFFF sources of PFAS contamination, Transfer Order at 2, ECF No. 1646 (Dec. 13, 2022) (transferring Wisconsin's case "encompass[ing] both AFFF and non-AFFF sources of contamination"), the Fourth Circuit's holding dictates that Maryland's artificial case-splitting gambit is no longer tenable.

Rather than address the Fourth Circuit's holding that resolving this case will turn on centrally important AFFF questions, the State instead argues that *Maryland*'s reasoning is irrelevant for purposes of transfer because the court applied a "deferential" standard on removal. *See* Opp'n at 1, 5–7. But that is apropos of nothing: The Fourth Circuit expressly instructed that the factfinder "must," "will need to," and "will have to disentangle" whether and to what extent any "given sample of PFAS contamination" in this case "came from Military AFFF." *See Maryland*, 130 F.4th at 391. Those are the exact AFFF causation and allocation questions that the MDL Court will oversee in Maryland's "overlapping lawsuit[]" already proceeding in the MDL. *See id.* at 385.[1]

---

[1] The State overlooks an additional question in this case that overlaps with the MDL, which is the propriety of 3M's removal to federal court. Although the Fourth Circuit held that 3M satisfied the "nexus" element of the federal officer removal statute because "Military AFFF production is inextricably related to the State's general allegations of PFAS contamination," it returned both this case and South Carolina's "mirror[]" suit (its companion in the consolidated appeal) to federal court for further consideration of "whether 3M satisfied the other elements needed for federal officer removal." *Maryland*, 130 F.4th at 393. South Carolina's suit is already proceeding in the

In any event, the Fourth Circuit's conclusion that 3M's production of AFFF is "inextricably related" to this action—such that "a factfinder must" answer causation and allocation questions concerning AFFF—was not premised on the governing standard for removal but rather on the State's own "general allegations" of widespread harm to the same natural resources throughout Maryland at issue in its AFFF action. *See Maryland*, 130 F.4th at 392. In particular, the State openly admitted to the Fourth Circuit that it "envision[s]" seeking recovery in this case "for mixed PFAS contamination" from both AFFF and non-AFFF sources at "numerous geographic locations" across the state. *Id.* So under the State's own theory, this purportedly "non-AFFF" case necessarily encompasses AFFF contamination and thus should be transferred to the MDL.

Notably, Maryland outright ignores the April 2 transfer order in *Maine*, which the Panel issued nearly a week before Maryland filed its opposition. That order rejected the very same arguments Maryland continues to make here.

Like Maryland, Maine filed two separate but "almost-identical" AFFF and non-AFFF lawsuits. *Maine*, 159 F.4th at 130. Like Maryland, Maine's AFFF action was transferred to the MDL without opposition, but the district court remanded its purported non-AFFF action. *See id.* at 131–32. And following the lead of the Fourth Circuit in *Maryland*, the First Circuit reversed, concluding that "Maine's efforts to have two courts answer the same questions must fail" because

_____

MDL, and the MDL Court recently issued a decision applying the Fourth Circuit's guidance and upholding federal jurisdiction under the remaining two elements of the removal statute. *See South Carolina v. 3M Co.*, No. 2:23-cv-05979, 2026 WL 898450 (D.S.C. Apr. 1, 2026). The MDL Court is thus best positioned to address Maryland's materially identical jurisdictional objections, and transfer would avoid the risk of inconsistent rulings flowing from the Fourth Circuit's decision. The MDL Court will also continue to preside over South Carolina's two PFAS suits and the overlapping AFFF discovery the Fourth Circuit recognized as "inevitable," further demonstrating the propriety of transfer here.

Maine's non-AFFF complaint requires the factfinder to "address[] whether and to what extent such contamination from AFFF sources has commingled with non-AFFF." *Id.* at 131, 138–39.

The Panel then transferred Maine's non-AFFF case to the MDL, rejecting Maine's argument that the First Circuit's ruling should not control because it was a "purely jurisdictional decision" involving a "fundamentally differ[ent]" standard. Reply Br. in Supp. of Mot. to Vacate Conditional Transfer Order (CTO-293) at 1, 4, ECF No. 4186 (Feb. 26, 2026). Instead, the Panel emphasized that it "share[d] the First Circuit's concern regarding the State's attempt to split its AFFF and non-AFFF claims" between two federal courts. *Maine* Transfer Order at 6 & n.6. The Panel explained that "the only way the [First Circuit] could be concerned about the state and federal systems addressing the same PFAS contamination sources . . . is if there are two actions (*i.e.*, another federal action) that overlaps with the State's action." *Id*. at 6 n.6 Such duplication was "precisely the overlap that merits transfer." *Id.*

Here, Maryland's two purportedly separate lawsuits, with their nearly identical allegations of widespread harm to the same natural resources throughout Maryland, are similarly "overlapping," as the Fourth Circuit has expressly confirmed. *Maryland*, 130 F.4th at 385. The "only meaningful difference" between the two statewide cases "is that one was directed towards 3M's PFAS production through its manufacture of AFFF generally . . . while the other was directed towards 3M's production of other PFAS-containing products" while disclaiming AFFF. *Id*. The Fourth Circuit's rejection of Maryland's attempted disclaimer for removal purposes would alone be sufficient for transfer. But given the State's remarkable mid-appeal admission before the Fourth Circuit that it is pursuing recovery in this case for "mixed" AFFF and non-AFFF PFAS contamination at "numerous geographic locations" throughout the State, it is now beyond a shadow of a doubt that the State's AFFF and non-AFFF actions will "inevitab[ly]" involve the

same centrally important AFFF-related "causation and allocation" questions and require the same AFFF-related fact and expert discovery. *See id.* at 392. The State's two suits thus "clear[ly] overlap," making the State's "attempt to maintain separate non-AFFF and AFFF complaints . . . untenable." Order Denying Transfer at 2, 4, ECF No. 2129. In sum, Maryland's "efforts to have two courts answer the same questions must fail." *See Maine*, 159 F.4th at 131.[3]

## II.    Transfer Of This Action Would Not Expand The MDL.

There is no credible dispute that this case will require the factfinder to assess AFFF contamination. But like Maine before it, the State contends that transfer of this action would nevertheless "remove [the MDL's] longstanding guardrails" and "expand" it into a broader PFAS MDL. Opp'n at 8–9. That is baseless. This case is simply like the previous purported "non-AFFF" cases that the Panel has recognized belong in the MDL due to overlapping AFFF discovery and pretrial motion practice. Just as the Panel made clear earlier this month in transferring Maine's purported non-AFFF suit (and five others purporting to disclaim AFFF recovery), "transfer of this action will not expand the scope of the MDL." *Maine* Transfer Order at 7.

This transfer motion breaks no new ground. The Panel has consistently transferred similar actions where, as here, "the state attempts to split its claims into AFFF and non-AFFF complaints

---

[3] To be sure, in transferring *Maine*, the Panel also noted that 3M had identified a number of specific AFFF-related sites at issue in the purportedly non-AFFF case. Here, the State has not yet disclosed a list of specific sites it claims to be at issue in this case. But that is no impediment to transfer given the Fourth Circuit's clear holding that the trial court "inevitab[ly]" "must," "will need to," and "will have to disentangle" whether and to what extent AFFF contributed to Maryland's alleged statewide PFAS contamination at "numerous geographic locations." This case thus overlaps with Maryland's AFFF suit just as much as Maine's purported non-AFFF case did with its AFFF suit, particularly given the State's pursuit of recovery for the same natural resources throughout the state in both cases and its avowed intention to recover in this case for mixed AFFF and non-AFFF contamination. As the Fourth Circuit's decision expressly confirmed, this case plainly encompasses locations "at which AFFF has been or will be identified." *Maine* Transfer Order at 6. No amount of artful pleading or argument can alter this conclusion.

and thereby maintain an action outside the MDL." *Id*. at 6 (internal quotations omitted); *see also*, *e.g.*, Transfer Order at 3, ECF No. 1927 (June 1, 2023) (transferring Illinois's ostensibly non-AFFF suit); Transfer Order at 3, ECF No. 1020 (June 7, 2021) (similarly transferring Michigan's putative non-AFFF case); Transfer Order at 3, ECF No. 4061 (Dec. 11, 2025) (similarly transferring purported "non-AFFF" case filed by Oklahoma).

For example, this Panel transferred a purported non-AFFF action brought by Michigan where the State's two cases would "involve common discovery relating to the same contaminated groundwater," such that "declining to transfer" the action would have "result[ed] in duplicative discovery and pretrial proceedings." Transfer Order at 4, ECF No. 1020. The same is true here. Particularly given Maryland's mid-appeal admission that it seeks to recover in this case for mixed AFFF and non-AFFF contamination, resolution of this case will require a factfinder to consider "inevitable . . . causation and apportionment questions" concerning AFFF for any "given sample of PFAS contamination" across "numerous geographic locations" throughout the state. *Maryland*, 103 F.4th at 392. Transferring this action is thus "necessary to avoid overlapping discovery and duplicative pretrial proceedings." *See* Transfer Order at 3, ECF No. 1927.

Nor is it outcome-determinative, as the State suggests, that the full extent of AFFF commingling is not yet clear. Opp'n at 8. "Indeed, many, if not most, of the actions pending in the MDL likely would not have satisfied a requirement that the parties seeking transfer demonstrate even a rough percentage of the alleged PFAS contamination in each action attributable to AFFF versus non-AFFF products." Transfer Order at 2 n.1, ECF No. 2679 (June 7, 2024). For example, in transferring an action brought by the State of Wisconsin, the Panel rejected the State's arguments that its case was "predominantly not an AFFF case." Transfer Order at 2, ECF No. 1646. Because the State's action involved both AFFF and non-AFFF contamination, its case shared "common

factual questions and discovery relating to PFAS and AFFF with the actions in the MDL." *See id.* at 2. It could not be said that transferring Wisconsin's case to the MDL somehow expanded it beyond the Panel's guardrails.

Had Maryland not attempted to split its statewide claims between AFFF and non-AFFF sources of contamination (and sought to have two courts answer the same questions), there would likewise be no dispute that this case should be transferred. But after the Fourth Circuit's decision, there is now no functional difference between this case and the case the Panel confronted in ordering transfer of *Wisconsin*. *See Maryland*, F.4th at 392 ("Even if [the states] cannot ultimately recover for PFAS contamination from Military AFFF based on the scope of their complaints, a factfinder *must* . . . still decide the important causation and allocation questions.") (emphasis added). Maryland is, in effect, asking to litigate claims related to AFFF outside the MDL. That creates the risk of duplicative discovery and inconsistent rulings at every turn. Transfer is therefore warranted.

In sum, Maryland's protest that transfer would expand the MDL rings hollow. It was the State's stratagem to file two "overlapping" complaints alleging statewide PFAS contamination, which the Fourth Circuit's decision confirms will now involve the same fact and expert discovery and pretrial motion practice relating to AFFF. *See id.* at 385. And the State admitted on appeal that it seeks recovery for mixed contamination sites throughout the State, further demonstrating that AFFF will be central to the case. As the Fourth Circuit explained, the State itself has "inevitabl[y]" put AFFF at issue, *id*. at 392, and this action should be transferred to "eliminate duplicative discovery; prevent inconsistent pretrial rulings (including with respect to discovery, privilege, and *Daubert* motion practice); and conserve the resources of the parties, their counsel, and the

judiciary." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018).

## CONCLUSION

For the foregoing reasons, the Panel should grant 3M's Motion to Transfer.

Respectfully submitted,

DATED: April 15, 2026

/s/ *Daniel L. Ring*
Daniel L. Ring
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654
Tel: (312) 923-2625
dring@jenner.com

*Counsel for Defendant 3M Company*

10