**UNITED STATES JUDICIAL PANEL**
**on**
**MULTIDISTRICT LITIGATION**

IN RE: AQUEOUS FILM-FORMING FOAMS
PRODUCTS LIABILITY LITIGATION                              MDL No. 2873

**TRANSFER ORDER**

**Before the Panel**:\* We are presented with several motions in this docket. First, Defendant EIDP, Inc., moves under 28 U.S.C. § 1407(c) to transfer the Eastern District of New York *Plainview Water District* action[1] listed on Schedule A to the District of South Carolina for inclusion in MDL No. 2873. Plaintiff does not oppose transfer of this action. Second, plaintiff in the *State of Minnesota* action listed on Schedule A moves under Panel Rule 7.1 to vacate our order that conditionally transferred that action to MDL No. 2873. Twenty-seven states and territories with actions pending in the MDL support the motion to vacate, while Defendant 3M Company opposes the motion. Next, both plaintiff and Defendant Weyerhaeuser Company move under Panel Rule 7.1 to vacate our order conditionally transferring the *Town of Pepperell* action to the MDL. Two other defendants in that action—Georgia-Pacific, LLC, and Honeywell International Inc.—oppose those motions. Finally, plaintiffs in the nine other actions listed on Schedule A, all of which are pending in Alabama or Georgia district courts, move under Panel Rule 7.1 to vacate our orders that conditionally transferred those actions to MDL No. 2873. Defendant 3M Company opposes all these motions except for the motion with respect to the Northern District of Alabama *Helena Utilities Board* action, which is opposed by the DuPont Defendants.[2] Defendant BFI Waste Systems of Alabama, LLC, opposes the motion with respect to the Southern District of Alabama *Water Works Board of the City of Jackson* action.

After considering the argument of counsel, we find that the actions listed on Schedule A involve common questions of fact with the actions transferred to MDL No. 2873, and that transfer under 28 U.S.C. § 1407 will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. In our order centralizing this litigation, we held that the District of South Carolina was an appropriate Section 1407 forum for actions in which plaintiffs

---

\* Judges Karen K. Caldwell and David C. Norton did not participate in the decision of this matter.

[1] EIDP also moves to transfer two actions involving Veolia Water defendants. The motion as to those actions will be denied in a separate order. EIDP states that co-defendants DuPont de Nemours, Inc., Corteva, Inc., and The Chemours Company consent to transfer.

[2] EIDP, Inc., f/k/a E.I. du Pont de Nemours and Company; DuPont de Nemours, Inc.; The Chemours Company; The Chemours Company FC, LLC; and Corteva, Inc.

- 2 -

allege that aqueous film-forming foams (AFFFs) used at airports, military bases, or certain industrial locations caused the release of per- or polyfluoroalkyl substances (PFAS) into local groundwater and contaminated drinking water supplies. The MDL actions share factual questions concerning the use and storage of AFFFs; the toxicity of PFAS and the effects of these substances on human health; and these substances' chemical properties and propensity to migrate in groundwater supplies. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018).

Turning first to the motion to transfer *Plainview Water District*, EIDP argues that at least one personal injury plaintiff in the MDL[3] alleges that he was exposed to drinking water contaminated by PFAS from AFFF use or disposal while receiving water from Plainview Water District. We have repeatedly held that, when a party identifies one or more actions in the MDL in which a plaintiff alleges injury from PFAS in the same water supply that stemmed from AFFF manufacture, use, or disposal, transfer generally is justified to avoid duplicative discovery and pretrial proceedings. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, MDL No. 2873, 2026 WL 914965, at *1 (J.P.M.L. Apr. 2, 2026). While *Plainview Water District* has been pending since 2023, the actions with which it was being coordinated have all been dismissed, and there has been little docket activity since the court denied DuPont's motion to dismiss in late 2024. It thus seems unlikely that transfer will disrupt the proceedings in this action. Notably, plaintiff does not oppose transfer. Accordingly, we will grant the motion to transfer *Plainview Water District*.

With respect to the motion to vacate *State of Minnesota*, this action is brought under Minnesota state environmental laws against 3M Company and pertains to alleged PFAS discharges from a 3M facility in Cottage Grove, Minnesota. In opposition to transfer, the State (along with 27 states and territories with actions in the MDL) argues that *State of Minnesota* is not an AFFF matter and lacks common factual questions with the actions in the MDL. The State emphasizes that it seeks only enforcement and penalties relating to discharges at the Cottage Grove Facility in violation of the state permit, and therefore there is no risk of inconsistent pretrial rulings or discovery. The State further argues that sovereign enforcement actions are not appropriate for inclusion in the MDL and that such actions involve site-specific claims that cannot be effectively coordinated with similar actions. Alternatively, the State requests that we stay any transfer until the transferor court resolves the State's pending remand motion.

We are not persuaded that transfer of *State of Minnesota* is inappropriate. The State's complaint identifies PFAS releases from the Cottage Grove Facility's fire training area (where AFFF was used) as a source of the PFAS contamination, and 3M, in its notice of removal, asserted and proffered evidence that it manufactured AFFF at the Facility. Thus, on its face, this is an AFFF action. Furthermore, we have rejected similar arguments that actions brought under federal and state environmental regulations should not be transferred.[4] While this action, unlike others

---

[3] *See* Compl. ¶¶ 169–70, *Sabatino v. 3M Co.*, C.A. No. 2:25-04816 (D.S.C.).

[4] *See, e.g.*, Transfer Order at 4, MDL No. 2873 (J.P.M.L. June 4, 2026), ECF No. 4397 (transferring a CERCLA action involving Wright-Patterson Air Force Base); Transfer Order at 1–2, MDL No. 2873 (J.P.M.L. Dec. 11, 2025), ECF No. 4061 (rejecting argument that action brought to enforce

(continued…)

- 3 -

we have previously transferred, is not directed against the United States or brought with other types of claims (such as product liability or tort claims), it is directed to a 3M facility that manufactured and used AFFF.[5]   Accordingly, there appears to be an opportunity for coordinated pretrial proceedings with other regulatory claims in the MDL.  The site-specific nature of the claims does not eliminate the potential for coordination, even if it may, for instance, preclude a bellwether process.  *See* Transfer Order at 4, MDL No. 2873 (J.P.M.L. June 4, 2026), ECF No. 4397 (noting other forms of coordination, such as coordination of discovery and pretrial deadlines). Furthermore, we have conferred with the transferee judge about transfer of both this action and *Town of Pepperell*, and he agrees that transfer of such regulatory enforcement claims may yield significant efficiencies.  Should the transferee judge determine that *State of Minnesota* is better litigated separately, he may suggest remand under Section 1407 with a minimum of delay.  *See* Panel Rules 10.1–10.3.

We also deny the State's alternative request to stay transfer pending the resolution of its pending remand motion.  Pending remand motions generally do not present an impediment to transfer.  *See, e.g.*, *In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 170 F. Supp. 2d 1346, 1347–48 (J.P.M.L. 2001) ("[R]emand motions can be presented to and decided by the transferee judge.").  The transferee court has decided numerous remand motions, and we are confident that consideration of the State's pending remand motion will not be unnecessarily delayed.

The motions to vacate in *Town of Pepperell* present similar issues.  This action was brought by a municipality under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601 et seq., against several defendants who allegedly operate industrial facilities that contaminated the Town's water supply with PFAS.  The Town's arguments against transfer largely echo those of the State of Minnesota and are similarly unpersuasive.  The Town compares its action to one brought by the Town of East Hampton, which was remanded at the suggestion of the transferee court.  *See* Remand Order at 1–2, MDL No. 2873 (J.P.M.L. Oct. 15, 2025), ECF No. 3897.  *Town of East Hampton*, though, was a uniquely local action, and the transferee court's suggestion of remand did not suggest that transfer of CERCLA actions by municipalities that involve AFFF issues should be discontinued.  As noted above, we consulted with the transferee judge regarding *Town of Pepperell*, and he did not suggest that continued transfer of such environmental regulatory actions may be unwarranted.

Furthermore, while the Town's complaint does not include AFFF claims on its face, the Town has filed a separate action in the MDL in which it alleges that its water system was

---

terms of an environmental permit issued by New Mexico regarding Cannon Air Force Base would not share common factual questions with other actions in the MDL).

[5] These facts undermine the argument that transfer would constitute an expansion of the MDL to include PFAS discharges generally.  Even regulatory actions must have a substantial and concrete tie to AFFF manufacture, use, or disposal.  We also note that, while this may be the latest in a series of enforcement actions against 3M relating to the Cottage Grove Facility, the prior actions were settled prior to or contemporaneously with the creation of this MDL, and thus they were never considered for inclusion in the MDL.

- 4 -

contaminated by PFAS stemming from AFFF use at, *inter alia*, a U.S. military base (Fort Devens). *See Town of Pepperell v. 3M Co.*, C.A. No. 2:22-04295 (D.S.C.). We generally have transferred actions where a party attempts to "split" its claims into AFFF and non-AFFF complaints. *See, e.g.*, *In re AFFF*, 2026 WL 914965, at *5. Additionally, 3M has identified at least one action in the MDL that identifies several addresses in the Town of Pepperell as potential AFFF contamination sites. *See* Compl. ¶ 11, *Nelson v. 3M Co.*, C.A. No. 2:25-07405 (D.S.C. July 15, 2025). There likely will be some potential for coordination of discovery with respect to these actions in the MDL.

Defendant Weyerhaeuser Company, which also moves to vacate the CTO as to *Town of Pepperell,* argues that transfer would delay resolution of its dismissal motion and thus prejudice it. The Town likewise argues that transfer will delay its recovery of its incurred response costs. These arguments are unconvincing. Transfer is appropriate "if it furthers the expeditious resolution of the litigation taken as a whole, even if some parties to the action might experience inconvenience or delay." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, MDL No. 2873, 2021 WL 755083, at *2 (J.P.M.L. Feb. 4, 2021) (citing *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1351–52 (J.P.M.L. 2012) ("[W]e look to the overall convenience of the parties and witnesses, not just those of a single plaintiff or defendant in isolation.")). In any event, the transferee court has decided numerous motions in this MDL, and we are confident that resolution of Weyerhaeuser's motion (and the Town's regulatory claims) will not be unnecessarily delayed.

Weyerhaeuser also suggests that transfer of *Town of Pepperell*, which involves defendants located nearly fifty miles upstream from the impacted wells, would effectively expand this MDL to include all PFAS cases brought by public water systems. As discussed, however, this action overlaps with AFFF actions in the MDL and will benefit from coordinated pretrial proceedings. Moreover, as we have stated on multiple occasions, the expansive nature of the AFFF MDL reflects the nature and scope of PFAS contamination and AFFF use, which was widespread. *See In re AFFF,* 2026 WL 914965, at *2 (noting that the Panel, as "a prerequisite to transfer" still requires "that complaints contain AFFF claims or, if the actions do not raise AFFF claims on their face, that movants satisfy a 'significant burden' to persuade us 'that transfer is appropriate and will not undermine the efficient progress of the MDL.'") (citation omitted). Transfer of *Town of Pepperell* will not alter the scope of the AFFF MDL.

We next turn to plaintiff's motion to vacate in *Water Works Board of the City of Jackson*. Plaintiff alleges that defendants—including various PFAS manufacturers and landfills in the Decatur, Alabama, area—are responsible for PFAS contamination of plaintiff's drinking water supply. We previously have concluded that 3M manufactured AFFF at its facility in Decatur and, therefore, that actions stemming from alleged discharge of PFAS into the Tennessee River by 3M's Decatur Facility should be transferred to the MDL. *See* Transfer Order at 1–2, MDL No. 2873 (J.P.M.L. June 7, 2024), ECF No. 2679.

Plaintiff's arguments against transfer largely echo those we rejected at our last hearing session. *See* Transfer Order at 3–4, MDL No. 2873 (J.P.M.L. June 4, 2026), ECF No. 4397. For instance, plaintiff similarly argues that its action differs from other actions involving 3M's Decatur Facility because plaintiffs' claims in those actions arose solely out of discharges from 3M's

- 5 -

Decatur Facility, whereas here plaintiff also alleges discharges from non-AFFF industrial facilities and landfills.  As we stated in our prior order, this characterization of the prior Decatur actions is inaccurate.  *See id.* (observing that the prior Decatur actions involved the same putative "non-AFFF" facilities, that the MDL is not limited to actions that allege *only* AFFF contamination, and that a proponent of transfer had persuasively argued that "the PFAS discharges that are alleged to have originated from its Morris Farm Landfill in Decatur stemmed from AFFF waste originated from the Redstone Arsenal in nearby Huntsville").  For the same reasons, we reject plaintiff's arguments against transfer with respect to *Water Works Board of the City of Jackson.*

With respect to *Grand Bay Water Works Board*, plaintiff alleges that various PFAS manufacturers, industrial concerns, and landfills contaminated plaintiff's drinking water supply with AFFF.  In opposition to transfer, plaintiff argues that 3M, in its notice of removal, demonstrated only a potential for overlap with AFFF claims being litigated in the MDL and failed to address plaintiff's disclaimer of AFFF liability in its complaint or its intentional omission of Chemguard (which it asserts was the only supplier of AFFF to the military site identified by 3M in its notice of removal) as a defendant.  Plaintiff further argues that this action will involve site-specific discovery and that transfer will result in delay.

None of these arguments is persuasive.  We have, in multiple orders, held it sufficient "that 3M has identified plaintiffs in the MDL who allege that they consumed water provided by these water providers and that this water allegedly was contaminated from PFAS stemming from AFFF use or disposal."  *In re AFFF*, 2026 WL 914965, at *2.  Here, 3M identifies four MDL personal injury actions in which plaintiffs allege that water provided by Grand Bay was contaminated by AFFF use or disposal.  Plaintiff fails to meaningfully address this overlap.  That plaintiff carefully avoided naming certain AFFF manufacturers to avoid the MDL does not negate the overlap between this action and those pending in the MDL.  Further, the discovery in this action is no more "site-specific" than in any other water provider action pending in the MDL, and plaintiff's claims will not be unnecessarily delayed by transfer.  *See id.* (rejecting argument that transfer would result in inefficiencies or delay).

Finally, with respect to the other seven actions listed on Schedule A, all are brought by water providers who allege that their water supplies have been contaminated by PFAS.  Plaintiffs in all the actions disclaim any liability for PFAS stemming from AFFF manufacture, use, or disposal.  For each of these actions, 3M or the DuPont Defendants have identified one or more MDL personal injury actions in which a plaintiff alleges that he or she was injured by drinking water from the water provider and that this water was contaminated by PFAS stemming from AFFFs.  Plaintiffs in two of the actions (*Water Works Board of the City of Leeds* and *Alabaster Water Board*) specifically allege in their complaints that 3M Company manufactured AFFF that was then used by their respective fire departments and caused the alleged PFAS contamination.  Plaintiff in another action (*City of Griffin*) has moved to amend its complaint to add allegations relating to AFFF use at Hartsfield-Jackson Atlanta International Airport.

In opposition to transfer, plaintiffs argue that their actions do not involve AFFF issues and that transfer will cause unnecessary delay and inconvenience.  Plaintiffs argue that we should discount the overlap between these actions and the AFFF claims asserted in the MDL.  Plaintiffs take issue with the short form complaints used in the MDL and the sufficiency of the allegations

- 6 -

therein.  These arguments are not persuasive.  While plaintiffs take issue with the amount of detail in the MDL complaints (particularly in the multi-plaintiff complaints), those complaints clearly allege that plaintiffs' water supplies were contaminated through AFFF use or disposal.  Even those that merely include an attached chart of plaintiffs list each personal injury plaintiff by name, their state of current residence, whether they are alleging exposure to AFFF through groundwater or through firefighter turnout gear, their alleged injuries, and where each plaintiff was exposed to contaminated drinking water.  This is enough to establish the necessary factual overlap to warrant transfer.  *See In re AFFF*, 2026 WL 914965, at *2 ("We … decline the invitation to characterize the MDL plaintiffs' allegations as 'conclusory.'  Doing so inevitably would require that we 'engage in a merits review of the complaints based on the amount of detail of plaintiffs' respective pre-suit investigations.'") (citation omitted).  3M has established that each of these actions overlaps with AFFF claims pending in the MDL.

To the extent that plaintiffs argue that transfer would not be efficient because the MDL has "no infrastructure" to advance actions by water providers who have opted out of the various class settlements in the MDL, this is an issue best raised with the transferee judge.  As we have often noted, the transferee court has the discretion to address any unique factual or legal issues through the use of appropriate pretrial devices, *see In re AFFF*, 357 F. Supp. 3d at 1395, and we will not second-guess the transferee court's management of this litigation.

IT IS THEREFORE ORDERED that the actions listed on Schedule A are transferred to the District of South Carolina and, with the consent of that court, assigned to the Honorable Richard M. Gergel for coordinated or consolidated pretrial proceedings.

PANEL ON MULTIDISTRICT LITIGATION

_____

Matthew F. Kennelly
Acting Chair

Dale A. Kimball                    Madeline Cox Arleo
M. Casey Rodgers                   Richard Seeborg

**IN RE: AQUEOUS FILM-FORMING FOAMS
PRODUCTS LIABILITY LITIGATION**                    MDL No. 2873

### SCHEDULE A

Northern District of Alabama

ALABASTER WATER BOARD v. 3M COMPANY, ET AL., C.A. No. 2:26−00804
WATER WORKS BOARD OF THE CITY OF LEEDS, ALABAMA v.
      3M COMPANY, ET AL., C.A. No. 2:26−00805
PELHAM WATER WORKS v. 3M COMPANY, INC., ET AL., C.A. No. 2:26−00812
HELENA UTILITIES BOARD v. 3M COMPANY, INC., ET AL., C.A. No. 2:26−00821
HUNTSVILLE WATERWORKS UTILITY BOARD v. 3M COMPANY, INC.,
      ET AL., C.A. No. 5:26−00794

Southern District of Alabama

THE WATER WORKS BOARD OF THE CITY OF JACKSON, INC. v. 3M
      COMPANY, ET AL., C.A. No. 1:26−00145
GRAND BAY WATER WORKS BOARD, INC. v. 3M COMPANY, INC., ET AL.,
      C.A. No. 1:26−00173
THOMASVILLE WATER WORKS AND SEWER BOARD v. 3M COMPANY,
      C.A. No. 1:26−00174

Northern District of Georgia

THE CITY OF GRIFFIN, GEORGIA v. 3M COMPANY, ET AL., C.A. No. 1:26−02748

District of Massachusetts

TOWN OF PEPPERELL, MASSACHUSETTS v. GEORGIA−PACIFIC, LLC, ET AL.,
      C.A. No. 1:26−10965

District of Minnesota

STATE OF MINNESOTA v. 3M COMPANY, ET AL., C.A. No. 0:26−02440

Eastern District of New York

PLAINVIEW WATER DISTRICT v. 3M COMPANY, ET AL., C.A. No. 2:23−03919