**UNITED STATES JUDICIAL PANEL**
**on**
**MULTIDISTRICT LITIGATION**

**IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION** MDL No. 2873

**ORDER DENYING TRANSFER**

**Before the Panel**:* We are presented here with two motions. First, Defendant 3M Company moves under 28 U.S.C. § 1407(c) to transfer the Eastern District of Pennsylvania *West* action listed on Schedule A to the District of South Carolina for inclusion in MDL No. 2873. Defendants EIDP, Inc., DuPont de Nemours, Inc., and Corteva, Inc., support transfer. Plaintiffs oppose transfer.

Second, Defendants Corteva, Inc., EIDP, Inc., The Chemours Company, The Chemours Company FC, LLC, and DuPont de Nemours, Inc., move under 28 U.S.C. § 1407(c) to transfer two actions pending in the Eastern District of North Carolina, both brought by Aqua North Carolina, Inc., to MDL No. 2873. Plaintiff opposes transfer.

MDL No. 2873 involves allegations that aqueous film-forming foams (AFFFs) used at airports, military bases, or other locations to extinguish liquid fuel fires caused the release of perfluorooctane sulfonate (PFOS) and/or perfluorooctanoic acid (PFOA; collectively, these and other per- or polyfluoroalkyl substances are referred to as PFAS) into local groundwater and contaminated drinking water supplies. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018). Plaintiffs in *West* allege that they or their decedents played professional baseball for the Philadelphia Phillies. They allege that the AstroTurf at Veterans Stadium in Philadelphia, where the Phillies played from 1971 to 2004, contained PFAS (as well as heavy metals and ethylene oxide), to which plaintiffs or their decedents were exposed, causing injury. Plaintiff in the *Aqua North Carolina* actions provides drinking water to over 300,000 residents in North Carolina and alleges that its drinking water supply was contaminated by PFAS discharged into the Cape Fear River from DuPont's Fayetteville Works Facility, which produced non-AFFF products. Neither Aqua North Carolina nor plaintiffs in *West* allege injury due to AFFF manufacture, use, or disposal. Defendants therefore bear "a significant burden to persuade us that transfer is appropriate and will not undermine the efficient progress of the AFFF MDL." Order Denying Transfer at 2, MDL No. 2873 (J.P.M.L. Dec. 18, 2019), ECF No. 541.

---

* Judges David C. Norton and M. Casey Rodgers did not participate in the decision of this matter.

After considering the parties' arguments, we find that transfer of the actions listed on Schedule A under 28 U.S.C. § 1407 will not serve the convenience of the parties and witnesses or promote the just and efficient conduct of the litigation. Turning first to the motion to transfer *West*, 3M primarily argues that transfer is consistent with our recent orders transferring *State of Maine* and *State of Maryland*. *See* Transfer Order at 2–3, MDL No. 2873 (J.P.M.L. June 4, 2026), ECF No. 4397 (transferring *State of Maryland*); *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, MDL No. 2873, 2026 WL 914965, at *4–5 (J.P.M.L. Apr. 2, 2026) (transferring *State of Maine*). Both actions, however, are distinguishable from the situation presented by *West*.

*State of Maine* and *State of Maryland* involved actions by states directed to PFAS contamination of the state's groundwater, surface water, and other natural resources. In each action, an appellate court overturned a decision to remand the action to state court. In our order transferring *State of Maine*, we noted that 3M had identified numerous alleged contamination sites identified by the State in its written discovery responses that involved AFFF contamination and were at issue in personal injury or water district cases pending in the MDL. *See In re AFFF*, 2026 WL 914965, at *4. We took issue with the State's practice of disclaiming liability for each site that 3M identified as potentially involving AFFF contamination. *See id.* ("[T]he State's repetitive disclaimers, as well as its stated intent to continue disclaiming sites whenever AFFF is identified as a potential source of PFAS contamination, all strongly suggest that this action currently encompasses sites at which AFFF has been or will be identified. Allowing this action to continue proceed in this fashion is not tenable and will only result in delay and continuing confusion as to the scope of the action."). We also shared "the First Circuit's concern regarding the State's attempt to split its AFFF and non-AFFF claims." *Id.* at *5.

*State of Maryland* presented a similar scenario, though, unlike *State of Maine*, we had previously denied transfer the action because the "complaint, on its face, does not identify a contamination site at issue in the MDL." Order Denying Transfer at 2, MDL No. 2873 (J.P.M.L. Oct. 4, 2023), ECF No. 2129. After the Fourth Circuit vacated the remand order in *State of Maryland*, we were again presented with a motion to transfer the action to the MDL. We concluded that the Fourth Circuit decision constituted a "significant change" in the action because the Fourth Circuit had held that "3M's Military AFFF production is inextricably related to [the State's] general allegations of PFAS contamination, notwithstanding [its] attempts to draw a line between 3M's federal and non-federal work." Transfer Order at 2, MDL No. 2873 (J.P.M.L. June 4, 2026), ECF No. 4397 (quoting *Maryland v. 3M Co.*, 130 F.4th 380, 392 (4th Cir. 2025)).

*West* presents a very different scenario. Plaintiffs are not alleging PFAS contamination of state waters and natural resources generally. Instead, they allege PFAS exposure from a specific non-AFFF product—the AstroTurf installed at Veterans Stadium. Plaintiffs in *West*, unlike Maine and Maryland, do not have an AFFF action pending in the MDL. Thus, the concern over claim-splitting is not present here.

There also is little evident overlap with the MDL. 3M points to two actions in the MDL as overlapping with *West*—namely, the City of Philadelphia's and the City of San Diego's actions for AFFF contamination of their municipal drinking water. That overlap, however, is tenuous. It relies on 3M's speculation that plaintiff drank water provided by these cities during their playing

careers and were thus exposed to MilSpec AFFF. *See* Order Vacating CTO at 2, MDL No. 2873 (J.P.M.L. Aug. 8, 2025), ECF No. 3667 (observing that "the mere potential for commingling of PFAS from AFFF and non-AFFF sources is not sufficient to justify transfer of an otherwise non-AFFF action" (internal quotation marks and citation omitted)). To be sure, the district court in *West* concluded that this purported overlap was sufficient to support federal officer removal under 28 U.S.C. § 1442(a)(1). *See West v. 3M Co.*, C.A. No. 2:25-05252, 2026 WL 383792, at *2 (E.D. Pa. Feb. 11, 2026) ("3M alleges that Plaintiffs' PFAS exposure plausibly arose, at least in part, from PFAS released by the MilSpec AFFF that contaminated municipal drinking water supplies in locations where Plaintiffs lived and worked."). This finding, however, does not require transfer to the MDL of a demonstrably non-AFFF action focused exclusively on a non-AFFF product (AstroTurf). There is little risk of duplicative discovery or conflicting pretrial rulings if *West* proceeds in the Eastern District of Pennsylvania.

With respect to the DuPont defendants' motion to transfer the two *Aqua North Carolina* actions, we previously declined to transfer the first filed of these actions (*Aqua North Carolina I*) in 2023, following a line of decisions "exclud[ing] actions involving non-AFFF discharges of PFAS from specific industrial locations." *See* Order Denying Transfer at 2, MDL No. 2873 (J.P.M.L. June 5, 2023), ECF No. 1928. Notably, DuPont's basis for transfer at that time was the purported overlap with Aqua's separate AFFF action pending in the MDL. *Id.* at 1. The second of these actions (*Aqua North Carolina II*) was filed earlier this year. Whereas plaintiff in *Aqua North Carolina I* asserts tort claims, plaintiff in *Aqua North Carolina II* asserts CERCLA claims against DuPont relating to the Fayetteville Works Facility.

In support of transfer, the DuPont defendants argue that both *Aqua North Carolina I* and *II* will involve discovery relating to AFFF use at Fort Bragg, which DuPont asserts is a potential contributing cause of the PFAS contamination of Aqua's water systems. DuPont relies heavily on the Fourth Circuit's decision vacating the remand order in *State of Maryland*. *See Maryland*, 130 F.4th at 390 ("PFAS from different sources commingle to the point that it is impossible to identify the precise source of a contaminant once those chemicals seep into the relevant waterways."). DuPont also argues that at least 138 personal injury plaintiffs in the MDL have submitted fact sheets alleging AFFF PFAS exposure from the same water systems at issue in Aqua's actions. The Panel previously has held that where a putative non-AFFF action overlaps with an action in the MDL that alleges the same water source was contaminated by AFFFs, transfer is appropriate. *See* Transfer Order at 2–3, MDL No. 2873 (J.P.M.L. June 2, 2025), ECF No. 3536 (transferring *City of Savannah*).

As we noted in our initial order declining to transfer *Aqua North Carolina I*, we have generally declined to transfer actions pertaining to discharges from a specific non-AFFF industrial facility. *See* Order Denying Transfer at 2, MDL No. 2873 (J.P.M.L. June 5, 2023), ECF No. 1928; *see also* Order Denying Transfer at 2, MDL No. 2873 (J.P.M.L. Apr. 5, 2022), ECF No. 1352 (denying transfer of action that was "overwhelmingly focused on the carpet industry in Dalton, Georgia, and that municipality's wastewater disposal methods"). This reasoning continues to be sound and is equally applicable to *Aqua North Carolina II*. These actions focus exclusively on DuPont's Fayetteville Works Facility, which produced non-AFFF products.

Moreover, even where overlap exists between such non-AFFF actions and actions pending in the MDL, the procedural posture of the non-AFFF action can weigh against transfer. *See, e.g.*, Order Denying Transfer at 2, MDL No. 2873 (J.P.M.L. Dec. 11, 2025), ECF No. 4062 ("We have held that transfer of actions that are being litigated as part of this consolidated litigation [in D. New Jersey involving DuPont's Chambers Works Facility] is not appropriate—even where there is potential overlap with claims being litigated in the MDL."). Here, there are more than a dozen actions in Eastern District of North Carolina involving claims relating to alleged discharges from the Fayetteville Works Facility, all of which are pending before the same judge. *Aqua North Carolina I* itself has been pending before that judge for nearly four years. While the DuPont defendants argue that the remaining pretrial proceedings in these actions would benefit from centralization, we are wary of transferring actions that have been pending for so long and are being litigated in a coordinated fashion—even if only on an "informal" basis—before the same judge. Accordingly, we will not transfer the *Aqua North Carolina* actions absent a stronger showing that centralization is necessary to avoid duplicative discovery and pretrial proceedings.

IT IS THEREFORE ORDERED that the motions to transfer with respect to the actions listed on Schedule A to MDL No. 2873 are denied.

PANEL ON MULTIDISTRICT LITIGATION

Karen K. Caldwell

Karen K. Caldwell
Chair

Matthew F. Kennelly
Madeline Cox Arleo
Dale A. Kimball
Richard Seeborg

**IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION** MDL No. 2873

**SCHEDULE A**

Eastern District of North Carolina

AQUA NORTH CAROLINA, INC. v. CORTEVA, INC., ET AL.,
C.A. No. 5:26−00218
AQUA NORTH CAROLINA, INC. v. CORTEVA, INC., ET AL.,
C.A. No. 7:23−00016

Eastern District of Pennsylvania

WEST, ET AL. v. 3M COMPANY, ET AL., C.A. No. 2:25−05252